IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

                Plaintiff,

v.

1.      GUY M. JEAN-PIERRE,
        a/k/a Marcelo Dominguez de Guerra,

                Defendant.

## GOVERNMENT'S STATUS REPORT AND SPEEDY TRIAL CALCULATIONS

The United States of America, by and through its undersigned counsel, respectfully submits the following status report and incorporated Speedy Trial Act, 18 U.S.C. § 3161 *et seq*., calculations in aid of the August 4, 2017 status conference to be conducted by this Court in this case:

### Background

1.      On February 6, 2017, the defendant made his initial appearance in this district on the initial indictment then pending against him (DE 11).[1] That indictment charged the defendant with a single count of engaging in a money laundering transaction involving funds represented to have been proceeds of a securities fraud involving FusionPharm, Inc. ("FusionPharm"), an erstwhile microcap company whose common stock was publicly traded in

---

[1] "DE" refers to docket entries in this case.

over-the-counter securities markets (DE 3). As recounted in a criminal complaint preceding this indictment (DE 1), the charge itself arose from one aspect of conduct engaged in by the defendant during the course of a 2016 undercover investigation that led to the defendant's return to the United States and apprehension and arrest on April 29, 2016 in Miami, Florida on an unrelated New York State criminal case. The case brought through that indictment, in turn, essentially constituted one of three criminal cases for which the defendant was under federal criminal investigation at the time of his initial appearance in this district.[2] Following his arraignment and a contested detention hearing, the defendant was detained pending trial on the one-count indictment and trial on that charge was initially set for April 17, 2017 (DE 15-16, 19).

2. Shortly following these proceedings, government counsel initiated plea discussions with the defendant's court-appointed counsel with an eye towards reaching a pretrial resolution of all three cases. As part of these discussions, and in recognition that much of the evidence concerning the three cases was intertwined, the government undertook to make broad production of records and other disclosure materials pertaining to all three case, pertaining to both the charged and uncharged conduct. Over the course of March 2 and March 6, 2017, two USB flash drives and a computer disk of records and data and audio recordings of undercover calls were produced to the defendant's counsel, together with seven computer disks of audio and video recordings of undercover meetings with the defendant in Miami, Florida in April 2016.

---

[2] As discussed further below, and as reflected in the Superseding Indictment now pending in this case, the other two criminal cases involved a related securities fraud scheme that was the main subject of the 2016 undercover investigation (hereinafter, the "2016 securities fraud scheme") and a second securities fraud scheme, out of which this undercover scheme arose, which is the subject of the prosecution of FusionPharm's principals in *United States v. Sears and Dittman*, Case No. 16-cr-000301-WJM (D. Colo.)(hereinafter variously, the "FusionPharm securities fraud scheme" or the "historical case"). (The money laundering conduct that was the subject of the initial indictment is hereinafter referred to as the "2016 money laundering scheme".)

These disclosure materials (the volume of which is further addressed below) consisted of hundreds of thousands of pages of records in digital format and audio and video recordings having an aggregated duration of over ten hours.

      3.      On March 10, 2017, shortly after receipt of these materials, defendant's counsel moved, without opposition, to vacate the April 2017 trial setting and, pursuant to 18 U.S.C. § 3161(h)(7), to exclude ninety days of time from the Speedy Trial Act computation of the seventy-day deadline for proceeding to trial under an "ends of justice" continuance (DE 24).   In support of the motion, defense counsel suggested, *inter alia*, that, given the nature of the alleged offense conduct and complex regulatory framework informing that conduct, the case was sufficiently complex so as to support an ends of justice finding.   Defense counsel nonetheless limited the requested exclusion of time and continuance to ninety days so that counsel, after review of discovery, could be better informed as to whether further delay for trial preparation was warranted and should be sought by the defense.   The Court accepted these averments and, without hearing, granted the motion (DE 25), resetting trial of the indicted case to July 24, 2017 (DE 26).

