IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.17-cr-00008-WJM-1

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.     **GUY M. JEAN-PIERRE**,

        Defendant.

---

**DEFENDANT JEAN-PIERRE'S MOTION TO REVOKE
*ORDERS OF DETENTION* (ECF ## 15 and 77)**

---

THE DEFENDANT, GUY M. JEAN-PIERRE, by and through his attorney, Clifford J. Barnard, hereby moves this Court to review and then revoke the Magistrate Judge's February 9, 2017 *Order of Detention* (ECF # 15) and the January 22, 2018 *Order* (ECF # 77) and order that Mr. Jean-Pierre be released on bond pending his upcoming May 21, 2018 jury trial. Mr. Jean-Pierre specifically requests that he be granted bail with appropriate conditions, including placement in a Colorado halfway house. As grounds for this motion, Mr. Jean-Pierre states as follows:

### I.  COURSE OF THE PROCEEDINGS

Mr. Jean-Pierre is charged in a twenty-nine count *Superseding Indictment* (ECF # 29) with conspiracy to defraud (Count 1), wire fraud (Counts 2-16), mail fraud (Counts 17-20), securities fraud (Counts 21-23), attempted wire fraud (Counts 24-28) and money laundering (Count 29).

On February 9, 2017, a contested detention hearing was held at which Mr. Jean-

Pierre asked the Court to follow Probation's Pretrial Service's recommendation that he be released on a $10,000 unsecured bond and that he be placed at a halfway house. At the conclusion of the hearing, the Magistrate Judge ordered that Mr. Jean-Pierre be detained. (ECF # 15.)

At a second detention hearing on January 22, 2018, Mr. Jean-Pierre again asked the Court to follow Probation's Pretrial Service's recommendation of a $10,000 unsecured bond and placement in the halfway house, but the Magistrate Judge again denied bond. (ECF # 77.)

The Magistrate Judge denied bond on February 9, 2017 for the following reasons:

1. "Defendant has changed his name in Broward County, Florida and travels on that name, which is not the name under which he is charged" (ECF # 15, 02/09/2017 *Order* at 3);

2. "he was arrested in Southern District of New York [sic] and not the District of Colorado, only after an undercover operation occurred" (ECF # 70, 02/09/2017 hearing transcript at 89);

3. "Defendant has resided in the Dominican Republic since 2013, and has a three year-old child in that country" (ECF # 15, 02/09/2017 *Order* at 3);

4. "he has no viable employment in the United States" (ECF # 15, 02/09/2017 *Order* at 3);

5. "he has a valid passport" (ECF # 70, 02/09/2017 hearing transcript at 90);

6. "Defendant ... has limited ties to the United States" (ECF # 15, 02/09/2017 *Order* at 3) and "he has not been lived in the U.S. since 2013" (ECF # 70, 02/09/2017 hearing transcript at 90);

7. "Defendant has no discernible ties to Colorado" (ECF # 15, 02/09/2017 *Order* at 3) and "he doesn't have any current stable living conditions in Colorado" (ECF # 70, 02/09/2017 hearing transcript at 90); and

8. "while his criminal history is limited, he failed to answer or otherwise respond to civil matters" (ECF # 15, 02/09/2017 *Order* at 3).

The Magistrate Judge denied Mr. Jean-Pierre bond after the January 22, 2018 detention hearing as follows:

> ... in reviewing the arguments Defendant advances in the Opposed Motion to Amend Detention Order, this court finds that Defendant is simply re-arguing the same factors that were before the court at the original bond hearing; and this court does not find the fact that Defendant has no funds in his account with which to leave the state sufficiently compelling to merit release on the proposed conditions, particularly in light of his recent residence and child in a foreign jurisdiction and his changed name.

ECF # 77, 01/22/2018 *Order* at 2.

## III. THE LAW

18 U.S.C. § 3145(b) entitled "review of a detention order" states:

> [i]f a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

Mr. Jean-Pierre is invoking this right and is requesting that this Court revoke the Magistrate Judge's *Orders* of Detention (ECF ## 15 and 77) and order that he be released on bond.

In addressing Jean-Pierre's motion, the Court considers *de novo*, independent of the Magistrate Judge's determination, whether Mr. Jean-Pierre should be detained pending his trial. *See United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir.2003) ("[t]he standard of review for the district court's review of a magistrate judge's detention or release

order under § 3145(a) is de novo").

## IV.  ARGUMENT

Mr. Jean-Pierre is not likely to flee or pose a danger to any other person or to the community and can abide by any condition or combination of conditions for release.

