```
1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2
     Case No. 17-cr-00008-WJM-1
3    _____

4    UNITED STATES OF AMERICA,

5         Plaintiff,

6    vs.

7    GUY M. JEAN-PIERRE,

8         Defendant.
     _____
9

10           Proceedings before NINA Y. WANG, United States

11   Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 1:36 p.m., January 19,

13   2018, in the United States Courthouse, Denver, Colorado.

14   _____

15           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                           APPEARANCES

19           JEREMY SIBERT, Attorney at Law, appearing for

20   the Plaintiff.

21           CLIFFORD BARNARD, Attorney at Law, appearing

22   for the Defendant.

23   _____

24                         MOTION HEARING

25
```

2

1              P R O C E E D I N G S
2           (Whereupon, the within electronically recorded
3  proceedings are herein transcribed, pursuant to order of
4  counsel.)
5           THE COURT:  We are on the record in 17-cr-008-WJM,
6  United States of America vs. Guy M. Jean-Pierre.  Could I
7  have appearances of counsel, please.
8           MR. SIBERT:  Good afternoon again, Your Honor.
9  Jeremy Sibert on behalf of the United States.
10          THE COURT:  Good afternoon, Mr. Sibert.
11          MR. BARNARD:  Good afternoon, Your Honor.  Clifford
12 Barnard on behalf of the defendant, Mr. Guy Jean-Pierre, who
13 appears in the jury box, the second person over from the
14 right, the first row, in the dark green jumpsuit.
15          THE COURT:  Good afternoon, Mr. Barnard, and good
16 afternoon, Mr. Jean-Pierre.  All right.
17          We are here on a motion to amend the detention
18 order to set bail in this case.  I have been through the
19 defendant's motion, as well as the Government's response, and
20 I'm happy to entertain what argument you may have,
21 Mr. Barnard.
22          MR. BARNARD:  Your Honor, the Government has
23 basically argued that there should be no reopening of the
24 bond issue here because the defendant has failed to supply
25 the judicial officer with -- the Court here with any

1    information that existed that was not known to the
2    movement -- movant at the time of the hearing and potentially
3    that it was not material bearing on the issues.
4            The -- in the motion and with attachments that have
5    been filed with the Court, there have been a number of
6    different matters that were brought to the Court's attention.
7    And I think that the -- the fact of the matter is that a
8    number of the things that have been argued on behalf of
9    Mr. Jean-Pierre and that have been presented to the Court, in
10   fact, are not new.  They are things that were, in fact,
11   argued back on February 9 when the original date detention
12   hearing was held.  However, there was and there is in
13   particular one item that I believe is new, and that would be
14   Exhibit A, which was filed as Exhibit A to the motion, which
15   is Document 71-1, filed on the 18th of January.
16           This is a document that indicates the resident --
17   the Geo Group resident account summary for Mr. Jean-Pierre
18   for the last period of time since he has been incarcerated,
19   and it indicates that, in fact, he has absolutely no funds,
20   has had no funds, and continues to have no funds, which goes
21   to the heart of the argument on behalf of Mr. Jean-Pierre
22   that the recommended conditions of bond would be sufficient
23   to keep Mr. Jean-Pierre from being a flight risk.  And it --
24   it supports the arguments that were made before, but now is
25   evidence that could not have been presented because it didn't

1  exist.

2          This is a report that shows for the last 8 or 9

3  months -- excuse me, 9, 10, 11 months, Mr. Jean-Pierre has

4  had no assets which -- with which to help him be able to

5  abscond, should he choose to do so while at the

6  Independence House -- or at a halfway house.

7          The additional information that was presented and

8  the additional arguments are arguments in support of that

9  contention.  As I stated, and as I'm sure the Court knows,

10 probation back in February 9 and now probation still is

11 recommending an unsecured $10,000 bond with Mr. Jean-Pierre

12 being released to a halfway house.

