# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Criminal Case No. 17-cr-00008-WJM**

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**v.**

**1. GUY M. JEAN-PIERRE,**

       **Defendant.**

---

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO AMEND DETENTION ORDER AND TO SET BAIL

---

The United States, through its representative Jeremy Sibert, Assistant United States Attorney for the District of Colorado, hereby submits this response to the defendant's second motion to amend detention order and set bail as laid out in Document 78.

Pursuant to 18 U.S.C. § 3142(f)(2)(B), this Honorable Court may reopen the bond hearing in this case any time before a trial if this Court finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of the community. "[T]he information must be ***both material and must not have been [known]*** to the movant at the time of the first hearing." *United States v. Garcia*, 445 Fed. Appx. 105, 108 (10th Cir. 2011)(Unpublished), *United States v. Dillion*, 938

1

F.2d 1412, 1415 (1st Cir. 1991); *United States v. Ward*, 234 F.Supp.2d 1183, 1185 (N.D.Okla. 2002); *United States v. Flores*, 856 F.Supp. 1400, 1405 (E.D.Cal. 1994); and *United States v. Zapata-Hernandez*, 2006 WL 1659472 (D. Colorado 2006).  If both parts of the test are not met, the Court may decline reopening the bond hearing.  *Id*.  Section 3142(f) requires the ***existence of new evidence that was unavailable*** at the original detention hearing.  *See United States v. Garcia* at 108, *citing*, *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003).

In this case, defendant Jean-Pierre is requesting this Honorable Court to reopen his bond hearing to amend the detention order and set bail, without providing any material or new evidence that was unavailable at the original and second detention hearing.   Defendant provides a laundry list of his characteristics, which were available or could have been offered at the initial detention hearing, and therefore known to defendant Jean-Pierre.  *See United States v. Zapata-Hernandez* at 1.

Next Defendant Jean-Pierre argues that he is a candidate for bail because the alleged offenses are not crimes of violence.  The government agrees that the alleged offenses are not crimes of violence but does argue that they are serious crimes, where defendant Jean-Pierre is facing over twenty years of imprisonment if convicted.   Furthermore, the evidence against Jean-Pierre is strong to include recorded conversations, emails, skype messages, witness testimony, and physical evidence, all which inculpate Jean-Pierre in the alleged criminal conduct as stated in the indictment.  As in *United States v. Berku*n, 392 Fed.Appx. 901, at 2 (2nd Cir. 2010), another securities fraud case, the Court correctly concluded that because the evidence of guilt is strong, it provides the defendant with an incentive to flee.

Finally, defendant Jean-Pierre argues for placement in the halfway house as a condition that would assure his appearance, which is the same condition presented in the first detention hearing and denied by this Honorable Court.  The attacks made by the defendant on the government's arguments regarding potential dangers of placement at the halfway house at the first hearing in February 2017 and again at the second hearing in January 2018 could have been offered/made at those hearings.[1]  Clearly, the procedures, regulations, and possibility of being placed in a halfway house or attacks to the government's arguments are not considered new evidence or material enough to reopen the hearing.

Furthermore, defendant Jean-Pierre's argument of being able assist his counsel in preparing a defense in a halfway house better than when he is in custody fails.  Defendant Jean-Pierre in December 2017, knowing that he was in custody since February 2017, agreed to continue his trial with new counsel.  The government provided defendant Jean-Pierre a large subset of the discovery in this case around October of 2017 to include redacted interviews (redactions concerned personal identifiable information), reports concerning the investigation, undercover recordings, and SEC testimony transcripts and exhibits.  In addition, the government provided Jean-Pierre and his counsel with a reverse proffer (60 slide power point) concerning the government's best evidence of the case in person.  Counsel's complaints about waiting to see defendant Jean-Pierre at the detention facility does not justify this Honorable Court to amending defendant Jean-Pierre's detention to a halfway house.  Modifying a detention order to grant bail

---

[1] Pursuant to the law, any argument/attack, against the government's position, that were able to be made by the defense at the first detention hearing are not reasons to reopen a bond hearing, let alone having the opportunity to make the same argument two times.   The law basically allows "one bite at the apple" but in this case, the defense has had at least "two bites at the apple" and now they are requesting a third time.

at a halfway house due to some inconveniences at a detention facility will result in an overflow of motions from defendants requesting release for the same inconveniences.  In addition, inconveniences at a detention center is not material for the purpose of reopening/reconsidering a detention hearing. [2]

Unlike the defendant in *Berkun* who was a United States citizen with strong roots in the community, a supportive family, and a history of appearing in court who was still deemed a flight risk by the court, defendant Jean-Pierre's community ties, in his own words, are now within the Dominican Republic.  Defendant Jean-Pierre before residing in the Dominican Republic resided in South Florida where he practiced securities law.  Mr. Jean-Pierre was born in Haiti and became a United States citizen.   From 2010 through 2013, defendant Jean-Pierre was investigated by the SEC, by the Florida State Bar, and indicted by the New York County's District Attorney's Office.

