IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA

               Plaintiff,

v.

1.      GUY M. JEAN-PIERRE,
        a/k/a Marcelo Dominguez de Guerra,

               Defendant.

---

**SECOND SUPERSEDING INDICTMENT**

---

The Grand Jury charges:

<u>COUNT 1</u>
(Conspiracy to Commit Securities Fraud)

1.      Beginning as early as on or about March 25, 2011 and continuing at least through on or about May 15, 2014, the exact dates being unknown, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, did knowingly and willfully conspire, combine and agree with Coconspirators WJS and SMD, and with other persons both known and unknown, (a) to defraud the United States and one of its agencies, the United States Securities and Exchange Commission ("SEC"), by impeding, impairing, defeating and obstructing the lawful governmental functions of the SEC; a (b) to commit the following offenses against the United States:

1

(i) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5 [Rule 10b-5].

Background

2.      FusionPharm, Inc. ("FusionPharm) was a corporation with its principal place of business in Denver, Colorado and later in Commerce City, Colorado.   Although not registered with the SEC, the corporation's stock had been quoted on the OTC Link and had been publicly traded.   In or about November 2010, Co-conspirator WJS, working with defendant JEAN-PIERRE, negotiated for control of the corporation, Baby Bee Bright Corporation, to be turned over to Co-conspirators WJS and SMD.

3.      With this change in control and ownership, FusionPharm's principal business became the development, manufacture and sale of steel shipping containers retrofitted and refurbished for use as hydroponic growing pods, branded as "PharmPods," for indoor plant cultivation, primarily cannabis.   Co-conspirator SMD was held out to be the founder, Chief Executive Officer and sole Director of FusionPharm but, in fact, operated FusionPharm, and pursued and developed its business, together with Co-conspirator WJS, and the two Co-conspirators together beneficially held and controlled the majority of shares of FusionPharm's common and preferred stock.

4.      In disclosure documents filed in December 2011 and in March 2012 on the OTC Link website, defendant JEAN-PIERRE was described as FusionPharm's Corporate Secretary and, at times its Legal Counsel, as well as one of its paid employees.   From its inception as FusionPharm through in or about August 2013, JEAN-PIERRE functioned as the

2

company's *de facto* General Counsel and provided legal advice and services in connection with the company's corporate and securities matters.

5.      In October 2011, the Financial Industry Regulatory Authority, Inc. ("FINRA") was in the process of conducting an investigation, among other things, of trading activity involving the common stock of FusionPharm, including sales of that common stock that were being conducted by or on behalf of Microcap Management, LLC ("Microcap"), an entity formed by Co-conspirator WJS.   The brokerage account records relating to these stock sales included Rule 144 Attorney Letters authored by defendant JEAN-PIERRE's niece, Relative A.   On or about October 5, 2011, an investigator for FINRA telephonically contacted Co-conspirator SMD to set up a telephone interview to discuss FusionPharm and its securities trading activities.   The FINRA investigator interviewed SMD about these and related subjects the following day.   As a part of the manner and means of carrying out the conspiracy, Co-conspirator SMD, in that interview and in follow up communications with the FINRA investigator, represented, in words and substance, among other things, that Co-conspirator WJS' role at FusionPharm was limited to being a part-time salesman; that he was unaware of WJS having owned or sold any FusionPharm stock; that WJS no longer owned Microcap; and that he would undertake to produce written confirmation of this to FINRA.

<u>Manner and Means of the Conspiracy</u>

6.      As a further part of the manner and means of carrying out the conspiracy, and attempting to do so, and in order to deflect FINRA's inquiry about FusionPharm stock sales by WJS and Microcap, Co-conspirators WJS and SMD and defendant JEAN-PIERRE undertook the following:

A.      On or about October 19, 2011, defendant JEAN-PIERRE, at WJS'
request, prepared a stock purchase agreement and incorporated assignment of interest, back
dated to May 9, 2011, that purported to convey to another individual ("Individual A") as of
the May 9th date, all ownership interest that conspirator WJS had had in Microcap, and to
transfer to Individual A all right and title in all Microcap brokerage accounts for the purchase
price of $10.00.   Individual A worked with Co-conspirator WJS to sell Co-conspirator WJS'
FusionPharm stock.

B.      A short while thereafter, Co-conspirator WJS signed and backdated
these documents and caused Individual A to do the same.

