IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 17-cr-008-WJM

UNITED STATES OF AMERICA,

 Plaintiff,

v.

1.   **GUY M. JEAN-PIERRE**,

 Defendant.

---

## ORDER ON *JAMES* MATTERS

---

The Government charges Defendant with conspiracy to defraud the United
States (18 U.S.C. § 371), securities fraud (15 U.S.C. §§ 78j(b) & 78ff), wire fraud
(18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), and money laundering (18 U.S.C.
§ 1956(a)(3)(B)).  (*See* ECF No. 113.)  Currently before the Court is Defendant's Motion
for Pretrial Determination of Admissibility of Alleged Co-Conspirator Statements (ECF
No. 89), in which he seeks a pretrial "*James* determination," *i.e.*, a ruling on whether
alleged co-conspirator statements satisfy Federal Rule of Evidence 801(d)(2)(E) and
may therefore be introduced against him at trial for the truth of the matters asserted.[1]

Per the undersigned's usual practice, the Government was ordered to respond to

---

[1] The practice surrounding Rule 801(d)(2)(E) embodies what is commonly referred to as
a *James* determination, which gets its name from *United States v. James*, where the Fifth
Circuit held that a declaration by one defendant is admissible against other defendants only
when there is a "sufficient showing, by independent evidence, of a conspiracy among one or
more other defendants and the declarant and if the declarations at issue were in furtherance of
that conspiracy."  590 F.2d 575, 581 (5th Cir. 1979).  The Court at times continues to employ
the *James* terminology in this Order, in accordance with common practice.  But, ultimately,
admissibility of the co-conspirator statements is governed by Rule 801(d)(2)(E).

Defendant's motion with a detailed written proffer of co-conspirator statements it intends to introduce for the truth of the matters asserted.  (*See* ECF No. 90.)  The Government submitted a proffer containing 423 statements.  (ECF No. 105-1.)  Defendant responded with arguments opposing the admissibility of all 423 statements.  (ECF No. 112-1.)

For the reasons explained below and as detailed in the attached Chart of Rulings, Defendant's objections are sustained in part and overruled in part.

## I.  NO HEARING NECESSARY

A district court can "only admit co-conspirator statements if it holds a *James* hearing or conditions admission on forthcoming proof of a predicate conspiracy through trial testimony or other evidence."  *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (internal quotation marks omitted).  Therefore, although a hearing is not required, the Tenth Circuit has expressed a "strong preference" for pre-trial *James* proceedings.  *Id.*  The reason for this preference is that if a court provisionally admits a statement with the caveat that the Government "connect up" the statement to sufficient evidence of a predicate conspiracy at trial, the risk of prejudice to a defendant is high should the Government later fail to meet its burden.  *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994).  Nevertheless, whether to hold a *James* hearing rests within the Court's discretion.  *Id.*

The Court has reviewed the briefing on this issue and determined that a hearing is not necessary to resolve the admissibility of the Government's proposed co-conspirator statements.  The Court therefore decides the matter on the briefing submitted by the parties.

## II.  LEGAL STANDARD

Rule 801(d)(2)(E) provides that a statement is "not hearsay" if it "is offered

against an opposing party" and it "was made by the party's coconspirator during and in

furtherance of the conspiracy."  This Court may not admit such a statement under this

Rule without being satisfied by a preponderance of the evidence that (1) "there was a

conspiracy"; (2) the conspiracy "involv[ed] the declarant and the nonoffering party"; and

(3) "the statement was made during the course and in furtherance of the conspiracy."

*Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987) (internal quotation marks

omitted).

Whether this standard is satisfied is a "preliminary question about whether . . .

evidence is admissible," meaning the Court "is not bound by evidence rules, except

those on privilege," when resolving the question.  Fed. R. Evid. 104(a); *Bourjaily*, 483

U.S. at 178–79.  Thus, the challenged statements themselves may be a part of the

preponderance of evidence supporting admissibility under Rule 801(d)(2)(E).  *See id.* at

180 ("there is little doubt that a co-conspirator's statements could themselves be

probative of the existence of a conspiracy and the participation of both the defendant

and the declarant in the conspiracy"); *see also United States v. Lopez-Gutierrez*, 83

F.3d 1235, 1242 (10th Cir. 1996) ("In making its preliminary factual determination as to

whether a conspiracy exists, the court may consider the hearsay statement sought to be

admitted . . . .").

