

**U.S. DEPARTMENT OF JUSTICE**

**Robert C. Troyer**
*United States Attorney*
*District of Colorado*

---

*Jeremy Sibert*      *1801 California Street, Suite 1600*      *(303) 454-0100*
*Assistant United States Attorney*      *Denver, CO  80202*      *FAX (303) 454-0401*

December 30, 2018

**Via USPS, Email, and Electronic Filing**

Mr. Clifford J. Barnard
4450 Arapahoe Ave, #100
Boulder, CO 80303
Cliffbarnard@earthlink.net

Mr. Thomas Edward Goodreid
1801 Broadway, Suite 1400
Denver, CO 80202
t.goodreid@comcast.net

    Re:  United States v. Guy Jean-Pierre 17-cr-00008-WJM

Dear Counsel:

The purpose of this letter is to disclose the government's expert witnesses pursuant to the discovery order entered in this case and Rules 702, 703 and 705 of the Federal Rules of Evidence.

Professor Steven Thel will testify as the government's expert witness in matters relating to the registration and sale of securities, the securities law outlined in the superseding indictment and the federal securities regulation system.   Prof. Thel is the I Maurice Wormser Professor of Law at Fordham University School of Law.   He has testified in several criminal cases, both for the prosecution and the defense, as an expert in securities law, securities regulation, securities practice, and securities corporate practice.   A copy of Professor Thel's resume was sent to the above addresses.

The scope of Prof. Thel's testimony will cover all counts in the superseding indictment and will provide an overview of the federal securities law and regulation system, to include in detail the specific procedures by which securities may be issued and sold.  More specifically, it is anticipated that Prof. Thel will testify to:

a. The general purposes and operation of the Securities Act of 1933 and the Securities Exchange Act of 1934 and the role of the Security Exchange Commission (SEC) and Financial Industry Regulatory Authority (FINRA) in securities regulation;

b. Defining key terms within both acts, to include the definition of what a security is and the process by which a company or issuer may offer and distribute securities, including the requirement that the security be registered with the SEC or offered pursuant to an exemption from registration, the conducting of a public or private offering, and the issuance of restricted or unrestricted shares of stock;

c. The purpose, process and general costs of registering a stock with SEC, including the filing of a registration statement and preparation of supporting documentation, and the definitions and roles of underwriters, dealers, and the general investing public in the offering and selling of stock;

d. The general process and differences between exemptions under the Securities Act of 1933 to include discussions about Section 4 and the Safe Harbor Rule 144 (17 CFR Section 230.144);

e. The ways in which a share of stock can become a "free trading" share, specifically in microcap companies under the security laws, and the common practices/known practices of stock transactions, to include promissory notes, convertible promissory notes, "block purchases," payment in shares of stock for work conducted on behalf of the issuer (company), holding period/calculation to determine holding period, and fair market value for such types of transactions based on the stock price of the shares at the time of the transaction;

f. The indicia of evasion of registration requirements include the use of step transactions or sham sales designed to disguise the purpose of the transactions and the connection between the parties to the transactions (to include the sale of shares by undisclosed controllers of the company), the use of nominee and shell companies, delivery of securities as compensation to stock promoters; the quick sale of otherwise restricted shares to the marketplace, a pattern of issuance and sale to the general investing public of restricted securities, investors receiving payment (through funds or free shares) to act as an investor, and the documentation of transactions and reports to give the appearance of compliance with the securities laws that does not in fact describe how the transactions transpired or how companies were conducting and reporting their required disclosures/activities;

g. A description of Pink Sheets and the over-the-counter (OTC) securities markets as they differ from the national exchanges, the contrasting types of disclosures companies must make/file if trading on an OTC market or national exchange, and the lesser scrutiny given to these markets by the SEC and NASD;

h. The hallmarks of and how prices are set in a manipulated market as contrasted with an un-manipulated market; the general nature of securities manipulation schemes and some of the indicia of and techniques used to manipulate securities including: the use of shell companies, nominees, false statements to transfer agents, coordinated trading, matched trades, use of family/friends in a scheme, painting the tape, front running, walking up the price of a security, the issuance of false or misleading material information about a stock, the use of public campaigns, and the controlling the float of available stock.  Prof. Thel may opine that the use of these techniques is designed to boost price and trading volume of securities so that the perpetrators of the scheme can sell their shares to investors in an artificially inflated market;

i. Prof. Thel will provide testimony and examples/hypotheticals in order to indicate to the jury conduct and use of interstate related means/instruments that may be considered material, to explain the difference between interstate nexus vs. the ability to make use of any means or instruments of transportation or communication, and various ways one could be in "control" regarding a manipulative or deceptive device scheme in regards to security laws, specifically Title 15, USC § 78j(b); Title 17 CFR § 240.10(b)-5 (known as 10(b)-5) and Title 15 USC § 77e(a);

j. Prof. Thel will define what is a control person under Rule 144, an affiliate/non-affiliate under Rule 144, the requirements of an affiliate under Rule 144 in order to be able to claim the exemption to include holding period, volume limits, manner of sale, and standard practices in the industry regarding a reasonable inquiry under Rule 144;

k. Prof. Thel will offer his opinion to the use, materiality and importance of the Rule 144 Attorney Letters to broker firms and transfer agents and the importance of Current Information Letters, to include required disclosures to OTC markets (to include link, webpage, availability for the public once sent to/posted by OTC) and specific information in each individual letter reviewed for this case;

l. Prof. Thel will offer his opinion as to the required due diligence that a security lawyer or officer of a company should conduct, know, inquire, and/or conduct further investigation regarding the sale of securities, creation of notes, filing of disclosures with OTC and the need to articulate/note and explain changes within the disclosures, requirement to respond and cooperate with regulatory investigations and to notify

