IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.  17-cr-00008-WJM

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.

  1.  **GUY M. JEAN-PIERRE,**

    **Defendant.**

---

### RESPONSE TO MOTION TO RECONSIDER
### ADMISSION OF EXHIBIT 446 [187]

---

The United States submits this response to the defendant's motion to reconsider the admission of exhibit 446, the plea agreement of William Sears in *United States v. William Sears*, 16-cr-00371-WJM [ECF 187].

BACKGROUND/FACTS

William Sears testified for approximately 12-14 hours between January 14 and 16, 2019.  The beginning of his direct examination included an admission by Sears he pleaded guilty to conspiracy to commit securities fraud relating to Fusion Pharm stock before this court, entered into a stipulation of facts, made an agreement to be sentenced to 5-8 years, agreed to tell the truth if called as a witness and was promised nothing further.  The government chose, tactically, not to introduce a copy of his plea agreement.  The change of intention to offer the plea agreement was a direct result of

the door opened by the defendant when he suggested the witness was following a script drafted by the FBI and directed by AUSA Sibert.

Sears also testified that after he had been targeted in the investigation he offered and agreed to cooperate with the government with the hopes that his cooperation would lessen any punishment for his crimes. In the latter stages of his direct examination, Sears testified concerning an undercover operation. He indicated to former AUSA Harmon that he could assist in luring the defendant back into the jurisdiction of the United States which was the genesis of the undercover operation. The undercover investigation included monitored and recorded telephone conversations, emails and skype messages between Sears and the defendant who was then in the Dominican Republic. The undercover operation culminated, as Sears suggested, in the luring of the defendant into the United States when he agreed to meet Sears and a person who was an undercover FBI agent at a hotel in south Florida. That meeting, as well as a conversation in an automobile enroute from the airport to a hotel, was also monitored and recorded.

Numerous times in his direct examination when inquiry was made concerning some of the recordings between Sears and the defendant, when questioned about what he said to the defendant which elicited an arguably incriminating response from the defendant, Sears reply was that he was acting according to the "script" provided to him by the FBI. He did not indicate in his direct examination that he disagreed with the "script." When the court took the noon recess on January 16, it admonished Sears to not speak with lawyers during the recess, as it had done for three days. As Sears was excused from the witness stand, he stormed out of the courtroom glaring at AUSA

Sibert as he passed the lectern.  AUSA Sibert did not notice the glare but immediately followed Sears from the courtroom enroute to the restroom.  Sears held the courtroom door for AUSA Sibert and as Sibert passed him said, "You didn't follow the script.  Dickhead."  Upon returning to the courtroom, AUSA Sibert advised defense counsel of the communication by the witness contrary to the court's direction.  AUSA Sibert also provided courtroom staff a copy of a note he wrote describing the contact.  Direct examination proceeded in the afternoon session.  Sears testified regarding a conversation between himself and the defendant in a car from the Miami airport to a hotel.  Sears admitted there were no agents with him to provide him a script but intimated that the whole scenario had been scripted.   Sears acknowledged the fact of a meeting in the hotel room which was video and studio recorded and that the recordings were accurate.  No questions about the meeting were asked of him.  The recording was not published to the jury.  Direct examination concluded during the afternoon.

During cross-examination, defense counsel focused his questions on the "script" that Sears had raised.  Counsel suggested the "script" that Sears was told to follow was one "just like Fusion Pharm" in the eyes of law enforcement but not in Sears' view.  He asked Sears about his disagreement with the "script."  Sears provided no details but said, "Fusion Pharm was not like that." ("That" being the scenario the undercover operation followed).  Defense counsel did not ask Sears to explain his disagreement with the purported FBI "script" but amplified it by implying the FBI undercover "script" was not the only "script" provided to Sears.  Defense counsel inquired into the statement the defendant made to AUSA Sibert after the noon recess.  He asked (paraphrasing) if the FBI script was the only script he was angry about and if in fact he

said to AUSA Sibert at the noon recess that "Sibert was off script." The cross examination ended.

With the defense having brought up and solely emphasized the fact that Sears disagreed with the FBI scenario in which he seemingly enthusiastically participated as someone who did not need prodding along and with the defendant focusing on a government "script," the government on redirect sought to inquire into the "disagreement." Due to the fact the door had been opened, the government chose to drive through it and change their strategic decision of not introducing the plea agreement of Sears. The Sears plea agreement, exhibit 446, contains 29 pages of a factual recitation which details Sears' crime and details whether or not "Fusion Pharm was not like" the script used in the undercover scenario. The government began its redirect attempting to have Sears examine the factual details in the plea agreement and see if his assessment of the factual basis for the plea would differ from the scenario. However, Sears was not going to have any part of it. The government suggested Sears read the factual basis (to himself) and see if it refreshed his recollection and if not, have it admitted as an exhibit. The court indicated in its discretion it was not going to have the defendant read aloud the 29 pages to the jury. It was clear that examining the defendant as to the details of the factual recitation and inquiring whether those were within what he called a government manufactured "script" would have taken another three days. Recognizing that, the government chose to offer the entire plea agreement as an exhibit, which it could have done independently of the witness's memory or lack thereof. The court inquired twice of the government if that is what it wanted to do and admitted the exhibit.

