GOVT. AMENDED DISPUTED INSTRUCTION NO. 29

COUNTS 21-23 SECURITIES FRAUD ELEMENTS

Counts 21-23 charge the defendant with committing securities fraud, or aiding and abetting the commission of securities fraud, relating to FusionPharm stock. Specifically, the defendant is charged under Title 15, United States Code, Sections 78j(b) and 78ff, and a regulation promulgated thereunder. Section 78j(b) provides in relevant part that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5 (Title 15, United States Code, Section 78(j)(B)) was promulgated by the Securities and Exchange Commission, or the SEC, as "necessary or appropriate in the public interest" "for the protection of investors." Rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>  (a)  To employ any device, scheme, or artifice to defraud,
>  (b)  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,
>  (c)  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

These provisions make unlawful all "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of

securities."[1] Such activity "mislead[s] investors by artificially affecting market activity."[2] It "deceiv[es] investors as to how other market participants have valued a security"; the investors are "misled to believe that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."[3] "The basis of such manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."[4]

The Indictment alleges that the defendant engaged in a series of actions designed to manipulate the market price and volume of FusionPharm stock and to orchestrate artificial investor demand for FusionPharm stock. To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant, in connection with the purchase or sale of securities,

    (a) employed any device, scheme, or artifice to defraud, or

    (b) made any untrue statement of a material fact, or

---

[1] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976).

[2] *Santa Fe Indus. v. Green*, 430 U.S. 462, 476 (1977).

[3] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007) (internal quotations and citation omitted); *see Ala. Farm Bureau Mut. Cas. Co., v. Inc. Am. Fidelity Life Ins. Co.*, 606 F.2d 602, 612 (5th Cir. 1979) (scheme to contrive stock trades qualifies as "manipulative" under § 10(b) because it "induce[s] investment in a company's stock").

[4] *Levy v. United States*, 626 F. App'x 319, 322 (2d Cir. 2015) (citing *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir.1999))

(c) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(d) engaged in a transaction, practice, or course of business which operated or would operate as a fraud and deceit on any person.

*Second*: the defendant aced knowingly, intentionally and wilfully;

*Third*: made use of, or caused the use of,

(a) any means or instrumentality of interstate commerce, or

(b) of the mails, or

(c) of any facility of any national securities exchange, in connection with the purchase or sale of securities

*Fourth*: the defendant acted with the intent to defraud.

Information is material if there is a substantial likelihood that a reasonable investor would have considered it important in deciding whether to buy, sell, or hold a security and at what price to buy, sell, or hold the security.  In other words, there must be a substantial likelihood that a reasonable investor would have viewed the information at issue as significantly altering the total mix of information available.  Materiality of information is judged as of the time the information is used to trade.

A person uses information in connection with trading a stock or options when that information is a factor, however small, in his/her decision to buy or sell the stock or option.  You may find that a person's conduct was in connection with the purchase or sale of stock or option even if there was no evidence that other purchasers or sellers were harmed.

To act willfully means to act knowingly and purposefully with the intent to do something that the law forbids, that is, with bad purpose either to disobey or to disregard the law.  It is not required that the government show that person, in addition to knowing what he was doing and deliberately doing it, also knew he was violating some particular statute.   But the defendant must have acted with knowledge and intent to carry out the scheme.

Intent to defraud in the context of the securities laws means to act knowingly and with the intent to deceive.   For a person to have acted with the specific intent to deceive means that he must have known of the fraudulent nature of the scheme and acted with intent that it succeed.

The question of whether a person acted knowingly, willfully, and with the intent to defraud is a question of fact for you to determine like any other fact question.   This question involves one's state of mind.

The term "instrumentality of interstate commerce" means instruments, devices, and means of conducting trade, commerce, transportation, or communication among any two states.  Instrumentality of interstate commerce includes the use purely within one state of a telephone or any other instrument used in the conduct of interstate commerce.

I instruct you that the Over the Counter Markets is a national securities exchange.  The term "facility of a national securities exchange" includes any property or services maintained by Over the Counter Markets.

It is not necessary that the defendant be directly or personally involved in the use of an instrumentality of interstate commerce or use of any facility of a national security

exchange.  It is enough for you to find that the defendant was an active participant in a scheme and took steps or engaged in conduct that he knew or could reasonably foresee would naturally and probably result in the use of an instrumentality of interstate commerce or use of a facility of a national securities exchange.  This includes placing a telephone call, email, or an order to a brokerage firm to buy or sell securities.

It is not necessary that the communication over the instrumentality of interstate commerce concern any fraudulent material or anything criminal or objectionable.  The matter communicated may be entirely innocent so long as it is in furtherance of a scheme to defraud or fraudulent conduct.

The use of an instrumentality of interstate commerce need not be central to the execution of the scheme and may even be incidental to it.  All that is required is that the use of an instrument of interstate commerce bore some relationship to the object of the scheme or fraudulent conduct.

Each specific use of an instrumentality of interstate commerce in furtherance of a scheme to defraud constitutes a separate and distinct criminal offense.

### Aiding and abetting securities fraud

The defendant is charged with aiding and abetting the commission of securities fraud.   Title 18, United States Code, Section 2, provides: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: someone else committed the charged crime (securities fraud); and

*Second*: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Title 15, United States Code, Sections 78j(b)
Title 15, United States Code, Section 78(j)(B)
    United States v. Edward Kosinski Criminal No 3:16CR 148 United States District Court District of Connecticut
    United States v. James M. Schneider No 17-201712-CR-FAM(s) United States District Court Southern District of Florida
*United States v. Bercoon,* 15-cr-0022-LMM, N.D. Ga 2015 (instruction given).
2B Kevin F. O'Malley *et al.*, *Fed. Jury Prac. & Instr.* § 62:05, 62.07 (6th ed.) (modified to match 10th circuit format).
Tenth Circuit Pattern Crim. Jury Instr. § 2.06 (2011) (modified

GOVT. AMENDED DISPUTED INSTRUCTION NO. 32

GENERAL RULES AND RESTRICTIONS UNDER SECURITIES LAW

Rule 144 under the Securities Act ("Rule 144") provides certain requirements for resellers to avoid being classified as an underwriter. These rules vary on whether or not an individual is classified as an "affiliate." Rule 144(a) (1) defines an "affiliate" to mean "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with the issuer." Rule 405 under the Securities Act defines "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise."

If a person is considered an affiliate, additional requirements must be met in order to sell securities since the securities will be termed "restricted securities" since the securities are acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering. The additional requirements include a holding period, limitation on amount of securities sold, manner of sale, and requirement for brokers' transactions to include a reasonable inquiry.

15 U.S. Code § 77e
17 C.F.R. § 230.144