IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.17-cr-00008-WJM-1

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.    **GUY M. JEAN-PIERRE**,

        Defendant.

---

### DEFENDANT JEAN-PIERRE'S
### MOTION FOR BELOW-GUIDELINES SENTENCE

---

THE DEFENDANT, GUY M. JEAN-PIERRE, by and through his attorney, Clifford J. Barnard, and pursuant to D.C.COLO.LCrR 32.1, respectfully moves this Court to impose a below-guidelines sentence based on an "individual assessment" of the § 3553(a) factors applicable to him. A below-guidelines sentence would be sufficient to fulfill all sentencing goals and requirements set forth in 18 U.S.C. § 3553(a). In support of this request, Mr. Jean-Pierre submits the following authority, facts and documentation:

## I.    Sentencing Calculations.

Mr. Jean-Pierre was found guilty by a jury to Count 28 of 29 counts, which charged him with conspiracy, mail fraud, wire fraud, securities fraud and money laundering. Probation has calculated Mr. Jean-Pierre's advisory sentencing guidelines range to be 235 – 240 months and has recommended a below-guidelines sentence of 120 months based primarily on a need for a non-disparate sentence with co-conspirators William Sears and Scott Dittman. (ECF #225-1, *P.S.I.R. Exhibit A* at R-1 and R-3 – 4.) The government in its

*Amended Post Trial Statement of the Case* calculated Mr. Jean-Pierre's sentencing guidelines range to be 235 – 293 months and has not yet made a recommendation as to Mr. Jean-Pierre's sentence. (ECF # 217.) Mr. Jean-Pierre in his *Sentencing Statement* calculated his guidelines range to be 97-121 months. (ECF # 222.)

**II.     18 U.S.C. § 3553(a) Supports a Below-Guidelines Sentence for Mr. Jean-Pierre.**

**A.     The History and Circumstances of Mr. Jean-Pierre.**

**1.     Mr. Jean-Pierre's Role in the Offense Was Less than the Roles of Co-defendants Sears and Dittman.**

Mr. Jean-Pierre's role in the offense was minor compared to the roles of co-conspirators Sears and Dittman.[1] Mr. Jean-Pierre was an active participant in the conspiracy for a limited period of time. After Mr. Jean-Pierre had been in a car accident in December, 2012, had moved to the Dominican Republic and had limited or terminated his involvement in the conspiracy, Sears and Dittman entirely excluded him from the conspiracy in the summer of 2013.[2] Thus, Mr. Jean-Pierre voluntarily ceased to participate in the criminal activity before its discovery by law enforcement.[3] During the time that Mr.

---

[1] This is a valid sentencing consideration. *See United States v. Smart*, 518 F.3d 800 (10th Cir.2008) (where the defendant was convicted after a trial of inducing a minor to engage in sexually explicit conduct for the purpose of producing videotapes in violation of 18 U.S.C. 2251(a), and the guidelines were 168 to 210 months, a sentence to 120 months was affirmed because the defendant was less culpable than the co-defendant who received 120 months, even though the co-defendant pled guilty).

[2] This is a valid sentencing consideration. *See United States v. Adelson* 441 F.Supp.2d 506 (S.D.N.Y. 2006) (in securities fraud case, a below guideline sentence was imposed in part because the defendant "did not participate in the fraudulent conspiracy until its final months").

[3] This is a valid sentencing consideration. *See United States v. Numemacher*, 362 F.3d 682 (10th Cir. 2004) (where the defendant possessed and distributed child pornography on his website for a short time but destroyed all pornography before learning

