1

1        IN THE UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF COLORADO

3   Criminal Action No. 17-cr-0008-WJM

4   UNITED STATES OF AMERICA,

5   Plaintiff,

6   vs.

7   GUY M. JEAN-PIERRE, a/k/a MARCELO DOMINGUEZ de GUERRA,

8   Defendant.

9   ------------------------------------------------------------
            REPORTER'S PARTIAL TRANSCRIPT OF WILLIAM SEARS
10                      (Jury Trial, Day 1)
                           Volume I
11  ------------------------------------------------------------

12

13  Proceedings before the HONORABLE WILLIAM J. MARTINEZ,

14  Judge, United States District Court for the District of

15  Colorado, on the 14th day of January, 2019, in Courtroom

16  A801, United States Courthouse,

17                         APPEARANCES

18
        JEREMY S. SIBERT and ROBERT M. BROWN, Assistant U.S.
19  Attorneys, 1801 California Street, Suite 1600, Denver,
    Colorado 80202, appearing for the plaintiff.
20
        CLIFFORD J. BARNARD, Attorney at Law, 4450 Arapahoe
21  Avenue, Suite 100, Boulder, Colorado 80303, AND
        THOMAS E. GOODREID, Attorney at Law, 1801 Broadway,
22  Suite 1400, Denver, Colorado 80202, appearing for the
    defendant.
23
                   MARY J. GEORGE, FCRR, CRR, RMR
24            901 19th Street, Denver, Colorado 80294
             Proceedings Reported by Mechanical Stenography
25              Transcription Produced via Computer

1                  P R O C E E D I N G S

2              (This is a transcript of the testimony of William

3      Sears)

4                    *      *      *      *      *

5              THE COURT:  Okay.  All right.  The Government may

6      call its first witness.

7              MR. SIBERT:  Your Honor, at this time the

8      Government would like to call William Sears.

9              Your Honor, do you mind if I push this back?

10             THE COURT:  No, please do so.  Thank you.  And if

11     you could return the lectern to its prior location.

12             MR. SIBERT:  Yes, sir.

13             COURTROOM DEPUTY:  Come around to the witness

14     stand and I'll swear you in.  Please raise your right hand.

15             WILLIAM SEARS, GOVERNMENT'S WITNESS, SWORN

16             COURTROOM DEPUTY:  Please be seated.

17             THE WITNESS:  Thank you.

18             COURTROOM DEPUTY:  Please scoot your chair all the

19     way in.  Speak directly into the microphone.

20             Please state your full name and spell your last

21     name for the record.

22             THE WITNESS:  William Joseph Sears.  S-e-a-r-s.

23             MR. SIBERT:  Your Honor, may I begin?

24             THE COURT:  You may.

25             MR. SIBERT:  Thank you.

3

Direct - Sears

1      DIRECT EXAMINATION

2      BY MR. SIBERT:

3      Q.   All right.  Good afternoon, sir.

4      A.   Good afternoon.

5      Q.   I'm going to ask you, before you begin your -- it's a

6      large courtroom, big ceilings, when you answer questions,

7      I'm going to need you to be loud and I need you to speak

8      into that microphone.  Do you understand?

9      A.   Yes, sir.

10     Q.   Thank you.  All right, sir, can you go ahead and tell

11     the jury where you're currently living.

12     A.   Westminster, Colorado.

13     Q.   Okay.  And are you working right now?

14     A.   Part time.

15     Q.   Okay.  Who's your employer?

16     A.   Self-employed.

17     Q.   What do you do?

18     A.   I'm in the Industrial Hemp Space.

19     Q.   You're in what?

20     A.   Industrial Hemp Space.  Seeds and procurement.

21     Q.   So what do you do in the Industrial Hemp Space with

22     seeds and procurement?

23     A.   Growing small plants into poppy seeds and growing

24     small plants so they can be sold into the market to be

25     planted.

4

Direct - Sears

1    Q.    So are you growing marijuana?

2    A.    No, sir.

3    Q.    Just poppy?

4    A.    No, sir.

5    Q.    So herbal?

6    A.    It's industrial hemp, sir.

7    Q.    What is that?

8    A.    It is a different version of the plant that has

9    virtually no psychotropic or psychological effects by using

10   it.  We're using it mainly for hair and fiber.

11   Q.    Are you doing any investment work currently?

12   A.    No, sir.

13   Q.    All right.  Now, in the past you were involved with

14   what's considered MicroCap firms; is that correct?

15   A.    Yes, sir.

16   Q.    Companies?

17   A.    Yes, sir.

18   Q.    Can you name a few of those?

19   A.    Could you elaborate on "companies"?  Companies I

20   worked with or --

21   Q.    Companies that you were involved with, worked with,

22   ran.

23   A.    Meadpoint Venture Partners.  For a while I was --

24   Silver Star Capital Investments.  And I'm drawing a blank

25   at the moment.

5

Direct - Sears

1    Q.   All right.  Let's talk about this:  Did you work with
2    your brother-in-law in FusionPharm?
3    A.   Yes, I did.
4    Q.   Okay.  Was that time period essentially around 2011
5    through 2014?
6    A.   Yes, it was.
7    Q.   Now, as part of your role with FusionPharm, you took a
8    plea agreement in your case; is that correct?
9    A.   Yes, I did.
10   Q.   All right.  Can you explain to the jury what your
11   agreement is?  What you pled to and what your plea
12   agreement is.
13   A.   If you could further elaborate.
14   Q.   What did you plead guilty to?
15   A.   I pled guilty to conspiracy to commit securities fraud
16   and income tax.
17   Q.   And that's based upon your role with FusionPharm; is
18   that correct?
19   A.   That was based upon evidence that the Government felt
20   it could prove on there.  I --
21   Q.   And you came in this Court before this judge and pled
22   guilty, correct?
23   A.   Indeed.
24   Q.   No one forced you?
25   A.   No, sir.

                        Direct - Sears

1    Q.   You got to read the facts; is that right?

2    A.   Yes.

3    Q.   And were given a chance to tell the Court the facts

4    were correct or wrong; is that right?

5    A.   Yes.

6    Q.   And you told the Court they were right.

7    A.   Yes.

8    Q.   All right.  And that was for your role with

9    FusionPharm.

10   A.   Yes.

11   Q.   Now, when I asked you about your terms of your plea

12   agreement, you got a deal with the Government; is that fair

13   to say?

