## DECLARATION OF ALEXANDER SCOUFIS

1.  My name is Alexander Scoufis. I am over 18 years old and am competent to testify to the facts set forth in this Affidavit. I am currently Counsel in the Criminal Prosecution Assistance Group ("CPAG") of FINRA's Office of General Counsel. I have worked at FINRA for approximately four years. I worked for about a year and a half in FINRA's Office of Fraud Detection and Market Intelligence where I investigated potential insider trading violations. In 2016, I began working in CPAG where I assist federal and state prosecutors with white collar criminal investigations and trials involving securities fraud and related offenses. During my tenure with CPAG, I have analyzed trading records in more than 30 investigations of fraud and testified in eleven federal jury trials.

2.  During the course of the U.S. Attorney's Office for the District of Colorado's ("DCO") investigation regarding FusionPharm, Inc. ("FSPM"), I was asked to analyze the extent of losses suffered by investors.

3.  In order to analyze the extent of losses suffered by investors, I have relied on the Modified Rescissory Method as set forth in the United States Sentencing Commission's Federal Sentencing Guidelines. The Modified Rescissory Method values the loss by "calculating the difference between the average price of the security or commodity during the period that the fraud occurred and the average price of the security or commodity during the 90-day period after the fraud was disclosed to the market, and multiplying the difference in average price by the number of shares outstanding."[1]

4.  In order to calculate the average price during the period that the fraud occurred and the 90-day period after the fraud was disclosed to the market, I utilized data obtained from

---

[1] USSG §2B1.1, comment. (n.3(F)(ix)).

Bloomberg L.P., a quotation service that provides market quotations, lists, and other compilations of price and trading data generally relied on by securities professionals. Specifically, I obtained the daily Volume Weighted Average Price ("VWAP") for FSPM stock for the period of March 25, 2011 through August 30, 2014. The VWAP is a calculation of a stock's total dollar value divided by the total trading volume for a certain period. I utilized the VWAP because it is an accurate dollar amount of what investors paid for stock. For example, if on a given day, there were two transactions in a specific stock, one trade of 100 shares at $0.95 and a second trade of 100 shares at $1.05, the VWAP would be calculated by finding the total dollar amount of each transaction (100 shares x $0.95= $95 and 100 shares x $1.05= $105). The combined dollar amount of the two transactions, $200, is divided by the amount of shares traded during the day, 200 shares, resulting in a VWAP of $1.00 per share.

5. I determined that March 25, 2011 through May 15, 2014 was the period during which the fraud occurred (the "Fraud Period"). I then calculated the VWAP for the Fraud Period by dividing the total gross dollar value of shares traded during the Fraud Period by the total shares traded during the Fraud Period. I determined that the VWAP for the Fraud Period is $3.93.

6. FSPM filed an Issuer Company-Related Action Notification Form with FINRA on March 25, 2011 providing notice that Baby Bee Bright Corp.'s name would be changed to FusionPharm, Inc. and its ticker symbol changed from BBYB to FSPM.

7. I determined the fraud was disclosed to the market on June 2, 2014 and the 90-day period that followed ended August 30, 2014 (the "Disclosure Period"). I then calculated the VWAP for the Disclosure Period by dividing the total gross dollar value of shares traded during the

2

Disclosure Period by the total shares traded during the Disclosure Period. I determined the VWAP for the Disclosure Period is $0.95.

8. The Securities and Exchange Commission ("SEC") issued an Order of Suspension of Trading on May 16, 2014. The SEC's Order of Suspension of Trading stated that trading in FSPM would be suspended due to "a lack of current and accurate information concerning the securities of [FSPM]." The SEC suspended FSPM stock from trading beginning May 16, 2014 at 9:30 a.m. EDT and the suspension continued through May 30, 2014. Following the SEC's Order of Suspension of Trading, FSPM resumed trading on June 2, 2014.

9. In order to calculate the shares outstanding, I utilized transfer agent records provided to me by the DCO to find FSPM's total free-trading shares as of May 15, 2014.

10. A transfer agent is a company assigned by a corporation to maintain records of investors. Transfer agents keep track of shares outstanding using a shareholder list and transaction journals, which include the owner of shares and whether the shares are restricted. I determined there were 9,434,121 free-trading FSPM shares on May 15, 2014. I did not identify Sears and Dittman holding any free-trading FSPM shares in the transfer agent records as of May 15, 2014.

11. I also utilized account statements to determine whether Sears and Dittman held shares in their brokerage accounts as of May 15, 2014.

12. Account statements are records maintained by broker-dealers that track brokerage account holdings and activity. In reviewing account statements, I identified Meadpoint holding 1,054,686 free-trading FSPM shares at Scottsdale Capital Advisors and William Sears holding 375 free-trading FSPM shares at E*Trade Securities leaving 8,379,060 free-trading FSPM shares in the hands of other investors (the "May 15 Public Shares").

13. After determining the May 15 Public Shares, I determined gross dollar amounts for trading during the Fraud Period and the Disclosure Period. To determine gross dollar amounts for the Fraud Period, I multiplied the Fraud Period VWAP by the May 15 Public Shares, which totaled approximately $32,935,833. To determine gross dollar amounts for the Disclosure Period, I multiplied the Disclosure Period VWAP by the May 15 Public Shares, which totaled approximately $7,951,026.

14. Finally, I determined an estimated loss of approximately $24,984,807 by subtracting the total gross dollar amount for the Disclosure Period from the total gross dollar amount for the Fraud Period.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and ability.

Alexander Scoufis
Counsel
Criminal Prosecution Assistance Group
FINRA

5