```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
       Criminal Action No. 17-cr-0008-WJM
 3
       UNITED STATES OF AMERICA,
 4
       Plaintiff,
 5
       vs.
 6
       GUY JEAN-PIERRE a/k/a Marcelo Dominguez de Guerra,
 7
       Defendant.
 8     ------------------------------------------------------------
 9
                        REPORTER'S TRANSCRIPT
10               (Final Trial Preparation Conference)

11     ------------------------------------------------------------
12          Proceedings before the HONORABLE WILLIAM J. MARTINEZ,

13     Judge, United States District Court for the District of

14     Colorado, commencing at 3:04 p.m., on the 8th day of

15     January, 2019, in Courtroom A801, United States Courthouse,

16     Denver, Colorado.

17                          APPEARANCES
18          JEREMY S. SIBERT and ROBERT M. BROWN, Assistant U.S.
       Attorneys, 1801 California Street, Suite 1600, Denver,
19     Colorado 80202, appearing for the plaintiff.

20          CLIFFORD J. BARNARD, Attorney at Law, 4450 Arapahoe
       Avenue, Suite 100, Boulder, Colorado 80303, AND
21          THOMAS E. GOODREID, Attorney at Law, 1801 Broadway,
       Suite 1400, Denver, Colorado 80202, appearing for the
22     defendant.

23
                     MARY J. GEORGE, FCRR, CRR, RMR
24               901 19th Street, Denver, Colorado 80294
                 Proceedings Reported by Mechanical Stenography
25                 Transcription Produced via Computer
```

1            P R O C E E D I N G S

2        (Proceedings were held in open court at 3:04 p.m.)

3            THE COURT:  All right, we're on the record in

4    criminal case No. 17-cr-008, United States of America versus

5    Guy Jean-Pierre.  I'll take appearances of counsel.

6            MR. SIBERT:  Good afternoon, Your Honor.  Jeremy

7    Sibert on behalf of the United States.  Sitting with me at

8    table is Bob Brown, Assistant U.S. Attorney, and Agent Kate

9    Funk from the FBI.

10           THE COURT:  All right.  Good afternoon to the three

11   of you.

12           MR. BARNARD:  Good afternoon, Your Honor.  Clifford

13   Barnard on behalf of the defendant, Guy Jean-Pierre, and

14   also at counsel table is cocounsel, defense counsel, Thomas

15   Reid -- Goodreid, excuse me.

16           THE COURT:  Good afternoon to the three of you.

17           All right.  We're here for a final trial

18   preparation conference.  This matter is set for an 11-day

19   jury trial to begin this coming Monday, January 14th.  There

20   are 29 counts pending against the defendant, including

21   counts for conspiracy to defraud the United States, wire

22   fraud, mail fraud, securities fraud, and money laundering.

23           So the first thing I want to do is take up two

24   motions that have been raised by the parties in recent days

25   and hours.  The first one is the motion by the Government

1    to -- for the Court to instruct Immigration and Customs

2    Enforcement to provide material witness status to Cliff

3    Bodden.

4            Is there anything in addition to your written

5    submission that the Government would like to put on the

6    record today in support of that motion?

7            MR. SIBERT:  No, Your Honor.

8            THE COURT:  All right.  Does the defendant wish to

9    be heard on this motion?

10           MR. BARNARD:  No, Your Honor.

11           THE COURT:  All right.  I've reviewed the motion.

12   I think there is good cause to grant it and I will grant it.

13   Is the order that -- Mr. Sibert, that was appended to your

14   motion, is that the form of the order that you want me to

15   enter?  Or is there -- or would you like an opportunity for

16   another stab at it and --

17           MR. SIBERT:  Your Honor, it cites the statute, so

18   I'm hoping your signature, since you granted it now, will be

19   enough for Immigration and Custom Enforcement to obey this

20   District Court's request and order.

21           THE COURT:  Okay.  We'll do this.  My judicial

22   assistant is not in this afternoon, but I will have her put

23   this order in our format with my signature and will docket

24   it tomorrow morning.

25           MR. SIBERT:  Thank you.

1          THE COURT: All right. With respect to the ongoing

2     dispute with respect to the Government's Rule 404(b)

3     evidence, I will be honest and tell you this: I've not

4     studied the submissions, the latest ones being, I think,

5     something you filed, Mr. Sibert, in the last couple hours --

6     or one of you filed in the last couple of hours. Is

7     there -- let me ask this: What exactly are you asking for

8     in terms of when the Government would like the Court to be

9     making a ruling on the 404(b) issues that have been raised?

10          MR. SIBERT: Your Honor, as I stated -- and I

11    appreciate the Court's patience with the filings of these

12    documents -- but as I stated in these documents, I think the

13    Tenth Circuit, among all the other circuits in the country,

14    the preferred practice is the Court should actually listen

15    through the case and the evidence that's being brought in.

16    As I stated in my motion, before any offering of the 404(b),

17    specifically Mr. Jean-Pierre's criminal conviction, I would

18    take that out of the presence of the jury when we either

19    take a break or at the end of the day or before -- whenever

20    the Court would allow me to, but I would definitely notify

21    the Court before trying to offer that type of evidence

22    before the jury.

23          THE COURT: Well, what I understand -- correct me

24    if I'm wrong -- that in large part the Government is

25    contending that for me to make an appropriate ruling on the

1    offer of 404(b) evidence, that context from the -- from

2    other evidence that you anticipate coming in at trial during

3    your case in chief needs to be heard first as opposed to me

4    making a ruling on just the cold record before me.  Is

5    that -- is that your argument?

6                MR. SIBERT:  I agree with the Court, yes.

7                THE COURT:  Okay.  So then at what point in your

8    presentation -- I know you don't want to give away too much

9    here --

10               MR. SIBERT:  No --

11               THE COURT:  I always like how on the civil side,

12   you know, trial by ambush finished about 50 years ago;

13   everybody knows exactly what the other side's going to be

14   doing weeks before trial.  On the criminal side, you've --

15   both sides sort of try to --

16               MR. SIBERT:  No, my --

17               THE COURT:  -- slip things in the end.

18               So to the extent you're comfortable divulging it,

19   what is the decision point, the fail-safe point, if you

20   will, do you believe that I will be making rulings on the

21   matters that you've raised in your filings?

22               MR. SIBERT:  I think it will depend on how the

23   witnesses go.  And I guess my point would be as soon as we

24   do have that one witness that will be testifying -- and I

25   think it -- I think I need to introduce further evidence as

1    well.  And so my -- what I would do is approach the defense

2    after -- during a break or after a certain witness to say,

3    "I think we're at the point where I want to raise this with

4    the Court," and ask for the Court to schedule the

5    appropriate time where we could address that issue outside

6    the presence of the jury.  And I'll try to give the defense

7    as much notice.

8         Right now I'm dealing with travel and I'm trying to

9    get witnesses here and there's dealing with maybe one or two

10   conflicts with witnesses.  So it just kind of depends when

11   the witness gets here and I can get that witness on the

12   stand.

13        So I don't want to avoid answering the Court's

14   record, and I don't want to try to be sneaky with defense or

15   the Court, but I do -- and I will raise it with the defense

16   once I think there's been enough evidence to establish --

17   enough evidence where the Court could issue a ruling based

18   upon the documents submitted on the 404(b) matters.  I guess

19   that's really towards Mr. Jean-Pierre's conviction.

20        I did -- I know we've also raised the Florida Bar

21   and the SEC discipline.  And I put that in the 404(b) notice

22   essentially out of an abundance of caution.  I don't think

23   it fits into 404(b).  I think it's intrinsic to this case,

24   and it will go into the theory of the fact that, at a

25   certain point in time, Mr. Jean-Pierre's role with

1    FusionPharm essentially was not disclosed and eventually the

2    controlling parties at FusionPharm eventually had to

3    basically let Mr. Jean-Pierre go because of his legal

4    matters.

5        So based upon some of the filings done on the

6    other -- on the OTC markets where in 2011 Mr. Jean-Pierre is

7    named as a corporate secretary, legal counsel.  When we get

8    to 2012, after some of the controlling parties had written

9    affidavit letters to the Florida Bar on behalf of Mr.

10   Jean-Pierre, he wasn't listed at that point as a corporate

11   officer for FusionPharm in their 2012 declaration to OTC

12   markets.