      4.      Counsel for the parties continued their plea discussions about the case following the granted continuance, with government counsel providing the defense with some of the more salient evidence concerning both the charged and uncharged cases.   On May 17, 2017, in furtherance of these discussions, government counsel and the government's case agents met directly with the defendant and his counsel and made a reverse proffer presentation of a summary of the key evidence concerning both the single count indicted case and the two remaining cases to be charged.   This presentation included the playing of significant audio clips

of recorded conversation with the defendant that took place as part of the 2016 undercover investigation.[3]  Plea offers and counter-offers were thereafter exchanged between counsel for the parties.  By early June 2017, counsel agreed that plea negotiations were at an impasse, and government counsel informed the defense that the government would no longer refrain from presenting the remaining two cases for indictment.

5. On June 23, 2017, the parties jointly moved the Court to vacate the July 24th trial setting pretrial deadlines and hearings relating to that setting, advising the Court, *inter alia*, of the government's plans to seek a superseding indictment in July[4] and both parties' desire to avoid two separate trials on the intertwined matters (DE 27).  The Court granted this joint motion and set a status conference for August 4, 2017 to address speedy trial matters in the case (DE 28).

6. On July 13, 2017, a twenty-nine count superseding indictment was returned against the defendant charging him with multiple criminal offenses for his offense conduct in all three of the cases that had been under investigation (DE 29).[5] The defendant's arraignment on

---

[3]  During the reverse proffer, which lasted several hours, the defense candidly acknowledged that the defendant had not, as of that point, personally listened to any of these recorded communications.

[4]  The July time frame presented the government the next available opportunity at that point to present the remaining cases to the grand jury that had been hearing evidence in the ongoing investigation of the defendant.

[5]  The charge presented in the initial indictment – concerning the 2016 money laundering scheme – is now alleged as Count 29 of the Superseding Indictment.

Counts 1 through 23 charge the defendant with a variety of criminal offenses arising from his conduct in the historical case concerning FusionPharm. Count 1 charges the defendant with conspiring with Sears and Dittman, the defendants in Case No. 16-cr-00301, to defraud the U.S. Securities and Exchange Commission ("SEC") and with committing various substantive offenses, in relation to the FusionPharm securities fraud scheme.  The defendant is charged in counts 2 through 16 with wire fraud, in counts 18 through 20 with mail fraud, and in counts 21 through 23 with securities fraud, all in connection with this same scheme.

Counts 24 through 28 charge the defendant with attempted wire fraud in connection with the 2016 securities fraud scheme.

this superseding indictment is set for August 4, 2017 (DE 31).

**<u>Pretrial Discovery and Other Matters Related to Trial Preparation</u>**

**<u>Nature and Scope of Disclosure Materials</u>.**

7.      As discussed above, the government has endeavored to provide the defense with substantial discovery on all three case since March 2017.   The materials have been in the form of scanned and digital records; emails and attachments in native format; accounting records in accounting software; and other records in native format.   The materials also include audio and video recordings of undercover meetings with the defendant as part of the 2016 undercover operation; recorded calls with the defendant leading up to the meetings as part of these operation; and recorded calls to and from the defendant while in New York State custody following his April 2016 arrest.   The discovery materials include materials received from the SEC as part of a parallel civil investigation it conducted of the FusionPharm securities scheme and materials acquired by the SEC and testimony generated by the agency, in connection with civil investigation leading to a prior federal civil enforcement lawsuit brought against the defendant in 2012.   Finally, the materials also include records and other digital evidence recovered pursuant to three separate federal search warrants secured as part of the criminal investigations of FusionPharm and the defendant:   Records and other digital evidence recovered from computers seized at the premises of FusionPharm in 2014; email records and attachments thereafter acquired from email providers for email accounts maintained by FusionPharm and its principals and other employees; and records acquired from a laptop computer taken from the defendant incident to his April 2016 arrest.   The most recent batch of discovery, contained on two terabyte-class hard drives, one high capacity thumb drive, and two DVDs, was produced to

defense counsel on or about July 24, 2017.