The nature and circumstances of the offenses charged indicate that Mr. Jean-Pierre is a good candidate for bail because the alleged offenses are not crimes of violence and do not involve firearms, explosives or destructive devices.

The history and characteristics of Mr. Jean-Pierre also indicate that he is a good candidate for bail:

1. physical and mental condition: Mr. Jean-Pierre is in good physical and mental condition;

2. family ties: although Mr. Jean-Pierre has no family ties to Colorado, he does have a 26 year old daughter who resides in Coral Springs, Florida;

3. employment: although Mr. Jean-Pierre has never been employed in Colorado, he is capable of working and, if placed at a halfway house in Colorado, will seek employment with the assistance of the counselors at the halfway house;

4. financial resources: Mr. Jean-Pierre is indigent and has no assets or resources with which to flee and does not have the funds with which to commute from Florida to Colorado;[1]

5. length of residence in the community: because Mr. Jean-Pierre has never resided

---

[1] See ECF # 71-1, Exhibit A, Guy Jean-Pierre's "Resident Account Summary" from the GEO Aurora Detention Facility for March 6, 2017 to January 3, 2018 which shows that Mr. Jean-Pierre had $0.00 in that account for that entire period of time.

in Colorado, he is requesting that he be placed in a halfway house which would provide him with a residence in Colorado;

6. community ties: because Mr. Jean-Pierre does not have any ties to Colorado, he is requesting that he be placed in a halfway house in Colorado;

7. history relating to drug or alcohol abuse: Mr. Jean-Pierre has no history relating to drug or alcohol abuse;

8. criminal history: Mr. Jean-Pierre has only one conviction and that is for a misdemeanor;

9. record concerning appearance at court proceedings: 58 year old Mr. Jean-Pierre has never failed to appear in any criminal matter; because he chose not to contest certain SEC and disbarment proceedings, he did not appear in those civil proceedings but his appearance in those matters was optional; and

10. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release: Mr. Jean-Pierre was not on probation, on parole, or on other release at the time of the alleged current offense or arrest for this alleged offense.

Probation's Pretrial Services originally recommended that Mr. Jean-Pierre be released on a $10,000 unsecured bond and that he be placed at a halfway house. When interviewed by Pretrial Services in February, 2017, Mr. Jean-Pierre indicated that he wanted to be placed in a halfway house in Colorado because he did not have the funds with which to commute from Florida where he does have ties to the community to Colorado in order to appear for court in this matter.

Mr. Jean-Pierre's placement at the halfway house would enable him better to assist

his counsel in the preparation of his defense, including but not limited to, counsel not having to wait 2 ½ hours (as occurred recently) at the GEO Aurora Detention Facility before being able to meet with Mr. Jean-Pierre.

Although the government claimed that the Court could not trust the halfway house to keep him there (ECF # 70, 02/09/2017 hearing transcript at 83) and that "there is nothing that would prevent him, ..., from getting in a car and driving thousands of miles across the Mexican border and using one of the two names that he uses ..." (ECF # 70, 02/09/2017 hearing transcript at 83), the halfway house does have sufficient rules to prevent escape or deter escape. *See* ECF # 74-1, Exhibit C, Independence House Rules at 2 and ECF # 74-1, Exhibit C, Independence House Rules, notice on escape at 3 and 13.

Furthermore, there are a number of things "that would prevent [Mr. Jean-Pierre], ..., from getting in a car and driving thousands of miles across the Mexican border:" (I) if he were to leave the halfway house without authorization or failed to return on time, he would be reported to law enforcement authorities as having escaped; (ii) he does not have any funds[2] with which to "get[ ] in a car and drive[ ] thousands of miles across the Mexican border;" (iii) he does not have a car with which to "drive[ ] thousands of miles across the Mexican border;" (iv) he does not know anyone in Colorado who might assist him in "getting in a car and driving thousands of miles across the Mexican border;" (v) he has no connection to anyone in Mexico, a fact which would make a potential escape to or through that dangerous country a perilous exercise indeed; and (vi) because he is offering to surrender his passport, Mr. Jean-Pierre would have no document by which he could leave

---

[2] *See* ECF # 71-1, Exhibit A, Guy Jean-Pierre's "Resident Account Summary" from the GEO Aurora Detention Facility.

the United States in order to cross "the Mexican border" or any other border.