13         The arguments that Mr. -- that would support that

14 were that Mr. Jean-Pierre has no funds with which to flee;

15 that the Independence House or a halfway house would be

16 sufficient to protect and to preclude as much as possible and

17 to deter Mr. Jean-Pierre from absconding or fleeing from that

18 facility.

19         That is why two days ago I submitted what is

20 Exhibit C, which is -- which was also filed and is Document

21 Number 74-1, which includes the Client Handbook for the

22 Independence House, a halfway house.  And in particular, on

23 pages 2, it talks about the requirements of signing in and

24 signing out, leaving -- what it takes and what is required to

25 be able to leave the facility; that once a person has left,

1    they must then contact the facility when they've arrived at
2    their location; that once they leave their location, they
3    must then go directly back, at which point they must sign in
4    and thus, even if Mr. -- even if a person were to abscond
5    from the halfway house, very shortly thereafter they would be
6    determined to have flown and would be very likely to be
7    caught in a very short period of time, considering the fact
8    there would be such a short period that a person would be
9    gone.
10            In the original hearing -- and furthermore, the
11   Exhibit C on page 3 talks about escape and would inform the
12   resident at the halfway house that escape and abscond
13   procedures begin 20 minutes after a scheduled sign-in time
14   has been -- has been missed.  Furthermore, the -- the
15   Independence House rules and regulations then on page 13 sets
16   forth the Colorado statute for escape from custody, thus
17   fully putting a resident on notice of the very serious charge
18   that would be brought against the person, albeit, state or
19   federal, for escape if they failed to follow the rules and
20   flee or abscond.  And I think that that would be a
21   significant deterrence for any person and, in particular, in
22   this case for Mr. Jean-Pierre.
23            The Government, at the previous hearing, suggested
24   that we couldn't trust the halfway house to keep him there
25   and that there is nothing to prevent him from getting in a

1    car and driving thousands of miles across the Mexican border
2    and using one of his two aliases.  And I submit that that
3    simply isn't accurate, as shown, both by the Independence
4    House rules and regulations, by the reality of it, and by the
5    lack of financial ability of Mr. Jean-Pierre.
6           One of the things that the Government has stressed
7    is that Mr. Jean-Pierre does not have any contacts or ties to
8    the Colorado community, and that is true; but that also works
9    toward making it so that again it would be less likely, more
10   difficult, for him to abscond or to flee since he would have
11   nobody here to assist him, not to mention the fact he doesn't
12   have any money with which to do it.
13          The Government had also presented, and it was not
14   really challenged at the last hearing; but presented a
15   statement from the agent saying that it was the agent's
16   understanding -- excuse me, the agent's understanding that
17   Mr. Jean-Pierre, in fact, was a dual citizen with Haiti and
18   the United States.  That, in fact, just is not the case.
19          He is an American citizen.  He has one passport
20   that is valid at this point, which I have in my possession,
21   which was offered last hearing and again is offered at this
22   point, his United States passport in the name of his legally
23   changed name to Marcelo Dominguez de Guerra.  So that -- that
24   would be the crucial document he would need in order to pass
25   across a border in order to flee the jurisdiction of the

1   United States.

2           The Government also talked about how, and actually
3   I believe the Court may have referred to how Mr. Jean-Pierre
4   does not have any kind of an employment history for the last
5   few years.  And again, I think that that's true and that in
6   one way suggests some problems for Mr. Jean-Pierre; but on
7   the other hand, with regard to his being placed in the
8   halfway house, it indicates that he is again without funds
9   and not likely to be able to pay for absconding or fleeing.

10          One of the requirements of the halfway house,
11  however, is that he seek employment and so that he would have
12  to do so.  And if he got employment, then he would have the
13  ties to the community with the employment and the rules and
14  regulations with regard to employment also would make it so
15  that if he does not show up for employment or if he leaves
16  there, it would be reported to the halfway house and he again
17  would be reported as escaping or absconding.