During these investigations, defendant Jean-Pierre testified that he was establishing residency in the Dominican Republic and invoked his Fifth Amendment Right to Remain Silent when asked about forging his nieces name on legal opinion letters after he was barred from drafting such letters.  The SEC lost contact with defendant Jean-Pierre which resulted in emails bouncing back, certified mail being returned, and no known addresses in Florida or the

---

[2] Defendant Pierre, via defense counsel, stated in his motion that there was a 2.5 hour wait at the GEO Aurora Detention Facility before counsel could meet with him. See Doc. 78 at page 6.  Ironically, this was the exact same waiting time expressed in defendant's motion in Doc. 71 filed two months earlier.  Doc. 71 was filed on January 8, 2018, which was the same date and first-time counsel went out to visit defendant Pierre according to the detention facility's logs and staff.  According to the records at the detention facility and speaking with the staff there have been at least six visits.  The government is unaware of any other issues regarding the next five or more visits after speaking with the staff at the facility.  If counsel has an issue in seeing their client, the government is willing inquire with the detention facility to see what possible arraignments could be made to prevent delays.  However, a one-time delay is not material for reversing a Magistrate Judge's order.

Dominican Republic.  At one point, an investigator for the SEC located defendant Jean-Pierre just arriving back into the United States at a hostel.  Defendant Jean-Pierre himself stated that he was surprised that the SEC was able to track him down and admitted to not having a physical address for his law practice and allowing mail to "pile up."   After the SEC was able to serve defendant Jean-Pierre with a complaint, Jean-Pierre never made any responses, appearances in court, communications with the court, or defenses against the allegations of forgery.

The Florida State Bar faced similar results when it began an investigation into defendant Jean-Pierre around December 2012.   At first, Jean-Pierre responded to the Bar's inquiries into grievances through the middle of 2013, usually appearing by phone or emails.  However, defendant Jean-Pierre failed to appear for a hearing in June 2013, and thereafter had no further contact with the Bar.   Jean-Pierre failed to show at an Order to Show Cause Hearing and the hearing's notice that was mailed was eventually returned.  The Florida Bar held defendant Jean-Pierre in default and disbarred him from the practice of law.

In 2012, the SEC referred defendant Jean-Pierre's forgery investigation to the New York County's District Attorney's Office (DA).   After the DA conducted their investigation, a thirty-six count indictment was returned in August of 2013.  At the time, law enforcement did not know the whereabouts of Jean-Pierre and there were no indications that he was in the United States and was presumed to be in the Dominican Republic.  The DA learned that defendant Jean-Pierre applied for a United States Passport with his new name, Marcelo Dominguez de Guerra, in Santo Domingo.  Defendant Jean-Pierre admitted to changing his name in 2011 because it was an easier name to pronounce in the Dominican Republic.

Finally, in the federal undercover case, defendant Jean-Pierre's status was in the Dominican Republic.  The confidential informant informed law enforcement that defendant Jean-Pierre was aware of the search warrants and criminal investigation concerning Fusion Pharm. Defendant Jean-Pierre stated that he had a three-year-old boy out of wedlock in the Dominican Republic and had not been back to the United States for three years.  In addition, defendant Jean-Pierre stated that he did obtain a United States passport in the Dominican Republic and that he traveled occasionally between Haiti and the Dominican Republic.  Defendant Jean-Pierre did not have any plans to return to the United States until he agreed to assist in further securities fraud regarding the undercover case.  United States travel database records known at this time show that defendant Jean-Pierre's likely last outbound travel from the United States was in July 2013.

The Honorable Magistrate Court correctly heard all the evidence and provided the opportunity to allow for available evidence or arguments to be made by the parties at the first detention hearing in February 2017.  This Court found that no conditions could be placed on defendant Jean-Pierre to assure the safety of the community or his appearance in court.  The same Court, granted a second hearing over the objections of the government in January 2018. The Court found that the defendant reargued the same factors that were before the Court at the original bond hearing and ordered defendant Pierre to remain in custody.  The defendant's motion (Doc. 78) is essentially the same exact motion/argument as his previous request for bond in Doc. 71.

Defendant Jean-Pierre is an educated individual who at one time was a professional. However, defendant Jean-Pierre left that all behind by failing to appear, respond, or address SEC investigations, Bar inquires/hearings, and court hearings.  As a result of defendant Jean-Pierre's

failures to show or respond, the court entered findings and issued default judgments regarding the SEC investigation, Jean-Pierre was disbarred, and indicted by the New York DA's office and the United States Attorney's Office for the District of Colorado.   Any individual that is willing not to appear in order to protect his livelihood, commits fraudulent acts and agrees to commit further fraudulent acts, and is facing over twenty years in prison, is a flight risk.

Defendant Jean-Pierre has not provided material or new evidence to allow this Honorable Court to reopen the detention hearing, which is required by the federal statute and case law. Everything that defendant Jean-Pierre argues in his motion is not new (probation recommended the halfway house, this Honorable Court is familiar with the conditions of the halfway house), material, and could have been presented in February 2017.   It was defendant Jean-Pierre who agreed to continuing his trial even though he was in custody at that time.

For the above reasons, the defendant's motion to amend detention order and set bail should be denied.

Dated this 20th day of March 2018

Respectfully submitted,

ROBERT TROYER
United States Attorney


 /s/ JEREMY SIBERT
Jeremy Sibert
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, Colorado  80202
(303) 454-0100
FAX: (303) 454-0403
Email: jeremy.sibert@usdoj.gov

Attorney for the government

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 20th day of March 2018, I electronically filed the foregoing **UNITED STATES RESPONSE MOTION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Clifford Barnard
Attorney for the Defendant

<div align="center" style="text-align:left">

*s/Jeremy Sibert*
JEREMY SIBERT
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0406
Jeremy.Sibert@usdoj.gov

</div>