C.      On or about November 30, 2011, Defendant JEAN-PIERRE, acting in
his capacity as FusionPharm's Corporate Secretary, then drafted a letter responding to the
FINRA investigators' renewed requests for follow up written information about WJS, the
Microcap stock sales and the change in ownership of Microcap.   Defendant JEAN-PIERRE
provided a draft of the letter for review and approval by SMD and WJS, and following their
review and approval, defendant JEAN-PIERRE sent this letter to the FINRA investigator in
the form of an email.   In this email, defendant JEAN-PIERRE characterized WJS as "a prior
owner of Microcap" and indicated, in words and substance, in material part, that the requests
concerning WJS and Microcap constituted non-company information that SMD was not
authorized to produce to FINRA; that FusionPharm was not, in any event, in possession of the
requested written information concerning WJS, Microcap or its new owner; and that FINRA
should direct further requests for this information to Microcap.

7.      It was a further part of the manner and means of carrying out the conspiracy, in order to generate additional FusionPharm common stock that could immediately be sold, without registration and without limitation, into the public securities markets, that Co-conspirators WJS and SMD, together with defendant JEAN-PIERRE, did and caused the following to be done:

A.      Over the course of June 2012 through in or about December 2012, with the knowledge, advice and approval of defendant JEAN-PIERRE, Co-conspirators WJS and SMD, working together with another individual (identified hereinafter as, "Co-conspirator A"), fabricated promissory notes and incorporated credit line agreements, in order to portray some of the money that had previously been deposited into FusionPharm's bank accounts from the Microcap FusionPharm stock sales as loans from Bayside Realty Holdings, LLC ("Bayside").   Bayside was an entity controlled and operated by Co-conspirator WJS that was held out to be managed and owned by a blood relative family member (hereinafter "Family Member A"), and Meadpoint Venture Partners ("Meadpoint"), an entity set up and controlled by Co-conspirator WJS, that had been extended to FusionPharm over a year before.

B.      Co-conspirators WJS and SMD and Co-Conspirator A fabricated documentation making it appear that FusionPharm had drawn down on the supposed credit lines established with Bayside and Meadpoint by specified amounts, and they assembled bank records to offer substantiation for these supposed earlier credit line drawdowns.

C.      As part of an initial failed effort to sell one of these supposed debt obligations – the indebtedness to Bayside -- to a prospective outside investor, the Co-conspirators, working with defendant JEAN-PIERRE, portrayed the debt obligation as a

5

straightforward promissory note and provided the prospective investor a due diligence package consisting of a version of the fabricated back-dated promissory note, together with the fabricated draw down requests and other, fabricated back-dated documents that defendant JEAN-PIERRE helped prepare depicting prior corporate actions.

          D.        Co-conspirators WJS and SMD and Co-Conspirator A, in the final iterations of these fabricated promissory notes and supporting documents, made it appear that the supposed debt evidenced by these notes could be converted in whole or in pieces, at the election of the noteholders, into shares of FusionPharm common stock at a specified conversion rate of one FusionPharm share for every penny of debt supposedly still owed on the notes by FusionPharm.

          E.        Co-conspirator SMD, on behalf of FusionPharm, and Co-conspirator WJS, on behalf of Meadpoint and acting for Family Member A on behalf of Bayside, executed the backdated promissory notes and documents.

          F.        Co-conspirators WJS then generated packets of documents that WJS caused to be presented to FusionPharm's stock transfer agent, over a series of months, in order to effectuate the conversion of portions of the supposed debt held by Bayside and Meadpoint into shares of FusionPharm common stock. The packets typically included the following:

- convertible promissory notes that Co-conspirators WJS and SMD had backdated;

- the backdated draw down requests that SMD had signed on behalf of FusionPharm;

- copies of bank account statements showing deposits to FusionPharm's accounts corresponding to the draw down requests;

- letters from Bayside and Meadpoint (depending on the entity exercising the conversion), for signature by Family Member A for Bayside and WJS for Meadpoint, falsely representing that the entities were not affiliates of FusionPharm;

- additional statements of non-affiliation for Bayside and Meadpoint (again depending on the entity exercising the conversion), reiterating that neither entity was a FusionPharm affiliate and additionally representing that neither Family Member A, in the case of Bayside, and WJS, in the case of Meadpoint, was an officer, director, control person or holder of more than ten percent of the securities of FusionPharm;

- a FusionPharm officer's certificate, signed by SMD, representing that neither Bayside nor Meadpoint (depending on the entity making the conversion) were affiliates of FusionPharm and were outsiders to the company and management, with no other method of control over the company, and that the convertible promissory notes that were the vehicles for the conversion were valid obligations of the company;

- letters signed by SMD reiterating that Bayside and Meadpoint were not affiliates of the company.