However, the Tenth Circuit requires "some independent evidence linking the

defendant to the conspiracy," meaning "evidence other than the proffered [co-

conspirator] statements themselves."  *Id.* (internal quotation marks omitted; alteration in

original); *see also United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993) ("most courts require some reliable corroborating evidence apart from the coconspirator's statements before those statements may be used").  The required quantum of independent evidence may exist "even when it is not 'substantial.'"  *Lopez-Gutierrez*, 83 F.3d at 1242 (quoting *Rascon*, 8 F.3d at 1541).

Assuming the Government establishes the existence of conspiracy in which the declarant and defendant participated, the final question is whether any proffered statements were made by a declarant-conspirator "during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  "A wide array of statements can fit this requirement," *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017), assuming the statements were made "before the objectives of the conspiracy have either failed or been achieved," *United States v. Owens*, 70 F.3d 1118, 1126 (10th Cir. 1995) (internal quotation marks omitted); *see also Krulewitch v. United States*, 336 U.S. 440, 442–43 (1949) (holding that a declaration made after the conspiracy's "objectives either had failed or had been achieved" was inadmissible because it was not made pursuant to and in furtherance of the conspiracy).

> Examples of statements which may be found to satisfy the "in furtherance" requirement include statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities.

*United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc) (internal block quote formatting omitted).[2]  On the other hand, "statements are not in furtherance of the

---

[2] The Government's briefing argues for a far more sweeping interpretation of the "in

conspiracy if they are mere narratives, that is statements relating to past events, even those connected with the operation of the conspiracy where the statement serves no immediate or future conspiratorial purpose." *Id.* at 1578 (internal quotation marks omitted).

The Tenth Circuit calls for "a construction of the 'in furtherance' requirement protective of defendants," and applies the test "narrowly." *Id.* The focus is "on the declarant's intent in making the statement," rather than on the statement's effect. *Id.* However, "[n]o talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy and is therefore admissible in accordance with the agency theory of conspiracy. To the contrary, this determination must be made by examining the context in which the challenged statement was made." *Id.* at 1578–79.

### III.  ANALYSIS

### A.    Existence, Scope, and Duration of Conspiracy

To prove that a conspiracy existed the Government must show: (1) two or more persons agreed to violate the law, (2) the defendants knew the essential objectives of the conspiracy, (3) the defendants knowingly and voluntarily participated in the conspiracy, and (4) the alleged co-conspirators were interdependent. *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005). To prove knowledge of the essential objectives of a conspiracy, the Government does not have to show the alleged co-

---

furtherance of" requirement. (*See* ECF No. 105 ¶ 7.) The Court finds the Government's argument does not properly reflect the law in the Tenth Circuit. Many of the cases cited are from other circuits, and many also precede *Perez*, in which the Tenth Circuit directly addressed the scope of this analysis *en banc*, stating the requirement should be applied narrowly and in a manner that is protective of defendants. In the Court's view, the sweeping application of this analysis proposed by the Government is contrary to spirit and intent of *Perez*.

conspirators knew all the details or all the members of a conspiracy.  *Id.*  "Rather, the government only needs to demonstrate the defendant shared a common purpose or design with his alleged co-conspirators."  *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006).  A conspiracy may be inferred from circumstantial evidence.  *United States. v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1986).

Here, the Government alleges a conspiracy to commit securities fraud.  (ECF No. 113 ¶ 1.)  The Government alleges that the conspiracy began "[o]n or around March 25, 2011 and continued through [o]n or about May 15, 2014."  (ECF No. 105 ¶ 8.)  The Government alleges that the members of this conspiracy were Defendant, William Sears, Scott Dittman, Cliff Bodden, Tod DiTommaso, and Richard Scholz.  (*Id.*)  Sears and Dittman are, for present purposes, considered indicted co-conspirators with Defendant,[3] while Bodden, DiTommaso, and Scholz are unindicted co-conspirators.