them of any changes after initial inquires, duty to investigate regarding related party transactions and disclose when required, and whether attorney letters (Rule 144 and current information letters) should be submitted on behalf of a transaction or report when undisclosed control persons of a company are conducting certain types of security transactions;

m. The process of moving a security (stocks) from a individual person/company in order to be sold on the market to include the role of a transfer agent, brokers, and promoters to include required documents and the purpose of requiring such documents in regards to the security laws;

n. Reasons why stocks on OTC markets are more frequent targets of manipulation schemes than those on national exchanges, including because of less stringent disclosure requirements for companies, lesser regulation, the lower volume of trading, lack of stock analyst coverage, and the greater ability to control the float or corner the market;

o. That Rule 504 or other various ways to issue shares under the security law does not create "free trading" or unrestricted shares, and that the security laws prevent the sale of issuers shares for the sole purpose of having the funds/proceeds of the sale to be reinvested back into the issuing firm;

p. Prof. Thel will offer his opinion as to whether William Sears was an affiliate and/or controlling person regarding his relationship and roles with FusionPharm and the several other entities that sold FusionPharm shares based on facts or data in the case that Prof. Thel has been made aware of or personally observed and;

q. Prof. Thel will offer his opinion as to whether defendant conducted required due diligence a security lawyer or officer of a company should conduct, know, inquire, and/or conduct further investigation regarding the sale of securities, creation of notes, filing of disclosures with OTC and the need to articulate/note and explain changes within the disclosures, requirement to respond and cooperate with regulatory investigations and to notify them of any changes after initial inquires, duty to investigate regarding related party transactions and disclose when required, and whether attorney letters (Rule 144 and current information letters) should be submitted on behalf of a transaction or report when undisclosed control persons of a company are conducting certain types of security transactions based on facts or data in the case that Prof. Thel has been made aware of or personally observed.

Prof. Thel opinions are based on his study, training, and experience as a professor of securities law and as an attorney with the SEC. These experiences include approximately 20 years of teaching courses on securities regulation and corporate finance where the subject matter of the courses consisted of the securities laws. Prof. Thel has published articles and a treatise relating to both securities regulation and manipulation. He served in the Securities & Exchange Commission Office of the General Counsel, Enforcement & Disclosure Policy Group where he was an attorney-advisor.

II. Alexander G. Scoufis

In addition to Prof. Thel, the government will call Alexander G. Scoufis of the Financial Industry Regulatory Authority (FINRA) to testify at trial concerning a number of matters. The government does not believe that Mr. Scoufis's testimony necessary constitutes opinion testimony requiring disclosure under Federal Rules of Criminal Procedure 16(a)(1)(G), but out of abundance of caution, the government is providing notice as to Mr. Scoufis as an expert witness pursuant to the discovery order entered in this case and Rules 702, 703 and 705 of the Federal Rules of Evidence. Attached to Mr. Scoufis's summary of expected testimony is a copy of Mr. Scoufis's resume.

Since 2016, Mr. Scoufis has worked as an attorney with FINRA's Office of General Counsel, Criminal Prosecution Assistance Group. Mr. Scoufis began his career with 2015 where he worked as an investigator in the Office of Fraud Detection and Market Intelligence. Mr. Scoufis has testified in four federal cases; *United States v. Sizer*, et al, 1:16-CR-20715 (S.D.Fl); *United States v. Lawrence*, et al, 16-CR-259 (S.D.NY); *United States v. Kosinski*, 3:2016-CR-148 (D.Conn); and *United States v. Bercoon*, et al. 1:15-CR-22 (N.D. GA).

Mr. Scoufis is expected to provide at trial background testimony concerning the nature, structure, and regulation of the securities markets, and the roles of FINRA and the SEC. Mr. Scoufis is expected to testify regarding the following topics: (a) background information about the nature, structure, and regulation of the securities market; (b) the SEC's and FINRA's roles in regulating the trading of stocks of publicly-traded companies; (c) general securities industry terms; (d) disclosure requirements of publicly-traded companies registered with the SEC; (e) documents required to be filed with the SEC to comply with such disclosure requirements; (f) the general characteristics of acquiring and merging a public shell with a private company; and (g) types of manipulative trading.

Mr. Scoufis will also define various terms for the jury, including but not limited to, OTC markets, reverse merger, shell company, convertible debt, promissory note, restricted shares, free-trading shares, reverse stock split, affiliate (to include under Rule 144), opinion attorney letter (to include current information letters and Rule 144 attorney opinion letters), transfer

agent, "pink sheets" and other similar terms regarding the world of securities, to include Rule 144, that arise during the course of trial and on cross examination.

Mr. Scoufis is also anticipated to review brokerage statements, shareholder transactional records/logs, including transfer agent record documents, and publicly available information, all of which have been produced in discovery.  Mr. Scoufis is expected to summarize ownership of Fusion Pharm stock, trading prices and volume of Fusion Pharm stock, the process of converting and selling promissory convertible notes, the transfer of money from brokerage accounts to bank accounts, and the ownership structure of Fusion Pharm and other entities (who owned how many shares) at different points in time.

In connection with his testimony, Mr. Scoufis will be preparing a series of summary charts.  The government will provide copies of these summary charts in advance of trial.  Mr. Scoufis's opinions are based, in part, on his training and experience within FINRA, including his investigative and legal background.

Please feel free to contact me at (303) 454-0100 if you have any questions or concerns regarding this expert notification.

Sincerely,

s/ Jeremy Sibert
Jeremy S. Sibert
Assistant U.S. Attorney