## ARGUMENT

The defense argument is premised on the mistaken assumption that plea agreements of a cooperating witness are inadmissible hearsay. He is wrong. "It is perfectly permissible for a prosecutor to introduce a witness's plea agreement on direct examination, even if it includes a truthfulness provision." *United States v. Harlow*, 444 F.3d 1255, 1262 (10th Cir. 2006). This rule was first noted by the Tenth Circuit in *United States v. Lord*, 907 F.2d 1028, 1029-31 (10th Cir. 1990), where the court ruled that not only could the plea agreement of a cooperating witness could be admitted but that the "truthfulness provisions" [that the witness agreed to testify truthfully] could be admitted, even absent a challenge to the witness' credibility by the defendant. The court focused on the issue of the truthfulness provision, accepting as a given that the plea agreement was admissible. "The majority of circuits allow the government to admit evidence of the truthfulness provisions of an agreement on direct examination of a witness, prior to any challenge to the witness's credibility." *Id.* at 1029. The court specifically rejected the Second Circuit's rule requiring the witness's credibility to be attacked prior to the admission of the entire plea agreement. *Id.* at 1030.

The Seventh Circuit explained the basis for the principle in *United States v. Lefluer,* 798 F.2d 977, 983-84 (7th Cir. 1979):

> To bolster a witness's credibility in advance is improper. See Fed.R.Evid. 608(a)(2). It not only has the potential for extending the length of trials enormously, but asks the jury to take the witness's testimony on faith; it may therefore reduce the care with which jurors listen for inconsistencies and other signs of falsehood or inaccuracy. But asking a witness whether he is testifying by agreement is not likely to bolster his credibility. If anything it is likely to have the opposite effect, by imputing a motive for the witness's testifying as the prosecution wants him to testify, regardless of the truth; few jurors would believe that the government would retaliate against a witness

5

> because he had lied *for* the government. If the government does not ask the witness whether he is testifying by agreement, the defense is very likely to do so on cross-examination.
>
> May the government pull the sting of cross-examination by asking the question on direct examination? We have twice upheld the propriety of this practice, see *United States v. Craig,* 573 F.2d 513, 519 (7th Cir.1978); *United States v. Hedman,* 630 F.2d 1184, 1198–99 (7th Cir.1980); see also *United States v. McNeill,* 728 F.2d 5, 14 (1st Cir.1984); *United States v. Henderson,* 717 F.2d 135, 137–38 (4th Cir.1983), and we are not persuaded to depart from these holdings. The practice is justified by the same considerations that underlie the "completeness" rule codified in Fed.R.Evid. 106. A party ought to be able to extract the complete testimony of his witness, including the essential circumstances bearing on its believability, rather than forced to leave gaping holes to be poked at by his opponent. This is particularly true in the matter of a plea or immunity agreement, since the jury is bound to wonder from the outset why someone should be testifying to all these things that damn him along with the defendant, and having wondered may be shocked or puzzled to discover the reason for the first time on cross-examination. A trial is not just combat; it is also truth-seeking; and each party is entitled to place its case before the jury at one time in an orderly, measured, and balanced fashion, and thus spare the jury from having to deal with bombshells later on. It is on this theory that defense counsel, in beginning their examination of a defendant, will often ask him about his criminal record, knowing that if they do not ask, the prosecutor will do so on cross-examination. See, e.g., *United States v. Fountain,* 768 F.2d 790, 795, modified on other grounds, 777 F.2d 345 (7th Cir.1985) (per curiam). What is sauce for the goose is sauce for the gander.

*Accord, United States v. Mealy*, 851.F.2d 890 (2nd Cir. 890, 899 (7th Cir. 1988).

Thus, it was legally permissible for the government to introduce the full, written plea agreement in direct examination, or simply at another point in its case in chief (which is ongoing).  The fact that the government did not deem it necessary to do so until it felt the defendant opened the door to the witness's prior version of the facts of "what happened at Fusion Pharm," does not preclude admission.  The defendant makes oblique references to the prosecutor's motives, but avoids the simple fact that he

opened the door that the prosecution was not going to open – the details of the written plea agreement.

The defendant also challenges whether the predicates of Fed R. Evid 803(5) were satisfied. Frankly, undersigned counsel does not have a sufficient recollection of what was asked and answered of the witness. We do not have an appellate record from which to argue and the government defers to the court which has a better ability to access the record. However, that is immaterial. Whether or not those predicates are satisfied is not the point. If the court chooses to exclude the exhibit as offered during the testimony of Sears when it became clear he was trying to deny the "script" to which he affixed his signature on the plea agreement sometime ago on the ground predicates were not satisfied, the exhibit can still be admitted. The government can simply offer it as an exhibit to which the court can take judicial notice, the court's own records under Fed.R. Evid 201(b)(2). *Harris v. County of* Orange, 682 F.3d 1126, 1131 (9th Cir. 2012); United *States v.* Estep, 760 F.2d 1060, 1063 (10th Cir. 1985). The admissibility is clear based upon the authority noted above. Apart from that authority, the relevance was made clear when the defense focused on what Sears stated was an untrue "script" written by the FBI and directed by AUSA Sibert in his direct examination.

## CONCLUSION

Based upon the arguments and authorities adduced herein, the defendant's motion to reconsider the decision to admit exhibit 446 should be denied.

Dated this 20th day of January 2019.

Respectfully submitted,

Jason A. Dunn
United States Attorney


By: *s/Robert Brown*
ROBERT BROWN
Assistant United States Attorney
U.S. Attorney's Office-Denver
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: (303)454-0100
Email: Jeremy.Sibert@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on this 20th day of January 2019, I electronically filed the foregoing **RESPONSE TO MOTION TO RECONSIDER ADMISSION OF EXHIBIT 446 [187]** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

      By: *s/ Robert Brown*
ROBERT BROWN
United States Attorney's Office