Jean-Pierre was involved in the conspiracy, Sears and Dittman obtained approximately $2 million from the sale of stocks. After Mr. Jean-Pierre was no longer active in the conspiracy, Sears and Dittman then obtained an additional $10 million in proceeds from the sale of stock. The remaining $10 million in loss after Mr. Jean-Pierre was excluded from the conspiracy were not funds: (1) obtained in the scope of any agreement Mr. Jean-Pierre had entered into to jointly undertake the particular criminal activity; and (2) was not reasonably foreseeable in connection with that criminal activity. Thus, Mr. Jean-Pierre was responsible for only part of loss.[4] Furthermore, Mr. Jean-Pierre received only approximately $34,000 in total from Sears or Dittman for his actions. Thus, Mr. Jean-Pierre received only a small share of the proceeds from the conspiracy.[5] Because Mr. Jean-Pierre's "personal gain" was approximately $34,000 while the amount of loss is, according to Mr. Jean-Pierre's calculations, approximately $2 million, he qualifies as a minor participant and his role in the conspiracy warrants a lesser sentence to distinguish him from Sears and Dittman, the higher-ups, who deserve more time.[6]

---

of the investigation and where he cooperated with the FBI, his conduct "atypical" and justified a downward departure).

[4] This is a valid sentencing consideration. *See United States v. Arutunoff*, 1 F.3d 1112 (10th Cir.1993) (the district court may depart downward if a defendant was not involved in all of his co-conspirators efforts to defraud investor, causing the loss figure to overstate the defendant's culpability).

[5] This is a valid sentencing consideration. *See United States v. Stuart*, 22 F.3d 76 (3d Cir.1994) (although face value of bonds was $129,000 which determined the offense level, the small profit actually made might warrant a downward departure by analogy to § 2F1.1 which states that the strict application of the loss table can overstate the seriousness of the offense).

[6] This is a valid sentencing consideration. *See United States v. Jimenez-Gutierrez*, 491 F.3d 923 (8th Cir.2007) (where the defendant pled guilty to conspiracy to distribute

### 2.   Mr. Jean-Pierre's Loss of Reputation and Loss of Law License.

Mr. Jean-Pierre has already been punished by collateral consequences such as the loss of his professional reputation, the loss of his licenses to practice law and the stigma of conviction. Furthermore, a criminal conviction "often serves as a de facto informal basis for job denial." Wayne A Logan, "Informal Collateral Consequences" 88 Washington Law Review 1103, 1107 (2013). Conviction "can function to disrupt or sever social ties that can be key to finding employment." *Id.* at 1108. A criminal conviction "serves as the greatest impediment to securing housing." *Id.* ("in turn homelessness in itself, in addition to making …job searches far more difficult increases the likelihood of subsequent arrest and conviction").[7]

---

more than fifty grams of methamphetamine and where the guidelines were 188-220 months, the court's sentence of 96 months was proper in part because the court could determine that a guideline sentence was too harsh because it did not account for the fact that higher-ups in the conspiracy deserved much more time).

[7] This is a valid sentencing consideration. *See United States v. Anderson*, 533 F.3d 623 (8th Cir.2008) (where the defendant was convicted of insider trading and money laundering and the guidelines were 46-57 months, the district court's sentence of 30 months was not unreasonable in part because of collateral consequences where the district court "specifically addressed other ways in which the defendant had suffered atypical punishment such as the loss of his reputation and his company, the ongoing case against him from the Securities and Exchange Commission and the harm visited upon him as a result of the fact that his actions brought his wife and friend into the criminal justice system."); *United States v. Vigil*, 476 F. Supp.2d 1231, 1235 (D.N.M. 2007) (finding variance appropriate where the defendant in a public corruption case was already collaterally punished by loss of his position, loss of his reputation, widespread media coverage of his case, and the emotional toll of two lengthy, public trials); and *United States v. Mateo*, 299 F. Supp.2d 201, 209-10 (S.D.N.Y. 2004) ("beyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal conviction, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of certain civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement").