14          MR. GOODREID:  Objection.  Leading.

15   BY MR. SIBERT:

16   Q.   Did you get a deal with the Government?

17          THE COURT:  Hold on.

18          MR. SIBERT:  I'll rephrase, Your Honor.

19          THE COURT:  Well, are you going to attempt to

20   invoke 615 and examine him as a --

21          MR. SIBERT:  Not yet.

22          THE COURT:  Okay.  All right.

23          MR. SIBERT:  I'll reserve that, if the Court would

24   allow me.

25          THE COURT:  All right.

Direct - Sears

1          MR. SIBERT:  Thank you, though.

2          THE COURT:  Okay.  Then go ahead and rephrase.

3     BY MR. SIBERT:

4     Q.   What deal did you receive from the Government?

5     A.   A stipulation instead of going through the normal --

6     I'm drawing a blank at the moment --

7     Q.   Did you have an agreement to -- how much imprisonment

8     time you would serve?

9     A.   Yes.

10    Q.   What --

11    A.   It was a mini -- it was a mini-maxi, so to speak.

12    Five to eight.

13    Q.   Five years to eight years?

14    A.   Indeed, sir.

15    Q.   Okay.  And have you been sentenced yet in that case?

16    A.   No, I have not.

17    Q.   Now, there was a different Assistant U.S. Attorney

18    that you worked your case with besides myself with your

19    lawyers; is that correct?

20    A.   That is correct.

21    Q.   All right.  And that attorney's no longer with the

22    United States Government.

23    A.   To my knowledge --

24    Q.   Is that your understanding?

25    A.   Yes, sir.

Direct - Sears

1    Q.   All right.  Now, what has the Government asked you to

2    do here today?

3    A.   Tell the truth.

4    Q.   What has the Government promised you for your

5    testimony here today?

6    A.   Nothing.

7    Q.   All right.  Now, can you start -- you were -- you were

8    asked to review some documents; is that correct?

9    A.   Yesterday, yes, sir.

10   Q.   May I have the screens on for everyone except for the

11   jury.  And can I have Exhibit 32 brought up.

12            Your Honor, may I have a moment?

13            THE COURT:  You may.

14            MR. SIBERT:  Your Honor, before we -- I would ask

15   permission, if I can provide a hard copy to the witness and

16   let defense counsel know the exhibit numbers and I will

17   walk through the exhibits.

18            THE COURT:  Well, given what we discussed at the

19   trial preparation conference, are the pages you want to

20   examine the witness on included in the -- in what's in

21   those binders?

22            MR. SIBERT:  They are.  The only problem is we

23   kind of floated around exhibits.  We've had to initial

24   them.  I put together packages for him to look through.

25   It's just a faster process.

Direct - Sears

1           THE COURT:  It may be faster but we still have to
2     adhere to the Rules of Evidence --
3           MR. SIBERT:  Most of these have been stipulated.
4           THE COURT:  Hold on, hold on.  We have to follow
5     the Rules of Evidence and you have to move for the
6     admission of the exhibits or portion of the exhibits that
7     you want to have published to the jury.
8           MR. SIBERT:  Very well, Your Honor.
9           THE COURT:  So are you saying that you have your
10    exhibits organized differently than how they are in the
11    binders?
12          MR. SIBERT:  No, Your Honor.
13          THE COURT:  I'm glad that you said that.  So, you
14    referenced Exhibit 32.  I notice from these Government
15    exhibit document that it's stipulated.  Are you moving for
16    its admission?
17          MR. SIBERT:  I'm going to move for Government
18    Exhibit 32, 33, 35, 36, 37, 92, and 238.
19          THE COURT:  Are they all stipulated to with
20    respect to authenticity and admissibility?
21          MR. SIBERT:  My understanding they are.
22          THE COURT:  One second.  Does that comport with
23    the defendant's records?
24          MR. GOODREID:  Your Honor, could I have the
25    reiteration of all those numbers?

Direct - Sears

1          THE COURT:  Yeah.

2          MR. SIBERT:  Government Exhibit 32, 33, 35, 36,

3    37, 92, 238.

4          MR. GOODREID:  I believe that's correct, Your

5    Honor.  We have stipulated to the admissibility of all of

6    those.

7          THE COURT:  All right.  Given the stipulation of

8    the parties and the Government, the following exhibits on

9    the Government are admitted into evidence and may be

10   published to the jury:  32, 33, 35, 36, 37, 92, and 238.

11         (Government's Exhibits 32, 33, 35, 36, 37, 92, and 238

12   received)

13   BY MR. SIBERT:

14   Q.   All right.  Let's look at Exhibit No. 32.  May I have

15   it published to the jury.

16         All right, sir, you reviewed this exhibit; is that

17   correct?

18   A.   Yes.

19   Q.   It's right there in front of you on your screen, too,

20   if you can't see it in the book.

21   A.   Yes.

22   Q.   I will circle right here.  Whose e-mail is on top of

23   that?

24   A.   That one is mine, sir.

25   Q.   Okay.  And can you, for the record, state what that

Direct - Sears

1    e-mail is.

2    A.   William -- williamjsears.com.

3    Q.   All right.  And for the purposes of the jury, can I

4    have this blown up, please?  The e-mail section.  The

5    addresses.  And whose e-mail is below that?

6    A.   Fredrick Dahlman.

7    Q.   And who's Fredrick Dahlman?

8    A.   Excuse me, sir?

9    Q.   Who is Fredrick Dahlman?

10   A.   Fredrick Dahlman was the CEO of Baby Bee Bright

11   Corporation.

12   Q.   Can I have 32 taken down.  And can I have Exhibit 33

13   put up.  Can you blow up the e-mail top, please.  Okay.

14        Again, sir, did you get a chance to review

15   Government Exhibit 33?

16   A.   Yes, I did, sir.

17   Q.   And, again, can you tell me whose e-mail addresses

18   those are on the top of that exhibit.

19   A.   The top one is mine and the bottom one is Mr.

20   Dahlman's.

21   Q.   And with this e-mail, you're e-mailing Mr. Dahlman; is

22   that correct?

23   A.   Yes, sir.

24   Q.   And you're e-mailing him how -- what are you e-mailing

25   him about?