13        THE COURT:  Okay.

14        MR. SIBERT:  Thank you.

15        THE COURT:  Can I hear from the defendant as to the

16   defendant's position on this issue.

17        MR. GOODREID:  Your Honor, I'll do my best.  I'm

18   actually suffering from a bit of a cold, so I'll try to see

19   that you hear me.

20        THE COURT:  I appreciate you soldiering on.

21        MR. GOODREID:  Thank you, Your Honor.  With

22   respect -- perhaps surprising Your Honor, with respect to

23   the issue of the other-crimes evidence, we're actually in

24   agreement with the Government on that.  We think that makes

25   sense to wait, see how the trial progresses, they give us

notice, they agree that they won't reference that
information until the Court's made a ruling on it.  Defense
is perfectly fine with that, Your Honor, as long as the
Court is.

THE COURT:  Okay.

MR. GOODREID:  So I think the approach, though,
actually should be the same with respect to the other two
items.  Our position on the suspension in front of the SEC,
as well as his disbarment, is that those are events that
happened after the relevant conduct that they allege is
criminal in this case.

So, again, I think it would make more sense for the
Court to hear it in context.  But, if not, we stand by
objections we've stated in writing that the information
shouldn't come in.

THE COURT:  Okay.  Well, it's great to see that you
both agree on something, and you agree that we should wait
until some unknown point, as of yet -- as of yet unknown
point in the trial to take up this matter.

I would appreciate it, Mr. Sibert -- I'm sure
defense counsel would -- as much ahead notice that you can
give us that it's coming.  I think probably what will make
the most sense is to carve out a period of time, maybe at
the end of a trial day, we can send the jury home at 4:30,
something -- depending on how long you think it will take,

1    and then we can address the matter outside their presence.

2            So give us as much warning as you can.  I will

3    obviously take this whole issue under advisement and rule

4    during the trial once the requisite contextual evidence has

5    been adduced.

6            All right.  Let's go to the other matters that I

7    generally handle at the trial preparation conferences.

8    Length of opening statements.  My sense is that the -- my

9    presumptive 20 minutes should be sufficient but if either

10   side feels very strongly that they need -- that they need

11   more time than that, I'm willing to entertain a request in

12   that regard.  Mr. Sibert.

13           MR. SIBERT:  Your Honor, I respect [sic] further

14   time for the opening.  As this Court knows, it's a 29-count

15   indictment --

16           THE COURT:  Right.

17           MR. SIBERT:  -- and three of those counts, along

18   with the 371 conspiracy deals with securities law.

19           Security law is not the most easiest piece of law

20   for lawyers to understand, let alone 12 people probably that

21   don't have much experience in law.  So I anticipate my

22   opening to be no more than 45 minutes.

23           THE COURT:  Wow.  45 minutes for opening.  Does

24   that mean -- does that portend a request for like 90 minutes

25   for closing?  Which I've never given, but -- well, I

1    won't --

2           MR. SIBERT:  I can't answer that question.  I think

3    my --

4           THE COURT:  45 minutes seems long to me.  And let

5    me tell you why I think you might want to think hard about

6    how much you throw at a jury right at the beginning of the

7    trial.  It's a fair assumption that most, if not all, the

8    jurors will be laypeople in the law and not lawyers -- and,

9    by the way, there won't be 12 per my -- I don't know if this

10   is in my practice standards, but in criminal trials where we

11   go beyond 10 days, which this is, I seat two alternates, so

12   we will have 14 in the box during the 11 days and two will

13   be released prior to the deliberation.

14          But let's assume none of the 14 are lawyers.  One

15   thing that I have heard over and over when I've talked to

16   lawyers -- talked to the jurors after the trials -- and I

17   talk to every jury that I have in my courtroom, civil and

18   criminal -- one of the things they mention is how much more

19   they understand things as the trial progresses.  So if you

20   hit them with too much in the beginning and they're not

21   absorbing it, 45 minutes to me sounds like a lot.

22          And just -- and this discussion right now just

23   triggered something in my mind that I want both sides to

24   think about; hadn't even thought about it until this moment.

25          In that same vein of hitting the jury with too much

1    right at the beginning and them not being able to understand

2    what's coming at them, have you folks given any thought to

3    whether we should give the jury at the beginning of the

4    trial some type of -- or one or more of the elements

5    instructions, or maybe the more complex counts, something so

6    that it gives the jurors more of a legal framework to know

7    what's coming in?  We did this recently in my last trial in

8    December, it's a civil case, you know, not criminal, but it

9    was a malicious prosecution trial, and there was a lot of

10   very technical nuanced legal issues that the jury, after the

11   trial, told me they were very, very happy and glad that we

12   gave them those elements instructions up front so that they

13   had some sense of what was coming at them.  Have you talked

14   about this at all?

15          MR. SIBERT:  Your Honor, I have not talked to

16   defense about this.  I can tell you that the defense and I

17   spoke yesterday about jury instructions.  We're close,

18   there's some disagreements largely because I changed some of

19   the instructions that -- and had to send them in.

20          THE COURT:  That's what I -- I think this is the

21   first time -- first case I've gotten where I had one side

22   say, Well, what the -- what the Government presents to you

23   as stipulated was not what was given to us.

24          MR. SIBERT:  Yeah, I forgot --

25          THE COURT:  I knew -- but knowing you and having

1    experience with you, Mr. Sibert, I knew there was an

2    innocent explanation for --

3           MR. SIBERT:  Yeah, I was deleting the stipulation

4    in the title.  I did in the paragraph.  But I did talk to

5    Mr. Barnard yesterday and I think we both agree that we've

6    worked on these, understanding the Court's instructions, and

7    I think we're close to resolving this.  It's just we kind of

8    ran out of time before this hearing today.

9           THE COURT:  Okay.

10          MR. SIBERT:  I think our intent is to go back to --

11   and have these discussions and then raise any disagreements

12   with the Court through submitting basic filings with this

13   Court indicating what those differences are.

14          THE COURT:  All right.

15          MR. SIBERT:  But I do think maybe, if we can agree,

16   I think probably giving some of the jury a little bit more

17   details in the statement of the case, specifically when it

18   comes to maybe some of the security law, might be helpful.

19          THE COURT:  Okay.  Just to clarify, the statement

20   of the case will be read at the beginning of my voir dire,

21   so this is when we're dealing with the venire panel, just so

22   they have a sense of what's going on, and they can tell me

23   based on a half-page summary whether they may not be the

24   appropriate person for our jury.

25          So back to the issue of the length of opening

1    statement, it seems to me that 45 minutes is not something

2    that you really want.  Let me hear from the defendant as --

3    on this issue, both as to the length of opening statements

4    and whether, if you can get an agreement, stipulation, on

5    one or more of the elements instructions on the -- some of

6    your counts -- I don't think we should do it on every

7    count -- whether you think it would be a good idea to have

8    the jurors be instructed at the beginning of the trial.

9         MR. BARNARD:  Your Honor, with regard to the easy

10    question, I think 20 minutes is sufficient for an opening

11    statement.

12         With regard to adding elements to the statement of

13    the case or a beginning instruction to the jury, I don't

14    think that is a wise suggestion.  I think that, in fact,

15    having spent many, many hours on these jury instructions,

16    the jury instructions are really very complicated and the

17    counts and some of the issues in some of the counts are very

18    complicated and I think if we throw that at the jury to

19    begin with instead of clarifying anything, I think it's

20    going to confuse more, and not prepare them to -- to be able

21    to follow what happens better later, but, rather, it will

22    start them off in a confused state right from the start.

23         I also think that there -- it would be very

24    problematic to only give them some elements, not others,

25    because that would, again, be a confusing thing to them.

1       Although I suppose to a certain extent that could be
2       clarified by saying, Well, we're just going to tell you some
3       of the stuff here.
4                   THE COURT:  Yeah.
5                   MR. BARNARD:  So that's --
6                   THE COURT:  Well, you have five different -- you
7       have -- the Government has 29 counts, but they're under five
8       different statutory provisions.
9                   MR. BARNARD:  Right.  So --
10                  THE COURT:  And I was thinking that if we gave them
11      all five elements instructions, that might be a bit much.
12      Well, I'll tell you what, I will do that only if both sides
13      agree to do it.  I'm not going to force it on either side.
14                  So let's do this:  If -- as you're thinking through
15      your preparation, if you change your mind, Mr. Barnard, and
16      both sides agree, let us know.  If we have -- and obviously
17      it has to be a stipulated -- I'm not going to be making --
18      before the beginning of the trial, calling any balls and
19      strikes on disputed instructions.  So if we have -- if you
20      have a stipulated instruction as to one or more of the
21      counts and you both agree that it would make sense and be
22      prudent to read those to the jury at the beginning of the
23      trial, let me know before the close of business this Friday.
24      And if the answer to that is yes, then we'll be prepared
25      accordingly.  If not, then the jury won't -- won't be

1    instructed in that way.