8.      In all, the government estimates that it has furnished the defense, to date, in various formats, approximately 301,017 discrete documents of varying page length and approximately 290,768 records in native computer program format. These digitally maintained records are estimated to translate to approximately 945,439 pages of records.[6] The produced discovery also includes approximately two hours of recorded undercover calls with the defendant and approximately nine hours of audio and video-recorded meetings with the defendant as part of the 2016 undercover operation.[7]

9.      Further, there are additional items in the government's discovery pipeline that the government anticipates producing to the defense within the next two weeks.   These items include memoranda and reports of interview of recently conducted interviews; records recently acquired from witnesses and other sources; text messages and chat conversations recovered from computers used by FusionPharm's principals and from the defendant's laptop computer; audio and video recordings of four meetings, approximately 10 hours in duration, with FusionPharm's principals as part of a 2014 undercover operation conducted as part of the investigation of the historical case; and accounting records recovered from FusionPharm's computers.[8]

10.     As part of its ongoing pretrial preparation of its case-in-chief, the government also

---

[6] Counsel for the defendant advises that he has retained a discovery consultant who has also done an inventory of the digital discovery produced to date. This consultant, defense counsel relates, estimates that discovery produced to date translates to approximately 1.2 million pages of records.

[7] The produced recordings also include 89 computer files of calls made to and from the defendant while in New York State custody totaling approximately 4 hours in length.   The government does not currently anticipate introducing these recordings in its case-in-chief in the instant prosecution.

[8] The additional production also includes audio recordings of calls made by and to the defendant while in federal pretrial detention in this case.   The aggregate duration of these calls is approximately 698 minutes.   The government does not currently anticipate introducing these recordings in its case-in-chief in the instant prosecution.

anticipates retaining a witness to provide expert testimony in the field of securities regulation, in particular concerning background matters outlined in the Superseding Indictment, and to make disclosure of this expert testimony in accordance with Rule 16 of the Federal Rules of Criminal Procedure and consistent with this Court's practice standards and rules.[9]  Additionally, the government anticipates preparing various summary charts and exhibits to present the results of analysis discerned from the examination of the voluminous bank account, brokerage account and securities transaction account records that have been and are being produced in the case.

11.    Transcripts of the 2016 recorded undercover conversations are also being prepared and will be produced to the defense upon being finalized.

**Government's Estimated Case-in-Chief Exhibits and Witnesses.**

12.    While the foregoing disclosure materials are voluminous, the government currently anticipates that its core materials – from which it anticipates drawing its exhibits for its case-in-chief – does not currently exceed 500 hundred discrete records. This estimate excludes from consideration underlying account and transactional records from which summary exhibits may be prepared.

13.    The government currently estimates that it may call between 30 and 35 witnesses in its case-in-chief, a number that excludes from consideration persons who may be called chiefly as records custodians.   The estimate is subject to change depending the nature and scope of trial stipulations that may be entered into by the parties.

---

[9]    The subject matter contemplated for proposed expert testimony include those identified in paragraphs 3 through 10 of the Superseding Indictment.

**Defendant's Request for a Personal Set of Discovery Materials.**

14.     As related above, the defendant is current detained pending trial. He is currently being detained at the Denver Contract Detention Facility in Aurora, Colorado.   In order to facilitate its review of discovery and trial preparation, the defense has requested that the government prepare and make available to the defendant personally at his detention facility a subset of the disclosure materials being produced to the defense.   Counsel for the parties have engaged in discussion exploring the nature of this subset of materials to be made available to the defendant personally and the logistics of the defendant's accessing and using these materials in his detention facility.