The halfway house does not tell its residents "to come and go according to a curfew" as the government claimed (ECF # 70, 02/09/2017 hearing transcript at 84); residents can only leave the halfway house to go to approved locations for approved purposes, must sign in and out to go to the authorized locations, must telephone from those locations to confirm that they have gone there and must telephone from those locations when they are leaving them; thus, Mr. Jean-Pierre would be permitted to leave the halfway house only for approved purposes and locations, only for the specified times to accomplish those purposes, would have to confirm that he was actually going to, arriving at and leaving those locations and his movements would be monitored.

A halfway house resident does not simply "show up every day and go back to his bed space at night" as claimed by the government (ECF # 70, 02/09/2017 hearing transcript at 84); a resident must stay at the halfway house at all times unless authorized to leave and then only according to monitored signing-in-and-out procedures; if a resident leaves without authorization or does not return on time, the facility has a policy in place that requires it to report the resident as an escapee to the local law enforcement authorities.

Although the Magistrate Judge found that Mr. Jean-Pierre "has been unemployed since 2013" (ECF # 70, 02/09/2017 hearing transcript at 90) and that "he has no viable employment in the United States" (ECF # 15, 02/09/2017 *Order* at 3), he is likely to be able to obtain employment while at the halfway house.

Mr. Jean-Pierre is NOT a dual citizen of the United States and Haiti, he is a citizen only of the United States. *See* ECF # 71-2, Exhibit B, *Declaration of Marcelo Dominguez de Guerra*. Undersigned counsel for Mr. Jean-Pierre offered, and again offers, to surrender

Mr. Jean-Pierre's United States passport in his legally changed name of "Marcelo Dominguez de Guerra" (his no-longer-valid passport in the name of "Guy Jean-Pierre" was canceled when he obtained his passport in his new name and, in any case, the old "Guy Jean-Pierre" passport expired on February 14, 2017). Mr. Jean-Pierre has no other document by which he could leave the United States or cross any border. Although he did change his name, Mr. Jean-Pierre did nothing to hide his identity from the authorities.

The government also presented evidence of Mr. Jean-Pierre's New York case in which he had been charged with 36 felonies. In that case, however, Mr. Jean-Pierre was ultimately convicted of only one misdemeanor charge (ECF # 70, 02/09/2017 hearing transcript at 79) and has finished serving his 1-year sentence in that case.

Although Mr. Jean-Pierre may have "failed to answer or otherwise respond to civil matters" (ECF # 15, 02/09/2017 *Order* at 3), he did, while contesting those matters, appear for his SEC depositions in an investigation in 2010-2013. Furthermore, he was not on bond in those matters for which he did not appear (the SEC and the attorney disbarment matters). Appearances in these matters were voluntary, NOT mandatory and Mr. Jean-Pierre was not on any bond in any of these matters.

If the Court deems them appropriate or necessary, there are conditions or a combination of conditions which will reasonably assure the appearance of Mr. Jean-Pierre as required and which will reasonably assure the safety of any other person and the community, with one of those conditions being that he be placed at a halfway house in Colorado, and, therefore, the Court should revoke the order of detention of Mr. Jean-Pierre before trial and set bail with those conditions.

WHEREFORE, because there are conditions of release that will assure that he will

not flee or pose a danger to the public safety, Mr. Jean-Pierre requests that this Court revoke the Magistrate Judge's February 9, 2017 *Order of Detention* (ECF # 15) and the January 22, 2018 *Order* (ECF # 77) again denying bond and that the Court grant Mr. Jean-Pierre bail with appropriate conditions, including placement in a Colorado halfway house, pending his upcoming May 21, 2018 jury trial.

DATED this 9th day of March, 2018.

Respectfully submitted,

*s/Clifford J. Barnard*

Clifford J. Barnard
Attorney for Defendant Jean-Pierre
4450 Arapahoe Avenue, Suite 100
Boulder, Colorado 80303
Telephone: (303) 449-2543
Facsimile: (303) 444-6349
Email:  *cliffbarnard@earthlink.net*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of March, 2018, I electronically filed the foregoing *Defendant Jean-Pierre's Motion to Revoke Orders of Detention (ECF ## 15 and 77)* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

A.U.S.A. Jeremy Sibert          *jeremy.sibert@usdoj.gov*

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Guy Jean-Pierre          *Via U.S. Mail*
Register # 78606-054

GEO Aurora Detention Facility
3130 N. Oakland Street
Aurora, CO 80010

*s/Clifford J. Barnard*
_____
Clifford J. Barnard
Attorney for Defendant Jean-Pierre