18          The situation for Mr. Jean-Pierre also is that he
19  is presently at the Geo Detention Center, immigration
20  detention center.  The Government was not particularly
21  impressed -- and I'm not making this as a drastic or a
22  significant argument -- but if he were to be able to reside
23  at the -- and permitted to reside at the halfway house, it
24  would assist him in aiding in the defense of his case.  As
25  pointed out in the bond motion on a previous occasion, newly

1    appointed co-counsel and then I also together went to see him
2    a few weeks ago, and the facility took two and a half hours
3    before they even got us in to see him.  Yesterday it took an
4    hour and 22 minutes for me to get in to see him.
5            At the halfway house, he would be -- he would be
6    readily available.  They have space where meetings can be
7    held and it would assist in a smoother and more efficient
8    representation of him.
9            The -- going back for a moment on the issue about
10   employment.  I also have submitted Exhibit D two days ago and
11   that is just a U.S. Bureau of Statistics report regarding
12   Colorado unemployment rate.  And it indicates that the
13   Colorado unemployment rate is now approximately 2.7 percent,
14   and I suggest that suggests that Mr. Jean-Pierre would be
15   likely to be able to find some employment if he were
16   permitted to reside at the halfway house.
17           This case is presently set for trial on April 9 so
18   we're not talking about a terribly long period of time,
19   although it will be several months.  And I think that, as
20   everybody acknowledged at the previous hearing, this is not a
21   presumption of a detention matter.  This is one where the
22   Government has to show that there is a preponderance of
23   evidence of flight and that was what the Court found before.
24           And I think with this additional information, this
25   new information, in particular, about his lack of funds and

1    ability to flee, I believe that there are conditions, in

2    particular, the condition that he be placed at the halfway

3    house, that would be sufficient to ensure his appearance in

4    this case.

5             THE COURT:  All right, thank you, Mr. Barnard.

6             Mr. Sibert.

7             MR. SIBERT:  Your Honor, as we said in our motion,

8    we would actually oppose this hearing to be reopened.  We

9    feel that there is no new evidence or the existence of new

10   evidence that could have been presented or was presented in

11   the defense's new motion or anything was material that was

12   presented in their motion.  I think that's where we need to

13   start first.

14            I'm assuming the Court has reopened the hearing

15   since the Court just entertained a proffer from the defense

16   counsel, and I'm not exactly sure what the Court's ruling is

17   on that, but we would stick to the argument presented in the

18   motion and the scribe.

19            Everything that counsel has just articulated to the

20   Court is something that could have been presented before.

21   The Government has provided case law, where the defense has

22   failed to provide any case law or statutory authority when it

23   comes to this type of hearing or reconsideration of bail.

24   Clearly the federal statute and Tenth Circuit precedent says

25   that Section 3142(f), Title 18, requires the existence of new

 1    evidence that was unavailable at the original detention
 2    hearing.
 3              As pertaining to the halfway house, it was very
 4    clear that that was an issue in the first detention hearing
 5    and the probation was -- actually recommended the halfway
 6    house and the Court rejected that condition for the reasons
 7    presented.
 8              The probation officer was here to explain any of
 9    the conditions or factors that pertain to the halfway house,
10    and everything about the halfway house could have been
11    addressed at that first hearing.
12              Secondly, according to the Haitian residency, the
13    Government did present the fact that Mr. Pierre, Jean-Pierre,
14    was born in Haiti.  So I believe when you're born in a
15    country, you need to relinquish your citizenship, at least
16    that's how it is in the U.S.  But we know from the record
17    presented at the first bond hearing that he did seek and did
18    get residency in the Dominican Republic.  That's through his
19    own words at the SEC testimony.  Again, I relinquish all that
20    information again in our response motion.
21              The third issue about employment, well, it kind of
22    works against the defense's argument where Mr. Jean-Pierre
23    doesn't have any funds to seek flight.  Well, if he gets a
24    job, he will have funds; therefore, it creates the issue of
25    having those funds available to seek flight in a case like