G.      Defendant JEAN-PIERRE, using the foregoing submissions prepared for the FusionPharm stock transfer agent, as part of this process, would prepare Rule 144 Attorney Opinion Letters opining that the shares of FusionPharm stock being converted from the supposed Bayside and Meadpoint debt could be issued as unrestricted, free-trading shares, without the need for a restrictive legend, because of Bayside's and Meadpoint's supposed non-affiliate status and because the one year holding and the other requirements for a registration exemption under SEC Rule 144 had been met.

H.      Defendant JEAN-PIERRE would then transmit the Rule 144 Attorney Opinion Letters, together with some or all of the documentation that had been submitted to the FusionPharm stock transfer agent, to an attorney in California whom he had previously

recruited to sign Rule 144 Attorney Opinion Letters and other opinion letters on JEAN-PIERRE's behalf generally (said attorney hereinafter, the "Co-conspirator B").

        I.        Co-conspirator B would then retype the Rule 144 Attorney Opinion Letters on his own letterhead and, upon signing them in his own name, would return the completed letters to defendant JEAN-PIERRE, who, in turn, would forward them to Co-conspirator WJS for submission with FusionPharm's stock transfer. Co-conspirator WJS would then present the completed Rule 144 Attorney Opinion Letters to the transfer agent, completing the process.

        J.        Through these false portrayals of Bayside and Meadpoint as non-affiliates of FusionPharm and the promissory notes to them as bona fide convertible indebtedness held for a requisite period of time, FusionPharm's stock transfer agent was induced into issuing certificates for hundreds of thousands of shares of FusionPharm common stock that could be immediately sold into the public securities markets without limitation.

        8.        It was a further part of the manner and means of carrying out the conspiracy that Co-conspirator WJS thereafter caused a substantial portion of the common shares issued to Bayside and Meadpoint as a result of these supposed debt conversions to be deposited into brokerage accounts set up in the names of Bayside and Meadpoint and then caused these shares to be sold in the public securities markets.   The Rule 144 Attorney Opinion Letters prepared by JEAN-PIERRE and retyped by Co-conspirator B would be presented to the brokerage firms, as necessary, in order to facilitate the deposit of these shares.

        9.        As a part of the manner and means of carrying out the conspiracy, the unrestricted commons shares issued to Bayside and Meadpoint as result of the supposed debt

conversions would, alternatively, be sold in private transactions to other individuals, who would, in turn, sell the shares into the public securities market.   Additionally, remaining portions of the supposed Bayside and Meadpoint convertible debt would be sold outright to other individuals who then converted the purchased debt into free trading, unrestricted common shares of FusionPharm stock and then publicly sold the shares.   In each of these instances, the conversions would be facilitated by Rule 144 Attorney Opinion Letters prepared by defendant JEAN-PIERRE, retyped by Co-conspirator B and submitted by Co-conspirator WJS to the stock transfer agent.

10.     As a further part of the manner and means of carrying out the conspiracy, defendant JEAN-PIERRE in consultation with Co-conspirators SMD, WJS, and Co-conspirator A, a business associate of WJS, would cause the financial statements and the quarterly and annual reports that were posted to OTC Link website to omit facts to include that Meadpoint, Vertifresh, LLC ("Vertifresh"), and FusionPharm were under the common control of Co-conspirators SMD and WJS, criminal convictions of beneficial owners of FusionPharm, related party transactions with immediate family members and significant beneficial owners of FusionPharm stock, and Co-conspirator WJS' involvement in the FusionPharm and his beneficial ownership of its stock.   Vertifresh was a limited liability company jointly owned and controlled by Co-conspirators WJS and SMD.   In connection with the posting of these quarterly and annual reports to the OTC Link website, defendant JEAN-PIERRE would and did prepare a series of corresponding Current Information Letters that stated and indicated, among other things, that the letter's author had reviewed FusionPharm's current and past annual and quarterly OTC Link submissions and that in the

author's opinion the information disclosed in these findings constituted "adequate current information," within the meaning of the federal securities law, concerning FusionPharm and its securities. JEAN-PIERRE would and did pass these letters along to Co-conspirator B for Co-conspirator B to retype onto his own letterhead.   JEAN-PIERRE would then transmit the retyped Current Information Letters to Co-conspirators SMD and WJS, who would upload them onto the OTC Link website.