Sears and Dittman developed a business named FusionPharm to repurpose steel shipping containers as "hydroponic growing pods ('PharmPods') for indoor plant cultivation, primarily cannabis."  (*Id.* ¶ 10.)  Sears and Dittman wanted to make FusionPharm publicly tradable on the over-the-counter ("OTC") market without the hassle of an IPO, and so conceived a plan to take over a company already traded on the OTC market and transform it into FusionPharm.  (*Id.* ¶ 11.)  One problem, however, was that Sears already had a felony conviction for securities fraud, and so his formal involvement in a publicly traded company was subject to limitations and disclosure

---

[3] Sears, Dittman, and Defendant have all been charged with conspiracy to commit securities fraud, and this charge arises from the same set of facts, but—for reasons not important here—Sears and Dittman were charged by information in a separate case.  (*See United States v. William J. Sears and Scott M. Dittman*, Case No. 16-cr-301-WJM (D. Colo., filed Sept. 15, 2016).)

obligations.  (*Id.* ¶ 12.)  The first alleged object of the conspiracy, therefore, was to permit Sears to acquire the stock of the target corporation, along with Dittman, without having to disclose his participation or true role in the transaction or new corporation. (*Id.* ¶¶ 11–14.)  Defendant, a securities lawyer, allegedly assisted Sears and Dittman in this task.  (*Id.* ¶¶ 13–15.)

After the takeover, Sears, Dittman, and Bodden (a long-time business associate of Sears) would prepare projections and disclosures to file on an online OTC trading platform.  (*Id.* ¶¶ 8(d), 16–18.)  None of these disclosures revealed Sears's true role in FusionPharm.  (*Id.* ¶ 18.)  Defendant worked with Sears on these disclosures.  (*Id.* ¶ 19.)  Defendant also prepared attorney opinion letters certifying that the information disclosed to the OTC trading platform was "adequate current information" within the meaning of federal securities laws.  (*Id.* ¶ 20.)  But Defendant would then send these letters to DiTommaso, a California attorney who agreed to put these letters under his own letterhead and over his own signature, thus masking Defendant's involvement. (*Id.*)

Another alleged object of the conspiracy was to permit Sears to convert preferred FusionPharm shares into free-trading common stock without needing to satisfy federal registration requirements and without any restriction on subsequent trading.  (*Id.* ¶¶ 23–25.)  One requirement was a "Rule 144 Attorney Opinion Letter" certifying that a sale of shares meets the requirements of the SEC's Rule 144.  (*Id.* ¶ 26.)  Defendant prepared these letters—which were finalized and signed by DiTommaso—allegedly knowing that Rule 144 had not been satisfied.  (*Id.* ¶¶ 26–28.)  Scholz participated in these transactions apparently as a shell buyer.  (*Id.* ¶ 28.)

A further alleged object of the conspiracy was to sell FusionPharm shares through other entities without disclosing Sears's and Dittman's roles in those entities. (*Id.* ¶¶ 29–32.)  Defendant again prepared legal disclosures, eventually signed by DiTommaso, to facilitate these transactions.  (*Id.* ¶ 33.)

Yet another alleged object of the conspiracy was to create yet more common shares by fabricating and backdating promissory notes that were convertible into common stock.  (*Id.* ¶¶ 34–41.)  The supposed lenders in possession of these promissory notes were business entities controlled by Sears and Dittman.  (*Id.*)  Sears would then cause the notes to be converted to common shares, assisted by Defendant with a Rule 144 letter (signed by DiTommaso) that represented, falsely, that the Rule 144 requirements were satisfied as to the new shares.  (*Id.* ¶¶ 42–52.)