### 3.    Mr. Jean-Pierre Is 60 Years Old.

Because Mr. Jean-Pierre is older, he presents less risk of recidivism and is unlikely to reoffend and, thus, poses no danger to the public. "Age ... may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other characteristics, are present to an unusual degree" and "may be a reason to depart downward in a case in which the defendant is elderly and infirm." U.S.S.G. § 5H1.1. Although Mr. Jean-Pierre's age may not qualify him for a downward departure, it should be considered by this Court with regard to a possible variance.[8] Furthermore, considering the fact that Mr. Jean-Pierre's life expectancy is approximately 75.8 years (*see United States v. Prevatte*, 66 F.3d 840, 849 (7th Cir.1995); Judge Norgle concurring), if the 60-year old Mr. Jean-Pierre were to be given a sentence that would keep him incarcerated for 15 years, it may well be a life sentence, while a 120 month sentence would keep Mr. Jean-Pierre incarcerated for two-thirds of his remaining natural life-expectancy.

### 4.    Prison Time Is More Significant for a First Offender Who Has Not Previously Been Incarcerated.

---

[8]    This is a valid sentencing consideration. *See United States v. Smith*, 275 Fed.Appx. 184, 187-88 (4th Cir.2008) (the defendant's 24-month sentence for possession of child pornography was not unreasonably lenient; although the sentence was below the sentencing guidelines range of 78 to 97 months, the court's statement of reasons for the sentence expressly acknowledged the seriousness of the offense, against which it counterbalanced the defendant's personal characteristics such as his age, lack of criminal history, low risk of recidivism and positive role in his family and his community) and *United States v. Carmona-Rodriguez*, 2005 WL 840464, at *4 (S.D.N.Y.) ("[t]wo recent [district] courts have declined to impose Guidelines sentences on defendants who, like [this defendant], were over the age of forty on the grounds that such defendants exhibit markedly lower rates of recidivism in comparison to younger defendants;" citations omitted).

Mr. Jean-Pierre had never been imprisoned prior to his arrest related to this case. This and his related misdemeanor convictions in New York are his first criminal convictions and the first time he has been facing incarceration. Therefore, the prison time that he may be required to serve would be more significant to him than it would have been had he been previously incarcerated for any significant period of time.[9] Furthermore, a significant and long potential prison sentence has weighed heavily on him and has acted and will continue to act as a serious deterrent to prevent him from committing new crimes in the future.

### 5.    Mr. Jean-Pierre's Pretrial Confinement.

Mr. Jean-Pierre was confined in the GEO immigration facility for 505 days. Confinement in this facility is generally considered more difficult and harsher than confinement in a Bureau of Prisons facility. This Court may consider the harshness of Mr. Jean-Pierre's pretrial and presentence confinement at the GEO immigration facility.[10]

### 6.    The Need to Avoid Unwarranted Sentence Disparities.

18 U.S.C. § 3553(a)(6) dictates that, in determining the sentence to be imposed, a

---

[9] This is a valid sentencing consideration. *See United States v. Collington*, 461 F.3d 805 (6th Cir.2006) (in a drugs and gun case where the guidelines range was 188-235 months, a sentence of 120 months was affirmed in part because "the district court found that, despite [the defendant's] criminal history being at a IV, '[the defendant] has never been in custody for any substantial period of time,' having only been imprisoned for seven months before this crime") and *United States v. Qualls*, 373 F. Supp.2d 873, 877 (E.D. Wis. 2005) ("[g]enerally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend").

[10] This is a valid sentencing consideration. *See United States v. Carty*, 264 F.3d 191, 196 (2nd Cir.2001) ("we hold today that pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures") and *United States v. Pressley*, 345 F.3d 1205 (11th Cir.2003) (where defendant spent six years in presentence confinement, of which five years were in 23-hour a day lockdown and where he had not been outside in five years, district court erred in holding that departure was not available).

court must consider, *inter alia*, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct ..." Thus, although "the purpose of the Guidelines is not to eliminate disparities among co-defendants, but rather to eliminate disparities among sentences nationwide," a district court nonetheless "may consider sentencing disparities between co-defendants ..." *United States v. Zapata*, 546 F.3d 1179, 1194 (10th Cir. 2008), *cert. denied*, 556 US 1214 (2008).