12

Direct - Sears

1    A.    A conversation.

2    Q.    And what's the conversation about?

3    A.    It's about a shareholder transaction.

4    Q.    And what's the shareholder transaction about?

5    A.    Transferring shares.

6    Q.    From what to where?

7    A.    From -- from -- from himself to two other companies.

8    Q.    Government Exhibit 37 -- or, excuse me, 36.

9          Okay, again, sir, you reviewed this document --

10   A.    Yes, sir.

11   Q.    -- 36?

12   A.    Yes, sir.

13   Q.    And whose e-mail addresses are those on top of that?

14   A.    Myself and Mr. Dahlman.

15   Q.    And you're e-mailing Mr. Dahlman; is that correct?

16   A.    Yes, sir.

17   Q.    Okay.  Can I have Exhibit 92.  Can I have it taken

18   down just so the witness can see it on the screen, please.

19         Do you recognize Government Exhibit 92?

20   A.    It's too fuzzy here.  She's going to pull it up for

21   me.

22         Yes, I do.

23   Q.    All right.  Can you please focus back in on the

24   addresses.

25   A.    It was from myself going to various individuals at

Direct - Sears

1    Pacific Stock Transfer.

2    Q.   Okay.  What's Pacific Stock Transfer?

3    A.   It's a transfer agent.

4    Q.   Okay.  And based upon what you understand, what does a

5    transfer agent do?

6    A.   A transfer agent keeps track of and transfers

7    securities on the behalf of public companies to various

8    investors or individuals.

9    Q.   I want to circle an e-mail address.  I circled what's

10   labeled *guymjeanpierre@yahoo.com*.  Do you recognize that

11   address?

12   A.   Yes, I do.

13   Q.   Whose address is that?

14   A.   Mr. Guy Jean-Pierre's.

15   Q.   Do you see Mr. Guy Jean-Pierre here today in the

16   courtroom?

17   A.   Yes, sir, I do, sir.

18   Q.   Where do you see him sitting?

19   A.   Directly to my 1:00.

20   Q.   Okay.  What is he wearing?

21   A.   He's wearing a brown suit.

22         MR. SIBERT:  Your Honor, may the record

23   acknowledge that this witness has identified the defendant,

24   Mr. Guy Jean-Pierre.

25         THE COURT:  The record will so reflect.

14
Direct - Sears

1    MR. SIBERT:  Thank you.

2    BY MR. SIBERT:

3    Q.   Now, I want to circle the top line of this e-mail.

4    You can look on your screen because I just circled it on

5    the screen.  What does it mean by "Mr. Jean-Pierre is

6    handling the reverse with FINRA"?

7    A.   "Reverse" would be a term for when securities are

8    taken from a greater number to a smaller number and has to

9    work with the regulatory agencies in order to do so

10   properly.

11   Q.   So it was Mr. -- so in your corporation that you're

12   dealing with here in your e-mail, who's doing your legal

13   work?

14   A.   Mr. Jean-Pierre.

15   Q.   And who are you telling that is doing the legal work

16   for your purposes?

17   A.   Everybody was Pacific Stock Transfer.

18          THE COURT:  Mr. Sears, please keep your voice up

19   and speak into the mic.

20          THE WITNESS:  Yes, sir.

21          THE COURT:  Are we doing okay, Ms. Sewell?

22          THE JUROR:  Yeah.

23          THE COURT:  All right.

24          MR. SIBERT:  Your Honor, I can't see the side, so

25   if I need to address that or if I need to be louder,

Direct - Sears

1    someone please let me know.

2              THE COURT:  Yeah.  So Ms. Sewell, as we discussed

3    before, if you're having issues, raise your hand.

4              THE JUROR:  Okay.

5              THE COURT:  All right?  Okay.

6              MR. SIBERT:  Thank you, Your Honor.

7    BY MR. SIBERT:

8    Q.   Can I have Exhibit 238, please.

9              Do you recognize Government Exhibit 238?

10   A.   Yes, I do.

11   Q.   And what is that document?

12   A.   That is an e-mail, sir.

13   Q.   And, again, can you focus in on the top of that

14   e-mail.

15   A.   Yes.  That is sent from me.

16   Q.   Okay.  And that's your e-mail address,

17   *williamjsears.com*; is that correct?

18   A.   Yes, sir.

19   Q.   Okay.  And who is Mr. Cliffe Bodden?

20   A.   Cliffe Bodden was a consultant.

21   Q.   Okay.  And did he do work for FusionPharm?

22   A.   Yes, he did.

23   Q.   All right.

24             MR. SIBERT:  Your Honor, the next set of exhibits,

25   for defense purposes, I believe these all have been

Direct - Sears

1    stipulated to as well.

2              THE COURT:  What do you mean for defense purposes?

3              MR. SIBERT:  I'm going -- I have another block of

4    exhibits that I'd like to walk through, so I'm going to see

5    if it's okay if I could say the exhibits so they track.

6              THE COURT:  I'm not getting what you're trying to

7    do.  Are you moving for the admission of --

8              MR. SIBERT:  I'm going to move for the admission

9    of a block, if it's --

10             THE COURT:  Okay.  Sure.

11             MR. SIBERT:  I have six blocks.  I tried to --

12             THE COURT:  Okay.

13             MR. SIBERT:  -- save time.  Exhibit 235, 380,

14   381 --

15             THE COURT:  Slow down.

16             MR. SIBERT:  372-B, 372-D, 372-H, 372-I, 372-J,

17   372-K, 372-L, 372-M, Exhibit 226, Exhibit 382,

18   Exhibit 372-Q, as in Qbert, Exhibit 372-T as in Tom, 372-U

19   as in uniform, 372 Charlie Charlie, CC, Exhibit 40, Exhibit

20   229, Exhibit 372-II, Exhibit 372-M, Exhibit 254,

21   Exhibit 372-OO, Exhibit 372-PP, Exhibit 372-RR,

22   Exhibit 372-TT, Exhibit 372-YY, Exhibit 396, 397, 372-GGG,

23   372-PPP, and Exhibits 158 through 166.