2             And just to clarify, statement of the case is at

3    the beginning of my voir dire.  I have preliminary

4    instructions once we have the 14 in the box, and they've

5    been given their oath, I have two preliminary instructions

6    that are very generic, you know, burden of proof, who goes

7    first, that kind of stuff.  Mr. Brown can let everybody here

8    know how that goes in my trials.

9             And then the third preliminary instructions would

10   be any stipulation of fact which we're going to get to in a

11   few moments.  And that's usually all I do.  So it's up to

12   you.  If we don't hear from you on this point by close of

13   business on Friday, we'll assume that one or both sides does

14   not want to proceed in this fashion.

15            I'm going to more or less split the baby and give

16   each side 30 minutes for opening statements.  With respect

17   to stipulations, in civil cases what I usually do is pull

18   the stipulated facts from the final pretrial orders, which

19   there are none, of course, in criminal trials, so I have

20   nothing to use -- to work with in criminal trials.  So if

21   there are no stipulation of facts, there are no

22   stipulations.  I can't force you to stipulate to anything,

23   but have you given any thought, Mr. Sibert, to whether we

24   can -- it will help streamline any of the fact presentation

25   if the parties explored factual stipulations that I would

1    read to the jury as part of my preliminary instructions and

2    that they would be included as a stipulated instruction when

3    the case goes to the jury and they know that there's no need

4    for them to make any determination on facts that have been

5    stipulated?

6              MR. SIBERT:  Your Honor, I did ask the defense if

7    they would stipulate to interstate nexus with the charges in

8    this case and they did not want to discuss stipulations at

9    that point, so I raised it.  But they didn't want --

10             THE COURT:  That's not the only stipulation --

11             MR. SIBERT:  They didn't want to talk about any

12   stipulations.

13             THE COURT:  Okay.  All right.

14             MR. SIBERT:  I tried to raise it, but they didn't

15   want to talk about it.

16             THE COURT:  Wow.  Okay.  Well, were you that

17   obstructionist, Mr. Barnard?

18             MR. BARNARD:  I thought I was at the meeting that

19   we're talking about.  We, in fact, stipulated to the

20   authenticity of numerous of the matters that are going to be

21   exhibits in this case.

22             THE COURT:  Okay.

23             MR. BARNARD:  So we've done that.

24             THE COURT:  All right.

25             MR. BARNARD:  There are certain things that, until

1    we see the exhibits themselves, we're not ready to decide --

2          THE COURT:  Okay.

3          MR. BARNARD:  -- so we've asked for that.  And

4    counsel said he thought he would have eight binders with

5    exhibits here today, which I don't know -- I hope is the

6    case.  In which case, we can start to look at each of these

7    individual exhibits to determine if we can or can't

8    stipulate to them.  Of course, considering the fact that

9    there's 600 of them, or at least 400-some exhibits, that may

10   make it very difficult to be able to get very far with that

11   consideration.

12         With regard to stipulations to facts at this point,

13   I -- I actually don't know of any specific -- I think I

14   recall one fact or so that was asked and we didn't stipulate

15   to that.  I -- at this point, I don't think we're in a

16   position to be able to do so.

17         THE COURT:  Okay.  Again, I can't force anybody to

18   stipulate to anything.  If there are going to be any

19   stipulations of fact, they need to be filed both as an ECF

20   document and email to chambers by close of business this

21   Friday, the 11th.  If there are none, there are none, and

22   we'll just proceed accordingly.

23         By Thursday -- wow, this is already Tuesday -- by

24   12:00 noon on Thursday of this week, the 10th, I need both

25   sides to email to chambers the identity of all individuals

1       that will be present at both counsel tables and I do mean

2       all, so lawyers, paralegals, case agents, parties,

3       obviously, but any -- also any tech folks and all because I

4       introduce everybody when we're going through the voir dire

5       and I want to know if anybody on the venire panel knows

6       anybody on your team.  So both -- but importantly it -- not

7       just give me names, give me name and their role in the trial

8       so I have some knowledge of the role they will be taking and

9       I can go from that when I discuss those individuals with the

10      jury.

11              Mr. Goodreid.

12              MR. GOODREID:  Your Honor, on this point, just to

13      prove we can get along on some things, Mr. Sibert had asked

14      me -- had asked us before the hearing today if we had any

15      objection to his second FBI agent being present at counsel

16      table.  And with the understanding that that person was only

17      involved substantively in the case with respect to the

18      preparation of transcripts, we advised that we do not have

19      any objection to that.

20              THE COURT:  Excellent.  Good.  Thank you for that.

21      By 12:00 noon this Thursday, a list of everybody at your --

22      yes, sir.

23              MR. BARNARD:  Your Honor, there is somewhat of a

24      related issue, too, which is that we will be asking for

25      sequestration of witnesses.

1          THE COURT:  Right.

2          MR. BARNARD:  And in conjunction with that, my

3    understanding is that the Government will have at least one,

4    if not two -- and actually they have two designated -- or

5    named experts that are going to testify and I wanted to be

6    requesting that Eric Gerding, the expert for the defense, be

7    permitted to be present for the testimony of those two

8    experts.

9          THE COURT:  Okay.  Let me tell you what my practice

10   is with that.  If there's a -- if either side makes a motion

11   to exclude witnesses under 615, I always grant it.  Apart

12   from that, though, if there is an agreement by -- between

13   the parties that experts can remain in the courtroom, in

14   other words, to be exempt from the exclusion order, I will

15   allow that.  If there is an objection, I will not allow it.

16          So this is another thing for you -- both sides to

17   get together on and see if you can have an agreement.  I

18   will deal with the motion to exclude witnesses Monday

19   morning at 8:30 -- at our 8:30 session before we bring up

20   the venire panel.  And at that time, you can tell me if

21   there's an agreement to exclude expert witnesses from the

22   exclusion order or not.  And if there's an agreement, I will

23   permit it.

24          All right.  Let's move on.  Witness lists.  We've

25   received the witness lists from both sides.  It seems like

1     even though the number is large, if the estimates of the

2     Government as to how long the examinations will take is

3     reasonably accurate, including the estimates of the

4     defendant in terms of cross and time for his witnesses,

5     we're looking at about 60 hours of witness examination time.

6     We average between seven and seven and a half hours on the

7     record for each court day, so that's about a little less

8     than nine court days, so if we move along at that pace, we

9     should -- we should be fine.

10            All right.  Let me deal with what I think is the

11    most problematic matter to raise --

12            MR. GOODREID:  Your Honor, I'm sorry.  I don't mean

13    to interrupt, but just on the other one, my understanding it

14    is not required to list it, but it is also possible, of

15    course, the defendant could testify.  I just wanted to bring

16    that up in terms of the Court's estimate.  We didn't put him

17    in there.  My understanding is we're not required to do

18    that, but I wanted to raise that in terms of the Court's

19    calculation.

20            THE COURT:  Where's your understanding that you're

21    not required to do that?

22            MR. GOODREID:  I couldn't say that very

23    articulately, Your Honor, I don't know.  It was assumed but

24    if we should have done it --

25            THE COURT:  No, I just want to know what your

1    source for that is.

2            MR. GOODREID:  I don't know.  I honestly don't

3    know, Your Honor.

4            THE COURT:  Okay.  Obviously if the defendant wants

5    to take the stand, I'm not going to prevent him from taking

6    the stand.

7            MR. GOODREID:  I didn't want to preclude that by --

8            THE COURT:  No, that's understood.

9            MR. GOODREID:  Okay.

10           THE COURT:  Okay.  All right.  Exhibits.  Like I

11   said, this is the most problematic matter that we're dealing

12   with because I'm hoping when we get to instructions, you'll

13   tell me you've made some significant progress on those.  But

14   589 exhibits for the Government and none have been

15   stipulated to with respect to admissibility.  And the first

16   issue is just the sheer amount of paper that we're talking

17   about.  Our chambers was contacted, Mr. Sibert, by one of

18   your paralegals with respect to a request about whether some

19   of the larger exhibits can be put on a thumb drive and --

20   instead of being printed out and put into three-ring

21   binders, being on a thumb drive, which would then contain

22   the exhibits, which obviously those will be provided to the

23   jury during the deliberations to be used on a laptop.