15.     A portion of the materials that have been produced to defense counsel to date, and anticipated additional material to be produced, contain addresses, account numbers and other personally identifiable information ("PII") of anticipated civilian witnesses in this case. Materials containing PII that have been provided to the defense to date have been produced without redactions based on a letter-understanding between counsel that defense counsel will retain custody of materials containing PII and safeguard the dissemination of these materials, ensuring that their use and dissemination is limited to the defense of the pending criminal case. The discussions concerning the provision of a subset of discovery materials to the defendant personally have, accordingly, included how to avoid the possibility of the defendant's personal and unsupervised access to materials containing PII and other sensitive information.

16.     Government counsel has contacted personnel at the Denver Contract Detention Facility who advise that the facility has a particular designated area that is equipped with computer facilities that will permit detainees to view materials on computer disks, flash drives

and other computer storage devices on a read-only basis, such that the detainee is not permitted to generate or maintain hard copies of the discovery images stored on the devices. Custody of the devices is maintained by the facility.   Detainees are permitted, however, to take handwritten notes on the materials they view and to retain and keep these notes outside of the designated area without supervision or restriction.   As a result, the government anticipates that whatever subset of disclosure materials are prepared for the defendant's personal use at his detention facility will need to be screened for PII and subject to redaction.   The government is currently exploring preparing a redacted set of materials for the defendant's personal use consisting of reports and memoranda of interviews, testimony transcripts and exhibits, and selected key documents that the government will likely designate as potential trial exhibits. The government will also undertake to furnish the defendant a personal set of the 2016 undercover telephone recordings and audio and video recordings of the undercover meetings, with a set of transcripts to follow. The recordings will only be available to the defendant in the facility's designated area.

17.     Defense counsel has advised that, given the large volume of documentary evidence and the hours of audio and video recordings, he does not view it as practical for him, or some defense investigator,to sit with the defendant at the detention facility while defendant reviews the discovery: Hence the need for discovery materials to be provided for the defendant's unaccompanied review.

## Government's Speedy Trial Calculations and Analysis

18.     The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, requires that a trial commence within 70 days of an indictment or arraignment thereon, whichever occurs later. 18 U.S.C. § 3161(c)(1). *United States v. Olivo,* 69 F.3d 1057, 1060 (10th Cir. 1995), *opinion supplemented*

*on reh'g,* 80 F.3d 1466 (10th Cir. 1996); *United States v. Kelly*, 45 F.3d 45, 47 (2nd Cir. 1995). Counsel for the parties agree that, with the return of a superseding indictment adding 28 new and distinct counts, a new 70-day speedy trial clock, with respect to these counts, is triggered and commences on the day following the defendant's August 4th arraignment.   Accordingly, counsel for the parties calculate that – without consideration of any exclusions of time from the Speedy trial Act computations – the last day of the 70-day period will be October 13, 2017. Without such exclusions, *voir dire* in the case must commence on that day. *United States v. Arnold*, 113 F.3d 1146, 1149 (10th Cir. 1997); *United States v. Patten,* 826 F.2d 198, 199 (2nd Cir.1987).[10]

19.     The government respectfully submits that there will likely be automatic time exclusions, relating to delays corresponding to proceedings in this case concerning the defendant, 18 U.S.C. § 3161(h)(1), that will pertain to the calculation of the Speedy Trial Act deadline and that there exist today grounds for finding that "end of justice" time exclusions pertain as well under Section 3161(h)(7) of the Act. These exclusions, the government respectfully submits, should be addressed with the parties and considered in connection with the setting of this case for trial.