1    this where he is facing over 20 years of imprisonment.
2            So my understanding is that he can go out and get a
3    job, and also the fact of the matter of his financial ability
4    right now.  The Court was presented that with a financial
5    affidavit, again, information known to the Court.  So,
6    obviously, the defense providing Exhibit C, not to show that
7    he doesn't buy batteries or ear buds, but because he hasn't
8    bought anything at the detention facility for the purposes of
9    showing he didn't have any funds.  Well, obviously the
10   financial affidavit and the reasons why this Court provided
11   him CJA counsel is because he didn't have funds.  So again,
12   it isn't anything new that this Court didn't know when the
13   Court decided correctly the first time that Mr. Jean-Pierre
14   was a flight risk.
15           And finally, with the facility issues and the
16   inconveniences of waiting for times to prepare a defense in
17   this case, every defense counsel that has a client in a
18   detention facility is likely to suffer those same
19   inconveniences, but it's not a reason to allow someone out of
20   the facility when the Court first found that the defendant is
21   a flight risk.
22           Unfortunately, things happen, detention facilities
23   and the staff has to address issues based upon the incidents
24   and the concerns that they have at the time, and
25   unfortunately, that means at times defense counsels have to

1   wait to see their clients.
2           But more importantly, it was defendant Jean-Pierre
3   in December of 2017 that sat before the district court with
4   the new counsel and agreed to the fact that he agreed to a
5   continuance in this case, knowing that he was in custody.
6           I know counsel said trial was set for April 9.  I
7   believe that's incorrect.  It's actually set for May 21,
8   2018.  At the time both the defense and the defendant knew
9   that the trial was going to be continued.  And so the Court
10  had to inquire, the district court had to inquire into
11  defendant Jean-Pierre's, about his right to have a speedy
12  trial if he agreed to a continuance knowing that he was in
13  custody.  And Mr. Jean-Pierre did not object to it and he did
14  agree to a continuance understanding his situation.
15          And again, as I pointed out in the motion,
16  Mr. Jean-Pierre has had discovery in this case since at least
17  October of 2017, and in fact, the Government conducted a
18  reverse proffer, which is essentially where Government
19  counsel and the agent sat down with Mr. Jean-Pierre and his
20  former counsel, Mr., I believe it was, Curt Rush, and went
21  over a 60-slide PowerPoint describing the best evidence of
22  this case according to the Government, which included
23  portions of transcripts, interviews, recordings, copies of
24  physical evidence such as checks, payment stubs, and Skype
25  messages and e-mails between Mr. Jean-Pierre and the

1    co-defense in this case, Mr. William Seers (ph) and
2    Mr. Robert Ditman (ph).
3            So Mr. -- the defendant himself, Mr. Jean-Pierre,
4    has had months of time to essentially make the best of his
5    time with his new counsel when it comes to the discovery in
6    this case and preparing a defense.
7            And as pointed out in the first detention hearing
8    and also in the response to this request to open the bail --
9    this bail hearing again, which the Government would object to
10   based upon the fact that there has been no new evidence or
11   material evidence, which are both needed for the Court to
12   reopen it, we would argue the fact that Mr. Jean-Pierre is a
13   very intelligent person and actually has or had a license to
14   practice law.  So he is a different defendant than most
15   criminal defendants in the fact that at one point he was
16   qualified to practice law and was a professional in this
17   profession and, I would argue, understands criminal legal
18   discovery better than 99 percent of defendants that are --
19   that comes before this Court.
20           I don't know if the Court has any issues or
21   concerns from the Government, but I would finally point out
22   that it's the Government's belief that this Court was right
23   in February of 2017 in making the ruling that Mr. Jean-Pierre
24   was a flight risk and we would argue that he continues to be
25   that flight risk.

```
 1              THE COURT:  Thank you, Mr. Sibert.
 2              Anything else, Mr. Barnard?
 3              MR. BARNARD:  Your Honor, with regard to both
 4     Mr. Jean-Pierre being an attorney and able to possibly better
 5     understand discovery, I assume that that argument is
 6     suggesting that it would take less time for him to do --
 7     spend time with his defense counsel, although I'm not
 8     completely sure of the point there.
 9              I would point out, however, that -- that although
10     Mr. Jean-Pierre did receive some redacted discovery by at the
11     end of October, since the end of October there has been a
12     significant amount of additional discovery that has been --
13     has been supplied to the defense, and that material has not
14     been supplied to Mr. Jean-Pierre.
15              At this point -- and the defense is being assisted
16     in this -- the management of the discovery material by
17     Richard Demarest, who is putting it into discovery -- into
18     searchable format, et cetera.  And in doing so, Mr. Demarest
19     has determined that at present there is 2,253,000 pages of
20     discovery.
21              So this is not just a small amount of discovery, a
22     medium amount of discovery, or even a large amount of
23     discovery that Mr. Jean-Pierre and counsel have to go look
24     at, work through together.  This is a massive amount of
25     discovery.  And so I think that that is a significant
```