<u>Overt Acts</u>

11.     In furtherance of the conspiracy and to effect the objects thereof, one or more overt acts were carried out by at least one co-conspirator in the State and District of Colorado and elsewhere, which overt acts included the following:

A.     On or about September 1, 2010, defendant JEAN-PIERRE sent a Skype message to Co-conspirator WJS that acknowledges Co-conspirator WJS' making a deal with a company he just acquired and Co-conspirator WJS acknowledging his acquisition of the company to defendant JEAN-PIERRE.

B.     On or about March 25, 2011, an Issuer Company-Related Action Notification form was filed with the FINRA providing notice of a name change to, and stock symbol change with respect to, FusionPharm, identifying SMD and Family Member A as the sole officers and directors of the company, and representing, among other things, that none of the company's officers, directors or parties related to the company were the subjects of pending, adjudicated or settled civil or criminal action related to fraud or securities violations.

C.     On or about July 8, 2011, defendant JEAN-PIERRE sent Co-conspirator WJS an email attaching a draft of a FusionPharm Information and Disclosure

Statement to review.

        D.     On or about July 18, 2011, defendant JEAN-PIERRE sent an email to Co-conspirator SMD to set up a meeting between SMD and Co-conspirator B.

        E.  On or about October 5, 2011, Co-Conspirator WJS sent defendant JEAN-PIERRE a Skype message stating, "This is a new division of FINRA only enacted post Madoff" after a FINRA investigator reached out to Co-conspirator SMD on the same day.

        F.  On or about October 6, 2011, Co-conspirator SMD had a telephone conversation with a FINRA investigator during which he described Co-conspirator WJS as a part-time salesman for FusionPharm and stated that he was unaware that WJS owned or was selling FusionPharm stock.

        G.     On or about October 10, 2011, defendant JEAN-PIERRE traveled to Denver, Colorado to meet with Co-conspirators WJS and SMD.

        H.     On or about October 19, 2011, defendant JEAN-PIERRE sent Co-conspirator WJS an email, with the subject described as "Proposed Agreement re purchase of MicroCap," attaching a document dated May 9, 2011 and entitled, "Agreement for the Purchase of Ownership Interest."

        I.     On or about November 3, 2011, Co-conspirator SMD had another telephone conversation with the same FINRA investigator during which he stated that Co-conspirator WJS no longer owned Microcap or any FusionPharm stock.

        J.     On or about November 7, 2011, Co-conspirator WJS sent defendant JEAN-PIERRE a Skype message stating, "In addition please call scott on skype as to the Finra guy".

K.      On or about November 30, 2011, defendant JEAN-PIERRE emailed the FINRA investigator a written response to the investigator's requests for further information about Microcap, WJS and the purported change in ownership of Microcap.

L.      Sometime around May, 2012, Coconspirator WJS and Conspirator A met with defendant JEAN-PIERRE in Florida to discuss the financing of FusionPharm.

M.      On or about June 20, 2012, Conspirator A emailed Co-conspirators WJS and SMD and defendant JEAN-PIERRE a proposed due diligence package for a prospective FusionPharm debt purchaser that included nonconvertible versions of purported promissory notes held by Bayside and Meadpoint.

N.      On or about November 26, 2012, Co-Conspirator A sent an email to Co-conspirator WJS attaching drafts of convertible promissory notes for Bayside and Meadpoint and advising that the "Notes work with the existing draw down requests."

O.      On or about December 12, 2012, Co-conspirator WJS sent an email to a representative of FusionPharm's stock transfer agent transmitting a convertible promissory note in favor of Bayside, notifying the transfer agent that "Bayside has chosen to exercise its option to convert into shares [sic]," and that "Bayside [was] a family members [sic] company and I am assisting them [sic] as I am familiar with all parties."

P.      On or about December 27, 2012, Co-Conspirator A sent Co-conspirator SMD an email stating, "We are in need of a letter which confirms the end of the drawdowns under the Bayside promissory note," and advising that Co-Conspirator A had drafted such a letter for SMD's signature.

Q.      On or about January 7, 2013, Co-conspirator WJS sent an email to a

representative of FusionPharm's stock transfer agent, with subject identified as "Bayside Note FSPM," transmitting a Rule 144 Attorney Opinion Letter prepared by defendant JEAN-PIERRE and signed by Co-conspirator B, FusionPharm bank account statements "which reflect funding" and a "[c]losing letter that closed the note."