Defendant does not contest that a conspiracy existed between the other alleged co-conspirators, but he contests his involvement.  (ECF No. 112 at 6–7.)  Sears and Dittman admitted many of the Government's allegations when they pleaded guilty to the conspiracy charge (*see* Case No. 16-cr-301: ECF No. 41 at 13–25; ECF No. 42 at 1–12; ECF No. 67 at 12–37; ECF No. 84 at 13–15; ECF No. 101 at 15–19); but their admissions barely touch on Defendant's role.  As to that, the Court has reviewed all 423 statements proffered by the Government allegedly in furtherance of this conspiracy. (ECF No. 105-1.)  Not all of these "statements" are actually statements and not all statements are the proper subject of Rule 801(d)(2)(E) analysis (see below), but they are all proper when considering the existence, scope, and duration of a conspiracy, and when identifying its participants.  Many of these statements directly implicate Defendant's participation in the objects of the conspiracy, *e.g.*, statements 8, 12, 13, 22,

29, 30, 61, 65, 88, 89, 93, 102, 117, 131, 137, 140, 215, 220, and 297–308.  These statements, together with Sears's and Dittman's admissions, satisfy the Government's burden to establish the existence, scope, and duration of a conspiracy in which Defendant, Sears, Dittman, Bodden, DiTommaso, and Scholz participated.

**B.     Statements Made During and in Furtherance of the Conspiracy**

The Court presents its rulings on the Government's 423 proffered statements in the final column of the chart created by the parties.  That chart ("Chart of Rulings") is attached and shall be deemed a part of this Order.  The Court here explains certain matters that apply to various rulings and categories of proffered statements.

First, many of the Government's proffered statements are summaries of prior conversations (*e.g.*, statements 8, 11, 17, 20).  In evaluating these statements, the Court assumed that the person listed in the "Declarant" column is the witness whom the Government will call at trial to testify about statements made by Defendant or another co-conspirator during that conversation and consistent with the proffered summary.

Second, and similar to the foregoing, many of the Government's statements are derived from retrospective accounts during interviews with law enforcement officers.  The Court requested further briefing from the Government on these statements, given that retrospective accounts almost certainly are not admissible through Rule 801(d)(2)(E).  (*See* ECF No. 133.)  The Government clarified that it included these retrospective accounts as evidence of how the Declarant would testify at trial regarding communications made during the conspiracy.  (ECF No. 140 at 3.)  With that clarification, the Court looked to the name listed in the "Source" column (if there was one) and assumed that the Source would testify to a memory of a statement by a co-conspirator Declarant made during the conspiracy.  That assumption is inseparable

from the Court's ruling.  If the Government wishes to have someone else testify about what the Source said that the Declarant said, different analysis is necessary.

Third, when direct quotes are at issue (*e.g.*, statements 42–58), the Court presumed the Declarant to be the source of the quote but that the Government would call *someone else* to testify about what that person said.  Absent such a presumption, Rule 801(d)(2)(E) analysis is meaningless.  Or in other words, if the Declarant testifies about his or her *own* prior statements, Rule 801(d)(2)(E) does not apply.  Relatedly, the Court's sustaining of Defendant's objections in some instances does not mean that the Declarant may not testify to the same content disclosed in the statements.  It means only that Rule 801(d)(2)(E) does not permit someone else to testify about what the Declarant said for the truth of the Declarant's assertions.

Fourth, the Court made no ruling on many proffered statements because they are not "statements" subject to Rule 801(d)(2)(E).  They are either impressions, opinions, or assertions of historical fact; or they are statements made by persons whom the Government does *not* allege to be co-conspirators.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendant's Motion for Pretrial Determination of Admissibility of Alleged Co-Conspirator Statements is GRANTED (ECF No. 89);

2.     Defendant's specific objections are SUSTAINED IN PART and OVERRULED IN PART as detailed in the attached Chart of Rulings; and

3.     The Court will reset the jury trial and Final Trial Preparation Conference by way of separate Order.

Dated this 27th day of December, 2018.

BY THE COURT:

William J. Martinez
United States District Judge