The main co-conspirators, William Sears and Scott Dittman, plead guilty pursuant to plea agreements in Case No. 16-cr-00301 to conspiracy in violation of 18 U.S.C. § 371. This charge carries a statutory maximum sentence of five years.[11] Both were scheduled to be sentenced on July 11, 2019, the day after Mr. Jean-Pierre's sentencing hearing on July 10, 2019; however, Mr. Dittman has been granted a continuance of his sentencing and his new sentencing date has not yet been set.

In order to avoid a disparity in sentences between these three co-conspirators and to avoid penalizing Mr. Jean-Pierre for exercising his constitutional right to go to trial, the Court should not sentence Mr. Jean-Pierre to anything more than five years.

### 7.    Imperfect Entrapment.

With regard to the sting operation in Florida, Mr. Jean-Pierre was the target of aggressive encouragement by cooperating co-conspirator Sears and agents. In one case, even though a defendant was not entrapped in a legal sense, the court appropriately departed downward under § 5K2.12 where the trial court was, in part, troubled by "aggressive encouragement of wrongdoing [by the informer]." *United States v. Garza-*

---

[11]    Sears also plead guilty to a tax count carrying maximum statutory sentence of three years.

*Juarez*, 992 F.2d 896, 910-912 & n. 2 (9th Cir.1993).[12]

**B.     The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment, Afford Adequate Deterrence and Protect the Public.**

A below-guideline sentence can be fashioned to adequately reflect the seriousness of the offense and promote respect for the law. This Court should consider a below-guidelines sentence because it accounts for Mr. Jean-Pierre's real offense conduct here and for Mr. Jean-Pierre as an individual. As Attorney General Eric Holder stated in his April 5, 2013 speech delivered at the 15th Annual National Action Network Convention,

> Too many people go to too many prisons for far too long for no good law enforcement reason. It is time to ask ourselves some fundamental questions about our criminal justice system. Statutes passed by legislatures that mandate sentences, irrespective of the unique facts of an individual case, too often bear no relation to the conduct at issue, breed disrespect for the system, and are ultimately counterproductive. It is time to examine our systems and determine what truly works. We need to ensure that incarceration is used to punish, to rehabilitate, and to deter – and not simply to warehouse and forget.

Given the circumstances presented in Mr. Jean-Pierre's case, a below-guidelines sentence would be sufficient to promote respect for the law, punish Mr. Jean-Pierre, deter Mr. Jean-Pierre from re-offending, deter the public and would be equally sufficient to protect the public.

---

[12]   This is a valid sentencing consideration. *See United States v. McClelland*, 72 F.3d 717 (9th Cir.1995) (the district court properly departed downward 6 levels for imperfect entrapment under § 5K2.12 even though the defendant initiated the plan) and *District Court: United States v. Panduro*, 152 F.Supp.2d 398 (S.D.N.Y. 2001) (in reverse sting operation, the defendant was granted a three-level downward departure under App. Note 15 "to adjust for the artificially low price of the [35 kilos] of cocaine resulting from the overly generous credit terms [proposed by the government] – "if [the agent] had not extended credit for half the purchase price...defendants [would have only purchased half the amount" the extension of credit was "unreasonable and below market").

Furthermore, a below-guidelines sentence does not minimize the seriousness of the offense. As the Supreme Court noted in *Gall*, "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007), *citing*, *United States v. Knights*, 534 U.S.112, 119 (2001). Probation is not a free ride:

> Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. U.S.S.G. § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer.

*Gall*, 552 U.S. at 48. If the Court believes that additional conditions are appropriate and/or necessary, they can be addressed through the imposition of additional special conditions of probation. The seriousness of this offense, when viewed in the full context of the history and characteristics of Mr. Jean-Pierre, is sufficiently addressed with a below-guidelines sentence.

## C.     Cost of Lengthy Incarceration to Taxpayers.

Because a below-guidelines sentence is not necessary in Mr. Jean-Pierre's case, the Court should consider the cost of incarcerating him in determining his appropriate sentence. This is a legitimate consideration in sentencing. As one court has stated:

> Given that holding a person in federal prison costs about $23,000 per year, the 61-year-sentence the court is being asked to impose in this case will cost the taxpayers (even assuming [the defendant] receives good time credit and serves 'only' 55 years) about $1,265,000. Spending more than a million dollars to incarcerate [the defendant] will prevent future crimes by him and may well deter some others from being involved with drugs and guns. But

> that money could also be spent on other law enforcement or social programs that in all likelihood would produce greater reductions in crime and victimization.