24             THE COURT:  Wow.  One second.  All right, Mr.

25   Sibert, we'll try to plow through this as you have

Direct - Sears

1    organized it, but in the future, this is way too many --

2    way, way too many exhibits to try to get in at one time.  I

3    just took two, three minutes after you stopped talking to

4    try to write them down from my realtime here and I don't

5    even know if I've caught them all.  So I think whatever

6    efficiencies you think you may get by doing it this way is

7    going to be offset to a greater degree by us trying to see

8    if we got them all right.  So you're going to need to chop

9    these up into much smaller pieces.  All right?

10              I mean, you -- you will -- we'll just have to take

11   them in -- I see you have them there as -- you have them

12   clipped, but we'll have to do it in smaller chunks.  And

13   you just read off 25 exhibits.  And I don't even know if I

14   wrote them all down right.  I don't know if the courtroom

15   deputy --

16              MR. SIBERT:  Your Honor, I think what will be

17   quicker, I have them already broken out of binders so for

18   your courtroom staff, they can just quickly grab them the

19   next one.

20              THE COURT:  All right.  But it's -- there's one

21   thing about them grabbing it and giving it to the witness,

22   it's an entirely different thing to make sure that their

23   records are accurate in terms of keeping track of

24   everything that you have offered into exhibit and

25   everything -- into evidence and everything that I have

Direct - Sears

1    received into evidence.  So --

2              MR. SIBERT:  Very well.

3              THE COURT:  -- this is just too much.

4              MR. SIBERT:  Yes, sir.

5              THE COURT:  It's just too much.  You need to chop

6    it up.  All right.  So go ahead and hand the courtroom

7    deputies what you have and now we're going to have to take

8    the time to go through this list again to make sure that we

9    got it all here and -- so, now, first off, are you

10   representing to the Court that these are all stipulated to

11   in terms of admissibility and authenticity?

12             MR. SIBERT:  Yes, Your Honor.

13             THE COURT:  All right.

14             MR. SIBERT:  And --

15             THE COURT:  And --

16             MR. SIBERT:  If it would save time, I can go one

17   by one and I can let the Court know what's stipulated to.

18   It's very easy.

19             THE COURT:  Or two or three or four, but not 20.

20             MR. SIBERT:  Sure.

21             THE COURT:  All right.  Did defense counsel --

22   were you able to capture all that and do you have -- can

23   you tell me if in your records these are all stipulated to?

24             MR. GOODREID:  Your Honor, I think I captured all

25   of them, although I'm about halfway through the list to be

Direct - Sears

1    sure that they're stipulated to.

2           THE COURT:  All right.  You see, that's why I

3    think this is not an efficient way to do it, Mr. Sibert.

4           MR. SIBERT:  I'll meet with counsel after today's

5    and we can go through all the stipulations again.

6           THE COURT:  All right.  But --

7           MR. SIBERT:  They've had them for weeks now.

8           THE COURT:  Yeah.  Well, okay, but, you know, I'm

9    trying to get you to understand that my courtroom deputies

10   and I have to keep an accurate record of what's coming

11   in -- what's being offered and what's coming in.

12          MR. SIBERT:  All right.  Let me do them in chunks,

13   then.

14          THE COURT:  All right.  Let me wait for Mr.

15   Goodreid to finish going through his list.

16          MR. GOODREID:  Your Honor, I've finished going

17   through all those exhibits and I believe Mr. Sibert's

18   correct, they have all been stipulated to as to

19   authenticity and admissibility.

20          I might say, if I may make a suggestion, to the

21   extent that further chunks are going to come in, if they

22   came in numerical order that would be faster for defense to

23   check them as opposed to sort of jumping around.

24          THE COURT:  That would also be helpful, but I

25   just -- we're not going to take them at chunks of 25 at a

20

Direct - Sears

1    time.  It's just -- I mean, this is why we can't do it.

2    Look how long this has taken.

3           All right.  Let me go through what I have, Ms.

4    Frank and Ms. Roberson, if you think I've missed one, or

5    Mr. Sibert, you tell me if I'm missing it.

6           I'm sure I've missed a couple and I'm going to go

7    a little more slowly to make sure we got it all.  All

8    right.  The following exhibits have been offered by the

9    Government and based on the stipulation of the parties,

10   they have been received into evidence -- or they are

11   received into evidence:  Exhibits 238, 380, 381, 372-B,

12   372-H, 372-J, 372-K, 372-L, 372-M, 226, 372-Q, 372-T,

13   372-CC, 40, 229, 372-II, 372-MM, 254, 372-OO, 372-PP,

14   372-RR, 372-TT, 372-YY, 396, 397, 372-GGG, 372-PPP, 158

15   through 166.

16        Ms. Roberson, what did I miss?

17           COURTROOM DEPUTY:  Your Honor, I also have 235,

18   372-D, 372-I.  Mr. Sibert did say 372-K, however, the piece

19   of paper handed to me says 372-KK.  382, and 372-U.

20           THE COURT:  Wow.  I did worse than I thought.

21   235, 372-D, 372-I.  Is it 372-K or KK, Mr. Sibert?

22           MR. SIBERT:  I have K.  It's just K.

23           THE COURT:  All right.  372-K, 382 and 372-U.  Did

24   I catch them all?

25           MR. SIBERT:  372-U.

                            Direct - Sears

1              THE COURT:  Yeah.  Ms. Frank?  Did I catch them
2     all?
3              COURTROOM DEPUTY:  Yes, Your Honor.
4              THE COURT:  All right.  Those are all in evidence
5     and you may proceed.
6          (Government's Exhibits received)
7              MR. SIBERT:  Thank you, Your Honor.
8     BY MR. SIBERT:
9     Q.   Can you look at the first exhibit that we just rattled
10    off there, Exhibit 235.
11             THE WITNESS:  Can I -- Your Honor, may I ask a
12    question?
13             THE COURT:  Go ahead.
14             THE WITNESS:  Yesterday I was asked to sign off on
15    these to see them.  Can I refer to these with my signature
16    on them rather than the books?  It just refreshes my memory
17    as to what I went through.
18             THE COURT:  Well, I think you should first look at
19    the exhibits that were handed to you by my courtroom deputy
20    because those are the documents that have been admitted
21    into evidence.  I don't know if what you're holding in your
22    hand has been admitted into evidence or not.
23             THE WITNESS:  Because the other ones didn't have
24    my signature on it and these do.
25             COURTROOM DEPUTY:  I apologize, Your Honor, those

Direct - Sears

1    are the documents that Mr. Sibert handed me in order based

2    on what he read.