24           And then my -- I'm inferring from that request from

25   your paralegal that what you're proposing is that all these

1    exhibits be reviewed and examined upon direct and cross,

2    electronically, and that we dispense with the need of having

3    them printed out on paper, because if there's -- if they are

4    anything like what I've -- I can't remember exactly where I

5    heard this from, if my judicial assistant said she got this

6    from your paralegal, but I think we're -- you said we're

7    looking at thousands of pages of exhibits.  Is that

8    accurate?

9             MR. SIBERT:  Your Honor, it's a lot.  I don't know

10   the exact --

11            THE COURT:  A lot, you know, 500 pages is a lot.

12   50,000 pages is a lot.  So where --

13            MR. SIBERT:  If I may address the Court.

14            THE COURT:  Yeah.

15            MR. SIBERT:  Mr. Barnard correctly stated, we did

16   meet on Friday and we did authenticate all the business

17   records, so I apologize, but I thought your previous

18   question was to factual elements of a charge.

19            THE COURT:  They were.  They were.  I was talking

20   about --

21            MR. SIBERT:  So I didn't want to cut short and not

22   be the only one that butters up to the Court like Mr.

23   Goodreid, but I wanted to make sure that the Court

24   understands I'm not trying to misdirect the Court when it

25   comes to what we've discussed.

1               THE COURT:  I understand.

2               MR. SIBERT:  So I give the -- Mr. Barnard and Mr.

3     Goodreid both took time and looked at the affidavits that we

4     collected from the companies, the banks, and the affidavits

5     that we provided, and they have stipulated to authentication

6     to a lot of the business records and the video and the

7     electronic recordings in this case.

8               THE COURT:  Authentication is good but --

9               MR. SIBERT:  That's half --

10              THE COURT:  -- that's just half the equation.  So I

11    did attempt to try to go further, understanding I've

12    practiced in front of the Court and also done a trial before

13    this Court and we just didn't make any headway.  In fact, it

14    was Mr. Goodreid that ended the meeting.  So we just moved

15    along and --

16              THE COURT:  All right.  I think we can put an end

17    to these --

18              MR. SIBERT:  I'm just letting you know --

19              THE COURT:  -- shots across the bow.

20              MR. SIBERT:  The apple can be polished both ways.

21              So as to the exhibits, a lot of these exhibits deal

22    with e-mails and attachments.  Some of these attachments

23    that are sent on these e-mail contain hundreds to 200-page

24    shareholders lists that were forwarded to specific parties.

25    My intent is, for the rule of completeness, to use the part

1     of the exhibit that I intend to disclose in evidence which

2     would be the whole -- which would be all the attachments;

3     however, I'm not going to look at 200 pages of shareholders

4     of FusionPharm stock, but that specific part needs to be

5     placed on disk so if the jury wants to look at it, it's

6     there in the exhibit for them to look at.

7              THE COURT:  So you're telling me just attachments

8     to the exhibits, not the exhibits, themselves.

9              MR. SIBERT:  Well, for example, let's say there's

10    an e-mail from Mr. William Sears to Mr. Jean-Pierre.  It

11    might have four or five different attachments to that

12    e-mail.  The attachments are part of the exhibit, part of

13    the e-mail.

14             THE COURT:  Right.

15             MR. SIBERT:  And so I don't need to print out a

16    250 -- I'm hoping I don't have to print out a 250-page

17    shareholders exhibit -- or list when I'm not going to do

18    anything with it, but it will be on disk if the jury wants

19    to look at it or defense wants to say, What are they hiding?

20    It's all right there; everything that was attached to that

21    e-mail is part of that exhibit.

22             I'm only going to focus on the things that are

23    relevant to the meeting -- to what I believe I have to prove

24    in the Government's case under the elements of the charge.

25             THE COURT:  So those are the only parts that you

1    anticipate printing to paper.

2              MR. SIBERT:  To have printed in paper.

3              THE COURT:  Okay.

4              MR. SIBERT:  And so there's several of those, and I

5    think that's what my staff was requesting from chambers --

6    or informing chambers of.  I think the better practice,

7    instead of having all these large 200, 300 documents that

8    aren't going to be really focused on, just have them put on

9    disk.

10             THE COURT:  Okay.

11             MR. SIBERT:  The majority or the -- and I can ask

12   the witness, you know:  What is the disk in that exhibit?

13   That's the shareholders list.

14             THE COURT:  All right.

15             MR. SIBERT:  So --

16             THE COURT:  What's your sense of how many binders

17   would be left for the -- those exhibits that you do intend

18   to print to paper?

19             MR. SIBERT:  The Court's -- I know the Court's

20   practice is to have 2-inch binders so I think I have --

21             THE COURT:  I don't know that I -- that my practice

22   standards say that.

23             MR. SIBERT:  That's a strong rumor going on in the

24   office to request --

25             THE COURT:  No.  No, no, because I routinely pick

1    up much bigger and wider --

2                   MR. SIBERT:  Okay.

3                   THE COURT:  -- exhibits --

4                   MR. SIBERT:  I think Pegeen brought that rumor

5    home, then.

6                   THE COURT:  Well, one second.

7                   MR. SIBERT:  I think we're at eight binders.  It

8    might be more if we're using 2 inches.

9                   THE COURT:  Brian, is your recollection, 3?

10                  THE LAW CLERK:  Yes.

11                  THE COURT:  Believe it or not, I have not memorized

12   my own practice standards, but -- well, both of you have

13   done trials in front of me.  You should recall --

14                  MR. SIBERT:  I know --

15                  THE COURT:  I don't think it's 2 inches because

16   then I would have a lot, but I like the proposal.  I think

17   it's something that we should be talking about and I should

18   consider because, frankly, what happens sometimes when there

19   are so many exhibit binders, there's only so much room up

20   here, I feel like I'm in a legal cave surrounded by exhibits

21   and I can hardly move.  And it gets very, very difficult

22   after a while.

23                  Let me hear from the defense as to your position on

24   this proposal.

25                  MR. BARNARD:  Your Honor, from the way I'm

1   understanding this is that we would have everything --
2   literally everything that the Government would be wanting to
3   broadcast or -- to the jury or would be wanting to have the
4   witness testify specifically about.  In other words, if
5   there's a page out of the 250 pages, that page would --
6   would be included in the exhibit.
7            THE COURT:  In the paper exhibit.
8            MR. BARNARD:  In the paper exhibit.
9            THE COURT:  Lot me stop you there.  Is that an
10  accurate understanding?
11           MR. SIBERT:  It is, Your Honor.
12           THE COURT:  Okay.
13           MR. BARNARD:  And I think that is a good idea.  And
14  I think that's -- gives the defense, too, a much better
15  chance of trying to make sense as to what the exhibits are
16  to be able to determine if we can stipulate to things on
17  them, too.
18           THE COURT:  All right.  All right.  And it's your
19  position, Mr. Sibert, that if we do that, you can keep your
20  paper exhibits down to eight 3-inch binders?  It's your
21  hope.
22           MR. SIBERT:  It's my hope.
23           THE COURT:  Okay.  All right.  But that's the
24  neighborhood that we're talking about, right?
25           MR. SIBERT:  That's right, Your Honor.  And --

1          THE COURT:  Okay.

2          MR. SIBERT:  -- that's correct.

3          THE COURT:  Okay.  I'm going to allow that request.

4     I think it makes sense.  It's practical.  I agree with Mr.

5     Barnard, actually, that's helpful for the defendant.  You

6     know what you need to focus on and what you can exclude as

7     you're preparing for trial.  So -- so the minutes will

8     reflect that the Government's request is granted.

9          All exhibits or portions of exhibits that will

10    actually be examined with witnesses need to be prepared --

11    need to be printed, rather, on paper, and otherwise comply

12    with my practice standards in terms of lettering and

13    numbering being included in the exhibit list and the

14    description for the exhibit list, the number of copies that

15    need to be provided in terms of the Court copy, the Judge's

16    copy, law clerk copy, and opposing counsel copy.  And in

17    addition to all that, any attachments or portions of

18    exhibits that will not -- that witnesses will not be

19    examined on may be contained solely in the electronic form

20    on the flash drive and not have to be printed out.  So we'll

21    proceed in that fashion.