20.     To begin with, unless both parties disavow pretrial motion practice in this case, it is likely that one or both parties will bring pretrial motions that may or may not require hearing and that, upon the filing of the motions, will toll the running of time under the Act until

---

[10]     In their earlier joint motion, the parties acknowledged that the charge set forth in the initial indictment remains on its original 70-day speedy trial clock. *See, e.g., United States v. Rushin*, 642 F.3d 1299, 1310 n.6 (10th Cir. 2011). An exclusion of time from the return of the superseding indictment in this case through arraignment would apply to toll the running of this first clock. *See, e.g., United States v. Kelly*, 45 F.3d 45, 48 (2d Cir. 1995).   In their joint motion, the parties agreed that they both desire this count to be tried with the remaining twenty eight counts of the superseding indictment and that the newer speedy trial clock govern the entire case.

resolution. 18 U.S.C. § 3161(h)(1)(D).   While neither the filing of these anticipated motions, nor time allotted the parties for preparing pretrial motions generally, can be used by a trial court to find an automatic time exclusion under Section 3161(h)(1)(D), *Bloate v. United States*, 559 U.S. 196 (2010), the likelihood and nature of pretrial motion practice and the time necessary to prepare and pursue pretrial motions can be factored in by the trial court in undertaking the calculus to determine whether there are ends of justice grounds under Section 3161(h)(7) that warrant exclusion of time from Speedy Trial Act computation. *Id*. at 214 (recognizing that subsection (h)(7) affords district courts sufficient flexibility to "grant necessary pretrial motion preparation time without risking dismissal" for non-compliance with the Act's seventy day deadline).   The prospect of pretrial motion practice, therefore, can – and should – be considered by the Court now in determining whether the ends of justice from continuing trial of this case beyond October 13th outweigh the best interests of the public and the defendant in a speedy trial.[11]

21.     Other factors also support such an overall finding.   This case, the government respectfully submits, is no less complex today than when the specter of complexity was raised by the defendant and his counsel in the defendant's March 10th continuance motion.   The subject matter of the case – involving the defendant's actions, omissions and advice in helping his coconspirators to circumvent (or navigate) a complex regulatory regime, in a highly specialized industry – remains no less complex.   The volume of discovery for the defendant and his counsel review is greater today, not less. Expert testimony and summary charts are still to be disclosed

---

[11]     The approach of considering possibly delays from motion practice upfront also makes common sense, as the alternative is to set a lengthy trial now only to risk having the parties return to the Court to address a trial continuance while in the midst of motion practice.

and digested. And the logistics of preparing a subset of disclosure materials for the defendant to review in a custodial setting only adds to the level of complexity. What is different is that now the defendant must defend against twenty-eight additional counts and, effectively, two additional criminal cases.

22. All of this the Court can consider now, before setting a trial. The statutory regime expressly empowers a trial court to do so. By its terms, Section 3161(h)(7)(A) permits a district court, *sua sponte* or upon motion, to continue a trial setting and exclude the delay, provided the court, after considering at a minimum the factors set forth in subsections (h)(7)(B)(i), (ii), and (iv), places on the record "either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *United States v. Rushin*, 642 F3d 1229, 1303-04 (10th Cir. 2011). A district court may do so even when the defendant personally objects, as the defendant's personal consent is not required. *See United States v. Williams,* 753 F.3d 626, 635 (6th Cir. 2014); *United States v. Lynch,* 726 F.3d 346, 356–57 (2nd Cir. 2013); *United States v. Sobh*, 571 F.3d 600, 603 (6th Cir. 2009).

23. The government respectfully submits that the Court should consider the foregoing information and engage the counsel for the parties in colloquy to determine whether this case should be set for trial beyond an October 13, 2017 pursuant to 18 U.S.C. §§ 3161(h)(7(A), (B)(i), (ii), and (iv).

24. Undersigned government counsel has discussed the contents of this status report with counsel for the defendant, and counsel for the defendant is aware of the matters the government raises herein.

Respectfully submitted,

ROBERT C. TROYER
ACTING UNITED STATES ATTORNEY


s/Kenneth M. Harmon
By:   Kenneth M. Harmon
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Tel. No. (303) 454-0100
Fax No. (303) 454-0402
E-mail: kenneth.harmon@usdoj.gov

13

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 3rd day of August, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:


Kirkland Leonard Brush
kbrush@kirkbrush.com


               s/Andrea K. Hough
               Andrea K. Hough
               Office of the U.S. Attorney