1    consideration.
2            And, in fact, as far as new -- new evidence for the
3    Court to consider, this much larger number of pages of
4    discovery is new because it has only been supplied, most of
5    it has been supplied -- in fact, I think, just about all of
6    it has been supplied since the February 9 detention hearing.
7            With regard to indigency being shown by the
8    financial affidavit, there was a showing of indigency for
9    Mr. Jean-Pierre, and Exhibit A, however, shows that it was
10   a -- was a position and is a continuing position and is his
11   position at this point also, so that is new evidence that was
12   not available before.
13           The Government makes a point about Mr. Jean-Pierre
14   agreeing -- and counsel is right, the trial is May 21.  I
15   have a different trial on April 8 in a different court --
16   makes the point that Mr. Jean-Pierre agreed to this
17   continuance knowing that he was incarcerated.
18           I don't understand how this is something that
19   should thus make it so that he should remain incarcerated
20   because he's a flight risk.  In fact, he agreed to a
21   continuance because his prior counsel retired and could --
22   was not any longer going to be representing him, and new
23   counsel, as in I myself, was appointed on November 13 and was
24   facing seeing 2.353 million pages of discovery.  And so
25   Mr. Jean-Pierre reluctantly agreed to a continuance because

1    he recognized and realized that in order to prepare for a
2    defense and to work with counsel, a continuance was
3    necessary.  I'm not sure how the fact that he agreed to it
4    otherwise has any relevance here today.
5         I think that the halfway house has the mechanism
6    set in place and, yes, the halfway house was discussed and
7    talked about at the February 9 hearing, but it was not
8    presented with regard to all of the -- the checks and
9    balances that were there for the Court to consider in trying
10   to determine whether or not it itself would be sufficient for
11   having those checks and balances to keep Mr. Jean-Pierre from
12   fleeing.
13        I think that under these circumstances, the
14   Government, with this additional evidence before the Court,
15   has not met its burden of showing that he's a flight risk.
16        THE COURT:  All right, thank you.
17        Pending before the Court today is defendant
18   Jean-Pierre's opposed motion to amend the detention order and
19   to set bail.  That's Docket Entry Number 71.  The Court has
20   entertained argument, it is taken under advisement.  I'll
21   issue a written order later today or first thing Monday
22   morning.
23        Anything further on this matter, Counsel?
24        MR. SIBERT:  No, Your Honor, thank you.
25        THE COURT:  All right.  We will be in recess.

```
 1              (Whereupon, the within hearing was then in
 2     conclusion at 2:04 p.m.)
 3
 4
 5     I certify that the foregoing is a correct transcript to the
 6     best of my ability to hear and understand the audio recording
 7     and based on the quality of the audio recording from the
 8     above-entitled matter.
 9
10     /s/ Dyann Labo                      March 8, 2018
11     Signature of Transcriber            Date
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```