    R.  On or about the dates set forth below, the following written submissions for FusionPharm were posted to OTC Link's website portal:

| Overt Act | Date | Document |
|---|---|---|
| R.1 | 7/21/11 | FusionPharm Information and Disclosure Statement for the period ended June 30, 2011 (posted as "Initial Company Information and Disclosure Statement) |
| R.2 | 7/22/11 | Current Information Letter |
| R.3 | 12/29/11 | FusionPharm Information and Disclosure Statement for the period ended September 30, 2011 |
| R.4 | 12/30/11 | Current Information Letter |
| R.5 | 3/31/12 | FusionPharm Annual Information and Disclosure Statement for the period ended December 31, 2011 |
| R.6 | 4/10/12 | Current Information Letter |
| R.7 | 6/12/12 | FusionPharm Quarterly Report for the period ended March 31, 2012 (revised) |
| R.8 | 6/14/12 | Current Information Letter |

    S.  The wire transmissions described and set forth in Counts 2 through 16 of this Second Superseding Indictment are incorporated herein by reference and re-alleged as individual overt acts done in furtherance of the conspiracy.

    T.  The mailings and deliveries described and set forth in Counts 17 through 20 of this Second Superseding Indictment are incorporated herein by reference and re-alleged as individual overt acts done in furtherance of the conspiracy.

13

U.      The securities transactions described and set forth in Counts 21 through 23 of this Second Superseding Indictment are incorporated herein by reference and re-alleged as individual overt acts done in furtherance of the conspiracy.

In violation of Title 18, United States Code, Section 371.

COUNTS 2 – 16
(Wire Fraud)

12.      The allegations contained in paragraphs 2 through 11 of this Second Superseding Indictment are hereby re-alleged as if set out in full and incorporated by reference in these counts of the Second Superseding Indictment.

13.      At all times material to these counts, OTC Link required attorneys who wished to post Current Information Letters on its website to complete an Attorney Letter Agreement with respect to each company for which the attorney undertook to prepare such letters. The Attorney Letter Agreement required the attorney, among other things, to comply with certain prescribed written guidelines in preparing the Current Information Letters. These guidelines included the requirement that, if the letters relied on the work of another attorney, that counsel be identified and that counsel's own letters accompany the Current Information Letters. These guidelines also included the requirement that the authoring attorney state, to the best of counsel's knowledge, whether the company, and its shareholders owning more than five percent of the company's securities, or counsel him or herself, were under federal or state regulatory investigation for any violation of federal or states securities laws.

14.      On or about December 6, 2012, the SEC commenced a federal civil enforcement action in the Southern District of New York alleging that defendant JEAN-

14

PIERRE had committed various federal securities violations in connection with misappropriating Jean-Pierre Relative A's identity and, without her knowledge, preparing a series of Current Information Letters, Rule 144 Attorney Opinion Letters, and similar securities opinion letters in her name and forging her signature on these letters (Case No. 12-cv-8886).

15.    From at least in or about March 2011 and continuing at least through in or about August 2013, the exact dates being unknown to the Grand Jury, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, together with, and aiding and abetting, others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud the SEC, FusionPharm's stock transfer agent, OTC Link, and individuals and entities who invested in FusionPharm and its securities in private transactions and were involved in the public trading of its common stock.

16.    It was a further part of the scheme and artifice to defraud that defendant JEAN-PIERRE misrepresented, and assisted in the misrepresentation of, Microcap, Bayside and Meadpoint, and falsely portrayed these entities as non-affiliates of FusionPharm in Rule 144 Attorney Opinion Letters and related documents that were submitted to FusionPharm's stock transfer agent, in connection with efforts to convert supposed debt obligations to unrestricted shares of FusionPharm common stock, and in connection with efforts to deposit unrestricted common shares held in the names of these entities into brokerage accounts.

17.    As a further part of the scheme and artifice to defraud, defendant JEAN-PIERRE prepared, assisted in the preparation of and reviewed and approved quarterly and

15

annual disclosure documents and financial statements and incorporated notes posted to OTC Link's website that, among other things, concealed the role of WJS in the business of FusionPharm; his status as a *de facto* officer of FusionPharm and his joint control with SMD of its business affairs; and his beneficial ownership of preferred and common shareholdings in FusionPharm; and that concealed and obfuscated related party transactions between FusionPharm, Meadpoint and Vertifresh that were claimed as the basis for FusionPharm's reported revenues.