*United States v. Angelos*, 345 F.Supp.2d 1227 (D. Utah 2004). As another court put it,

> [the defendant] has a life expectancy of seventy-eight years. That means that [the defendant] will probably spend thirty-five years in federal prison. It costs the United States government and its taxpayers approximately $22,000 per year to keep a federal offender in prison. Therefore, it will cost the taxpayers $836,000 for his incarceration. This sentence is a waste of time, money, and more importantly, a man's life. These unwise Sentencing Guidelines put nonviolent offenders in prison for years, they ruin the lives of the prisoners, their families, and they also hurt our economy and our communities by draining billions of dollars from the taxpayers and keeping potentially productive members of society locked up. The opportunity costs imposed by the Sentencing Guidelines are staggering.

*United States v. Chavez*, 230 F.3d 1089, 1092 (8th Cir. 2000) (Bright, J., concurring).[13]

The costs of incarceration have only increased; Probation has estimated that it now costs $36,300 per year to incarcerate a federal prisoner in the B.O.P. (ECF # 225, P.S.I.R. at ¶ 144, pg.31.) Rather than keeping Mr. Jean-Pierre locked up for an extensive period of time, the money saved by a sentence to probation could be much better spent elsewhere.

## III.    Mr. Jean-Pierre's Requested Sentence.

In considering the totality of the circumstances of Mr. Jean-Pierre's history and characteristics, a below-guidelines sentence is appropriate. As one court has stated:

> Rehabilitation is also a goal of punishment. 18 U.S.C. § 3553(a)(2)(D). That goal cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the necessary condition of mankind, for we are all created in the image of God. ***A judge should be hesitant before***

---

[13]   *But see*, *United States v. Tapia-Romero*, 523 F.3d 1125 (9th Cir.2008) ("§ 3553(a) neither requires, nor allows, a court to consider the cost of imprisonment in determining the appropriate length of a defendant's term of imprisonment").

*sentencing so severely that he destroys all hope and takes away all possibility of useful life*. Punishment should not be more severe than that necessary to satisfy the goals of punishment.

*United States v. Carvajal*, 2005 WL 476125, *6 (S.D. N.Y.) (unpublished) (emphasis added). In Mr. Jean-Pierre's case, a below-guidelines sentence of 5 years or less is sufficient to satisfy the goals of punishment and all other sentencing goals. It is anticipated that Mr. Jean-Pierre, in his statement to the Court at the sentencing hearing, will request a sentence to time served.

WHEREFORE, Mr. Jean-Pierre requests that this Court sentence him to a below-guidelines sentence of five years or less.

DATED this 26th day of June, 2019.

Respectfully submitted,

*s/Clifford J. Barnard*

_____
Clifford J. Barnard
Clifford J. Barnard, Attorney at Law
4450 Arapahoe Avenue, Suite 100
Boulder, Colorado 80303
Telephone: (303) 449-2543
Facsimile: (303) 444-6349
Email: *cliffbarnard@earthlink.net*
Attorney for Defendant Jean-Pierre

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June, 2019, I electronically filed the foregoing *Defendant Jean-Pierre's Motion for Below-Guidelines Sentence* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

A.U.S.A. Jeremy Sibert          *jeremy.sibert@usdoj.gov*

and I hereby certify that I have mailed or served the document or paper to the following non

CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-

participant's name:

Guy Jean-Pierre                                   *Via email*
Register # 78606-054
Independence House South
2765 S. Federal Blvd.
Denver, CO 80236


                                                  *s/Clifford J. Barnard*
                                                  _____
                                                  Clifford J. Barnard
                                                  Attorney for Defendant Jean-Pierre