3             THE COURT:  Right.  And -- and so, Mr. Sears, what

4    are you saying?

5             THE WITNESS:  I'm saying these are the documents

6    that I have reviewed and they have my signature and a date

7    bearing on the bottom right-hand corner.  These other ones

8    that have been asked for do not, so it's -- there's a lot

9    of documents to go through.

10            THE COURT:  I think what Mr. Sibert did -- correct

11   me if I'm wrong, Mr. Sibert -- is you pulled from the

12   binders those exhibits that you just -- that we've just

13   listed and admitted into evidence; is that correct?

14            MR. SIBERT:  I tried to do that.  My plan is going

15   to crap.

16            THE COURT:  So, yes, you should refer to what Ms.

17   Roberson just handed you as opposed to what's in the

18   binders.

19            THE WITNESS:  Okay.

20            THE COURT:  Does that make sense?

21            THE WITNESS:  Yes, sir.

22            THE COURT:  Okay.  Go ahead.

23   BY MR. SIBERT:

24   Q.  All right, sir, can you please look at Government

25   Exhibit 235.

Direct - Sears

1   A.   Yes, sir.  Yes, sir.

2   Q.   All right.  And you reviewed that document; is that

3   correct?

4   A.   Yes, sir.

5   Q.   On the top portion that's blown up, please -- you can

6   look at your screen now.  Again, this is your e-mail; is

7   that correct?

8   A.   Yes, sir.

9   Q.   And has -- who is S. Dittman?

10   A.   Excuse me?

11   Q.   Who is S. Dittman?

12   A.   Scott Dittman.

13   Q.   Okay.  Is that his e-mail address?

14   A.   Yes, it is.

15   Q.   And that's at the FusionPharm address?

16   A.   Yes, sir.

17   Q.   And below that, who's e-mail is that?

18   A.   Cliffe Bodden.

19   Q.   And, again, that's his known address -- e-mail

20   address?

21   A.   One of them, yes.

22   Q.   All right.  Sir, can you take a minute and read that

23   e-mail.

24   A.   Okay.

25   Q.   And what are you talking about in that e-mail?

24

Direct - Sears

1    A.   I'm having two gentlemen communicate directly.

2    Q.   Okay.  What about?

3    A.   Putting together a business plan.

4    Q.   For what business?

5    A.   FusionPharm.

6    Q.   And you're sending the e-mail; is that correct?

7    A.   Yes, sir.

8    Q.   All right.  Can I -- can you look at Exhibit 380,

9    please.

10   A.   Okay.

11   Q.   Do you recognize that document?

12   A.   Yes, I do.

13   Q.   And what is that document?

14   A.   That is a document from myself to Scott Dittman.

15   Q.   Could I have 380 on the screen, please.  Can you blow

16   up the e-mail address.

17        Again, now, you have a different e-mail address;

18   is that correct?

19   A.   Yes, I do.

20   Q.   And what e-mail address do I have?

21   A.   That was *wsears@fusionpharminc.com*.

22   Q.   So you held a FusionPharm e-mail address?

23   A.   For a period of time, yes.

24   Q.   And, again, the subject -- what's the subject?

25   A.   Business plan.

Direct - Sears

1    Q.   All right.  Can I have 372 on the screen, please.  I'm

2    sorry, can you go back to that document, 381.  And can you

3    go down a little bit on the screen.  Can you blow that area

4    up.

5         Okay.  Again, can we just go through this e-mail

6    traffic here.  Who's sending the e-mail?  If you look on

7    your screen.

8    A.   One second.

9    Q.   Sir, I'm asking you about what I circled on the

10   screen.  Who's sending the e-mail?

11   A.   Scott Dittman.

12   Q.   And who's he sending it to?

13   A.   Myself and a gentleman by the name of Gino Rodriguez.

14   Q.   And what's the subject?

15   A.   Business plan.

16   Q.   Thank you.  Have that taken down, please.  Can I have

17   Exhibit 381.

18        Can you look at Exhibit 381.

19   A.   Yes.

20   Q.   All right.  Do you recognize that e-mail, sir?

21   A.   Which one, sir?

22   Q.   Exhibit 381.

23   A.   No, which e-mail.

24   Q.   Do you recognize document 381?

25   A.   Yes, I do.

26

Direct - Sears

1    Q.   Did you review the document?

2    A.   Yes, I did.

3    Q.   When did you review it?

4    A.   Yesterday.

5    Q.   Okay.  Again, look at your screen there.  Who is the

6    e-mail from?

7    A.   Gino Rodriguez.

8    Q.   And who's it to?

9    A.   Scott Dittman.

10   Q.   And who else?

11   A.   And myself.

12   Q.   And what's the subject?

13   A.   Corporate minutes.

14   Q.   Can I please have Exhibit 372-B on the screen.

15        Sir, can you look at Exhibit 372-B.

16   A.   Yes, sir.

17   Q.   Do you recognize Exhibit 372-B?

18   A.   Yes, I do.

19   Q.   And what is Exhibit 372-B?

20   A.   It's an e-mail.

21   Q.   All right.  Let's look at on the screen again.  Who's

22   it from?

23   A.   Myself.

24   Q.   And what address are you using?

25   A.   *wsears@fusionpharminc.com*.

Direct - Sears

1   Q.   And who's it to?

2   A.   Mr. Guy Jean-Pierre.

3   Q.   Okay.  He has two e-mail addresses; is that correct?

4   A.   Yes, sir.

5   Q.   What are those addresses?

6   A.   *guymjeanpierre@yahoo.com* and Guy Jean-Pierre -- just

7   *guy@lawfirmofjeanpierre.com.*

8   Q.   And who's cc'd on that e-mail?

9   A.   Scott Dittman.

10  Q.   And what's the subject?

11  A.   Trademarks.

12  Q.   And what's this e-mail about?

13  A.   I'm asking Mr. Jean-Pierre to do some trademark

14  registration work.

15  Q.   And when is this e-mail being sent?

16  A.   May 31st, 2011.

17  Q.   And what trademark registration are you referring to

18  in this e-mail?

19  A.   There was a lot of things going on at that time with

20  several companies, sir.  I mean, it could be one of three

21  or four.