22         But as big of an issue in my mind, though, in terms

23    of getting this done in 11 days -- and I'm mindful that you

24    folks originally requested 13 days and then we did 12 and

25    then we got to 11 -- and it's for scheduling issues that I

1    have to get this done in 11 days.  We're not going to get it

2    done in 11 days if every single exhibit the Government's

3    going to have to lay a foundation for admissibility.

4    There's just too many.  I mean, if you put in even, you

5    know, a quarter of your 589 separate exhibits, and you have

6    to lay a foundation for each one, this is going to take

7    weeks.  We need to -- and I'm not happy with the fact that

8    none of these exhibits have been stipulated to.

9              So this is what I -- you folks are going to do:

10   I'm -- you can sit down, Mr. Sibert.

11             MR. SIBERT:  I just have one question for the Court

12   before I forget about the binders.  We're trying -- it looks

13   like a paper mill over at the office right now.  I need a

14   copy for the defense, I need a copy for the Court --

15             THE COURT:  Well, just read my practice standards.

16   You've had a trial with me, Mr. Brown can --

17             MR. SIBERT:  And I'm just trying to see if we can

18   get what we're going to use as exhibits, the electronic

19   version, for your staff.

20             THE COURT:  Is that a statement or a question?

21             MR. SIBERT:  I'm asking.

22             THE COURT:  You're asking --

23             MR. SIBERT:  It will be one less set of binders

24   that we have to produce.

25             THE COURT:  No.

1          MR. SIBERT:  Okay.

2          THE COURT:  I'm -- that is not what I ordered.  Let

3    me -- let me state it in a different way.  Let's say 100

4    percent of the paper that you are going to label as an

5    exhibit -- as exhibits, Mr. Sibert, where each page was

6    going to be used with a witness, all right?  All of those

7    have to be labeled, copied, multiple sets, exhibit list,

8    exactly as my practice standards call for.

9          In addition to that, attachments, appendices,

10   portions of large voluminous exhibits that you're not going

11   to be using exhibits on, I will permit to be produced in

12   electronic form.  Or, stated differently, I will permit to

13   be part of the record and not have to be printed.  All

14   right?

15         But I am not excusing either side from their

16   obligations that -- under my practice standards that every

17   stick of paper that's going to be used with a witness must

18   be printed on paper and copied into the multiple sets and

19   labeled and numbered and lettered and described in an

20   exhibit list exactly as my practice standards require.  Is

21   that clear?

22         MR. SIBERT:  Yes, Your Honor.  Thank you.

23         THE COURT:  All right.  Now, you totally broke my

24   train of thought where I was.  Let me see if I can get back

25   to where I was.

1           All right.  Yeah.  I was talking about the fact

2      that we have no stipulations to admissibility.  It's -- that

3      is not acceptable, and I'm going to make you folks do

4      something that you may be upset about but you're going to

5      thank me for, believe me, later, especially during the

6      trial.  So by this Thursday at 12:00 noon, I'm going to

7      order counsel meet face to face and go through those

8      portions of the exhibits and those exhibits that will be

9      printed on paper and attempt to agree, to the maximum extent

10     possible, as to whether there could be a stipulation as to

11     admissibility.

12          I -- nothing, nothing, nothing bores a jury more

13     quickly than to sit through the foundational examinations

14     that need to be made if there's not such a stipulation.  And

15     then by Friday -- this Friday, the 11th, at 2:00 p.m., the

16     Government will -- both sides -- does the defendant have any

17     exhibits?

18          MR. BARNARD:  No, Your Honor.

19          THE COURT:  Yeah, you don't.  No exhibit list.

20     Okay.  So the Government by 2:00 -- the minutes will reflect

21     that by 2:00 this Friday, the 11th, the Government will file

22     a revised -- an amended final exhibit list which reflects

23     the, hopefully, substantial number of stipulations on

24     admissibility with respect to its exhibits.  Will file that

25     both docketed as a CM/ECF document and also e-mail it to

1    chambers in editable form.  Any questions on that?

2              MR. SIBERT:  No, Your Honor.

3              THE COURT:  All right.

4              MR. BARNARD:  Your Honor --

5              THE COURT:  Mr. Barnard.

6              MR. BARNARD:  Your Honor, the question I would have

7    on that is whether or not the Government thinks that it can

8    get us those exhibits in paper form before the meeting so

9    that we can look at them and, if necessary, try to do any

10   background checks on some of that material so that we will

11   be better prepared to be able to go through 589 exhibits at

12   that time.

13             THE COURT:  Well, I think that's a fair question,

14   fair request.  I think the more that you can and the earlier

15   you can, I think you do increase your likelihood that you'll

16   get a stipulation on admissibility.  What can you tell us on

17   that front?

18             MR. SIBERT:  Your Honor, I've provided to this date

19   all the summary charts.  In addition, I've provided exhibit

20   numbers along with the Bates numbers, so their discovery

21   which they just have to plug in the numbers and it will show

22   the emails that we've given them.  So I'm not sure what Mr.

23   Barnard's talking about.  We tried to produce anything

24   they've asked for for them to be able to see.

25             THE COURT:  So you're saying you've identified by

1    document control number --

2            MR. SIBERT:  A lot of emails in this case, so --

3            THE COURT:  Hold on, hold on.  Let me finish my

4    question.

5            Are you telling me that you have already provided

6    to the defendant -- defense counsel a enumeration by

7    document control number all exhibits and portions of

8    exhibits that the Government intends to use as -- in the

9    course of its examination of witnesses?

10           MR. SIBERT:  Not all of them, no.

11           THE COURT:  Okay.  Well, then I guess the question

12   from Mr. Barnard is:  Can that be done in -- prior to your

13   meeting on Thursday that I'm ordering you to participate in

14   so that they have time to reflect and look into the matter?

15   And I think it's a fair request and I think it will result

16   in more stipulations on admissibility.  So what can you tell

17   us on that?

18           MR. SIBERT:  I can try to get binders -- I don't

19   have binders yet, so --

20           THE COURT:  You don't have binders?

21           MR. SIBERT:  I don't -- I mean, I have binders.  I

22   don't have the binders ready for myself yet.

23           THE COURT:  Okay.  Well --

24           MR. SIBERT:  I'm hoping to get them to them --

25           THE COURT:  I think the next best thing, apart from

1   the actual physical pieces of paper for defense counsel, is

2   some kind of listing of the exhibits and portions of

3   exhibits that the Government will be using in its

4   examination of witnesses.  And I think if defense counsel

5   has that before your meeting, you'll have a more

6   productive -- from what I consider to be a more productive

7   meeting, and that you'll be able to file an amended final

8   exhibit list which contains many more exhibits that have

9   been stipulated to with respect to admissibility than you

10  otherwise would.

11        MR. SIBERT:  What I can do today is send them

12  essentially the exhibit list that will have the Bates

13  numbers so that -- the discovery numbers for all the

14  exhibits.

15        THE COURT:  All right.

16        MR. SIBERT:  So it says -- for example, it says,

17  you know, Government Exhibit 23, whatever it is, OTC

18  following, it will have OTC with the Bates number that they

19  can look up in the discovery that they were provided

20  electronically.

21        THE COURT:  Okay.  Go ahead and do that.

22        All right.  So that's the amended Government -- the

23  Government's amended final exhibit list that will be due

24  Friday at 2:00.

25        Proposed voir dire questioning.  As those of you

1    that have trials with me know that I conduct a pretty

2    extensive voir dire.  My default length for counsel's voir

3    dire is 20 minutes, but I will entertain a request for more

4    than that.  I don't know that I would give it to you, but

5    let me know if you want -- if you're requesting more than 20

6    minutes.  Mr. Sibert.

7         MR. SIBERT:  Your Honor, I actually request less

8    voir dire time, if I could, to tack 10 more minutes on my

9    opening.  I mean, I'm sorry, but my -- I mean, I do have 29

10   charges here, I have to explain a historical case, so I'm

11   essentially going to have to try to summarize quickly a

12   historical case.  And why that's important, why we have to

13   bring out evidence of a historical case for the facts and

14   elements of Mr. Jean-Pierre's role in FusionPharm, and I

15   am -- I'm trying -- I don't want to irritate the Court, but

16   I know the Court said 30 minutes, I really would take 40

17   minutes and do 15 minutes of voir dire.