18.     It was a further part of the scheme to defraud that defendant JEAN-PIERRE prepared Current Information Letters that falsely represented that the quarterly and annual disclosure documents and financial statements and incorporated notes uploaded to OTC Link's website on behalf of FusionPharm constituted adequate current information about FusionPharm and its securities within the meaning of applicable federal securities laws.

19.     It was a further part of the scheme to defraud that defendant JEAN-PIERRE would prepare these letters and the Rule 144 Attorney Opinion Letters for Co-conspirator B to sign and to represent as his own work product, and to serve as a primary conduit with Co-conspirator B for the information supporting the contents of these letters and the opinions conveyed in them.   The letters themselves would fail to disclose defendant JEAN-PIERRE's role and involvement in the preparation of the letters and, after December 2012, the fact that he was the subject of a federal civil law enforcement action alleging wrongdoing with respect to the same type of attorney opinion letters.

<u>Wire Transmissions in Execution of the Scheme</u>

16

20.     On or about the dates enumerated as to each count below, in the State and District of Colorado, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by false and fraudulent pretenses, representations and promises, and attempting to do so, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, did knowingly transmit and cause to be transmitted in interstate commerce, and did aid and abet others to cause to be transmitted, from or to a place within the State of Colorado to or from the places outside of Colorado, by means of wire communications, certain writings, signals and sounds, representing and constituting the following:

**The Uploads of FusionPharm Quarterly and Annual Reports to OTC Link.**

| **COUNT** | **DATE** | **WIRE TRANSMISSION** |
|---|---|---|
| 2 | 8/14/12 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Quarterly Report for the period ended June 30, 2012 |
| 3 | 11/15/12 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Quarterly Report for the period ended September 30, 2012 |
| 4 | 3/6/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Annual Information and Disclosure Statement for the period ended December 31, 2012 |
| 5 | 7/5/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Quarterly Report for the period ended March 31, 2013 |
| 6 | 8/20/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Quarterly Report for the period ended June 30, 2013 |
| 7 | 8/20/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Supplemental |

| | | Information - OTC Pink Basic Disclosure Guidelines Questionnaire |
|---|---|---|

**The Uploads of FusionPharm Current Information Letters to OTC Link.**

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| 8 | 8/16/12 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Current Information Letter |
| 9 | 3/11/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Current Information Letter |
| 10 | 7/5/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Current Information Letter |
| 11 | 8/23/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Current Information Letter |

**The Submission FusionPharm Rule 144 Attorney Opinion Letters to Pacific Stock Transfer Co. ("PSTC").**

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| 12 | 1/4/13 | Email from WJS to PSTC attaching Rule 144 Attorney Opinion Letter re: issuance of 140,000 common shares of FusionPharm common stock to Bayside |
| 13 | [9/12/13] | Email from WJS to PSTC attaching five Rule 144 Attorney Opinion Letter re: issuance of   common shares of FusionPharm common stock to Bayside for five specified investors |
| 14 | 3/31/13 | Email from WJS to PSTC attaching Rule 144 Attorney Opinion Letter re: issuance of 475,000 common shares of FusionPharm common stock to Meadpoint |
| 15 | 8/13/13 | Email from WJS to Scottsdale attaching Rule 144 Attorney Opinion Letter re: issuance of 500,000 common shares of FusionPharm common stock to Meadpoint |

| 16 | 8/26/13 | Email from WJS to PSTC attaching Rule 144 Attorney Opinion Letter re: issuance of 1,500,000 common shares of FusionPharm common stock to Meadpoint to three individuals, each to be allocated 500,000 shares a piece |
|----|---------|---|

In violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS 17 -20
(Mail Fraud)

21.     The allegations contained in paragraphs 2 through 11 of this Second

Superseding Indictment are hereby re-alleged as if set out in full and incorporated by

reference in these counts of the Second Superseding Indictment.