22  Q.   Was it FusionPharm?

23  A.   Quite possibly, sir, yes.  Quite possibly so.  I would

24  imagine so.

25  Q.   Can I have Exhibit 3 -- I'm sorry, 372-D.

Direct - Sears

1    A.   I'm ready.

2    Q.   All right.  Do you recognize Government Exhibit 372-D?

3    A.   Indeed, I do.

4    Q.   And what is it?

5    A.   It is an e-mail.

6    Q.   And let's look on the screen.  Who wrote the e-mail?

7    A.   I did.

8    Q.   Okay.  And who are you sending the e-mail to?

9    A.   Mr. Jean-Pierre.

10   Q.   And those are the same two e-mail addresses that you

11   just discussed before in a previous exhibit; is that

12   correct?

13   A.   Yes, sir.

14   Q.   And who do you cc on that e-mail?

15   A.   Scott Dittman.

16   Q.   And what's the subject?

17   A.   Subject is 504/506.

18   Q.   What's the date of that e-mail?

19   A.   July 17th, 2011.

20   Q.   And what is the subject matter in the e-mail?

21   A.   504/506.

22   Q.   And what does that mean to you?

23   A.   Those are registration offering circulars to raise

24   capital for companies.

25   Q.   And what company are you talking to Mr. Guy

Direct - Sears

1    Jean-Pierre about?

2    A.   FusionPharm.

3    Q.   Can I have Exhibit 372-H.

4         Do you have 372-H in front of you?

5    A.   Indeed, I do, sir.

6    Q.   Do you recognize that document?

7    A.   Yes, I do.

8    Q.   Okay.  Another e-mail?

9    A.   Yes, it is.

10   Q.   All right.  Let's look on the screen.  Who sent an

11   e-mail?

12   A.   I am.

13   Q.   And you're using your William J Sears e-mail

14   account?

15   A.   Indeed, I am.

16   Q.   And who are you sending the e-mail to?

17   A.   Mr. Guy Jean-Pierre.

18   Q.   And, again, we've talked about that's his previous

19   e-mail; is that correct?  His law firm e-mail?

20   A.   Yes, it is, sir.

21   Q.   And then we have his Yahoo e-mail, Mr. Guy

22   Jean-Pierre's Yahoo e-mail?

23   A.   Yes, sir.

24   Q.   And who else is on the e-mail?

25   A.   Scott Dittman.

30

Direct - Sears

1    Q.   And what e-mail account are you e-mailing him on?

2    A.   From *william@williamjsears.com*.

3    Q.   Okay.  What e-mail are you using for Scott Dittman?

4    A.   *sdittman@fusionpharminc.com*.

5    Q.   What's the subject?

6    A.   It says subject:  Per our conversation RE FSPM.

7    Q.   And what's FSPM?

8    A.   It's the symbol -- trading symbol for FusionPharm,

9    Inc.

10   Q.   So you're sending an e-mail to follow up on a

11   conversation?

12   A.   Yes, sir.

13   Q.   So it's fair to say you had a prior conversation

14   before sending this e-mail?

15   A.   Yes, sir.

16   Q.   With Mr. Guy Jean-Pierre?

17   A.   Yes, sir.

18   Q.   And what are you asking Mr. Guy Jean-Pierre in the

19   e-mail?

20   A.   To look over a purchase package that was sent for

21   review.  Excuse me.

22   Q.   Okay.  Have Government Exhibit 372-I.

23        Have you had a chance to look at Government

24   Exhibit 372-I?

25   A.   Yes, sir.

Direct - Sears

1   Q.   Okay.  And what is Government Exhibit 372-I?

2   A.   It's an e-mail, sir.

3   Q.   And who is sending the e-mail?

4   A.   I am.

5   Q.   Okay.  Who are you sending the e-mail to?

6   A.   Mr. Guy Jean-Pierre.

7   Q.   And who else?

8   A.   Scott Dittman.

9   Q.   And what's the subject for the e-mail?

10  A.   FSPM.

11  Q.   And what does that stand for?

12  A.   FusionPharm.

13  Q.   And what are you asking Mr. Jean-Pierre to do in this

14  e-mail?

15  A.   To go over some documents and inform with regard to

16  some filings for the company.

17  Q.   And what company are you talking about?

18  A.   FusionPharm.

19  Q.   So Mr. Jean-Pierre assisted you with filing documents

20  to begin FusionPharm?

21  A.   I'm sorry, say that again, sir.

22  Q.   Did Mr. Jean-Pierre assist you with the documents that

23  was required to become FusionPharm?

24  A.   Yes, sir.

25  Q.   And he communicated with you?

Direct - Sears

1    A.   Yes, sir.

2    Q.   Can I have Government Exhibit 372-J.  Have you had a

3    chance to look at Government Exhibit 372-J?

4    A.   Yes, sir.

5    Q.   What is it?

6    A.   It's an e-mail.

7    Q.   Okay.  And let's go through the line of questioning.

8    Who's sending the e-mail?

9    A.   I am.

10   Q.   And what's the date?

11   A.   August 9th, 2011.

12   Q.   Okay.  And who's it to?

13   A.   Scott Dittman.

14   Q.   And what's the subject?

15   A.   Letter to Robert Taylor.

16   Q.   Okay.  And what's attached?

17   A.   It says BBYB - Taylor Attorney Letter.

18   Q.   Do you know what that means?

19   A.   I have to look at it.

20        Yes, I do, sir.

21   Q.   What does it mean?

22   A.   It's a letter that was written by Mr. Jean-Pierre to

23   Robert Taylor.

24   Q.   And why would Mr. Guy Jean-Pierre be writing a letter

25   to Mr. Robert Taylor that you're e-mailing about, if you

Direct - Sears

1    know?

2    A.    Because Mr. Taylor was a supposed -- was a shareholder

3    of the predecessor company Baby Bee Bright and was making

4    claims, I believe, on some shares.

5    Q.    So Mr. Taylor's making claims on shares for the

6    company that you now own?

7    A.    Excuse me?

8    Q.    He's making claims on shares for a company that you

9    now own?

10   A.    I would say he's making claims on a company on shares

11   for -- in FusionPharm.