18        THE COURT:  Let me hear from defense counsel.

19        MR. SIBERT:  Thank you.

20        MR. GOODREID:  Your Honor, we're certainly not

21   asking for any more than 20 minutes for voir dire.  That

22   seems sufficient.

23        As with respect to the opening, we stand on our

24   previous position of 20.  I know the Court said 30, so . . .

25        THE COURT:  All right.

1           MR. SIBERT:  Plus 500 exhibits to --

2           THE COURT:  No, I understand.  There is quite an

3    imbalance, of course, in terms of the evidence that the two

4    sides have to marshal and summarize and provide a roadmap to

5    the jury on and -- all right, Mr. Sibert, you've convinced

6    me.  I will give you an extra five minutes.  Opening

7    statements will be 35 minutes.  Mr. Goodreid, you don't have

8    to take 35 minutes, you can take 10 minutes, but you can

9    have no more than 35 minutes.  And then we'll stick with 20

10   minutes voir dire, each side, after the Court's voir dire.

11          All right.  Let's turn to instructions.  Mr.

12   Barnard or Mr. Goodreid, in terms of proposed verdict form,

13   did you submit a verdict form?

14          MR. BARNARD:  I'm sorry, Your Honor, that was

15   stipulated with the Government's --

16          THE COURT:  Okay.  So the defendant does not have

17   an objection to the Government's proposed verdict form.

18          MR. BARNARD:  That is correct.

19          THE COURT:  Okay.  Good.  That's good to know.

20          So where are we with respect to -- let's start with

21   stipulated instructions?  It sounds like this is very much a

22   matter in flux.  You've been talking, exchanging stuff.

23   What is the latest in terms of -- is there a definitive set

24   of instructions that I can view as being stipulated to or is

25   that still something you're discussing?

1          MR. SIBERT:  There's not one set right now, there's

2     some negotiations, but I think Mr. Barnard and I could agree

3     that 85, 90 percent we're there.

4          THE COURT:  Okay.  And then the disputed

5     instructions would all be Government disputed

6     instructions -- well, no, wait, there's -- I think two or

7     three that the -- three that the defendant submitted which

8     I'm assuming the Government does not stipulate to.

9          MR. SIBERT:  I know the Government wanted three --

10    excuse me, I know the defense wanted three instructions.  I

11    know that we -- I think we indicated we didn't have a

12    problem with them, we just need to have a little bit more

13    time looking at them.

14         THE COURT:  Okay.  Let me hear from the defense

15    counsel, your position of where we stand at the moment with

16    respect to stipulated jury instructions.

17         MR. BARNARD:  Your Honor, I agree with Mr. Sibert

18    that we're probably 90 percent in agreement on the

19    instructions.  I think the three instructions that the

20    defense has presented are all stock instructions.  There

21    will be a question later as to whether or not the

22    instruction that's tendered with regard to charts and

23    summaries will be applicable because if all of the charts

24    and summaries are admitted into evidence, then no

25    instruction on charts and summaries is supposed to be given.

1    But if some of the charts and summaries turn out to be

2    demonstrative only, then they are not -- and not admitted

3    into evidence, then that instruction would be given, and so

4    we would just need to see whether or not there are charts

5    and summaries which, in fact, are not admitted into

6    evidence.  So I think those three instructions are pretty

7    simple and we can arrive at an agreement on those quickly.

8         So the remaining questions are on the SEC, the 144

9    10b-5 issues.  As I indicated, I have been working with my

10   expert witness with regard to this and we are attempting

11   to -- to have our counterproposal of instructions and hope

12   to have that in the next day to present to the Government.

13   So at least we'll then -- both sides will know what we're

14   considering so we can compare and discuss them.

15         I don't know if we will be able to agree on them,

16   but at least we can define where we stand and where we --

17   what specific differences we have, if we have them.

18         THE COURT:  All right.  Okay.  I think I understand

19   where the parties are and counsel are with respect to the --

20   it just -- this is a work in progress.  You need a little

21   bit more time to come up with a definitive set of stipulated

22   instructions and then, of course, the remainder being

23   disputed.

24         So this is what we're going to do.  I'm going to

25   give you, both sides, a deadline of 2:00 this Friday,

1    January 11th, to file both on CM/ECF and -- again I stress,

2    again, with chambers via e-mail in editable form the

3    following:  The Government will file an amended set of

4    stipulated instructions with authority; the Government will

5    also file a amended final set of disputed jury instructions.

6    The defendant will file a -- an amended final set of

7    defendant's jury instructions and, Mr. Barnard, you need --

8    my practice standards call for defendant's jury instructions

9    to be lettered -- the Government's are numbered -- so please

10   letter them according to the practice standards.

11            MR. BARNARD:  I apologize, Your Honor.  I saw that

12   after I filed them.

13            THE COURT:  Yeah.  Okay.  And since there's no

14   objection to the Government's proposed verdict form, I'll

15   not require you to file any amended verdict form, Mr.

16   Sibert, on CM/ECF, but you have not yet emailed it to

17   chambers.  So by 2:00 on Friday, e-mail to chambers the --

18   and why don't you put something on there that reminds us

19   that it's a stipulated verdict form, that we'll have that.

20            And you also have filed a stipulated statement of

21   the case, which I referenced before that I'm going to read

22   during my voir dire, but it has not been emailed to

23   chambers, so, again, by 2:00 this Friday, Mr. Sibert, please

24   e-mail to chambers the stipulated statement of the case.

25            Anything else we need to discuss with respect to

1   jury instructions?  For the Government?

2           MR. SIBERT:  No, Your Honor.

3           THE COURT:  Okay.  For the defendant?

4           MR. BARNARD:  No, Your Honor.

5           THE COURT:  All right.  I think we're -- trial

6   briefs.  As my practice standards set forth clearly, I only

7   accept them if I order them or need them.  I do -- I think

8   everything that's been -- that's gone under the bridge in

9   terms of this case, in terms of the briefings and the

10  filings and the papers, I don't need any more paper, it will

11  be one less thing for you folks to have to prepare for.  So

12  no trial briefs are needed or will be accepted.

13          The last thing I need to know, because there are

14  other matters at Mr. Sibert's and Mr. Brown's office that

15  are on my calendar right for next week which I have not yet

16  vacated -- are there still -- obviously don't go into any

17  details, but are there still any plea negotiations going on

18  or can I assume that this trial will be going forward and

19  that I should be vacating the other conflicting matters for

20  the next week?

21          MR. SIBERT:  Your Honor, it's the Government's

22  position that the Court should assume that this matter will

23  go to trial.

24          THE COURT:  Okay.  Since we need both sides to come

25  to a contrary conclusion, then I don't want to ask the

1     defendant for its position -- his position because I'll have
2     to take Mr. Sibert's word on that.
3               All right.  Some of your colleagues may not be
4     happy with that, but that's the way it goes.
5               All right.  I've covered everything I need to cover
6     at this conference.  Is there anything else from the
7     Government's perspective that we need to address today?
8               MR. SIBERT:  Your Honor, for opening, I'd like to
9     make a request of the Court -- the screens that the juries
10    use are a little bit lower quality than the big TV, that
11    sometimes makes it easier.  My plan is to have a PowerPoint
12    I'm going to use to assist me in my opening.  May I get the
13    Court's permission to be able to use the bigger screen --
14              THE COURT:  Sure.
15              MR. SIBERT:  -- for the purposes of opening?
16              THE COURT:  That's fine.  And, actually, I'm glad
17    you raised that point about opening.  To be safe, and to
18    avoid what -- having been in your position, not in criminal
19    trials but having done trials as a litigator before I took
20    the bench, one of the things you always want to avoid is
21    interruptions from objections in your openings and your
22    closings, right?  So please don't use anything in your
23    opening that you are not certain is going to be coming into
24    evidence, to the extent you're going to be planning on using
25    any exhibits.

1          So if you have a stipulation on admissibility,

2     fine, go ahead and use it.  If you don't, then I would err

3     on the side of caution and not use it during your opening or

4     else you're going to get an objection and I'm going to have

5     to sustain it and that's going to throw you off your game.