22.     On or about the dates enumerated as to each count below, in the State and

District of Colorado, and elsewhere, for the purpose of executing the aforesaid scheme and

artifice to defraud and to obtain money and property by means of false and fraudulent material

pretenses and representations, and attempting to do so, the defendant, GUY M. JEAN-

PIERRE, a/k/a Marcelo Dominguez de Guerra, did knowingly cause, and aid and abet others

to cause, the following matters and things to be sent and delivered by a commercial interstate

carrier, according to the direction thereon:

| **COUNT** | **DATE** | **MAIL MATTER** |
|-----------|----------|-----------------|
| 17 | 7/25/12 | Federal Express Envelope, Tracking No. 800575942347, addressed to PSTC in Las Vegas, Nevada, containing FusionPharm Stock Cert. 7385 for 40,000 shares in the name of individual shareholder T.A., together with a stock power, a Rule 144 Attorney Opinion Letter, an officer's certificate, stock purchase agreement, debt settlement agreement, and instruction letters from Microcap and T.A. |
| 18 | 8/1/12 | Federal Express Envelope, Tracking No. 798688446223, |

| | | |
|---|---|---|
| | | addressed to WJS in Colorado, containing FusionPharm Stock Cert. 11176 issued to Microcap for 40,000 shares |
| 19 | 1/18/13 | Federal Express Envelope, Tracking No. 794557022916, addressed to WJS in Colorado, containing FusionPharm Stock Certificate 11208 issued to Bayside for 140,000 shares |
| 20 | 8/15/13 | Federal Express envelope, Tracking No. 796476186341, addressed to WJS in Colorado, containing FusionPharm Stock Cert. 11227 issued to Meadpoint for 500,000 shares |

In violation of Title 18, United States Code, Sections 1341 and 2.

<u>COUNTS 21-23</u>
(SECURITIES FRUAD)

23.     The allegations contained in paragraphs 2 through 11 of this Second Superseding Indictment are hereby re-alleged as if set out in full and incorporated by reference in these counts of the Second Superseding Indictment.

24.     From at least in or about April 2011 and continuing until at least in or about August 2013, the exact dates being unknown to the Grand Jury, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, with others known and unknown to the Grand Jury, willfully and knowingly, by the use of means and instrumentalities of interstate commerce, and the mails, did aid, abet, counsel, induce, and cause others to, directly and indirectly use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and

20

would operate as a fraud and deceit upon other persons and entities, all in connection with the purchase and sale of FusionPharm common stock.

25.     On or about the dates set forth below, as to each of the enumerated Counts, in the State and District of Colorado, and elsewhere, by use of the means or instrumentalities of interstate commerce, and by use of a national securities exchange, and in furtherance of this scheme to defraud and course of business, the defendant, GUY M. JEAN-PIERRE, did aid and abet, and counsel and induce the following securities transactions to be executed in brokerage accounts held in the names of Microcap, Bayside and Meadpoint:

| **Count** | **Approx. Date** | **Securities Transaction** |
|---|---|---|
| 21 | 10/18/12 | Sale of 5,036 shares of FusionPharm common stock held in a brokerage account in the name of Microcap at Scottsdale Capital Advisors |
| 22 | 2/4/13 | Sale of 2,085 shares of FusionPharm common stock held in a brokerage account in the name of Bayside at Scottsdale Capital Advisors |
| 23 | 5/14/13 | Sale of 21,676 shares of FusionPharm common stock held in a brokerage account in the name of Meadpoint at Scottsdale Capital Advisors |

In violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5 [Rule 10b-5]; and Title 18, United States Code, Section 2.

COUNTS 24 – 28
(Wire Fraud)

26.     From on or about February 26, 2016 and continuing until on or about April 29, 2016, the exact dates being unknown to the Grand Jury, in the State and District of Colorado,

and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, devised, and intended to devise, a scheme and artifice to defraud the SEC, OTC Link, and individuals and entities involved in the purchase and sale of securities of microcap companies in the public, over-the-counter securities markets, including, without limitation, stock transfer agents and securities brokerage firms.

        a.     As part of the scheme and intended scheme that when presented with an opportunity to engage in securities fraud by one of the coconspirators named in Count 1, above, who was then acting as an undercover operative (CW) of the Federal Bureau of Investigation, the defendant accepted the opportunity to assist in the transformation of Vertifresh into a company with publicly traded securities through the acquisition of, and merger with, a dormant publicly traded microcap company which was represented to the defendant as owned and operated by an undercover FBI agent (FBI UCA).

        b.     As part of the scheme and intended scheme, defendant JEAN-PIERRE, in collaboration with the CW, devised and assisted in devising a plan to secure free trading shares in the contemplated publicly traded company that involved the preparation of a backdated purported promissory note, convertible at the option of the holder, into common stock.   The plan entailed portraying money that the CW had supposedly received in the past on behalf of Vertifresh as loan funds from the FBI UCA that would be evidenced by the purported debt instrument. It further involved describing and depicting the FBI UCA and CW as consultants to the newly constituted company, so as to provide a cover and explanation for their involvement in the business without betraying their status as control persons and affiliates of the company. The plan further contemplated ultimately presenting a finalized

convertible promissory note, together with supporting documentation, including a Rule 144 Attorney Opinion Letter that defendant JEAN-PIERRE would undertake to procure from an amenable attorney.