12   Q.    Okay.  And who are you contacting about that?

13   A.    Mr. Guy Jean-Pierre.

14   Q.    Can I have Exhibit 372-K.

15         Have you had a chance to look at 372-K?

16   A.    Yeah.  This is -- I don't have it in this copy.  I

17   have a KK here.  Are they the same, K and KK, or are they

18   two separate documents?

19   Q.    It should be 372-K.

20   A.    I've got a KK here.

21   Q.    Look on your screen.

22   A.    It's different than what I have here.

23         Okay.  Go ahead.

24   Q.    Do you recognize Government Exhibit 372-K?

25   A.    Yes.  The part of the screen that I can see.

34

Direct - Sears

1   Q.   All right.  Let's blow up the top part.

2        Do you see where I circled?

3   A.   Yes, sir.

4   Q.   And what -- who is sending the e-mail?

5   A.   I am.

6   Q.   All right.  And what e-mail account are you using?

7   A.   *wsears@fusionpharminc.com*.

8   Q.   Okay.  Who are you sending it to?

9   A.   Mr. Scott Dittman.

10  Q.   All right.  What's the subject?

11  A.   FSPM Form D.

12  Q.   Okay.  And that means FusionPharm's Form D,

13  FusionPharm the company, right?

14  A.   It could have been on behalf of an individual also.  I

15  don't see the rest of the e-mail from these --

16  Q.   Sir, what does FSPM mean?

17  A.   That's the trading symbol.

18  Q.   For what?

19  A.   FusionPharm.

20  Q.   We've been through this, right?  FSPM --

21  A.   I'm trying to answer your question as clearly as I

22  can.  Form Ds are required by people and companies, sir.

23  Just trying to answer the question.

24  Q.   What's the subject?

25  A.   Subject says FSPM.

Direct - Sears

1    Q.   What does that mean to you?

2    A.   That's a public company FusionPharm.

3    Q.   So FusionPharm Form D.

4    A.   Yes.

5    Q.   That would be fair to say in the subject, right?

6    A.   Okay.

7    Q.   Okay.  Can we have it blown up down here at the

8    bottom, please.

9         Now, this is a -- now, who sent you the e-mail

10   that followed before you sent out your e-mail in that chain

11   of e-mails?

12   A.   What I see on the screen, it came from Guy

13   Jean-Pierre.

14   Q.   What do you see in the document?

15   A.   I'm trying to tell you, one says K and one says KK.

16   That's what I asked the first --

17   Q.   I asked you to look at 372-K.

18   A.   And I explained to you I have the 372-KK.  That

19   doesn't match the screen of the one that's on the screen

20   here.

21   Q.   I think the Court -- the courtroom clerk got you

22   372-K.

23   A.   Okay.  Go ahead.

24   Q.   You got the document in front of you now, sir?

25   A.   Yes, I have it now in front of me.

36
Direct - Sears

1   Q.   You wrote this e-mail, correct?

2   A.   Yes, sir.

3   Q.   All right.  Who sent you an e-mail?

4   A.   Mr. Guy Jean-Pierre.

5   Q.   Look at your screen.  It's blown up right there for

6   you.

7   A.   It's fuzzy.  I'm trying to just read it clearly.

8   Q.   Okay.  And what's Mr. Pierre's e-mail there?

9   A.   *guy@lawfirmofjeanpierre.com*.

10  Q.   What's the date of that e-mail he sent?

11  A.   August 24th, 2011.

12  Q.   And, again, what's the subject matter?

13  A.   FSPM Form D.

14  Q.   So it's fair to say FusionPharm Form D?

15  A.   Yes, sir.

16  Q.   Okay.  And down here I'm circling, do you see that

17  phone number?

18  A.   Yes, sir.

19  Q.   Do you recognize that phone number?

20  A.   Yes, sir.

21  Q.   Whose phone number is that?

22  A.   Mr. Guy Jean-Pierre's.

23  Q.   I want you to look at the language.  Can you read what

24  Mr. Guy Jean-Pierre sends you?

25  A.   It says, "Good afternoon.  Please see attached per

Direct - Sears

1    your request."

2    Q.   "Per your request," correct?

3    A.   Yes, sir.

4    Q.   Can I have Government Exhibit 372-L.

5         Is 372-L in front of you, sir?

6    A.   Yes, it is, sir.

7    Q.   What is 372-L?

8    A.   It is an e-mail.

9    Q.   And who's the e-mail from?

10   A.   Mr. Guy Jean-Pierre.

11   Q.   And who's it to?

12   A.   Myself and Scott Dittman.

13   Q.   And what's the subject?

14   A.   CPA Taylor Documents.

15   Q.   And, again, what is Mr. Guy Jean-Pierre asking you to

16   do in this e-mail?

17   A.   "Please see attached the documents sent by Robert

18   Taylor.  Give me a call when you have a chance."

19   Q.   So what is he asking you to do?

20   A.   Read the documents and give him a call.

21   Q.   So is it fair to say that you talked to Mr. Guy

22   Jean-Pierre on the phone?

23   A.   Yes, sir.

24         MR. GOODREID:  Objection.  Leading.

25         THE COURT:  You --

Direct - Sears

1           MR. SIBERT:  615, Your Honor.

2           THE COURT:  Okay.  Well, is there an objection to

3     an examination of this witness by leading questions?

4           MR. GOODREID:  Yes.

5           THE COURT:  Okay.

6           MR. GOODREID:  He is -- first of all, he's their

7     star witness.  I haven't seen any evidence of hostility or

8     adversity by this witness that the Government's had trouble

9     with certain questions, but that doesn't qualify making

10    615 -- I'm sorry.

11          THE COURT:  I'm -- you don't have to say it in

12    that tone.

13          MR. GOODREID:  I'm sorry, Your Honor.

14          THE COURT:  I asked you a question and I'll give

15    you an opportunity to make your position known.

16          MR. GOODREID:  I apologize, Your Honor.  I didn't

17    mean to take that tone with the Court.

18          THE COURT:  All right.  What about that?  The

19    objection is that you've not laid a foundation to lead this

20    question -- lead this witness via leading questions under

21    Rule 615.

22          MR. SIBERT:  Your Honor, first, just for the

23    record, the Government's never labeled this witness as a

24    star witness.