6               MR. SIBERT:  It will be essentially what they will

7     hear as testimony.  I don't --

8               THE COURT:  Okay.

9               MR. SIBERT:  We don't have any stipulations -- we

10    don't have any exhibits in the opening.

11              THE COURT:  Okay.

12              MR. SIBERT:  Also we have -- so this is probably

13    related, both transcripts and headphones.  Way back when, we

14    have recordings, including phone calls and video.  And I

15    believe --

16              THE COURT:  Can you remind me what that's about?

17              MR. SIBERT:  Absolutely.  In 2014, Mr. Sears and

18    Mr. Dittman were recorded video undercover by two FBI

19    agents --

20              THE COURT:  Oh, that's the meeting in the hotel

21    room?

22              MR. SIBERT:  No, this is a meeting at FusionPharm.

23              THE COURT:  Okay.

24              MR. SIBERT:  And one meeting at Starbucks.

25              THE COURT:  Okay.

1           MR. SIBERT:  And so the audio in these courtrooms

2     isn't the best --

3           THE COURT:  Yeah.  They're terrible.

4           MR. SIBERT:   -- for playing.  So prethinking this,

5     and knowing that we have a lot -- I need to answer your

6     other question -- 2016 there's the undercover case and

7     there's phone calls and video where Mr. Sears is speaking

8     with Mr. Jean-Pierre.

9           THE COURT:  Right.

10          MR. SIBERT:  And then there's a hotel video -- a

11    video from the hotel.

12          THE COURT:  Right.

13          MR. SIBERT:  So we worked with the courthouse staff

14    about what headphones would work and we -- I believe we got

15    headphones for all potential jurors, knowing the Court would

16    put 14 jurors in the box, the Court, the court staff, and

17    defense counsel.  So I'd like to be able to, one, still be

18    to able to use those; and, two, if it would be -- if I could

19    arrange a time with the courtroom staff to come in here and

20    test-drive those before the playing of the video --

21          THE COURT:  Right.

22          MR. SIBERT:   -- to make sure they're actually

23    working.

24          THE COURT:  Okay.  Let me deal with that last point

25    first.  As you probably have noticed, or know, that my

1    courtroom deputy for almost eight years, Ms. Hansen, retired

2    in October and Ms. Frank is her replacement, she's my new

3    courtroom deputy.  She's just started.  Actually we got

4    you -- I was just talking to someone about this, Anna, we

5    got you on the payroll just in time, two days before the

6    shutdown, otherwise, you would be looking in from the

7    outside.

8         But because she has just started, we will have to

9    coordinate with another experienced courtroom deputy for

10   that, so when I'm off the bench here, Ms. Frank, why don't

11   you give Mr. Sibert -- and both sides, Ms. Hansen did this

12   routinely, as you know, scheduled a time before trial

13   started so you can come in and test-run your electronics and

14   be comfortable with all that.  You'll need to set up a time,

15   so maybe you can give them your phone number, a contact

16   number, and then coordinate with another courtroom deputy to

17   be here -- present, the two of you, with Mr. Sibert and the

18   defense team, at different times.  Usually it's best if you

19   both show up here at different times, and make arrangements

20   in that regard.  So that goes -- that's with respect to your

21   tech prep session.

22        With respect to your other point in terms of using

23   headphones to hear these tapes that are poor quality, let me

24   hear from the defendant.  What's the defendant's position on

25   that?

1          MR. BARNARD:  No objection.

2          THE COURT:  All right.  Now, do you have the

3     headphones or was it our --

4          MR. SIBERT:  They're somewhere in the office, if I

5     can find an IT person that's not furloughed, we'll make sure

6     we have all the steps to make sure we have --

7          THE COURT:  Because I don't know if we have

8     headphones.

9          MR. SIBERT:  You don't have headphones; we had to

10    purchase them.

11         THE COURT:  And actually that reminds me of another

12    thing that I did mention in a prior order.  And this

13    actually is being funded by monies appropriated last year.

14    The courtrooms are on a three-week cycle, we're converting

15    from analog to digital in terms of all our electronics and,

16    unfortunately, the schedule is that beginning Monday, the

17    28th, this courtroom is going to be converted to digital.

18    So the last two days of the trial, we will go from here down

19    to 702, which is the vacant Article III courtroom for the

20    last two days of the trial.  So you will be my last analog

21    trial, and then it will be time for the future after that.

22         But was there another question -- another request

23    you had in there?

24         MR. SIBERT:  I do.  Again, to avoid more paperwork

25    in this case, transcripts.  There's transcripts made for

1    each of the videos and each of the recordings.  But in

2    addition, the recordings, including the phone calls and the

3    video, the clips that I'm going to ask be played if

4    introduced into evidence also have kind of like a running

5    monologue of the transcript right below, so it's actually

6    visual.  So I would request that instead of making 14 copies

7    of a transcript that -- you know, instead of having the jury

8    focus on what they're either listening to or looking at with

9    the verbiage right underneath it, that at the end of the

10   trial we provide one transcript for all of the recordings

11   that are admitted and go back to the jury for deliberation.

12           THE COURT:  Okay.  Assuming that the audio has been

13   admitted into evidence as an exhibit.

14           MR. SIBERT:  That's right.

15           THE COURT:  All right.  Okay.  So you would prefer

16   that as opposed to having the actual audio file go back to

17   the deliberation room?  Or in addition to the audio file

18   going back --

19           MR. SIBERT:  No, in addition.

20           THE COURT:  So an audio file and a single

21   transcript.

22           MR. SIBERT:  One transcript.

23           THE COURT:  What's the defense position on that?

24           MR. BARNARD:  Your Honor, we're going to object to

25   the transcripts going back to the jury.  I think the audio

1    files do, but -- but they're the evidence.  The transcripts

2    aren't evidence, and so we would object to that procedure.

3              THE COURT:  All right.  I'm going to defer ruling

4    on that.  I will tell you that my sense is that Mr. Barnard

5    has a point.  Clearly if we were talking about transcript of

6    a witness testimony on the stand, I would not permit that,

7    but we're talking about an exhibit that's an audio file

8    which I normally would not allow a second form of an exhibit

9    to go back with the jury, but we are dealing with audio

10   files of poor quality.

11             I think -- I think, Mr. Sibert, what I can say is

12   it will depend on how poor the quality is.  If it's really

13   just hardly intelligible in an audio format, I may grant

14   your request.  If I think it's -- it's sufficiently audible

15   and intelligible, then I would agree with Mr. Barnard and I

16   would not permit that.  But I'm going to keep my options

17   open on that.

18             MR. SIBERT:  And, Your Honor, if the Court would

19   allow me, I do think the Tenth Circuit case law says it's a

20   discretion call by the Court, so if --

21             THE COURT:  Isn't that what it means to keep my

22   options open to decide --

23             MR. SIBERT:  But what I'm worried about is we --

24   just so the Court understands, if there's a video being

25   played and there's conversation in the video --

1          THE COURT:  Right.

2          MR. SIBERT:  -- there's actually verbiage, so it's

3     like a running monologue of what's being said.

4          THE COURT:  In the video feed.

5          MR. SIBERT:  In the video feed.

6          THE COURT:  There's -- okay.  I thought you were

7     talking about a separate paper transcript.

8          MR. SIBERT:  There is.  We also have those as well.

9     And so I understand the Court's ruling, but I just want to

10    make sure --

11         THE COURT:  Oh, okay.  And there's -- there's --

12    there's a transcription of the audio in the video file in

13    all your video and audio exhibits?

14         MR. SIBERT:  That's correct.

15         THE COURT:  Okay.  Well, then I'll tell you, I'm

16    leaning very strongly, then, to denying your request.  So

17    then in addition to having a paper transcript -- because you

18    already have -- you already have the audio transcribed in

19    the actual video itself.

20         MR. SIBERT:  Yes.

21         THE COURT:  So why --

22         MR. SIBERT:  Because --

23         THE COURT:  Talk about belts and suspenders.

24         MR. SIBERT:  Well, before Mr. Barnard -- he might

25    not -- he might want this, actually.  So we have, for

1      example, a phone call could be 20 minutes.  I only want to

2      use two minutes of it.

3              THE COURT:  Right.

4              MR. SIBERT:  So the two minutes that I'm going to

5      use has the audio.  The 20-minute phone call, there's a

6      complete transcription of that 20-minute phone call.