27.     On or about the dates enumerated as to each count below, in the State and District of Colorado, and elsewhere, for the purpose of executing the aforesaid scheme and intended scheme and artifice to defraud, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, did knowingly transmit and cause to be transmitted in interstate and foreign commerce from a place outside the United States to a place within the State of Colorado, by means of wire communications, certain writings, signals and sounds, representing and constituting the following:

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| 24 | 3/30/16 | Email from JEAN-PIERRE to the CW attaching a document entitled CMC/Vertifresh Consulting Agreement |
| 25 | 4/1/16 | Email from JEAN-PIERRE to the CW attaching a document entitled Convertible Promissory Note, dated February 28, 2015 |
| 26 | 4/23/16 | Email from JEAN-PIERRE to the CW attaching a document entitled Convertible Promissory Note, dated April 21, 2015, and a document entitled Non-Affiliation Letter |
| 27 | 4/23/16 | Email from JEAN-PIERRE to the CW attaching a document entitled Purchase And Assignment Agreement |
| 28 | 4/24/16 | Email from JEAN-PIERRE to the CW attaching a document identified by file name "Form of Debt Conversion opinion.docx |

All in violation of Title 18, United States Code, Sections 1343 and 2.

<u>COUNT 29</u>
(Money Laundering)

28.     The allegations contained in paragraphs 2 through 11 and 26 through 27 of this Second Superseding Indictment are hereby re-alleged as if set out in full and incorporated by reference in this count of the Second Superseding Indictment.

29.     From on or about February 26, 2016 and continuing through on or about April 29, 2016, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, with the intent to conceal and disguise the location, source, ownership and control, of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce involving property represented by a person at the direction of a federal official authorized to investigate violations of Title 18, United States Code, Section 1956, to be proceeds of specified unlawful activity, to wit: securities fraud, as charged in counts 22-23, in violation of Title 15 United States Code, Sections 78j(b) and 78ff(a), and 17 C.F.R. Section 240.10b-5, and wire fraud, as charged in counts 12, 14-15, in violation of Title 18, United States Code, Section 1343, which financial transaction involved the mailing, receipt and deposit of a cashier's check drawn on First Bank in the amount of $5,000 and made payable to Guy M. Jean-Pierre and represented to be the proceeds of the sale of common stock of FusionPharm, Inc.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2.

24

## FORFEITURE ALLEGATION

30.     The allegations contained in Counts 1 through 28 of this Second Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

31.     Upon conviction of the violation alleged in Count One of this Information involving the conspiracy to commit of violations of Title 18, United States Code, Section 1343, Title 18, United States Code, Section 1341, Title 15, United States Code, Sections 78j(b) and 78ff(a), all in violation of Title 18, United States Code, Section 371, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) any and all of the defendant's right, title and interest in all property constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of such offense, including a money judgment in the amount of proceeds obtained by him the conspiracy and by the Co-conspirators, for which the Co-conspirators are joint and severally liable, less the amount recovered from directly forfeitable assets.

32.     If any of the property described above, as a result of any act or omission of the defendant:

> a)     cannot be located upon the exercise of due diligence;
> b)     has been transferred or sold to, or deposited with, a third party;
> c)     has been placed beyond the jurisdiction of the Court;
> d)     has been substantially diminished in value; or
> e)     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

25

as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any

other property of said defendant up to the value of the forfeitable property.

A TRUE BILL:


Ink signature on file in Clerk's Office
FOREPERSON


ROBERT C. TROYER
UNITED STATES ATTORNEY


By:  s/Jeremy Sibert
        Jeremy Sibert
        Assistant United States Attorney
        U.S. Attorney's Office
        1225 17th Street, Suite 700
        Denver, CO   80202
        Telephone: (303) 454-0100
        Fax:   (303) 454-0402
        Jeremy.Sibert@USDOJ.GOV