25          Second, I would not -- I would argue that the

Direct - Sears

1    testimony that was laid out in the very beginning, that

2    this witness has entered a plea agreement with the

3    Government, has pled guilty to this case in a conspiracy to

4    commit security fraud.  And also I would ask the Court to

5    take notice of some of the answers to very simple questions

6    in some of these documents --

7              THE COURT:  All right.

8              MR. SIBERT:  -- that he has been hostile.

9              THE COURT:  I'm going to sustain the objection for

10   now.  I agree with defense counsel that the hostility has

11   not been shown.  The defendant has an agreement --

12   cooperation agreement with the Government to testify and

13   unless and until I see evidence that the witness is

14   testifying falsely, he, in my mind, is not yet hostile to

15   the Government, so you may not examine him by leading

16   questions.

17             So the objection to the 615 request is sustained

18   and the objection to the leading question is sustained.

19   Rephrase.

20             MR. SIBERT:  Thank you, Your Honor.

21   BY MR. SIBERT:

22   Q.   How would you communicate with Mr. Guy Jean-Pierre?

23   A.   Various ways.  Through telephone --

24   Q.   What ways --

25   A.   Excuse me?

Direct - Sears

1   Q.   What would those ways be?

2   A.   It would be telephone, e-mail, and/or Skype messages

3   sometimes.

4   Q.   And what is Mr. Guy Jean-Pierre asking you -- how is

5   he asking you to communicate in this e-mail?

6   A.   To give him a call telephonically.

7   Q.   And, again, this is the phone number associated with

8   Mr. Guy Jean-Pierre?

9   A.   Yes, sir.

10  Q.   And what numbers would he call you?  Do you recall

11  your phone numbers at the time?

12  A.   No, I don't, sir.  I've changed my phone number four

13  or five different times in the last six years.

14  Q.   Why did you do that?

15  A.   Well, the FusionPharm case has put a lot of scrutiny

16  on my telephone numbers.

17  Q.   Can I have Government's Exhibit 372-M, as in Mike.

18       Do you have 372-M in front of you?

19  A.   Yes, I do, sir.

20  Q.   And what is Government Exhibit No. 372-M?

21  A.   That is an e-mail.

22  Q.   Okay.  And who wrote the e-mail?

23  A.   I did, sir.

24  Q.   And who did you write the e-mail to?

25  A.   Scott Dittman.

Direct - Sears

1  Q.  And what is the date on that e-mail?

2  A.  September 14th, 2011.

3  Q.  Okay.  And what is the subject of the e-mail?

4  A.  Robert Taylor Letter.

5  Q.  What is attached to the e-mail?

6  A.  FSPM Taylor Attorney Letter.

7  Q.  And what do you state in the e-mail?

8  A.  "FYI, he told Guy it was fine and to ship it out."

9  Q.  Who is Guy?

10  A.  Mr. Guy Jean-Pierre.

11  Q.  And what does "FYI" mean?

12  A.  For your information.

13  Q.  And here's a phone number.  Do you recognize that

14  720-458-0686 number?

15  A.  Yes, I do.

16  Q.  What number is that?

17  A.  FusionPharm.

18  Q.  In fact, your signature -- what company is listed

19  under your name?

20  A.  FusionPharm.

21  Q.  Can I have Exhibit 226.

22          THE COURT:  Why don't we pause there, Mr. Sibert.

23  Call it a day.

24          MR. SIBERT:  Thank you.

25          (This is the conclusion of the testimony for this day

42

Direct - Sears

1  of trial of Mr. Sears)

2              *      *      *      *      *

3                     **INDEX**

4  Item                                    PAGE

5            GOVERNMENT'S WITNESSES

6      **WILLIAM SEARS**
       Direct Examination by Mr. Sibert        3

7

8            GOVERNMENT'S EXHIBITS

| EXHIBITS: | Offered | Received | Refused | Stipulated |
|---|---|---|---|---|
| 32 | 9 | 10 | | |
| 33 | 9 | 10 | | |
| 35 | 9 | 10 | | |
| 36 | 9 | 10 | | |
| 37 | 9 | 10 | | |
| 40 | 16 | 21 | | |
| 92 | 16 | 21 | | |
| 158 | 16 | 21 | | |
| 159 | 16 | 21 | | |
| 160 | 16 | 21 | | |
| 161 | 16 | 21 | | |
| 162 | 16 | 21 | | |
| 163 | 16 | 21 | | |
| 164 | 16 | 21 | | |
| 165 | 16 | 21 | | |
| 166 | 16 | 21 | | |

Direct - Sears

1                    GOVERNMENT'S EXHIBITS

| EXHIBITS: | Offered | Received | Refused | Stipulated |
|-----------|---------|----------|---------|------------|
| 226 | 16 | 21 | | |
| 229 | 16 | 21 | | |
| 238 | 9 | 10 | | |
| 254 | 16 | 21 | | |
| 372-B | 16 | 21 | | |
| 372-D | 16 | 21 | | |
| 372-H | 16 | 21 | | |
| 372-I | 16 | 21 | | |
| 372-J | 16 | 21 | | |
| 372-K | 16 | 21 | | |
| 372-L | 16 | 21 | | |
| 372-M | 16 | 21 | | |
| 372-Q | 16 | 21 | | |
| 372-T | 16 | 21 | | |
| 372-U | 16 | 21 | | |
| 372-CC | 16 | 21 | | |
| 372-II | 16 | 21 | | |
| 372-MM | 16 | 21 | | |
| 372-OO | 16 | 21 | | |
| 372-PP | 16 | 21 | | |
| 372-RR | 16 | 21 | | |
| 372-TT | 16 | 21 | | |
| 372-YY | 16 | 21 | | |

                                                                    44
                              Direct - Sears

1                    GOVERNMENT'S EXHIBITS

2     EXHIBITS:        Offered    Received   Refused    Stipulated

3     372-GGG          16         21

4     372-PPP          16         21

5     382              16         21

6     396              16         21

7     397              16         21

8

9                    *      *      *      *      *

10                   REPORTER'S CERTIFICATE

11

12        I certify that the foregoing is a correct transcript

13    from the record of proceedings in the above-entitled

14    matter.

15        Dated at Denver, Colorado, this 3d day of July, 2019.

16

17

18

19    _                                                    _

20                   MARY J. GEORGE, FCRR, CRR, RMR

21

22

23

24

25