7              THE COURT:  In the video file?

8              MR. SIBERT:  No, not in the video file.

9              THE COURT:  Oh, oh, okay.

10             MR. SIBERT:  So I'm not going to play a

11     20-minute -- we will be here forever.  So I want to use the

12     most important pieces of evidence.  So a two-minute clip

13     that I'm going to play from a 20-minute phone call --

14             THE COURT:  Right.

15             MR. SIBERT:  -- will have the monologue.  So the

16     jury can --

17             THE COURT:  By "monologue," you mean the

18     transcription?

19             MR. SIBERT:  The transcription.

20             THE COURT:  Okay.  The captions.

21             MR. SIBERT:  The caption.

22             THE COURT:  Let's say we're watching a captioned

23     movie or TV.

24             MR. SIBERT:  I will use caption.

25             THE COURT:  So why do we need anything in addition

1    to the video file that has a caption?

2              MR. SIBERT:  It's fine by me.  I'm okay --

3              THE COURT:  But you're the one making the

4    request.

5              MR. SIBERT:  For the rule of completeness, there

6    will be a CD that has all the phone calls, all the video,

7    all the videos.

8              THE COURT:  Well --

9              MR. SIBERT:  And there's a trans- -- there's a

10   transcription of everything.

11             THE COURT:  Well, now, remember -- and this is

12   something you should talk about in your Thursday afternoon

13   meeting.  The rule of completeness is not a black-and-white

14   thing.  It's subject to interpretation and application based

15   on the circumstances of the situation.  If the defendant --

16   for example, let's say we're talking about a 20-minute

17   conversation that's captured on audio, video feed, and you

18   have a caption.  And on that 20 minutes, you both agree that

19   only a minute of that discussion is relevant.  Then I'm not

20   going to require the other 19 minutes to be -- to come in as

21   an exhibit on your flash drive, if the defendant is fine

22   with just using that one-minute --

23             MR. SIBERT:  Okay.

24             THE COURT:  So don't just assume every file, paper,

25   audio, or video that you have to get the whole damn thing in

1    for every single one, because the defendant may agree with

2    you, defense counsel may agree with you that it's not

3    necessary.  All right?

4         So -- but, anyway, I am -- just so the record is

5    clear, I've not made a ruling, I'm not prejudging this.  I'm

6    going to take it as it comes in.  But if what we're talking

7    about is an audio/video file where there's the video, the

8    jury's hearing what's being said, and there's a caption, the

9    odds are near zero that I will also allow you to get in a

10   paper transcript.

11        MR. SIBERT:  Okay.  Very well, Your Honor.  Thank

12   you.

13        THE COURT:  All right.  Anything further that the

14   defendant believes we need to take up today?

15        MR. BARNARD:  Well, Your Honor, the -- the fact

16   that each of these videos has in it the transcript -- I

17   understood that certainly while the jury is -- is listening

18   to or listening and watching the videos, that there would be

19   a transcript, a running little line --

20        THE COURT:  Caption.

21        MR. BARNARD:  -- with what was -- is being said.

22   But I did not understand that that was a part of the exhibit

23   that was being offered.  And I would object to the -- the

24   video or the audio exhibit being submitted to the jury with

25   the captions on it as part of the exhibit, too.

52

1          THE COURT:  All right.  Well, again, I'm not going

2     to prejudge it or make a ruling.  Let me tell you my

3     thoughts on that, which is -- I think in the perfect, ideal

4     world, I would agree that an exhibit that has all three

5     modes of communication in it would not be appropriate, but

6     if that's how the exhibit -- if that's the form the exhibit

7     is in now, and I have to decide whether to let it in or not,

8     and weigh the prejudice against the Government for excluding

9     it because it's both audio, video and written, my thinking

10    is that the prejudice to the Government would be huge to

11    keep out -- if these are key exhibits, to keep them out,

12    because there's no way to pull out the caption of the

13    letters from that video/audio file.  That's my thoughts on

14    it.   That's what I'm thinking.  I'm not ruling at this time.

15         Of course, if there is a way to -- I don't see how

16    there could be, but if there is a way to strip out the

17    captioning from this file, we would go down that route.  But

18    if there's not, then Mr. Barnard, you would have to convince

19    me that the prejudice to your client would outweigh the

20    prejudice to the Government of not having that evidence come

21    in because there's three modes of communicating the same

22    statements in the single exhibit.

23         So that's -- those are my thoughts.  And you're

24    perfectly entitled to raise your objections during the trial

25    and I'll make my ruling.

1       MR. SIBERT:  And just to let the Court know, I will

2  bring in the foundational witness that listened to the whole

3  complete phone calls, and then actually put in the

4  transcript.  That's no different than a paper transcript,

5  *per se.*

6       THE COURT:  Well, you -- both of you have preserved

7  your points and your objections.  I'll make my ruling at

8  trial.

9       Beyond that, is there anything further the

10  defendant believes we need to take up today?

11       MR. BARNARD:  Your Honor, there is one other matter

12  which actually is a peripheral to the trial, itself.  And

13  that is, as the Court knows, and the Court will recall, on

14  two prior occasions the Court has granted a motion to permit

15  defense counsel to get Mr. Jean-Pierre's passport so we can

16  go to try to get him identification.

17       THE COURT:  Right.  Go to the driver -- motor

18  vehicle --

19       MR. BARNARD:  The motor vehicle.  The last --

20       THE COURT:  Pleasant experience that is.  And

21  you've had to do it twice?

22       MR. BARNARD:  We had to do it twice.  And the last

23  one was shortly before Christmas, I think December 18th.

24  And Mr. Jean-Pierre and I went to the Department of Motor

25  Vehicles and they then -- let me go back.

1        The first time we tried it, we didn't have some of

2    the documents they wanted so -- that they list will work if

3    you don't have your Social Security card.  So we got those

4    documents, went there, and they then said the problem is the

5    Social Security number tracks to the name of Guy

6    Jean-Pierre, not to Mr. Dominguez.  And so they said go to

7    Social Security.

8        So we went to Social Security and they wouldn't

9    give us anything because the -- we didn't have proof of the

10   name change.  And then we went to the bank and they wouldn't

11   do it either because --

12       THE COURT:  So what do you want me to do?

13       MR. BARNARD:  So I'm asking if we can try to do it

14   again tomorrow morning.  It's not like I don't have anything

15   else to do either, Your Honor.

16       THE COURT:  Right.

17       MR. BARNARD:  But -- and in getting in today, Mr.

18   Jean-Pierre was able to do so and I signed for him and

19   accompanied him, but it would be easier, too, if -- during

20   trial if he had his ID, that he could then just come in

21   without having to be accompanied by somebody.

22       THE COURT:  Okay.  So in that -- remind me what did

23   you need from the Court in order to get the passport

24   released to you.

25       MR. BARNARD:  I need an order to the clerk to

1    release the passport to me for three hours tomorrow morning.

2              THE COURT:  Okay.  So when I get off the bench

3    here, if you talk to Mr. Hawkins, my law clerk, tell him

4    what exactly you need and I'll give you a text-only-entry

5    order without an actual PDF file --

6              MR. BARNARD:  And the Court's done it twice before

7    in that manner --

8              THE COURT:  So just pull that off and we'll get

9    that entered today before 5:00.  Is there a reason why it

10   has to be done now -- I mean, it sounds to me like you're

11   using -- I'm not telling you how to prepare for trial, but

12   you're using valuable trial preparation time to take a visit

13   to the DMV.

14             MR. BARNARD:  And I'm going to talk to Mr.

15   Jean-Pierre about that, too, after we're done here.

16             THE COURT:  Okay.  Well, if you need it, I'm not

17   going to stand in your way, we'll give you that order.  So

18   talk to Mr. Hawkins when we're done.

19             Okay.  Anything else, folks?

20             MR. BARNARD:  Nothing further.

21             THE COURT:  All right.  I will see all of you

22   Monday morning, January 14th, at 8:30.  Thank you, that will

23   be all.

24        (Proceedings concluded at 4:22 p.m.)

25             *        *        *        *        *

1                         REPORTER'S CERTIFICATE

2

3         I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5         Dated at Denver, Colorado, this 24th day of March,

6    2020.

7

8

9

10    _                                                        _

11                      MARY J. GEORGE, FCRR, CRR, RMR

12

13

14

15

16

17

18

19

20

21

22

23

24

25