APPEAL,TERMED

# U.S. District Court − District of Colorado
# District of Colorado (Denver)
# CRIMINAL DOCKET FOR CASE #: 1:17−cr−00008−WJM All Defendants

Case title: USA v. Jean−Pierre
Magistrate judge case number: 1:16−mj−01103−KMT *SEALED*

Date Filed: 01/11/2017
Date Terminated: 02/03/2020

---

Assigned to: Judge William J. Martinez

Appeals court case number: 20−1039 Tenth Circuit

**Defendant (1)**

| | | |
|---|---|---|
| **Guy M. Jean−Pierre**<br>*TERMINATED: 02/03/2020*<br>*also known as*<br>Marcelo Dominguez de Guerra<br>*TERMINATED: 02/03/2020* | represented by | **Clifford J. Barnard**<br>Clifford J. Barnard, Attorney at Law<br>4450 Arapahoe Avenue<br>#100<br>Boulder, CO 80303<br>303−546−7947<br>Fax: 303−444−6349<br>Email: cliffbarnard@earthlink.net<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment*<br><br>**Kirkland Leonard Brush**<br>Kirk Brush, Attorney at Law<br>155 East Boardwalk Drive<br>Suite 400<br>Ft. Collins, CO 80525<br>970−224−9281<br>Fax: 970−224−5700<br>Email: kbrush@kirkbrush.com<br>*TERMINATED: 11/09/2017*<br>*Designation: Retained*<br><br>**Megan Lucile Hayes**<br>Megan Lucile Hayes, Attorney at Law<br>910 Kearney Street<br>Laramie, WY 82070<br>307−760−6258<br>Email: Mlhayes@wyoming.com<br>*ATTORNEY TO BE NOTICED*<br>*Designation: 10th Circuit Special Designation* |

**Thomas Edward Goodreid**
Thomas E. Goodreid, Attorney at Law
1801 Broadway
Suite 1400
Denver, CO 80202
303−296−2048
Fax: 303−292−0522
Email: t.goodreid@comcast.net
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18 U.S.C. § 371 Conspiracy to defraud the United States (1ss) | Imprisonment: 60 months as to Count 1 and 84 months as to each of Counts 2−11 and 13−29, all Counts to run concurrent. Supervised Release: 3 years as to all Counts, to run concurrent. Special Assessment Fee: $2,800. |
| 18 U.S.C. §§ 1343 and 18 U.S.C. § 2 Wire Fraud (2ss−11ss) | Imprisonment: 60 months as to Count 1 and 84 months as to each of Counts 2−11 and 13−29, all Counts to run concurrent. Supervised Release: 3 years as to all Counts, to run concurrent. Special Assessment Fee: $2,800. |
| 18 U.S.C. §§ 1343 and 18 U.S.C. § 2 Wire Fraud (13ss−16ss) | Imprisonment: 60 months as to Count 1 and 84 months as to each of Counts 2−11 and 13−29, all Counts to run concurrent. Supervised Release: 3 years as to all Counts, to run concurrent. Special Assessment Fee: $2,800. |
| 18 U.S.C. §§ 1341 and 18 U.S.C. § 2 Mail Fraud (17ss−20ss) | Imprisonment: 60 months as to Count 1 and 84 months as to each of Counts 2−11 and 13−29, all Counts to run concurrent. Supervised Release: 3 years as to all Counts, to run concurrent. Special Assessment Fee: $2,800. |
| 15 U.S.C. §§ 78j(b) and 78ff; Code of Federal Regulations § 240.10b−5 [Rule 10b−5]; and 18 U.S.C. § 2 Securities Fraud (21ss−23ss) | Imprisonment: 60 months as to Count 1 and 84 months as to each of Counts 2−11 and 13−29, all Counts to run concurrent. Supervised Release: 3 years as to all Counts, to run concurrent. Special Assessment Fee: $2,800. |
| 18 U.S.C. §§ 1343 and 18 U.S.C. § 2 A Wire Fraud (24ss−28ss) | Imprisonment: 60 months as to Count 1 and 84 months as to each of Counts 2−11 and 13−29, all Counts to run concurrent. Supervised Release: 3 years as to all Counts, to run concurrent. Special Assessment Fee: $2,800. |
| 18 U.S.C. § 1956(a)(3)(B) and 18 U.S.C. § 2 Conducting Financial Transactions in Property Represented to be the Proceeds of Specified Unlawful Activity (29ss) | Imprisonment: 60 months as to Count 1 and 84 months as to each of Counts 2−11 and 13−29, all Counts to run concurrent. Supervised Release: 3 years as to all Counts, to run concurrent. Special Assessment Fee: $2,800. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1956.F Conducting Financial Transactions in Property Represented to be the Proceeds of Specified Unlawful Activity (1) | Dismissed. |
| 18 U.S.C. § 371 Conspiracy to defraud the United States (1s) | Dismissed. |
| 18 U.S.C. §§ 1343 and 18 U.S.C. § 2 Wire Fraud (2s−16s) | Dismissed. |
| 18 U.S.C. §§ 1343 and 18 U.S.C. § 2 Wire Fraud (12ss) | Acquitted. |
| 18 U.S.C. §§ 1341 and 18 U.S.C. § 2 Mail Fraud (17s−20s) | Dismissed. |
| 15 U.S.C. §§ 78j(b) and 78ff; Code of Federal Regulations § 240.10b−5 [Rule 10b−5]; and 18 U.S.C. § 2 Securities Fraud (21s−23s) | Dismissed. |
| 18 U.S.C. §§ 1343, 1349 and 18 U.S.C. § 2 Attempted Wire Fraud (24s−28s) | Dismissed. |
| 18 U.S.C. § 1956(a)(3)(B) and 18 U.S.C. § 2 Conducting Financial Transactions in Property Represented to be the Proceeds of Specified Unlawful Activity (29s) | Dismissed. |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| 18:1956−4310.F − CONDUCTING FINANCIAL TRANSACTIONS IN | |

PROPERTY REPRESENTED TO BE THE PROCEEDS OF SPECIFIED UNLAWFUL ACTIVITY

---

**Plaintiff**

**USA** represented by

**Kenneth (Former AUSA) Harmon**
U.S. Attorney's Office−Denver
1801 California Street
Suite 1600
Denver, CO 80202
303−454−0100
Fax: 454−0402
Email: USACO.ECFCriminal@usdoj.gov
*TERMINATED: 12/27/2017*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Jeremy S. Sibert**
U.S. Attorney's Office−Denver
1801 California Street
Suite 1600
Denver, CO 80202
303−454−0100
Fax: 303−454−0461
Email: Jeremy.Sibert@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Robert M. Brown**
U.S. Attorney's Office−Denver
1801 California Street
Suite 1600
Denver, CO 80202
303−454−0355
Fax: 303−454−0403
Email: Robert.Brown5@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Tonya Shotwell Andrews**
U.S. Attorney's Office−Denver
1801 California Street
Suite 1600
Denver, CO 80202
303−454−0100
Fax: 303−454−0402
Email: Tonya.Andrews@usdoj.gov
*ATTORNEY TO BE NOTICED*

*Designation: Federal Agency Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/13/2016 | 1 | | COMPLAINT as to Guy M. Jean−Pierre (1). (Attachments: # 1 Affidavit, # 2 Criminal Information Sheet) (morti, )[1:16−mj−01103−KMT *SEALED*] Modified on 2/6/2017 to restrict [1−1] to a Level 3 pursuant to 9 Minute Order. (nmarb, ). (Entered: 06/14/2016) |
| 06/13/2016 | 2 | | Arrest Warrant Issued in case as to Guy M. Jean−Pierre. (morti, ) [1:16−mj−01103−KMT *SEALED*] (Entered: 06/14/2016) |
| 01/11/2017 | 3 | | INDICTMENT as to Guy M. Jean−Pierre (1) count(s) 1. (Attachments: # 1 Criminal Information Sheet) (cthom, ) (Entered: 01/12/2017) |
| 01/11/2017 | 4 | | **DISREGARD Filing Meant for 16−mj−1103** MAGISTRATE CASE TERMINATED as to Guy M. Jean−Pierre on 1/11/2017. See case 17−cr−8−WJM. Text Only Entry. (cthom, ) Modified to show docketing error on 1/12/2017 (cthom, ). (Entered: 01/12/2017) |
| 01/11/2017 | 5 | | RESTRICTED DOCUMENT − Level 4 as to Guy M. Jean−Pierre. (cthom, ) (Entered: 01/12/2017) |
| 01/27/2017 | 6 | | Rule 5(c)(3) Documents Received as to Guy M. Jean−Pierre (Attachments: # 1 Docket Sheet, # 2 Order Appointing Counsel)(cthom, ) Modified on 2/6/2017 to restrict at Level 3 main document pursuant to 9 Minute Order. (nmarb, ). (Entered: 01/31/2017) |
| 01/27/2017 | 7 | | CJA 23 Financial Affidavit from Southern District of New York as to Guy M. Jean−Pierre. (cthom, ) (Entered: 01/31/2017) |
| 02/06/2017 | 8 | | Arrest of Guy M. Jean−Pierre in Southern District of New York. Initial Appearance set for 2/6/2017 02:00 PM in Courtroom C204 before Magistrate Judge Nina Y. Wang. (Text Only entry)(nmarb, ) (Entered: 02/06/2017) |
| 02/06/2017 | 9 | | MINUTE ORDER by Magistrate Judge Nina Y. Wang on 02/06/17 as to Guy M. Jean−Pierre. The Clerk of the Court is DIRECTED to RESTRICT as Level 3 Restricted the following documents: [#1−1] and [#6]. The Clerk of the Court is DIRECTED TO UNRESTRICT the Indictment at [#5]. (nmarb, ) (Entered: 02/06/2017) |
| 02/06/2017 | 10 | | AMENDED MINUTE ORDER as to Guy M. Jean−Pierre as to 9 Minute Order, by Magistrate Judge Nina Y. Wang on 02/06/17. (nmarb, ) (Entered: 02/06/2017) |
| 02/06/2017 | 11 | | COURTROOM MINUTES for proceedings held before Magistrate Judge Nina Y. Wang: Initial Appearance as to Guy M. Jean−Pierre held on 2/6/2017. Defendant present in custody. Defendant advised. Court appoints counsel. CJA Counsel Kirk Brush appeared for Defendant. Discussion occurred regarding Defendants name. Court orders Pretrial Interview. Arraignment, Detention Hearing, and Discovery Hearing set for 2/9/2017 01:30 PM in Courtroom C204 before Magistrate Judge Nina Y. Wang. Defendant remanded. (Total time: 11 minutes, Hearing time: 2:16 − 2:27)<br><br>**APPEARANCES**: Ken Harmon on behalf of the Government, Krik Brush on |

| | | | |
|---|---|---|---|
| | | | behalf of the defendant, Gary Burney on behalf of pretrial. FTR: Courtroom C−204. (slibi, ) Text Only Entry (Entered: 02/06/2017) |
| 02/06/2017 | 12 | | ORDER APPOINTING COUNSEL as to Guy M. Jean−Pierre, by Magistrate Judge Nina Y. Wang on 2/06/2017. Text Only Entry (slibi, ) (Entered: 02/06/2017) |
| 02/06/2017 | 13 | | CJA 23 Financial Affidavit by Guy M. Jean−Pierre.<br>Person represented: *Marcelo Dominguez de Guerra (even though my former name Guy Jean−Pierre is in the system).<br>Note below signature: *I definitely would like to be referred by my current and correct legal name Marcelo Dominguez de Guerra. I was told that the issue can only be addressed in court through my attorney. (bwilk, ) (Entered: 02/06/2017) |
| 02/08/2017 | 14 | | NOTICE OF ATTORNEY APPEARANCE: Kirkland Leonard Brush appearing for Guy M. Jean−PierreAttorney Kirkland Leonard Brush added to party Guy M. Jean−Pierre(pty:dft) (Brush, Kirkland) (Entered: 02/08/2017) |
| 02/09/2017 | 15 | | **VACATED re: 95 − ORDER OF DETENTION as to Guy M. Jean−Pierre by Magistrate Judge Nina Y. Wang on 02/09/17. (nmarb, ) Modified on 4/24/2018 (dhans, ). (Entered: 02/10/2017) |
| 02/09/2017 | 16 | | COURTROOM MINUTES for Arraignment, Discovery, and Detention Hearings as to Guy M. Jean−Pierre held on 2/9/2017 before Magistrate Judge Nina Y. Wang. Defendant present in custody. Plea of NOT GUILTY entered by defendant. Discovery memorandum executed. Parties proceed to Detention Hearing. Governments Exhibits 1, 2, 3, 4, 5, 6, 9, 7, 8, 10, and 11 are admitted. Defendant ORDERED detained. Counsel directed to chambers. Defendant remanded. (Total time: 90 minutes, Hearing time: 1:55−3:04, 3:12−3:33)<br><br>**APPEARANCES**: Kenneth Harmon on behalf of the Government, Kirk Brush on behalf of the defendant, Angela Ledesma on behalf of pretrial. FTR: Courtroom C−204. (bwilk, ) Text Only Entry (Entered: 02/10/2017) |
| 02/09/2017 | 17 | | Government Exhibit 1 in support of 16 Courtroom Minutes by USA as to Guy M. Jean−Pierre. (Attachments: # 1 Government Exhibit 2, # 2 Government Exhibit 3, # 3 Government Exhibit 4, # 4 Government Exhibit 5, # 5 Government Exhibit 6, # 6 Government Exhibit 7, # 7 Government Exhibit 8, # 8 Government Exhibit 9, # 9 Government Exhibit 10, # 10 Government Exhibit 11)(mdave, ) (Entered: 02/10/2017) |
| 02/09/2017 | 18 | | Discovery Conference Memorandum and ORDER: Estimated Trial Time − 10 days as to Guy M. Jean−Pierre by Magistrate Judge Nina Y. Wang on 02/09/2017. (mdave, ) (Entered: 02/10/2017) |
| 02/10/2017 | 19 | | ORDER Setting Trial Date and Related Deadlines as to Guy M. Jean−Pierre Motions due by 3/10/2017. Responses due by 3/20/2017. 4 day Jury Trial set for 4/17/2017 08:30 AM in Courtroom A 801 before Judge William J. Martinez. Trial Preparation Conference set for 4/10/2017 at 02:00 PM in Courtroom A 801 before Judge William J. Martinez. ORDERED by Judge William J. Martinez on 02/10/2017. (cthom, ) (Entered: 02/10/2017) |
| 02/16/2017 | 21 | | MINUTE ORDER by Magistrate Judge Nina Y. Wang on 2/16/17, as to Guy M. Jean−Pierre re 17 Exhibits filed by USA. On February 6, 2017, this court |

| | | | |
|---|---|---|---|
| | | | granted an oral motion by the Government to restrict said Affidavit in this matter pursuant to an order of restriction granted by United States Magistrate Judge Kevin N. Fox of the United States District Court for the Southern District of New York. Accordingly, IT IS ORDERED that: The Clerk of the Court is DIRECTED TO RESTRICT as Level 1 Restricted [#17], until further order of the court. (nmarb, ) (Entered: 02/16/2017) |
| 02/24/2017 | 22 | | MOTION to Disclose Grand Jury Material to Defendant by USA as to Guy M. Jean−Pierre. (Attachments: # 1 Proposed Order (PDF Only))(Harmon, Kenneth) (Entered: 02/24/2017) |
| 02/27/2017 | 23 | | ORDER regarding 22 Motion to Disclose Grand Jury Material as to Guy M. Jean−Pierre (1) by Judge William J. Martinez on 02/27/2017. (cthom, ) (Entered: 02/27/2017) |
| 03/10/2017 | 24 | | Unopposed MOTION to Continue , *90 Day Exclusion from Speedy Trial* by Guy M. Jean−Pierre. (Brush, Kirkland) (Entered: 03/10/2017) |
| 03/13/2017 | 25 | | ORDER granting 24 Unopposed Motion to Continue as to Guy M. Jean−Pierre (1). **All days from today, to and including June 11, 2017 shall be excludedfrom the Speedy Trial Clock**. The current Trial and Final Trial Preparation Conference dates, and all other pretrial deadlines and settings, are hereby **VACATED**. Ordered by Judge William J. Martinez on 03/13/2017. (cthom, ) (Entered: 03/13/2017) |
| 03/14/2017 | 26 | | ORDER Resetting Trial Dates and Deadlines as to Guy M. Jean−Pierre. Motions due by 6/26/2017. Responses due by 7/6/2017. 5 day Jury Trial set for 7/24/2017 at 08:30 AM in Courtroom A 801 before Judge William J. Martinez. Trial Preparation Conference set for 7/18/2017 at 04:00 PM in Courtroom A 801 before Judge William J. Martinez. ORDERED by Judge William J. Martinez on 03/14/2017. (cthom, ) (Entered: 03/14/2017) |
| 06/23/2017 | 27 | | Joint MOTION to Vacate *Current Motion Deadline and Trial Date and Set a Status Conference to Address Speedy Trial Matters* by Guy M. Jean−Pierre. (Brush, Kirkland) (Entered: 06/23/2017) |
| 06/26/2017 | 28 | | ORDER as to **Guy M. Jean Pierre (1)**: This matter is before the Court on the Parties' Joint Motion of the Parties in Consideration of Potential Superseding Indictment, for the Court to: 1) Vacate Current Motion Deadline and Trial Date; 2) Set a Status Conference to Address Speedy Trial Matters 27 . The Parties' Joint Motion is GRANTED for good cause shown. The current Trial and Final Trial Preparation Conference dates, and all other pretrial deadlines and settings, are hereby VACATED. It is FURTHER ORDERED that a Status Conference to address speedy trial matters is hereby **SET for August 4, 2017 at 1:30 p.m.** in Courtroom A801. SO ORDERED by Judge William J. Martinez on 6/26/2017. Text Only Entry (wjmsec, ) (Entered: 06/26/2017) |
| 07/13/2017 | 29 | | SUPERSEDING INDICTMENT as to Guy M. Jean−Pierre (1) count(s) 1s, 2s−16s, 17s−20s, 21s−23s, 24s−28s, 29s. (Attachments: # 1 Criminal Information Sheet) (angar, ) (Entered: 07/14/2017) |
| 07/13/2017 | 30 | | RESTRICTED DOCUMENT − Level 4: by Guy M. Jean−Pierre. (angar, ) (Entered: 07/14/2017) |
| 07/24/2017 | 31 | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ORDER as to Guy M. Jean−Pierre Re−Arraignment set for 08/04/2017 10:00 AM in Courtroom C205 before Magistrate Judge Scott T. Varholak. re 29 Superseding Indictment. Text Only Entry (angar, ) Modified on 7/24/2017 to correct date (angar, ). (Entered: 07/24/2017) |
| 07/24/2017 | 32 | | Utility Setting/Resetting Deadlines/Hearings as to Guy M. Jean−Pierre: Text Only Entry Arraignment set for 8/4/2017 10:00 AM in Courtroom C205 before Magistrate Judge Scott T. Varholak pursuant to 29 Superseding indictment (angar, ) (Entered: 07/24/2017) |
| 08/03/2017 | 33 | | STATUS REPORT *and Speedy Trial Calculations* by USA as to Guy M. Jean−Pierre (Harmon, Kenneth) (Entered: 08/03/2017) |
| 08/04/2017 | 34 | | MINUTE ENTRY for Re−Arraignment as to Guy M. Jean−Pierre held before Magistrate Judge Scott T. Varholak on 8/4/2017. Defendant present in custody. Defendant waives further reading and advisement and enters Plea of NOT GUILTY. Defendant remanded. (Total time: 1 minute, Hearing time: 10:07−10:08)<br><br>**APPEARANCES**: Kenneth Harmon on behalf of the Government, Kirkland Brush on behalf of the defendant. FTR: STV − C203. (morti, ) Text Only Entry (Entered: 08/04/2017) |
| 08/04/2017 | 35 | | MINUTE ENTRY for proceedings held before Judge William J. Martinez: Status Conference as to Guy M. Jean−Pierre held on 8/4/2017. ORDERED: The Government's oral motion for a 90−day tolling of the Speedy Trial Act is GRANTED. The Government has up to and including Friday, August 18th to send chambers, via email, a proposed draft order setting forth the factual findings made by the court on the record granting the Government's oral 18 U.S.C. § 3161 motion. ORDERED: A thirteen−day jury trial is set December 4, 2017 at 8:30 a.m., concluding on Wednesday, December 20, 2017. A Final Trial Preparation Conference is set at 10:00 a.m., Wednesday, November 22, 2017, in Courtroom A801 before Judge William J. Martinez. Court Reporter: Mary George. (dhans, ) (Entered: 08/04/2017) |
| 08/08/2017 | 36 | | TRANSCRIPT of Status Conference as to Guy M. Jean−Pierre held on August 4, 2017 before Judge Martinez. Pages: 1−29. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 08/08/2017) |
| 08/24/2017 | 37 | | ORDER Granting Government's Motion for 90−Day Tolling of the Speedy Trial Act Pursuant to 18 U.S.C. § 3161 as to Guy M. Jean−Pierre. ORDERED by Judge William J. Martinez on 08/24/2017. (angar, ) (Entered: 08/25/2017) |
| 08/25/2017 | 38 | | ORDER Resetting Trail Date and Related Deadlines as to Guy M. Jean−Pierre, by Judge William J. Martinez on 08/25/2017. Motions due are by |

| | | | |
|---|---|---|---|
| | | | **11/6/2017**. Responses are due by **11/16/2017**. A Final Trial Preparation Conference is set for **11/22/2017 at 10:00 AM in Courtroom A 801** before Judge William J. Martinez AND a **13−day Jury Trial** is set to commence on **12/4/2017 at 08:30 AM in Courtroom A 801 and to conclude on 12/20/2017** before Judge William J. Martinez. (angar, ) Modified on 8/28/2017 to correct deadline (angar, ). (Entered: 08/25/2017) |
| 10/04/2017 | 39 | | MOTION for Disclosure *of Grand Jury Materials to Prospective Summary Witnesses* by USA as to Guy M. Jean−Pierre. (Attachments: # 1 Proposed Order (PDF Only))(Harmon, Kenneth) (Entered: 10/04/2017) |
| 10/05/2017 | 40 | | ORDER as to Guy M. Jean−Pierre (1). That the Government's 39 motion is GRANTED. Grand jury testimony and grand jury exhibits and other materials may be disclosed to the Criminal Prosecution Assistance Group ("CPAG") of the Financial Industry Regulatory Authority ("FINRA") in the course of this case. such materials shall only be used for the purpose of prosecuting this case; that such materials are disclosed only to FINRA CPAG; that FINRA CPAGshall maintain custody of such materials, and shall not reproduce or disseminate the same; and that such materials shall be returned to the United States at the end of the case, by Judge William J. Martinez on 10/05/2017. (angar, ) (Entered: 10/05/2017) |
| 10/19/2017 | 41 | | ORDER as to **Guy M. Jean−Pierre (1)**: This matter is before the Court *sua sponte*. Due to a conflict in the Court's calendar the Final Trial Preparation Conference set for November 22, 2017 at 10:00 a.m. is hereby **VACATED and RESET to November 22, 2017, at 10:30 a.m.** in Courtroom A801. Counsel are directed to this Court's Revised Practice Standards to ensure compliance with all deadlines triggered by the dates of the Final Trial Preparation Conference and Trial. SO ORDERED by Judge William J. Martinez on 10/19/2017. Text Only Entry (wjmsec, ) (Entered: 10/19/2017) |
| 11/03/2017 | 42 | | Unopposed MOTION for Consideration *to Permit Court Appearance in Street Clothing for Trial and To Order the Assistance of the US Marshal in Providing Such Clothing for Defendant* by Guy M. Jean−Pierre. (Brush, Kirkland) (Entered: 11/03/2017) |
| 11/06/2017 | 43 | | MOTION to Withdraw as Attorney by Kirkland L. Brush by Guy M. Jean−Pierre. (Brush, Kirkland) Modified on 11/14/2017 to term motion pursuant to 46 MINUTE ENTRY and ORDER APPOINTING COUNSEL (angar, ). (Entered: 11/06/2017) |
| 11/06/2017 | 44 | | ORDER as to **Guy M. Jean Pierre (1)**: This matter is before the Court on the Motion of Defendant's Counsel to Withdraw as Attorney for Defendant 43 . A Status Conference to consider the matters raised by this Motion is hereby **SET for November 9, 2017 at 11:00 a.m.** in Courtroom A801. SO ORDERED by Judge William J. Martinez on 11/6/2017. Text Only Entry (wjmsec, ) (Entered: 11/06/2017) |
| 11/06/2017 | 45 | | MOTION for Order *To Permit FBI Undercover Agents to Testify Under Pseudonym* by USA as to Guy M. Jean−Pierre. (Harmon, Kenneth) (Entered: 11/06/2017) |
| 11/09/2017 | 46 | | MINUTE ENTRY and ORDER APPOINTING COUNSEL. Status Conference as to Defendant 1. Guy M. Jean−Pierre held on November 9, 2017. ORDERED: 1. The Motion of Defendant's Counsel To Withdraw As |

| | | | |
|---|---|---|---|
| | | | Attorney For Defendant, 43 is GRANTED. 2. New counsel from the CJA Panel shall be appointed. 3. The final trial preparation conference currently set for November 22 is vacated and reset to Monday, December 18th, at 2:00 p.m. in Courtroom A801 before Judge William J. Martinez. 4. The 13−day jury trial scheduled to commence on December 4th is vacated and reset to commence at 8:30 on Tuesday, December 26th, 2017 in Courtroom A801 before Judge William J. Martinez. 5. The deadlines for pretrial disclosures and filings required under the court rules and this Court's Practice Standards are vacated. These deadlines will be reset at the next status conference which will be scheduled after new counsel for the defendant has entered his or her appearance. The Court anticipates and will give serious consideration to 1) an ends of justice motion by new counsel; and 2) a motion for appointment of co−counsel with subject matter expertise. 6. If an ends of justice motion is filed, it should be filed by December 8, 2017. (dhans, ) (Entered: 11/13/2017) |
| 11/14/2017 | 47 | | NOTICE OF ATTORNEY APPEARANCE: Clifford J. Barnard appearing for Guy M. Jean−PierreAttorney Clifford J. Barnard added to party Guy M. Jean−Pierre(pty:dft) (Barnard, Clifford) (Entered: 11/14/2017) |
| 11/15/2017 | 48 | | ORDER as to **Guy M. Jean−Pierre (1)**: This matter is before the Court on the Notice of Appearance of Clifford Barnard 47 . A Status Conference is hereby **SET for November 22, 2017 at 10:00 a.m.** in Courtroom A801. During this Status Conference the Parties shall be prepared to further discuss the matters addressed at the prior Status Conference, including any agreement between the Parties as to the appropriate future schedule for bringing this matter to trial without unreasonable delay. SO ORDERED by Judge William J. Martinez on 11/14/2017. Text Only Entry (wjmsec, ) (Entered: 11/15/2017) |
| 11/15/2017 | 49 | | AMENDED ORDER as to **Guy M. Jean−Pierre (1)**: This matter is before the Court on the Notice of Appearance of Clifford Barnard 47 . A Status Conference is hereby **RESET for November 22, 2017 at 10:15 a.m.** in Courtroom A801. During this Status Conference the Parties shall be prepared to further discuss the matters addressed at the prior Status Conference, including any agreement between the Parties as to the appropriate future schedule for bringing this matter to trial without unreasonable delay. SO ORDERED by Judge William J. Martinez on 11/14/2017. Text Only Entry (wjmsec, ) (Entered: 11/15/2017) |
| 11/20/2017 | 50 | | ORDER as to **Guy Jean Pierre (1)**: This matter is before the Court *sua sponte*. At the Status Conference set for November 22, 2017 at 10:15 a.m., the Parties are DIRECTED to be prepared to advise the Court on their respective views as to what for this Defendant is the Speedy Trial Act deadline as of the date of the Status Conference. SO ORDERED by Judge William J. Martinez on 11/17/2017. Text Only Entry (wjmsec, ) Modified on 11/21/2017 to edit text (angar, ). (Entered: 11/20/2017) |
| 11/21/2017 | 51 | | Unopposed MOTION to Continue *Jury Trial and Exclude Time from Speedy Trial* by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 11/21/2017) |
| 11/22/2017 | 52 | | MINUTE ENTRY for proceedings held before Judge William J. Martinez: Status Conference as to Guy M. Jean−Pierre held on 11/22/2017. ORDERED: 1. Defendant Jean−Pierre's Unopposed Motion for an Ends of Justice Continuance and Findings of Excludable Time on Grounds of Complexity Pursuant to Title 18 U.S.C. § 3161, 51 , is GRANTED IN PART AND |

| | | | |
|---|---|---|---|
| | | | DENIED IN PART. 2. Based on Mr. Barnard's representation that he will be filing a motion for an ends of justice continuance by December 8th requesting a minimum 90 day continuance of the trial date and the final trial preparation conference date, coupled with the Government's representation that it does not reasonably anticipate opposing that motion, the final trial preparation conference set December 18 and the trial set December 26th are VACATED. 3. The defendant has up to and including December 8, 2017 to file: a. his motion for appointment of co−counsel, which shall include his estimate of how many days the trial will take; b. his response to the Government's Motion to Permit FBI Undercover Agents To Testify Under A Pseudonym 52 ; c. as ordered on November 9, 2017, his ends of justice motion which shall include the parties' stipulated 70 day speedy trial clock calculation as of the date the motion is filed. 4. The Defendant's Unopposed Motion to Permit Court Appearance In Street Clothing and To Order The Assistance Of The United States Marshal In Providing Such Clothing For Defendant 42 is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED as to Permit Court Appearance In Street Clothing. The motion is DENIED as to The Assistance Of The United States Marshal In Providing Such Clothing For Defendant. The final trial preparation conference and the trial will be reset after the Court rules on the motions due December 8, 2017. Court Reporter: Mary George. (dhans, ) (Entered: 11/22/2017) |
| 12/08/2017 | 53 | | Unopposed MOTION to Continue *and Exclude 170 Days from Speedy Trial* by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 12/08/2017) |
| 12/08/2017 | 54 | | MOTION for Leave to Restrict by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 12/08/2017) |
| 12/08/2017 | 55 | | RESTRICTED DOCUMENT − Level 3: by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 12/08/2017) |
| 12/08/2017 | 56 | | RESTRICTED DOCUMENT − Level 3: by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 12/08/2017) |
| 12/11/2017 | 57 | | ORDER as to **Guy M. Jean−Pierre (1)** granting Defendant Jean−Pierre's Motion to Restrict Document 54 . The Defendant's Motion is GRANTED for good cause shown. The documents filed at ECF Nos. 55 and 56 shall remain RESTRICTED at RESTRICTION LEVEL 3 (viewable only by the Filer and the Court). SO ORDERED by Judge William J. Martinez on 12/11/2017. Text Only Entry (wjmsec, ) (Entered: 12/11/2017) |
| 12/11/2017 | 58 | | ORDER Granting in Part Defendant Jean−Pierre's Unopposed Motion for an Ends of Justice Finding of 170 Days Of Excludable Time On Grounds of Complexity Pursuant to Title 18 U.S.C. § 3161 as to Guy M. Jean−Pierre (1). ORDERED by Judge William J. Martinez on 12/11/2017. (angar, ) (Entered: 12/11/2017) |
| 12/12/2017 | 59 | | ORDER granting 45 Government's Motion to Permit FBI Undercover Agents to Testify Under a Pseudonym. The Court ordered Defendant to respond to the Government's Motion no later than December 8, 2017. (ECF No. 52.) Having received no response, the Court views the grounds for relief stated in the Government's Motion as having been confessed. Accordingly, the Motion 45 is GRANTED. The Court will permit the FBI undercover agents referenced in the Government's Motion to testify at trial before the jury using a pseudonym |

| | | | |
|---|---|---|---|
| | | | in place of their actual names. SO ORDERED by Judge William J. Martinez on 12/12/2017. Text Only Entry (wjmlc2, ) (Entered: 12/12/2017) |
| 12/12/2017 | 60 | | ORDER Resetting Trial Date and Related Deadlines as to Guy M. Jean−Pierre, by Judge William J. Martinez on 12/12/2017.Motions are due by 4/20/2018. Responses are due by 4/30/2018. A Final Trial Preparation Conference is set for 5/11/2018 at 02:00 PM in Courtroom A 801 before Judge William J. Martinez AND a **12−day** jury trial is hereby set to commence in the U.S. Courthouse, Courtroom A801, 901 19th Street, Denver, Colorado, on Monday, May 21, 2018 at 8:30 a.m. and shall conclude on Wednesday, June 6, 2018. (angar, ) (Entered: 12/12/2017) |
| 12/12/2017 | | | ***Set/Reset Hearings as to Guy M. Jean−Pierre: (dhans, ) (Entered: 04/24/2018) |
| 12/14/2017 | 61 | | MOTION for Leave to Restrict by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 12/14/2017) |
| 12/14/2017 | 62 | | RESTRICTED DOCUMENT − Level 3: by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 12/14/2017) |
| 12/14/2017 | 63 | | RESTRICTED DOCUMENT − Level 3: by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 12/14/2017) |
| 12/14/2017 | 64 | | ORDER as to **Guy M. Jean−Pierre (1)** granting Defendant Jean−Pierre's Motion to Restrict Document 61 . The Defendant's Motion is GRANTED for good cause shown. The documents filed at ECF Nos. 62 and 63 shall remain RESTRICTED at RESTRICTION LEVEL 3 (viewable only by the Filer and the Court). SO ORDERED by Judge William J. Martinez on 12/14/2017. Text Only Entry (wjmsec, ) (Entered: 12/14/2017) |
| 12/14/2017 | 65 | | RESTRICTED DOCUMENT − Level 3: by Guy M. Jean−Pierre. (angar, ) (Entered: 12/14/2017) |
| 12/19/2017 | 66 | | NOTICE OF ATTORNEY APPEARANCE: Thomas Edward Goodreid appearing for Guy M. Jean−PierreAttorney Thomas Edward Goodreid added to party Guy M. Jean−Pierre(pty:dft) (Goodreid, Thomas) (Entered: 12/19/2017) |
| 12/26/2017 | 67 | | MOTION to Withdraw as Attorney by Kenneth M. Harmon by USA as to Guy M. Jean−Pierre. (Harmon, Kenneth) (Entered: 12/26/2017) |
| 12/27/2017 | 68 | | NOTICE OF ATTORNEY APPEARANCE Jeremy S. Sibert appearing for USA. Attorney Jeremy S. Sibert added to party USA(pty:pla) (Sibert, Jeremy) (Entered: 12/27/2017) |
| 12/27/2017 | 69 | | ORDER as to **Guy M. Jean−Pierre (1)** granting the Government's Motion to Withdraw 67 . The Motion is GRANTED for good cause shown. Kenneth M. Harmon is hereby granted leave to withdraw from this case. The Clerk shall terminate all further CM/ECF notifications to Mr. Harmon in this case. SO ORDERED. by Judge William J. Martinez on 12/27/2017. Text Only Entry (wjmsec, ) (Entered: 12/27/2017) |
| 12/30/2017 | 70 | | TRANSCRIPT of Arraignment, Discovery and Detention Hearing as to Guy M. Jean−Pierre held on February 9, 2017 before Magistrate Judge Wang. Pages: 1−92. |

| | | | |
|---|---|---|---|
| | | | **NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Patterson Transcription Company, ) (Entered: 12/30/2017) |
| 01/08/2018 | 71 | | MOTION for Bond *(Opposed)* by Guy M. Jean−Pierre. (Attachments: # 1 Exhibit A − Account Summary, # 2 Exhibit B − Declaration)(Barnard, Clifford) (Entered: 01/08/2018) |
| 01/09/2018 | 72 | | MEMORANDUM regarding 71 MOTION for Bond *(Opposed)* filed by Guy M. Jean−Pierre. The Court CONSTRUES Defendant's Opposed Motion to Amend Detention Order and to Set Bail as a motion brought under to 18 U.S.C. § 3142(f) to reopen the detention hearing, including to address new information, which is properly directed to the same judicial officer who entered the initial order. *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003). Defendant's Motion is therefore REFERRED to Magistrate Judge Nina Y. Wang. by Judge William J. Martinez on 1/9/2018. Text Only Entry (wjmsec, ) (Entered: 01/09/2018) |
| 01/10/2018 | 73 | | MINUTE ORDER by Magistrate Judge Nina Y. Wang on 1/10/18 as to Guy M. Jean−Pierre re 71 MOTION for Bond *(Opposed)* filed by Guy M. Jean−Pierre. Response to this motion is due by 1/17/2018. Motion Hearing set for 1/19/2018 01:30 PM in Courtroom C204 before Magistrate Judge Nina Y. Wang. The United States Marshal Service is DIRECTED to TRANSPORT Defendant to be present for the hearing in person. (nmarb, ) (Entered: 01/10/2018) |
| 01/16/2018 | 74 | | EXHIBIT LIST *for Bond Hearing* by Guy M. Jean−Pierre (Attachments: # 1 Exhibit C − Ind. House Client Handbook, # 2 Exhibit D − CO unemploytment)(Barnard, Clifford) (Entered: 01/16/2018) |
| 01/17/2018 | 75 | | RESPONSE to Motion by USA as to Guy M. Jean−Pierre re 71 MOTION for Bond *(Opposed)* (Sibert, Jeremy) (Entered: 01/17/2018) |
| 01/19/2018 | 76 | | COURTROOM MINUTES for Motion Hearing as to Guy M. Jean−Pierre held on 1/19/2018 before Magistrate Judge Nina Y. Wang. Defendant present in custody. Parties proceed to argument on Motion for Bond as to Guy M. Jean−Pierre (1); 71 . Motion for Bond 71 is TAKEN UNDER ADVISEMENT. The court will issue a written order on or before 1/22/2018. Defendant remanded. (Total time: 28 minutes, Hearing time: 1:36−2:04) **APPEARANCES**: Jeremy Sibert on behalf of the Government, Clifford Barnard on behalf of the Defendant, Angela Ledesma on behalf of Pretrial. FTR: Courtroom C−204. (bwilk, ) Text Only Entry (Entered: 01/19/2018) |

| | | | |
|---|---|---|---|
| 01/22/2018 | 77 | | ** VACATED. re: 95 − ORDER by Magistrate Judge Nina Y. Wang on 1/22/18. Defendant Jean−Pierre's Opposed Motion to Amend Detention Order and to Set Bail 71 is DENIED. (bwilk, ) Modified on 4/24/2018 (dhans, ). (Entered: 01/23/2018) |
| 03/09/2018 | 78 | | APPEAL OF MAGISTRATE JUDGE DECISION to District Court − Criminal Case by Guy M. Jean−Pierre re 77 Order on Motion for Bond, 15 Order of Detention (Barnard, Clifford) (Entered: 03/09/2018) |
| 03/12/2018 | 79 | | TRANSCRIPT of Motion Hearing as to Guy M. Jean−Pierre held on January 19, 2018 before Magistrate Judge Wang. Pages: 1−17.<br><br>**NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Patterson Transcription Company, ) (Entered: 03/12/2018) |
| 03/13/2018 | 80 | | ORDER as to **Guy M. Jean−Pierre (1)**: This matter is before the Court on Defendant Jean−Pierre's Motion to Revoke Orders of Detention (ECF ## 15 and 77) 78 . The Government is DIRECTED to file a Response to Defendant's Motion on or before **March 20, 2018**. After the Government's Response has been received, the Court will determine whether a Reply Brief from the Defendant is necessary. SO ORDERED by Judge William J. Martinez on 3/13/2018. Text Only Entry (wjmsec, ) (Entered: 03/13/2018) |
| 03/20/2018 | 81 | | RESPONSE in Opposition by USA as to Guy M. Jean−Pierre re 78 APPEAL OF MAGISTRATE JUDGE DECISION to District Court − Criminal Case by Guy M. Jean−Pierre re 77 Order on Motion for Bond, 15 Order of Detention (Sibert, Jeremy) (Entered: 03/20/2018) |
| 03/27/2018 | 82 | | ORDER: Defendant is hereby DIRECTED to file a Reply to the Government's Response 81 to Defendant's 78 Motion to Revoke Order of Detention, no later than **April 3, 2018**. Upon receipt of Defendant's Reply, the Court will determine whether a hearing on Defendant's Motion is required. SO ORDERED by Judge William J. Martinez on 3/27/2018. Text Only Entry (wjmlc2, ) (Entered: 03/27/2018) |
| 04/03/2018 | 83 | | REPLY TO RESPONSE to Motion by Guy M. Jean−Pierre re 78 APPEAL OF MAGISTRATE JUDGE DECISION to District Court − Criminal Case by Guy M. Jean−Pierre re 77 Order on Motion for Bond, 15 Order of Detention (Barnard, Clifford) (Entered: 04/03/2018) |
| 04/05/2018 | 84 | | ORDER as to **Guy M. Jean−Pierre (1)**: This matter is before the Court on Defendant Jean−Pierre's Motion 78 to Revoke Orders of Detention (ECF ## 15 and 77). An Evidentiary Hearing on the Motion is hereby **SET for April 23, 2018 at 1:30 p.m.** in Courtroom A801. Counsel are directed to Section V of |

| | | | |
|---|---|---|---|
| | | | this Court's Revised Practice Standards regarding Courtroom Procedures and Deadlines applicable to contested hearings. SO ORDERED by Judge William J. Martinez on 4/5/2018. Text Only Entry (wjmsec, ) (Entered: 04/05/2018) |
| 04/11/2018 | 85 | | NOTICE *for Judicial Notice Fed.R.Evid 201* by USA as to Guy M. Jean−Pierre (Attachments: # 1 Exhibit Attachment One)(Sibert, Jeremy) (Entered: 04/11/2018) |
| 04/16/2018 | 86 | 38 | EXHIBIT LIST *for Bond Hearing* by Guy M. Jean−Pierre (Barnard, Clifford) (Entered: 04/16/2018) |
| 04/18/2018 | 87 | | EXHIBIT LIST *for Evidentiary Hearing* by USA as to Guy M. Jean−Pierre (Sibert, Jeremy) (Entered: 04/18/2018) |
| 04/18/2018 | 88 | | WITNESS LIST *for Evidentiary Hearing* by USA as to Guy M. Jean−Pierre (Sibert, Jeremy) (Entered: 04/18/2018) |
| 04/20/2018 | 89 | | MOTION for James Hearing by Guy M. Jean−Pierre. (Goodreid, Thomas) (Entered: 04/20/2018) |
| 04/20/2018 | 90 | | ORDER as to 89 Defendant's Motion for Pretrial Determination of Admissibility of Alleged Co−Conspirator Statements. Notwithstanding the previously−entered response deadline of April 30, 2018, the Government is DIRECTED to respond to Defendant's Motion to the extent that the Government must indicate whether or not it will seek to admit evidence at trial under Fed. R. Evid. 801(d)(2)(E), no later than **Wednesday, April 25, 2018**. Thereafter, if the Government *does* seek to admit such evidence, its response to Defendant's Motion on the merits must include a proffer completed using the form available through the Court's website (here), and must be filed no later than **May 2, 2018**. Upon receipt of the Government's responses, the Court will determine the necessity of a reply brief and/or a hearing. SO ORDERED by Judge William J. Martinez on 4/20/2018. Text Only Entry (wjmlc2, ) (Entered: 04/20/2018) |
| 04/20/2018 | 91 | 40 | MOTION to Suppress *Laptop Evidence* by Guy M. Jean−Pierre. (Attachments: # 1 Exhibit A, Search Warrant Application, # 2 Exhibit B, Search Warrant)(Barnard, Clifford) (Entered: 04/20/2018) |
| 04/20/2018 | 94 | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 91 MOTION to Suppress *Laptop Evidence* filed by attorney **Clifford J. Barnard**. The format for the attorneys signature block information is not correct. **DO NOT REFILE THE DOCUMENT. Action to take −** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Criminal Cases). (Text Only Entry) (sphil, ) (Entered: 04/24/2018) |
| 04/23/2018 | 92 | | ORDER as to **Guy Jean−Pierre (1)**: This matter is before the Court on Defendant Jean−Pierre's Motion to Suppress Evidence Obtained from Search of HP Laptop 91 . The Government is DIRECTED to file a Response to the Motion on or before **May 2, 2018**. After the Government's Response has been received, the Court will determine whether a Reply Brief will be permitted, and/or whether an evidentiary hearing will be necessary. SO ORDERED by Judge William J. Martinez on 4/23/2018. Text Only Entry (wjmsec, ) (Entered: 04/23/2018) |

| | | | |
|---|---|---|---|
| 04/23/2018 | 93 | 105 | RESPONSE to Motion by USA as to Guy M. Jean−Pierre re 89 MOTION for James Hearing *and Order by this Honorable Court* (Sibert, Jeremy) (Entered: 04/23/2018) |
| 04/23/2018 | 95 | | MINUTE ENTRY for proceedings held before Judge William J. Martinez: Evidentiary Hearing held on 4/23/2018. ORDERED: Defendant Jean−Pierre's Motion To Revoke Orders of Detention, (ECF Nos. 15 and 77 ) 78 is GRANTED. ORDERED: Magistrate Judge Wang's February 9, 2017 Order of Detention 15 and January 22, 2018 Order 77 denying bond are VACATED and the defendant will be allowed to be released on bond with the revised conditions as set forth on the record and below. ORDERED: The court ADOPTS the conditions recommended in the Pretrial Services Report, ECF No. 20 , subject to the following REVISIONS and ADDITIONAL CONDITIONS: 1. The unsecured bond amount is increased to $15,000; 2. The defendant will not be released until both his expired and current United States passports are surrendered; 3. The defendant shall not be released until suitable placement has been obtained in the Independence House halfway house in Denver; 4. The defendant shall be placed on GPS ankle monitoring; 5. The halfway house facility and the U.S. Probation office shall immediately notify Judge William J. Martnez's chambers if there is any tampering with that ankle monitor. ORDERED: The length of the jury trial will be extended for one additional day. The trial will commence, as previously set, on Monday, May 21, 2018.There will be no trial Monday, May 28 nor Friday, May 25. The trial will conclude on Friday, June 8th. ORDERED: The Final Trial Preparation Conference set Friday, May 11, 2018 at 2:00 p.m. is reset to Friday, May 11, 2018 at 3:00 p.m. ORDERED: The defense has until noon, Wednesday, April 25th to file a written reply to the United States' Response to the Motion for James Hearing 89 and To Court's Order 90 specifically responding to the points made in terms of the appropriateness and logic of proceeding under the normal James log procedures that are in the court's Revised Practice Standards and James proffer form, or whether the defense agrees in whole or in part with the Government that the preliminary admissibility issues should be handled in a different way. Court Reporter: Mary George. (dhans, ) (Additional attachment(s) added on 4/24/2018: # 1 Plaintiff's Exhibit List, # 2 Defendant's Exhibit List) (dhans, ). (Entered: 04/24/2018) |
| 04/23/2018 | 96 | | STIPULATION AND ORDER REGARDING CUSTODY OF ORIGINAL EXHIBITS. re: 95 , signed by counsel and by Judge William J. Martinez on 4/23/2018. (dhans, ) (Entered: 04/24/2018) |
| 04/24/2018 | 97 | | MOTION to Continue *Opposing any continuance of trial* by USA as to Guy M. Jean−Pierre. (Sibert, Jeremy) (Entered: 04/24/2018) |
| 04/25/2018 | 98 | | MOTION to Continue *Jury Trial* by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 04/25/2018) |
| 04/25/2018 | 99 | 113 | REPLY TO RESPONSE to Motion by Guy M. Jean−Pierre re 89 MOTION for James Hearing (Goodreid, Thomas) (Entered: 04/25/2018) |
| 04/25/2018 | 100 | | RESPONSE in Opposition by USA as to Guy M. Jean−Pierre re 98 MOTION to Continue *Jury Trial* (Attachments: # 1 Exhibit attachment one)(Sibert, Jeremy) (Entered: 04/25/2018) |
| 04/25/2018 | 101 | | |

| | | | |
|---|---|---|---|
| | | | ORDER on Pending Motions as to Guy M. Jean−Pierre. The Government's Motion Opposing Any Further Continuance (ECF No. 97 ) is DENIED. Defendant's Opposed Motion to Continue Jury Trial and Opposed Motion for an Ends of Justice Finding of up to 30 Days of Excludable Time on Grounds of Complexity Pursuant to Title 18 U.S.C. § 3161 (ECF No. 98 ) is GRANTED to the extent Defendant seeks a trial continuance and DENIED AS MOOT to the extent Defendant seeks an ends−of−justice finding. The Final Trial Preparation Conference scheduled for May 11, 2018 and the 12−day jury trial scheduled to begin on May 21, 2018 are both VACATED. ORDERED by Judge William J. Martinez on 4/25/2018. (angar, ) (Entered: 04/25/2018) |
| 04/25/2018 | 102 | | Passport Receipt as to Guy M. Jean−Pierre.Surrender of passport re Bond Conditions; Passport Number 511899888 issued by Haiti (angar, ) (Entered: 04/26/2018) |
| 04/25/2018 | 103 | | Passport Receipt as to Guy M. Jean−Pierre.Surrender of passport re Bond Conditions; Passport Number 421262959 issued by Haiti (angar, ) (Entered: 04/26/2018) |
| 05/18/2018 | 104 | 118 | RESPONSE by USA as to Guy M. Jean−Pierre re: 91 MOTION to Suppress *Laptop Evidence* filed by Guy M. Jean−Pierre (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Sibert, Jeremy) (Entered: 05/18/2018) |
| 05/18/2018 | 105 | 190 | RESPONSE by USA as to Guy M. Jean−Pierre *Court's Order regarding James Log* (Attachments: # 1 Exhibit One, James Log, # 2 Exhibit Two, Quick Sheet)(Sibert, Jeremy) (Entered: 05/18/2018) |
| 05/29/2018 | 106 | | MINUTE ORDER as to Guy M. Jean−Pierre by Clerk on 5/29/2018 pursuant to request by Probation Department. Bond Release Hearing set for 5/30/2018 10:00 AM in Courtroom C204 before Magistrate Judge Nina Y. Wang. Text Only Entry. (tsher, ) (Entered: 05/29/2018) |
| 05/29/2018 | 107 | | ORDER as to **Guy Jean−Pierre (1)**: This matter is before the Court on Defendant Jean−Pierre's Motion to Suppress Evidence Obtained from Search of HP Laptop 91 . Defendant may file a reply brief on or before **June 8, 2018**. The Court will then determine whether a hearing will be necessary. SO ORDERED by Judge William J. Martinez on 05/29/2018. Text Only Entry (wjmlc1) (Entered: 05/29/2018) |
| 05/30/2018 | 108 | | COURTROOM MINUTES for Bond Hearing as to Guy M. Jean−Pierre held on 5/30/2018 before Magistrate Judge Nina Y. Wang. Defendant present in custody. Bond set as to Guy M. Jean−Pierre (1) $15,000 unsecured. Conditions of bond set including reside at a halfway house, home detention with GPS monitoring. Defendant is instructed to report to probation for GPS setup after processing and release. Defendant advised of conditions of bond and remanded for processing and release. (Total time: 6 minutes, Hearing time: 10:33−10:39)<br><br>Angela Ledesma on behalf of Pretrial. FTR: Courtroom C−204. (bwilk, ) Text Only Entry (Entered: 05/30/2018) |
| 05/30/2018 | 109 | | Unsecured Bond Entered as to Guy M. Jean−Pierre in amount of $15,000. (bwilk, ) (Entered: 05/30/2018) |
| 05/30/2018 | 110 | | |

| | | | |
|---|---|---|---|
| | | | ORDER Setting Conditions of Release by Magistrate Judge Nina Y. Wang on 5/30/2018 as to Guy M. Jean−Pierre (1) $15,000 unsecured. (bwilk, ) (Entered: 05/30/2018) |
| 06/08/2018 | 111 | 275 | REPLY TO RESPONSE to Motion by Guy M. Jean−Pierre re 91 MOTION to Suppress *Laptop Evidence* (Barnard, Clifford) (Entered: 06/08/2018) |
| 06/15/2018 | 112 | 284 | RESPONSE in Support by Guy M. Jean−Pierre re 89 MOTION for James Hearing *(Defendant's James log objections)* (Attachments: # 1 Exhibit Response to Govt James Log, # 2 Exhibit Defense List of Objections)(Barnard, Clifford) (Entered: 06/15/2018) |
| 06/21/2018 | 113 | 348 | Second SUPERSEDING INDICTMENT as to Guy M. Jean−Pierre (1) count(s) 1ss, 2ss−16ss, 17ss−20ss, 21ss−23ss, 24ss−28ss, 29ss. (Attachments: # 1 Criminal Information Sheet) (angar, ) (Entered: 06/22/2018) |
| 06/21/2018 | 114 | | RESTRICTED DOCUMENT − Level 4: as to Guy M. Jean−Pierre. (angar, ) (Entered: 06/22/2018) |
| 06/21/2018 | 115 | | MINUTE ORDER as to Guy M. Jean−Pierre Re−Arraignment set for 7/5/2018 at 10:00 AM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty, by Clerk on 6/21/2018. Pursuant to 113 Second Superseding Indictment. Text Only Entry (angar, ) (Entered: 06/22/2018) |
| 06/22/2018 | 116 | | Unopposed MOTION for Leave to Restrict by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 06/22/2018) |
| 06/22/2018 | 117 | | RESTRICTED DOCUMENT − Level 2: as to Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 06/22/2018) |
| 06/22/2018 | 118 | | RESTRICTED DOCUMENT − Level 2: as to Guy M. Jean−Pierre. (Attachments: # 1 Exhibit Exhibit 1 Patient Plan, # 2 Exhibit Exhibit 2 Imaging Schedule)(Barnard, Clifford) (Entered: 06/22/2018) |
| 06/25/2018 | 119 | | ORDER as to **Guy M. Jean−Pierre (1)** granting Defendant Jean−Pierre's Unopposed Motion to Restrict Document 116 . The Defendant's Motion is GRANTED for good cause shown. The documents filed at ECF Nos. 117 and 118 shall remain RESTRICTED at RESTRICTION LEVEL 2 (viewable only by Selected Parties and the Court). SO ORDERED by Judge William J. Martinez on 6/25/2018. Text Only Entry (wjmsec, ) (Entered: 06/25/2018) |
| 06/25/2018 | 120 | | ORDER: Before the Court is Defendant's Motion for James Hearing 89 and Motion to Suppress Laptop Evidence 91 . After these motions became ripe, the Government filed the Second Superseding Indictment 113 . The parties are each DIRECTED to file a notice, on or before July 2, 2018, informing the Court and opposing counsel of their respective positions regarding whether the Second Superseding Indictment affects the Court's analysis of the Motion for James Hearing and/or the Motion to Suppress Laptop Evidence. SO ORDERED by Judge William J. Martinez on 06/25/2018. Text Only Entry (wjmlc1) (Entered: 06/25/2018) |
| 06/27/2018 | 121 | | RESPONSE by USA as to Guy M. Jean−Pierre *Court's Order Doc# 120* (Sibert, Jeremy) (Entered: 06/27/2018) |
| 07/02/2018 | 122 | | NOTICE *of Defendant's Position* re 120 Order,, by Guy M. Jean−Pierre (Barnard, Clifford) (Entered: 07/02/2018) |

| 07/03/2018 | 123 | | MOTION for Leave to Restrict by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 07/03/2018) |
|---|---|---|---|
| 07/03/2018 | 124 | | RESTRICTED DOCUMENT − Level 2: as to Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 07/03/2018) |
| 07/03/2018 | 125 | | RESTRICTED DOCUMENT − Level 2: as to Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 07/03/2018) |
| 07/03/2018 | 126 | | SUPPLEMENT to 125 Restricted Document − Level 2, 124 Restricted Document − Level 2 by Guy M. Jean−Pierre (Barnard, Clifford) (Entered: 07/03/2018) |
| 07/03/2018 | 127 | | ORDER as to **Guy M. Jean−Pierre (1)</b granting Defendant Jean−Pierre's Unopposed Motion to Restrict Document 123 . The Defendant's Motion is GRANTED for good cause shown. The documents filed at ECF Nos. 124 and 125 shall remain RESTRICTED at RESTRICTION LEVEL 2 (viewable only by Selected Parties and the Court). SO ORDERED by Judge William J. Martinez on 7/3/2018. Text Only Entry (wjmsec, ) (Entered: 07/03/2018)** |
| 07/03/2018 | | | ORDER as to **Guy M. Jean−Pierre (1)** granting Defendant Jean−Pierre's Unopposed Amended Motion for Temporary Removal of his GPS Monitoring Device 124 . Defendant's Motion is GRANTED for good cause shown. The Defendant is authorized to have his GPS monitoring device removed for his MRI procedure scheduled for July 5, 2018. The removal of the GPS monitoring device is limited solely to the time necessary for Defendant's MRI procedure, and the removal and replacement of the device shall be coordinated with the U.S. Probation Office. It is FURTHER ORDERED that the Defendant's previously filed Unopposed Motion for Temporary Removal of his GPS Monitoring Device 118 is DENIED as MOOT. SO ORDERED by Judge William J. Martinez on 7/3/2018. Text Only Entry (wjmsec, ) (Entered: 07/03/2018) |
| 07/03/2018 | 128 | | ORDER as to **Guy M. Jean−Pierre (1)** granting Defendant Jean−Pierre's Unopposed Amended Motion for Temporary Removal of his GPS Monitoring Device 124 . Defendant's Motion is GRANTED for good cause shown. The Defendant is authorized to have his GPS monitoring device removed for his MRI procedure scheduled for July 5, 2018. The removal of the GPS monitoring device is limited solely to the time necessary for Defendant's MRI procedure, and the removal and replacement of the device shall be coordinated with the U.S. Probation Office. It is FURTHER ORDERED that the Defendant's previously filed Unopposed Motion for Temporary Removal of his GPS Monitoring Device 118 is DENIED as MOOT. SO ORDERED by Judge William J. Martinez on 7/3/2018. Text Only Entry (wjmsec, ) (Entered: 07/03/2018) |
| 07/05/2018 | 129 | | COURTROOM MINUTES/MINUTE ENTRY for proceedings held before Magistrate Judge Michael E. Hegarty: Arraignment as to Guy M. Jean−Pierre held on 7/5/2018. Plea of NOT GUILTY entered by defendant, Defendant present on bond, Defendants bond continued, (Total time: 2 mins, Hearing time: 10:14−10:16 a.m.)<br><br>**APPEARANCES**: Jeremy Siebert on behalf of the Government, Cliff Barnard |

| | | | |
|---|---|---|---|
| | | | on behalf of the defendant. FTR: Courtroom A501. (mdave, ) (Entered: 07/05/2018) |
| 07/09/2018 | 130 | | Amended MOTION for Order *for Temporary Revoval of GPS Device* by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 07/09/2018) |
| 07/09/2018 | 131 | | ORDER as to **Guy M. Jean−Pierre (1)** granting Defendant Jean−Pierre's Unopposed Second Amended Motion for Temporary Removal of his GPS Monitoring Device 130 . Defendant's Motion is GRANTED for good cause shown. The Defendant is authorized to have his GPS monitoring device removed for his MRI procedure scheduled for July 17, 2018. The removal of the GPS monitoring device is limited solely to the time necessary for Defendant's MRI procedure, and the removal and replacement of the device shall be coordinated with the U.S. Probation Office. SO ORDERED by Judge William J. Martinez on 7/9/2018. Text Only Entry (wjmsec, ) (Entered: 07/09/2018) |
| 09/04/2018 | 132 | 376 | ORDER denying 91 Motion to Suppress as to Guy M. Jean−Pierre (1), by Judge William J. Martinez on 09/04/2018. (wjmlc1) (Entered: 09/04/2018) |
| 09/06/2018 | 133 | | OORDER: Before the Court is Defendant's Motion for *James* Hearing 89 and Defendant's Response to the Government's Memorandum in Support of its *James* Proffer 112 . The Government is DIRECTED to file, on or before **September 20, 2018**, a reply to Defendant's response, and in particular to address Defendant's argument (p. 8) that many of the listed statements were made to law enforcement officers in after−the−fact interviews. The Government shall identify those statements that derive from law enforcement interviews or similar after−the−fact scenarios (a simple listing of statement numbers, corresponding to the numbers in the first column of the spreadsheet, is acceptable). The Government's reply brief shall not exceed 8 pages exclusive of signature block and certificate of service. SO ORDERED by Judge William J. Martinez on 09/06/2018. Text Only Entry (wjmlc1) (Entered: 09/06/2018) |
| 09/07/2018 | 134 | | Unopposed MOTION for Order *for Temporary Release of Passport* by Guy M. Jean−Pierre. (Attachments: # 1 Exhibit A Grid Alternatives Colorado)(Barnard, Clifford) (Entered: 09/07/2018) |
| 09/07/2018 | 135 | | ORDER as to **Guy M. Jean−Pierre (1)** granting Defendant Jean−Pierre's Unopposed Motion for the Temporary Release of Passport to Custody of Undersigned Counsel 134 . The Defendant's Motion is GRANTED for good cause shown. The Clerk of Court is authorized to temporarily release the Defendant's passport in the name of Marcelo Dominguez de Guerra to the custody of Defendant's counsel, Clifford Barnard, for approximately 4 hours. Mr. Barnard is DIRECTED to return the passport to the Clerk of Court upon completion of the Defendant's appointment at Grid Alternatives Colorado. SO ORDERED by Judge William J. Martinez on 9/7/2018. Text Only Entry (wjmsec, ) (Entered: 09/07/2018) |
| 09/13/2018 | 136 | | Passport Receipt as to Guy M. Jean−Pierre.Returning passport to defendant pursuant to 135 Order Granting Temporary Release of Passport. Passport Number 511899888 issued by USA (dbera, ) (Entered: 09/13/2018) |
| 09/13/2018 | 137 | | Passport Receipt as to Guy M. Jean−Pierre.Surrender of passport re 135 Order Granting Temporary Release of Passport (cmadr, ) (Entered: 09/13/2018) |

| | | | |
|---|---|---|---|
| 09/17/2018 | 138 | | MOTION to Continue by USA as to Guy M. Jean−Pierre. (Sibert, Jeremy) (Entered: 09/17/2018) |
| 09/17/2018 | 139 | | ORDER as to **Guy M. Jean−Pierre (1)** granting the Government's Request for Additional Time to Respond to the Court's Order 138 . The Government's Motion is GRANTED for good cause shown. The Government's deadline to file a reply to Defendant's Response to the Government's Memorandum in Support of its James Proffer is extended up to and including **October 5, 2018**. SO ORDERED by Judge William J. Martinez on 9/17/2018. Text Only Entry (wjmsec, ) (Entered: 09/17/2018) |
| 10/05/2018 | 140 | 384 | RESPONSE by USA as to Guy M. Jean−Pierre *to Court's Order regarding James Log* (Sibert, Jeremy) (Entered: 10/05/2018) |
| 12/14/2018 | 141 | | MOTION for Order *for Temporary Release of Passport* by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 12/14/2018) |
| 12/17/2018 | 142 | | ORDER as to **Guy M. Jean−Pierre (1)** granting Defendant Jean−Pierre's Motion for the Temporary Release of Passport to Custody of Undersigned Counsel 141 . The Defendant's Motion is GRANTED for good cause shown. The Clerk of Court is authorized to temporarily release the Defendant's passport in the name of Marcelo Dominguez de Guerra to the custody of Defendant's counsel, Clifford Barnard, for approximately 4 hours. Mr. Barnard is DIRECTED to return the passport to the Clerk of Court after accompanying the Defendant to the Colorado DMV, or in the alternative, to a Colorado bank. SO ORDERED By Judge William J. Martinez on 12/17/2018. Text Only Entry (wjmsec, ) (Entered: 12/17/2018) |
| 12/18/2018 | 143 | | Receipt for Passport by Guy M. Jean−Pierre (sphil, ) (Entered: 12/19/2018) |
| 12/27/2018 | 144 | 390 | ORDER: 1. Defendant's Motion for Pretrial Determination of Admissibility of Alleged Co−Conspirator Statements 89 is GRANTED; 2. Defendant's specific objections are SUSTAINED IN PART and OVERRULED IN PART as detailed in the attached Chart of Rulings; and 3. The Court will reset the jury trial and Final Trial Preparation Conference by way of separate Order. SO ORDERED By Judge William J. Martinez on 12/27/2018. (Attachments: # 1 Chart of Rulings) (wjmlc1, ) (Entered: 12/27/2018) |
| 12/27/2018 | 145 | | ORDER Resetting Trial Date and Related Deadlines as to Guy M. Jean−Pierre. An **11−day** Jury Trial set for 1/14/2019 08:30 AM in Courtroom A 801 before Judge William J. Martinez. Final Trial Preparation Conference set for 1/8/2019 at 03:00 PM in Courtroom A 801 before Judge William J. Martinez. Expert witness disclosures pursuant to Fed. R. Crim. P. 16 shall be made no later than **December 31, 2018**, and any challenges to such experts shall be made by **January 3, 2019**; Disclosures regarding rebuttal expert witnesses shall be made no later than **January 3, 2019**, and any challenges to such rebuttal experts shall be made no later than **January 7, 2019**. Notwithstanding Local Rule D.C.COLO.LCrR 11.1, a Notice of Disposition in this case shall be filed no later than **January 4, 2019**. SO ORDERED by Judge William J. Martinez on 12/27/2018. (sphil) (Entered: 12/27/2018) |
| 12/30/2018 | 146 | | NOTICE *of Experts* by USA as to Guy M. Jean−Pierre (Sibert, Jeremy) (Entered: 12/30/2018) |
| 12/31/2018 | 147 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF ATTORNEY APPEARANCE Robert M. Brown appearing for USA. Attorney Robert M. Brown added to party USA(pty:pla) (Brown, Robert) (Entered: 12/31/2018) |
| 12/31/2018 | 148 | | Proposed Voir Dire by Guy M. Jean−Pierre (Goodreid, Thomas) (Entered: 12/31/2018) |
| 01/02/2019 | 149 | | ORDER: Before the Court is its Order Resetting Trial Date and Related Deadlines 145 . Notwithstanding paragraph G of that Order and the deadlines set by the undersigned's Revised Practice Standards, all pretrial deliverables triggered by the date of the Final Trial Preparation Conference shall be filed no later than **Sunday, January 6, 2019**. SO ORDERED by Judge William J. Martinez on 01/02/2019. Text Only Entry (wjmlc1) (Entered: 01/02/2019) |
| 01/03/2019 | 150 | | NOTICE *of Rebuttal Expert* by Guy M. Jean−Pierre (Attachments: # 1 Exhibit Expert's Curriculum Vitae)(Barnard, Clifford) (Entered: 01/03/2019) |
| 01/06/2019 | 151 | | WITNESS LIST by USA as to Guy M. Jean−Pierre (Sibert, Jeremy) (Entered: 01/06/2019) |
| 01/06/2019 | 152 | 464 | Proposed Jury Instructions *Government* by USA as to Guy M. Jean−Pierre (Sibert, Jeremy) (Entered: 01/06/2019) |
| 01/06/2019 | 153 | | EXHIBIT LIST *Government* by USA as to Guy M. Jean−Pierre (Sibert, Jeremy) (Entered: 01/06/2019) |
| 01/06/2019 | 154 | | Proposed Voir Dire by USA as to Guy M. Jean−Pierre (Sibert, Jeremy) (Entered: 01/06/2019) |
| 01/06/2019 | 155 | | WITNESS LIST *of Defendant* by Guy M. Jean−Pierre (Barnard, Clifford) (Entered: 01/06/2019) |
| 01/06/2019 | 156 | 527 | Proposed Jury Instructions *by Defendant* by Guy M. Jean−Pierre (Barnard, Clifford) (Entered: 01/06/2019) |
| 01/07/2019 | 157 | | MOTION for Extension of Time to File *STIPULATED STATEMENT OF THE CASE AND VERDICT FORMS* by USA as to Guy M. Jean−Pierre. (Brown, Robert) (Entered: 01/07/2019) |
| 01/07/2019 | 158 | | ORDER: Before the Court is the Government's Motion to File Stipulated Statement of the Case and Verdict Forms Beyond the Time Limit Ordered by the Court 157 . The motion is GRANTED for good cause shown. The Government may file the specified documents no later than **3:00 PM today**. SO ORDERED by Judge William J. Martinez on 01/07/2019. Text Only Entry (wjmlc1) (Entered: 01/07/2019) |
| 01/07/2019 | 159 | | Proposed Verdict Form as to Guy M. Jean−Pierre (Brown, Robert) (Entered: 01/07/2019) |
| 01/07/2019 | 160 | 532 | STATEMENT *OF THE CASE* by Plaintiff USA (Brown, Robert) (Entered: 01/07/2019) |
| 01/07/2019 | 161 | 536 | Notice of Rule 404b by USA as to Guy M. Jean−Pierre *Government's response to defendant's notice to object to 404(b)* (Sibert, Jeremy) (Entered: 01/07/2019) |
| 01/07/2019 | 162 | | |

| | | | |
|---|---|---|---|
| | | | MOTION for Order *for Material Witness* by USA as to Guy M. Jean−Pierre. (Attachments: # 1 order)(Sibert, Jeremy) (Entered: 01/07/2019) |
| 01/07/2019 | 163 | 544 | Proposed Jury Instructions *(Objections to Government's Instructions)* by Guy M. Jean−Pierre (Barnard, Clifford) (Entered: 01/07/2019) |
| 01/08/2019 | 164 | 548 | *Defendant's Objections to Government's 404(b) Notice* (Attachments: # 1 Exhibit Government 404(b) Notice)(Goodreid, Thomas) (Entered: 01/08/2019) |
| 01/08/2019 | 165 | 557 | NOTICE *to Defendant's Objections to 404(b) evidence* by USA as to Guy M. Jean−Pierre (Sibert, Jeremy) (Entered: 01/08/2019) |
| 01/08/2019 | 166 | | ORDER as to **Guy M. Jean−Pierre (1)** granting Defendant Jean−Pierre's oral motion in open court this afternoon for the temporary release of his passport into the custody of counsel. The Defendant's Motion is GRANTED for good cause shown. The Clerk of Court is authorized to temporarily release the Defendant's passport in the name of Marcelo Dominguez de Guerra to the custody of Defendant's counsel, Clifford Barnard, for approximately 4 hours. Mr. Barnard is DIRECTED to return the passport to the Clerk of Court after accompanying the Defendant to the Colorado DMV. SO ORDERED by Judge William J. Martinez on 01/08/2019. Text Only Entry (wjmlc1) (Entered: 01/08/2019) |
| 01/08/2019 | 170 | | COURTROOM MINUTES for Final Trial Preparation Conference as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/8/2019. Granting 162 the United States' Motion for Material Witness. Defendant's bond is continued. Court Reporter: Mary George. (afran) (Entered: 01/09/2019) |
| 01/09/2019 | 167 | | Passport Receipt as to Guy M. Jean−Pierre. Returning passport to defendant per Order 166 ; Passport Number 511899888 issued by USA (rroge, ) (Entered: 01/09/2019) |
| 01/09/2019 | 168 | | ORDER as to Guy M. Jean−Pierre (1), by Judge William J. Martinez on 1/9/2019. (angar, ) (Entered: 01/09/2019) |
| 01/09/2019 | 169 | | Passport Receipt as to Guy M. Jean−Pierre. Return of passport re 166 Bond Conditions; Passport Number 511899888 issued by USA (rroge, ) (Entered: 01/09/2019) |
| 01/10/2019 | 171 | | Arrest Warrant for Material Witness Issued as to Cliffe Bodden by Judge William J. Martinez in case re: Guy M. Jean−Pierre. (afran) (Main Document 171 replaced on 1/10/2019) (afran, ). (Entered: 01/10/2019) |
| 01/11/2019 | 172 | | MOTION to Amend/Correct *Dates Alleged in Counts 12−16* by USA as to Guy M. Jean−Pierre. (Brown, Robert) (Entered: 01/11/2019) |
| 01/11/2019 | 173 | | ORDER as to **Guy M. Jean−Pierre (1)**: This matter is before the Court on the Government's Motion to Amend the Specific Dates Alleged in Counts 12−16 of the Second Superseding Indictment 172 . The Defendant is DIRECTED to file a Response to the Government's motion on or before **Sunday, January 13, 2019**. No Reply will be permitted. SO ORDERED by Judge William J. Martinez on 1/11/2019. Text Only Entry (wjmsec, ) (Entered: 01/11/2019) |
| 01/11/2019 | 174 | | EXHIBIT LIST *AMENDED* by USA as to Guy M. Jean−Pierre (Sibert, Jeremy) (Entered: 01/11/2019) |

| | | | |
|---|---|---|---|
| 01/11/2019 | 175 | | MOTION for Reconsideration *Time for Opening* by USA as to Guy M. Jean−Pierre. (Sibert, Jeremy) (Entered: 01/11/2019) |
| 01/11/2019 | 176 | 563 | Proposed Jury Instructions *AMENDED AND STIPULATED* by USA as to Guy M. Jean−Pierre (Sibert, Jeremy) (Entered: 01/11/2019) |
| 01/11/2019 | 177 | 624 | Proposed Jury Instructions *GOVERNMENT'S DISPUTED* by USA as to Guy M. Jean−Pierre (Brown, Robert) (Entered: 01/11/2019) |
| 01/11/2019 | 178 | 631 | Proposed Jury Instructions *Amended Objections to Govt Instructions* by Guy M. Jean−Pierre (Barnard, Clifford) (Entered: 01/11/2019) |
| 01/11/2019 | 179 | | ORDER as to Guy M. Jean−Pierre (1) granting in part the Government's Motion for Reconsideration Regarding Time for Opening 175 . The Government's Motion is GRANTED IN PART for good cause shown and in recognition of AUSA Sibert's dogged persistence on this point. Both the Government and the Defendant shall have up to 40 minutes for its or his opening statement. SO ORDERED by Judge William J. Martinez on 1/11/2019. Text Only Entry (wjmsec, ) (Entered: 01/11/2019) |
| 01/13/2019 | 180 | | NOTICE *of Withdrawal of Objection* re 172 MOTION to Amend/Correct *Dates Alleged in Counts 12−16* by Guy M. Jean−Pierre (Barnard, Clifford) (Entered: 01/13/2019) |
| 01/14/2019 | 181 | | COURTROOM MINUTES for Jury Trial Day 1 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/14/2019. ORDERED: With the exception of expert witnesses, witnesses shall be excluded from the courtroom until called to testify pursuant to Rule 615, as stated on the record. Jury selection. Evidence entered. Trial continued. Defendant continued on bond. Court Reporter: Mary George. (afran) (Entered: 01/14/2019) |
| 01/14/2019 | 182 | 649 | STIPULATION AND ORDER Regarding Custody of Original Exhibits as to Guy M. Jean−Pierre. Entered by Judge William J. Martinez on 1/14/2019. (afran) (Entered: 01/14/2019) |
| 01/14/2019 | 183 | | Random Jury List, Clerk's Copy. Restricted Doc. − Level 4 (afran) (Entered: 01/14/2019) |
| 01/14/2019 | 185 | 653 | AMENDED 181 COURTROOM MINUTES for Jury Trial Day 1 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/14/2019. ORDERED: With the exception of expert witnesses, witnesses shall be excluded from the courtroom until called to testify pursuant to Rule 615, as stated on the record. Government's Motion to Amend the Specific Dates Alleged in Counts 12−16 of the Second Superseding Indictment 172 is granted. Jury selection. Evidence entered. Trial continued. Defendant continued on bond. Court Reporter: Mary George. Minutes amended to reflect the Court's ruling on 172 . Court Reporter: Mary George. (lrobe) (Entered: 01/16/2019) |
| 01/15/2019 | 184 | 650 | COURTROOM MINUTES for Jury Trial Day 2 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/15/2019. ORDERED: Defendant's Objections to Government's Intent to Introduce Certain Evidence Under Federal Rule of Evidence 404(b) Notice 164 is overruled in part, as stated on the record. Evidence entered. Trial continued. Defendant continued on bond. Court Reporter: Mary George. (afran) (Entered: 01/15/2019) |

| | | | |
|---|---|---|---|
| 01/16/2019 | 186 | 657 | COURTROOM MINUTES for Jury Trial Day 3 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/16/2019. Evidence entered. Trial continued. Defendant continued on bond. Court Reporter: Mary George. (afran) Modified on 1/16/2019 to correct docket text.(afran). (Entered: 01/16/2019) |
| 01/16/2019 | 187 | 660 | MOTION for Reconsideration *OF ADMISSION OF GOVERNMENT'S EXHIBIT #446* by Guy M. Jean−Pierre. (Goodreid, Thomas) (Entered: 01/16/2019) |
| 01/17/2019 | 188 | 666 | EXHIBIT LIST *AMENDED* by USA as to Guy M. Jean−Pierre (Sibert, Jeremy) (Entered: 01/17/2019) |
| 01/17/2019 | 189 | 738 | COURTROOM MINUTES for Jury Trial Day 4 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/17/2019. ORDERED: Government will have until Sunday, January 20, 2019 to respond to Defendant's Motion for Reconsideration of Admission of Government's Exhibit No. 446 187 . Evidence entered. Trial continued. Defendant continued on bond. Court Reporter: Mary George. (afran) (Entered: 01/17/2019) |
| 01/18/2019 | 190 | 741 | COURTROOM MINUTES for Jury Trial Day 5 as to Guy M. Jean−Pierre held before Judge William J. Martinez 1/18/2019. Evidence entered. Trial continued. Defendant continued on bond. Court Reporter: Mary George. (afran) (Entered: 01/18/2019) |
| 01/20/2019 | 191 | 744 | BRIEF in Opposition by USA as to Guy M. Jean−Pierre to 187 MOTION for Reconsideration *OF ADMISSION OF GOVERNMENT'S EXHIBIT #446* (Brown, Robert) (Entered: 01/20/2019) |
| 01/22/2019 | 192 | 753 | COURTROOM MINUTES for Jury Trial Day 6 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/22/2019. ORDERED: Defendant's Motion for Reconsideration of Admission of Government's Exhibit #446 187 is granted. Evidence entered. Trial continued. Defendant continued on bond. Court Reporter: Mary George. (afran) (Entered: 01/22/2019) |
| 01/23/2019 | 193 | 756 | COURTROOM MINUTES for Jury Trial Day 7 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/23/2019. Evidence entered. Trial continued. Defendant continued on bond. Court Reporter: Mary George. (afran) (Entered: 01/23/2019) |
| 01/24/2019 | 194 | | ORDER: This matter is before the Court *sua sponte*, in anticipation of Rule 29 motion practice. Due to the number of counts, the date−specific nature of most counts, the complexity of the various elements and legal theories, the complexity of the evidence, and the constrained time in which courtroom proceedings must conclude, the Court requires from the Government, no later than **Monday, January 28, 2019, at 7:30 a.m., MST**, an outline of the evidence introduced thus far in the Government's case, as well the evidence it anticipates will come in this Monday, that the Government believes supports each element of each count (excluding the interstate nexus element). This outline need not be a comprehensive catalog of all evidence potentially supporting each element and need not cite to specific testimony. Rather, it may refer generally to the witness who provided salient testimony, and/or to the most salient exhibits, *e.g.*, "Count 2, Element 1: Testimony of [*witness name*] and [*most salient exhibit(s)*]." SO ORDERED by Judge William J. Martinez on 01/24/2019. Text Only Entry (wjmlc1) (Entered: 01/24/2019) |

| | | | |
|---|---|---|---|
| 01/24/2019 | 195 | 759 | COURTROOM MINUTES for Jury Trial Day 8 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/24/2019. Evidence entered. Trial continued. Defendant continued on bond. Court Reporter: Mary George. (afran) (Entered: 01/24/2019) |
| 01/25/2019 | 196 | | **DISREGARD** MOTION for Arrest Warrant , MOTION to Quash by USA as to Guy M. Jean−Pierre. (Attachments: # 1 Proposed Order (PDF Only))(Sibert, Jeremy) Modified on 1/25/2019 to disregard − Filed in wrong case (angar, ). (Entered: 01/25/2019) |
| 01/25/2019 | 197 | | MOTION for Order *TO WITHDRAW MATERIAL WITNESS WARRANT* by USA as to Guy M. Jean−Pierre. (Attachments: # 1 Proposed Order (PDF Only))(Sibert, Jeremy) (Entered: 01/25/2019) |
| 01/25/2019 | 198 | | ORDER re: 197 as to Guy M. Jean−Pierre (1), by Judge William J. Martinez on 1/25/2019. (angar, ) (Entered: 01/25/2019) |
| 01/25/2019 | 199 | 762 | COURTROOM MINUTES for Jury Trial Day 9 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/25/2019. Evidence entered. Trial continued. Defendant continued on bond. Court Reporter: Mary George. (afran) (Entered: 01/25/2019) |
| 01/27/2019 | 200 | 765 | Proposed Jury Instructions *Second Amended Stipulated* by USA as to Guy M. Jean−Pierre (Attachments: # 1 Exhibit Instruction 25, # 2 Exhibit Instruction 26, # 3 Exhibit Instruction 28, # 4 Exhibit Instruction 33)(Brown, Robert) (Entered: 01/27/2019) |
| 01/27/2019 | 201 | 773 | Proposed Jury Instructions *Amended Disputed Inst. 29, 32* by USA as to Guy M. Jean−Pierre (Attachments: # 1 Exhibit Amended Disputed Inst. 29, 32)(Brown, Robert) (Entered: 01/27/2019) |
| 01/27/2019 | 202 | 783 | Proposed Jury Instructions *2nd Amended Disputed Instruction 32* by Guy M. Jean−Pierre (Barnard, Clifford) (Entered: 01/27/2019) |
| 01/28/2019 | 203 | 788 | COURTROOM MINUTES for Jury Trial Day 10 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/28/2019. ORDERED: Defendant's oral Motion for Judgment of Acquittal under Fed. R. Crim. P. 29(a) is granted in part and denied in part, as stated on the record. Evidence entered. Trial continued. Defendant continued on bond. Court Reporter: Mary George. (afran) (Entered: 01/29/2019) |
| 01/29/2019 | 204 | 791 | COURTROOM MINUTES for Jury Trial Day 11 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/29/2019. Evidence entered. Defendant rests. Charging conference. Trial continued. Court Reporter: Mary George. (afran) (Entered: 01/29/2019) |
| 01/30/2019 | 205 | | ORDER as to Guy M. Jean−Pierre, by Judge William J. Martinez on 1/30/2019. (angar, ) (Entered: 01/30/2019) |
| 01/30/2019 | 206 | 793 | COURTROOM MINUTES for Jury Trial Day 12 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/30/2019. ORDERED: Jury lunches will be provided throughout deliberations beginning January 30, 2019. Jury Verdict as to Guy M. Jean−Pierre Guilty on Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28 and 29 of the Second Superseding Indictment. Not Guilty on Count 12 of the Second Superseding Indictment. ORDERED: Sentencing set for 7/10/2019 at 9:30 AM |

| | | | |
|---|---|---|---|
| | | | in Courtroom A 801 before Judge William J. Martinez. Court Reporter: Mary George. (afran) (Entered: 01/31/2019) |
| 01/30/2019 | 207 | 795 | Government's EXHIBIT LIST as to Guy M. Jean−Pierre (afran) (Entered: 02/01/2019) |
| 01/30/2019 | 208 | 867 | Jury Instructions as to Guy M. Jean−Pierre (afran) (Entered: 02/01/2019) |
| 01/30/2019 | 209 | | Jury Note Redacted as to Guy M. Jean−Pierre (afran) (Entered: 02/01/2019) |
| 01/30/2019 | 210 | | Jury Note − Unredacted − Restricted Doc. − Level 4 (afran) (Entered: 02/01/2019) |
| 01/30/2019 | 211 | 944 | Jury Note (Verdict) Redacted as to Guy M. Jean−Pierre (afran) (Entered: 02/01/2019) |
| 01/30/2019 | 212 | | Jury Note (Verdict) − Unredacted − Restricted Doc. − Level 4 (afran) (Entered: 02/01/2019) |
| 01/30/2019 | 213 | 945 | JURY VERDICT as to Guy M. Jean−Pierre (afran) (Entered: 02/01/2019) |
| 01/30/2019 | 214 | | Jury Verdict Un−Redacted − Level 4 − Viewable by Court Only (afran) (Entered: 02/01/2019) |
| 01/30/2019 | 215 | 948 | AMENDED 206 COURTROOM MINUTES for Jury Trial Day 12 as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/30/2019. Minutes amended as highlighted. Court Reporter: Mary George. (afran) (Entered: 02/04/2019) |
| 02/13/2019 | 216 | 950 | STATEMENT *Post Trial* by Plaintiff USA (Sibert, Jeremy) (Entered: 02/13/2019) |
| 02/19/2019 | 217 | | SENTENCING STATEMENT *Amended to include Guideline calculation* by USA as to Guy M. Jean−Pierre (Sibert, Jeremy) (Entered: 02/19/2019) |
| 02/25/2019 | 218 | | Unopposed MOTION for Order *for Temporary Release of Passport* by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 02/25/2019) |
| 02/26/2019 | 219 | | ORDER as to **Guy M. Jean−Pierre (1)** granting Defendant Jean−Pierre's Unopposed Motion for the Temporary Release of Passport to Custody of Undersigned Counsel 218 . The Defendant's Motion is GRANTED for good cause shown. The Clerk of Court is authorized to temporarily release the Defendant's passport in the name of Marcelo Dominguez de Guerra to the custody of Defendant's counsel, Clifford Barnard, for approximately 4 hours. Mr. Barnard is DIRECTED to return the passport to the Clerk of Court after accompanying the Defendant to the Colorado DMV. SO ORDERED by Judge William J. Martinez on 2/26/2019. Text Only Entry (wjmsec, ) (Entered: 02/26/2019) |
| 02/28/2019 | 220 | | Passport Receipt as to Guy M. Jean−Pierre. Returning passport to defendant per order 219 ; Passport Number 511899888 issued by USA (rroge, ) (Entered: 02/28/2019) |
| 02/28/2019 | 221 | | Passport Receipt as to Guy M. Jean−Pierre. Surrender of passport re 219 Bond Conditions; Passport Number 511899888 issued by USA (rroge, ) (Entered: 02/28/2019) |

| | | | |
|---|---|---|---|
| 03/05/2019 | 222 | | SENTENCING STATEMENT by Guy M. Jean−Pierre (Barnard, Clifford) (Entered: 03/05/2019) |
| 04/03/2019 | 223 | | Unopposed MOTION for Order *for Temporary Revoval of GPS Device* by Guy M. Jean−Pierre. (Attachments: # 1 Exhibit MRI Referral)(Barnard, Clifford) (Entered: 04/03/2019) |
| 04/03/2019 | 224 | | ORDER as to **Guy M. Jean−Pierre (1)** granting Defendant Jean−Pierre's Unopposed Motion for Temporary Removal of his GPS Monitoring Device 223 . Defendant's Motion is GRANTED for good cause shown. The Defendant is authorized to have his GPS monitoring device removed for his MRI procedure scheduled for April 5, 2019. The removal of the GPS monitoring device is limited solely to the time necessary for Defendant's MRI procedure, and the removal and replacement of the device shall be coordinated with the U.S. Probation Office. SO ORDERED by Judge William J. Martinez on 04/03/2019. Text Only Entry (wjmlc1) Modified on 4/3/2019 to correct text (angar, ). (Entered: 04/03/2019) |
| 06/04/2019 | 225 | | RESTRICTED PRESENTENCE REPORT first disclosure for attorney review as to Guy M. Jean−Pierre (Attachments: # 1 Exhibit A, # 2 Exhibit B)(ntaka) (Entered: 06/04/2019) |
| 06/19/2019 | 226 | | OBJECTION/RESPONSE to Presentence Report 225 by Guy M. Jean−Pierre (Barnard, Clifford) (Entered: 06/19/2019) |
| 06/20/2019 | 227 | | ORDER as to **Guy M. Jean−Pierre (1)**: This matter is before the Court on Defendant Jean−Pierre's Objections, Corrections, and Additions to the Presentence Investigation Report (ECF #225) 226 . The Government is DIRECTED to file a Response to Defendant's Objections on or before **July 2, 2019**. No Reply will be permitted. SO ORDERED by Judge William J. Martinez on 6/20/2019. Text Only Entry (wjmsec, ) (Entered: 06/20/2019) |
| 06/26/2019 | 228 | | RESTRICTED PRESENTENCE REPORT as to Guy M. Jean−Pierre (Attachments: # 1 Exhibit A, # 2 Exhibit B)(ntaka) (Entered: 06/26/2019) |
| 06/26/2019 | 229 | | RESTRICTED ADDENDUM to Presentence Report 228 as to Guy M. Jean−Pierre (ntaka) (Entered: 06/26/2019) |
| 06/26/2019 | 230 | | MOTION for Non−Guideline Sentence by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 06/26/2019) |
| 06/27/2019 | 231 | | RESTRICTED SECOND ADDENDUM to Presentence Report 228 as to Guy M. Jean−Pierre (Attachments: # 1 Exhibit A)(ntaka) (Entered: 06/27/2019) |
| 06/28/2019 | 232 | | ORDER as to **Guy M. Jean−Pierre (1)**: This matter is before the Court *sua sponte*. Due to a conflict with a criminal jury trial the week of July 8, 2019, the Sentencing Hearing set for July 10, 2019 at 9:30 a.m. is hereby **VACATED and RESET to October 30, 2019 at 9:30 a.m.** in Courtroom A801. Counsel are directed to this Court's Revised Practice Standards with regard to the deadlines for filing sentencing−related motions. by Judge William J. Martinez on 6/28/2019. Text Only Entry (wjmsec, ) (Entered: 06/28/2019) |
| 06/28/2019 | 233 | | ORDER as to **Guy M. Jean−Pierre (1)**: This matter is before the Court on Defendant Jean−Pierre's Motion for Below−Guidelines Sentence 230 . The Government is DIRECTED to file a Response to Defendant's Motion on or before **August 2, 2019**. No Reply will be permitted. SO ORDERED by Judge |

| | | | |
|---|---|---|---|
| | | | William J. Martinez on 6/28/2019. Text Only Entry (wjmsec, ) (Entered: 06/28/2019) |
| 07/01/2019 | 234 | | ORDER as to **Guy M. Jean−Pierre (1)**: This matter is before the Court upon the entry of the Court's Order resetting the Defendant's Sentencing Hearing for October 30, 2019 (ECF No. 232). The deadline for the Government to file its Response to Defendant's Objections, Corrections, and Additions to the Presentence Investigation Report (ECF No. 226 ) is extended up to and including **August 7, 2019**. No reply will be permitted. SO ORDERED by Judge William J. Martinez on 7/1/2019. Text Only Entry (wjmsec, ) (Entered: 07/01/2019) |
| 07/12/2019 | 235 | | Partial TRANSCRIPT of Testimony of William Sears, Volume I as to Guy M. Jean−Pierre held on January 14, 2019 before Judge Martinez. Pages: 1−44. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 07/12/2019) |
| 07/12/2019 | 236 | | TRANSCRIPT of Testimony of William Sears, Volume II as to Guy M. Jean−Pierre held on January 15, 2019 before Judge Martinez. Pages: 45−285. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 07/12/2019) |
| 07/12/2019 | 237 | | TRANSCRIPT of Testimony of William Sears, Volume III as to Guy M. Jean−Pierre held on January 16, 2019 before Judge Martinez. Pages: 286−468. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 07/12/2019) |

| | | | |
|---|---|---|---|
| 07/12/2019 | 238 | | TRANSCRIPT of Testimony of Scott Dittman, Volume I as to Guy M. Jean−Pierre held on January 16, 2019 before Judge Martinez. Pages: 1−24. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 07/12/2019) |
| 07/12/2019 | 239 | | TRANSCRIPT of Testimony of Scott Dittman, Volume II as to Guy M. Jean−Pierre held on January 17, 2019 before Judge Martinez. Pages: 25−245. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 07/12/2019) |
| 08/01/2019 | 240 | | MOTION for Leave to File by USA as to Guy M. Jean−Pierre. (Sibert, Jeremy) (Entered: 08/01/2019) |
| 08/02/2019 | 241 | | ORDER as to **Guy Jean−Pierre (1)** granting the Government's Motion Requesting Leave to File a Motion in Excess of Page Limitation 240 . The Government's Motion is GRANTED for good cause shown. The Government's Responses to the Defendant's Objections to the Presentence Investigation Report 226 and Motion for Below−Guidelines Sentence 230 shall not to exceed 25 pages in length, exclusive of attorney signature block and certificate of service. SO ORDERED by Judge William J. Martinez on 8/2/2019. Text Only Entry (wjmsec, ) (Entered: 08/02/2019) |
| 08/02/2019 | 242 | | RESPONSE in Opposition by USA as to Guy M. Jean−Pierre re 230 MOTION for Non−Guideline Sentence (Sibert, Jeremy) (Entered: 08/02/2019) |
| 08/02/2019 | 243 | | RESPONSE by USA as to Guy M. Jean−Pierre *to Defendant's objections to PSR* (Sibert, Jeremy) (Entered: 08/02/2019) |
| 10/01/2019 | 244 | | ORDER as to **Guy M. Jean−Pierre (1)**: This matter comes before the Court *sua sponte*. The undersigned will be out of the office the week of October 28, 2019, and as a result the Sentencing Hearing currently set for October 30, 2019 at 9:30 a.m. is hereby **VACATED and RESET to January 22, 2020 at 9:30 a.m.** in Courtroom A801. Counsel are directed to this Court's Revised Practice Standards to ensure compliance with regard to the deadlines for filing sentencing−related motions. SO ORDERED by Judge William J. Martinez on 10/1/2019. Text Only Entry (wjmsec, ) (Entered: 10/01/2019) |

| | | | |
|---|---|---|---|
| 10/02/2019 | 245 | | NOTICE OF ATTORNEY APPEARANCE Tonya Shotwell Andrews appearing for USA. Attorney Tonya Shotwell Andrews added to party USA(pty:pla) (Andrews, Tonya) (Entered: 10/02/2019) |
| 10/02/2019 | 246 | | MOTION for Forfeiture of Property *for a Personal Money Judgment* by USA as to Guy M. Jean−Pierre. (Attachments: # 1 Proposed Order (PDF Only))(Andrews, Tonya) (Entered: 10/02/2019) |
| 10/09/2019 | 247 | | ORDER as to **Guy M. Jean−Pierre (1)**: This matter is before the Court upon the resetting of Defendant William Sears' sentencing hearing in Case No. 16−cr−301−WJM−1. In order to keep the sentencing hearings for the Defendants in these related matters at or near the same time of each other, Defendant Jean−Pierre's Sentencing Hearing set for January 22, 2020 at 9:30 a.m. is hereby **VACATED and RESET to January 29, 2020 at 9:30 a.m.** in Courtroom A801. Counsel are directed to this Court's Revised Practice Standards with regard to the deadlines for filing sentencing−related motions. SO ORDERED by Judge William J. Martinez on 10/9/2019. Text Only Entry (wjmsec, ) (Entered: 10/09/2019) |
| 10/09/2019 | 248 | | Preliminary ORDER of Forfeiture for a Personal Money Judgment against Defendant as to Guy M. Jean−Pierre (1). ORDERED by Judge William J. Martinez on 10/9/2019. (angar, ) (Entered: 10/09/2019) |
| 10/16/2019 | 249 | | RESTRICTED THIRD ADDENDUM to Presentence Report 228 as to Guy M. Jean−Pierre (Attachments: # 1 Exhibit A)(ntaka) (Entered: 10/16/2019) |
| 11/16/2019 | 250 | | MOTION to Modify Conditions of Release *(Opposed)* by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 11/16/2019) |
| 11/18/2019 | 251 | | MEMORANDUM regarding 250 MOTION to Modify Conditions of Release *(Opposed)* filed by Guy M. Jean−Pierre. Motion(s) referred to Magistrate Judge Nina Y. Wang. by Judge William J. Martinez on 11/18/2019. Text Only Entry (wjmsec, ) (Entered: 11/18/2019) |
| 11/18/2019 | 252 | | MINUTE ORDER re 250 MOTION to Modify Conditions of Release by Magistrate Judge Nina Y. Wang on 11/18/2019. The Government shall file a Response, if any, on or before 11/22/2019. Text Only Entry (nywlc1, ) (Entered: 11/18/2019) |
| 11/25/2019 | 253 | | ORDER by Magistrate Judge Nina Y. Wang on 11/25/2019. Pending before this court is Defendant Jean−Pierre's Opposed Motion to Modify Conditions of Release 250 in which he seeks to modify the conditions of his release to eliminate the requirement of a GPS monitor and residing in a halfway house prior to his sentencing. Because Mr. Jean−Pierre has been convicted but awaits sentencing on January 29, 2020 before the Honorable William J. Martinez, 18 U.S.C. 3143(a) governs his request. This court ordered the Government to respond in writing no later than November 22, 2019, but no response has been filed. Accordingly, this court SETS this Motion for a hearing on December 4, 2019 at 1:30 p.m. before Magistrate Judge Nina Y. Wang in Courtroom A502. **Counsel and Defendant Jean−Pierre are ORDERED to appear in person.** Text Only Entry (bwilk, ) (Entered: 11/25/2019) |
| 12/02/2019 | 254 | | **STRICKEN** − RESPONSE in Opposition by USA as to Guy M. Jean−Pierre re 250 MOTION to Modify Conditions of Release *(Opposed)* (Sibert, Jeremy) Modified on 12/5/2019 to strike pursuant to 255 Order. (nmarb, ). (Entered: |

| | | | |
|---|---|---|---|
| | | | 12/02/2019) |
| 12/02/2019 | 255 | | ORDER STRIKING 254 Response in Opposition filed by USA as untimely and non−compliant by Magistrate Judge Nina Y. Wang on 12/2/2019. To the extent that the Government seeks to respond out of time in writing, it should file a Motion for Leave to File Out of Time. And to the extent that the Government seeks to detain Mr. Jean−Pierre pending his sentencing, it should file a separate motion as contemplated by D.COLO.LCrR 12.2. Text Only Entry (nywlc1, ) (Entered: 12/02/2019) |
| 12/02/2019 | 256 | | MOTION for Leave to File *Out of Time* by USA as to Guy M. Jean−Pierre. (Sibert, Jeremy) (Entered: 12/02/2019) |
| 12/02/2019 | 257 | | MEMORANDUM regarding 256 MOTION for Leave to File *Out of Time* filed by USA. Motion(s) referred to Magistrate Judge Nina Y. Wang. by Judge William J. Martinez on 12/2/2019. Text Only Entry (wjmsec, ) (Entered: 12/02/2019) |
| 12/02/2019 | 258 | | MINUTE ORDER by Magistrate Judge Nina Y. Wang on 12/2/2019. Pending before the court is the United States' Motion for Leave of the Court to File Untimely Response to Defendant's Motion to Modify Conditions of Release [Doc. 250] 256 . In the Motion, the Government seeks to file its Opposition to the Defendant's Motion to Modify Conditions of Release out of time as well as re−set the hearing on the Motion to Modify Conditions of Release from December 4, 2019 to December 17, 2019. There is no indication whether counsel for the Government has conferred with counsel for Defendant on its request to re−set the hearing until December 17, 2019 or what Defendant's position with respect to the request is. In addition, the court notes that to the extent that it re−sets the hearing until December 17, 2019, the Defendant's Motion to Modify Conditions of Release will have been pending for over a month. Accordingly, IT IS ORDERED that the United States' Motion 256 is GRANTED IN PART and DENIED IN PART. The court grants leave for the Government to file its Response in Opposition to Defendant's Motion to Modify Conditions of Release and VACATES the hearing set for December 5, 2019 at 1:30 p.m. Counsel for the Government and for Defendant are DIRECTED TO CONTACT the chambers of Magistrate Judge Nina Y. Wang at (303) 335−2600, together on one line, before the close of business December 3, 2019, to RE−SET the hearing, preferably in the afternoon during this court's criminal calendar between December 9−11, 2019. Text Only Entry (bwilk, ) (Entered: 12/02/2019) |
| 12/03/2019 | 259 | | RESPONSE in Opposition by USA as to Guy M. Jean−Pierre re 250 MOTION to Modify Conditions of Release *(Opposed)* (Sibert, Jeremy) (Entered: 12/03/2019) |
| 12/03/2019 | 260 | | MINUTE ORDER as to Guy M. Jean−Pierre by Magistrate Judge Nina Y. Wang on 12/3/2019. Pursuant to the Parties' telephonic communication with chambers, the Motion Hearing re 250 MOTION to Modify Conditions of Release *(Opposed)* filed by Guy M. Jean−Pierre is RESET for 12/9/2019 02:00 PM in Courtroom A 502 before Magistrate Judge Nina Y. Wang. Text Only Entry (nywlc2, ) (Entered: 12/03/2019) |
| 12/09/2019 | 261 | | COURTROOM MINUTES for Motion Hearing as to Guy M. Jean−Pierre held on 12/9/2019 before Magistrate Judge Nina Y. Wang. Defendant present on |

| | | | |
|---|---|---|---|
| | | | bond. Defendant requests to continue this hearing for two weeks. There has been a significant changes of circumstance. Defendant is on bond in a Denver case. The court DENIES the Motion to Modify Conditions of Release as to Guy M. Jean−Pierre 250 without prejudice. If appropriate, Defendant may file another motion. Defendants bond continues. (Total time: 3 minutes, Hearing time: 2:45−2:48)<br><br>**APPEARANCES**: Jeremy Sibert on behalf of the Government, Clifford Barnard on behalf of the defendant, Carlos Morales on behalf of probation. FTR: Courtroom A−502. (bwilk, ) Text Only Entry (Entered: 12/10/2019) |
| 01/21/2020 | 262 | | RESTRICTED FOURTH ADDENDUM to Presentence Report 228 as to Guy M. Jean−Pierre (ntaka) (Entered: 01/21/2020) |
| 01/24/2020 | 263 | | NOTICE *of Government's Alternative Loss Calculation* by USA as to Guy M. Jean−Pierre (Attachments: # 1 Exhibit)(Sibert, Jeremy) (Entered: 01/24/2020) |
| 01/29/2020 | 264 | | RESTRICTED REVISED PRESENTENCE REPORT as to Guy M. Jean−Pierre (Attachments: # 1 Exhibit A, # 2 Exhibit B)(ntaka) (Entered: 01/29/2020) |
| 01/29/2020 | 265 | | COURTROOM MINUTES for Sentencing Hearing as to Guy M. Jean−Pierre held before Judge William J. Martinez on 1/29/2020. Granting in part and denying in part 230 The Defendant Jean−Pierre's Motion for Below−Guidelines Sentence. Defendant sentenced as reflected on the record. Defendant's bond is continued. Court Reporter: Mary George. (afran) (Entered: 01/29/2020) |
| 02/03/2020 | 266 | 970 | JUDGMENT as to defendant Guy M. Jean−Pierre. Counts 1−11 and 13−29 of the Second Superseding Indictment: Defendant sentenced to a term of imprisonment of 60 months as to Count 1 and 84 months as to each of Counts 2−11 and 13−29, all Counts to run concurrent. 3 years of supervised release as to all Counts, to run concurrent. $2,800 special assessment fee. Count 12 of the Second Superseding Indictment: Acquitted. Entered by Judge William J. Martinez on 2/3/2020. (afran) (Entered: 02/03/2020) |
| 02/03/2020 | 267 | | STATEMENT OF REASONS as to Guy M. Jean−Pierre. (afran) (Entered: 02/03/2020) |
| 02/05/2020 | 268 | | Passport Receipt as to Guy M. Jean−Pierre. Forwarding passport to Dept. of State pursuant to 266 Judgment. Passport Number 421262959 issued by United States of America. (Attachments: # 1 Certified Mail Receipt) (afran) (Entered: 02/05/2020) |
| 02/05/2020 | 269 | | Passport Receipt as to Guy M. Jean−Pierre. Forwarding passport to Dept. of State pursuant to 266 Judgment. Passport Number 511899888 issued by United States of America. (Attachments: # 1 Certified Mail Receipt) (afran) (Entered: 02/05/2020) |
| 02/10/2020 | 270 | | ORDER to Surrender as to Guy M. Jean−Pierre; Defendant to surrender to FCI Englewood Satellite Prison Camp, 9595 West Quincy Avenue on March 4, 2020 by 12:00 p.m. and will travel at their own expense, by Judge William J. Martinez on 2/10/2020. (angar, ) (Entered: 02/10/2020) |
| 02/11/2020 | 271 | 978 | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF APPEAL as to 266 Judgment, *and Conviction* by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 02/11/2020) |
| 02/12/2020 | 272 | | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 271 Notice of Appeal as to Guy M. Jean−Pierre to the U.S. Court of Appeals. ( CJA,) (Attachments: # 1 Preliminary Record and Docket Sheet)(angar, ) (Entered: 02/12/2020) |
| 02/12/2020 | 273 | | USCA Case Number as to Guy M. Jean−Pierre 20−1039 for 271 Notice of Appeal filed by Guy M. Jean−Pierre. (angar, ) (Entered: 02/13/2020) |
| 02/14/2020 | 274 | | TRANSCRIPT ORDER FORM re 271 Notice of Appeal by Guy M. Jean−Pierre. (Barnard, Clifford) (Entered: 02/14/2020) |
| 02/17/2020 | 275 | | DESIGNATION OF RECORD ON APPEAL re 271 Notice of Appeal by Guy M. Jean−Pierre. (Attachments: # 1 Docket Sheet)(Barnard, Clifford) (Entered: 02/17/2020) |
| 02/18/2020 | 276 | | Certified Receipt for 269 Passport as to Guy M. Jean−Pierre (angar, ) (Entered: 02/19/2020) |
| 02/19/2020 | 277 | | ORDER of USCA as to Guy M. Jean−Pierre re 271 Notice of Appeal. (USCA Case No. 20−1039) (angar, ) (Entered: 02/20/2020) |
| 02/27/2020 | 278 | | REPORTER TRANSCRIPT ORDER FORM filed by Mary George re 271 Notice of Appeal. Transcript due by 3/27/2020. (nrich) (Entered: 02/27/2020) |
| 03/10/2020 | 279 | | DESIGNATION OF RECORD ON APPEAL re 271 Notice of Appeal by Guy M. Jean−Pierre. (Attachments: # 1 Docket Sheet)(Hayes, Megan) (Entered: 03/10/2020) |
| 03/24/2020 | 280 | | TRANSCRIPT of Final Trial Preparation Conference as to Guy M. Jean−Pierre held on January 8, 2019 before Judge Martinez. Pages: 1−56. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/24/2020) |
| 03/27/2020 | 281 | | TRANSCRIPT of Jury Trial, Day 1, Volume 1 as to Guy M. Jean−Pierre held on January 14, 2019 before Judge Martinez. Pages: 1−80. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased |

| | | | |
|---|---|---|---|
| | | | through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/27/2020) |
| 03/27/2020 | 282 | | TRANSCRIPT of Jury Trial, Day 2, Volume 2 as to Guy M. Jean−Pierre held on January 15, 2019 before Judge Martinez. Pages: 81−351. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/27/2020) |
| 03/27/2020 | 283 | | TRANSCRIPT of Jury Trial, Day 3, Volume 3 as to Guy M. Jean−Pierre held on January 16, 2019 before Judge Martinez. Pages: 352−583. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/27/2020) |
| 03/27/2020 | 284 | | TRANSCRIPT of Jury Trial, Day 4, Volume 4 as to Guy M. Jean−Pierre held on January 17, 2019 before Judge Martinez. Pages: 584−835. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/27/2020) |
| 03/27/2020 | 285 | | RESTRICTED TRANSCRIPT of proceedings held on January 17, 2019 before Judge Martinez. Pages: 804−809. (mgeor, ) (Entered: 03/27/2020) |
| 03/27/2020 | 286 | | TRANSCRIPT of Jury Trial, Day 5, Volume 5 as to Guy M. Jean−Pierre held on January 18, 2019 before Judge Martinez. Pages: 836−1092. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic** |

| | | | |
|---|---|---|---|
| | | | **Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/27/2020) |
| 03/27/2020 | 287 | | TRANSCRIPT of Jury Trial, Day 6, Volume 6 as to Guy M. Jean−Pierre held on January 22, 2019 before Judge Martinez. Pages: 1093−1344. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/27/2020) |
| 03/27/2020 | 288 | | TRANSCRIPT of Jury Trial, Day 7, Volume 7 as to Guy M. Jean−Pierre held on January 23, 2019 before Judge Martinez. Pages: 1345−1613. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/27/2020) |
| 03/27/2020 | 289 | | TRANSCRIPT of Jury Trial, Day 8, Volume 8 as to Guy M. Jean−Pierre held on January 24, 2019 before Judge Martinez. Pages: 1614−1854. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/27/2020) |
| 03/27/2020 | 290 | | TRANSCRIPT of Jury Trial, Day 9, Volume 9 as to Guy M. Jean−Pierre held on January 25, 2019 before Judge Martinez. Pages: 1855−2098. <br>**<br> NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> |

| | | | |
|---|---|---|---|
| | | | Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/27/2020) |
| 03/27/2020 | 291 | | TRANSCRIPT of Jury Trial, Day 10, Volume 10 as to Guy M. Jean−Pierre held on January 28, 2019 before Judge Martinez. Pages: 2099−2364. <br>**<br>** **NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/27/2020) |
| 03/27/2020 | 292 | | TRANSCRIPT of Jury Trial, Day 11, Volume 11 as to Guy M. Jean−Pierre held on January 29, 2019 before Judge Martinez. Pages: 2365−2508. <br>**<br>** **NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/27/2020) |
| 03/27/2020 | 293 | | TRANSCRIPT of Jury Trial, Day 12, Volume 12 as to Guy M. Jean−Pierre held on January 30, 2019 before Judge Martinez. Pages: 2509−2588. <br>**<br>** **NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.<br>**<br> Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (mgeor, ) (Entered: 03/27/2020) |

Case 1:17-cr-00008-WJM Document 86 Filed 04/16/18 Page 1 of 29

**FINAL LIST OF PROPOSED EXHIBITS**

CASE NO. 17-cr-00008-WJM PLAINTIFF'S LIST_____ DEFENDANT'S LIST: X THIRD PTY DEFTS. LIST_____

CASE CAPTION: U.S.A. vs. Guy Jean-Pierre DATE: April 16, 2018

LIST PLAINTIFF'S EXHIBITS BY NUMBERS (1, 2, 3, etc.) and DEFENDANT'S BY LETTER (A, B, C, etc.)

| EXHIBIT NO. / LTR | WITN ESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD. | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| A | | GEO Group “Resident Account Summary” | | | | | | | ECF # 71-1 |
| B | | Declaration of Marcelo Dominguez de Guerra | | | | | | | ECF # 71-2 |
| C | | Independent House “Client Handbook” | | | | | | | ECF # 74-1 |
| D | | U.S. Bureau of Labor Statistics Colorado Unemployment Rate | | | | | | | ECF # 74-2 |

Case 1:17-cr-00008-WJM Document 86 Filed 04/16/18 Page 2 of 29

| EXHIBIT NO. / LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD. | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.17-cr-00008-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE**,

Defendant.

---

**DEFENDANT JEAN-PIERRE'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH OF HP LAPTOP**

---

THE DEFENDANT, GUY M. JEAN-PIERRE, by and through his attorney, Clifford J. Barnard, hereby moves this Court to enter an order suppressing all evidence obtained through the search and seizure by law enforcement agents of the HP Laptop (Serial # CND01818BD) pursuant to a search warrant. As grounds for this motion, Mr. Jean-Pierre states as follows:

**1. Summary of the Argument**

Mr. Jean-Pierre moves to suppress the fruits of the HP Laptop search based on the following grounds:

a. *Attachment B* to the *Search and Seizure Warrant* did not list with sufficient particularity all of the items within the HP Laptop for which the *Affidavit* claimed there was probable cause to seize;

b. the scope of the *Search and Seizure Warrant* as set forth in *Attachment B* was overbroad;

Case 1:17-cr-00008-WJM Document 91 Filed 04/20/18 USDC Colorado Page 2 of 18

c. there was no nexus between many of the items seized and the crimes for which the *Application* alleged there was probable cause; and

d. the *Search and Seizure Warrant* was insufficient on its face when it included the offense of conspiracy ("§ 371") when the *Affidavit* had not presented probable cause to establish that any evidence of the alleged 3-5 year-old conspiracy would be found on the laptop.

**2. Facts Relevant to this Issue**

On April 29, 2016, law enforcement officers seized an HP Laptop from Mr. Jean-Pierre in Miami, Florida. On July 29, 2016, the U.S. District Court for the Southern District of Florida issued a search warrant for the HP Laptop. *See* attached Exhibit A (*Application for a Search Warrant*, *Affidavit* and *Attachments A and B*) and Exhibit B (*Search and Seizure Warrant* and *Attachments A and B*). Upon searching the HP Laptop, law enforcement offices discovered, *inter alia*, documents, emails and numerous other items.

Mr. Jean-Pierre had been an attorney and had material related to his clients and law practice on the HP Laptop and, therefore, special procedures were required to be followed, including the use of a "filter" or "taint" team. Although Mr. Jean-Pierre's prior counsel received an email from an agent in this case in which the agent stated that "[o]ur taint agent is getting ready to send you a disc containing items segregated from case agent review ...," neither prior nor new counsel have received any such disc. However, the defense does not believe that the government is going to use any of the items segregated from case agent review and, therefore, does not believe that this is an issue in this suppression matter. If the government does intend to use any such material in its case, it

Case 1:17-cr-00008-WJM Document 91 Filed 04/20/18 Page 3 of 13

should be barred from doing so since it failed to follow its own special "Search Procedure" set forth on page 3 of *Attachment B*.

In issuing the search warrant, the Magistrate Judge stated that,

> I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*
>
> SEE ATTACHMENT B

Exhibit B, Search and Seizure Warrant at 1 (emphasis added).

In authorizing the search for the property set forth in "Attachment B," the Magistrate Judge authorized the seizure of 20 different items or categories of items. If *Attachment B* had stopped after item 9 of this list, the warrant may have met the "particularity" requirement, may not have been overbroad and may have had the necessary nexus between the items seized and the offenses alleged. However, *Attachment B* did not stop at the end of item 9, but rather continued to list a number of additional items which caused the warrant to fail these tests. In particular, the warrant authorized the seizure of the following non-particularized, overbroad items:

> 10. ***Bank records***, including bank statements, financial statements, cancelled checks, deposit tickets, receipts for cashier's checks, money orders, traveler's checks, records relating to wire transfers, loans, brokerage statements, and credit card information;
>
> 11. All computer files that act as "***address books***" or other list of correspondents and contacts;
>
> 12. ***Records and information related to foreign and domestic travel***.
>
> 13. ***Records of Internet activity***, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that

Case 1:17-cr-00008-WJM Document 91 Filed 04/20/18 USDC Colorado Page 4 of 18

> the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2 or that show who used, owned, possessed, or controlled the computer.
>
> 14. ***Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2*.**

Exhibit B, Search and Seizure Warrant, *Attachment B* (emphasis added) at 41-42, ¶¶ 10-14.

**3. The Search Warrant Was Illegal.**

The search warrant: (a) lacked particularity; (b) was overbroad; © lacked sufficient nexus between the alleged crimes and some of the items within the HP Laptop to be seized; and (d) was insufficient on its face when it included the offense of conspiracy ("§ 371") when the *Affidavit* had not presented probable cause to establish that any evidence of the alleged 3-5 year-old conspiracy would be found on the laptop.

**a. The Search Warrant Lacked Particularity.**

> The fourth amendment imposes a particularity requirement on warrants to prevent the use of general warrants to conduct overly sweeping searches. The scope of a search is limited by the events establishing probable cause.

*United States v. Peterson*, 867 F.2d 1110, 1113 (8th Cir.1989), *citing Andresen v. Maryland,* 427 U.S. 463, 480 (1976). To meet Fourth Amendment requirements, a search warrant must list the items to be seized with particularity: "[t]he particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (emphasis added). The Fourth Amendment protects

Case 1:17-cr-00008-WJM Document 91 Filed 04/20/18 Page 5 of 18

against exploratory searches with or without a warrant. *United States v. Rabinowitz,* 339 U.S. 56, 62 (1950).

A search warrant is written with sufficient particularity if the items listed on the warrant are qualified by phrases that emphasize that the items sought are related to the alleged crime being investigated. *See United States v. Hall*, 142 F.3d 988, 996-97 (7th Cir.1998) ("we hold that the search warrants were written with sufficient particularity because the items listed on the warrants were qualified by phrases that emphasized that the items sought were those related to child pornography ... Police officers executing the warrants were not unguided and free to rummage through [the defendant's] property ...") and *United States v. Ford*, 184 F.3d 566, 574 (6th Cir.1999) (the seizure of the documents violated the defendant's Fourth Amendment rights because the items authorized to be seized were not limited to the illegal gambling or bingo operation at issue and the officers admitted that they seized "basically most of the documents" and "pretty much took everything" at the address).

The purpose of the particularity requirement of the Fourth Amendment is to avoid "a general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. at 480. The constitutional requirement that the things to be seized pursuant to a search warrant be particularly described protects against "the use of general warrants as instruments of oppression." *Stanford v. Texas,* 379 U.S. 476, 510 (1965). "The fundamental evil at which the Fourth Amendment was directed was the sweeping, exploratory search conducted pursuant to a general warrant." *Zurcher v. Standard Daily*, 536 U.S. 547, 580, n.7 (1978) (Stevens, *dissenting*). *See also*, *Coolidge v. New Hampshire*, 403 U.S. at 467 ("[a] general, exploratory rummaging in a person's belongings

Case 1:17-cr-00008-WJM Document 91 Filed 04/20/18 Page 6 of 18

offends the Fourth Amendment") and *United States v. Peden*, 891 F.2d 514, 517 (5th Cir.1989) ("the Fourth Amendment prohibits general warrants authorizing officials to rummage through a person's possessions looking for any evidence of a crime"). As the Supreme Court has stated,

> "[a] seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material." *Roaden v. Kentucky*, 413 U.S. 496, 501 (1973). Hence, in *Stanford v. Texas,* the Court invalidated a warrant authorizing the search of a private home for ***all books, records, and other materials relating to the Communist Party***, on the ground that whether or not the warrant would have been sufficient in other contexts, it ***authorized the searchers to rummage among and make judgements about books and papers and was the functional equivalent of a general warrant***, one of the principal targets of the Fourth Amendment.

*Zurcher v. Standard Daily*, 536 U.S. at 564 (emphasis added).

In Mr. Jean-Pierre's case, *Attachment B* to the *Search and Seizure Warrant* authorized agents to search for a very broad array of items on the HP Laptop without the agents having made a showing that those items related to the alleged wire fraud and money laundering offenses. This very broad and undefined authorization to seize any and all "bank records," "address books," "[r]ecords and information related to foreign and domestic travel" and "[r]ecords of internet activity" (¶¶ 10-13 of *Attachment B*) in no way confined the scope of the search to any particularly described evidence relating to the matters set forth in the *Application* for the search warrant, nor to the specific crimes described in the *Application*. Furthermore, the authorization to seize any and all "[d]escriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2" (¶ 14 of *Attachment B*) was

extremely vague and authorized the agents to "rummage among and make judgements about" what showed or tended to show the commission of one of the listed offenses for which probable cause was shown (wire fraud and money laundering). As such it "was the functional equivalent of a general warrant."

Because the warrant did not list the items to be seized with sufficient particularity, the search violated Mr. Jean-Pierre's Fourth Amendment rights, and the Court should suppress any and all evidence obtained through the execution of this search warrant.

**b. The Search Warrant Was Overbroad.**

A warrant runs afoul of the Fourth Amendment when it is broader in scope than justified by the "probable cause established by the affidavit upon which the warrant issued." *United States v. Christine*, 687 F.2d 749, 753 (3rd Cir.1982). Because the *Search and Seizure Warrant* authorized the seizure of a very broad array of items in Mr. Jean-Pierre's HP Laptop, for many of which there was no probable cause, it was overbroad and, thus, in violation of the Fourth Amendment. The Fourth Amendment prohibits general warrants authorizing "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. at 467. Evidence seized pursuant to a general warrant must be suppressed. *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319 (1979).

A search warrant that provides law enforcement agents free reign to rummage through a defendant's papers at will renders the warrant overly broad and vague. *United States v. Beckett*, 321 F.3d 26, 33 (1st Cir.2003). *See also*, *In re Grand Jury Proceedings*, 716 F.2d at 499 ("[t]he crucial question is whether the warrant authorized too much under the law").

Case 1:17-cr-00008-WJM Document 91 Filed 04/20/18 Page 8 of 18

The scope of the search in Mr. Jean-Pierre's case was not limited to only those items related to the offenses for which probable cause had been set forth in the *Affidavit*. The terms "bank records," "address books," "[r]ecords and information related to foreign and domestic travel" and "[r]ecords of internet activity" (¶¶ 10-13 of *Attachment B*) were too vague and too broad to pass Fourth Amendment constitutional scrutiny. Furthermore, *Attachment B* was too broad when its listing of ""[d]escriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2" (¶ 14 of *Attachment B*) allowed the agents to seize anything in the laptop computer they deemed appropriate. This amounted to an impermissible "general search." *See also*, *Davis v. Gracey*, 111 F.3d 1472, 1479 (10th Cir.1997) ("[w]e have invalidated warrants for overbreadth where the language of the warrants authorized the seizure of virtually every document that one might expect to find in a ... company's office, including those with no connection to the criminal activity providing the probable cause for the search"), *quoting United States v. Leary*, 846 F.2d 592, 602 (10th Cir.1988); and *United States v. Kow*, 58 F.3d 423, 427 (9th Cir.1995) (a warrant that similarly "authorized the seizure of virtually every document and computer file" at a target company is insufficiently particular; the court emphasized that the warrant "contained no limitations on which documents within each category could be seized or suggested how they related to specific criminal activity"). A warrant authorizing the seizure of ***all*** of the property of an organization is valid only if there is probable cause that all of the organization's property is evidence of a crime and it is a "rare case" where such a warrant will be valid. *United States v. Bentley*,

825 F.2d 1104, 1109-1110 (7th Cir.1987). In Mr. Jean-Pierre's case, there was no probable cause presented which established that all of the listed material was evidence of a crime.

The search warrant in Mr. Jean-Pierre's case amounted to a general search warrant authorizing the agents to rummage through almost all of the computer and to seize anything and everything they saw and deemed to be appropriate. Because the warrant was an overbroad, general warrant, the Court should suppress any and all evidence obtained through the search of the HP Laptop.

c. **There Was No Nexus Between Many of the Items Seized and the Crimes for Which the *Application* Alleged There Was Probable Cause.**

The *Application for a Search Warrant* and the *Affidavit* did not present probable cause to believe that the items listed as "bank records," "address books," "[r]ecords and information related to foreign and domestic travel" and "[r]ecords of internet activity" (¶¶ 10-13 of *Attachment B*) were related to any crime or criminal activity. Thus, there was no nexus between these items and wire fraud and money laundering, the crimes alleged in the *Application for a Search Warrant* and in the *Affidavit*.

> The particularity requirement insures that a search is confined in scope to ***particularly described evidence relating to a specific crime for which there is demonstrated probable cause***. The government affidavit supporting the warrants at issue alleged a scheme of tax fraud, and the district court found that probable cause existed. ***The bulk of the warrant was not restricted to evidence relating to tax fraud***, however. It authorized government agents to rummage through all of NCBA's customer files, ***bank records***, employee records, precious metal records, marketing and promotional literature, ***and more***, seeking any information pertaining to any federal crime.

*Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir.1985) (emphasis added).

As the Supreme Court has stated,

Case 1:17-cr-00008-WJM Document 91 Filed 04/20/18 Page 10 of 19

> ***[t]here must***, of course, ***be a nexus ... between the item to be seized and criminal behavior***. Thus in the case of "mere evidence," probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction. In so doing, consideration of police purposes will be required.

*Warden v. Hayden*, 387 U.S. 294, 307 (1967) (emphasis added).

"Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or ***evidence of a crime*** will be found in a particular place." *United States v. McCraven,* 401 F. 3d 693, 697 (6th Cir.2005) (emphasis added). As the Supreme Court has stated:

> ... It does not follow, however, that probable cause for arrest would justify the issuance of a search warrant, or on the other hand, that probable cause for a search warrant would necessarily justify an arrest. Each requires probabilities as to somewhat different facts and circumstances ...
>
> ... Search warrants may be issued only by a neutral and detached judicial officer, upon a showing of probable cause – that is, ***reasonable grounds to believe – that criminally related objects are in the place which the warrant authorizes to be searched at the time when the search is authorized to be conducted*** ...
>
> Two conclusions necessary to the issuance of the warrant must be supported by substantial evidence: that ***the items sought are in fact seizable by virtue of being connected with criminal activity*** and that ***the items will be found in the place to be searched***.

*Zurcher v. Stanford Daily,* 436 U.S. at 556 (citations and quotation marks omitted; emphasis added).

A warrant is proper if it specifies the crime and the enterprise to which the items listed were to pertain. *United States v. Hillyard*, 677 F.2d 1336, 1340 ( 9th Cir.1982), *citing Andresen v. Maryland*, 427 U.S. at 479-82. *See also*, *United States v. Federbush*, 625 F.2d 246 (9th Cir.1980). A search warrant is not sufficiently particular if it contains no guidelines

Case 1:17-cr-00008-WJM Document 91 Filed 04/20/18 Page 11 of 19

to aid officers in determining what may or may not constitute evidence of a violation of the statute at issue. *United States v. Cardwell*, 680 F.2d 75, 77-78 (9th Cir.1982) (the search was suppressed even though the warrant cited a specific statute). Furthermore, generic classifications are acceptable only when a more precise description is not possible. *United States v. Cardwell*, 680 F.2d at 78.

In Mr. Jean-Pierre's case, the *Affidavit* and *Attachment B* to the *Search and Seizure Warrant* failed to establish the requisite nexus between some of the items to be seized and the crimes for which Mr. Jean-Pierre was being investigated. Thus, the agents rummaging through Mr. Jean-Pierre's HP Laptop were not put on any notice as to any limit to their search.

Because there was no nexus between many of the items seized and the crimes for which the *Application* alleged there was probable cause, the Court should suppress any and all evidence obtained through the search of the HP Laptop.

**D. The Search Warrant Was Insufficient on its Face When it Included the Offense of Conspiracy ("§ 371") When the *Affidavit* Had Not Presented Probable Cause to Establish That Any Evidence of the Alleged 3-5 Year-old Conspiracy Would Be Found on the Laptop.**

As set forth above, paragraph 14 of *Attachment B* authorized agents to seize ""[d]escriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of Title ***18 United States Code, Sections 371***, 1341, 1343, 1956, 1957 and 2" (¶ 14 of *Attachment B*) (emphasis added). The *Affidavit* did not present any evidence that there was probable cause that the agents might find evidence on the HP Laptop of an 18 U.S.C. § 371

Case 1:17-cr-00008-WJM Document 91 Filed 04/20/18 Page 12 of 13

conspiracy. Thus, the agents should not have been authorized to search the laptop for any evidence demonstrating a conspiracy.

**4. Conclusion**

Because the search warrant lacked particularity, was overbroad and lacked sufficient nexus between the alleged crimes and some of the items within the HP Laptop to be seized, the issuance of the search warrant and therefore the search was illegal and violated Mr. Jean-Pierre's Fourth Amendment rights as guaranteed by the United States Constitution. Any items seized pursuant to an illegal search are "fruits of the poisonous tree" and therefore should be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

WHEREFORE, Mr. Jean-Pierre requests that this Court suppress all evidence seized pursuant to the illegal search warrant in this case which were made in violation of Mr. Jean-Pierre's Fourth Amendment constitutional rights.

DATED this 20th day of April, 2018.

Respectfully submitted,

*s/Clifford J. Barnard*

Clifford J. Barnard
Attorney for Defendant Jean-Pierre
4450 Arapahoe Avenue, Suite 100
Boulder, Colorado 80303
Telephone: (303) 449-2543
Facsimile: (303) 444-6349
Email: *cliffbarnard@earthlink.net*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of April, 2018, I electronically filed the foregoing

Case 1:17-cr-00008-WJM Document 91 Filed 04/20/18 Page 13 of 13

*Defendant Jean-Pierre's Motion to Suppress Evidence Obtained from Search of HP Laptop* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

A.U.S.A. Jeremy Sibert *jeremy.sibert@usdoj.gov*

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Guy Jean-Pierre *Via U.S. Mail*
Register # 78606-054
GEO Aurora Detention Facility
3130 N. Oakland Street
Aurora, CO 80010

*s/Clifford J. Barnard*

Clifford J. Barnard
Attorney for Defendant Jean-Pierre

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 1 of 45

# EXHIBIT A

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 USDC Colorado Page 2 of 45

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

An HP Laptop (Serial # CND[illegible]) that was inventoried by the Miami Police incident in the arrest of GUY JEAN-PIERRE, aka Marcelo Dominguez de Guerra, in Miami, FL on April 28, 2016. The laptop is currently being stored at the Miami Police Dept., located at 400 NW 2nd Avenue, Miami, Florida under ACA# [illegible]

Case No. 16 mj 3033-White

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

An HP Laptop (Serial # CND[illegible]) that was inventoried by the Miami Police incident in the arrest of GUY JEAN-PIERRE, aka Marcelo Dominguez de Guerra, in Miami, Florida on April 28, 2016. The laptop is currently being stored at the Miami Police Department, located at 400 NW 2nd Avenue, Miami, Florida under ACA# [illegible]. SEE ATTACHMENT A

located in the Southern District of Florida, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code Section 1343 | Wire Fraud |
| Title 18, United States Code Section 1956 | Money Laundering |

The application is based on these facts:

SEE ATTACHMENT AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ________) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Embert S. Kule-Thomas, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 29, 2016

[signature]
*Judge's signature*

City and state: Miami, Florida

Patrick A. White, U.S. Magistrate Judge
*Printed name and title*

Certified to be a true and correct copy of the document on file. Steven M. Larimore, Clerk, U.S. District Court, Southern District of Florida. By [signature] Deputy Clerk. Date 7-29-16

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 3 of 45

# AFFIDAVIT

I, Embert S. Kule-Thomas, being first duly sworn, hereby depose and state as follows:

1. I have been a Special Agent of the Federal Bureau of Investigation (FBI) since August 2014 and have been assigned to Miami, Florida since January 2015. My duties and responsibilities primarily include the investigation of criminal matters particularly related to white collar crime. My education includes a Bachelor's of Science degree in Business Administration – Accounting from University of Maryland College Park, five months of training at the FBI Academy, and various other continuing education classes provided by the FBI. I have received training and instruction in the field of investigation of white collar crime and have had the opportunity to participate in investigations relating to complex financial crimes.

2. Since in or about December 2013, Special Agents of the FBI, Postal Inspectors of the United States Postal Inspection Service (USPIS), and Internal Revenue Service Criminal Investigation (IRS-CID) Special Agents have been involved in a federal criminal investigation in the District of Colorado of activities and conduct arising from and relating to the operations of FusionPharm, Inc. ("FusionPharm"), an erstwhile publicly traded, microcap or "penny stock" company, headquartered in Commerce City, Colorado, and, in particular the conduct of two individuals (Targets 1 and 2) who constituted principals of the business and were de facto partners, concerning federal criminal securities, mail fraud, wire fraud, money laundering and tax offenses. As set forth below, during the course of the investigation, one of the principals of FusionPharm, Target 1, provided information about GUY JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, a disbarred lawyer, who formerly acted as the company's counsel, and Target 1 agreed to cooperate in an undercover investigation of JEAN-PIERRE. This affidavit is submitted in support of an application for the issuance of a search warrant for an HP laptop used by JEAN-PIERRE on April

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 4 of 45

29, 2016, which is currently in the custody of the Miami Police and further described in Attachment A hereto, based, in substantial measure, on the evidence developed as a result of this undercover investigation. Based on this and other evidence in the FusionPharm investigation, as summarized below, I submit that there is probable cause to believe that JEAN-PIERRE engaged in a wire fraud scheme, in violation of 18 U.S.C. §1343, and that he conducted and attempted to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity—namely, proceeds of securities fraud, wire fraud, mail fraud, and related offenses commited, among others, by Target 1, as aided and abetted by JEAN-PIERRE with the intent to conceal or disguise the nature, location, source, ownership and control of such property, in violation of Title 18, United States Code, Sections 1956(a)(3) and 2. Because JEAN-PIERRE at times relevant to this investigation worked as an attorney, procedures (including the use of a "filter" or "taint" team) will be employed during the execution of the search warrant to ensure that attorney-client privileges are not violated.

3. The facts in this affidavit are based upon my communications with other federal agents who have personal knowledge of the events and circumstances described herein, interviews other federal agents involved in the FusionPharm and undercover investigations have conducted, other agents' review of consensually made and monitored recorded telephone calls and recorded conversations involving JEAN-PIERRE, other agents' review of bank account and other records acquired during the criminal investigation of this matter, and, with respect to FusionPharm, evidence developed in a parallel civil investigation conducted by the U.S. Securities and Exchange Commission (SEC). This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of the knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 5 of 45

statements described in this affidavit are related in substance and in part only. I am familiar with and attest to all of the facts and information stated in each of the paragraphs herein to the best of my knowledge and belief.

**Overview Of The FusionPharm Investigation**

4. The investigation of FusionPharm and its principals, Targets 1 and 2, commenced in or about December 2013, with a tip to the SEC from an SEC whistleblower. The focus of the investigation has been whether certain federal criminal offenses, including securities fraud, wire fraud, and money laundering, have been committed in relation, among other things, to the financial reporting and other disclosures made concerning FusionPharm, from the company's inception in early 2011 through in or about May 2014, in relation to the sale of FusionPharm common stock to the investing public during this time frame.

5. Targets 1 and 2 are related by marriage. Target 1 has been involved in a number of suspicious microcap stock transactions over the last decade, and was arrested in 2004 and later convicted in the Southern District of New York (Case No. 04-cr-556-SWK), in connection with his penny stock activities, on one count of conspiracy to commit securities fraud and commercial bribery, and one count of securities fraud. Target 2, a former CPA and business consultant for a national accounting firm, functioned as the President, CEO, and the sole director of FusionPharm.

6. A search was conducted of FusionPharm's business premises in May 2014, pursuant to a federal search warrant issued in the District of Colorado. From a review of electronic and paper records recovered in that search and other evidentiary sources (including, but not limited to, emails acquired from various email accounts, interviews of former and current FusionPharm employees, and proffer interviews of Targets 1 and 2), investigators in this case have concluded

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 6 of 45

that Targets 1 and 2, with the assistance of JEAN-PIERRE, orchestrated a systematic plot to defraud investors out of millions of dollars by implementing the following steps:

(a) Targets 1 and 2 created a series of affiliated entities owned, operated and controlled by Targets 1 and 2;

(b) They intentionally hid Target 1's control of FusionPharm and his criminal history from the investing public;

(c) Using these entities, through fraudulent press releases and their financial releases, they further misled investors into believing that FusionPharm was generating sizeable revenue and generating a profit, when, in reality, the overwhelming majority of the money flowing through these entities was generated through sales of stock they engineered and made through their affiliated entities;

(d) The stock sales were accomplished via a series of lies and misrepresentations that concealed the ownership and control of FusionPharm by Targets 1 and 2 and the stock being sold, thereby circumventing federal securities statutes and regulations proscribing the sale and distribution of unregistered securities by issuers and underwriters; and

(e) As a result of these stock sales, Targets 1 and 2 reaped over twelve million dollars in FusionPharm stock proceeds.

7. FusionPharm marketed itself as the creator and manufacturer of what it called the "PharmPods cultivation container system," featuring standard ISO steel shipping containers that FusionPharm "repurposed for use in indoor plant cultivation." The PharmPods, which housed growing lights and hydroponic growing equipment, were, at times, marketed by Targets 1 and 2

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 USDC Colorado Page 7 of 45

as vehicles to get fresh produce, such as lettuce, quickly and efficiently to restaurants and local groceries in urban markets. However, over time, the PharmPods were primarily marketed to cannabis growers in the United States and Canada. In or about late 2010, Targets 1 and 2 acquired a dormant publicly traded shell company, Baby Bee Bright Corporation, whose stock was traded over the counter on what was commonly known as "pink sheets" through OTC Markets Group ("OTC Markets"), a financial marketplace operating an Internet based trading platform.

8. The FusionPharm stock scheme involved the creation and use of multiple shell companies, including entities called Meadpoint Venture Partners, LLC and Bayside Realty Holdings, LLC, which were jointly controlled by Targets 1 and 2 and used as conduits to take FusionPharm stock controlled by Targets 1 and 2 that was restricted from public sale and transform that stock into stock that could be publicly bought and sold over the counter. Some of the FusionPharm common stock that was the subject of the scheme were the restricted shares received by Targets 1 and 2 when they obtained the dormant shell company, Baby Bee Bright Corporation. Other FusionPharm common stock used in the scheme were shares that they essentially invented or created for themselves by creating, with the advice and assistance of JEAN-PIERRE, bogus promissory notes that were convertible into shares of FusionPharm as repayment of purported loans made to FusionPharm by the shell entities Meadpoint and Bayside. In order to convert these shares into free trading stock, Targets 1 and 2, again with the help and advice of JEAN-PIERRE, exploited a particular regulatory exemption from federal securities registration for the shares, a registration "safe harbor" available under the Securities and Exchange Commission's (SEC) Rule 144. In order to avail themselves of the "safe harbor" in a way that afforded them the opportunity to sell FusionPharm stock without volume limitations, Targets 1 and 2, along with JEAN-PIERRE,

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 8 of 45

presented and prepared various documents for FusionPharm Inc.'s stock transfer agent[1] to, among other things, demonstrate compliance with SEC Rule 144. In particular, to avoid the volume limitations and allow unlimited share sales, Targets 1 and 2 had the purported sellers of the shares -- the shell entities they formed – demonstrate that they were not "affiliates" of FusionPharm. They also falsely represented that the shares had been in the hands of these non-affiliates for at least a year.

9. Under the Securities Act, Rule 144, an "affiliate" is defined as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with the issuer." In turn, Rule 405 of the Securities Act defines "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." As a result, the idea of "control" is critical to determining whether an individual or entity is an affiliate and, in turn, in determining whether that individual or entity can sell its unregistered shares all at once or over time without regard to the volume of shares offered into the market or whether it is limited in parsing out those shares in limited volume over specific time frames prescribed by securities regulation.

10. The documents prepared by Targets 1 and 2, with the assistance of JEAN-PIERRE, falsely represented and concealed Target 1's role and involvement in the company, among other things, and ultimately convinced the transfer agent that the shares nominally held by the shell entities could be sold without a restrictive legend that would advise purchasers that the shares were restricted from public resale. The convertible notes that they created for Meadpoint and Bayside,

[1] A transfer agent is assigned by a publicly traded company to keep track of the individuals and entities that own the company's stocks and bonds.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 9 of 45

the instruments through which they issued themselves more FusionPharm shares, were backdated to make it appear that the SEC Rule 144 one-year holding requirement had been met. The presentations of these documents involved wire communications that involved the State of Colorado, from where Targets 1 and 2 operated, the State of Florida, from where JEAN-PIERRE operated, and the State of Nevada, where the FusionPharm stock transfer agent was located.

**Background Of Guy JEAN-PIERRE**

11. Until in or about 2013, Guy JEAN-PIERRE was engaged in the practice of law in the United States, having at one point been licensed in the states of New York, Florida and California. In approximately 2007, JEAN-PIERRE started his own legal practice in Boca Raton, Florida, focusing on transactional and securities law matters and functioning as outside general counsel to small and medium-sized businesses. A significant aspect of JEAN-PIERRE's legal practice entailed preparing opinion letters, one type of which would be presented by his microcap, penny stock clients to the OTC Markets opining that there was adequate "current information" publicly available about these companies, and another type of opinion letter that would be presented to the stock transfer agents of these companies. These latter letters were used to help demonstrate to the transfer agent that the SEC Rule 144 registration "safe harbor" exemptions had been met, so that stocks held by certain prospective shareholders seeking to sell their shares in the public markets need not be designated as "restricted" or "control" shares and could be publicly sold without SEC registration. (These opinion letters are hereafter referred to as "Rule 144 Attorney Opinion Letters.")

12. On or about April 21, 2010, OTC Markets banned JEAN-PIERRE from issuing opinion letters finding that the companies that were the subjects of these letters were making

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 10 of 45

incomplete and inconsistent disclosures and that JEAN-PIERRE was not performing the due diligence necessary to opine about the disclosures. As a result of the ban, stock transfer agents also would no longer accept Rule 144 Attorney Opinion Letters from JEAN-PIERRE.

13. Following the OTC Markets ban, JEAN-PIERRE legally changed his name to "Marcelo Dominguez de Guerra," and, in December 2012, the SEC brought a civil suit against JEAN-PIERRE in the Southern District of New York (Case No. 12-cv-08886), alleging that he had committed securities fraud, over the course of May 2010 through April 2011, by causing to be issued over 100 fraudulent Rule 144 Attorney Opinion Letters in connection with the shares of nine different microcap companies, and by causing other types of fraudulent opinion letters to be submitted to OTC Markets on behalf of three microcap companies. The SEC's complaint alleged that, following his April 2010 OTC Markets ban, JEAN-PIERRE continued to submit opinion letters to the OTC Market in the name of his niece, a recently admitted lawyer. JEAN-PIERRE failed to defend the case and appeared to stop actively practicing law in South Florida by 2013. Government database records reflect that JEAN-PIERRE left south Florida for the Dominican Republic at about that time, as part of an apparent relocation to that country. On March 10, 2015, the Southern District of New York entered a default judgment against JEAN-PIERRE, ordering that he be obligated to pay over $1.49 million in disgorgement and civil penalties.

**<u>JEAN-PIERRE's Involvement With FusionPharm And The Fraudulent Scheme</u>**

14. The evidence developed in the investigation of FusionPharm to date reflects that, over the course of late 2010 through in or about August 2013, JEAN-PIERRE acted as FusionPharm's *de facto* general counsel. In early filings with OTC Markets, JEAN-PIERRE was listed as the company's Secretary and Legal Counsel. Email records reflect, and accounts by

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 11 of 45

witnesses confirm, that JEAN-PIERRE reviewed the fabricated and backdated convertible notes. Both records and witness accounts also reflect that JEAN-PIERRE essentially "ghost wrote," for the letterhead and signature of another attorney, opinion letters submitted on behalf of FusionPharm to OTC Markets and Rule 144 Attorney Opinion Letters to the FusionPharm transfer agent for sale of shares by the shell entities. Target 1, in proffer interviews, has confirmed that JEAN-PIERRE would have been aware of Target 1's extensive involvement in FusionPharm when JEAN-PIERRE prepared and caused to be submitted these opinion letters opining that the shell entities formed by Target 1 were not FusionPharm affiliates.

**The Undercover Operation**

**Target 1 Becomes A Confidential Informant**

15. In February 2016, as part of pre-indictment plea discussions, Target 1 submitted to a proffer of his information about the matters under investigation. At the conclusion of the proffer, Target 1 revealed that he had been in periodic contact with JEAN-PIERRE since the warranted search of FusionPharm's premises in May 2014 and that, over this time, JEAN-PIERRE was still acting as an attorney and had periodically solicited him for legal work involving securities and corporate matters with which Target 1 may be involved. Target 1 confirmed that JEAN-PIERRE had relocated to the Dominican Republic. He further related that JEAN-PIERRE was aware of the federal criminal investigation of FusionPharm and that Target 1 was a target of this investigation but that Target 1, as part of a ruse, had told JEAN-PIERRE that the investigation was turning into a tax investigation that Target 1 was in the process of resolving. Target 1 advised that he had recently had some discussions with JEAN-PIERRE regarding possible legal work that could be done concerning raising capital in the public securities markets; that the two had had preliminary

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 12 of 45

discussions about setting up an offshore account to hold payments that they both hoped to receive from the work; and that they had discussed a tentative meeting in the United States to further explore their opportunities.

16. Target 1 agreed to act as a Confidential Informant (CI) in initiating and pursuing further contact with JEAN-PIERRE in an undercover capacity under the direction of agents working on the FusionPharm investigation.

<u>The Undercover Calls And Email Communications</u>

17. Over the course of late February 2016 through late April 2016, Target 1, now acting as a CI, and operating out of Colorado, engaged in a series of recorded telephone calls and exchanged a series of emails with JEAN-PIERRE in the Dominican Republic. In these communications, Target 1, acting pursuant to law enforcement directions, advised JEAN-PIERRE that he and another individual, an FBI Special Agent acting in an undercover capacity (hereinafter, the FBI-UC), whom he introduced as his investor in various investment ventures, were seeking to resurrect and develop the hydroponic produce business that had previously been marketed by FusionPharm through a shell entity called Vertifresh LLC. Target 1 explained to JEAN-PIERRE that the FBI-UC had provided Target 1 with various amounts of cash in the past, but now the investor needed some return on the funds provided to Target 1. Their contemplated vehicle for accomplishing this, Target 1 related to JEAN-PIERRE, would be through the acquisition of a publicly traded shell company that they hoped to merge with Vertifresh LLC, followed by their sale of shares in the newly constituted company into the public securities markets. Target 1 also stated that Target 1 and the FBI-UC would be running Vertifresh but they both needed to be kept off the company paperwork due to "bumps" or problems in their respective pasts. In order to do

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 13 of 45

this, they would use a friend of the FBI-UC's to be listed in name only on company documents as Vertifresh's Chief Executive Officer, someone described as a "beard" (hereinafter "INDIVIDUAL A"). Target 1 advised JEAN-PIERRE that the two were looking for JEAN-PIERRE to prepare corporate documents and do the legal work necessary to facilitate the process once the shell company was identified. More importantly, Target 1 explained, they were looking for JEAN-PIERRE's help in identifying ways to obtain free-trading stock once the shell company was identified and the necessary paperwork was filed to get Vertifresh publicly traded on the OTC market. JEAN-PIERRE agreed to undertake this engagement and agreed, as part of it, to prepare a series of documents in draft form that would be presented to the FBI-UC at a meeting in Miami, Florida that was ultimately scheduled for the end of April 2016. As illustrated in the email and recorded conversations listed below, Target 1 worked with JEAN-PIERRE to come up with mechanisms, including a series of false and misleading documents that JEAN-PIERRE undertook to draft, to conceal Target 1's and FBI-UC's role with the company and provide Target 1 and the FBI-UC access to free-trading stock circumventing securities laws once the shell company was acquired.

18. On March 3, 2016, Target 1 had a recorded conversation with JEAN-PIERRE. During this call Target 1 laid out his plan for Vertifresh. Target 1 told JEAN-PIERRE that Target 1 and FBI-UC would be running Vertifresh but could not be considered "affiliates" because Target 1 needed to get money out of the market through the sale of Vertifresh's stock once a publicly traded shell was acquired and taken over by Vertifresh. He further related that the FBI-UC had a "buddy" who would come on as Vertifresh's CEO but would simply act as their "beard."[7] JEAN-

[7] It is understood from debriefings and conversations with Target 1 leading to the undercover operation that the term "beard", as used by him in conversation, refers to a person who would essentially act as a nominee. This term was

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 14 of 45

PIERRE recommended setting up a consulting agreement between Vertifresh and the FBI-UC to avoid the FBI-UC being perceived to be a decision-maker. They discussed using a convertible note to enable Target 1 and the FBI-UC to get free trading stock soon after the shell is acquired (similar to what JEAN-PIERRE had done with Targets 1 and 2 in relation to the FusionPharm scheme, as discussed above). In this connection, JEAN-PIERRE asked Target 1 how old was the debt that would be used as the basis for the convertible promissory notes, and, at the time, Target 1 indicated that the debt was between him and the FBI-UC and was a couple of years old but all based on "handshakes."[3] Target 1 told JEAN-PIERRE that both Target 1 and the FBI-UC do not want the stock they are issued to be in their own names. In discussing his contemplated role, JEAN-PIERRE reminded Target 1 that he was no longer a securities lawyer but could only act as a "consultant." He assured Target 1, however, that he would look for an attorney who would cooperate with them in the same way as the attorney who JEAN-PIERRE had found and used in connection with JEAN-PIERRE's work for FusionPharm (specifically the opinion letters that were written and submitted to OTC Markets and FusionPharm's transfer agent), mentioning that attorney by name.[4]

regularly used by Target 1 in conversations with others involved in the FusionPharm scheme and appeared to be a term understood by JEAN-PIERRE.

[3] The two would revisit this topic in later conversations, during which Target 1 would consistently advise JEAN-PIERRE that the debt that would be used for the convertible promissory notes was actually less than a year old but that he would use deposits from other deals involving Vertifresh in order to be in a position to demonstrate with a transfer agent, doing due diligence on a request to convert shares to free-trading status, that the debt upon which the conversion was claimed to be based was actually over one year old, one of the predicates under SEC Rule 144, as discussed above, in order to meet the regulatory exemption from SEC stock registration.

[4] As discussed above (paragraph 14), evidence in the ongoing investigation of Target 1 and Target 2 and the scheme involving FusionPharm reflects that JEAN-PIERRE recruited and essentially ghost-wrote opinion letters in relation to FusionPharm using the name of this particular attorney.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 15 of 45

19. On March 11, 2016, the following email was composed by Target 1, at the direction of federal law enforcement agents, and transmitted to JEAN-PIERRE covering this, among other subjects:

> …Just want to make sure we are on the same page… As soon as we have a confirmed shell, we are going to want to get Vertifresh going since, as you know, we both have cash in this deal that we need to get out. Plus, we both need to sell some of our stock to put back in Vertifresh to get things going and build it. The CEO of Vertifresh is going to be [INDIVIDUAL A]. [FBI-UC] and I are going to be running things but [INDIVIDUAL A] will be on the paper. As soon as the shell is confirmed, we are going to need to get shares to [FBI-UC] and me….So, as you know you are going to be the man for all things legal and otherwise. A one stop shop. As discussed we will need all the paperwork to get Vertifresh up and trading. Opinion Letters, OTC letters, etc. Can you also draft the agreements necessary to get the stock in place for [FBI-UC] and me? With respect to this, which route should we take? You mentioned a friendly lawsuit or just do notes? Ill leave that with you to decide as long as the end result is the same.[3]

20. On March 30, 2016, Target 1 had a recorded conversation with JEAN-PIERRE. They discussed JEAN-PIERRE drafting the convertible note between Vertifresh and the FBI-UC without the specific dates and amounts. Target 1 told JEAN-PIERRE that the debt amount was about $50,000. On March 31, 2016, the following email was composed by Target 1 to summarize and clarify the call on March 30, 2016, at the direction of the agents, and transmitted to JEAN-PIERRE covering this, among other subjects:

> …You will put together a convertible note….I'll need have this prior to our call with [FBI-UC] on Monday. When should we date the doc for? In addition the total amount of the note is for $50,000 as discussed. This will be the table that we will all eat off of so to speak. [FBI-UC] will get half of it and you and I will split the other half. Can we boiler plate the opinions and non affiliate docs? I know its premature however when we meet

[3] Based on work in this investigation, including debriefings of Target 1, it is understood that the term "friendly lawsuit" is a common reference to an alternative path towards acquiring—or generating—common stock in microcap companies that is then converted into free-trading shares through the SEC Rule 144 registration exemption process. Under this approach, a financial obligation of the stock issuer, i.e., the microcap company, to the putative shareholder is acknowledged and an "agreement" struck between the two to discharge the obligation and exonerate the debt through its conversion into shares of the issuer's common stock. The discharge or compromise of the obligation in this manner is essentially ratified by a Court as part of a settlement of a lawsuit brought against the issuer to honor the financial obligation.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 16 of 45

with him I want to show him all were waiting for is him!....Good thing is all the work will be done and it will be nothing but plugging in numbers and symbols."

21. As the contemplated meeting approached, JEAN-PIERRE prepared and emailed Target 1 a series of draft documents he proposed to review with the FBI-UC. On April 1, 2016, JEAN-PIERRE, through his email account advisor@flbusinesshelp.com, sent Target 1 a document entitled "Convertible Promissory Note". In the email, JEAN-PIERRE wrote, "This morning, I was totally focused on trying to get you at least a proposed Convertible debt instrument before your call later on today with [FBI-UC], it's attached hereto." The draft Convertible Promissory Note listed Vertifresh, LLC as the "Issuer" with the Investor listed as "Name". Notably, the effective date of the agreement was listed as February 28, 2015 and stated that "between February 28, 2013 and the Issuance Date, the Holder transferred to the Issuer US Dollars in the aggregate amount of $50,000". The note also included a section documenting the conversion rights of the lender.

22. On April 4, 2016, Target 1 had another recorded conversation with JEAN-PIERRE. During this conversation, Target 1 stated the funds provided by the FBI-UC were provided in cash with some of it coming in during 2015 and some in 2016. Target 1 assured JEAN-PIERRE that he had "bank statements back in 15" that can identify "cash to backstop all that from other funds". JEAN-PIERRE replied, "Right" and to make sure that the documentation is more than a year old.

23. On April 5, 2016, the following email was composed by Target 1, at the direction of agents, and transmitted to JEAN-PIERRE covering this, among other subjects:

> The company name that [FBI-UC] will be using is [FBI-UC's business]. Signing for Vertifresh will be [INDIVIDUAL A]. Let's have all the opinions and 144 non affiliate docs template'd with names filled in. In addition just make the note for .01. No one will take a sub penny stock anymore so .01 is fine.... We need a doc that ties [FBI-UC's business] to us for half of the note. As discussed I like the guy however were talking about a lot of money here and you and I need to be paid no matter what. ...I know you were concerned about the authentication for the T/A being the cash payments and the timing of

such. I have other deposits from different deals that I can point to and use for authentication purposes when the time comes to submit to the T/A.[6]

24. On April 6, 2016, Target 1 had another recorded conversation with JEAN-PIERRE and the FBI-UC. The FBI-UC, Target 1, and JEAN-PIERRE discussed JEAN-PIERRE drafting all the template documents so that the FBI-UC could review the documents when they were in Miami. They scheduled the Miami trip for the end of April.

25. On April 6, 2016, JEAN-PIERRE, through his email account advisor@flbusinesshelp.com, sent Target 1 an email stating, among other things:

> Just wanted to tell you that I finally had success getting an attorney who would be able to handle the 144 opinion letter (assuming of course that everything is in order with respect to the Note and back-up documentation).

26. On April 14, 2016, the following email was composed by Target 1, at the direction of agents, and transmitted to JEAN-PIERRE covering this, among other subjects:

> Ok, to outline what is left to do prior to our meeting as promised to [FBI-UC]:…As for the note date, I have a cash deposit into Vertifresh's bank account on April 21, 2015, that we can use as proof of funding. It's not from [FBI-UC], but since it's cash, we should be able to tie it to the note, right?...An agreement tying up [FBI-UC's business] for 50% of the note. The other is ours. How you making it with offshore company name for us? Well need something by the meeting I imagine."

27. On April 17, 2016, Target 1 had another recorded conversation with JEAN-PIERRE. During this call they discussed again the terms to be included in the convertible note and how to portray and substantiate the debt that would be claimed as the basis for the note. Target 1 told JEAN-PIERRE that he "got money even recently that I am just throwing in the note," and JEAN-PIERRE responded, "I hope that nobody is on the phone listening to this. Ok." He then laughed. Target 1 reiterated he had "backup paperwork from other stuff but the numbers are the same". JEAN-PIERRE suggested that the note amount be changed from the even number of

[6] T/A is referring to the Transfer Agent.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 18 of 45

$50,000. As the call concluded, Target 1 reminded JEAN-PIERRE to "template" the Rule 144 Attorney Opinion Letters. JEAN-PIERRE responded affirmatively but cautioned Target 1 that he could not guarantee that the attorney he would find for them would use JEAN-PIERRE's format and that JEAN-PIERRE, in fact, hoped that this attorney would use his own format rather than that of JEAN-PIERRE.[7]

28. On April 23, 2016, JEAN-PIERRE, through his email account adviser@flbusinesshelp.com, sent Target 1 an email stating, "Please find the attached revised note together with the proposed conversion docs. Obviously there are some holes to be filled and they should be obvious. Let's talk about them later." The email included a revised Convertible Promissory Note with a new backdated Issuance date of April 21, 2015 and the FBI-UC's Business name that was provided to JEAN-PIERRE on April 5, 2016. The note stated that "On or before the Issuance Date, the Holder [FBI-UC] transferred to the Issuer [Vertifresh, LLC] US Dollars in the aggregate amount of $50,000". Per the prior recorded conversations and emails exchanges, JEAN-PIERRE knew this fact to be untrue and that TARGET 1 was using the convertible note to get free-trading stock without meeting the required holding period. In the same email, JEAN-PIERRE also included a template for the Non-Affiliation letter stating that the [FBI-UC business] "not now and, during the preceding three months and has not been or never an affiliate of the Company as that term is defined by Rule 144 of the Act". JEAN-PIERRE knew this statement was untrue because he had been told by Target 1 that the FBI-UC would be running Vertifresh with Target 1, thus, making him an affiliate.

[7] At this juncture, with this comment, JEAN-PIERRE presented a mixed message concerning his intended use of the attorney who he would involve in the Vertifresh scheme. As discussed below, this topic would be squarely addressed in JEAN-PIERRE's meetings with the FBI-UC and Target 1 in Miami, Florida and JEAN-PIERRE's long-term objectives for how the attorney and his name would be used would be clarified in those meetings.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 19 of 45

29. On April 23, 2016, JEAN-PIERRE, through his email account advisor@flbusinesshelp.com, sent Target 1 a second email stating, "I just realized I had neglected to send you the proposed agreement tying us to [FBI-UC business]; I'm forwarding it to you now." JEAN-PIERRE attached a document titled "Purchase and Assignment Agreement" that, in summary, granted Target 1 and JEAN-PIERRE a 50% interest in the FBI-UC's business for the purchase price of $1.00 allowing them to share in the proceeds of the convertible note.

30. JEAN-PIERRE identified an attorney in Nashville, Tennessee who would sign the 144 Attorney Opinion Letters. On April 24, 2016, JEAN-PIERRE, through his email account advisor@flbusinesshelp.com, sent Target 1 two separate emails stating, among other things:

> Everyone does their opinion differently. I can certainly put together an opinion and send you that tomorrow but the lawyer's opinion will most certainly look very different....I definitely want to keep him very much arms-length, that I'm contacting him to do opinions just like any other client....I decided to send you the sketch if what the 144 debt conversion would look like if I were still in the business of writing opinions.[8]

JEAN-PIERRE included a draft of an Attorney Opinion Letter that could be used to issue shares to FBI-UC's Business from the convertible note. This letter again stated that FBI-UC's Business, the shareholder, had met the required holding period and was not an affiliate of the Issuer, both facts JEAN-PIERRE knew to be false based on the recordings described above.

31. On April 25, 2016, Target 1 had another recorded conversation with JEAN-PIERRE. During this call, they discussed again the contemplated role of the Nashville attorney. JEAN-PIERRE did not tell the attorney that he used to be an attorney. JEAN-PIERRE indicated

[8] During the meeting in Miami, JEAN-PIERRE stated that his goal was to eventually be drafting the 144 Attorney Opinion Letters for Verrifresh and then submitting them to the Nashville attorney for his signature.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 20 of 45

that he wanted to protect the Nashville attorney from being seen as a "shell for Guy Jean-Pierre".[9] JEAN-PIERRE said "If there is a problem you know with me, with you, with anybody else, that's fine. But I don't want them to say to some guy who doesn't even know what's going on, say hey you're tainted because you know you and Guy Jean-Pierre are colluding on committing crimes". JEAN-PIERRE said that he did not want to write the Attorney Opinion Letters because of the issues he had in the past with writing Attorney Opinion Letter's that were signed by another Attorney.[10]

32. As their conversations unfolded about the Vertifresh, LLC plan, Target 1 and JEAN-PIERRE renewed their discussions about how the two would be paid for their work. In this regard, on March 3, 2016, during a recorded phone call, the two discussed how, given their respective situations, it would be difficult for them to hold stock in their own names, and they discussed possibly setting up a Panamanian corporation to hold stock and cash that they both hoped to receive from their "consulting work." They returned to this subject during a recorded telephone conversation on March 24, 2016. During this conversation, Target 1 questioned JEAN-PIERRE as to how he preferred to get paid in relation to services that would be performed in connection with the plan to turn Vertifresh LLC into a publicly traded company and sell its shares. JEAN-PIERRE responded by stating "mostly cash, I am trying to put together [] an offshore company" and that "cash is better but if it is a really good deal [] some stock down the line is also valuable [] it's a good combination." Six days thereafter, in another recorded call, JEAN-PIERRE told Target 1 that

[9] These are the literal words used by JEAN-PIERRE in the recorded conversation. From its context, your affiant understands JEAN-PIERRE to be conveying that he wanted to avoid having the Nashville attorney perceived as a mere nominee or conduit for JEAN-PIERRE.
[10] These past issues, as discussed above, included JEAN-PIERRE's use of his niece's name and credentials, giving rise to the SEC civil enforcement action in New York, and similar use of another attorney in relation to FusionPharm. This second attorney has been the subject of questioning by the SEC in its parallel investigation of FusionPharm and Target 1 and JEAN-PIERRE had previously discussed the fact of pending federal investigations of FusionPharm.

he had an account for himself "here in the DR" and that he would prefer to receive payment in the Dominican Republic because of his situation in the United States and that he would not want to get "a couple of dollars" only to have it taken due to a judgment, an apparent reference to the pending SEC default judgment.

33. On March 31, 2016, an email was composed by Target 1, at the direction of agents, and transmitted to JEAN-PIERRE covering this, among other subjects:

> Have you identified a place for us to set up our financial house down there? If not when? Were going to need this immediately after we meet. For obvious reasons neither you or I want to show income/securities holdings here. I'll need you to walk me thru it. ... In addition there is some urgency on my side as I need to move some cash that a friend is holding for me. Ill sleep better knowing it is getting a tan so to speak.

34. On April 4, 2016, Target 1 had another recorded call with JEAN-PIERRE. He explained to JEAN-PIERRE that he wanted nothing in the United States "because of this IRS thing I can still have nothing here." During this call, at the direction of agents working on the undercover investigation, Target 1 brought up his reference in the March 31 email to his urgent need to move cash. Target 1 explained to JEAN-PIERRE that the money was given to the friend to hold as a "just in case situation and unfortunately just in case came up" and that the money consists of "the last of the stock money that I got out of Scottsdale[11] so I am sittin with a bit of cash and I need put it somewhere so I need you to... I need to get it out sooner than later." Target 1 then reiterated that he was going to be meeting with the IRS in May to discuss settlement and that Target 1 "can't have this cash in the United States" and that he "dare not touch it, I can't have him give me anything [] because I cannot connect the dots here." Upon hearing this, JEAN-PIERRE responded, "Right, right, right, right, no, understood." Towards the end of the

---

[11] "Scottsdale" is a reference to a brokerage firm in which Target 1 had an account that he used to deposit and hold some of the FusionPharm stock once restrictions had been lifted on the stock certificates by the FusionPharm stock transfer agent.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 22 of 45

conversation, Target I returned to the subject of the cash he needed to move; he asked JEAN-PIERRE if he has a trust account or another "mechanism" in the Dominican Republic where the cash can be "housed" because Target I had "a couple hundred K here and its got to go." JEAN-PIERRE replied, "I have my own account down here, let me see [] what I can do" and that he was going to speak to a lawyer in the Dominican Republic on an unrelated matter and that he (JEAN-PIERRE) was going to see what the lawyer suggested.

35. At the agents' direction, Target I sent a confirmatory email on April 5, 2016, stating, in part:

> The last bit of FSPM[12] stock sales cash I have needs to be moved. My buddy has been great holding it but I want it where its safe. I'll gladly pay an administration fee for such services initially and ongoing. I suggest a yearly based on the amount. Be best if it was something like a trust account of yours as I know you and feel safe. Or something of that nature. As long as it's safe!

JEAN-PIERRE responded by email the following day, stating, "I'm still working on the trust account issue here. I'm hoping to have an answer soon."

36. On April 15, 2016, JEAN-PIERRE emailed Target I with the following information:

> With respect to a trust account, I still have not been able to get hold of that lawyer. It seems almost like he's avoiding me in any event. For initial small amounts and until I can get the equivalent of a trust account set up, if you trust me, we can use the regular bank account I have here in the DR. I'm including that info below. We will need it in any case because that's probably where I will want to get paid anyway if things work out.
>
> Guy M. Jean Pierre
>
> Banco Popular Dominicano

[12] "FSPM" refers to the stock ticker symbol for FusionPharm common stock in the OTC markets.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 23 of 45

Acct# 768192916

SWIFT number BPDODOSXXXX

37. Two days later, Target 1 and JEAN-PIERRE had another recorded telephone conversation. During the call, Target 1 asked JEAN-PIERRE to update him on JEAN-PIERRE's progress in helping Target 1 to move FusionPharm stock proceeds that Target 1 had ostensibly parked with his "friend," informing JEAN-PIERRE that the source of the money was from "the very first bit of conversions [] I did with Bayside and Meadpoint with you in the beginning of 2013."[13] Target 1 reiterated that this was money that the U.S. Government was attempting to seize and that Target 1 accordingly wanted to "get it out of here" as soon as possible. JEAN-PIERRE responded by suggesting that they could use his personal account in the Dominican Republic for the time being. Target 1 indicated that he would start with a $10,000 transfer, that could be used to set up a permanent account in the Dominican Republic, and that the total amount that Target 1 wanted to move to the Dominican Republic would be approximately $250,000. The two then turned to the subject of JEAN-PIERRE's expected payment for these services, which Target 1 characterized as an "Admin Fee." JEAN-PIERRE responded, "How does 5% sound?" The two then agreed to a 5% fee that JEAN-PIERRE could begin to take out of the first money transfer installment, together with whatever funds he would need in order to create the second corporate account in the Dominican Republic. JEAN-PIERRE then referenced the bank account information that he had emailed to Target 1 two days before.

[13] This reference is to the backdated, fabricated convertible promissory notes discussed above that falsely depicted loan funds as having been provided by Meadpoint and Bayside to FusionPharm that had, as one of their purported features, the ability to convert tranches of debt reflected by the notes into FusionPharm common stock at predetermined conversion rates.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 24 of 45

38. The conversation then transitioned to how to transfer the remaining "$240,000.00." Target 1 advised JEAN-PIERRE that he could wire the remaining $240,000.00 directly to the corporate account for which JEAN-PIERRE will be the administrator in the Dominican Republic but questioned JEAN-PIERRE on "how should I do that, should I do that in one shot, should I do it in pieces, I know nothing about banking in the DR." JEAN-PIERRE responded by stating "I think pieces [] is generally better because [] big amounts certainly would grab somebody's attention." JEAN-PIERRE said he would speak with a lawyer "on Monday" to learn the dollar thresholds for the wire transfers.

39. On April 22, 2016, JEAN-PIERRE advised Target 1 in a recorded call that it would take a little over a month to form the corporation and an additional two weeks to set up the corporate bank account. He estimated that it would take approximately a week if they wanted to set up a personal account in the Dominican Republic to hold money. Target 1, acting on the agents' directions, then steered the conversation to the possibility of transferring funds through a cashier's check. JEAN-PIERRE reacted by stating that "he [the third party in the United States] can't do a wire, I take it," to which Target 1 responded, "I think he is worried about how it's going to look, in wiring the money out, to keep it really on the down low and quiet so to speak" and that the third party holding the money thinks that having cashier's checks drawn on the account and then overnighting it to JEAN-PIERRE "optically looks better, for you know, the purposes of why we are doing this." JEAN-PIERRE responded that Bank of America is a big bank that accepts any form of currency and that Bank of America has a correspondent relationship with Banco Popular, which would clear the cashier's check. Following the call, JEAN-PIERRE texted to Target 1 an address for a Federal Express location in the Dominican Republic to which Target 1 could mail the check.

40. On that day, an FBI Special Agent involved in the undercover investigation purchased a cashier's check from 1st Bank in the amount of $5,000.00, made payable to "Guy M. Jean Pierre." The cashier's check was purchased from the 1st Bank branch located at 4350 Wadsworth Blvd, Wheat Ridge, CO 80033. The cashier's check was subsequently mailed from a FedEx location at 3545 Quebec Street, Denver, Colorado 80207 to the attention of "Marcelo Dominguez de Guerra" at Av Padre Ramon Dubert 15, Jared Metropolitanos, Santiago, Dominican Republic, 452. The address in the Dominican Republic is associated with a FedEx World Service Center.

41. In a follow-up recorded phone call later that day, Target 1 told JEAN-PIERRE that the check was on its way and to expect it on April 26th. Target 1 reminded JEAN-PIERRE that his person in the United States holding the money wanted to use cashier's checks "for the purpose of, you know, everybody looking" and "to keep it on the down low, keep the radar." Though he remarked that wire transfers were quicker, JEAN-PIERRE acknowledged the concern and stated that they would figure it out. The two concluded the conversation by discussing at length Target 1's need ultimately to have a "secondary account" held in the name of someone close to JEAN-PIERRE, so that there is a "one step disconnect" after the money is sent to JEAN-PIERRE, and the logistics and obstacles in performing the scheme. JEAN-PIERRE responded that he thought "a disconnect [] is generally good" and that he had someone in mind who could be good. He told Target 1 that he would talk to Banco Popular to see how quickly it could do this.

42. On April 26, 2016, JEAN-PIERRE told Target 1 that he had been unsuccessful in opening up the secondary account at the bank in the Dominican Republic because he is considered a foreigner and that the bank was requesting additional documentation. He acknowledged receiving the $5,000 cashier's check and depositing the money in an existing bank account located

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 26 of 45

in the Dominican Republic. He told Target 1 that, following his return from his Miami trip to see Target 1 and the FBI-UC, he would continue his efforts to open a secondary account to which to transfer the remainder of the funds that Target 1 would be sending.

The Miami, FL Meetings And JEAN-PIERRE's Arrest

43. On April 28, 2016, JEAN-PIERRE arrived in Miami, Florida from the Dominican Republic. He was met at the airport by Target 1 and followed by a team of surveillance agents to a hotel where hotel reservations had been booked for the two. On the way to the hotel, in conversation that was recorded and monitored, the two revisited the subject of the $250,000 in purported FusionPharm stock proceeds that Target 1 was ostensibly seeking to move offshore. JEAN-PIERRE told Target 1 that he had found an individual whose name would be used for the secondary account and that it was the aunt of JEAN-PIERRE's son who owns a business and was a hairdresser in the Dominican Republic. Target 1 reiterated that he was going to want to keep the majority of the money in the Dominican Republic because he's "got the DOJ, I got the FBI [] I have every alphabet gang so far in my business [] and all they are trying to do is run around and freeze up every bit of cash, every piece of stock that came out of FusionPharm that we did." He went on to state that there is still an SEC and a criminal investigation related to FusionPharm and that the U.S. Government is saying that Target 1 was too close to the company as an affiliate and that the money he was trying to move offshore was from "the first transactions that we did" related to the conversions of the Meadpoint and Bayside notes into FusionPharm stock that Target 1 sold into the market in 2013. Target 1 told JEAN-PIERRE that the U.S. Government knows about the conversions and is trying to figure how to get its hands on the money. Target 1 said that the third party holding the funds from the conversions of the notes is beginning to freak out and does not

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 USDC Colorado Page 27 of 45

want to hold the money any longer. JEAN-PIERRE asked how quickly the money needs to be moved, to which Target 1 responded, "I want to get it done yesterday."

44. The subject of these funds came up twice more that day. While waiting in a hotel bar before a planned dinner with the FBI-UC, JEAN-PIERRE told Target 1 that his son's aunt would be used for the secondary account. Target 1 said that the Justice Department and FBI were trying to put "their hands on everything FusionPharm" and that they know about every trade and how it went down. Target 1 went on to state that "they know I did not get that money, but they know it was my stock." JEAN-PIERRE responded by asking if the U.S. Government knows that the third party has the money, to which Target 1 said, "yeah, but they can't put their hands on it yet, they can't connect that link yet. "JEAN-PIERRE then asked whether "they don't know about your relationship with him" and Target 1 responded, "no not yet." The two agreed to begin doing wire transfers to the Dominican Republic and that the next transaction would be $25,000. Target 1 said that he would send the money to JEAN-PIERRE and that he, in turn, would transfer the money to the aunt's account to create a "disconnect." Later in the evening, during a break in the dinner meeting with the FBI-UC, Target 1 asked JEAN-PIERRE about the cashier's check that had been sent to JEAN-PIERRE. JEAN-PIERRE confirmed that the check had been drawn on 1st Bank in Colorado and was for $5,000.

45. The following morning, while in route to the FBI-UC's hotel suite for a breakfast meeting, Target 1 confirmed with JEAN-PIERRE that JEAN-PIERRE's "sister-in-law" would be holding the money for an additional 1% fee. Target 1 stressed the importance for needing internet access to the secondary account and wanting to see his money.

46. During the breakfast meeting, Target 1, the FBI-UC and JEAN-PIERRE also discussed their progress and next steps regarding Vertifresh and getting free-trading stock. Towards the onset of the meeting, Target 1 advised the FBI-UC that JEAN-PIERRE brought his laptop so that they can make changes. JEAN-PIERRE was observed by investigators removing the laptop from his backpack and powering up the device.

47. JEAN-PIERRE explained to the FBI-UC the SEC "loophole" that allows lenders to obtain stock in a company through aged debt. JEAN-PIERRE again suggested changing the amount of the debt reflected in the convertible note from $50,000 to a less "round" number. Target 1 said that JEAN-PIERRE had his laptop and could make the changes to the document to reflect something "less flat and obvious". In reviewing this SEC "loophole," JEAN-PIERRE further explained that the convertible feature of the debt would have to have been included at the time that the debt instrument was effective. In response to this, Target 1 reiterated his plan to use money from other deals as proof that Target 1 provided the funds over a year ago. Target 1 then asked if "papering the debt after the fact [would be] ok," in response to which JEAN-PIERRE indicated in words and substance that "it's not so ok," in that "your paperwork" has to "appear clean." JEAN-PIERRE also suggested using five or six deposits to use as proof of the funding of the loan.

48. JEAN-PIERRE then turned to another requirement of the "SEC loophole," demonstrating that the putative sellers of the Vertifresh shares were not, in fact, its "affiliates." In this connection, he provided additional instructions on how Target 1 should structure his conversations with the transfer agent so that he would not be perceived as part of management, suggesting that INDIVIDUAL A contact the transfer agent and say that he is "too busy to get in the details" and to work with Vertifresh's consultant, Target 1. JEAN-PIERRE said that he liked

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 29 of 45

the "optics" of having it appear that Target 1 was working with the transfer agent casually and not like it was planned that Target 1 would be the transfer agent contact from the beginning.

49. JEAN-PIERRE provided Target 1 and FBI-UC further guidance on how to keep the FBI-UC from being considered an affiliate, instructing the FBI-UC not to own anywhere close to 10% of the company's stock and not to "appear" to have any position with the company at all. At that point, Target 1 interjected and asked, "Appear? Whether you are or not is irrelevant," to which JEAN-PIERRE responded, "Right, right". The FBI-UC then reminded JEAN-PIERRE that INDIVIDUAL A was going to be Verifresh's CEO in name only and that the FBI-UC would control INDIVIDUAL A and that INDIVIDUAL A did not know "jackshit" about what was going on. JEAN-PIERRE responded to this with one word: "Excellent." He then explained that he would not communicate this "fact" to the Nashville attorney.

50. Target 1 and the FBI-UC also clarified JEAN-PIERRE's long-term plans as to how the Nashville attorney would be used. Target 1 asked JEAN-PIERRE if he thought he would eventually be able to draft the Rule 144 Attorney Opinion Letters himself and have the Nashville attorney simply review and sign them. JEAN-PIERRE replied, "Eventually, it's a good start." Later in the meeting, the FBI-UC asked JEAN-PIERRE, "So you are going to be the point guy between us and the attorney and then plus do all the other stuff," to which JEAN-PIERRE responded, "Right," adding that the attorney would (at some point) need to just put his name on the Opinion Letters.

51. JEAN-PIERRE was using a laptop during the breakfast meeting and appeared to be updating the documents that he drafted prior to the meeting to include the convertible promissory note.

52. Immediately following the breakfast meeting, JEAN-PIERRE was arrested in Miami on an outstanding warrant issued on an indictment brought in the State of New York, New York County, arising from the facts and circumstances at issue in the SEC's civil case in the Southern District of New York. At the time of his arrest, JEAN-PIERRE had a backpack containing the HP laptop that he was using to edit documents during the breakfast meeting. According to a Property List provided by the Miami Police, the HP laptop, further described in Attachment A, was taken incident to arrest and is currently being held by the Miami Police Department.

53. On May 2, 2016, agents working on the undercover case, obtained a copy of the 1st Bank $5,000 cashier's check that had been sent to the Dominican Republic and made payable to Guy M Jean-Pierre. The agents confirmed that the check had cleared and the funds paid by 1st Bank. On or about April 27, 2016, the check was presented for payment by Bank of America, the correspondent bank for the Dominican Republic bank where JEAN-PIERRE maintained his personal account.

54. In my training and experience, if a person is traveling with a laptop and using it for business-like activity that computer tends to be the person's primary computer for other uses, such as email. Here, since JEAN-PIERRE used an HP laptop to update documents on the morning of his arrest, and since he was sending and receiving emails as late as April, 2016, it is likely that the HP laptop was also used to send and receive emails and that evidence of those emails will be on that computer.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 31 of 45

<u>**Electronic Storage And Forensic Analysis**</u>

55. Based on my consultation with those who have specialized knowledge of computers and other electronic devices, I understand that computers and electronic storage media can store information for long periods of time, even if the computer user has "deleted" them. Similarly, items that have been viewed via the Internet are typically stored for some period of time on the device used to access the Internet. Likewise, email evidence can be found on a computer, especially where emails have been sent or received from that computer in the near past. These items can remain on a computer for the life of the computer if the data is not overwritten. There is no way to determine if deleted items remain on a computer without conducting careful forensic search of the computer using forensic tools. This information can sometimes be recovered with forensic tools.[14]

56. There is probable cause to believe that things that were once stored on such devices may still be stored there, for at least the following reasons:

(a) Based on information provided to me by those who have specialized knowledge of computers and other electronic devices, I understand that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer,

[14] It should be noted, in this regard, that during the course of the undercover communications described above, JEAN-PIERRE at one point explained to Target 1 that it had taken him some time to prepare the documents that Target 1 was seeking from him because JEAN-PIERRE had "lost his pin drive" on which he claimed to have stored "all of his documents" and that he therefore had to "start from scratch." Your affiant's best understanding of the use of the phrase "pin drive" is that it is an apparent reference to a USB memory flash drive.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 32 of 45

the data contained in the file does not actually disappear, rather, that data remains on the storage medium until it is overwritten by new data.

(b) Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

(c) Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drive—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible for a user to delete this information.

(d) Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." Forensic review may also disclose when and by whom the Internet was used to conduct searches, view material, and communicate with others via the Internet or email or other online media.

57. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the devices seized and imaged were used, the purpose of their use, who used them, and when. There is probable cause to

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 93 of 95

believe that this forensic electronic evidence might be on the HP laptop computer that is the subject of this application because:

(a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times that the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created. This information can be recovered months or even years after they have been downloaded onto the storage medium, deleted, or viewed.

(b) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

(c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

(d) The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence

is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

(e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

(f) Your Affiant knows that when an individual uses an electronic device to aid in the commission of a crime, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain evidence or is an instrumentality because here, JEAN-PIERRE used the HP computer to conduct criminal activity on the morning of his arrest. Therefore, it is both an instrumentality of the crime as well as a probable repository for evidence of it. It is likely to contain evidence from his document drafting on the morning of his arrest as well as documents he may have drafted during other stages of the crimes. Furthermore, because he was using his email advisor@ffbusinesshelp.com_ to send and receive correspondence about and in furtherance of the crimes, it is likely that he used the HP computer for that email use. Therefore, it is likewise likely that the HP computer will contain evidence from those emails and others like them. Last, the computer will likely have information about its user and information relevant to the user's identity, activities relevant to the planning and execution of the crimes discussed in this Affidavit as well as information about his state of mind while committing them such as Internet searches, correspondence with others about the crimes, and documents relating to them.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 35 of 45

(g) Your Affiant also knows that those who engage in criminal activity will attempt to conceal evidence of the activity by hiding files, by renaming the format, (such as saving a .pdf image file as a .doc document file) or by giving them deceptive names such that it is necessary to view the contents of each file to determine what it contains.

(h) A single compact disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Thumb drives with a capacity of 32 gigabytes are not uncommon. Hard drives with the capacity of 500 gigabytes up to 3 terabytes are not uncommon. These drives can store thousands of images and videos at very high resolution, and they can store hundreds of thousands of documents and emails. Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

<u>Need To Review Evidence Over Time And To Maintain Entirety Of Evidence</u>

58. Your Affiant recognizes the prudence requisite in reviewing and preserving in its original form only such records applicable to the violations of law described in this Affidavit and in Attachment B in order to prevent unnecessary invasion of privacy and overbroad searches. Your Affiant advises it would be impractical and infeasible for the Government to review the mirrored images of digital devices that are copied as a result of a search warrant issued pursuant to this Application during a single analysis. Your Affiant has learned through practical experience that various pieces of evidence retrieved from digital devices in investigations of this sort often have unknown probative value and linkage to other pieces of evidence in the investigation until they are considered within the fluid, active, and ongoing investigation of the whole as it develops. In other words, the weight of each individual piece of the data fluctuates based upon additional

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 36 of 45

investigative measures undertaken, other documents under review and incorporation of evidence into a consolidated whole. Analysis is content-relational, and the importance of any associated data may grow whenever further analysis is performed. The full scope and meaning of the whole of the data is lost if each piece is observed individually, and not in sum. Due to the interrelation and correlation between pieces of an investigation as that investigation continues, looking at one piece of information may lose its full evidentiary value if it is related to another piece of information, yet its complement is not preserved along with the original. In the past, your Affiant has reviewed activity and data on digital devices pursuant to search warrants in the course of ongoing criminal investigations. Your affiant has learned from that experience, as well as other investigative efforts, that multiple reviews of the data at different times is necessary to understand the full value of the information contained therein, and to determine whether it is within the scope of the items sought in Attachment B. In order to obtain the full picture and meaning of the data from the information sought in Attachments A and B of this application, the Government would need to maintain access to all of the resultant data, as the completeness and potential of probative value of the data must be assessed within the full scope of the investigation. As such, your Affiant respectfully requests the ability to maintain the whole of the data obtained as a result of the search warrant, and to maintain and to review the data in the control and custody of the Government and law enforcement at times deemed necessary during the investigation, rather than minimize the content to certain communications deemed important at one time. As with all evidence, the Government will maintain the evidence and mirror images of the evidence in its custody and control, without alteration, amendment, or access by persons unrelated to the investigation.

59. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, copying, and reviewing the contents of the HP

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 37 of 45

computer consistent with the warrant. The warrant I am applying for would authorize a later examination and perhaps repeated review of the HP or information from a copy of the HP laptop consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium, which might expose many parts of the HP laptop to human inspection in order to determine whether it is evidence and contains evidence as described by the warrant.

**Procedures For Addressing And Handling**
**Potentially Privileged Attorney Communications**

60. As set forth above, although currently not licensed to practice law as an attorney in the United States, JEAN-PIERRE may have actively practiced law as recently as mid-2013. Further, he was not formally disbarred from the practice of law in the State of New York until earlier this year. While the communications involving JEAN-PIERRE that are the subject of the FusionPharm and undercover investigations are not, it is believed, covered by current, valid attorney-client privileges,[13] the possibility that JEAN-PIERRE had communications with clients or putative or potential clients in the past several years concerning legal advice and that those communications could arguably be deemed privileged cannot, at this point, be ruled out. Further, it also remains possible that older communications reaching back to when JEAN-PIERRE actively engaged in the practice of law may be stored on the HP laptop computer that is the subject of this

[13] The "clients" of the communications involving the recent undercover investigation were Target 1 and FBI-UC. JEAN-PIERRE's discussions with them concerned the commissions of new crimes. Similarly, the evidence developed in the FusionPharm investigation reflects that JEAN-PIERRE's communications with FusionPharm and its principals were primarily, if not exclusively, for the purpose of orchestrating and implementing the fraudulent scheme that is the subject of that ongoing investigation. Further, it is understood that the current counsel for FusionPharm has waived privileges with respect to any communications between JEAN-PIERRE and FusionPharm and its principals, employees and agents acting on behalf of FusionPharm.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 38 of 45

search warrant application and that these communications may be deemed to constitute privileged attorney-client communications.

61. In order to address the possibility that the HP laptop computer could contain privileged attorney-client communications, a government "filter" or "taint" team, consisting of federal agents and a federal prosecutor not assigned to the FusionPharm and undercover investigations, will be established to filter out any communications that may contain attorney-client privileged communications and segregate them from your affiant and other agents and prosecutors involved in the investigations. In order to assist and facilitate this process, the "filter" or "taint" team will be provided with JEAN-PIERRE's names and all names that he was known to use in his practice of law, as well as the names of any attorneys or para-professionals with whom he was known to have engaged in the practice of law. Records suspected of containing valid, non-waived attorney-client privileged communications will not be shared with your affiant or other agents or prosecutors involved in the pending investigations until the issue of privilege with respect to these communications has been resolved.

## Search Technique

62. Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, law enforcement personnel will execute the search of the HP laptop computer pursuant to this warrant as follows: Searching the laptop for the items described in Attachment B may require a range of data analysis techniques. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 39 of 45

described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant. The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit.

## Conclusion

63. Based on my training and experience as a Special Agent, all of the foregoing constitutes probable cause to believe that:

(a) JEAN-PIERRE has committed wire fraud, in violation of Title 18, United States Code, Section 1343, through, among other things, the drafting and then emailing of draft documents, including the backdated Convertible Note, the 144 Attorney Opinion Letter and the Non-Affiliation Letter, containing material misrepresentations meant to conceal Target 1 and FBI-UC's role within Vertifresh;

(b) From March 2016 through April 2016, JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, conducted and attempted to conduct financial transactions represented to be proceeds of a specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(B); and

(c) On the Attachment A - Item to be Searched, which is attached hereto and incorporated herein by reference, is likely to be both an instrumentality of crimes and a container of evidence of these crimes, as described in Attachment B, which is attached hereto and incorporated herein by reference.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 40 of 45

**Request For Sealing**

64. Your affiant requests that the Court order that the instant Application For A Search Warrant and all documents in support of and related to the instant Application For A Search Warrant, including the Affidavit, the related Search And Seizure Warrant, the Order To Seal, and related documents, be sealed until further order of the Court. These documents discuss and/or refer to an ongoing criminal investigation that is neither public nor known to all of the targets and subjects of the investigation.

65. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize such investigation, in that the targets and subjects may intimidate witnesses, flee the jurisdiction, or destroy or tamper with evidence that is relevant to the investigation.

FURTHER AFFIANT SAYETH NAUGHT.

ERNBERT S. KULE-THOMAS
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn and subscribed to before me this 29th day of July, 2016.

PATRICK A. WHITE
UNITED STATES MAGISTRATE JUDGE

Certified to be a true and correct copy of the document on file
Steven M. Larimore, Clerk
U.S. District Court
Southern District of Florida
By [signature] Deputy Clerk
Date 7-29-16

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 41 of 45

**ATTACHMENT A**

**Description Of Item To Be Searched**

An HP Laptop (Serial # CND01818BD) that was inventoried by the Miami Police incident to the arrest of GUY JEAN-PIERRE, aka Marcelo Dominguez de Guerra, in Miami, Florida on April 29, 2016. The laptop is currently being stored at the Miami Police Department, located at 400 NW 2nd Avenue, Miami, Florida under AC#16005289.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 42 of 45

**ATTACHMENT B**

**Description Of Items To Be Searched And Seized**

The following items and information related to the scheme and activities that are described and are the subject of the affidavit in support of this warrant (which affidavit is incorporated by reference herein), which items constitute evidence and/or instrumentalities of violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2, and the following items relating to the electronic storage, access and retrieval of such items:

1. Computer software, consisting of digital information, which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word processing, networking, graphics, accounting, presentations or spreadsheet programs), utilities, compilers, interpreters, and communications program;

2. Computer passwords and other data security devices, that is, a string of alphanumeric characters designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programmable code. A password usually operates as a sort of digital key to "unlock" particular storage data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, destroy or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it;

3. Evidence of who used, owned, or controlled the computer hardware, computer software, or computer passwords at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

4. Evidence of software that would allow others to control the computer hardware, computer software, or computer passwords, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

5. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer hardware, computer software, or computer passwords;

6. All records relating to or constituting, or arising from communications, transactions or contemplated transactions with the individuals described as "Target 1" or the "FBI-UC" in the affidavit accompanying this application and warrant, which affidavit is incorporated by reference herein, including, without limitations, emails, text messages, text notes,

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 USDC Colorado Page 43 of 45

memoranda, spreadsheets, drafts and final versions of opinion letters, contracts, agreements, promissory notes, corporate governance documents, shareholder consent forms, and stock certificates. Such records shall further include records, materials, communications used in the preparation of these documents.

7. All records relating to or constituting, or arising from communications, transactions or contemplated transactions with or relating to FusionPharm, Vertifresh, LLC, Bayside Realty, LLC, Meadpoint Ventures, the individuals described as "Target 1" or "Target 2" in the affidavit accompanying this application and warrant, which affidavit is incorporated by reference herein, including, without limitations, emails, text messages, text notes, memoranda, spreadsheets, drafts and final versions of contracts, agreements, promissory notes, corporate governance documents, shareholder consent forms, and stock certificates. Such records shall further include records, materials, communications used in the preparation of these documents. Such records shall further include "current information letters" and other written submissions to OTC Markets, and records, materials, communications used in the preparation of such submissions. Excluded from this category are any items constituting valid, non-waived privileged attorney-client communications;

8. In relation to any of the items sought in paragraphs 6 and 7 above, any and all correspondence or communications (in any iterations, including drafts) in whatever format (including electronic images of envelopes, letters, papers, email messages, chat logs, electronic messages, and other digital data files) and attachments, excluding, however, any items constituting privileged attorney-client communications;

9. In relation to any of the items sought in paragraphs 6 and 7 above, any and all records concerning securities transactions, including transfer agent records and correspondence and communications involving transfer agents, and brokerage or bank account records reflecting securities transactions or proceeds of such transactions;

10. Bank records, including bank statements, financial statements, cancelled checks, deposit tickets, receipts for cashier's checks, money orders, traveler's checks, records relating to wire transfers, loans, brokerage statements, and credit card information;

11. All computer files that act as "address books" or other list of correspondents and contacts;

12. Records and information related to foreign and domestic travel.

13. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2 or that show who used, owned, possessed, or controlled the computer.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 44 of 45

14. Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2.

15. Evidence of who used, owned, or controlled the computer to commit or facilitate the commission of the crimes described, or at the time the things described in this warrant were created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence.

16. Evidence of software that may allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security provisions or software designed to detect malicious software or unauthorized use of the device, and evidence of the lack of such malicious software.

17. Evidence of the attachment to the computer of other storage devices or similar containers for electronic evidence.

18. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer.

19. Evidence of how and when the computer was used or accessed to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

20. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage.

**Search Procedure**

1. Law enforcement personnel will first make an exact duplicate of the hard drive contained on the laptop computer.

2. A "filter" or "taint" team, as described in paragraphs 60 and 61 of the accompanying Affidavit, will be employed to review and segregate records and items containing privileged attorney-client communications.

Case 1:17-cr-00008-WJM Document 91-1 Filed 04/20/18 Page 45 of 45

3. Law enforcement personnel will then review all information and records contained on the computer to determine the information to be seized by law enforcement personnel pursuant to Attachment B.

4. With respect to any information or records that appear exclusively to be related to criminal acts other than the violations set forth herein will not be further examined unless and until a search warrant is applied for and issued for evidence of any such separate criminal act.

Case 1:17-cr-00008-WJM Document 91-2 Filed 04/20/18 Page 1 of 2

# EXHIBIT B

Case 1:17-cr-00008-WJM Document 91-2 Filed 04/20/18 USDC Colorado Page 2 of 2

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

An HP Laptop (Serial # CND01818BD) that was inventoried by the Miami Police incident to the arrest of GUY JEAN-PIERRE, aka Marcelo Dominguez de Guerra, in Miami, FL on April 29, 2016. The laptop is currently being stored at the Miami Police Dept., located at 400 NW 2nd Avenue, Miami, Florida under AC#16005289.

Case No. 16 mj 3033-White

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Southern District of Florida *(identify the person or describe the property to be searched and give its location)*:

An HP Laptop (Serial # CND01818BD) that was inventoried by the Miami Police incident to the arrest of GUY JEAN-PIERRE, aka Marcelo Dominguez de Guerra, in Miami, Florida on April 29, 2016. The laptop is currently being stored at the Miami Police Department, located at 400 NW 2nd Avenue, Miami, Florida under AC#16005289.
SEE ATTACHMENT A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

**YOU ARE COMMANDED** to execute this warrant on or before Aug 12, 2016 *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to DUTY.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for ____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of ________.

Date and time issued: July 29, 2016 @ 11:09 AM
*Judge's signature*

City and state: Miami, Florida — Patrick A White, U.S. Magistrate Judge
*Printed name and title*

Certified to be a true and correct copy of the document on file
Steven M. Larimore, Clerk
U.S. District Court
Southern District of Florida
By [signature] Deputy Clerk
Date 7-29-16

Case 1:17-cr-00008-WJM Document 91-2 Filed 04/20/18 Page 3 of 9

# ATTACHMENT A

## Description Of Item To Be Searched

An HP Laptop (Serial # CND01818BD) that was inventoried by the Miami Police incident to the arrest of GUY JEAN-PIERRE, aka Marcelo Dominguez de Guerra, in Miami, Florida on April 29, 2016. The laptop is currently being stored at the Miami Police Department, located at 400 NW 2nd Avenue, Miami, Florida under AC#16005289.

Case 1:17-cr-00008-WJM Document 91-2 Filed 04/20/18 Page 4 of 9

ATTACHMENT B

Description Of Items To Be Searched And Seized

The following items and information related to the scheme and activities that are described and are the subject of the affidavit in support of this warrant (which affidavit is incorporated by reference herein), which items constitute evidence and/or instrumentalities of violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2, and the following items relating to the electronic storage, access and retrieval of such items:

1. Computer software, consisting of digital information, which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word processing, networking, graphics, accounting, presentations or spreadsheet programs), utilities, compilers, interpreters, and communications program;

2. Computer passwords and other data security devices, that is, a string of alphanumeric characters designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programmable code. A password usually operates as a sort of digital key to "unlock" particular storage data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, destroy or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it;

3. Evidence of who used, owned, or controlled the computer hardware, computer software, or computer passwords at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

4. Evidence of software that would allow others to control the computer hardware, computer software, or computer passwords, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

5. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer hardware, computer software, or computer passwords;

6. All records relating to or constituting, or arising from communications, transactions or contemplated transactions with the individuals described as "Target 1" or the "FBI-UC" in the affidavit accompanying this application and warrant, which affidavit is incorporated by reference herein, including, without limitations, emails, text messages, text notes,

Case 1:17-cr-00008-WJM Document 91-2 Filed 04/20/18 Page 5 of 9

memoranda, spreadsheets, drafts and final versions of opinion letters, contracts, agreements, promissory notes, corporate governance documents, shareholder consent forms, and stock certificates. Such records shall further include records, materials, communications used in the preparation of these documents.

7. All records relating to or constituting, or arising from communications, transactions or contemplated transactions with or relating to FusionPharm, Vertifresh, LLC, Bayside Realty, LLC, Meadpoint Ventures, the individuals described as "Target 1" or "Target 2" in the affidavit accompanying this application and warrant, which affidavit is incorporated by reference herein, including, without limitations, emails, text messages, text notes, memoranda, spreadsheets, drafts and final versions of contracts, agreements, promissory notes, corporate governance documents, shareholder consent forms, and stock certificates. Such records shall further include records, materials, communications used in the preparation of these documents. Such records shall further include "current information letters" and other written submissions to OTC Markets, and records, materials, communications used in the preparation of such submissions. Excluded from this category are any items constituting valid, non-waived privileged attorney-client communications;

8. In relation to any of the items sought in paragraphs 6 and 7 above, any and all correspondence or communications (in any iterations, including drafts) in whatever format (including electronic images of envelopes, letters, papers, email messages, chat logs, electronic messages, and other digital data files) and attachments, excluding, however, any items constituting privileged attorney-client communications;

9. In relation to any of the items sought in paragraphs 6 and 7 above, any and all records concerning securities transactions, including transfer agent records and correspondence and communications involving transfer agents, and brokerage or bank account records reflecting securities transactions or proceeds of such transactions;

10. Bank records, including bank statements, financial statements, cancelled checks, deposit tickets, receipts for cashier's checks, money orders, traveler's checks, records relating to wire transfers, loans, brokerage statements, and credit card information;

11. All computer files that act as "address books" or other list of correspondents and contacts;

12. Records and information related to foreign and domestic travel.

13. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2 or that show who used, owned, possessed, or controlled the computer.

Case 1:17-cr-00008-WJM Document 91-2 Filed 04/20/18 Page 6 of 9

14. Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2.

15. Evidence of who used, owned, or controlled the computer to commit or facilitate the commission of the crimes described, or at the time the things described in this warrant were created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence.

16. Evidence of software that may allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security provisions or software designed to detect malicious software or unauthorized use of the device, and evidence of the lack of such malicious software.

17. Evidence of the attachment to the computer of other storage devices or similar containers for electronic evidence.

18. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer.

19. Evidence of how and when the computer was used or accessed to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

20. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage.

**Search Procedure**

1. Law enforcement personnel will first make an exact duplicate of the hard drive contained on the laptop computer.

2. A "filter" or "taint" team, as described in paragraphs 60 and 61 of the accompanying Affidavit, will be employed to review and segregate records and items containing privileged attorney-client communications.

Case 1:17-cr-00008-WJM Document 91-2 Filed 04/20/18 Page 7 of 9

3. Law enforcement personnel will then review all information and records contained on the computer to determine the information to be seized by law enforcement personnel pursuant to Attachment B.

4. With respect to any information or records that appear exclusively to be related to criminal acts other than the violations set forth herein will not be further examined unless and until a search warrant is applied for and issued for evidence of any such separate criminal act.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 17-cr-0008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

**v.**

1. GUY M. JEAN-PIERRE

Defendants.

---

**UNITED STATES' RESPONSE**
**MOTION FOR JAMES HEARING [89]**
**and**
**TO COURT'S ORDER [ECF 90]**

---

The United States of America, through undersigned counsel, opposes Defendant's Motion for a *James* Hearing [docket 89] and advises the court in accordance with its order [ECF 90] that it intends to offer evidence pursuant to Fed. R.Evid. 801(d)(2)(E). The government also advises the court that it is impossible to submit a proffer utilizing the court's website not only by May 2, 2018 but also by the trial date of May 21 respectfully asks the court to reconsider that portion of ECF 90. Whatever utility a proffer log may have in some cases, it would have no value in this case as any such log in this case would be most likely hundreds of pages long and would not aid the court in assessing the admissibility of the statement.

I. FACTUAL BACKGROUND

The defendant is charged with a conspiracy with two named individuals and other unnamed individuals to violate certain federal laws and to impede and obstruct the SEC. The conspiracy is alleged to have occurred over a three year period between 2011 and

Case 1:17-cr-00008-WJM Document 93 Filed 04/23/18 USDC Colorado Page 2 of 8

2014. The conspiracy is detailed over 24 pages of the indictment. The conspiracy is alleged to involve the creation, organization and marketing of stocks in a micro-cap company, Fusion Pharm, Inc. The coconspirators are alleged to be persons controlling Fusion Pharm. The defendant is alleged to have worked with those individuals in his capacity as an attorney. Thousands of statements were made over the three year period by the coconspirators in the form of verbal conversations, emails and documents. These statements included overly criminal statements as well as statements promoting the company which although not overtly criminal in nature nevertheless promoted the goals of the conspiracy of promotion of the success of the company.

## II. LEGAL ANALYSIS

A. There is no requirement for the Court to conduct a pre-trial *James* hearing.

The government submits there is no requirement for a pre-trial hearing assessing the admissibility of co-conspirator statements made during and in furtherance of a conspiracy to commit security fraud. While a court *may* satisfy the prerequisites for admission of a co-conspirator statement against another by holding a *James* hearing, for which the Tenth Circuit found reasonable,[1] such a hearing is not required by the

---

[1] Other Circuits do not favor *James* hearings. In fact, the Fifth and Eleventh Circuits (birthplace of the *James* decision) have effectively abandoned pretrial determinations of admissibility and most district courts make such determinations of admissibility at trial. *United States v. Williams*, 264 F.3d 561 (5th Cir. 200 1)(It is not an abuse of discretion to determine the requirements of Fed. R. Evid. 801 (d)(2)(E ) without conducting a James hearing); *United States v. Fragoso*, 97 8 F.2d 89 6, 89 9 (5th Cir. 1992) (*James* has never required a hearing outside the presence of the jury.); *United States v. Barshov*, 73 3 F.2d 84 2, 85 0 (11th Cir. 1984) ("[[I]f the district court concludes that a James hearing is not reasonably practical, it can admit the statements subject to the government later connecting them up " with sufficient evidence.); *United States v. Hines*, 717 F.2d 1481, 1488 (4th Cir. 1983) (This court has held that a district court need not conduct a pre-trial James hearing to determine admissibility.); *United States v. Baltas*, 236 F.3d 27, 34-35 (1st Cir. 2001) (Noting that if the district court "determines it is not reasonably practical to require a showing to be made before admitting the evidence, [it] may admit the statement subject to being connected up."

Case 1:17-cr-00008-WJM Document 93 Filed 04/23/18 Page 3 of 8

Circuit. *United States v. Gonzalez-Montoya*, 161 F.3d 643, 648-49 (10th Cir. 1998); *United States v. Roberts*. 14 F.3d. 502, 514 (10th Cir. 1993). Rather than hold a pre-trial hearing, the court may provisionally admit a statement "with the caveat that ... the party offering [it] must prove the existence of the predicate conspiracy through trial testimony or other evidence." *Id*. at 649; *United States v. Merrick*, 299 F. App'x 820, 822 (10th Cir. 2008); *United States v. Owens*, 70 F.3d at 1118, 1123 (10th Cir. 1995). The determination of which of these alternatives to choose resides in the discretion of the trial court. *United States v. Aguilera-Meza*, 329 F. App'x 825, 833 (10th Cir. 2009); *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994). The evidentiary content of the hearsay statement, as well as other evidence, may be considered in making that determination. See Fed.R.Evid. 801(d) (2); see also *United States v. Bourjaily*, 483 U.S. 171, 181 (1987)[2]; *Gonzalez-Montoya*, 161 F.3d at 649.

In assessing the admissibility of coconspirator statements without a pre-trial hearing, the Court can make preliminary factual findings on the record regarding the admissibility of the statements and assess an order of proof offered by the government. See *United States v. Perez*, 989 F.2d 1574, 1580 (10th Cir.1993) (en banc). Proof that a conspiracy existed and that a statement was made during its existence and in furtherance of the conspiracy need be established only by a preponderance of evidence. *Bourjaily*, 483 U.S. at 175.

B. Preferred Order of Proof

---

[2] Although it declined to determine whether or not a court could rely solely upon the statements of conspirators to establish the conspiracy, the Court in *Bourjaily* noted, "We think there is little doubt that a coconspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." *Id.* at 180.

Case 1:17-cr-00008-WJM Document 93 Filed 04/23/18 Page 4 of 8

The Federal Rules of Evidence changed long-standing common law practices concerning the admission of co-conspirator statements. The determination of the admissibility of out-of-court declarations pursuant to F. R. Evid. 801(d) (2), 803, or 804(b) (3) is a question for the trial court to decide. *United States v. Jackson*, 627 F.2d 1198, 1218 (D .C. Cir. 1980). See also *United States v. Lippner*, 676 F.2d 456, 463-464 (11th Cir. 1982).

The order of proof on the admissibility of co-conspirator hearsay is governed by Federal Rule of Evidence 104(a):

> Preliminary questions concerning the . . . admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination, [the court] is not bound by the rules of evidence except those with respect to privileges.

Rule 1101(d) (1) provides in similar fashion that the rules of evidence "do not apply" to "[t]he determination of questions of fact preliminary to admissibility of evidence . . ." Accordingly, the Government, in "proving up" co-conspirator statements, and the Court, in making its admissibility determinations, are not bound by the rules of evidence except those concerning privileges. The "preferred order" of proof for the admission of out-of-court statements through application of Rule 801(d)(2)(E) permits connecting up strategies, proffers, pretrial hearings or any reasonable combination of approaches.

In *Bourjaily*, 483 U.S. at 183-84, the Supreme Court held that the Constitution did not require "independent inquiry into the reliability of statements that satisfy the requirements of Rule 801(d) (2)(E)."[3] The Court expressly eschewed "an opinion on the

---

[3] The Court noted the historical foundation of its holding. "[T]he co-conspirator exception to the hearsay rule is steeped in our jurisprudence. In *Delaney v. United States*, 263 U .S. 586, 590, 44 S.Ct. 206, 207, 68 L.E d. 462 (1924), the Court rejected the very challenge petitioner brings today, holding that

Case 1:17-cr-00008-WJM Document 93 Filed 04/23/18 Page 5 of 8

proper order of proof that trial courts should follow in concluding that the preponderance standard has been satisfied in an ongoing trial." Id. at 176 n.1; accord *United States v. Jeffrey*, 128 F. App'x 680, 697 (10th Cir. 2005).

Subsequent to *Bourjaily*, the Tenth Circuit clarified the meaning of the term "preferred order of proof" in *United States v. Hernandez*, 829 F.2d 988 (10th Cir. 1987). The court stated that the "preferred order of proof" simply refers to the requirement that the trial court make the requisite factual determination of the existence of a conspiracy prior to allowing coconspirator statements to be heard by the jury. *Id.* at 994, n.6. The court also noted "this order of proof does not involve a right to a pretrial hearing on admissibility, and in no way precludes the trial judge from exercising his considerable discretion and conditionally admitting the statements subject to later being connected up." Id. (emphasis added); see also *United States v. Pinto*, 838 F.2d 426, 433 (10th Cir. 1988).

The Tenth Circuit has recognized that "[i]n many cases, the trial court allows coconspirator hearsay into evidence before the requisite facts have been established in reliance upon the government's representation that such proof will be forthcoming later in the trial." *United States v. Perez*, 989 F.2d 1574, 1582 (10th Cir. 1993) (en banc). Courts have consistently rejected the necessity of a "mini-trial" on the merits of the evidence either prior to trial, or even outside the presence of the jury. *Id*.; *United States v. Monaco*, 700 F.2d 577, 581 (10th Cir. 1983) (a trial court has no obligation to

---

there can be no separate Confrontation Clause challenge to the admission of a co-conspirator's out -of-court statement. In so ruling, the Court relied on established precedent holding such statements competent evidence. We think that these cases demonstrate that co-conspirator's statements, when made in the course and in furtherance of the conspiracy, have a long tradition of being outside the compass of the general hearsay exception." *Id*. at 183.

Case 1:17-cr-00008-WJM Document 93 Filed 04/23/18 Page 6 of 8

determine admissibility of possible hearsay at the pretrial stage); *United States v. Burger*, 773 F. Supp. 1419, 1427 (D. Kan. 1991) (court's practice is to conditionally admit co-conspirator statements, subject to the government later connecting the co-conspirators and their statements to the conspiracy); *United States v. Barker*, 623 F. Supp. 823, 830 (D. Colo. 1985) ("[T]he Tenth Circuit does not require a 'mini-hearing' to be held outside the presence of the jury. Rather, in this circuit, the co-conspirator statements may be conditionally admitted by the trial court."). Accordingly, this Court may properly exercise its discretion in determining to proceed by way of proffer, and is particularly justified in doing so under the circumstances of this case.

C. If the court orders a hearing based upon *James* concerns, such a hearing should be held during the trial as the issues are not complex or time consuming during trial.

Under the above-cited precedents, the government submits that the defendants' motions for a *James* hearing should be denied as the Court will be able to make rulings during the trial on Rule 801(d)(2)(E) statements. While the subject matter may be other than ordinary – securities fraud, the issues are not so complex to require a separate hearing. Simply stated, fraud is fraud. If three individuals contrive a mechanism to defraud others, assessing whether a statement made by any one of them is during or in furtherance of that goal is not rocket science. However, if the Court determines an issue arises which need be determined by the equivalent of a *James* hearing, such a hearing should be held during the trial. The defendant has not cited any precedent requiring a pre-trial *James* hearing. Tenth Circuit precedent suggests such hearings, if held at all, should be held during trial, outside the presence of the jury. While the Tenth Circuit precedent indicates that a *James* hearing may be preferred, it is clearly not

Case 1:17-cr-00008-WJM Document 93 Filed 04/23/18 USDC Colorado Page 7 of 8

mandated. Those cases which express such a preference do not specify that such a hearing be held in advance of trial. "In determining whether a conspiracy existed, the district court may hold a separate *James* hearing, outside the presence of the jury, or it may provisionally allow the evidence with the understanding that the offering party will present evidence during the course of the trial that will prove the existence of the predicate conspiracy." *Merrick*, 299 F. App'x at 821 (emphasis added). The Circuit clearly anticipates the *James* hearing would be "outside the presence of the jury," during a trial; not at a pre-trial hearing where there is no jury of which to be outside the presence.

## III. CONCLUSION

The evidence in this case will show a conspiracy that involved owners, employees, and third parties that all worked under a corporate vail the covered a three plus year fraud scheme. If the Court orders a James hearing, essentially, the Court will have a mini trial before the trial because much of the evidence will duplicate. In other words, co-conspirators' statements is the bulk of the evidence the government will submit in order to prove the case against defendant Jean-Pierre. A pre-trial, or even during-trial, *James*-type hearing is totally unnecessary for the preliminary assessment of admissibility. Creating a log containing thousands of statements, written or verbal, would do nothing to aid the court in making an assessment of admissibility as any such log would comprise hundreds of pages with a shorthand reference to any "statement." The discovery in this case consists of over a million pages. The creation of a *James* log will be a great burden for evidence that may not even be offered for the truth of the matter asserted, thereby, another reason why Courts don't regularly require *James* logs.

Case 1:17-cr-00008-WJM Document 93 Filed 04/23/18 USDC Colorado Page 8 of 8

As such, the defendant's request which resulted in the court's order [ECF 90] is untimely and that order should be reconsidered by the court.

WHEREFORE, the United States objects to the holding of a pre-trial *James* hearing. Such advance "mini-trials" are not required by law and are a waste of the Court's time and the parties' resources. The United States respectfully asks the Court to deny the motion and to reconsider its order for a *James* log

Respectfully submitted this 23rd day of April, 2016.

ROBERT TROYER
United States Attorney

By: *s/ Jeremy Sibert*
JEREMY SIBERT
Assistant United States Attorney
1801 California St, Suite 1600
Denver, Colorado 80202
Telephone: 303-454 0100
Facsimile: 303-454 0403
Email: jeremy.sibert@usdoj.gov
Attorney for the government

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of April, 2018, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO MOTION TO SUPPRES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Attorneys for Defendant**

By: *s/Jeremy Sibert*
JEREMY SIBERT
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. GUY M. JEAN-PIERRE
a/k/a Marcello Dominguez de Guerra

Defendant.

---

**DEFENDANT'S REPLY TO "UNITED STATES RESPONSE MOTION (*sic.*) FOR JAMES HEARING [89] and TO COURT'S ORDER [ECF 90]"**

---

Defendant Guy M. Jean-Pierre, through counsel, in conformity with the Court's oral directive at the close of the 23 April 2018 hearing in this matter and with the Court's follow-up written order [# 95], hereby replies to the Government's opposition [# 93] to Defendant's motion [# 89] for a pretrial determination of the admissibility of alleged co-conspirators' statements under Federal Rule of Evidence 801(d)(2)(e).

Background: Mr. Jean Pierre made his request on 20 April 2018 for a *James* hearing. In response to Defendant's motion, that same day the Court ordered [# 90] the Government to do two things. The first was to declare by 25 April 2018 whether the Government intended to admit evidence at trial under Fed. R. Evid. 801(d)(2)(E). If so, the second obligation of the Government was to file by 2 May 2018 a *James* proffer, using this Court's prescribed form therefor.

On 24 April 2018, the Government filed a response [# 93] both to Defendant's motion and to the Court's order thereon. The Government stated that it does intend to

Case 1:17-cr-00008-WJM Document 99 Filed 04/25/18 Page 2 of 5

offer 801(d)(2)(e) evidence at trial. However, the Government also advised that "it is impossible to submit a proffer utilizing the court's website not only by May 2, 2018 but also by the trial date of May 21 . . ." As such, the prosecution asked the Court to reconsider its order concerning the proffer.[1]

The Government contends that the evidence in this case is so voluminous that neither a *James* proffer nor a *James* hearing would assist the Court in assessing the admissibility of the statements at issue. To wit, the Government advises in its response that "[s]imply stated, fraud is fraud" and that "[i]f three individuals contrive a mechanism to defraud others, assessing whether a statement made by any one of them is during or in furtherance of that goal is not rocket science." AUSA Sibert also orally advised the Court and the defense at the 24 April 2018 hearing that virtually ***all the Government's evidence*** consists of co-conspirator hearsay statements.

Under these circumstances, the Government's opposition to *James* proceedings is misplaced. The apparent sheer enormity of the Government's co-conspirator evidence does not undercut the value of a *James* hearing or a *James* proffer. Rather, the asserted high mass of such evidence actually enhances the need for the utilization of a pretrial determination of the admissibility of such evidence.

The more putative co-conspirator statements that the Government seeks to offer at trial, the greater the potential exists for the erroneous admission of statements that do not fall within the ambit of Fed.R.Evid. 801(d)(2)(e). Any such erroneous

[1] At the close of the 24 April 2018 hearing before this Court, Assistant United States Attorney Sibert advised that the Government could timely complete the proffer but that it would be approximately "200 to 400 pages long." Yesterday, the Government filed "Government's Motion Opposing Any Further Continuance" [#97], in which it advised that the prosecution could in fact, if ordered, file a *James* proffer by 2 May 2018.

Case 1:17-cr-00008-WJM Document 99 Filed 04/23/18 USDC Colorado Page 3 of 9

admissions easily could violate Defendant's Sixth Amendment Confrontation Clause rights and/or could lead to a mistrial or to reversal on appeal. The inefficiencies of such results are manifest, but they could easily be avoided by requiring the Government to do what the Court has already ordered: prepare a *James* log, utilizing the form that is part of the Court's practice standards.

Mr. Jean-Pierre does not take issue with the Government's original (but since retracted) written assertion that it would be impossible to prepare an adequate *James* log by the currently scheduled start of the trial on 21 May 2018, never mind by the earlier, Court-imposed deadline of 2 May 2018. The Government evidently changed its position on this matter only upon realizing that the impossibility assertion might lead to a continuance of the trial, an occurrence that the prosecution vehemently opposes. With all due respect to this change of heart, though, Mr. Jean-Pierre believes that the Government's original reaction to production of a *James* log in such a short period was the correct one: it is not a reasonably doable task.

However, even if the Government can produce such a 200 to 400 page *James* log by 2 May 2018, there is not sufficient time between then and trial for the defense adequately to respond to that proffer (never mind for the Court to rule upon it), especially given the other trial preparation exigencies with which the defense must deal during that period. Therefore, Mr. Jean-Pierre respectfully asks that the Court: to continue the trial[2] and to establish a reasonable schedule: a) for the Government to

---

[2] The particulars of this request are set forth in detail in Defendant's concomitantly filed "Defendant Jean-Pierre's Opposed Motion to Continue Jury Trial and Opposed Motion for an Ends of Justice Finding of Up to 30 Days of Excludable Time on Grounds of Complexity, Pursuant to Title 18 U.S.C. §

Case 1:17-cr-00008-WJM Document 99 Filed 04/25/18 Page 4 of 5

provide its *James* proffer, b) for the defense to respond, c) for a hearing to be held, and d) for the Court to rule. Mr. Jean-Pierre suggests that the parties be allowed at least thirty days apiece to provide their respective submissions.

WHEREFORE, Defendant respectfully urges the Court to proceed as he has advocated, both in his original motion and in this reply.

Dated this 25th day of April, 2018.

Respectfully submitted,

s/Thomas E. Goodreid
Thomas E. Goodreid
Attorney at Law
1801 Broadway, Suite 1400
Denver, CO 80202
(303) 296-2048x.136
*t.goodreid@comcast.net*
Attorney for Defendant Guy M. Jean-Pierre

3161".

Case 1:17-cr-00008-WJM Document 99 Filed 04/25/18 Page 5 of 5

**CERTIFICATE OF SERVICE**

I certify that on this 25th day of April, 2018, I electronically filed the foregoing **DEFENDANT'S REPLY TO "UNITED STATES RESPONSE MOTION (*sic.*) FOR JAMES HEARING [89] and TO COURT'S ORDER [ECF 90]"** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/Thomas E. Goodreid
Thomas E. Goodreid
Attorney at Law
1801 Broadway, Suite 1400
Denver, CO 80202
(303) 296-2048x.136
*t.goodreid@comcast.net*
Attorney for Defendant Guy M. Jean-Pierre

Case 1:17-cr-00008-WJM Document 104 Filed 03/18/18 Page 1 of 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 17-cr-00008-WJM

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**1. GUY M. JEAN-PIERRE,**

**Defendant.**

---

**RESPONSE TO MOTION TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH OF HP LAPTOP [91]**

---

Without specifically identifying anything in particular he seeks to suppress, the defendant has filed a motion to suppress “fruits” of the search of laptop computer which was seized by officers of the Miami Police Department when he was arrested on a federal warrant from New York in Miami, Florida on April 29, 2016. The computer was not searched immediately after its seizure incident to the arrest but was searched after a warrant authorizing the search was obtained from a United States Magistrate Judge from the Southern District of Florida. The defendant attached the warrant and application and affidavit for the warrant to his motion [ECF 91-1 and 91-2]. Due to the quality of the reproduction of those documents, the government is attaching what is believed to be a more legible copy of those documents as Exhibits 1 (Warrant) and 2 (Application) to this response. Both of those documents are Bates stamped and

Case 1:17-cr-00008-WJM Document 104 Filed 05/18/18 Page 2 of 15

reference to those documents herein will be by exhibit number and Bates stamp page in the lower right without the prefix assigned to the Bates stamp (e.g. Ex. 2, 233, rather than Ex. 2, INV_00000233).

The defendant seeks suppression of non-specified evidence seized from the computer on limited grounds. He does not allege the computer was unconstitutionally seized at the time of the defendant's arrest by the Miami police. He does not allege any constitutional defect in the manner in which the computer was searched. Although the defendant was a disbarred attorney in the United States at the time of the search, he does not allege any violation of attorney/client privileged material or any defect in the process as it relates to his former professional status. Rather, the defendant seeks to suppress evidence seized from the computer on the ground the search warrant was constitutionally infirm because (1) it lacked particularity in its description of what could be seized; and was thus (2) "overbroad"; (3) the affidavit did not establish a nexus between the offenses described in the affidavit and the items authorized to be seized; and (4) the affidavit in support of the warrant failed to establish probable cause of a conspiracy referred to in the description of the items to be seized in Attachment B to the warrant and affidavit.

<u>The application process</u>.

A 37-page affidavit authored by FBI Special Agent Ernbert Kule-Thomas in support of an application for a search warrant for the defendant's laptop computer was presented to United States Magistrate Judge Patrick A. White on July 29, 2016 in Miami, Florida (Ex. 2). The laptop was in the custody of the Miami police department at the time. Magistrate White issued the warrant the same day (Ex 1, 258). A part of the

application and warrant were Attachment A, the description of the item to be searched, and Attachment B, a multi-page description of what the warrant authorized to be seized (Ex. 1, 260-264; Ex. 2,  250-254).

The focus of the defendant's motion is Attachment B.  The defendant claims the description of the type of items which were subject to seizure under the warrant are (a) not described with sufficient particularity as to limit the person(s) conducting the search to be able to discern boundaries of what may be permissibly searched for and seized [ECF 91, pp. 4-9]; and/or (b) described in such a manner as to not be related to any of the crimes or criminal activity described in the affidavit [ECF 91, pp. 9-11].

The defendant's third challenge to Application B is a narrow complaint alleging a lack of probable cause.  He complains that Application B permitted the seizure of items reflecting violations of 18 U.S.C. § 371, Conspiracy, when the affidavit did not support probable cause that any conspiracy occurred [ECF 91, pp. 11-12].  The defendant makes no challenge relating to probable cause with regard to the other offenses referred to in Application B, mail and wire fraud, money laundering and aiding and abetting.

The application for the warrant.

The affidavit describes an investigation into stock trades involving a micro-cap company called FusionPharm, Inc., which had been ongoing since December 2013 (Ex. 2, ¶ 2, 212).  The affiant explained he believed there was probable cause to believe the defendant engaged in wire fraud, securities fraud, money laundering and "related offenses." (Ex. 2, ¶ 2, 213).  He then explained what he believed to be evidence showing probable cause to believe those offenses had occurred and were committed by

Case 1:17-cr-00008-WJM Document 104 Filed 05/18/18 Page 4 of 15

"Target 1, Target 2" and the defendant between 2010 and 2013 (Ex. 2, 212-219). The affiant then explained an undercover operation involving Target 1, an undercover FBI agent and the defendant which occurred between February and April 2016 (Ex. 2, 220-235) which culminated in a meeting in Miami on April 29, 2016, in which the unlawful activities were discussed and at which the defendant was observed utilizing the laptop computer which was the subject of the search (Ex. 2, 235-239).

As with many search warrant applications, the place to be searched was described in Attachment A, and the items to be seized were described in Attachment B. Both of those attachments were part of the warrant which was authorized, as well (Ex. 1, 260-264). The description of the items which the warrant authorized to be seized in Attachment B had the overall limitation on anything seized being "related to the scheme and activities that are described and are the subject of the affidavit in support of this warrant (which affidavit is incorporated by reference herein)" (Ex. 1, 261, lines 1-3).

The execution of the warrant.

After Magistrate Judge White signed the search warrant, the warrant was executed. The laptop was brought to Denver by federal agents and provided to a forensic computer examiner at the Rock Mountain Regional Forensics Laboratory who was not a part of the investigation. That examiner was also provided with a copy of Attachment B. The examiner mirrored the hard drive of the laptop which was later provided to the defendant's attorney. The examiner conducted a forensic examination of the computer and copied computer files which only came within the scope of Attachment B and provided those files to FBI agents working on this case. Because the examiner was not a part of the ongoing investigation, he or she had to rely on

Case 1:17-cr-00008-WJM Document 104 Filed 05/18/18 Page 5 of 15

Attachment B in making the determination what was to be looked for and to be seized. Because the examiner had attachment B, which incorporated the affidavit, he/she was able to make reference to the descriptions contained in the first sentence of the attachment as being described in the affidavit.

The defendant's motion does not contain any reference to the suppression of any particular materials. The defendant does not specify what, if anything, he wants the court to suppress or why, for example, such evidence is beyond the scope of matters described in the affidavit. Rather, the defendant appears to be arguing that because the description in Attachment B is so overbroad the warrant is a general warrant and completely invalid on its face.

## LEGAL ANALYSIS

I. The warrant was not overbroad or a general warrant.

The Fourth Amendment requires that all warrants must "particularly describe] ... the persons or things to be seized." "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927). "Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). The Fourth Amendment limits searches, and thus avoids exploratory rummaging "by requiring a 'particular description' of the things to be seized." *Id*. "[A] search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Sheppard*,

Case 1:17-cr-00008-WJM Document 104 Filed 05/18/18 Page 6 of 15

468 U.S. 981, 988 n. 5 (1984). Evidence seized in violation of the particularity requirement is subject to suppression. See, e.g., *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *United States v. Leary*, 846 F.2d 592, 600–01 (10th Cir.1988).

Partly because records of one's entire life can be found on a computer's hard drive, from the most important to the most trivial, courts have recognized the significance of the particularity requirement of the Fourth Amendment when assessing warrants to search computers. In *United States v. Christie,* 717 F.3d 1156, 1164 (10th Cir. 2013) the Tenth Circuit summarized the relevant law when addressing the issue of the particularity requirement of the Fourth Amendment:

> No doubt the particularity requirement and its underlying purposes are fully engaged when investigators seek to search a personal computer. Personal computers can and often do hold "much information touching on many different areas of a person's life." *United States v. Walser*, 275 F.3d 981, 986 (10th Cir.2001). They can contain (or at least permit access to) our diaries, calendars, files, and correspondence—the very essence of the "papers and effects" the Fourth Amendment was designed to protect. U.S. Const. amend. IV. In today's world, if any place or thing is especially vulnerable to a worrisome exploratory rummaging by the government, it may be our personal computers.
>
> This court's efforts to apply the Fourth Amendment's particularity requirement to computer searches are still relatively new. But the parties seem to agree that our cases already draw at least one recognizable line. On the one hand, we have held invalid warrants purporting to authorize computer searches where we could discern no limiting principle: where, for example, the warrant permitted a search of " 'any and all' information, data, devices, programs, and other materials," *United States v. Otero*, 563 F.3d 1127, 1132–33 (10th Cir. 2009) (alteration omitted), or "all computer and non-computer equipment and written materials in [a defendant's] house," *Mink v. Knox*, 613 F.3d 995, 1011 (10th Cir. 2010). On the other hand, we have said warrants may pass the particularity test if they limit their scope either "to evidence of specific federal crimes or [to] specific types of material." *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005); see also *United States v. Campos*, 221 F.3d 1143, 1147 (10th Cir. 2000); *United States v. Burke*, 633 F.3d 984, 992 (10th Cir. 2011); *Brooks,* 427 F.3d at 1252.

Case 1:17-cr-00008-WJM Document 104 Filed 05/18/18 Page 7 of 15

The defendant, here, bases his attack on the breadth of the warrant on too strict a reading of the warrant and failing to extend the limitations contained in the first sentence of Attachment B to all of the remaining description of items to be seized [ECF 91, pp. 6-7, 8-9]. The defendant recognizes the description of the items to be seized in paragraphs 1-9 of Attachment B "may have met the 'particularity' requirement" [ECF 91, p 3] but he complains that the descriptions in the remaining paragraphs have no limitation on what can be seized. This conclusion ignores the first sentence of Attachment B, which applies to the remainder of the descriptions of items in Attachment B, paragraphs 1-20:

> The following items and information ***related to the scheme and activities that are described and are the subject of the affidavit in support of this warrant*** (which affidavit is incorporated by reference herein), which items constitute ***evidence and/or instrumentalities*** of ***violations of Title 18, United States Code, Sections 371k 1341, 133 1956, 1957and 2***, and the following items relating to the electronic storage, access and retrieval of such items:

(Ex. 1, 261; Ex. 2, 251) (emphasis added). Viewing all of the descriptions in all of the paragraphs without this context certainly makes the description appear to be overbroad. However, the limitation contained in the first sentence applies to everything in Attachment B.

Similar language in warrant applications has been viewed by the Tenth Circuit as making otherwise general language specific enough for Fourth Amendment purposes. In *Christie* the warrant sought to search a computer for a number of items[1] which on their face would seem overbroad. Like here, the description had an overall limitation on

---

[1] "All photographs (of murdered child). All correspondence and documents relating to [child]. All records and information … All addresses and/or contact information of friends and family who may have had regular contact with [defendant and child]."

Case 1:17-cr-00008-WJM Document 104 Filed 05/18/18 USDC Colorado Page 8 of 15

the general descriptions of "all," being "all records and information relating to the murder, neglect, and abuse of [child]".

Like here, the defense in *Christie* argued the "all records and information" language of the warrant made it a general warrant. The government argued the warrant did not "authorize it to rifle through Ms. Christie's files looking for any sort of incriminating evidence. Instead, it had to direct all of its search efforts, including those specified in paragraph 3, to information related 'to the murder, neglect, and abuse' of BW. And that limiting direction, the government submits, is particularity enough under our case law." *Id.* at 1165.

The court adopted the government's argument that all of its search efforts were restricted by the warrant's opening language. '[W]e cannot deny that an objectively reasonable officer acting in good faith could have read the warrant before us in this same manner—as restricting the scope of any search to information 'related to the murder, neglect and abuse of [child]." *Id.* at 1165. The court held the language in the warrant was sufficiently restrictive and precise to meet the requirements of the Fourth Amendment.

A defendant made a similar argument in *United States v. Brooks,* 427 F.3d 1246 (10th Cir. 2005). A portion of the warrant authorized a search for "correspondence, including printed or handwritten letters, electronic text files, emails and instant messages." The defendant arguing such a description invalidated the entire warrant as being a general warrant. The court noted the language preceding the list of items to be searched for as including "evidence of child pornography." The court concluded this limitation applied to the general language of the correspondence paragraph and this did

Case 1:17-cr-00008-WJM Document 104 Filed 03/18/18 Page 9 of 15

not cause the warrant to be a general warrant. The court held, "While the warrant does not explicitly instruct officers to look solely for those text files containing child pornography, in context – and certainly in the view of the offices conducting the search – the restrictions placed upon the searches for image files also apply to the other types of files. In other words, although the language of the warrant may, on first glance, authorize a broad, unchanneled search through Brooks' document files, as a whole, its language more naturally instructs officers to search those files only for evidence related to child pornography. In this light, the warrant should be – and was – rad by officers to implicitly place the same restriction (*i.e.* to locate child pornography) on the scope of the entire search." *Id* at 1252.

In the case before the court, the limitation on the search contained in the first sentence of Attachment B, similarly limits the object of the search – evidence of violations of the named statute as supported by and described in the affidavit which was, by its terms, incorporated by reference into Attachment B.[2] The warrant did not command the officers conducting the search to plow through the laptop and seize whatever they wanted. Thus the warrant is not invalid on its face due to the description contained in Attachment B.

II. The defendant's complaint about a lack of nexus (a) should be rejected on its face for lack of specificity; and (b) to the extent the argument can be discerned, it is not supported.

The defendant avers there is no nexus "between many of the items seized and the crimes" specified in the warrant application [ECF 91, pp. 9-11]. After making this

---

[2] Incorporating by reference an affidavit into a search warrant can supply necessary, or clarifying, specificity. *United States v. Raglin,* 663 Fed. Appx. 409 (6th Cir. 2016) (not published).

Case 1:17-cr-00008-WJM Document 104 Filed 05/18/18 Page 10 of 15

allegation, the defendant offers no reference to any evidence seized which arguably is not within the nexus of the criminality described in the affidavit. Thus, it is a bit difficult to respond.

The defendant gives an example that the generically described items such as "bank records, address books, records and information related to foreign and domestic travel and records of internet activity" would not have any nexus to the criminal acidity described in the warrant. The defendant then cites numerous cases for the proposition that there must be some nexus between that which is authorized to be seized and the description of the unlawful activity in the affidavit. The government has no argument with that authority. The problem with the defendant's argument is that he presents no nexus between the legal proposition cited and the facts of this case. Accordingly, this portion of his argument should be denied without a hearing.

A defendant is entitled to a hearing on a motion to suppress "only when a defendant presents facts justifying relief." *United States v. Chavez-Marques*, 66 F.3d 259, 261 (10th Cir. 1995). An evidentiary hearing is required only when there is raised in the motion "factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to be validity of the search are in issue." *United States v. Glass*, 128 F.3d 1398, 1408-9 (10th Cir. 1997) (emphasis added) (citation omitted). A defendant who requests a suppression hearing bears the burden of showing that there are disputed issues of material facts. *United States v. Chavez-Marquez*, supra at 261, citing *United States v. Woods*, 995 F.2d 713 (7th Cir. 1993).

Case 1:17-cr-00008-WJM Document 104 Filed 05/18/18 Page 11 of 15

Other circuits agree. To warrant a hearing, a motion to suppress must allege more than "conclusory allegations of illegality." *United States v. Ramirez-Garcia*, 269 F.3d 945, 947 (9th Cir. 2001); *see also United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998) (Evidentiary hearings are warranted only when the allegations and moving papers are sufficiently definite, specific and non-conjectural and detailed enough to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion.")(Citation omitted); *United States v. Calderon*, 77 F.3d 6, 9 (1st Cir. 1996); *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir.1983).

As noted above, the description of the items authorized to be seized contained in the numbered paragraphs of Attachment B are modified by the language in the first sentence of the attachment which contains the limitation of evidence of violations of a number of listed criminal code violations – mail fraud, wire fraud, securities fraud, conspiracy and money laundering, as described in the incorporated affidavit. Thus, the categories referenced in the defendants motion – bank records, address books, records and information related to foreign and domestic travel and records of internet activity – should be modified to add the phrase "related to the scheme and activities described in the affidavit which constitute evidence of the enumerated offenses." With that modification, it is clear that any such record or document so modified by definition would have a nexus to the offenses described.

For example, the affidavit describes potential money laundering involving the deposit of money in a bank in the Dominican Republic. Bank records on the laptop may provide some connection or evidence of such and as such should be able to be

Case 1:17-cr-00008-WJM Document 104 Filed 05/18/18 Page 12 of 15

searched. The affidavit is replete with communications between coconspirators. Internet activity should be able to be searched for such evidence of a connection between the players. The same could be said for address books and records. Travel domestically can also be evidence of connection between the coconspirators, especially since FusionPharm is in Denver and the defendant was either in the D.R. or in Florida. All such examples are too numerous to describe.

III. The defendant's motion to suppress based upon the lack of probable cause of a conspiracy should be denied due to the lack of specificity and because there was probable cause of a conspiracy.

The defendant asks the court to suppress non-specified evidence of a conspiracy on the ground the affidavit did not contain probable cause that the laptop searched would not contain evidence of a criminal conspiracy [ECF 91, pp. 11-12]. In his three sentence argument, the defendant does not specify what evidence was seized from the computer which was seized arguably only because it was evidence of a conspiracy and not evidence of any of the substantive criminal offenses referenced in Attachment B and in the affidavit.

For the reasons noted above, this portion of the motion should be denied for lack of specifity.

Secondly, an examination of the affidavit in support of the search warrant is replete with evidence of two or three individuals, including the defendant, committing a variety of offenses relating to the issuance of stock for FusionPharm in the early portions of this decade (Ex. 2, 213-220) and relating to the undercover operation occurring between February and April 2016 (Ex. 2, 220-239). This evidence shows

Case 1:17-cr-00008-WJM Document 104 Filed 05/18/18 Page 13 of 15

concerted action to accomplish a common criminal goal in which the criminal actors are acting together. Such is circumstantial evidence of a conspiracy.

IV, If the court finds the warrant to be in violation of the Fourth Amendment, evidence obtained from the computer should not be suppressed and the agents conducting the search were acting in objective good faith.

The government maintains the warrant at issue was not facially invalid as being an overbroad, general warrant. However, "[e]ven if a warrant fails to satisfy the Fourth Amendment's particularity requirement, the exclusionary rule should not be applied to suppress evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate judge that is ultimately deemed invalid." *United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017) (citing *United States v. Leon*468 U.S. 897, 922 (1984); *United States v. Chambers,* 882 F.3d 1305 (10th Cir. 2018); *United States v. Christie, supra.*

So long as the executing officer's reliance on a defective warrant is reasonable, the good faith exception is appropriate. *Id.*

Here, if the court finds the warrant lacked the requisite specificity, the government is prepared to offer evidence the person who executed the warrant at the Rocky Mountain Crime Laboratory was not associated with the investigation at all and only relied on the limitations he perceived as being contained within Attachment B, including the limiting first sentence. Accordingly, "the inspectors in this case had reason to believe the warrant was valid, considered themselves authorized to search only for the evidence of crimes for which they had probably cause and conducted their search accordingly." *United States v. Otero*, 563 F.3d 1127, 1136 (10th Cir. 2009).

Case 1:17-cr-00008-WJM Document 104 Filed 05/18/18 Page 14 of 15

CONCLUSION

Based upon the arguments and authorities adduced herein, the defendant's motion to dismiss evidence obtained from search of HP laptop should be denied.

Dated this 18th day of May 2018.

Respectfully submitted,

Robert C. Troyer
United States Attorney

By: *s/Jeremy Sibert*
JEREMY SIBERT
Assistant United States Attorney
U.S. Attorney's Office-Denver
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: (303)454-0100
Email: Jeremy.Sibert@usdoj.gov

Case 1:17-cr-00008-WJM Document 104 Filed 05/18/18 Page 15 of 15

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of May 2018, I electronically filed the foregoing **RESPONSE TO MOTION TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH OF HP LAPTOP [91]** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By: *s/ Brittany Herrera*
BRITTANY HERRERA
Legal Assistant
United States Attorney's Office

# Exhibit 1

Case 1:17-cr-00008-WJM Document 104-1 Filed 05/18/18 Page 2 of 8

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

An HP Laptop (Serial # CND01818BD) that was inventoried by the Miami Police incident to the arrest of GUY JEAN-PIERRE, aka Marcelo Dominguez de Guerra, in Miami, FL on April 29, 2016. The laptop is currently being stored at the Miami Police Dept., located at 400 NW 2nd Avenue, Miami, Florida under AC#16005289.

Case No. 16 mj 3033-White

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Southern District of Florida *(identify the person or describe the property to be searched and give its location)*:

An HP Laptop (Serial # CND01818BD) that was inventoried by the Miami Police Incident to the arrest of GUY JEAN-PIERRE, aka Marcelo Dominguez de Guerra, in Miami, Florida on April 29, 2016. The laptop is currently being stored at the Miami Police Department, located at 400 NW 2nd Avenue, Miami, Florida under AC#16005289.
SEE ATTACHMENT A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

**YOU ARE COMMANDED** to execute this warrant on or before Aug 12, 2016 *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to DUTY
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of ____________.

Date and time issued: July 29, 2016 @ 11:09 AM

[signature]
*Judge's signature*

City and state: Miami, Florida

Patrick A White, U.S. Magistrate Judge
*Printed name and title*

Case 1:17-cr-00008-WJM Document 104-1 Filed 05/18/18 Page 3 of 3

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| 16mj 3033 | 7/29/2016 1:30 pm | TFO Rafal Kawiorski |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

1 black bookbag
1 HP laptop serial # CND01818BD
1 Charging cable
1 headphone

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 7/29/2016

[signature]
*Executing officer's signature*

Enbert Kyle Thomas Special Agent
*Printed name and title*

INV_00000259

Case 1:17-cr-00008-WJM Document 104-1 Filed 05/18/18 Page 4 of 8

**ATTACHMENT A**

**Description Of Item To Be Searched**

An HP Laptop (Serial # CND01818BD) that was inventoried by the Miami Police incident to the arrest of GUY JEAN-PIERRE, aka Marcelo Dominguez de Guerra, in Miami, Florida on April 29, 2016. The laptop is currently being stored at the Miami Police Department, located at 400 NW 2nd Avenue, Miami, Florida under AC#16005289.

Case 1:17-cr-00008-WJM Document 104-1 Filed 05/18/18 Page 5 of 8

## ATTACHMENT B

### Description Of Items To Be Searched And Seized

The following items and information related to the scheme and activities that are described and are the subject of the affidavit in support of this warrant (which affidavit is incorporated by reference herein), which items constitute evidence and/or instrumentalities of violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2, and the following items relating to the electronic storage, access and retrieval of such items:

1. Computer software, consisting of digital information, which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word processing, networking, graphics, accounting, presentations or spreadsheet programs), utilities, compilers, interpreters, and communications program;

2. Computer passwords and other data security devices, that is, a string of alphanumeric characters designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programmable code. A password usually operates as a sort of digital key to "unlock" particular storage data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, destroy or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it;

3. Evidence of who used, owned, or controlled the computer hardware, computer software, or computer passwords at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

4. Evidence of software that would allow others to control the computer hardware, computer software, or computer passwords, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

5. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer hardware, computer software, or computer passwords;

6. All records relating to or constituting, or arising from communications, transactions or contemplated transactions with the individuals described as "Target 1" or the "FBI-UC" in the affidavit accompanying this application and warrant, which affidavit is incorporated by reference herein, including, without limitations, emails, text messages, text notes,

Case 1:17-cr-00008-WJM Document 104-1 Filed 05/18/18 Page 6 of 8

memoranda, spreadsheets, drafts and final versions of opinion letters, contracts, agreements, promissory notes, corporate governance documents, shareholder consent forms, and stock certificates. Such records shall further include records, materials, communications used in the preparation of these documents.

7. All records relating to or constituting, or arising from communications, transactions or contemplated transactions with or relating to FusionPharm, Vertifresh, LLC, Bayside Realty, LLC, Meadpoint Ventures, the individuals described as "Target 1" or "Target 2" in the affidavit accompanying this application and warrant, which affidavit is incorporated by reference herein, including, without limitations, emails, text messages, text notes, memoranda, spreadsheets, drafts and final versions of contracts, agreements, promissory notes, corporate governance documents, shareholder consent forms, and stock certificates. Such records shall further include records, materials, communications used in the preparation of these documents. Such records shall further include "current information letters" and other written submissions to OTC Markets, and records, materials, communications used in the preparation of such submissions. Excluded from this category are any items constituting valid, non-waived privileged attorney-client communications;

8. In relation to any of the items sought in paragraphs 6 and 7 above, any and all correspondence or communications (in any iterations, including drafts) in whatever format (including electronic images of envelopes, letters, papers, email messages, chat logs, electronic messages, and other digital data files) and attachments, excluding, however, any items constituting privileged attorney-client communications;

9. In relation to any of the items sought in paragraphs 6 and 7 above, any and all records concerning securities transactions, including transfer agent records and correspondence and communications involving transfer agents, and brokerage or bank account records reflecting securities transactions or proceeds of such transactions;

10. Bank records, including bank statements, financial statements, cancelled checks, deposit tickets, receipts for cashier's checks, money orders, traveler's checks, records relating to wire transfers, loans, brokerage statements, and credit card information;

11. All computer files that act as "address books" or other list of correspondents and contacts;

12. Records and information related to foreign and domestic travel.

13. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2 or that show who used, owned, possessed, or controlled the computer.

Case 1:17-cr-00008-WJM Document 104-1 Filed 05/18/18 Page 7 of 8

14. Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2.

15. Evidence of who used, owned, or controlled the computer to commit or facilitate the commission of the crimes described, or at the time the things described in this warrant were created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence.

16. Evidence of software that may allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security provisions or software designed to detect malicious software or unauthorized use of the device, and evidence of the lack of such malicious software.

17. Evidence of the attachment to the computer of other storage devices or similar containers for electronic evidence.

18. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer.

19. Evidence of how and when the computer was used or accessed to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

20. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage.

**Search Procedure**

1. Law enforcement personnel will first make an exact duplicate of the hard drive contained on the laptop computer.

2. A "filter" or "taint" team, as described in paragraphs 60 and 61 of the accompanying Affidavit, will be employed to review and segregate records and items containing privileged attorney-client communications.

Case 1:17-cr-00008-WJM Document 104-1 Filed 05/18/18 Page 8 of 8

3. Law enforcement personnel will then review all information and records contained on the computer to determine the information to be seized by law enforcement personnel pursuant to Attachment B.

4. With respect to any information or records that appear exclusively to be related to criminal acts other than the violations set forth herein will not be further examined unless and until a search warrant is applied for and issued for evidence of any such separate criminal act.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 1 of 49

# Exhibit 2

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 2 of 49

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

An HP Laptop (Serial # CND01818BD) that was inventoried by the Miami Police incident to the arrest of GUY JEAN-PIERRE, aka Marcelo Dominguez de Guerra, in Miami, FL on April 29, 2016. The laptop is currently being stored at the Miami Police Dept., located at 400 NW 2nd Avenue, Miami, Florida under AC#16005289.

Case No. 16 mj 3033-White

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

An HP Laptop (Serial # CND01818BD) that was inventoried by the Miami Police incident to the arrest of GUY JEAN-PIERRE, aka Marcelo Dominguez de Guerra, in Miami, Florida on April 29, 2016. The laptop is currently being stored at the Miami Police Department, located at 400 NW 2nd Avenue, Miami, Florida under AC#16005289. SEE ATTACHMENT A

located in the Southern District of Florida, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code Section 1343 | Wire Fraud |
| Title 18, United States Code Section 1956 | Money Laundering |

The application is based on these facts:

SEE ATTACHMENT AFFIDAVIT

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Ernbert S. Kule-Thomas, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 29, 2016

[signature]
*Judge's signature*

City and state: Miami, Florida

Patrick A. White, U.S. Magistrate Judge
*Printed name and title*

Certified to be a true and correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida
By [signature] Deputy Clerk
Date 7-29-16

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 3 of 49

**AFFIDAVIT**

I, Ernbert S. Kule-Thomas, being first duly sworn, hereby depose and state as follows:

1. I have been a Special Agent of the Federal Bureau of Investigation (FBI) since August 2014 and have been assigned to Miami, Florida since January 2015. My duties and responsibilities primarily include the investigation of criminal matters particularly related to white collar crime. My education includes a Bachelor's of Science degree in Business Administration – Accounting from University of Maryland College Park, five months of training at the FBI Academy, and various other continuing education classes provided by the FBI. I have received training and instruction in the field of investigation of white collar crime and have had the opportunity to participate in investigations relating to complex financial crimes.

2. Since in or about December 2013, Special Agents of the FBI, Postal Inspectors of the United States Postal Inspection Service (USPIS), and Internal Revenue Service Criminal Investigation (IRS-CID) Special Agents have been involved in a federal criminal investigation in the District of Colorado of activities and conduct arising from and relating to the operations of FusionPharm, Inc. ("FusionPharm"), an erstwhile publicly traded, microcap or "penny stock" company, headquartered in Commerce City, Colorado, and, in particular the conduct of two individuals (Targets 1 and 2) who constituted principals of the business and were de facto partners, concerning federal criminal securities, mail fraud, wire fraud, money laundering and tax offenses. As set forth below, during the course of the investigation, one of the principals of FusionPharm, Target 1, provided information about GUY JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, a disbarred lawyer, who formerly acted as the company's counsel, and Target 1 agreed to cooperate in an undercover investigation of JEAN-PIERRE. This affidavit is submitted in support of an application for the issuance of a search warrant for an HP laptop used by JEAN-PIERRE on April

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 4 of 49

29, 2016, which is currently in the custody of the Miami Police and further described in Attachment A hereto, based, in substantial measure, on the evidence developed as a result of this undercover investigation. Based on this and other evidence in the FusionPharm investigation, as summarized below, I submit that there is probable cause to believe that JEAN-PIERRE engaged in a wire fraud scheme, in violation of 18 U.S.C. §1343, and that he conducted and attempted to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity—namely, proceeds of securities fraud, wire fraud, mail fraud, and related offenses committed, among others, by Target 1, as aided and abetted by JEAN-PIERRE—with the intent to conceal or disguise the nature, location, source, ownership and control of such property, in violation of Title 18, United States Code, Sections 1956(a)(3) and 2. Because JEAN-PIERRE at times relevant to this investigation worked as an attorney, procedures (including the use of a "filter" or "taint" team) will be employed during the execution of the search warrant to ensure that attorney-client privileges are not violated.

3. The facts in this affidavit are based upon my communications with other federal agents who have personal knowledge of the events and circumstances described herein, interviews other federal agents involved in the FusionPharm and undercover investigations have conducted, other agents' review of consensually made and monitored recorded telephone calls and recorded conversations involving JEAN-PIERRE, other agents' review of bank account and other records acquired during the criminal investigation of this matter, and, with respect to FusionPharm, evidence developed in a parallel civil investigation conducted by the U.S. Securities and Exchange Commission (SEC). This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of the knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 5 of 49

statements described in this affidavit are related in substance and in part only. I am familiar with and attest to all of the facts and information stated in each of the paragraphs herein to the best of my knowledge and belief.

**Overview Of The FusionPharm Investigation**

4. The investigation of FusionPharm and its principals, Targets 1 and 2, commenced in or about December 2013, with a tip to the SEC from an SEC whistleblower. The focus of the investigation has been whether certain federal criminal offenses, including securities fraud, wire fraud, and money laundering, have been committed in relation, among other things, to the financial reporting and other disclosures made concerning FusionPharm, from the company's inception in early 2011 through in or about May 2014, in relation to the sale of FusionPharm common stock to the investing public during this time frame.

5. Targets 1 and 2 are related by marriage. Target 1 has been involved in a number of suspicious microcap stock transactions over the last decade, and was arrested in 2004 and later convicted in the Southern District of New York (Case No. 04-cr-556-SWK), in connection with his penny stock activities, on one count of conspiracy to commit securities fraud and commercial bribery, and one count of securities fraud. Target 2, a former CPA and business consultant for a national accounting firm, functioned as the President, CEO, and the sole director of FusionPharm.

6. A search was conducted of FusionPharm's business premises in May 2014, pursuant to a federal search warrant issued in the District of Colorado. From a review of electronic and paper records recovered in that search and other evidentiary sources (including, but not limited to, emails acquired from various email accounts, interviews of former and current FusionPharm employees, and proffer interviews of Targets 1 and 2), investigators in this case have concluded

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 6 of 9

that Targets 1 and 2, with the assistance of JEAN-PIERRE, orchestrated a systematic plot to defraud investors out of millions of dollars by implementing the following steps:

(a) Targets 1 and 2 created a series of affiliated entities owned, operated and controlled by Targets 1 and 2;

(b) They intentionally hid Target 1's control of FusionPharm and his criminal history from the investing public;

(c) Using these entities, through fraudulent press releases and their financial releases, they further misled investors into believing that FusionPharm was generating sizeable revenue and generating a profit, when, in reality, the overwhelming majority of the money flowing through these entities was generated through sales of stock they engineered and made through their affiliated entities;

(d) The stock sales were accomplished via a series of lies and misrepresentations that concealed the ownership and control of FusionPharm by Targets 1 and 2 and the stock being sold, thereby circumventing federal securities statutes and regulations proscribing the sale and distribution of unregistered securities by issuers and underwriters; and

(e) As a result of these stock sales, Targets 1 and 2 reaped over twelve million dollars in FusionPharm stock proceeds.

7. FusionPharm marketed itself as the creator and manufacturer of what it called the "PharmPods cultivation container system," featuring standard ISO steel shipping containers that FusionPharm "repurposed for use in indoor plant cultivation." The PharmPods, which housed growing lights and hydroponic growing equipment, were, at times, marketed by Targets 1 and 2

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 7 of 49

as vehicles to get fresh produce, such as lettuce, quickly and efficiently to restaurants and local groceries in urban markets. However, over time, the PharmPods were primarily marketed to cannabis growers in the United States and Canada. In or about late 2010, Targets 1 and 2 acquired a dormant publicly traded shell company, Baby Bee Bright Corporation, whose stock was traded over the counter on what was commonly known as "pink sheets" through OTC Markets Group ("OTC Markets"), a financial marketplace operating an Internet based trading platform.

8. The FusionPharm stock scheme involved the creation and use of multiple shell companies, including entities called Meadpoint Venture Partners, LLC and Bayside Realty Holdings, LLC, which were jointly controlled by Targets 1 and 2 and used as conduits to take FusionPharm stock controlled by Targets 1 and 2 that was restricted from public sale and transform that stock into stock that could be publicly bought and sold over the counter. Some of the FusionPharm common stock that was the subject of the scheme were the restricted shares received by Targets 1 and 2 when they obtained the dormant shell company, Baby Bee Bright Corporation. Other FusionPharm common stock used in the scheme were shares that they essentially invented or created for themselves by creating, with the advice and assistance of JEAN-PIERRE, bogus promissory notes that were convertible into shares of FusionPharm as repayment of purported loans made to FusionPharm by the shell entities Meadpoint and Bayside. In order to convert these shares into free trading stock, Targets 1 and 2, again with the help and advice of JEAN-PIERRE, exploited a particular regulatory exemption from federal securities registration for the shares, a registration "safe harbor" available under the Securities and Exchange Commission's (SEC) Rule 144. In order to avail themselves of the "safe harbor" in a way that afforded them the opportunity to sell FusionPharm stock without volume limitations, Targets 1 and 2, along with JEAN-PIERRE,

presented and prepared various documents for FusionPharm Inc.'s stock transfer agent[3] to, among other things, demonstrate compliance with SEC Rule 144. In particular, to avoid the volume limitations and allow unlimited share sales, Targets 1 and 2 had the purported sellers of the shares -- the shell entities they formed – demonstrate that they were not "affiliates" of FusionPharm. They also falsely represented that the shares had been in the hands of these non-affiliates for at least a year.

9. Under the Securities Act, Rule 144, an "affiliate" is defined as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with the issuer." In turn, Rule 405 of the Securities Act defines "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." As a result, the idea of "control" is critical to determining whether an individual or entity is an affiliate and, in turn, in determining whether that individual or entity can sell its unregistered shares all at once or over time without regard to the volume of shares offered into the market or whether it is limited in parsing out those shares in limited volume over specific time frames prescribed by securities regulation.

10. The documents prepared by Targets 1 and 2, with the assistance of JEAN-PIERRE, falsely represented and concealed Target 1's role and involvement in the company, among other things, and ultimately convinced the transfer agent that the shares nominally held by the shell entities could be sold without a restrictive legend that would advise purchasers that the shares were restricted from public resale. The convertible notes that they created for Meadpoint and Bayside,

[3] A transfer agent is assigned by a publicly traded company to keep track of the individuals and entities that own the company's stocks and bonds.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 9 of 49

the instruments through which they issued themselves more FusionPharm shares, were backdated to make it appear that the SEC Rule 144 one-year holding requirement had been met. The presentations of these documents involved wire communications that involved the State of Colorado, from where Targets 1 and 2 operated, the State of Florida, from where JEAN-PIERRE operated, and the State of Nevada, where the FusionPharm stock transfer agent was located.

**Background Of Guy JEAN-PIERRE**

11. Until in or about 2013, Guy JEAN-PIERRE was engaged in the practice of law in the United States, having at one point been licensed in the states of New York, Florida and California. In approximately 2007, JEAN-PIERRE started his own legal practice in Boca Raton, Florida, focusing on transactional and securities law matters and functioning as outside general counsel to small and medium-sized businesses. A significant aspect of JEAN-PIERRE's legal practice entailed preparing opinion letters, one type of which would be presented by his microcap, penny stock clients to the OTC Markets opining that there was adequate "current information" publicly available about these companies, and another type of opinion letter that would be presented to the stock transfer agents of these companies. These latter letters were used to help demonstrate to the transfer agent that the SEC Rule 144 registration "safe harbor" exemptions had been met, so that stocks held by certain prospective shareholders seeking to sell their shares in the public markets need not be designated as "restricted" or "control" shares and could be publicly sold without SEC registration. (These opinion letters are hereafter referred to as "Rule 144 Attorney Opinion Letters.")

12. On or about April 21, 2010, OTC Markets banned JEAN-PIERRE from issuing opinion letters finding that the companies that were the subjects of these letters were making

incomplete and inconsistent disclosures and that JEAN-PIERRE was not performing the due diligence necessary to opine about the disclosures. As a result of the ban, stock transfer agents also would no longer accept Rule 144 Attorney Opinion Letters from JEAN-PIERRE.

13. Following the OTC Markets ban, JEAN-PIERRE legally changed his name to "Marcelo Dominguez de Guerra," and, in December 2012, the SEC brought a civil suit against JEAN-PIERRE in the Southern District of New York (Case No. 12-cv-08886), alleging that he had committed securities fraud, over the course of May 2010 through April 2011, by causing to be issued over 100 fraudulent Rule 144 Attorney Opinion Letters in connection with the shares of nine different microcap companies, and by causing other types of fraudulent opinion letters to be submitted to OTC Markets on behalf of three microcap companies. The SEC's complaint alleged that, following his April 2010 OTC Markets ban, JEAN-PIERRE continued to submit opinion letters to the OTC Market in the name of his niece, a recently admitted lawyer. JEAN-PIERRE failed to defend the case and appeared to stop actively practicing law in South Florida by 2013. Government database records reflect that JEAN-PIERRE left south Florida for the Dominican Republic at about that time, as part of an apparent relocation to that country. On March 10, 2015, the Southern District of New York entered a default judgment against JEAN-PIERRE, ordering that he be obligated to pay over $1.49 million in disgorgement and civil penalties.

**JEAN-PIERRE's Involvement With FusionPharm And The Fraudulent Scheme**

14. The evidence developed in the investigation of FusionPharm to date reflects that, over the course of late 2010 through in or about August 2013, JEAN-PIERRE acted as FusionPharm's *de facto* general counsel. In early filings with OTC Markets, JEAN-PIERRE was listed as the company's Secretary and Legal Counsel. Email records reflect, and accounts by

witnesses confirm, that JEAN-PIERRE reviewed the fabricated and backdated convertible notes. Both records and witness accounts also reflect that JEAN-PIERRE essentially "ghost wrote," for the letterhead and signature of another attorney, opinion letters submitted on behalf of FusionPharm to OTC Markets and Rule 144 Attorney Opinion Letters to the FusionPharm transfer agent for sale of shares by the shell entities. Target 1, in proffer interviews, has confirmed that JEAN-PIERRE would have been aware of Target 1's extensive involvement in FusionPharm when JEAN-PIERRE prepared and caused to be submitted these opinion letters opining that the shell entities formed by Target 1 were not FusionPharm affiliates.

## The Undercover Operation

### Target 1 Becomes A Confidential Informant

15. In February 2016, as part of pre-indictment plea discussions, Target 1 submitted to a proffer of his information about the matters under investigation. At the conclusion of the proffer, Target 1 revealed that he had been in periodic contact with JEAN-PIERRE since the warranted search of FusionPharm's premises in May 2014 and that, over this time, JEAN-PIERRE was still acting as an attorney and had periodically solicited him for legal work involving securities and corporate matters with which Target 1 may be involved. Target 1 confirmed that JEAN-PIERRE had relocated to the Dominican Republic. He further related that JEAN-PIERRE was aware of the federal criminal investigation of FusionPharm and that Target 1 was a target of this investigation but that Target 1, as part of a ruse, had told JEAN-PIERRE that the investigation was turning into a tax investigation that Target 1 was in the process of resolving. Target 1 advised that he had recently had some discussions with JEAN-PIERRE regarding possible legal work that could be done concerning raising capital in the public securities markets; that the two had had preliminary

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 12 of 49

discussions about setting up an offshore account to hold payments that they both hoped to receive from the work; and that they had discussed a tentative meeting in the United States to further explore their opportunities.

16. Target 1 agreed to act as a Confidential Informant (CI) in initiating and pursuing further contact with JEAN-PIERRE in an undercover capacity under the direction of agents working on the FusionPharm investigation.

**The Undercover Calls And Email Communications**

17. Over the course of late February 2016 through late April 2016, Target 1, now acting as a CI, and operating out of Colorado, engaged in a series of recorded telephone calls and exchanged a series of emails with JEAN-PIERRE in the Dominican Republic. In these communications, Target 1, acting pursuant to law enforcement directions, advised JEAN-PIERRE that he and another individual, an FBI Special Agent acting in an undercover capacity (hereinafter, the FBI-UC), whom he introduced as his investor in various investment ventures, were seeking to resurrect and develop the hydroponic produce business that had previously been marketed by FusionPharm through a shell entity called Vertifresh LLC. Target 1 explained to JEAN-PIERRE that the FBI-UC had provided Target 1 with various amounts of cash in the past, but now the investor needed some return on the funds provided to Target 1. Their contemplated vehicle for accomplishing this, Target 1 related to JEAN-PIERRE, would be through the acquisition of a publicly traded shell company that they hoped to merge with Vertifresh LLC, followed by their sale of shares in the newly constituted company into the public securities markets. Target 1 also stated that Target 1 and the FBI-UC would be running Vertifresh but they both needed to be kept off the company paperwork due to "bumps" or problems in their respective pasts. In order to do

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 13 of 49

this, they would use a friend of the FBI-UC's to be listed in name only on company documents as Vertifresh's Chief Executive Officer, someone described as a "beard" (hereinafter "INDIVIDUAL A"). Target 1 advised JEAN-PIERRE that the two were looking for JEAN-PIERRE to prepare corporate documents and do the legal work necessary to facilitate the process once the shell company was identified. More importantly, Target 1 explained, they were looking for JEAN-PIERRE's help in identifying ways to obtain free-trading stock once the shell company was identified and the necessary paperwork was filed to get Vertifresh publicly traded on the OTC market. JEAN-PIERRE agreed to undertake this engagement and agreed, as part of it, to prepare a series of documents in draft form that would be presented to the FBI-UC at a meeting in Miami, Florida that was ultimately scheduled for the end of April 2016. As illustrated in the email and recorded conversations listed below, Target 1 worked with JEAN-PIERRE to come up with mechanisms, including a series of false and misleading documents that JEAN-PIERRE undertook to draft, to conceal Target 1's and FBI-UC's role with the company and provide Target 1 and the FBI-UC access to free-trading stock circumventing securities laws once the shell company was acquired.

18. On March 3, 2016, Target 1 had a recorded conversation with JEAN-PIERRE. During this call Target 1 laid out his plan for Vertifresh. Target 1 told JEAN-PIERRE that Target 1 and FBI-UC would be running Vertifresh but could not be considered "affiliates" because Target 1 needed to get money out of the market through the sale of Vertifresh's stock once a publicly traded shell was acquired and taken over by Vertifresh. He further related that the FBI-UC had a "buddy" who would come on as Vertifresh's CEO but would simply act as their "beard."[2] JEAN-

[2] It is understood from debriefings and conversations with Target 1 leading to the undercover operation that the term "beard", as used by him in conversation, refers to a person who would essentially act as a nominee. This term was

PIERRE recommended setting up a consulting agreement between Vertifresh and the FBI-UC to avoid the FBI-UC being perceived to be a decision-maker. They discussed using a convertible note to enable Target 1 and the FBI-UC to get free trading stock soon after the shell is acquired (similar to what JEAN-PIERRE had done with Targets 1 and 2 in relation to the FusionPharm scheme, as discussed above). In this connection, JEAN-PIERRE asked Target 1 how old was the debt that would be used as the basis for the convertible promissory notes, and, at the time, Target 1 indicated that the debt was between him and the FBI-UC and was a couple of years old but all based on "handshakes."[3] Target 1 told JEAN-PIERRE that both Target 1 and the FBI-UC do not want the stock they are issued to be in their own names. In discussing his contemplated role, JEAN-PIERRE reminded Target 1 that he was no longer a securities lawyer but could only act as a "consultant." He assured Target 1, however, that he would look for an attorney who would cooperate with them in the same way as the attorney who JEAN-PIERRE had found and used in connection with JEAN-PIERRE's work for FusionPharm (specifically the opinion letters that were written and submitted to OTC Markets and FusionPharm's transfer agent), mentioning that attorney by name.[4]

---

regularly used by Target 1 in conversations with others involved in the FusionPharm scheme and appeared to be a term understood by JEAN-PIERRE.

[3] The two would revisit this topic in later conversations, during which Target 1 would consistently advise JEAN-PIERRE that the debt that would be used for the convertible promissory notes was actually less than a year old but that he would use deposits from other deals involving Vertifresh in order to be in a position to demonstrate with a transfer agent, doing due diligence on a request to convert shares to free-trading status, that the debt upon which the conversion was claimed to be based was actually over one year old, one of the predicates under SEC Rule 144, as discussed above, in order to meet the regulatory exemption from SEC stock registration.

[4] As discussed above (paragraph 14), evidence in the ongoing investigation of Target 1 and Target 2 and the scheme involving FusionPharm reflects that JEAN-PIERRE recruited and essentially ghost-wrote opinion letters in relation to FusionPharm using the name of this particular attorney.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 15 of 49

19. On March 11, 2016, the following email was composed by Target 1, at the direction of federal law enforcement agents, and transmitted to JEAN-PIERRE covering this, among other subjects:

> ...Just want to make sure we are on the same page... As soon as we have a confirmed shell, we are going to want to get Vertifresh going since, as you know, we both have cash in this deal that we need to get out. Plus, we both need to sell some of our stock to put back in Vertifresh to get things going and build it. The CEO of Vertifresh is going to be [INDIVIDUAL A]. [FBI-UC] and I are going to be running things but [INDIVIDUAL A] will be on the paper. As soon as the shell is confirmed, we are going to need to get shares to [FBI-UC] and me....So, as you know you are going to be the man for all things legal and otherwise. A one stop shop. As discussed we will need all the paperwork to get Vertifresh up and trading, Opinion Letters, OTC letters, etc. Can you also draft the agreements necessary to get the stock in place for [FBI-UC] and me? With respect to this, which route should we take? You mentioned a friendly lawsuit or just do notes? Ill leave that with you to decide as long as the end result is the same.[5]

20. On March 30, 2016, Target 1 had a recorded conversation with JEAN-PIERRE. They discussed JEAN-PIERRE drafting the convertible note between Vertifresh and the FBI-UC without the specific dates and amounts. Target 1 told JEAN-PIERRE that the debt amount was about $50,000. On March 31, 2016, the following email was composed by Target 1 to summarize and clarify the call on March 30, 2016, at the direction of the agents, and transmitted to JEAN-PIERRE covering this, among other subjects:

> ...You will put together a convertible note....I'll need have this prior to our call with [FBI-UC] on Monday. When should we date the doc for? In addition the total amount of the note is for $50,000 as discussed. This will be the table that we will all eat off of so to speak. [FBI-UC] will get half of it and you and I will split the other half. Can we boiler plate the opinions and non affiliate docs? I know its premature however when we meet

[5] Based on work in this investigation, including debriefings of Target 1, it is understood that the term "friendly lawsuit" is a common reference to an alternative path towards acquiring—or generating—common stock in microcap companies that is then converted into free-trading shares through the SEC Rule 144 registration exemption process. Under this approach, a financial obligation of the stock issuer, i.e., the microcap company, to the putative shareholder is acknowledged and an "agreement" struck between the two to discharge the obligation and exonerate the debt through its conversion into shares of the issuer's common stock. The discharge or compromise of the obligation in this manner is essentially ratified by a Court as part of a settlement of a lawsuit brought against the issuer to honor the financial obligation.

with him I want to show him all were waiting for is him!....Good thing is all the work will be done and it will be nothing but plugging in numbers and symbols."

21. As the contemplated meeting approached, JEAN-PIERRE prepared and emailed Target 1 a series of draft documents he proposed to review with the FBI-UC. On April 1, 2016, JEAN-PIERRE, through his email account advisor@flbusinesshelp.com, sent Target 1 a document entitled "Convertible Promissory Note". In the email, JEAN-PIERRE wrote, "This morning, I was totally focused on trying to get you at least a proposed Convertible debt instrument before your call later on today with [FBI-UC], it's attached hereto." The draft Convertible Promissory Note listed Vertifresh, LLC as the "Issuer" with the Investor listed as "Name". Notably, the effective date of the agreement was listed as February 28, 2015 and stated that "between February 28, 2013 and the Issuance Date, the Holder transferred to the Issuer US Dollars in the aggregate amount of $50,000". The note also included a section documenting the conversion rights of the lender.

22. On April 4, 2016, Target 1 had another recorded conversation with JEAN-PIERRE. During this conversation, Target 1 stated the funds provided by the FBI-UC were provided in cash with some of it coming in during 2015 and some in 2016. Target 1 assured JEAN-PIERRE that he had "bank statements back in 15" that can identify "cash to backstop all that from other funds". JEAN-PIERRE replied, "Right" and to make sure that the documentation is more than a year old.

23. On April 5, 2016, the following email was composed by Target 1, at the direction of agents, and transmitted to JEAN-PIERRE covering this, among other subjects:

> The company name that [FBI-UC] will be using is [FBI-UC's business]. Signing for Vertifresh will be [INDIVIDUAL A]. Let's have all the opinions and 144 non affiliate docs template'd with names filled in. In addition just make the note for .01. No one will take a sub penny stock anymore so .01 is fine.... We need a doc that ties [FBI-UC's business] to us for half of the note. As discussed I like the guy however were talking about a lot of money here and you and I need to be paid no matter what. ...I know you were concerned about the authentication for the T/A being the cash payments and the timing of

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 17 of 49

> such. I have other deposits from different deals that I can point to and use for authentication purposes when the time comes to submit to the T/A.[6]

24. On April 6, 2016, Target 1 had another recorded conversation with JEAN-PIERRE and the FBI-UC. The FBI-UC, Target 1, and JEAN-PIERRE discussed JEAN-PIERRE drafting all the template documents so that the FBI-UC could review the documents when they were in Miami. They scheduled the Miami trip for the end of April.

25. On April 6, 2016, JEAN-PIERRE, through his email account advisor@flbusinesshelp.com, sent Target 1 an email stating, among other things:

> Just wanted to tell you that I finally had success getting an attorney who would be able to handle the 144 opinion letter (assuming of course that everything is in order with respect to the Note and back-up documentation).

26. On April 14, 2016, the following email was composed by Target 1, at the direction of agents, and transmitted to JEAN-PIERRE covering this, among other subjects:

> Ok, to outline what is left to do prior to our meeting as promised to [FBI-UC]:...As for the note date, I have a cash deposit into Vertifresh's bank account on April 21, 2015, that we can use as proof of funding. It's not from [FBI-UC], but since it's cash, we should be able to tie it to the note, right?...An agreement tying up [FBI-UC's business] for 50% of the note. The other is ours. How you making it with offshore company name for us? Well need something by the meeting I imagine."

27. On April 17, 2016, Target 1 had another recorded conversation with JEAN-PIERRE. During this call they discussed again the terms to be included in the convertible note and how to portray and substantiate the debt that would be claimed as the basis for the note. Target 1 told JEAN-PIERRE that he "got money even recently that I am just throwing in the note," and JEAN-PIERRE responded, "I hope that nobody is on the phone listening to this. Ok." He then laughed. Target 1 reiterated he had "backup paperwork from other stuff but the numbers are the same". JEAN-PIERRE suggested that the note amount be changed from the even number of

---

[6] T/A is referring to the Transfer Agent.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 18 of 49

$50,000. As the call concluded, Target 1 reminded JEAN-PIERRE to "template" the Rule 144 Attorney Opinion Letters. JEAN-PIERRE responded affirmatively but cautioned Target 1 that he could not guarantee that the attorney he would find for them would use JEAN-PIERRE's format and that JEAN-PIERRE, in fact, hoped that this attorney would use his own format rather than that of JEAN-PIERRE.[7]

28. On April 23, 2016, JEAN-PIERRE, through his email account advisor@flbusinesshelp.com, sent Target 1 an email stating, "Please find the attached revised note together with the proposed conversion docs. Obviously there are some holes to be filled and they should be obvious. Let's talk about them later." The email included a revised Convertible Promissory Note with a new backdated Issuance date of April 21, 2015 and the FBI-UC's Business name that was provided to JEAN-PIERRE on April 5, 2016. The note stated that "On or before the Issuance Date, the Holder [FBI-UC] transferred to the Issuer [Vertifresh, LLC] US Dollars in the aggregate amount of $50,000". Per the prior recorded conversations and emails exchanges, JEAN-PIERRE knew this fact to be untrue and that TARGET 1 was using the convertible note to get free-trading stock without meeting the required holding period. In the same email, JEAN-PIERRE also included a template for the Non-Affiliation letter stating that the [FBI-UC business] "not now and, during the preceding three months and has not been or never an affiliate of the Company as that term is defined by Rule 144 of the Act". JEAN-PIERRE knew this statement was untrue because he had been told by Target 1 that the FBI-UC would be running Vertifresh with Target 1, thus, making him an affiliate.

[7] At this juncture, with this comment, JEAN-PIERRE presented a mixed message concerning his intended use of the attorney who he would involve in the Vertifresh scheme. As discussed below, this topic would be squarely addressed in JEAN-PIERRE's meetings with the FBI-UC and Target 1 in Miami, Florida and JEAN-PIERRE's long-term objectives for how the attorney and his name would be used would be clarified in those meetings.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 19 of 49

29. On April 23, 2016, JEAN-PIERRE, through his email account advisor@flbusinesshelp.com, sent Target 1 a second email stating, "I just realized I had neglected to send you the proposed agreement tying us to [FBI-UC business]; I'm forwarding it to you now." JEAN-PIERRE attached a document titled "Purchase and Assignment Agreement" that, in summary, granted Target 1 and JEAN-PIERRE a 50% interest in the FBI-UC's business for the purchase price of $1.00 allowing them to share in the proceeds of the convertible note.

30. JEAN-PIERRE identified an attorney in Nashville, Tennessee who would sign the 144 Attorney Opinion Letters. On April 24, 2016, JEAN-PIERRE, through his email account advisor@flbusinesshelp.com, sent Target 1 two separate emails stating, among other things:

> Everyone does their opinion differently. I can certainly put together an opinion and send you that tomorrow but the lawyer's opinion will most certainly look very different....I definitely want to keep him very much arms-length, that I'm contacting him to do opinions just like any other client....I decided to send you the sketch if what the 144 debt conversion would look like if I were still in the business of writing opinions.[8]"

JEAN-PIERRE included a draft of an Attorney Opinion Letter that could be used to issue shares to FBI-UC's Business from the convertible note. This letter again stated that FBI-UC's Business, the shareholder, had met the required holding period and was not an affiliate of the Issuer, both facts JEAN-PIERRE knew to be false based on the recordings described above.

31. On April 25, 2016, Target 1 had another recorded conversation with JEAN-PIERRE. During this call, they discussed again the contemplated role of the Nashville attorney. JEAN-PIERRE did not tell the attorney that he used to be an attorney. JEAN-PIERRE indicated

[8] During the meeting in Miami, JEAN-PIERRE stated that his goal was to eventually be drafting the 144 Attorney Opinion Letters for Vertifresh and then submitting them to the Nashville attorney for his signature.

that he wanted to protect the Nashville attorney from being seen as a "shell for Guy Jean-Pierre".[9] JEAN-PIERRE said "If there is a problem you know with me, with you, with anybody else, that's fine. But I don't want them to say to some guy who doesn't even know what's going on, say hey you're tainted because you know you and Guy Jean-Pierre are colluding on committing crimes". JEAN-PIERRE said that he did not want to write the Attorney Opinion Letters because of the issues he had in the past with writing Attorney Opinion Letter's that were signed by another Attorney.[10]

32. As their conversations unfolded about the Vertifresh, LLC plan, Target 1 and JEAN-PIERRE renewed their discussions about how the two would be paid for their work. In this regard, on March 3, 2016, during a recorded phone call, the two discussed how, given their respective situations, it would be difficult for them to hold stock in their own names, and they discussed possibly setting up a Panamanian corporation to hold stock and cash that they both hoped to receive from their "consulting work." They returned to this subject during a recorded telephone conversation on March 24, 2016. During this conversation, Target 1 questioned JEAN-PIERRE as to how he preferred to get paid in relation to services that would be performed in connection with the plan to turn Vertifresh LLC into a publicly traded company and sell its shares. JEAN-PIERRE responded by stating "mostly cash, I am trying to put together [] an offshore company" and that "cash is better but if it is a really good deal [] some stock down the line is also valuable [] it's a good combination." Six days thereafter, in another recorded call, JEAN-PIERRE told Target 1 that

---

[9] These are the literal words used by JEAN-PIERRE in the recorded conversation. From its context, your affiant understands JEAN-PIERRE to be conveying that he wanted to avoid having the Nashville attorney perceived as a mere nominee or conduit for JEAN-PIERRE.

[10] These past issues, as discussed above, included JEAN-PIERRE's use of his niece's name and credentials, giving rise to the SEC civil enforcement action in New York, and similar use of another attorney in relation to FusionPharm. This second attorney has been the subject of questioning by the SEC in its parallel investigation of FusionPharm and Target 1 and JEAN-PIERRE had previously discussed the fact of pending federal investigations of FusionPharm.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 21 of 49

he had an account for himself "here in the DR" and that he would prefer to receive payment in the Dominican Republic because of his situation in the United States and that he would not want to get "a couple of dollars" only to have it taken due to a judgment, an apparent reference to the pending SEC default judgment.

33. On March 31, 2016, an email was composed by Target 1, at the direction of agents, and transmitted to JEAN-PIERRE covering this, among other subjects:

> Have you identified a place for us to set up our financial house down there? If not when? Were going to need this immediately after we meet. For obvious reasons neither you or I want to show income/securities holdings here. I'll need you to walk me thru it. .... In addition there is some urgency on my side as I need to move some cash that a friend is holding for me. Ill sleep better knowing it is getting a tan so to speak.

34. On April 4, 2016, Target 1 had another recorded call with JEAN-PIERRE. He explained to JEAN-PIERRE that he wanted nothing in the United States "because of this IRS thing I can still have nothing here." During this call, at the direction of agents working on the undercover investigation, Target 1 brought up his reference in the March 31 email to his urgent need to move cash. Target 1 explained to JEAN-PIERRE that the money was given to the friend to hold as a "just in case situation and unfortunately just in case came up" and that the money consists of "the last of the stock money that I got out of Scottsdale[11] so I am sittin with a bit of cash and I need put it somewhere so I need you to... I need to get it out sooner than later." Target 1 then reiterated that he was going to be meeting with the IRS in May to discuss settlement and that Target 1 "can't have this cash in the United States" and that he "dare not touch it, I can't have him give me anything [] because I cannot connect the dots here." Upon hearing this, JEAN-PIERRE responded, "Right, right, right, right, no, understood." Towards the end of the

[11] "Scottsdale" is a reference to a brokerage firm in which Target 1 had an account that he used to deposit and hold some of the FusionPharm stock once restrictions had been lifted on the stock certificates by the FusionPharm stock transfer agent.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 22 of 49

conversation, Target 1 returned to the subject of the cash he needed to move; he asked JEAN-PIERRE if he has a trust account or another "mechanism" in the Dominican Republic where the cash can be "housed" because Target 1 had "a couple hundred K here and its got to go." JEAN-PIERRE replied, "I have my own account down here, let me see [] what I can do" and that he was going to speak to a lawyer in the Dominican Republic on an unrelated matter and that he (JEAN-PIERRE) was going to see what the lawyer suggested.

35. At the agents' direction, Target 1 sent a confirmatory email on April 5, 2016, stating, in part:

> The last bit of FSPM[12] stock sales cash I have needs to be moved. My buddy has been great holding it but I want it where its safe. I'll gladly pay an administration fee for such services initially and ongoing. I suggest a yearly based on the amount. Be best if it was something like a trust account of yours as I know you and feel safe. Or something of that nature. As long as it's safe!

JEAN-PIERRE responded by email the following day, stating, "I'm still working on the trust account issue here. I'm hoping to have an answer soon."

36. On April 15, 2016, JEAN-PIERRE emailed Target 1 with the following information:

> With respect to a trust account, I still have not been able to get hold of that lawyer. It seems almost like he's avoiding me in any event. For initial small amounts and until I can get the equivalent of a trust account set up, if you trust me, we can use the regular bank account I have here in the DR. I'm including that info below. We will need it in any case because that's probably where I will want to get paid anyway if things work out.
>
> Guy M. Jean Pierre
>
> Banco Popular Dominicano

[12] "FSPM" refers to the stock ticker symbol for FusionPharm common stock in the OTC markets.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 23 of 49

Acct# 768192916

SWIFT number BPDODOSXXXX

37. Two days later, Target 1 and JEAN-PIERRE had another recorded telephone conversation. During the call, Target 1 asked JEAN-PIERRE to update him on JEAN-PIERRE's progress in helping Target 1 to move FusionPharm stock proceeds that Target 1 had ostensibly parked with his "friend," informing JEAN-PIERRE that the source of the money was from "the very first bit of conversions [] I did with Bayside and Meadpoint with you in the beginning of 2013."[13] Target 1 reiterated that this was money that the U.S. Government was attempting to seize and that Target 1 accordingly wanted to "get it out of here" as soon as possible. JEAN-PIERRE responded by suggesting that they could use his personal account in the Dominican Republic for the time being. Target 1 indicated that he would start with a $10,000 transfer, that could be used to set up a permanent account in the Dominican Republic, and that the total amount that Target 1 wanted to move to the Dominican Republic would be approximately $250,000. The two then turned to the subject of JEAN-PIERRE's expected payment for these services, which Target 1 characterized as an "Admin Fee." JEAN-PIERRE responded, "How does 5% sound?" The two then agreed to a 5% fee that JEAN-PIERRE could begin to take out of the first money transfer installment, together with whatever funds he would need in order to create the second corporate account in the Dominican Republic. JEAN-PIERRE then referenced the bank account information that he had emailed to Target 1 two days before.

[13] This reference is to the backdated, fabricated convertible promissory notes discussed above that falsely depicted loan funds as having been provided by Meadpoint and Bayside to FusionPharm that had, as one of their purported features, the ability to convert tranches of debt reflected by the notes into FusionPharm common stock at predetermined conversion rates.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 24 of 49

38. The conversation then transitioned to how to transfer the remaining "$240,000.00." Target 1 advised JEAN-PIERRE that he could wire the remaining $240,000.00 directly to the corporate account for which JEAN-PIERRE will be the administrator in the Dominican Republic but questioned JEAN-PIERRE on "how should I do that, should I do that in one shot, should I do it in pieces, I know nothing about banking in the DR." JEAN-PIERRE responded by stating "I think pieces [] is generally better because [] big amounts certainly would grab somebody's attention." JEAN-PIERRE said he would speak with a lawyer "on Monday" to learn the dollar thresholds for the wire transfers.

39. On April 22, 2016, JEAN-PIERRE advised Target 1 in a recorded call that it would take a little over a month to form the corporation and an additional two weeks to set up the corporate bank account. He estimated that it would take approximately a week if they wanted to set up a personal account in the Dominican Republic to hold money. Target 1, acting on the agents' directions, then steered the conversation to the possibility of transferring funds through a cashier's check. JEAN-PIERRE reacted by stating that "he [the third party in the United States] can't do a wire, I take it," to which Target 1 responded, "I think he is worried about how it's going to look, in wiring the money out, to keep it really on the down low and quiet so to speak" and that the third party holding the money thinks that having cashier's checks drawn on the account and then overnighting it to JEAN-PIERRE "optically looks better, for you know, the purposes of why we are doing this." JEAN-PIERRE responded that Bank of America is a big bank that accepts any form of currency and that Bank of America has a correspondent relationship with Banco Popular, which would clear the cashier's check. Following the call, JEAN-PIERRE texted to Target 1 an address for a Federal Express location in the Dominican Republic to which Target 1 could mail the check.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 25 of 49

40. On that day, an FBI Special Agent involved in the undercover investigation purchased a cashier's check from 1st Bank in the amount of $5,000.00, made payable to "Guy M. Jean Pierre." The cashier's check was purchased from the 1st Bank branch located at 4350 Wadsworth Blvd, Wheat Ridge, CO 80033. The cashier's check was subsequently mailed from a FedEx location at 3545 Quebec Street, Denver, Colorado 80207 to the attention of "Marcelo Dominguez de Guerra" at Av Padre Ramon Dubert 15, Jared Metropolitanos, Santiago, Dominican Republic, 452. The address in the Dominican Republic is associated with a FedEx World Service Center.

41. In a follow-up recorded phone call later that day, Target 1 told JEAN-PIERRE that the check was on its way and to expect it on April 26th. Target 1 reminded JEAN-PIERRE that his person in the United States holding the money wanted to use cashier's checks "for the purpose of, you know, everybody looking" and "to keep it on the down low, keep the radar." Though he remarked that wire transfers were quicker, JEAN-PIERRE acknowledged the concern and stated that they would figure it out. The two concluded the conversation by discussing at length Target 1's need ultimately to have a "secondary account" held in the name of someone close to JEAN-PIERRE, so that there is a "one step disconnect" after the money is sent to JEAN-PIERRE, and the logistics and obstacles in performing the scheme. JEAN-PIERRE responded that he thought "a disconnect [] is generally good" and that he had someone in mind who could be good. He told Target 1 that he would talk to Banco Popular to see how quickly it could do this.

42. On April 26, 2016, JEAN-PIERRE told Target 1 that he had been unsuccessful in opening up the secondary account at the bank in the Dominican Republic because he is considered a foreigner and that the bank was requesting additional documentation. He acknowledged receiving the $5,000 cashier's check and depositing the money in an existing bank account located

in the Dominican Republic. He told Target 1 that, following his return from his Miami trip to see Target 1 and the FBI-UC, he would continue his efforts to open a secondary account to which to transfer the remainder of the funds that Target 1 would be sending.

**The Miami, FL Meetings And JEAN-PIERRE's Arrest**

43. On April 28, 2016, JEAN-PIERRE arrived in Miami, Florida from the Dominican Republic. He was met at the airport by Target 1 and followed by a team of surveillance agents to a hotel where hotel reservations had been booked for the two. On the way to the hotel, in conversation that was recorded and monitored, the two revisited the subject of the $250,000 in purported FusionPharm stock proceeds that Target 1 was ostensibly seeking to move offshore. JEAN-PIERRE told Target 1 that he had found an individual whose name would be used for the secondary account and that it was the aunt of JEAN-PIERRE's son who owns a business and was a hairdresser in the Dominican Republic. Target 1 reiterated that he was going to want to keep the majority of the money in the Dominican Republic because he's "got the DOJ, I got the FBI [] I have every alphabet gang so far in my business [] and all they are trying to do is run around and freeze up every bit of cash, every piece of stock that came out of FusionPharm that we did." He went on to state that there is still an SEC and a criminal investigation related to FusionPharm and that the U.S. Government is saying that Target 1 was too close to the company as an affiliate and that the money he was trying to move offshore was from "the first transactions that we did" related to the conversions of the Meadpoint and Bayside notes into FusionPharm stock that Target 1 sold into the market in 2013. Target 1 told JEAN-PIERRE that the U.S. Government knows about the conversions and is trying to figure how to get its hands on the money. Target 1 said that the third party holding the funds from the conversions of the notes is beginning to freak out and does not

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 27 of 49

want to hold the money any longer. JEAN-PIERRE asked how quickly the money needs to be moved, to which Target 1 responded, "I want to get it done yesterday."

44. The subject of these funds came up twice more that day. While waiting in a hotel bar before a planned dinner with the FBI-UC, JEAN-PIERRE told Target 1 that his son's aunt would be used for the secondary account. Target 1 said that the Justice Department and FBI were trying to put "their hands on everything FusionPharm" and that they know about every trade and how it went down. Target 1 went on to state that "they know I did not get that money, but they know it was my stock." JEAN-PIERRE responded by asking if the U.S. Government knows that the third party has the money, to which Target 1 said, "yeah, but they can't put their hands on it yet, they can't connect that link yet. "JEAN-PIERRE then asked whether "they don't know about your relationship with him" and Target 1 responded, "no not yet." The two agreed to begin doing wire transfers to the Dominican Republic and that the next transaction would be $25,000. Target 1 said that he would send the money to JEAN-PIERRE and that he, in turn, would transfer the money to the aunt's account to create a "disconnect." Later in the evening, during a break in the dinner meeting with the FBI-UC, Target 1 asked JEAN-PIERRE about the cashier's check that had been sent to JEAN-PIERRE. JEAN-PIERRE confirmed that the check had been drawn on 1st Bank in Colorado and was for $5,000.

45. The following morning, while in route to the FBI-UC's hotel suite for a breakfast meeting, Target 1 confirmed with JEAN-PIERRE that JEAN-PIERRE's "sister-in-law" would be holding the money for an additional 1% fee. Target 1 stressed the importance for needing internet access to the secondary account and wanting to see his money.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 28 of 49

46. During the breakfast meeting, Target 1, the FBI-UC and JEAN-PIERRE also discussed their progress and next steps regarding Vertifresh and getting free-trading stock. Towards the onset of the meeting, Target 1 advised the FBI-UC that JEAN-PIERRE brought his laptop so that they can make changes. JEAN-PIERRE was observed by investigators removing the laptop from his backpack and powering up the device.

47. JEAN-PIERRE explained to the FBI-UC the SEC "loophole" that allows lenders to obtain stock in a company through aged debt. JEAN-PIERRE again suggested changing the amount of the debt reflected in the convertible note from $50,000 to a less "round" number. Target 1 said that JEAN-PIERRE had his laptop and could make the changes to the document to reflect something "less flat and obvious". In reviewing this SEC "loophole," JEAN-PIERRE further explained that the convertible feature of the debt would have to have been included at the time that the debt instrument was effective. In response to this, Target 1 reiterated his plan to use money from other deals as proof that Target 1 provided the funds over a year ago. Target 1 then asked if "papering the debt after the fact [would be] ok," in response to which JEAN-PIERRE indicated in words and substance that "it's not so ok," in that "your paperwork" has to "appear clean." JEAN-PIERRE also suggested using five or six deposits to use as proof of the funding of the loan.

48. JEAN-PIERRE then turned to another requirement of the "SEC loophole;" demonstrating that the putative sellers of the Vertifresh shares were not, in fact, its "affiliates." In this connection, he provided additional instructions on how Target 1 should structure his conversations with the transfer agent so that he would not be perceived as part of management, suggesting that INDIVIDUAL A contact the transfer agent and say that he is "too busy to get in the details" and to work with Vertifresh's consultant, Target 1. JEAN-PIERRE said that he liked

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 29 of 49

the "optics" of having it appear that Target 1 was working with the transfer agent casually and not like it was planned that Target 1 would be the transfer agent contact from the beginning.

49. JEAN-PIERRE provided Target 1 and FBI-UC further guidance on how to keep the FBI-UC from being considered an affiliate, instructing the FBI-UC not to own anywhere close to 10% of the company's stock and not to "appear" to have any position with the company at all. At that point, Target 1 interjected and asked, "Appear? Whether you are or not is irrelevant," to which JEAN-PIERRE responded, "Right, right". The FBI-UC then reminded JEAN-PIERRE that INDIVIDUAL A was going to be Vertifresh's CEO in name only and that the FBI-UC would control INDIVIDUAL A and that INDIVIDUAL A did not know "jackshit" about what was going on. JEAN-PIERRE responded to this with one word: "Excellent." He then explained that he would not communicate this "fact" to the Nashville attorney.

50. Target 1 and the FBI-UC also clarified JEAN-PIERRE's long-term plans as to how the Nashville attorney would be used. Target 1 asked JEAN-PIERRE if he thought he would eventually be able to draft the Rule 144 Attorney Opinion Letters himself and have the Nashville attorney simply review and sign them. JEAN-PIERRE replied, "Eventually, it's a good start." Later in the meeting, the FBI-UC asked JEAN-PIERRE, "So you are going to be the point guy between us and the attorney and then plus do all the other stuff," to which JEAN-PIERRE responded, "Right," adding that the attorney would (at some point) need to just put his name on the Opinion Letters.

51. JEAN-PIERRE was using a laptop during the breakfast meeting and appeared to be updating the documents that he drafted prior to the meeting to include the convertible promissory note.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 30 of 49

52. Immediately following the breakfast meeting, JEAN-PIERRE was arrested in Miami on an outstanding warrant issued on an indictment brought in the State of New York, New York County, arising from the facts and circumstances at issue in the SEC's civil case in the Southern District of New York. At the time of his arrest, JEAN-PIERRE had a backpack containing the HP laptop that he was using to edit documents during the breakfast meeting. According to a Property List provided by the Miami Police, the HP laptop, further described in Attachment A, was taken incident to arrest and is currently being held by the Miami Police Department.

53. On May 2, 2016, agents working on the undercover case, obtained a copy of the 1st Bank $5,000 cashier's check that had been sent to the Dominican Republic and made payable to Guy M Jean-Pierre. The agents confirmed that the check had cleared and the funds paid by 1st Bank. On or about April 27, 2016, the check was presented for payment by Bank of America, the correspondent bank for the Dominican Republic bank where JEAN-PIERRE maintained his personal account.

54. In my training and experience, if a person is traveling with a laptop and using it for business-like activity that computer tends to be the person's primary computer for other uses, such as email. Here, since JEAN-PIERRE used an HP laptop to update documents on the morning of his arrest, and since he was sending and receiving emails as late as April, 2016, it is likely that the HP laptop was also used to send and receive emails and that evidence of those emails will be on that computer.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 31 of 49

Electronic Storage And Forensic Analysis

55. Based on my consultation with those who have specialized knowledge of computers and other electronic devices, I understand that computers and electronic storage media can store information for long periods of time, even if the computer user has "deleted" them. Similarly, items that have been viewed via the Internet are typically stored for some period of time on the device used to access the Internet. Likewise, email evidence can be found on a computer, especially where emails have been sent or received from that computer in the near past. These items can remain on a computer for the life of the computer if the data is not overwritten. There is no way to determine if deleted items remain on a computer without conducting careful forensic search of the computer using forensic tools. This information can sometimes be recovered with forensic tools.[14]

56. There is probable cause to believe that things that were once stored on such devices may still be stored there, for at least the following reasons:

(a) Based on information provided to me by those who have specialized knowledge of computers and other electronic devices, I understand that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer,

[14] It should be noted, in this regard, that during the course of the undercover communications described above, JEAN-PIERRE at one point explained to Target 1 that it had taken him some time to prepare the documents that Target 1 was seeking from him because JEAN-PIERRE had "lost his pin drive" on which he claimed to have stored "all of his documents" and that he therefore had to "start from scratch." Your affiant's best understanding of the use of the phrase "pin drive" is that it is an apparent reference to a USB memory flash drive.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 32 of 49

the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

(b) Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

(c) Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drive—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible for a user to delete this information.

(d) Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." Forensic review may also disclose when and by whom the Internet was used to conduct searches, view material, and communicate with others via the Internet or email or other online media.

57. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the devices seized and imaged were used, the purpose of their use, who used them, and when. There is probable cause to

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 33 of 49

believe that this forensic electronic evidence might be on the HP laptop computer that is the subject of this application because:

(a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times that the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created. This information can be recovered months or even years after they have been downloaded onto the storage medium, deleted, or viewed.

(b) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

(c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

(d) The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 34 of 49

is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

(e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

(f) Your Affiant knows that when an individual uses an electronic device to aid in the commission of a crime, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain evidence or is an instrumentality because here, JEAN-PIERRE used the HP computer to conduct criminal activity on the morning of his arrest. Therefore, it is both an instrumentality of the crime as well as a probable repository for evidence of it. It is likely to contain evidence from his document drafting on the morning of his arrest as well as documents he may have drafted during other stages of the crimes. Furthermore, because he was using his email advisor@flbusinesshelp.com_ to send and receive correspondence about and in furtherance of the crimes, it is likely that he used the HP computer for that email use. Therefore, it is likewise likely that the HP computer will contain evidence from those emails and others like them. Last, the computer will likely have information about its user and information relevant to the user's identity, activities relevant to the planning and execution of the crimes discussed in this Affidavit as well as information about his state of mind while committing them such as Internet searches, correspondence with others about the crimes, and documents relating to them.

(g) Your Affiant also knows that those who engage in criminal activity will attempt to conceal evidence of the activity by hiding files, by renaming the format, (such as saving a .pdf image file as a .doc document file) or by giving them deceptive names such that it is necessary to view the contents of each file to determine what it contains.

(h) A single compact disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Thumb drives with a capacity of 32 gigabytes are not uncommon. Hard drives with the capacity of 500 gigabytes up to 3 terabytes are not uncommon. These drives can store thousands of images and videos at very high resolution, and they can store hundreds of thousands of documents and emails. Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

**Need To Review Evidence Over Time And To Maintain Entirety Of Evidence**

58. Your Affiant recognizes the prudence requisite in reviewing and preserving in its original form only such records applicable to the violations of law described in this Affidavit and in Attachment B in order to prevent unnecessary invasion of privacy and overbroad searches. Your Affiant advises it would be impractical and infeasible for the Government to review the mirrored images of digital devices that are copied as a result of a search warrant issued pursuant to this Application during a single analysis. Your Affiant has learned through practical experience that various pieces of evidence retrieved from digital devices in investigations of this sort often have unknown probative value and linkage to other pieces of evidence in the investigation until they are considered within the fluid, active, and ongoing investigation of the whole as it develops. In other words, the weight of each individual piece of the data fluctuates based upon additional

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 36 of 49

investigative measures undertaken, other documents under review and incorporation of evidence into a consolidated whole. Analysis is content-relational, and the importance of any associated data may grow whenever further analysis is performed. The full scope and meaning of the whole of the data is lost if each piece is observed individually, and not in sum. Due to the interrelation and correlation between pieces of an investigation as that investigation continues, looking at one piece of information may lose its full evidentiary value if it is related to another piece of information, yet its complement is not preserved along with the original. In the past, your Affiant has reviewed activity and data on digital devices pursuant to search warrants in the course of ongoing criminal investigations. Your affiant has learned from that experience, as well as other investigative efforts, that multiple reviews of the data at different times is necessary to understand the full value of the information contained therein, and to determine whether it is within the scope of the items sought in Attachment B. In order to obtain the full picture and meaning of the data from the information sought in Attachments A and B of this application, the Government would need to maintain access to all of the resultant data, as the completeness and potential of probative value of the data must be assessed within the full scope of the investigation. As such, your Affiant respectfully requests the ability to maintain the whole of the data obtained as a result of the search warrant, and to maintain and to review the data in the control and custody of the Government and law enforcement at times deemed necessary during the investigation, rather than minimize the content to certain communications deemed important at one time. As with all evidence, the Government will maintain the evidence and mirror images of the evidence in its custody and control, without alteration, amendment, or access by persons unrelated to the investigation.

59. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, copying, and reviewing the contents of the HP

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 37 of 49

computer consistent with the warrant. The warrant I am applying for would authorize a later examination and perhaps repeated review of the HP or information from a copy of the HP laptop consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium, which might expose many parts of the HP laptop to human inspection in order to determine whether it is evidence and contains evidence as described by the warrant.

**Procedures For Addressing And Handling Potentially Privileged Attorney Communications**

60. As set forth above, although currently not licensed to practice law as an attorney in the United States, JEAN-PIERRE may have actively practiced law as recently as mid-2013. Further, he was not formally disbarred from the practice of law in the State of New York until earlier this year. While the communications involving JEAN-PIERRE that are the subject of the FusionPharm and undercover investigations are not, it is believed, covered by current, valid attorney-client privileges,[15] the possibility that JEAN-PIERRE had communications with clients or putative or potential clients in the past several years concerning legal advice and that those communications could arguably be deemed privileged cannot, at this point, be ruled out. Further, it also remains possible that older communications reaching back to when JEAN-PIERRE actively engaged in the practice of law may be stored on the HP laptop computer that is the subject of this

[15] The "clients" of the communications involving the recent undercover investigation were Target 1 and FBI-UC. JEAN-PIERRE's discussions with them concerned the commissions of new crimes. Similarly, the evidence developed in the FusionPharm investigation reflects that JEAN-PIERRE's communications with FusionPharm and its principals were primarily, if not exclusively, for the purpose of orchestrating and implementing the fraudulent scheme that is the subject of that ongoing investigation. Further, it is understood that the current counsel for FusionPharm has waived privileges with respect to any communications between JEAN-PIERRE and FusionPharm and its principals, employees and agents acting on behalf of FusionPharm.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 38 of 49

search warrant application and that these communications may be deemed to constitute privileged attorney-client communications.

61. In order to address the possibility that the HP laptop computer could contain privileged attorney-client communications, a government "filter" or "taint" team, consisting of federal agents and a federal prosecutor not assigned to the FusionPharm and undercover investigations, will be established to filter out any communications that may contain attorney-client privileged communications and segregate them from your affiant and other agents and prosecutors involved in the investigations. In order to assist and facilitate this process, the "filter" or "taint" team will be provided with JEAN-PIERRE's names and all names that he was known to use in his practice of law, as well as the names of any attorneys or para-professionals with whom he was known to have engaged in the practice of law. Records suspected of containing valid, non-waived attorney-client privileged communications will not be shared with your affiant or other agents or prosecutors involved in the pending investigations until the issue of privilege with respect to these communications has been resolved.

**Search Technique**

62. Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, law enforcement personnel will execute the search of the HP laptop computer pursuant to this warrant as follows: Searching the laptop for the items described in Attachment B may require a range of data analysis techniques. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 39 of 49

described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant. The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit.

**Conclusion**

63. Based on my training and experience as a Special Agent, all of the foregoing constitutes probable cause to believe that:

(a) JEAN-PIERRE has committed wire fraud, in violation of Title 18, United States Code, Section 1343, through, among other things, the drafting and then emailing of draft documents, including the backdated Convertible Note, the 144 Attorney Opinion Letter and the Non-Affiliation Letter, containing material misrepresentations meant to conceal Target 1 and FBI-UC's role within Vertifresh;

(b) From March 2016 through April 2016, JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, conducted and attempted to conduct financial transactions represented to be proceeds of a specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(B); and

(c) On the Attachment A - Item to be Searched, which is attached hereto and incorporated herein by reference, is likely to be both an instrumentality of crimes and a container of evidence of these crimes, as described in Attachment B, which is attached hereto and incorporated herein by reference.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 40 of 49

**Request For Sealing**

64. Your affiant requests that the Court order that the instant Application For A Search Warrant and all documents in support of and related to the instant Application For A Search Warrant, including the Affidavit, the related Search And Seizure Warrant, the Order To Seal, and related documents, be sealed until further order of the Court. These documents discuss and/or refer to an ongoing criminal investigation that is neither public nor known to all of the targets and subjects of the investigation.

65. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize such investigation, in that the targets and subjects may intimidate witnesses, flee the jurisdiction, or destroy or tamper with evidence that is relevant to the investigation.

FURTHER AFFIANT SAYETH NAUGHT.

ERNBERT S. KULE-THOMAS
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn and subscribed to before me this 29th day of July, 2016.

PATRICK A. WHITE
UNITED STATES MAGISTRATE JUDGE

Certified to be a true and correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida
By Deputy Clerk
Date 7-29-16

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 41 of 49

ATTACHMENT A

Description Of Item To Be Searched

An HP Laptop (Serial # CND01818BD) that was inventoried by the Miami Police incident to the arrest of GUY JEAN-PIERRE, aka Marcelo Dominguez de Guerra, in Miami, Florida on April 29, 2016. The laptop is currently being stored at the Miami Police Department, located at 400 NW 2nd Avenue, Miami, Florida under AC#16005289.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 42 of 49

**ATTACHMENT B**

**Description Of Items To Be Searched And Seized**

The following items and information related to the scheme and activities that are described and are the subject of the affidavit in support of this warrant (which affidavit is incorporated by reference herein), which items constitute evidence and/or instrumentalities of violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2, and the following items relating to the electronic storage, access and retrieval of such items:

1. Computer software, consisting of digital information, which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word processing, networking, graphics, accounting, presentations or spreadsheet programs), utilities, compilers, interpreters, and communications program;

2. Computer passwords and other data security devices, that is, a string of alphanumeric characters designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programmable code. A password usually operates as a sort of digital key to "unlock" particular storage data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, destroy or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it;

3. Evidence of who used, owned, or controlled the computer hardware, computer software, or computer passwords at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

4. Evidence of software that would allow others to control the computer hardware, computer software, or computer passwords, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

5. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer hardware, computer software, or computer passwords;

6. All records relating to or constituting, or arising from communications, transactions or contemplated transactions with the individuals described as "Target 1" or the "FBI-UC" in the affidavit accompanying this application and warrant, which affidavit is incorporated by reference herein, including, without limitations, emails, text messages, text notes,

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 43 of 49

memoranda, spreadsheets, drafts and final versions of opinion letters, contracts, agreements, promissory notes, corporate governance documents, shareholder consent forms, and stock certificates. Such records shall further include records, materials, communications used in the preparation of these documents.

7. All records relating to or constituting, or arising from communications, transactions or contemplated transactions with or relating to FusionPharm, Vertifresh, LLC, Bayside Realty, LLC, Meadpoint Ventures, the individuals described as "Target 1" or "Target 2" in the affidavit accompanying this application and warrant, which affidavit is incorporated by reference herein, including, without limitations, emails, text messages, text notes, memoranda, spreadsheets, drafts and final versions of contracts, agreements, promissory notes, corporate governance documents, shareholder consent forms, and stock certificates. Such records shall further include records, materials, communications used in the preparation of these documents. Such records shall further include "current information letters" and other written submissions to OTC Markets, and records, materials, communications used in the preparation of such submissions. Excluded from this category are any items constituting valid, non-waived privileged attorney-client communications;

8. In relation to any of the items sought in paragraphs 6 and 7 above, any and all correspondence or communications (in any iterations, including drafts) in whatever format (including electronic images of envelopes, letters, papers, email messages, chat logs, electronic messages, and other digital data files) and attachments, excluding, however, any items constituting privileged attorney-client communications;

9. In relation to any of the items sought in paragraphs 6 and 7 above, any and all records concerning securities transactions, including transfer agent records and correspondence and communications involving transfer agents, and brokerage or bank account records reflecting securities transactions or proceeds of such transactions;

10. Bank records, including bank statements, financial statements, cancelled checks, deposit tickets, receipts for cashier's checks, money orders, traveler's checks, records relating to wire transfers, loans, brokerage statements, and credit card information;

11. All computer files that act as "address books" or other list of correspondents and contacts;

12. Records and information related to foreign and domestic travel.

13. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2 or that show who used, owned, possessed, or controlled the computer.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 44 of 49

14. Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2.

15. Evidence of who used, owned, or controlled the computer to commit or facilitate the commission of the crimes described, or at the time the things described in this warrant were created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence.

16. Evidence of software that may allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security provisions or software designed to detect malicious software or unauthorized use of the device, and evidence of the lack of such malicious software.

17. Evidence of the attachment to the computer of other storage devices or similar containers for electronic evidence.

18. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer.

19. Evidence of how and when the computer was used or accessed to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

20. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage.

**Search Procedure**

1. Law enforcement personnel will first make an exact duplicate of the hard drive contained on the laptop computer.

2. A "filter" or "taint" team, as described in paragraphs 60 and 61 of the accompanying Affidavit, will be employed to review and segregate records and items containing privileged attorney-client communications.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 45 of 49

3. Law enforcement personnel will then review all information and records contained on the computer to determine the information to be seized by law enforcement personnel pursuant to Attachment B.

4. With respect to any information or records that appear exclusively to be related to criminal acts other than the violations set forth herein will not be further examined unless and until a search warrant is applied for and issued for evidence of any such separate criminal act.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 46 of 49

ATTACHMENT B

Description Of Items To Be Searched And Seized

The following items and information related to the scheme and activities that are described and are the subject of the affidavit in support of this warrant (which affidavit is incorporated by reference herein), which items constitute evidence and/or instrumentalities of violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2, and the following items relating to the electronic storage, access and retrieval of such items:

1. Computer software, consisting of digital information, which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word processing, networking, graphics, accounting, presentations or spreadsheet programs), utilities, compilers, interpreters, and communications program;

2. Computer passwords and other data security devices, that is, a string of alphanumeric characters designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programmable code. A password usually operates as a sort of digital key to "unlock" particular storage data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, destroy or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it;

3. Evidence of who used, owned, or controlled the computer hardware, computer software, or computer passwords at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

4. Evidence of software that would allow others to control the computer hardware, computer software, or computer passwords, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

5. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer hardware, computer software, or computer passwords;

6. All records relating to or constituting, or arising from communications, transactions or contemplated transactions with the individuals described as "Target 1" or the "FBI-UC" in the affidavit accompanying this application and warrant, which affidavit is incorporated by reference herein, including, without limitations, emails, text messages, text notes,

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 Page 47 of 49

memoranda, spreadsheets, drafts and final versions of opinion letters, contracts, agreements, promissory notes, corporate governance documents, shareholder consent forms, and stock certificates. Such records shall further include records, materials, communications used in the preparation of these documents.

7. All records relating to or constituting, or arising from communications, transactions or contemplated transactions with or relating to FusionPharm, Vertifresh, LLC, Bayside Realty, LLC, Meadpoint Ventures, the individuals described as "Target 1" or "Target 2" in the affidavit accompanying this application and warrant, which affidavit is incorporated by reference herein, including, without limitations, emails, text messages, text notes, memoranda, spreadsheets, drafts and final versions of contracts, agreements, promissory notes, corporate governance documents, shareholder consent forms, and stock certificates. Such records shall further include records, materials, communications used in the preparation of these documents. Such records shall further include "current information letters" and other written submissions to OTC Markets, and records, materials, communications used in the preparation of such submissions. Excluded from this category are any items constituting valid, non-waived privileged attorney-client communications;

8. In relation to any of the items sought in paragraphs 6 and 7 above, any and all correspondence or communications (in any iterations, including drafts) in whatever format (including electronic images of envelopes, letters, papers, email messages, chat logs, electronic messages, and other digital data files) and attachments, excluding, however, any items constituting privileged attorney-client communications;

9. In relation to any of the items sought in paragraphs 6 and 7 above, any and all records concerning securities transactions, including transfer agent records and correspondence and communications involving transfer agents, and brokerage or bank account records reflecting securities transactions or proceeds of such transactions;

10. Bank records, including bank statements, financial statements, cancelled checks, deposit tickets, receipts for cashier's checks, money orders, traveler's checks, records relating to wire transfers, loans, brokerage statements, and credit card information;

11. All computer files that act as "address books" or other list of correspondents and contacts;

12. Records and information related to foreign and domestic travel.

13. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2 or that show who used, owned, possessed, or controlled the computer.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 48 of 49

14. Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of Title 18 United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2.

15. Evidence of who used, owned, or controlled the computer to commit or facilitate the commission of the crimes described, or at the time the things described in this warrant were created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence.

16. Evidence of software that may allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security provisions or software designed to detect malicious software or unauthorized use of the device, and evidence of the lack of such malicious software.

17. Evidence of the attachment to the computer of other storage devices or similar containers for electronic evidence.

18. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer.

19. Evidence of how and when the computer was used or accessed to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

20. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage.

**Search Procedure**

1. Law enforcement personnel will first make an exact duplicate of the hard drive contained on the laptop computer.

2. A "filter" or "taint" team, as described in paragraphs 60 and 61 of the accompanying Affidavit, will be employed to review and segregate records and items containing privileged attorney-client communications.

Case 1:17-cr-00008-WJM Document 104-2 Filed 05/18/18 USDC Colorado Page 49 of 49

3. Law enforcement personnel will then review all information and records contained on the computer to determine the information to be seized by law enforcement personnel pursuant to Attachment B.

4. With respect to any information or records that appear exclusively to be related to criminal acts other than the violations set forth herein will not be further examined unless and until a search warrant is applied for and issued for evidence of any such separate criminal act.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

GUY JEAN-PIERRE

Defendant.

---

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS *JAMES* PROFFER**

---

The United States of America (the government), by Jeremy Sibert, Assistant United States Attorneys, submits this memorandum in support of its *James* proffer, in response to this court's order submits the following proffer of co-conspirators statements which may be offered at trial pursuant to Fed. R. Evid. 801(d)(2)(E). By including statements in this proffer, the government is not conceding that such statements or utterances are only admissible, and may only be offered, under Rule 801(d)(2)(E). The statements may be admissible for other reasons, such as not being "statements" under Fed. R. Evid. 801, not being hearsay, not being offered for the truth of the matter asserted, or they may fall within another hearsay exception. The inclusion of a statement or utterance in this proffer does not serve to pull that statement within the ambit of Fed. R. Evid. 801(d)(2)(E) if a different basis for admission exits.

Additionally, in some cases within the proffer, the government has identified particular bases for introduction or specific rules of evidence that pertain to a statement. This is not to say

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 2 of 42

that these are the only methods for introduction of the statement and that no other pertinent rules or bases for admission exist. To the contrary, the government's identification of a particular rule of evidence or basis for admission within this proffer does not foreclose all other legitimate bases. Nor does this proffer disqualify the admission of a statement on alternate grounds from those listed.

The government advises the Court and counsel that its investigation is ongoing and may yet reveal additional statements which fall within the purview of Fed. R. Evid. 801(d)(2)(E). There are no current trial dates at this time. Since a pretrial hearing is not required under federal law, the government respectfully requests permission to supplement this proffer if additional co-conspirators' statements are discovered during trial preparation. *See Bourjaily v. United States*, 483 U.S. 171, 183-84 (1987) (Supreme Court held that the Constitution did not require pretrial inquiry into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E)); *see also United States v. Gonzalez-Montoya*, 161 F.3d 643, 648-49 (10th Cir. 1998)(while Tenth Circuit expresses a preference for *James* hearings, they are not required.)

The statements contained within this proffer have been previously disclosed to the defense. The government advises the Court and counsel that the statements listed herein are not exact or verbatim quotes. The government is submitting the general nature of statements and conversations while maintaining their essential components.

This proffer demonstrates the existence of the charged conspiracy to commit securities fraud, among other types of fraud, for the duration of this conspiracy, and its participants.

The government has concurrently filed a *James* Proffer which includes a preliminary log of out of court statements made during the course of the conspiracy and in furtherance of the

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 USDC Colorado Page 3 of 42

conspiracy which the government intends to offer at trial. This proffer is related solely to co-conspirators statements the United States intends to offer at trial pursuant to Fed. R. Evid. 801(d)(2)(E). This proffer is not intended to be a full accounting of all statements the United States plans to introduce into evidence at trial. There may be additional statements known to the government that are not contained within this submission because those statements are admissible under other rules of evidence, such as non- hearsay admissions by a party opponent under Fed. R. Evid. 801(d)(2)(A), or the hearsay exceptions contained within *Federal Rules of Evidence* 803 and 804.

After review of these pleadings, the government respectfully requests that the Court find that a hearing on Jean-Pierre's *James* motion "is not necessary to resolve the provisional admissibility of the Government's proposed co-conspirator statements in this case . . . . ." *United States v. Yurek*, No. 15-cr-394-WJM, 2017 WL 283544, at *1 (D. Colo. June 30, 2017).

**THE LAW CONCERNING RULE 801(d)(2)(E)**

1. According to the Federal Rules of Evidence, "[a] statement is not hearsay if [it] is offered against a party and is . . . a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Statements are admissible pursuant to Rule 801(d)(2)(E) if a court finds, by a preponderance of the evidence, three things: that (1) a conspiracy existed; (2) the declarant and Jean-Pierre were both members of the conspiracy; and (3) the statements were made in the course of and in furtherance of the conspiracy. *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017); *Bourjaily v. United States*, 483 U.S. 171, 181 (1987). The government must prove these preliminary facts by a preponderance of the evidence. *United States v. Perez*, 989 F.2d 1574, 1577 (10th Cir. 1993) (en

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 4 of 42

banc).

2. In making these determinations, a court "is not bound by evidence rules, except those on privilege." *See* Fed. R. Evid. 104(a), 1101(d)(1); *Bourjaily*, 483 U.S. at 178-79. The court "may consider both independent evidence and the statements themselves when making" the Rule 801(d)(2)(E) findings. *United States v. Rutland*, 705 F.3d 1238, 1248 (10th Cir. 2013); *Bourjaily*, 483 U.S. at 180 ("there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both Jean-Pierre and the declarant in the conspiracy"); *United States v. Owens*, 70 F.3d 1118, 1124 (10th Cir. 1995) (same).

3. To determine whether a conspiracy existed, the government is not required to show that a formal or explicit agreement existed. *United States v. Arutunoff*, 1 F.3d 1112, 1116 (10th Cir. 1993), but it must provide evidence of four things: (1) an agreement between two or more people to break the law; (2) knowledge by those people of the essential objectives of the conspiracy; (3) knowing and voluntary participation in the conspiracy; and (4) interdependence among the conspirators, *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007).

4. To determine the second factor, the connection of the declarant and Jean-Pierre to the conspiracy, at most there must be "some independent evidence linking Jean-Pierre to the conspiracy." *Alcorta*, 853, F.3d at 1142. However, the independent evidence "need not be 'substantial.'" *Id.* A court may presume that a defendant is a knowing participant in a conspiracy when he acts in furtherance of the conspiracy's objective. *United States v. Rogers*, 556 F.3d 1130, 1138–39 (10th Cir.2009).

5. As to Jean-Pierre's knowledge of the essential objectives of the conspiracy, the

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 5 of 42

government is not required to prove that a conspirator knows all other conspirators, or all the details of the conspiracy. *United States v. Smalls*, 423 F.3d 1164, 1182 (10th Cir. 2005). Nor must the government prove that a conspirator knew of or participated in every aspect of the conspiracy, *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999). A coconspirator statement is also admissible even if the declarant is uncharged. *Champagne Metals v. Ken Mac Metals, Inc*., 458 F.3d 1073, 1081 n.5 (10th Cir. 2006).

6. In determining the third factor, that the statement was made during the course of and in furtherance of the conspiracy, several rules apply. First, the focus is on whether the declarant's intent in making the statement was to advance the conspiracy, not whether the statement actually advanced the conspiracy. *Perez*, 989 F.2d at 1578. To determine this, the court must examine the nature of the statement and its context. *Id.* at 1579. Second, there is no requirement that the statement be made by one conspirator to another. *United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995).

7. Examples of statements made in furtherance of a conspiracy include but are not limited to:

a. Statements which in any way promote the objective(s) of a conspiracy. *Rutland*, 705 F.3d at 1252; *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (citation omitted).

b. Statements which reveal the existence of a conspiracy. *United States v. Garcia*, 994 F.2d 1499, 1505 (10th Cir. 1993);

c. Statements which are intended to recruit potential coconspirators or to otherwise induce others to assist in carrying out the objectives of the conspiracy. *Perez*, 989

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 6 of 42

F.2d at 1578;

d. Statements which identify a conspirator or the role of a conspirator. *Rutland*, 705 F.3d at 1252; *Townley*, 472 F.3d at 1273;

e. Statements which explain important events in the conspiracy. *Rutland*, 705 F.3d at 1252; *Townley*, 472 F.3d at 1273;

f. Statements of future intent that set transaction integral to the conspiracy in motion and maintain the flow of information among the co-conspirators. *United States v. Roberts*, 14 F.3d 502, 514-15 (10th Cir. 1993).

g. Statements which are designed to advise co-conspirators of the progress of the conspiracy and keep them abreast of activities associated with the conspiracy. *Townley*, 472 F.3d at 1273; *Perez*, 989 F.2d at 1578;

h. Statements which are intended to assure the listener of a conspirator's ability to consummate a particular transaction. *Rutland*, 705 F.3d at 1252;

i. Statements which are designed to gain the trust of other conspirators or potential conspirators, to reassure trustworthiness, or to allay suspicions or fears. *Townley*, 472 F.3d at 1273; *Rutland*, 705 F.3d at 1252.

j. Statements which are intended to control damage to the conspiracy that are made during the course of the conspiracy. *Cf. Alcorta*, 853 F.3d at 1139; *United States v. Griggs*, No. 08-cr-00365-MSK, 2012 WL 628595, at *5 (D. Colo. Feb. 27, 2012) (unpublished);

k. Statements which prompt the listener to respond in a way that facilitates carrying out the activities of the conspiracy. *Perez*, 989 F.2d at 1578;

l. Statements which conceal the objective of the conspiracy. *Rutland*, 705

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 7 of 42

F.3d at 1252-53.

m. Statements that outline the general history of the conspiracy. *United States v. Stratton*, 779 F.2d 820, 828 (2nd Cir. 1985).

n. Statements designed to give directions to facilitate the objectives of the conspiracy. *United States* v. *Townley,* 472 F.3d at 1273 (10th Cir. 2007); *see also United States v. Massa*, 740 F.2d 629, 638 (8th Cir. 1984)

o. Statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy. *Townley*, 472 F.3d at 1273, citing *Smith*, 833 F.2d at 219; *see also Echeverry*, 759 F.2d at 1457.

p. Statements that prompt the listener to respond in a manner that facilitates carrying out the activities of the conspiracy; statements that prompt further action on the part of conspirators. *United States v. Rahme*, 813 F.2d 31, 35 (2nd Cir. 1987); *Roberts,* 14 F.3d at 515.

q. Statements intended to enhance a co-conspirator usefulness to the conspiracy. *United States v. Tarantino,* 846 F.2d 1384, 1412 (D.C. Cir. 1988).

r. Statements to new or prospective members of a conspiracy that explain the conspiracy. *United States v. Monroe,* 866 F.2d 1357, 1363 (11th Cir. 1989); *United States v. Turner*, 871 F.2d 1574, 1580 (11th Cir. 1989).

s. Statements that set in motion acts that are an integral part of the conspiracy.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 8 of 42

*United States v. Paris*, 827 F.2d 395, 400 (9th Cir. 1987).

t. Statements that indicate payments, or demands for payment, made to accomplish activities of the conspiracy. *United States v. Esacove*, 943 F.2d 3, 5 (5th Cir. 1993).

u. Statements concerning the collection of debts. *United States v. Meeks*, 857 F.2d 1201, 1203 (8th Cir. 1988).

v. Statements to facilitate avoidance of detection. *United States v. White*, 563 F.3d 184, 192 (6th Cir. 2009); *United States v. Watson*, 525 F.3d. 583, 587 (7th. Cir 2008).

Although not all of these examples may have relevance to this case, the size of this list is illustrative of the broad interpretation given to statements in furtherance of a conspiracy.

## A. OFFERED EVIDENCE CONCERNING THE CONSPIRACY

**Identifying the Co-Conspirators**

8. The evidence described below will demonstrate that the conspiracy charged in Count 1 of the Superseding Indictment began in or around March 25, 2011 and continued through in or about May 15, 2014. Guy Jean-Pierre, William Sears and Scott Dittman were members of the conspiracy who have been charged with conspiracy. Unindicted coconspirators Cliff Bodden, Tod DiTommaso, and Richard Scholz were also members of the conspiracy.

(a) Defendant Jean-Pierre

Jean-Pierre was a resident of South Florida and later the Dominican Republic, and was an

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 9 of 42

attorney licensed to practice law in the States of Florida and New York. His law practice focused primarily on providing legal advice and services, to, or in connection with, small companies with low or minimal market capitalization whose stock was publicly traded (microcap companies). His legal work concerned mainly corporate and securities transactions relating to microcap companies, including submitting Current Information Letters to OTC Markets and Rule 144 Attorney Opinion Letters to transfer agents and brokers so his clients could sell their unregistered shares. In April 2010, OTC Markets barred him from writing any further Current Information Letters on behalf of microcap companies due to his lack of due diligence regarding these companies. From 2011 through September 2013, Jean-Pierre functioned as FusionPharm's *de facto* general counsel and provided legal advice and services in connection with the company's corporate and securities matters.

(b) William Sears (Sears)

Sears is a resident of Thornton, Colorado, and had previously been primarily involved in the business of providing public relations and promotional services to microcap companies that sought to have their stocks publicly traded in various non-exchange, over-the-counter markets. Sears was convicted in federal court in the Southern District of New York of one count of conspiring to commit securities fraud and commercial bribery and one count of securities fraud and was sentenced in 2007. Thereafter, Sears primarily conducted his stock public relations and promotional business through Microcap Management, LLC ("Microcap"), a Nevada limited liability company that he formed. He had a prior relationship with Jean-Pierre, where Jean-Pierre assisted him with securities related work. He also conducted some of his business affairs through a second Nevada limited liability company,

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 10 of 42

Bayside Realty Holdings, LLC ("Bayside"), which he formed and operated in the name of a blood relative family member (hereinafter, "FamilyMember A"). He has pleaded guilty to conspiracy to commit security fraud and false income tax return which were charges relating to the conspiracy described in the indictment and in this proffer.

(c) Scott Dittman (Dittman)

Dittman, a resident of Elizabeth, Colorado and later Boyertown, Pennsylvania, had been trained and practiced as an accountant from 1991 until 1995, when he quit working as an accountant and went into real estate development and construction. He became a Certified Public Accountant in 1991. His license with the State of California expired in April 1997. Co-defendant Dittman and Sears are brothers-in-law; Sears is married to Dittman's sister. Dittman became self-employed in various businesses to include real estate development, construction, and, beginning in 2010, medical marijuana.

(d) Cliff Bodden

Cliff Bodden was born in the Cayman Islands and moved to Brooklyn, NY around 1972. After completing high school and serving in the US Army, Bodden obtained his Series 7 registration and began working as a salesman for JW Gant in South Florida. Later, Bodden moved to Atlanta, Georgia, where he was a broker for Bear Stearns & Co. Bodden first met Sears at Camelot Securities in 1994. Their relationship remained over the years and Sears would use Bodden if he needed assistance with the drafting of business plans and other business related documents. Bodden was first introduced to defendant Jean-Pierre through Sears in 2010. Boden began working for FusionPharm in 2011. His initial responsibilities included preparing a business plan and then moved into bookkeeping, preparing the financial statements, and

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 11 of 42

reconciling records, to include shareholder's equity, and creating various business documents.

(e) Tod DiTommaso

Tod DiTommaso is an attorney practicing law in California. He was recruited by defendant Jean-Pierre to sign documents, Current Information Letters and Rule 144 Attorney Opinion Letters, prepared by Jean-Pierre and submit to the OTC Markets and transfer agents/brokers between 2010 and 2013.

(f) Richard Scholz

Richard Scholz was born and raised in New York and received an Associate's Degree in Business Management from Nassau Community College. From 2000-2007, Scholz gained experience as a marketing representative where he would cold call brokers to generate interest in different companies' stocks. Scholz began to work for Sears in March 2011 to help promote FusionPharm stock.

9. The sources of information relied upon for this proffer include 1) reports and transcripts of interviews with Dittman and Sears, and of witnesses; 2) email, phone, and skype communications between the members of the conspiracy 3) undercover video recordings of conversations by members of the conspiracy 4) bank records to include checks 5) business records to include invoices, notes, convertible promissory notes, and financial statements 6) publicly disclosed records to include quarterly and annual reports to OTC Markets and 7) financial records and stock related paperwork submitted to transfer agents and brokers, and 8) opinion legal letters. Although this proffer describes significant aspects of and acts associated with the conspiracy, it does not purport to describe every aspect of the conspiracy or every act taken in furtherance of it.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 12 of 42

**Overview of the Conspiracy**

**Coconspirators Sears and Dittman Start FusionPharm with the Assistance of Defendant Jean-Pierre**

10. In or about 2010, Dittman conceived of a business to develop, manufacture and sell steel shipping containers refurbished for use as hydroponic growing pods ("PharmPods,") for indoor plant cultivation, primarily cannabis. He partnered with William Sears (Sears) to develop this business and, in particular, enlisted Sears to assist in promoting the business, marketing its products finding investment capital, and manage the stock side of the business. The business was conducted through FusionPharm, Inc. ("FusionPharm"), with its principal place of business at first in Denver, Colorado and later in Commerce City, Colorado.

11. Sears and the CEO for a company named Baby Bee Bright Corporation ("Baby Bee Bright") began discussions about Sears and Dittman taking over Baby Bee Bright. The purpose of the takeover was for Dittman and Sears to transform Baby Bee Bright, a company whose stock was already quoted on OTC Link, operated by OTC Markets Group, Inc. ("OTC Link"), into FusionPharm, Inc.[1] This takeover would allow FusionPharm to become a publicly traded company without going through the expensive and time consuming process required to do an initial public offering. Sears and the Baby Bee Bright CEO ultimately agreed that Dittman and Sears would receive 99% of the company's convertible preferred shares at

1 At the time, the common stock of Baby Bee Bright, like the common stock of many publicly traded microcap companies, was not traded on a registered national securities exchange but rather directly between two parties, typically securities broker-dealers, using inter-dealer quotation services offered through internet platforms such as OTC Link.

no cost while the Baby Bee Bright CEO retained 1% as his compensation for the transaction. On November 15, 2010, Baby Bee Bright's shareholders executed a written consent acknowledging, among other things: (a) the resignation of Baby Bee Bright's CEO; and (b) the appointment of Dittman and, at Sears' direction, Family Member A as directors. Family Member A was appointed to act as director, in part to avoid disclosure of Sears' involvement and his prior conviction for securities fraud.

12. Prior to November, 2010, Dittman had been aware that Sears had a prior felony conviction. Sears and Dittman discussed Sears' prior felony conviction with transactional and securities lawyer defendant Jean-Pierre and were advised by that lawyer that Sears' felony conviction would have to be disclosed to the market if Sears was given an officer or director title in the company and, over the course of time, they were further advised by defendant Jean-Pierre that Sears' formal involvement with FusionPharm would need to be limited in various ways to avoid running afoul of the federal securities laws or triggering disclosure obligations under the federal securities laws.

13. Defendant Jean-Pierre assisted both Dittman and Sears in establishing FusionPharm from Baby Bee Bright, clearly showing that Jean-Pierre knew that Sears and Dittman were partners. For example, there are communications between Sears and Jean-Pierre where they are having communications about acquiring the shell for Baby Bee Bright. In the skype message Jean Pierre and Sears state, "Good! Also, I believe you mentioned before that there was a deal with a company you just acquired that you wanted to move pretty quickly." Sears replies, "Yes!!!, Just got the termination agreement from a shareholder to who had options at a crazy low price. This would have killed any would be deal. I now have power of atty on the

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 14 of 42

shell and am moving forward on it. I'll be traveling tomorrow and back on Friday. (Houston) lets get together on Monday." Jean-Pierre replies back, "Sounds good! Are you going to be able to make this way in the next two weeks?" Sears replies, "Not next week the following for sure." Jean Pierre responds, "Great! And let's talk on Monday about the shell."

14. On January 25, 2011, as part of the plan to turn over control of Baby Bee Bright to Sears and Dittman, the Baby Bee Bright CEO transferred 1.3 million of the existing 1.5 million Baby Bee Bright preferred shares to a single person LLC owned and controlled by Dittman. At the beginning of March, Sears and Dittman initiated a 200-1 reverse split of stock affecting only the common shares of FusionPharm, thus greatly increasing the ownership value of the preferred shares. Before the reverse split, Dittman owned 40.3% of the company through his 1,300,000 preferred shares. After the split, he owned 86.1% of the company. Sears sent the transfer agent an email stating that Jean-Pierre was handling the reverse [split] with FINRA, and Jean-Pierre was copied on that email. In addition, Jean-Pierre wrote a letter to NASDAQ about the stock split. On March 16, 2011, the Baby Bee Bright CEO then transferred 185,000 Baby Bee Bright preferred shares to Microcap, an entity controlled by Sears, providing Sears 18,520,000 common shares or 12.3% of total shares. After this transfer, Sears and Dittman owned approximately 98.4% of FusionPharm's outstanding stock. The former owner of Baby Bee Bright held onto 15,000 preferred shares equivalent to 1% of the company. All other shareholders had a total of 1,041,352 common shares, resulting in less than 1% of ownership in the company (actual was .7%). After receiving the 185,000 preferred shares, Sears contacted Jean-Pierre notifying him that he was over the ten percent threshold making him an affiliate, just based on the number of shears he had in his

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 15 of 42

name. As arranged with Sears, the Baby Bee Bright CEO retained 15,000 preferred shares as his compensation for the transaction.

15. On March 25, 2011, Dittman and Sears filed a notification of name change with the Financial Industry Regulatory Authority ("FINRA") to change Baby Bee Bright's name and stock symbol to FusionPharm's name and stock symbol. Jean-Pierre filed papers with the NV Secretary of State to amend Baby Bee Bright's articles of incorporation to reflect the new name of FusionPharm. Also, Jean-Pierre emailed the transfer agent stating that he is representing Baby Bee Bright in the corporate action of FINRA, regarding the transfer from Baby Bee Bright to FusionPharm. After FINRA approved this form, all Baby Bee Bright shares were converted to FusionPharm shares. The FINRA notification form was signed by Dittman in his capacity as President of FusionPharm and identified Sears as the company's "Administrative Officer." Family Member A was listed as treasurer and secretary of former Baby Bee Bright and the newly formed FusionPharm.

16. Around this time, Sears and Dittman enlisted the services of an associate of Sears, Cliff Bodden, to assist in preparing materials for FusionPharm. Dittman and Sears requested that Bodden prepare, among other things, FusionPharm business plans including financial projections for the company. For example, on March 10, 2011, Sears emailed Bodden and cc'd Dittman, asking Bodden to "please start communicating with regard to putting a business/plan/powerpoint/offering documents together." About a month later, on April 5, 2011, Dittman emailed Bodden with specific financial projections to assist in the preparation of FusionPharm's business plan. The projections included PharmPod sales estimates for the company for the upcoming fiscal years that forecasted the number of pods that were expected to be sold in

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 16 of 42

each of these years, as follows with the translated corresponding sales revenue figures at an average price of $32,500 per pod: (a) Fiscal Year ("FY") 2011: 30 pods ($975,000); (b) FY 2012: 60 pods ($1,950,000); and (c) FY 2013: 100 pods ($3,250,000).

17. Dittman and Sears operated FusionPharm as business partners, and held themselves out as such to numerous individuals and investors. On April 21, 2011, Dittman sent an email to numerous individuals notifying them that he "recently partnered with [Sears] and [we] have acquired and moved [our] operations into a publicly traded company: FusionPharm." Dittman would identify Sears as his "partner" in FusionPharm to numerous individuals through in-person communications and emails. In short, during the Relevant Period, Sears and Dittman worked in tandem regarding the critical decisions concerning FusionPharm's management and operations, with the assistance of defendant Jean-Pierre, and Sears was primarily responsible for FusionPharm's capital formation and investor relations. At no point, however, was Sears included on any FusionPharm disclosures to the investing public as having any involvement with FusionPharm.

18. Following the conversion of shares and name change to FusionPharm, Dittman and Sears, initially with the assistance of Bodden, undertook thereafter regularly to post certain prescribed written disclosures for FusionPharm on the OTC Link internet platform. These submissions typically included financial statements, together with financial statement notes, and quarterly and annual reports, which reports included information, among other things, about the officers, directors, and control persons and significant beneficial owners of the company's stock.[2]

2 Reporting on the OTC Link platform was voluntary on the part of the companies whose stock was listed for trading but the degree and nature of the disclosures provided by the companies determined the "market tier" in which the company would be classified by the internet platform. Higher level tiers required more comprehensive disclosures.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 17 of 42

Throughout the Relevant Period, no mention was made in any of FusionPharm's financial statements, notes, or quarterly and annual reports, that Sears, or any of the entities through which he conducted business, was an affiliate of, or related party to FusionPharm.

19. Defendant Jean-Pierre assisted Sears, Dittman, and Bodden with these disclosure statements to OTC Link. Jean-Pierre worked with Sears regarding FusionPharm's disclosure statements which never disclosed Sears as an affiliate, that he had a criminal conviction, or his family ties to Dittman. Jean-Pierre sent Sears a message stating, "Sounds good! I should still be here. We can go over everything else regarding FusionPharm's disclosure statement." Jean-Pierre would send drafts of the disclosure statements to Sears stating, "Take a look at the attached draft. Make sure all the information is accurate…Let's hopefully try to finalize the proposed disclosure statement hopefully over the weekend and in any event no later than the end of [t]he business day on Monday." In another email, Sears forwards Dittman an email where he sends Jean-Pierre the disclosure statement for July for his review, clearly indicating the close working relationship regarding FusionPharm matters between Dittman, Sears, and Jean-Pierre.

20. In connection with the posting of these quarterly and annual reports to the OTC Link website, defendant Jean-Pierre would and did prepare a series of corresponding Current Information Letters that stated and indicated, among other things, that the letter's author had reviewed FusionPharm's current and past annual and quarterly OTC Link submissions and that in the author's opinion the information disclosed in these findings constituted "adequate current

---

Companies that provided limited or no information were placed in market tiers that OTC Link reserved for stock issuers that prospective investors were advised to approach with caution. OTC Link provided written guidelines for the type of information contemplated in these quarterly and annual reports. The disclosures made by companies whose securities were listed on the OTC Link platform were readily accessible to the investing public and were widely disseminated through financial media outlets.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 18 of 42

information," within the meaning of the federal securities law, concerning FusionPharm and its securities. Defendant Jean-Pierre passed these letters along to Tod DiTommaso who placed the letters onto his own letterhead and signed them, without doing any due diligence with any of the officers or employees of FusionPharm.3 Defendant Jean-Pierre would then transmit the retyped Current Information Letters to William Sears, who would upload them onto the OTC Link website, knowing that the disclosures and letters to OTC Markets misstated the truth about Sears' involvement, criminal history, ownership/control of FusionPharm shares and family ties to FusionPharm. Jean-Pierre charged FusionPharm $500 for each letter. He paid DiTommaso $175 for DiTommaso to sign the letters.

**Sears Served as *de facto* Officer for FusionPharm with the Defendant Jean-Pierre's Knowledge**

21. Even though Sears was never identified in FusionPharm's financial and other disclosures as having a formal role with the company, he was integral to the company's operations. As FusionPharm began its actual operations in the Spring of 2011, Sears was identified in some of FusionPharm's documents as being an officer of the company; he was alternatively classified as

3 OTC Markets provide an Attorney Letter Agreement that must be signed and sent with each Current Information Letter. The Attorney Letter Agreement states that each letter must conform to The Guidelines for Letters with Respect to Adequate Current Information, which is attached to the Agreement as Exhibit A and B. The Guidelines require the lawyer submitting the letter to identify counsel if the letter relies on work of another counsel and that work be attached. In this case, Tod DiTommaso's letters never indicated that his letter was a result of a "ghostwritten" letter from defendant Jean-Pierre. Further, Jean-Pierre never disclosed this information to OTC Markets even though he was FusionPharm's corporate counsel and was familiar with the requirements of the Attorney Letter Agreement. In addition, the Guidelines require that counsel submitting the letter(i) personally met with management and a majority of the directors of the Issuer, (ii) reviewed the Information, as amended, published by the Issuer through the OTC Disclosure and New Service and (iii) discussed the Information with management and a majority of the directors of the Issuer. Tod DiTommaso, met with Scott Dittman one time and then relied on Jean-Pierre for any information regarding the Current Information Letters, to include the draft letter. The only significant change from the letters submitted to DiTommaso from Jean-Pierre to the one that was filed with OTC Markets was that DiTommaso's letterhead and signature were attached.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 19 of 42

the company's "Vice President" "Director of Financial Operations" and/or "Investor Relations Director" in other documents. Jean-Pierre, who was listed as the firm's Corporate Secretary and Legal Counsel, as well as one of its paid employees, knew of Sears' undisclosed roles within FusionPharm.

22. In addition to being identified on initial company documents as an officer, from the time of FusionPharm's organization as a company in Spring 2011 and through at least late 2013 (when FusionPharm hired a contractor to serve as part-time Chief Financial Officer), Sears handled many day-to-day responsibilities typically reserved in other companies for a Chief Financial Officer. For example, Sears: (a) managed incoming investor checks and paperwork; (b) served as FusionPharm's primary contact with the company's transfer agent[4] in connection with FusionPharm common stock transactions; (c) signed payroll checks for FusionPharm employees from FusionPharm account(s); (d) made pitches to a number of investors on FusionPharm's behalf; (e) at times aided in drafted, revised, and posted FusionPharm press releases; (f) was the sole signor (along with his Mother) on FusionPharm's bank account for a majority of 2011, and (g) drafted certain FusionPharm corporate documents, such as written board of director consent for Sears and others to convert their preferred FusionPharm shares for sale. Sears also had and used a FusionPharm email address and, from at least November 2011 to January 2012, received a salary from FusionPharm. In addition to all of his roles, Sears was the primary contact with Jean-Pierre regarding the company's corporate and security matters via emails, skype, or phone calls. Sears' controlling role with FusionPharm was not hidden from Jean-Pierre. Sears paid Jean-Pierre for

---

4 A transfer agent is assigned by a publicly traded company to keep track of the individuals and entities that own the companies' stocks and bonds.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 20 of 42

legal services he provided to FusionPharm signing the majority of the checks from the FusionPharm bank account. On May 31, 2011, Sears asked Jean-Pierre to assist with trademark registration for "us". On July 17, 2011, Sears asked Jean-Pierre to review and advise on a 506[5] document he was drafting for FusionPharm. On October 17, 2011, Sears emailed Jean-Pierre a draft trustee agreement, that was never finalized, stating it was "for both my interests in FS and Scotts in meadpoint." Jean-Pierre often received the FusionPharm financial statements and disclosures from Sears.

**Sears Sold FusionPharm Stock Through Microcap for the Benefit of Sears, Dittman and FusionPharm with the Assistance of Defendant Jean-Pierre**

23. Federal securities laws require that every offer or sale of a security by a company such as FusionPharm needs to be registered with the Securities and Exchange Commission ("SEC") or exempt from registration. FusionPharm was not registered with the SEC. Accordingly, throughout the Relevant Period, any lawful issuance of securities, including convertible notes, preferred and common stock, would have needed to be exempt from registration. Further, any of these exempt offerings would have required that the shares associated with the issuance be "restricted," or limited in the manner and amount in which they could be sold after issuance. For example, restricted securities would have needed to be held by the owner for a certain amount of time (the "holding period") before they could be freely transferrable to a third party. Additionally, shares held by individuals or entities that could direct or control the direction of a company's management

5 Rule 506 is a widely used Regulation D exemption for conducting private placements.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 21 of 42

or policies - classified as "affiliates" - were subject to additional regulations under federal securities laws, such as limitations on how many shares they can sell during a given time period.[6]

24. Dittman and Sears knew that unrestricted or "free trading" shares of FusionPharm could be sold into the market or to be used as negotiating tools. Unrestricted shares would be more marketable to investors as they could immediately sell the shares without having to satisfy any holding period. With knowledge and advice of defendant Jean-Pierre, Sears used the preferred shares acquired by Microcap to fund FusionPharm's operations and to financially support themselves.[7] Because Sears was a *de facto* affiliate throughout the Relevant Period, sales of his preferred shares were accomplished while avoiding registration with the SEC and in violation of the otherwise applicable restriction requirement on newly issued shares.

25. The securities transactions were realized in stages. Sears initially converted 1,450 preferred shares to 145,000 free-trading shares of FusionPharm common stock on April 15, 2011. He then caused Microcap to transfer the remaining preferred shares (183,550 preferred shares) to

---

6 An affiliate of an issuer is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer.

The term person when used with reference to a person for whose account securities are to be sold in reliance upon this section includes, in addition to such person, all of the following persons:

(i) Any relative or spouse of such person, or any relative of such spouse, any one of whom has the same home as such person;

(ii) Any trust or estate in which such person or any of the persons specified in paragraph (a)(2)(i) of this section collectively own 10 percent or more of the total beneficial interest or of which any of such persons serve as trustee, executor or in any similar capacity; and

(iii) Any corporation or other organization (other than the issuer) in which such person or any of the persons specified in paragraph (a)(2)(i) of this section are the beneficial owners collectively of 10 percent or more of any class of equity securities or 10 percent or more of the equity interest.

7 Dittman benefited from some of the sales of Sears' preferred shares in that (1) his FusionPharm salary was sometimes traceable to proceeds of these sales, (2) FusionPharm's operations were financed by round-tripped proceeds from many of these sales; and (3) he received compensation from Meadpoint in 2012 traceable to proceeds of these sales.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 22 of 42

a company owned by an immediate family member (identified herein as "Family Member B"), although Sears continued to beneficially own the stock. Thus, Sears was able to avoid being disclosed in FusionPharm's financial disclosure documents as a 10% shareholder of the company's preferred stock, and an affiliate of FusionPharm based on his stock ownership. After using Family Member B's company to convert small tranches of FusionPharm preferred shares to common stock, Sears caused the remaining 178,760 preferred shares to be transferred to another family member (hereinafter, "Family Member C") on July 29, 2011.[8] Similarly, Sears then used Family Member C as a proxy for his stock ownership, instructing him to transfer as needed small tranches of preferred shares to Microcap (or other entities controlled by Sears), which Sears, in turn, caused to be converted into common stock and sold into the market. Dittman knew about this arrangement. Sears did this in order to conceal his true share ownership, as he continued to beneficially own these shares throughout the Relevant Period.

26. All told, between April 28, 2011 and December 10, 2012, Sears, in consultation with Dittman and Jean-Pierre, converted 14,270 of the 185,000 preferred shares into 1,427,000 shares of FusionPharm common stock. Sears sold 675,000 shares of these shares into the secondary market through Microcap, netting approximately $1.6 million in proceeds. Before being able to sell these shares, the broker required a Rule 144 Attorney Opinion Letter in order to meet the registration exemption under SEC Rule 144 to ensure the proper requirements have been met, including the affiliation status. Sears used a Rule 144 Attorney Opinion Letter that he received from Jean-Pierre. This letter included the signature of Jean-Pierre's niece, Leslie Dinwoodie. The

8 Both Family Members B and C were also relatives of Dittman.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 23 of 42

letter was written by Jean-Pierre and included the signature of his recently barred niece without her knowledge. Dinwoodie did not draft or sign the letter provided to and used by Sears. Jean-Pierre knew Sears was affiliated with FusionPharm. Sears and Dittman agreed that Sears would use some of the remaining 752,000 FusionPharm common stock shares as part of their efforts to raise funds for the company's operations and to finance construction of pods. Investors were told that such shares would be unrestricted and thus could be immediately traded.[9]

27. FusionPharm's transfer agent and brokers were the gatekeepers for the stock and required to do necessary due diligence for transactions to include assessing the holding period and the affiliate status for the involved parties. , Microcap's sale of these unregistered shares was based on false statements by Dittman, Sears, and Jean-Pierre about Sears' affiliation with, and his ability to control certain aspects of, FusionPharm. For example, Dittman signed and submitted a FusionPharm Officer's Certificate attesting to, among other things, that Sears and, derivatively, Microcap, were not affiliates of FusionPharm. Similarly, Sears and Dittman submitted documents to the transfer agent and broker that claimed Microcap (Sears) was not an affiliate of FusionPharm, even though Sears handled many responsibilities typically reserved in other companies for an officer or director. Jean-Pierre lied about Sears' affiliation status in a Rule 144 Attorney Opinion Letter he drafted for DiTommaso's signature in June, 2012, and again in July, 2012. Sears, Jean-

9 For example, on May 12, 2011, Dittman emailed Sears with various proposals to a prospective investor, including "[w]e will throw you 1 million shares of free trading paper, in 100,000 share tranches (so they are immediately liquid) while we draw down the line ($100k for 100,000 shares)." Eight days later, on May 20, 2011, Sears emailed a potential financier and cc'd Dittman. In the email, Sears claimed that "instead of doing the whole wait for a registration statement thing, we have gone to some shareholders and have been able to put together enough stock to do a transaction with free trading paper." The "shareholders" referenced in Sears' email referred to his own company, Microcap.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 24 of 42

Pierre, and Dittman hid Sears' role with FusionPharm in order to have the transfer agent remove the restricted legend on the stock certificates and sell the shares as free trading.

28. Dittman and Jean-Pierre also misrepresented facts about Sears' stock ownership and transactions to FINRA. In early October 2011, FINRA investigated Microcap's significant sales of FusionPharm stock. During that investigation, Dittman represented to FINRA that Sears was only a "part time salesman" at FusionPharm and that Dittman was unaware that Sears owned any FusionPharm stock and, therefore, was unaware he was selling FusionPharm stock. During that time period, Sears sent a message to Jean-Pierre indicating that the FINRA investigation "is a new division of FINRA only enacted post Madoff" indicating that Sears is aware of the investigation and that Dittman, Sears and Jean-Pierre are working on how to resolve the matter. Dittman emailed Sears asking if they need to get Guy [Jean-Pierre] involved at this point concerning the FINRA investigation. Sears messaged Jean-Pierre to call Scott [Dittman] to discuss the FINRA investigation. On October 19, 2011, Sears, with the assistance of Jean-Pierre, backdated a fraudulent document stating that Microcap Management, including the broker accounts, had been transferred to Richard Scholz for $10.00. Scholz stated that he signed the Agreement for the Purchase of Ownership Interest, a document Jean-Pierre assisted in drafting, which was back dated to May 9, 2011 after receiving an email from Sears on October 19, 2011. Scholz did not receive any compensation from Sears for doing this and did not pay the $10.00 purchase price as reflected in the agreement. In a later interview, on November 3, 2011, Dittman indicated to FINRA staff that Sears "no longer owns Microcap Management" and that Sears owned no "FusionPharm stock." But only weeks earlier, on September 6, 2011 and September 13, 2011, Dittman and Sears emailed each other details about Microcap's trading, that relied on the Rule 144

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 25 of 42

Attorney Opinion Letter. Later, Dittman and Jean-Pierre email regarding what was submitted to FINRA in March 2011, of which some of the information is forwarded to the FINRA investigator to include the facts that it was Sears and the former owner of Baby Bee Bright discussing the company's transition. Later in November 2011, the FINRA investigator emailed Dittman and copied Jean-Pierre, requesting that Dittman call him to discuss an explanation of who your brother-in-law William Sears sold his entity Microcap Management to. Dittman requested from Jean-Pierre a conversation before they call the FINRA investigator. Jean-Pierre responded to FINRA via a letter/email stating essentially that William Sears is no longer the owner of Microcap. A short time after, Jean-Pierre was paid twice by Sears from a Microcap bank account. And then in 2012, Jean-Pierre drafted two Rule 144 Attorney Opinion Letter for Microcap on behalf of Sears illustrating his knowledge that Sears maintained control of Microcap throughout the Relevant Period to include during the inquiry by FINRA.

**Sears and Dittman Use Affiliated Entities to Increase Access to Free-Trading Shares with Jean-Pierre Knowing that Fabricated Information was being Used**

29. Dittman and Sears used entities owned by Sears to increase their access to FusionPharm stock. Two of these entities, Microcap and Bayside, were, as discussed above, entities that Sears had previously been used in connection with earlier business affairs. Two new entities, VertiFresh, LLC ("VertiFresh") and Meadpoint Venture Partners ("Meadpoint"), were formed in connection with efforts to sell FusionPharm's PharmPods and license its business methods and technology. Meadpoint was additionally used, in part to secure additional FusionPharm stock. (The four entities are hereafter collectively referred to as the "Facilitating Entities".)

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 26 of 42

30. In addition to Sears' control over these entities, the Facilitating Entities shared other connections to FusionPharm. Among other things, Meadpoint's and VertiFresh's principal places of business were 4360 Vine Street in Denver, CO – the same address as FusionPharm for most of the Relevant Period. VertiFresh and Meadpoint also shared the same workspace and employees with FusionPharm. And the Facilitating Entities paid over $40,000 for shipping containers (the raw materials for PharmPods) that went to FusionPharm.

31. Dittman was also affiliated with, and acted on behalf of, VertiFresh and Meadpoint. Regarding VertiFresh, materials sent to potential VertiFresh investors identified Dittman as a Director of the company. Dittman edited and reviewed these materials before they were sent to potential investors. Dittman also made a presentation on VertiFresh's behalf with Sears to the Denver Office of Economic Development JumpStart BizPlan Awards contest in 2012. The PowerPoint presentation Dittman and Sears used at the presentation identified Dittman as VertiFresh's Director. Moreover, some company organization documents reflected that Dittman was the CEO and Chairman of Board for VF Management, Inc., VertiFresh's sole managing member.

32. Regarding Meadpoint, a draft of the company's shareholder agreement, never executed, identified Dittman as a 50% owner of the company.[10] Dittman also received tens of thousands of dollars in purported compensation as a 1099 worker of the company, and drafted investor materials on Meadpoint's behalf. Dittman later identified himself on an application to the Colorado Medical Marijuana Enforcement Division as a "consultant" to Meadpoint. At no point

10 The draft Meadpoint Shareholder Agreement was sent in an email from Sears to Dittman on November 14, 2011.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 27 of 42

did FusionPharm disclose to investors that Dittman had any affiliations with VertiFresh or Meadpoint.

33. As a named officer of FusionPharm, Dittman's ownership share and transactions in FusionPharm stock were disclosed on FusionPharm's financial disclosures filed on, and made available to investors via, OTC Link. However, by facilitating the sale of FusionPharm shares through Microcap, Bayside, and Meadpoint, Dittman's, along with Sears' involvement and interest in those stock transactions remained undisclosed to investors. Jean-Pierre, Dittman, and Sears knew and assisted in hiding these sales from investors by what was placed in the disclosure statements to OTC Link. For example, the quarterly disclosure statement due for September 30, 2011 clearly involved the input from Dittman, Sears, and Jean-Pierre. Jean-Pierre in an email provided feedback to Sears on the statement of changes in stockholder's equity and the notes to the financial statements, which were forwarded to Dittman from Sears. After that email, Jean-Pierre sent Sears a draft of the 9/2011 disclosure statement where Sears is not disclosed, which is forwarded onto Dittman. After further review, Jean-Pierre sent FusionPharm's Information and Disclosure statement for September 30, 2011 financials to Sears and Dittman. After sending the Disclosure Statement to Sears and Dittman, Jean-Pierre sent a drafted Current Information Letter for the September 30, 2011 FusionPharm statements to Tod DiTommaso. Two days later, Dittman sent an email to DiTommaso, Jean-Pierre, and Sears saying a new opinion letter is necessary for updated posting. Jean-Pierre responded back to Sears saying he sent the revised [signature of Tod DiTommaso] OTC Markets opinion earlier today, did you receive it??? And Sears replies back, "Yes, it should be uploaded."

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 28 of 42

34. Prior to 2012, Sears requested from Jean-Pierre sample promissory notes. Jean-Pierre sent Sears a sample non-convertible promissory note and sample convertible promissory note (lender could convert portions of the note for shares of FusionPharm stock). Sears wrote Jean-Pierre in requesting that these promissory notes be completed when he stated, "I want to try and have that promissory note wrapped up today. Hey Guy…any luck with that promissory note."

35. In 2012, when FusionPharm did not have any money, Bodden, Sears, and Jean-Pierre met in Florida to discuss how to raise money for FusionPharm and a potential deal they were working on. Proof of the meeting came from an email Bodden sent Jean-Pierre on May 30, 2012, stating, "Guy Bill [William Sears] is in route to Orlando right now and when he lands I'll get a time for you. Cliff."

36. Following the meeting, Bodden prepared two separate notes (one for Bayside and one for Meadpoint) for *non-convertible* lines of credit. On June 4, 2012, Bodden emailed Sears a draft Bayside non-convertible promissory note and credit line agreement, writing that he (Bodden) would also draft drawdown requests to match the dates and amounts of previously made deposits into FusionPharm's accounts. Between June 5, 2012 and June 6, 2012, Bodden drafted six drawdown requests totaling $177,000 and sent the requests to Sears. The final non-convertible note and credit line agreement ("Bayside Non-Convertible Note") was then signed on June 6, 2012 with a purported $275,000 line of credit. However, the Bayside Non-Convertible Note signatures (Dittman on behalf of FusionPharm and Family Member A on behalf of Bayside, acting as Sears' surrogate) were backdated to May 2, 2011.

37. To justify the "drawdowns," Sears attached deposit slips for nine previous bank deposits totaling approximately $171,000. In reality, all but one of the various deposits listed as

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 29 of 42

purported drawdowns actually came from Microcap, and the funds are traceable to Microcap sales of FusionPharm stock. Dittman signed these drawdown requests on June 6, 2012; the dates on the requests, however, were earlier in time and matched when funds actually had been disbursed to FusionPharm.

38. Following a similar pattern, on June 19, 2012, Bodden emailed Sears a draft of the Meadpoint non-convertible promissory note and credit line agreement for signature, with a credit limit of $200,000 ("Meadpoint Non-Convertible Note"). As with the Bayside Non-Convertible Note, Dittman signed the Meadpoint Non-Convertible Note on or about June 19, 2012, when the Note bore a date of June 15, 2011. Sears signed on Meadpoint's behalf and also backdated his signature. FusionPharm attached deposit slips for $88,000 of deposits, although again the money actually came from Microcap stock sales. Once again, Dittman signed drawdown requests that bore earlier dates to match the dates on which funds actually had been disbursed to FusionPharm.

39. Evidence shows that Jean-Pierre was assisting and/or knew of the existence of these non-convertible promissory notes as of June 20, 2012. An email from Bodden to Dittman with Jean-Pierre and Sears copied included a due diligence package that contained both non-convertible notes for Bayside and Meadpoint. In addition, Sears sent an email to Jean-Pierre and Bodden stating, "Circle the wagons and get the rest of our outstanding docs wrapped up. I want to get funded this week", illustrating his intent to fund FusionPharm with the proceeds from this transaction, circumventing securities laws.

40. Five months later, on November 26, 2012, Bodden emailed Sears new drafts of the Bayside and Meadpoint notes now documented as *convertible* notes, writing "[t]he Notes work with the existing drawdown requests." (hereinafter referred to as the "Meadpoint Convertible

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 30 of 42

Note" and "Bayside Convertible Note" respectively). The Bayside Convertible Note, signed by Dittman on FusionPharm's behalf on or about November 26, 2012 but bearing a date of May 2, 2011, was a 10% Convertible Promissory Note and Line of Credit Agreement in the amount of $275,000 with a conversion rate of $0.01/share. Similarly, the Meadpoint Convertible Note was also signed by Dittman on FusionPharm's behalf on or about November 26, 2012 but bore a date of June 15, 2011, and was a 10% Convertible Promissory Note in the amount of $275,000 with a conversion rate of $0.01/share.[11] The $0.01/share conversion rate was a massive discount on the stock price at the purported date of the loan. For example, on May 2, 2011, FusionPharm's stock was trading at approximately $1.30 and on June 15, 2011, FusionPharm's stock was trading at $2.98. This discount was far greater than any other investor was receiving from FusionPharm at the time and raises obvious concerns about the validity of the transaction.

41. The notes were changed because Sears wanted to sell portions of the notes to potential buyers whom he had identified. By changing the non-convertible notes to convertible ones, Sears and Dittman could present the notes to FusionPharm's transfer agent for conversion of the debt into FusionPharm common stock. Additionally, by backdating the notes, Dittman and Sears were able to mislead the transfer agent into believing that: (1) all debt obligations reflected in the backdated notes were intended to be convertible at the time that FusionPharm incurred the debts; (2) the debt obligations always had been convertible; (3) the backdated notes constituted contemporaneously created written evidence of the debt obligations reflected therein; and (4)

11 The date (changed to December 8, 2011) and amount ($275,000 to $88,000) of the Meadpoint Convertible Note would be further revised at later dates.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 31 of 42

consequently that the applicable holding period required by the federal securities laws had been satisfied.

**Sears and Dittman Convert Notes into Free Trading FusionPharm Shares and Raise Millions with the Assistance of Defendant Jean-Pierre**

42. After Dittman signed the backdated Bayside Convertible Note, Sears immediately converted debt into FusionPharm shares. On December 6, 2012, Bayside submitted a Notice of Conversion to FusionPharm to convert $1,400 of the debt into 140,000 FusionPharm common shares. The package that Sears submitted to the transfer agent contained several false documents, including: (1) the backdated Bayside convertible note and drawdown requests/deposit detailed above; (2) a letter from Bayside attesting that Bayside was not an affiliate (signed by Family Member A); (3) a separate Statement of Non-Affiliate from Bayside (signed again by Family Member A); and (4) a FusionPharm Officer's Certificate, Written Consent, and letter signed by Dittman stating that Bayside (and derivatively Sears) were not affiliates and that the Bayside Convertible Note was a valid obligation of the company as opposed to round-tripped[12] stock sale proceeds.[13]

43. Jean-Pierre drafted the required Rule 144 Attorney Opinion Letter for this conversion knowing that certain requirements, including the holding period and volume limitation,

---

12 "Round tripping" occurs when a company provides an individual or entity with access to the company's stock with the understanding that a portion of the proceeds derived from the sale of such stock will be returned to the company. The practice is not unlawful *per se*. However, such "round tripping" may run afoul of the federal securities laws if the stock proceeds that are generated from securities transactions that involve unregistered securities that are not deemed lawfully exempt from registration. The "round tripping" may, under certain circumstances, also be required to be disclosed under the federal securities law or accounting principles.

13 The evidence establishes that Dittman and Sears also created the misimpression that Sears had no affiliation with Bayside. On December 17, 2012, Sears emailed the FusionPharm transfer agent claiming that Bayside was a "family member['s] company" and that he would be the "point person" for the transaction. Dittman was cc'd on the email and followed up by writing the transfer agent to "[p]roceed with haste as directed" by "Mr. Sears."

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 32 of 42

in order to meet the registration exemption under SEC Rule 144 were not met, considering Jean-Pierre knew the same notes were non-convertible as of June 20, 2012. Jean-Pierre sent an email to Tod DiTommaso in December 2012 stating, "Attached please find a proposed Debt Conversion Opinion Letter for FSPM together with the accompanying back-up documentation. Please prepare as soon as possible…" Tod DiTommaso retyped the letter on his letterhead and added his signature and forwarded the letter back to Jean-Pierre. Initially, the Attorney Opinion Letter raised concerns with the transfer agent a few different times, due to inaccuracies within the materials submitted. Sears received several emails from the transfer agent regarding these inaccuracies and forwarded them to Bodden and Jean-Pierre to fix. Regarding the issues with the Attorney Letter, Sears reached out to Jean-Pierre to inquire about the letter stating, "how is my document?" Jean-Pierre responds back that Sears should receive it in the morning and "he would reach out to DiTommaso in about 45 mins to an hour when he should be in the office and get back to Sears." Sears replies, "Awesome!" This email was followed up with another email by Jean-Pierre attaching another revised opinion letter where Jean-Pierre stated to DiTommaso, "It took a little bit longer than I thought because I wanted to make sure we touched all the bases and therefore made more changes than I initially imagined." Tod DiTommaso retyped the letter on his letterhead and added his signature and forwarded the letter back to Jean-Pierre, who then forwarded it to Sears. Jean-Pierre skyped with Sears asking if he "received the letter."

44. Contrary to these representations made to transfer agent and broker by Sears, Jean-Pierre knew that Sears was an affiliate due to his ownership of Bayside and control of FusionPharm. Sears' affiliate status also meant that Bayside needed to abide by the volume restrictions mandated by federal securities laws. Specifically, Bayside could not sell more than

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 33 of 42

1% of the FusionPharm's outstanding common stock shares during a three-month period. As of 12/31/2012, FusionPharm had approximately 3,001,650 common shares outstanding, meaning Bayside could only sell a maximum of approximately 30,016 shares during this period and still comply with the federal securities laws. However, Sears sold all 140,000 of Bayside's shares during this period, thus violating the volume restrictions.

45. On February 5, 2013, Sears sold the remainder of the Bayside Convertible Note to an investment group. Sears received $250,000 from the investment group in consideration for the remaining debt that FusionPharm purportedly owed Bayside under the backdated note. In order to ensure that the five investors in the investment group immediately received unrestricted shares, Dittman and Sears again made statements to the transfer agent concerning ownership of Bayside that masked Sears' *de facto* control of Bayside. Again, Jean-Pierre was part of hiding the fact that Sears was an affiliate of FusionPharm when selling the Bayside note. Jean-Pierre was sent an email from Sears that included the required documents for the sale of the note. In addition, knowing Sears control status at FusionPharm and his control of Bayside, Jean-Pierre drafted all five of the Attorney Opinion Letters for the sale to the five individual buyers of the note. Jean-Pierre sent those letters to Tod DiTommaso along with an Officer's Certificate signed by Dittman falsely stating that Bayside was not affiliate of FusionPharm. These letters and the Officer Certificate were then submitted to the transfer agent and relied upon to issue the shares from the note as free-trading.

46. Once Sears sold the remainder of the Bayside debt, Sears, Jean-Pierre, Bodden and Dittman turned to utilizing the Meadpoint Convertible Note. Between March 2013 and April 2014, Sears, though Meadpoint, converted $42,450 of purported debt into 4.245 million FusionPharm

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 34 of 42

common shares. Sears, with Dittman's knowledge, sold approximately 3.2 million of those shares in the market. Jean-Pierre drafted two Attorney Opinion Letters for Meadpoint falsely stating that Meadpoint (Sears) was not an affiliate of FusionPharm. Jean-Pierre sent the first Attorney Letter in an email in March of 2013 and the second was sent around August 13, 2013.

47. The Meadpoint conversions were documented similarly to the Bayside conversion. The packages that Sears submitted to the transfer agent included similar false documents, including: (1) the backdated Meadpoint Convertible Note and deposit details listed above; (2) a letter from Meadpoint attesting that it was not an affiliate (signed by Sears); (3) a separate Statement of Non-Affiliate from Meadpoint (signed by Sears); (4) a FusionPharm Officer's Certificate, Written Consent, and letter (all signed by Dittman) stating that Meadpoint (and derivatively Sears) were not affiliates and that the Meadpoint Convertible Note was a valid obligation of the company. As with the Bayside converted shares, the backdated nature of the Meadpoint Convertible Note misled the transfer agent into believing the holding period had been satisfied as to all debt obligations reflected in the Note. In addition, Jean-Pierre drafted and had the Attorney Opinion Letters signed and dated by Tod DiTommaso, knowing that the holding period and affiliate status were fabricated in each of those letters.

48. FusionPharm's transfer agent emailed Dittman in February 2014 in response to one of the Meadpoint conversion requests. The transfer agent employee wrote that he had concerns about the conversion because Sears requested the conversion on Meadpoint's behalf, and the transfer agent had Sears listed as an Administrative Officer of FusionPharm. Dittman falsely responded to the transfer agent that Sears had never been employed by FusionPharm (when, in truth and in fact, he had been employed directly by FusionPharm for 3 months in 2011 expressly

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 35 of 42

as a named employee and thereafter continued to work at FusionPharm during the Relevant Period) and was not an affiliate. Meadpoint was, however, an affiliate based on Sears' control of both FusionPharm and Meadpoint.

49. As with the Bayside Convertible Note, Sears and Dittman also used the Meadpoint Convertible Note to obtain cash from outside investors. Rather than selling debt, however, Sears converted $15,000 of debt under the Meadpoint Convertible Note into 1.5 million shares of FusionPharm common stock. Sears, with some assistance from Dittman and Jean-Pierre, then sold the 1.5 million shares to three investors in August 2013 for $184,831. Sears emailed Jean-Pierre stating, "Guy it would seem I need another letter of opinion for the note. Please reference Meadpoint converting it into the Name of Richard Scholz as in the documents." These three investors received unrestricted shares based on Dittman's, Jean-Pierre's and Sears' false representations to FusionPharm's transfer agent.

50. From May to December, 2013, Meadpoint received approximately $273,210 in proceeds from the sale of stock derived from the Meadpoint Convertible Note, and an additional $184,831 from the three investors detailed above, for a total of $458,041. The majority of these funds were routed back to FusionPharm in sham transactions reported as PharmPod sales.

51. In 2014, after the passage of Amendment 64 in Colorado, legalizing recreational usage of marijuana, FusionPharm's share price and trading volume spiked.[14] From January through May, 2014, Meadpoint received $9.9 million in proceeds from the sale of stock derived

14 The average price of FusionPharm shares from May 2011 through December 2013 was $1.46; the average share price from January 2014 until the SEC suspended trading on May 16, 1014 was $4.28. Average trading volume during the two periods was 20,773, and 781,800 respectively.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 36 of 42

from the Meadpoint Convertible Note. While some of this amount was transferred to FusionPharm in 2014, the majority – approximately $8.7 million - was seized by the government in May 2014.

52. In total, from approximately April 28, 2011 through May 8, 2014, Sears, in consultation with Dittman, Jean-Pierre, and Bodden, sold more than 4 million shares of FusionPharm stock through the Facilitating Entities and acquired more than $12.2 million in stock sale proceeds: $2.2 million prior to the passage of Amendment 64; $9.9 million in the months immediately following the passage of Amendment 64. Jean-Pierre acted as Sears' and Dittman's securities attorney, which included the drafting of Current Information Letter for OTC Markets on behalf of FusionPharm, the drafting and review of disclosure statements that outlined FusionPharm's ownership, directors, controllers, family member ties, criminal histories, and financials, and the drafting of Rule 144 Attorney Opinion Letters to transfer agents and brokers concealing Sears role an affiliate of FusionPharm.

**FusionPharm Falsely Reports Proceeds from Stock Sales as Revenue, and Fails to Disclose Sears and Facilitating Entities as Affiliated and Related Parties**

53. In addition to the funds Dittman and Sears used for their own personal benefit, they also round-tripped over a million dollars of stock sale proceeds back to FusionPharm, most of which was booked as company revenue, and the rest as loans. In this manner, Dittman and Sears consistently transferred a portion of a given week's trading proceeds to FusionPharm. On certain occasions, they even used a formulaic breakdown for the proceeds.

54. Dittman and Sears used the stock sale proceeds transferred to FusionPharm to sustain FusionPharm's business. Much of the funds were portrayed as involving transactions with Meadpoint and VertiFresh. As their business operations got underway, Dittman and Sears had agreed to form entities to act as intermediaries with respect to FusionPharm's ultimate customers,

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 37 of 42

one entity devoted to customers whose intended use of the PharmPods was in connection with the cannabis cultivation and the other with respect to a business devoted to using the PharmPods for growing non-cannabis produce (primarily, lettuce). Meadpoint was formed for the former purpose and held out as FusionPharm's 'exclusive distributor' of PharmPods. VertiFresh was formed ostensibly for the latter purpose and, as Dittman and Sears started growing lettuce in PharmPods that they kept at FusionPharm's business premises, they began to market sale of this produce to local restaurants and retailers under the name "VertiFresh." As indicated above, the affairs and operation of all three entities – FusionPharm, Meadpoint and VertiFresh – were comingled and all three entities were jointly operated, as a matter of fact, by Sears and Dittman in concert, with Jean-Pierre and Bodden understanding the corporate structure.

**<u>Vast Majority of FusionPharm's Revenue from Facilitating Entities</u>**

55. From 2011 through the June 30, 2013, FusionPharm reported approximately $1,292,732 in revenue[15]. Jean-Pierre drafted the Current Information Letters for each of these reporting periods stating that the information provided was "adequate current information". The vast majority of the revenue recognized during this time period came from Sears' FusionPharm stock sales and the sale of the Bayside note. In its 2012 Annual Report, FusionPharm claimed $808,398 in revenue. FusionPharm stated that $750,000 of this revenue resulted from a license agreement with VertiFresh. As detailed above, Sears and Dittman owned and/or controlled both entities (a fact never disclosed to investors), meaning the transaction was essentially one party

15 In the 2013 Annual Report, FusionPharm adjusted the 2012 revenue from $808,398 to $303,398 by writing down $500,000 of the revenue associated with Vertifresh agreement.

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 38 of 42

transacting with itself. During the Relevant Period, VertiFresh only generated nominal revenue from lettuce sales.

56. The financial disclosures made available to investors via OTC link never disclosed Sears' role with FusionPharm or any of the Facilitating Entities. They also never disclosed Dittman's role with the Facilitating Entities.

**Summary**

57. FusionPharm was a struggling business from 2011 through 2013. While it was clear that Sears and Dittman were partners to anyone close to the company including Jean-Pierre, they made a decision, with the assistance of Jean-Pierre to not disclose Sears' role as an affiliate of FusionPharm. They did this for three reasons: If Sears was disclosed as a controller of FusionPharm, 1) they would also have had to disclose his criminal history; 2) he would not have been able to sell FusionPharm stock in excess of the affiliate volume limits; and 3) would not have been able to route those proceeds back to the Company as purported convertible loans and revenue without disclosure as related party. In order to enact their plan to not disclose Sears, they needed Jean-Pierre to provide the necessary opinion letters hiding Sears's role in order to get Sears' stock cleared through the brokers and transfer agents and submit Current Information Letters to OTC Markets stating that their filings contained adequate current information.

**B. Description of Statements in Furtherance of the Conspiracy**

58. The chart attached to this proffer, entitled *James* Log (Exhibit 1), summarizes coconspirator statements made in furtherance of the conspiracy charged in Count 1 of the Superseding Indictment and described in this proffer. The letters following the 801(d)(2)(E) entries in the "Bases for Admission" column refer to the subparagraphs of paragraph 7 above,

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 39 of 42

page 5 (Exhibit 2, Quick Sheet for Purposes), which identify purposes for which the coconspirator statements may be offered.

59. The statements in the log are the ones that the government identified as potential conspirator statements that could be admitted pursuant to Rule 801(d)(2)(e). However, to provide some context for many of these statements, government counsel included in the log entries statements which are not hearsay under the Rules of Evidence.

60. Additionally, some statements may not fall under Fed. R. Evid. 801(d)(2)(E) because they are not hearsay. This may be for a variety of reasons. The conversations may not be "statements" for hearsay purposes because nothing was asserted.[16] Further, statements are not "hearsay" if they are not offered for the truth of the matter asserted.[17] *See United States v. Cesareo-Ayala*, 576 F.3d 1120, 1128-1130 (10th Cir. 2009). Statements that are untrue; statements that are used to establish verbal acts; or statements that show the effect on the listener or hearer are not hearsay. *United States v. Schmidt*, 2007 WL 1237975, * 1 (D. Colo. 2007)(J. Blackburn). Likewise, statements that provide context and completeness to a defendant's admission are not excluded as hearsay. *United States v. McDowell*, 918 F.2d 1004, 1007 (1st Cir.1990) ("Nor can a defendant, having made admissions, keep from the jury other segments of the discussion reasonably required to place those admissions into context."); *see also United States v. Gutierrez-Chavez*, 842 F.2d 77, 81 (5th Cir.1988) (holding that statements on tape

---

16 A "statement" is an oral or written assertion, or nonverbal conduct intended as an assertion. Fed. R. Evid 801 (a).

17 "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid 801(c).

Case 1:17-cr-00008-WJM Document 105 Filed 05/18/18 Page 40 of 42

recording were admissible "for the limited purpose of putting the responses of the [defendant] in context and making them intelligible to the jury and recognizable as admissions"). The government may offer some of these statements, or at least some portion of the statements, as verbal acts or directions rather than as assertions of fact. As such, these statements would not be covered by the hearsay rules. *See* Fed. R. Evid. 801(a); *United States v. Jackson*, 88 F.3d 845, 847-48 (10th Cir. 1996). Questions are also generally not hearsay because they are not intended as assertions. *Jackson*, 88 F.3d at 848.

If statements qualify as non-hearsay admissions under Fed. R. Evid. 801(d)(1) or (d)(2)(A)-(D), rather than co-conspirator statements under Fed. R. Evid. 801(d)(2)(E), they need not be included in a *James* proffer. Similarly, even if a statement is hearsay, it may be admissible under a hearsay exception found in Fed. R. Evid. 803 or 804, including business records, such as transfer agents and OTC Markets records. Therefore, the statement need not be addressed here as a co-conspirator statement. And "direct testimony of a conspirator ... describing his participation in the conspiracy and the actions of others is not hearsay." *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007), quoting *United States v. Mobile Materials, Inc.*, 881 F.2d 866, 871 (10th Cir.1989).

61. The government has culled from the interviews of cooperating defendants and witnesses those statements it submits were made during the course of and in furtherance of the conspiracy. However, much of these interviews are narratives and therefore are not offered pursuant to Rule 801(d)(2)(E). *See Perez,* 989 F.2d at 1578 ("statements relating to past events, even those connected with the operation of the conspiracy where the statement serves no immediate or future conspiratorial purpose," is not in furtherance of the conspiracy); *Roberts,* 14

F.3d at 514-15 (“narrative declarations of past events are not ‘in furtherance’”).

62. Respectfully submitted this 18th day of May, 2018.

ROBERT TROYER
United States Attorney

<u>*/s/ JEREMY SIBERT*</u>
Jeremy Sibert
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
(303) 454-0100
FAX: (303) 454-0403
Email: jeremy.sibert@usdoj.gov
Attorney for the government

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of May 2018, I electronically filed the foregoing **UNITED STATES' James Log** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Clifford Barnard
Attorney for the Defendant

*s/Jeremy Sibert*
JEREMY SIBERT
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0406
Jeremy.Sibert@usdoj.gov

Case 1:17-cr-00008-WJM Document 103-1 Filed 05/18/18 Page 1 of 92

Criminal Case No. 17-cr-00008-WJM
UNITED STATES v. GUY M. JEAN-PIERRE

| | Statement | Declarant | Date | Source (Bates Numbers) | Basis for Admission | Defendant | Objections to Statement |
|---|---|---|---|---|---|---|---|
| 1 | Scott Dittman and William Sears operated FusionPharm and that they did not appear to work for anyone. | Todd Abbott | 2011 - 2012 | INV_00002972 | e, m | | |
| 2 | Abbott does not recall selling shares of FusionPharm to Microcap and/or William "Bill" Sears on or about September 11, 2011, for $40,000.00. Abbott has never received $40,000.00 from Sears. | Todd Abbott | 2011 - 2012 | INV_00002972 | e, m | | |
| 3 | Abbot always understood that Dittman and Sears were partnered in Fusion Pharm, Inc | Todd Abbott | 2011 - 2012 | INV_00002975 | b, d, g, l, m | | |
| 4 | Abbott advised that he would have followed the instructions provided by Scott Dittman in the email dated September 14, 2011, in order to get free trading shares | Todd Abbott | 2011 - 2012 | INV_00002976 | a, d, e, p, n, p, s | | |
| 5 | Abbott did not see any red flags at the time because he trusted Scott Dittman's instructions. He understood that completing the document was all part of the process for Abbott to get shares of FusionPharm that he could sell. Abott advised that the majority of his comunications with Dittman were via email, but that Dittman stopped by Abbott's house on at least two to three occasions for face-to-face meetings. | Todd Abbott | 2011-2012 | INV_00002976 | a, d, e, p, n, p, s, v | | |
| 6 | Through R. Dittman, Abbott learned that S. Dittman and Sears needed additional financial support for a pending business deal associated with Fusion Pharm, Inc. | Todd Abbott | 2011 - 2012 | INV_00002976 | a, d, e, p, n, p, s, v | | |
| 7 | Sears proposed using his mother to be listed as the secretary for FusionPharm and have her sign the stock certificate. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, d, e, p, n, p, s, v | | |
| 8 | Sears and Jean-Pierre advised Dittman to put 185,000 preferred shares of FusionPharm in Robert Dittman's name. Robert Dittman understood that he was going to be holding the shares and that Scott Dittman would contact him if he needed to sell shares to raise capital for FusionPharm. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| 9 | Sears suggested to release press statements when FusionPharm completed something | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| 10 | The April, 2011, 200-1 reverse stock split for FusionPharm's common shares was suggested to Dittman by Sears and Jean-Pierre. The purpose of the split was to increase Dittman's ownership interest in FusionPharm. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| 11 | Sears and Jean-Pierre discussed adding the convertible feature to the note. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| 12 | Dittman spoke with Sears and Jean-Pierre about Sears' role with FusionPharm. Dittman did not want to list Sears as an officer of FusionPharm because he would have had to disclose Sears' felony conviction. Dittman described disclosing Sears as "suicide" for FusionPharm. | Scott Dittman | 2011-2013 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s,v | | |

Case 1:17-cr-00008-WJM Document 103-1 Filed 05/18/18 Page 2 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **13** | Dittman had several conversations with Jean-Pierre on the subject of Sears' role with FusionPharm and the concept of "affiliate". Jean-Pierre was aware that Sears was involved with FusionPharm's stock, sales, communication with FusionPharm's accountant and performed administrative tasks for FusionPharm. | Scott Dittman | fall of 2010 - | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **14** | Dittman discussed with Jean-Pierre that Sears was selling FusionPharm stock and provided proceeds from the sale of the stock back to FusionPharm in the form of loans in 2011. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **15** | Dittman stated that he sent this email to a lot of people with the title "FusionPharm" | Scott Dittman | Apr-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **16** | DiTommaso asked if all the required information had been posted, but did not ask any further questions regarding OTC posting for FusionPharm and conversation with Scott Dittman. | Scott Dittman | 2011-2013 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **17** | DiTommaso and Dittman discussed Dittman's background, the nature of FusionPharm's business, their plans for raising capital and Sear's being Dittman's brother-in-law and his criminal history | Scott Dittman | Jul-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **18** | Dittman spoke to Jean-Pierre about the FINRA investigation and was nervous | Scott Dittman | Oct-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **19** | Sears told Dittman about his arrangment with Scholz early in 2011 and that Sears wanted to get out of advertising and the Microcap Management Letter | Scott Dittman | Early 2011 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **20** | Sears always had the idea that assets from all the companies to include FusionPharm and Meadpoint would merge together. | Scott Dittman | Oct-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **21** | Dittman told Bohlender that he had discussed the loans with Jean Pierre and Jean Pierre said that it was not a problem. | Scott Dittman | October, 2011 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **22** | Dittman contacted Jean-Pierre shortly after Todd Kramer called Dittman on his cellular telephone on October 5, 2011. Dittman contacted Sears and Jean-Pierre again shortly after speaking with Kramer on October 6, 2011 and provided them with an update about the discussion. Jean-Pierre was aware that Sears and Scholz were selling Sears' FusionPharm stock that Sears acquired from Fred Dahlman. | Scott Dittman | Oct-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, o | | |
| **23** | Between approximately October 27, 2011 and October 30, 2011, Dittman, Sears and Jean-Pierre had a call to discuss the FINRA inquiry. Jean-Pierre and Sears told Dittman that there was an agreement illustrating the transfer of Microcap Management to Scholz. Dittman told Jean-Pierre that Todd Kramer at FINRA wanted to see the document. Jean-Pierre told Dittman that Dittman cannot send the agreement to FINRA because FINRA should not be asking Dittman for non-company information. Jean-Pierre told Dittman that he would write a letter to FINRA explaining that FusionPharm would not provide a copy of the agreement transferring ownership of Microcap. | Scott Dittman | Oct-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **24** | Dittman spoke with Jean-Pierre about the inquiry by FINRA and the investigator questions about Sears' sales of FusionPharm stock. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, v | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **25** | Jean-Pierre, Sears and Dittman discussed the 2011 loans when Jean-Pierre visited FusionPharm in October, 2011. They did not discuss breaking the funds into two separate loans. The loans were not documented until June, 2012, when Bodden drafted them as non-convertible loans. | Scott Dittman | 2011-2012 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **26** | FusionPharm was in a "capital crisis " the entire time that Andy Duke worked there. | Andy Duke | 2011 | GJP_00001759 (Andy Duke - 302 Report) | e, m | | |
| **27** | Duke said that Sears was a "Don't see him Don't know him" consultant. Sears was not supposed to be associated with the company and could not operate in an official capacity because of his problems with the SEC in the past. | Andy Duke | 2011 | GJP_INV_0000278 2 | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **28** | Jean-Pierre was a "securities counsel ace" to Sears. | Andy Duke | 2011 | GJP_00001759 (Andy Duke - 302 Report) | e, m, d | | |
| **29** | Jean-Pierre knew that he was supposed to discuss legal matters with Dittman as FusionPharm's Chief Executive Officer. Dittman was looking to Sears for how to handle legal matters and so, therefore, Jean-Pierre worked directly with Sears. | Andy Duke | 2011 | GJP_00001759 (Andy Duke - 302 Report) | a, b, d, e, f, i, k, n, p, r, s | | |
| **30** | Sears talked about Jean-Pierre advising that Sears had to be invisible with respect to FusionPharm. | William Sears | 2011 | GJP_00001759 (Andy Duke - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **31** | During the Denver visit, Jean-Pierre and Sears were disputing some legal fees that Sears owed Jean-Pierre for work Jean-Pierre did for FusionPharm. Duke felt that Jean-Pierre was throwing Sears "under the bus" as well as Dittman (by his association with Sears) because of the fee dispute. | Andy Duke | 2011 | GJP_00001759 (Andy Duke - 302 Report) | a, b, d, e, f, i, k, n, p, r, s | | |
| **32** | Scott Dittman gave Duke the title of Executive Vice President. | Andy Duke | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **33** | Scott Dittman told Duke that he needed someone to be 'the signature' in place of William Sears because Sears was 'not a real person' in FusionPharm. | Scott Dittman | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **34** | Duke later found out that Sears was pushing the sale of FusionPharm stock. | Andy Duke | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **35** | Duke met with Scott Dittman and Sears at the FusionPharm Wynkoop office shortly after they started their lease of the office space. The pitch to Duke was that FusionPharm was up and coming in the marijuana industry because of the unique technology they were developing with the container growing system. The selling point was that the containers were self-contained and secure. They wanted to get a patent on the technology. | Scott Dittman/William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, h ,m | | |
| **36** | Scott Dittman and Sears told Duke that Sears was to be 'behind the curtain' because Sears had issues with the securities regulators. | Scott Dittman/William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **37** | Duke overheard Sears talk about selling off blocks of FusionPharm stock about five to six times throughout the course of Duke's employment. | William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 109-1 Filed 05/18/18 Page 4 of 92

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **38** | Jean-Pierre was "the key" according to Sears. Jean-Pierre was to work his legal magic to help get FusionPharm stock sold in order to raise money for FusionPharm to operate. | William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **39** | Bob Dittman told Duke that Robert Dittman, the brother of Scott Dittman, had a lot of FusionPharm stock in his name that Sears controlled and was selling. | Bob Dittman | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s | | |
| **40** | Duke recalled hearing Sears at times mention that he was 'waiting' to get something from Jean-Pierre or that he will 'have to see' what Jean-Pierre thought. | William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s | | |
| **41** | Duke reviewed an email from Scott Dittman titled 'retreat' and dated October 20, 2011 (Bates #: SWFBI_00025095). Duke stated that Scott Dittman copied Sears on the email without understanding that by doing so, Scott Dittman was creating a paper trail of Sears' involvement with FusionPharm. | Andy Duke | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, q | | |
| **42** | Well what happened was, we took this spot down in September of last year and by December 1st we realized we needed this… because that was not going to be big enough for all of a sudden, it was just like a perfect storm. Uh, we had been marketing, marketing, marketing and finally a lot of the deals just started (clap of hands) dropping and before we knew it we were like there's no way we're going to be able to fulfill back there. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, c, g, m | | |
| **43** | It really is. And that's what I was telling Scott, you know, and Scott's got this…passion, you know, he lives on a hobby farm, and I get you want to feed the world man, but, you know, public company and weed is hot and.. feeding people you can do after we medicate them. I get it, it's just, it really is the sweet spot. And he had to make a decision and it broke his heart to make that decision……to just stick with cannabis and he's still leaning toward produce heavily. And I get it, I think it's great, but, you know, we've got to jump on this now. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s | | |
| **44** | And, you know, for a couple of meatballs like us, so to speak, to put all this together and then we have, you know, we've got Greg here full time, he's a journeyman electrician, I mean, he built ty- you know, power plants for Tyson (PH). Um, now we've got Kyle (PH), we've actually got some real educated engineers and people to help us refine this. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, g, m | | |
| **45** | You know, it's kinda-it comes in, in comes in droves because what happens is your average order is, you know, anywhere from six to ten pods. Nobody just buys just one pod anymore.<br>I've sold one and two's here and there in California… | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, g, m | | |

Case 1:17-cr-00008-WJM Document 103-1 Filed 05/18/18 Page 5 of 92

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 46 | This is a big pie and we're aggressive. We're really aggressive. And that's what I think we…that's where I think we have the edge on anybody else out there. One, we've been in the business. We know everybody. We're hungry. I mean, we're-we're out there. Yeah, we're hungry, and we're hungry, we're well wired……and there's no ego, you know? We've always done the right thing by everybody in this industry. We have paid bills that weren't ours just to keep our name clean. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, g, m, | | |
| 47 | I'm the hand up Mona Lisa's skirt, we leave it at that. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, g, m, v | | |
| 48 | Well, yeah, I mean, that's the great part about Scott and I do, it's… you know, nobody ever steps on the other guy, it's, everybody's got their own niche, their own area of expertise. We just go after it, you know, it's just, there's plenty of money out there, let's go get it. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| 49 | I-you know, I told Scott and this is where it's kind-of…. I said this thing's going to get bigger than us and we're going to have to take a big step aside, it's, (UI) a lot smarter guys to run this company. It's bigger-it's just bigger than us, there's no ego here. You know, we're going to need a proper, you know I mean Scott's great, we're going to need a proper CEO that has very very long arms to run Fusion Pharm one day. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| 50 | I love what I do, guys.<br>and I get up every morning, I love this business, I really do. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| 51 | You know, why cheapen yourself? Why-why degrade, oh, you guys don't put out press releases, you don't do this, you have to inform the public. Here's the deal, man. The company will take care of the stock. The day you have to worry about the stock taking care of the company, you've got bigger problems.<br>Do your business. Do your business and the stock will always, always.. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| 52 | I just, I… we started this in…you know…it's…..just an idea, and this is where we are in just a short period of time and…<br>It feels fantastic and, you know, that's what the thing is, it's just been … seven days a week, 12 hours a day it's…<br>…you know, thank god I have an understanding wife… I gotta tell ya, otherwise I'd be divorced… | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | | |

Case 1:17-cr-00008-WJM Document 109-1 Filed 05/18/18 Page 6 of 92

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 53 | The reason Billy's never been in Fusion Pharm is because Billy has a felony on his background, right. And so- I couldn't let him in Fusion Pharm, you know I don't have to disclose | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, m, v | | |
| 54 | Well, he got caught on a-on a phone call-on a wire tap that he was on while they were wire tapping two other guys, and he was in on the call, and these guys were doing some sort of price fixing market manipulation stock stuff. And Billy-Billy- -Wasn't involved, but he was on the call, so he got a-he got a conspiracy charge that plead to. Um, you know. About fifteen thousand dollar fine. Whatever. But enough that I could never let him in to this entity, you know. | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| 55 | Yeah, well you know-you know, the-the irony of the whole thing is, you know. I mean Bill was Meadpoint, you know, from the time we started this company until a month, two months ago, Bill was Meadpoint. So he was my sales arm and did all the sales. Hell, he owns in that sale center, he owns the two containers and the scaffolding, and all that shit, right. | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, g | | |
| 56 | Plus he was the first investor in the company. Listen, there would be no company if it wasn't for Bill. I just couldn't have him in the company, right. | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| 57 | Um, but you know, the irony is after three years and all that investment and everything that he did for the company, he finally, you know, got paid. Rather handsomely uh when he sold all that stock in the first part of this year. Um and then all of this happens and he gets blown up. | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, m, v | | |

Case 1:17-cr-00008-WJM Document 103-1 Filed 05/18/18 Page 7 of 92

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **58** | You know undoubtedly they-undoubtedly they saw that, too. There's no question, right. Um…you know. But-so we paid off his debt, and we cancelled his agreement in April um, you know, because we decided-attorneys finally said, "Oh, fuck it. You know, everybody else is doing it, and there's safer now, so you don't really need to keep up this silly relationship, just let Meadpoint go and sell direct." Whatever, you know. And it, you know, listen. There's a commission, you know, we pay a pretty heavy commission for doing this, so it's better for my share holders that we just do it direct, and the attorneys finally said, "Eh, whatever. You know, everybody's doing it and the DOJ memo vocabulary makes us feel better so go ahead and kill that," you know, so basically, you know, I paid off Bill's note, took his job away and then, you know, the government came in and blew everything | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, m, v | | |
| **59** | Scholz first heard of Guy Jean-Pierre through William Sears. Sears and Jean-Pierre worked together before FusionPharm. | William Sears | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | d, e, m | | |
| **60** | Sears hired Jean-Pierre to create legal documents relating to stock to include FusionPharm. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, g, h | | |
| **61** | Scholz said that Jean-Pierre's role with FusionPharm was to write the Opinion Letters. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, q h, v | | |
| **62** | Sears was trying to get these shares deposited with a broker so that Scholz could promote FusionPharm's stock and they could share in the proceeds. The stock belonged to Sears. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, q | | |
| **63** | Sears indicated to Scholz that Jean-Pierre was aware that Scholz was promoting the stock and getting paid with a percentage of the stock proceeds. Sears indicated to Scholz that Jean-Pierre was aware of all FusionPharm stock sales that Scholz and Sears were attempting to conduct. | William Sears | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, q | | |
| **64** | Scholz said that Myron Thaden received an Opinion Letter from Jean-Pierre related to his first lot of FusionPharm shares. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, c, m | | |
| **65** | Scholz told Thaden to e-mail Jean-Pierre to get the required Opinion Letter to remove the restrictive legend. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, c, m | | |
| **66** | Sears' and Scholz's agreement was to transfer Microcap to Scholz on paper but for Sears to continue to maintain control of Microcap. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, c, m | | |
| **67** | Richard Scholz started working with Sears in approximately March, 2011. Sears asked Richard Scholz to help promote FusionPharm's stock. | William Sears | 2011 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, c, m | | |

Case 1:17-cr-00008-WJM Document 105-2 Filed 05/18/18 Page 8 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 68 | Sears provided Richard Scholz with FusionPharm's financial statements, business plans, offering documents and other company reports. Richard Scholz spoke with both Dittman and Sears about what was in the financial statements to identify what would be important to the brokers. Richard Scholz can specifically recall discussing the increases in revenue reported in the financial statements as well as the Vertifresh Licensing Agreement and corresponding press release with Sears and Dittman. | Scott Dittman/William Sears | 2011 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| 69 | Occasionally, brokers wanted additional information about FusionPharm. Richard Scholz reached out to Sears with these brokers' contact information so that Sears could have Dittman follow up on the brokers' question. | Richard Scholz | 2011 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| 70 | Sears transferred 80,000 shares of FusionPharm stock to Richard Scholz' company, Prestige Media, in April, 2011, Sears did not want the FusionPharm shares in his name. He wanted Richard Scholz to sell the stock and then provide him with a percentage of the proceeds from the stock sales. | William Sears | 2011 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m, v | | |
| 71 | In 2011 and at the request of Sears, I (Richard Scholz) set up an employer identification number (EIN) for Microcap Management in the state of Nevada. Around the spring of 2011, I had discussions with Sears to put my name on the Microcap entity in order to hide Sears's affiliation with Microcap. Sears maintained control of all of Microcap Management throughout 2011, 2012 and 2013, including all FusionPharm stock being held under Microcap and Microcap brokerage accounts, despite my name being on some of the business documents. Microcap was Sears' company. | William Sears | 2011 - 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| 72 | In June, 2012, Sears asked me to set up and deposit FusionPharm shares at Moors and Cabot with Scott Eisler. Although the letter drafted by Sears to Moors and Cabot on June 18, 2012, included my name and address, Sears was still controlling Microcap and the stock in Microcap's name. | William Sears | 2012 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, l, m, t | | |
| 73 | Around February 7, 2013, Sears sent his Mother and me an email titled "Scottsdale". Sears wanted me to provide trading instructions to his Mother so that she could initiate the trades in the Bayside account on his behalf. I contacted Sears by phone after receiving the email and told him that I was not comfortable with the arrangement. I felt that this arrangement would be illegal since the stock was actually owned and controlled by Sears, and not his Mother. | William Sears | 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| 74 | When Dittman moved from Colorado to Pennsylvania in 2013, Sears was on site at FusionPharm watching over the business. | Richard Scholz | 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | | |

Case 1:17-cr-00008-WJM Document 103-1 Filed 05/18/18 Page 9 of 92

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 75 | In September, 2013, Sears and I (Richard Scholz) entered into an agreement where he would transfer 500,000 free-trading shares of FusionPharm stock from Meadpoint to me personally. We agreed that I would pay Sears for the stock after I sold the stock. The stock was related to a convertible note between Meadpoint Venture Partners, hereinafter referred io as "Meadpoint", which was a company run by Sears, and FusionPharm. I was not aware that this note was ever back dated. On the paperwork provided to the transfer agent and the broker at Scottsdale, Sears and I falsely represented that I had paid $50,000 upfront for the stock. I was aware that Sears was using a bank deposit for $50,000 from some source other than me in order to satisfy the transfer agents requirement that they see proof of the payment. Sears was interested in entering into this agreement with me because he was trying to raise money. | William Sears | 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, q, v | | |
| 76 | Sears's attorney was Jean-Pierre. Sears and Jean-Pierre worked together before FusionPharm. Jean-Pierre was writing Attorney Opinion Letters for FusionPharm stock transactions. | Richard Scholz | 2011 - 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| 77 | I (Richard Scholz) mentioned Jean-Pierre's legal problems to Sears but he did not seem concerned. Sears indicated to me that Jean-Pierre was aware that I was promoting FusionPharm stock and getting paid with stock proceeds. | William Sears | 2011 - 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m, v | | |
| 78 | From approximately May of 2011 through early December of 2013, I (Richard Scholz) made approximately $488,000 for promoting FusionPharm stock. I stopped when Sears said that he longer needed anyone to promote the stock. | Richard Scholz | 2011 - 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, t | | |
| 79 | Sears told Scholz that FusionPharm had taken over the shell company Baby Bee Bright. | William Sears | 2011 | INV_00000774 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| 80 | Sometime after the Federal search warrant was executed in May, 2014, Sears told Scholz that he had made $10 million. Scholz assumed it was from the sale of FusionPharm stock. | William Sears | 2014 | INV_00000774 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, t | | |
| 81 | Wayne Coleson understood that Sears was the major investor in FusionPharm and that Sears and his friends were responsible for getting FusionPharm started. Coleson understood that FusionPharm was building the PharmPods and Vertifresh, which was owned by Sears, was purchasing the PharmPods and selling the produce. During the tour of the warehouse, they discussed the purchase of convertible debt. | Wayne Coleson | 2013 | INV_00000676 (Wayne Coleson - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, c | | |
| 82 | Sears offered up a fixed price deal to purchase a portion of the convertible note between Bayside and FusionPharm. | William Sears | 2013 | INV_00000676 (Wayne Coleson - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, t | | |
| 83 | Robert Dittman said that he was often trusting of Scott Dittman and Sears and may have signed something without looking it over. | Robert Dittman | 5/16/2014 | INV_00000516 (Robert Dittman - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, o | | |
| 84 | William Sears told Robert Dittman that his prison time was a result of criminal charges related to securities. | William Sears | 6/8/2015 | INV_00001282 (Robert Dittman - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **85** | Bodden was first introduced to Guy JEAN-PIERRE during a meeting in Boca Raton, Florida in 2010. William Sears made the introduction to Jean-Pierre. | William Sears | 2010 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, c | | |
| **86** | Sears told Bodden that he (Sears) had conduct prior business deals with Jean-Pierre. | William Sears | 2010 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **87** | Bodden recalls Jean-Pierre providing a resume and Bodden thought Jean-Pierre was a good attorney that appeared knowledgeable. | Cliff Bodden | 2010 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, c, m | | |
| **88** | Bodden recalls that he learned through Sears that Jean-Pierre had been barred as an attorney from the OTC Pink Sheets. | William Sears | 2010 - 2011 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **89** | Bodden learned that Jean-Pierre could no longer write opinion letters from Sears. Bodden and Sears discussed Jean-Pierre's problems with OTC markets. Sears advised that Jean-Pierre's problems were not his fault; instead, it was the fault of the client. | William Sears | 2010 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **90** | Jean-Pierre was always a name mentioned by Bill Sears during conversations related to microcap stocks. They were always together. | William Sears | 2010 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **91** | While working at FusionPharm….There was a checklist of items that needed to be reviewed by an attorney. Bodden knew that Jean-Pierre was reviewing some of these documents. | Cliff Bodden | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **92** | Bodden and Sears had conversations about Jean-Pierre's legal situation. Sears advised that it was the client's fault and that Jean-Pierre was trying to get removed from the OTC's list of barred attorneys. | William Sears | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **93** | Sears discussed with Jean-Pierre about what Sears needed to do to get free trading shares. Sears needed opinion letters for the transfer agent and brokerage firm. | William Sears | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m, h, j | | |
| **94** | Sears advised Jean-Pierre about the financials because Jean-Pierre was owed money. | William Sears | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **95** | Jean-Pierre and Sears were actively involved in FusionPharm. Sears would describe the work that he was performing at FusionPharm to JEANPIERRE. | William Sears | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **96** | Bodden advised that Sears and Scott Dittman were business partners. He would ask either Sears or Scott Dittman if he had a question about FusionPharm. | Cliff Bodden | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **97** | Bodden was aware of Sears' involvement in FusionPharm activities, because he worked at the FusionPharm business locations and could also hear conversations among Sears, Scott Dittman, Scholz, and others. | Cliff Bodden | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **98** | Bodden described Bayside Realty as Sears' holding company in his mother's name (Sandra Sears). He stated that Sears wanted to keep stock out of his own name to avoid any disclosure requirements. | William Sears | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m, v | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **99** | Sears instructed Cliff Bodden early on that he (Sears) was not to be officially listed as being part of FusionPharm. | William Sears | 2011 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m, l, h, v | | |
| **100** | Bodden overheard Sears' telephone calls with Richard Scholz, when Sears was telling Scholz about FusionPharm activities. Bodden also overheard Sears selling FusionPharm shares through broker-dealers in Arizona . | William Sears | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s | | |
| **101** | Bodden overheard Sears and Richard Scholz discussing the stock, future press releases, and the ongoing sales of FusiohPharm stock. | William Sears | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s | | |
| **102** | Based on communications with Jean-Pierre, Bodden assumed that Jean-Pierre was putting together everything necessary for DiTommaso to write the opinion letters | Cliff Bodden | 2011-2013 | GJP_00001605-1606 | a, b, d, e, f, i, k, n, p, r, s | | |
| **103** | Sears told Bodden to provide everything necessary to create FusionPharm's opinion letters to Jean-Pierre to include FusionPharm's quarterly and annual filings. | William Sears | 2011-2013 | GJP_00001606 (Bodden) | a, b, d, e, f, i, k, n, p, r, s, c, q, l | | |
| **104** | Sears told Jean-Pierre that Sears and Dittman built FusionPharm. | William Sears | 2011-2013 | GJP_00001609 (Bodden) | e, m, d | | |
| **105** | At FusionPharm's Vine street location and then again in Boca, Bodden heard Sears tell Jean-Pierre that he needed to get stock cleared because FusionPharm needed money. | William Sears | 2011-2013 | GJP_00001609 (Bodden) | a, b, d, e, f, i, k, n, p, r, s, r, p | | |
| **106** | On page 47, Bodden listed Dittman and Jean-Pierre as the companies Officers and Directors and then on page 48, based on instructions from Dittman and Sears, did not list Sears or Robert Dittman under the family relationships section. | William Sears/Scott Dittman | 2012 | GJP_00001610 (Bodden) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **107** | Sears, and sometimes Dittman, helped Bodden with deciphering the deposits into FusionPharm's bank account as either revenue, a loan, or equity | William Sears/Scott Dittman | 2011-2013 | GJP_00001610 (Bodden) | a, b, d, e, f, i, k, n, p, r, s | | |
| **108** | Bodden was directed to book certain depoists as loans from Meadpoint or Bayside yet there was no supporting documents fo any loans made by Sears or FusionPharm. | Cliff Bodden | 2012 | GJP_00001610 | a, b, d, e, f, i, k, n, p, r, s | | |
| **109** | When Sears pitched the deal to Malino,Sears portrayed himself as part of the company | William Sears | 2012 | GJP_00001610-1611 (Bodden) | a, b, d, e, f, i, k, n, p, r, s | | |
| **110** | Sears directed Bodden to write up two different notes: one for Meadpoint and one for Bayside. | William Sears | 2011-2013 | GJP_00001611 (Bodden) | a, b, d, e, f, i, k, n, p, r, s | | |
| **111** | Sears provided Jean-Pierre with a llist of things that he needed to do related to the purchase of the debt. | Cliff Bodden | 2013 | GJP_00001612 | a, b, d, e, f, i, k, n, p, r, s | | |
| **112** | The money deposited into Sandra Sears' Wells Fargo bank account comes from stocks sold from William Sears' investments with Fusion Pharm and possibly other businesses. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **113** | William Sears deposits his money into Sanrda Sears' account because she is the only person he trusts with his money. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, t, v | | |
| **114** | William Sears contacts Sandra Sears via telephone only to request when he wants her to wire money out from her Wells Fargo bank account into the brokerage account. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, t, v | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 12 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 115 | Sandra Sears only communicates with William Sears, and no other person, regarding commercial business accounts and financial transactions for Colorado-based companies. Sandra Sears always communicates with William Sears regarding these type of communications via telephone, and never through e-mail and/or any other form of communication. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| 116 | Sandra Sears also acknowledged to knowing the reasons why William Sears wanted her to open the Wells Fargo accounts, but she again did not feel comfortable about talking about them. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| 117 | DiTommaso told Sears to run everything through Jean-Pierre. | William Sears | 2011 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| 118 | Dittman wanted to speak with Baby Bee Bright's attorney and accountant. | William Sears | 2011 | INV_00001766 (William Sears - 302) | d, e, m | | |
| 119 | When Dahlman transferred Sears the 185,000 preferred shares, Sears notified Jean-Pierre that he was over the 10% affiliate standard. | William Sears | March, 2011 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| 120 | They were all handshake deals between Dittman and Sears that were not doucmented | William Sears | 2011 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| 121 | Bodden suggested that the loans made by Sears to FusionPharm be split into two notes, one from Meadpoint and one from Bayside, so Sears could keep one note and sell the other note. | Cliff Bodden | 2011-2012 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| 122 | Sears and Bodden flew to Florida to met with Jean-Pierre to discuss the notes. | William Sears | Mar-12 | INV_00001766 (William Sears - 302) | e, m, d, f | | |
| 123 | When the convertible notes were sent to DiBella at PSTC, Sears did not tell her that the notes were backdated. | William Sears | 2012 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| 124 | Sears believed that Jean-Pierre was not aware that he was giving bad legal advice. | William Sears | 2012 | INV_00001766 (William Sears - 302) | e, m | | |
| 125 | Scholz told Sears about Jean-Pierre's case being charged by the SEC in 2013. | Richard Scholz | 2013 | INV_00001766 (William Sears - 302) | e, m | | |
| 126 | Dittman and Sears were shocked to find out about Jean-Pierre's legal trouble. | William Sears | 2013 | INV_00001766 (William Sears - 302) | e, m | | |
| 127 | Sears and Dittman were "partners". Sears and Dittman were two guys building a business. | William Sears | 2011 - 2013 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 USDC Colorado Page 13 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **128** | Richard Scholz was involved from the beginning of FusionPharm in 2011. Scholz company, Prestige Media, was making phone calls to registered representatives at Oppenheimer, Merrill Lynch and Prudential to market FusionPharm and generate interest in FusionPharm's stock. Sears and Scholz had an agreement whereby Sears paid Scholz 25% or 30% of the proceeds from Sears' sale of FusionPharm stock. | William Sears | 2011 - 2013 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **129** | Sears paid Jean-Pierre with Microcap or other Sears' controlled bank accounts. | William Sears | 2011 - 2013 | INV_00001766 (William Sears - 302) | e, m, t | | |
| **130** | Sears and Dittman (They) discussed disclosing Sears as a part of FusionPharm in the early statges of FusionPharm. | William Sears | 2011 | INV_00001766 (William Sears - 302) | e, d, m | | |
| **131** | In March of 2012, Sears and Bodden flew to Florida and met with Jean-Pierre to discuss the notes. Sears was only interested in selling Malino a non-convertible note. Around the time of the discussions with Malino, the note agreements were documented as non-convertible notes. There were multiple versions of the notes, both convertible and non-convertible, all documented after the loans were funded. The conversion rate was $0.01 per share. After meeting with Jean-Pierre in March of 2012, Jean-Pierre and Bodden drafted the notes and they were signed at the same time. The note amounts were determined after Bodden went through the FusionPharm bank statements to identify all of the deposits from Sears. Sears was not interested at the time in selling a convertible note because he was afraid it would tank FusionPharm's stock. He also wanted to be in a position to take back FusionPharm's stock in the event the company failed. Jean-Pierre was aware that the notes sent to Malino reflected a non-convertible note. | William Sears | March, 2012 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **132** | Sears indicated that in Nov 2012 Sears was attempting to bring the notes to market and get money for the company as indicated in an email to Bodden | William Sears | 26-Nov-12 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **133** | During the confenence call between Malino, Bodden and Sears, Malino asked a lot of questions concerning FusionPharm's OTC filings. Malino wanted the debt to be a convertible note but Sears and Bodden did not. Bodden was communicating with Jean Pierre about the drafting of the notes. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **134** | Sears said that prior to the Malino deal, he did not know what a certificate of designation was until Bodden told him. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **135** | Sears spoke with Jean-Pierre on a daily basis concerning the transition from Baby Bee Bright to Fusionpharm. | William Sears | 2010 - 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **136** | Bodden drafted part of the disclosure statement and it was reviewed by Jean Pierre before being sent to Dittman for signature. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 14 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **137** | Sears told Jean-Pierre that Sears would sign documents for/as his Mother. | William Sears | 2010 - 2013 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **138** | Dittman and Jean Pierre had an initial discussion about disclosing Sears as family before Sears and Jean Pierre talked about it. Sears said he thought he should be disclosed but Jean Pierre said that since he was not a blood relative and only a brother-in-law he did not need to be disclosed. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **139** | Sears, Jean Pierre, Scott Dittman, and Andy Duke had a meeing where there were discussions about raising capital, notes, and SB1 vs Form 10, and possible discussions about the FINRA investigation. | William Sears | Oct-11 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **140** | Sears said he did discuss the transfer with Scholz prior to the FINRA agreement but Kramer's inquiry pushed it to the top of the list. Jean Pierre wrote the agreement, sent it to Sears who then sent it to Scholz for both to sign. Jean-Pierre was aware that Sears was keeping the stock despite what the agreement said. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **141** | Sears remembers Scholz telling him that FusionPharm stock got "blue slipped" but that may have been up to a year later. | William Sears | 2011-2012 | GJP_00011804 (William Sears - 302) | e, m | | |
| **142** | Sears notified Jean-Pierre about the initial call from FINRA. He also told Jean-Pierre that FINRA was asking about Sears. Jean-Pierre was aware that Sears was selling FusionPharm stock at that time. | William Sears | October, 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **143** | When Jean-Pierre visited FusionPharm in October, 2011, Sears, Dittman, and Andy Duke discussed raising money, the debt/notes from Sears to FusionPharm, up-listing FusionPharm's stock and the associated audit, and possibly FINRA's inquiry. At the time of the meeting, the notes were not yet documented. | William Sears | October, 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **144** | The debt consisiting of Sears' loans to FusionPharm was not initially documented by promissory notes. However, Jean Pierre knew that if FusionPharm was to be up-listed then the financials would be auditied and the loans would have to be documented. Sears recalls this topic being brought up by Jean-Pierre and discussed with Dittman, Duke, and Bodden when Jean-Pierre was in Denver. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **145** | Sears stated that any fusionPharm stock certificate issued to Microcap meant that he was the beneficial owner. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | | |
| **146** | Dittman told Kramer that Sears was divested from Microcap. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | e, j, l, m, v | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 USDC Colorado Page 15 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **147** | After reviewing a FedEx receipt showing a record of him sending a packet to the transfer agent in Nevada on 7/25/2012 and another FedEx record showing him receiving a mailing from the transfer agent on 8/01/2012. Sears said he mailed a packet of information to Pacific Stock Transfer Company by FedEx from Colorado to Las Vegas, NV for the conversion of 40,000 shares from Todd Abbot to Microcap. Sears indicated the packet contained, among many other things, an attorney letter drafted by Jean-Pierre and signed by DiTomasso used by the transfer agent to convert the certificate. Sears said he received the new certificate through FedEx at the Vine Street address in Denver, CO from the transfer agent in Nevada. | William Sears | 2012 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **148** | After reviewing a FedEx mailing record showing a packet addressed to him being mailed from the transfer agent on 1/18/2013 to Thornton, CO. Sears said he received the certificate for 140,000 shares in the name of Bayside Realty Holdings at his Jackson Drive address in Thornton, CO. Sears said he knows he received the certificate because he would have remembered if it had not arrived. Sears said this certificate would not have been issued had an attorney letter not been presented at some point to the transfer agent. According to Sears, Jean-Pierre would have drafted the letter and DiTomasso would have signed the letter. | William Sears | 2013 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **149** | After reviewing a FedEx mailing record showing a packet addressed to him being mailed from the transfer agent on 8/15/2013 to Brighton, CO. Sears said he received a certificate for 500,000 shares in the name of Meadpoint Ventures Partners at his UPS store box in Brighton, CO. Sears said he knows he received the certificate because he would have remembered if he hadn't. Sears said this certificate would also not have been issued had an attorney letter not been presented at some point to the transfer agent. According to Sears, Jean-Pierre would have drafted the letter and DiTomasso would have signed the letter. | William Sears | 2013 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, m | | |
| **150** | William Sears stating he would like to exercise options to convert shares for Bayside note, addressed in a email | William Sears | 12/12/2012 | SWFBI_00012615.03 | a, b, d, e, f, i, k, n, p, r, s | | |
| **151** | Sandy Sears addressing revised letter of opinion and affirming other docs have been sent in an email chain, which includes an email from William Sears stating that he belives this is everything you will need and then some. | Sandra Sears (Mother of William Sears)/William Sears | 12/24/2012 | PST_00002764 | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **152** | William Sears emailing Dibella that the draw down was well over a year ago and asking what she is looking for? | William Sears | 12/26/2012 | PST_00007756 | a, b, d, e, f, i, k, n, p, r, s | | |
| **153** | William Sears emailing Dibella stating that the letter of opinion is very detailed and complete and that he just spoke to the attorney. Also, that he is paying with credit card and that he fowarded the transfer agents comments to the lawyer. | William Sears | 12/26/2012 | PST_00007770 | a, b, d, e, f, i, k, n, p, r, s | | |
| **154** | William Sears emailing Dibella the 144(d)(3)(ii) rule | William Sears | 12/27/2012 | PST_00007781 | a, b, d, e, f, i, k, n, p, r, s | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **155** | As per Mr. Dittman's request I am forwarding the documentation you requested | William Sears | 12/27/2012 | PST_00000672 | a, b, d, e, f, i, k, n, p, r, s | | |
| **156** | Just saw this one did not go | William Sears | 3/7/2013 | PST_00007896 | a, b, d, e, f, i, k, n, p, r, s | | |
| **157** | With regard to the letter of opinions this seems more as a matter of fact. These letter have a signficant cost to prepare and amend. I have had council insert statements in both resolutions and issuer letters affirming this. | William Sears | 3/11/2013 | PST_00008019 | a, b, d, e, f, i, k, n, p, r, s | | |
| **158** | Byaside has sold the note(the one we just authenticated and did a conversion on). There are Four new owners of said note. I would like to forward you the sale documents. The individual comanes are looking to cnvert in part. So I am forwarding this documentation so we may front run this. There are penalties for delayed delivery of the certificates so I want the wheel spinning so we can catch it in stride. Once I send the sale documents we should just need conversionrequest and board of directors resolution for said request. You have all the other DD on file. So with that please stand by, Many thanks in advance. | William Sears | 2/5/2013 | PST_00001973 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **159** | Good afternoon. As previously noted the Bayside note has been sold and attached is the documentation required to created and send the certificates. Should you have any queries please feel free to contact myself on behalf of bayside or Mr. Dittman on behalf of Fusionpharm Inc. | William Sears | 3/6/2013 | PST_00001973 | a, b, d, e, f, i, k, n, p, r, s | | |
| **160** | Just making sure you'd received this email. Please advise as there are penalties associated with delays in share issuances. | Scott Dittman | 3/6/2013 | PST_00001972 | a, b, d, e, f, i, k, n, p, r, s | | |
| **161** | Please find attached the socumentatino we spoke about last week. Email with documents from William Sears under the subject Meadpoint venture partners FusionPharm | William Sears | 4/11/2013 | PST_00020701 | a, b, d, e, f, i, k, n, p, r, s | | |
| **162** | Here are all the original docs. Please forward the document templates you require Many Thanks. | William Sears | 8/2/2013 | PST_00000783 | a, b, d, e, f, i, k, n, p, r, s | | |
| **163** | Good afternoon. I am going to convert a bit more of the Meadpoint note. You have all the documentation file (see below). Do it just email you and fill out a cc receipt? | William Sears | 8/2/2013 | PST_00000784 | a, b, d, e, f, i, k, n, p, r, s | | |
| **164** | Please find attached (legal opinion letter) | William Sears | 8/27/2013 | PST_00009407 | a, b, d, e, f, i, k, n, p, r, s | | |
| **165** | Please find attached the documentation for all three transactions. Each transaction has its own letter of opinion. I had previously sent a CC authority so please end each of the certificates individually for priority overnight to the following: (address for Scholtz, Thaden, Thaden) In addition, please forward copy's of the certs and tracking numbers to me Via e-mail. As always it was pleaser working with you and have a happy holiday. Attachments | William Sears | 8/29/2013 | PST_00010489 | a, b, d, e, f, i, k, n, p, r, s | | |
| **166** | Here are the Thaden paper work. The meadpoint letter of instructions clearly states what is left on the note after conversion. | William Sears | 8/30/2013 | PST_00000844 | a, b, d, e, f, i, k, n, p, r, s | | |
| **167** | Are the shares levaing today? | William Sears | 9/18/2013 | PST_00008931 | a, b, d, e, f, i, k, n, p, r, s | | |
| **168** | Joanna, we wil take care of this in the am and will advise when done. | Scott Dittman | 9/18/2013 | PST_00008930 | a, b, d, e, f, i, k, n, p, r, s | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **169** | Please find attached the payment document. May I have a receipt showing the balance zeroed. In addition I never got a receipt for the payment made last week. | William Sears | 9/19/2013 | PST_00008930 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **170** | Cool run it and Ill have it flat with zero in October. 654 | William Sears | 9/19/2013 | PST_00008929 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **171** | Good morning. This morning you will be receiving the certificate and stock power for the attached SCA named document. The other attachment is just the forwarded thread from the last deposit. I am drawing down from the same note you already have on file. Hopefully I got it right the first time. Thank you as always. | William Sears | 8/19/2013 | SEC-DOJ-EPROD-000058360 | a, b, d, e, f, i, k, n, p, r, s | | |
| **172** | Good Morning. I am currently opening and planning to make a deposit with your firm. Please see the attached documentation for pre clearance. The cert will be on your door step Tuesday the latest. The account will be in the name of Meadpoint Ventrue Partners. I have another email to forward also. This is the exact communication between myself and the securities supervisor at the transfer agent. Attached documents. | William Sears | 4/12/2013 | SEC-DOJ-EPROD-000058360 | a, b, d, e, f, i, k, n, p, r, s | | |
| **173** | There was no contract or written agreemnt with Mr. Dahlman when we changed the entity from Baby Bee Bright to FusionPharm, just a conversation between Mr. Dahlman and William Sears. I have no emails with Mr. Dahlman but am looking for anhting between Mr. Sears and myself that would be germane to the conversation. attached documents to two emails. | Scott Dittman | 11/14/2011 | SEC-DOJ-EPROD-000075084 | a, b, d, e, f, i, k, n, p, r, s | | |
| **174** | I will be away for the holidays but have asked my cororate secretoary, Mr. Guy JeanPierre to follow up with you in the interim about anything else you may require. Guy is cc'd here. | Scott Dittman | 11/23/2011 | SEC-DOJ-EPROD-000569906 | a, b, d, e, f, i, k, n, p, r, s | | |
| **175** | Please find attached. This is the doucmentation fro my associate Richard Scholz. Hi is in need of a letter of opinion for deposit. The shares were derived from the preferred seairies A of Baby Bee Bright corporation. I have attached the board minutes that created the shares and such. The shares were transferred to Microcap management as free trading and microcap did the same to Prestige for services. Please note Mr. Scholtz's email. Send him the bill for your services regarding the letter. Attached PDF | William Sears | 4/19/2011 | RS_00000562 | a, b, d, e, f, i, k, n, p, r, s, t, v | | |
| **176** | On Wednesday Richard Sholz and I will be looking for a an agreement wereas he is taking over control of the company (Microcap Management LLC a Nevada LLC) and all of its brokage as of May 9th 2011. | William Sears | 10/17/2011 | RS_00001324 | a, b, d, e, f, i, k, n, p, r, s, t , v | | |
| **177** | It is a simple assignment. The assignment is for the company and the accts only. Any assets were to remain with me. We have an agreement detailing this. | William Sears | 10/17/2011 | RS_00001323 | a, b, d, e, f, i, k, n, p, r, s | | |
| **178** | I don't have one. This is what I need you to create | William Sears | 10/17-18/2011 | RS_00001322 | a, b, d, e, f, i, k, n, p, r, s | | |
| **179** | Rich, As discussed (Attached agreement) | William Sears | 11/8/2011 | RS_00000175 | a, b, d, e, f, i, k, n, p, r, s | | |
| **180** | Please fins attached the documentation you requested. Please print out, fill out and then scan to Tina for approval…..Call me (attached documents) | William Sears | 6/18/2012 | RS_00000411 | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 18 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **181** | Mom, you dial 1(408)6034927 They will answer the phone trading: Identify yourself as Sandy Sears with Bayside acct (154204611 if they ask for it) and tell them you want ot place a sell order. Then just twll them what Richie instructs you. That's it! Just like ordering pizza. Rich Scholz (407) 722-0190 | William Sears | 2/7/2013 | RS_00001598 | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **182** | Recently, I have partnered with my brother-in-law William Sears, and we have acquired and moved our operations into a publicly traded company: Fusion Pharm, Inc….Below is our 'coming out' press release explaining our recent expansion into the Arizona marketplace. Feel free to contact me if you have any interest or questions....enclosed press release....Contact: Mr. William Sears, Investor Relations of FusionPharm, Inc. | Scott Dittman | 4/21/2011 | Abbott_00000050 | a, b, d, e, f, i, k, n, p, r, s | | |
| **183** | Got confirmation that deliveries were done/attempted Monday and yesterday (2 other guys got theirs) They are sent certified…u need to sign…did you get a 'pick up at the post office' card at home? | Scott Dittman | 5/25/2011 | GJP_00010921 | a, b, d, e, f, i, k, n, p, r, s | | |
| **184** | Got your text too. Hold that cert 'till next week…I will come meet you to trade it out fro a non-restricted one in the same quantity…we can discuss thenif that is OK. | Scott Dittman | 5/26/2011 | GJP_00010921 | a, b, d, e, f, i, k, n, p, r, s | | |
| **185** | Yes…and climbing. Can I call u on my drive home..4ish? | Scott Dittman | 6/1/2011 | GJP_00010919 | a, b, d, e, f, i, k, n, p, r, s | | |
| **186** | Part 2: Purchasing part of the existing not payable from FusionPharm to Meadpoint Venture Partners. Said note is convertible to class a common stock which would be free trading immediately upon conversion. Purchase price wold be $50,000.00 and would be convertibable into 500,000 shares of free trading FusionPharm stock. I have spoken with Bill Sears of Meadpoint and he is amendable to this transaction. | Scott Dittman | 8/3/2013 | SWFBI_00008486.02 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **187** | I will start the paper work ball rolling. Please note that FusionPharm Inc cannot issue free trading securities without a registration statement. Meadpoint Venture Partners had an aged convertiable promissory note that will be used to facilitate the free shares. My suugesiont is to use Meadpoint in it's ntirety as the transaction is cleaner.... | William Sears | 8/13/2013 | SWFBI_00008608 | a, b, d, e, f, i, k, n, p, r, s | | |
| **188** | Ok I have got it down on the paperwork. Now as far as free, with 1 million shares in your name solely, you would be subject to a tricle rule. Basically considered an insider. We have only 5.6 issued and outstanding and 1mm puts you over 10% realm. So we need a second company or persons name. In addition I will need the tax Id/ssn for the transfer agent. Ill have all this wrapped up nex week! | William Sears | 8/14/2013 | SWFBI_00008651 | a, b, d, e, f, i, k, n, p, r, s | | |
| **189** | Check from William Sears to Jean Pierre | William Sears | 10/14/2011 | SEC-DOJ-EPROD-000069232 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **190** | Check from William Sears to Jean Pierre | William Sears | 3/12/2012 | SEC-DOJ-EPROD-000069270 | a, b, d, e, f, i, k, n, p, r, s, t | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 19 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **191** | Check from William Sears to Jean Pierre Adams Letter of opinion | William Sears | 5/14/2012 | SEC-DOJ-EPROD-000069288 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **192** | Check from William Sears to Jean Pierre | William Sears | 5/25/2012 | SEC-DOJ-EPROD-000069293 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **193** | Check from William Sears to Jean Pierre | William Sears | 6/20/2012 | SEC-DOJ-EPROD-000069303 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **194** | Check from William Sears to Jean Pierre Abbott 144 | William Sears | 7/5/2012 | SEC-DOJ-EPROD-000069313 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **195** | Check from William Sears to Jean Pierre | William Sears | 11/18/2012 | SEC-DOJ-EPROD-000069343 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **196** | Check from William Sears to Jean Pierre | William Sears | 3/6/2013 | SEC-DOJ-EPROD-000069351 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **197** | Check from William Sears to Jean Pierre | William Sears | 8/19/2013 | SEC-DOJ-EPROD-000069361 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **198** | Scott, my brother and William my brother-in-law have started a vertical farming company producing mainly leafy greens (not hippie lettuce) named Vertifresh, and we all met last week to discuss further entrance into the food market here in Denver. | Robert Dittman | 9/17/2012 | SWFBI_00019028 | a, b, d, e, f, i, k, n, p, r, s | | |
| **199** | Good morning, Was wondering how the Sept 30s were coming as I want to put them up before thansgiving. Hope all is well. | William Sears | 11/21/2011 | SWFBI_00025778 | a, b, d, e, f, i, k, n, p, r, s | | |
| **200** | Mike please make the following adjustments to the 9/30 fiancials and return the updated set to all participants on this email: followed by the adjustments needed to be made | Scott Dittman | 11/23/2011 | MK_00000419 | a, b, d, e, f, i, k, n, p, r, s | | |
| **201** | Guys, I think we have some issues to address…….. | William Sears | 11/28/2011 | MK_00000426 | a, b, d, e, f, i, k, n, p, r, s | | |
| **202** | Mike can I have the newst financials with the updated shareholders statemetns along with the notes to the 9-30s | William Sears | 12/22/2011 | SWFBI_00019994 | a, b, d, e, f, i, k, n, p, r, s | | |
| **203** | Regards (attached Financial statements) | William Sears | 12/22/2011 | SWFBI_00019994 | a, b, d, e, f, i, k, n, p, r, s | | |
| **204** | Here are the financial satements at last….We have a large note payable to a friendly company who isn't charging us interest yet. Do we need to acure interest anyway? Email continues to discuss accounting details, to include attach documents. | Scott Dittman | 12/31/2011 | SWFBI_00021548 | a, b, d, e, f, i, k, n, p, r, s | | |
| **205** | I hope all is well. As you can see we are coming downto the wire regarding the filing the 12/31s. We hope to have them to you tomorrow. I need to have them uploaded to OTC markets by Friday. Sorry for the small window however you know how these things go. Many thannkds in advance | William Sears | 3/25/2012 | MK_00000467 | a, b, d, e, f, i, k, n, p, r, s | | |
| **206** | Gentlemen, Please feel free to communicate with each other with regards to the parparation of the FusionPharm 12-31-12 financial statements Guy Jean Pierre 305 929 3652, Mike Kocinski 954 258 9150. Regards | William Sears | 4/3/2012 | MK_00000484 | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 USDC Colorado Page 20 of 342

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **207** | This is the final format. I need you to send an e-mail (as you did last quarter to Guy Jean Pierre stating that you are a CPA and the finacncials are prepared in accordance with gap etc. etc. Many Thanks in advance. I am cc guy on this so you have his e-mail addresses. | William Sears | 6/7/2012 | MK_00000529 | a, b, d, e, f, i, k, n, p, r, s | | |
| **208** | I can attest to the fact that the statements were prepared in acordance with GAAP and that I assisted with the compilation of the statements. However, as stated for the year end statements, I am not a CPA but I am a degreed acountant with over 30 years of experience in compiling financial statements. Let me know if this is acceptable approach and I'll send the email to Guy Jean Pierre as soon as possible. | Mike Kocinski | 6/7/2012 | MK_00000528 | a, b, d, e, f, i, k, n, p, r, s | | |
| **209** | Just need it as you did last quarter as this is now required every quarter | William Sears | 6/7/2012 | MK_00000528 | a, b, d, e, f, i, k, n, p, r, s, q | | |
| **210** | Understoood, I'll send the email within the next few minutes | Mike Kocinski | 6/7/2012 | SWFBI_00016574 | a, b, d, e, f, i, k, n, p, r, s, n, q | | |
| **211** | I am the accountant that assisted with the preparation of the financial statements for FusionPharm for the period ending March 31, 2012. These statements were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any futher information. | Mike Kocinski | 6/7/2012 | SWFBI_00016824 | a, b, d, e, f, i, k, n, p, r, s, p, q | | |
| **212** | Regards | William Sears | 6/7/2012 | SWFBI_00016824 | a, b, d, e, f, i, k, n, p, r, s | | |
| **213** | The financial statements for Fusion Pharm, Inc (FusionPharm) for the period endingn September 30, 2012 were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any further information. | Mike Kocinski | 11/21/2012 | SWFBI_00012286 | a, b, d, e, f, i, k, n, p, r, s, q | | |
| **214** | The financial statements for Fusion Pharm, Inc (FusionPharm) for the period endingn December 31, 2012 were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any further information | Mike Kocinski | 3/6/2013 | SWFBI_00013401 | a, b, d, e, f, i, k, n, p, r, s, q | | |
| **215** | Invoice from Tod A. Ditommaso to Guy Jean Pierre 12/27/11 Fusion Pharm Inc. OTC Markets Opinion Letter | Tod Ditommaso | 1/15/2012 | GJP_INV_0000614 0 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **216** | Tod Abbott's transfer package regarding 40000 shares to Microcap Management (Includes entire package) | Todd Abbott | 9/8/2011 | GJP_00009930 through 9937 GJP_INV_0000541 9-5426 | a, b, d, e, f, i, k, n, p, r, s | | |
| **217** | Sandra Sears request to convert $1,400 of the certain indebtedness originally entered into May 2, 2011 in favor of Bayside Realty Holdings, LLC….has not been aan affiliate of the Company as the term is defined by Rule 144 of the Act | Sandra Sears (Mother of William Sears) | 12/6/2012 | GJP_00009973 | a, b, d, e, f, i, k, n, p, r, s, u, v | | |
| **218** | Letter from Scott Dittman ending the draw down request under the promissory note issued by Bayside Realty Holding | Scott Dittman | 12/5/2011 | GJP_00009957 | a, b, d, e, f, i, k, n, p, r, s, q | | |
| **219** | Attached is the FusionPharm-Abbott-Microcap opinion letter; see attached. (letter attached) | Tod Ditommaso | 7/25/2012 | PST_00013722 | a, b, d, e, f, i, k, n, p, r, s, q | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 21 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **220** | Invoice from Tod A. Ditommaso to Guy Jean Pierre 12/13/12 FusionPharm Bayside Opinion Letter, 12/22/12 FusionPharm Bayside Opinion Letter-Redo | Tod Ditommaso | 1/15/2013 | GJP_00010653 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **221** | Bill, In addition to the items previoulsy requested, please provide (or advise if need to be created), the following: 1. Letter of Regignation and Director's Minutes accepting the resignation of Sandra L. Sears as Director of the cooporation; 2. Director's Resolution appointing Scott Dittman as President and Treasureer and Guy Jean Pierre as Secretary of the corporation; 3. Date Pacific Stock Transfer was appointed as the corporation's transfer agent; 4. Address, email address, and contact phone number of eachof Bayside Realty and Meadpoint Venture Partners, 5. State of Organization for each of Bayside Realty and Meadpoint Venture Partners; 6. Name of Authorized Signatory for each of Bayside Realty and Meapoint Venture Partners; 7. Is or has any beneficial owner of Bayside Realty and Meadpoint Venture Partners ever been an employee, officer, director or married to an officer or director of the corporation (an affiliate). If so, date of resignation or termination. Thanks. | Cliff Bodden | 6/15/2012 | SWFBI_00017215 | a, b, d, e, f, i, k, n, p, r, s, q, p | | |
| **222** | Guys, Circle the wagons and get the rest to our outstanding dove wrapped up. I want to get funded this week. | William Sears | 6/17/2012 | SWIRS_00013585 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **223** | Dove? | Cliff Bodden | 6/17/2012 | SWIRS_00013585 | a, b, d, e, f, i, k, n, p, r, s | | |
| **224** | Docs. Duh | William Sears | 6/17/2012 | SWIRS_00013585 | a, b, d, e, f, i, k, n, p, r, s | | |
| **225** | Guy, Bill asked me to forward these for your review. Best regards, Cliff Attach Offering documents | Cliff Bodden | 6/18/2012 | SWIRS_00010095 | a, b, d, e, f, i, k, n, p, r, s | | |
| **226** | Bill Make sure you correspond with Nick only through you non-Fusion affiliated email. | Cliff Bodden | 6/19/2012 | SWIRS_00013585 | a, b, d, e, f, i, k, n, p, r, s | | |
| **227** | Yes indeed…I only did this as response to you. I NEVER use this one. Only you do…MoMo | William Sears | 6/19/2012 | SWIRS_00013646 | a, b, d, e, f, i, k, n, p, r, s | | |
| **228** | Please find attached for your review the Quarterly Report for the reporting period ended June 30, 2012 and accompanying financial statemetns for the periods ended June 30, 2012 and June 30, 2011. I have also attached the shareholder list for Guy's review to confirm the number of shareholders. Please let me know of any revisions or corrections required. Once your review is completed I'll consolidate the pages for filing. Best Regards (attached are the reports etc) | Cliff Bodden | 8/8/2012 | SWFBI_00018453 | a, b, d, e, f, i, k, n, p, r, s | | |
| **229** | Dear Sir, The financial statements for Fusion Pharm, Inc. (FusionPharm) for the period ending June 30, 2012 were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any further information. Regards | Mike Kocinski | 8/14/2012 | SWFBI_00018592 | a, b, d, e, f, i, k, n, p, r, s, q | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 USDC Colorado Page 22 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **230** | Please find attached, my draft of the quarterly report for the period ended September 30, 2012. Cliff attach Quarterly Report | Cliff Bodden | 11/14/2012 | SWFBI_00012240 | a, b, d, e, f, i, k, n, p, r, s | | |
| **231** | Looks good to me upon preliminary review cliff. Mike, any questions/concerns? | Scott Dittman | 11/15/2012 | SWFBI_00012251 | a, b, d, e, f, i, k, n, p, r, s | | |
| **232** | Bill, Please see the attached. The Notes work with the existing draw down requests. Cliff Attach are the Notes | Cliff Bodden | 11/26/2012 | SWIRS_00037431 | a, b, d, e, f, i, k, n, p, r, s | | |
| **233** | Scott We are in need of a letter which confirms the end of drawdowns under the Bayside promissory note. I have drafted such for your review. If acceptable, please print on letterhead and sign. Thanks. Cliff Attach is Letter of Authorization | Cliff Bodden | 12/27/2012 | SWFBI_00012685 | a, b, d, e, f, i, k, n, p, r, s | | |
| **234** | Good Afternoon, I do hope all of you are doing well. Please find attached a convertible note between Byaide Realty Holding and Fusionpharm Inc. Bayside has chosen to exercise its option to convert into shares. Aside from a legal opinion and payment for the cert (Absorbed by Bayside) what else would be required to get this done in an expeditious fashion? I would like to have a cert generated as quickly as possible. Byside is a family member company and I am assisting them as I am familiar with all parties. So I will be the point person for all. Regards | William Sears | 12/12/2012 | SWIRS_00036852.06 | a, b, d, e, f, i, k, n, p, r, s | | |
| **235** | Joanna, Good Afternoon. I do believe this is everything you will need and then some. Regards | William Sears | 12/13/2012 | SWIRS_00036852.04 | a, b, d, e, f, i, k, n, p, r, s | | |
| **236** | Joanna, Please find attached the revised letter of opinion. I have already sent all the other doc you requested. Any chance of getting this printed and out today? Thank you. Sandy Sears | Sandra Sears (Mother of William Sears) | 12/24/2012 | SWIRS_00036852.03 | a, b, d, e, f, i, k, n, p, r, s | | |
| **237** | Joanna, The first five paragraphs lay it out. I just spoke to the atty and he does not know what else he can possibly write. He is a bit confused. The note like stock is a financial instrument. It is aged. The second paragraph defines it and then it goes on. This transaction is righteous on every aspect of the word. The letter of opinion is very detailed and complete. If there is specific wording you required please advise and I will forward it to the atty to see what he thinks. Please advise as we are all a little confused at this time. 303 518 3895. Bill Sears | William Sears | 12/26/2012 | SWIRS_00036852.02 | a, b, d, e, f, i, k, n, p, r, s | | |
| **238** | Guy I need this yesterday? This T/A is an idiot!!! | William Sears | 12/26/2012 | SWIRS_00036852 | a, b, d, e, f, i, k, n, p, r, s | | |
| **239** | Bill, Please have this signed and that should complete the package. Cliff attached Sears Letter of Resignation | Cliff Bodden | 12/27/2012 | SWIRS_00037683 | a, b, d, e, f, i, k, n, p, r, s | | |
| **240** | Joanna, As per Mr. Dittmans request I am forwarding the documentation you requested. Regards. William Sears | William Sears | 12/27/2012 | SWIRS_00036839.02 | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 23 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 241 | Bill, It seeems that Joanna is seeking additional information in light of the fact that the face value of the note is less than the sum of the drawdowns mae thereunder-presenting the possiblility that the note is still open and therefore the full purchase price or other considerations has not been paid. That and the issue of not having dealt witha promissory not funded in installments. As I remember, the Capitoline due diligence included a letter of authorization terminating the credit line facility on December 5, 2011. I think that should be referenced in the opinion letter as a means of proving payment in full under the terms of the note. Also, under the Note, the lender was under no obligation to fund any draw down and therefore the face value on the note was meant to act as a credit limit not an actual commitment amount. These factors when taken with no funds being advanced since the termination should be evidence enough that the credit line portion of the agreement eneded on December 5, 2011 and the promissory note remained in effect with the principal sume of $176,950. The effective date, date of last draw down and the date the company terminated the credit line facility created by the note all occurred prior to December 5, 2011. Accordingly, I think that is the basis for our reliance on 144(d)(3) or specifically, 144(d)(3)(ii). 144(d)(3)(ii) is stated by Bodden. Cliff | Cliff Bodden | 12/27/2012 | SWIRS_00036842 | a, b, d, e, f, i, k, n, p, r, s | | |
| 242 | Guy, Please find attached the each drawdown request and proof of receipt of funding by the company under the note. Attached documents to email | Cliff Bodden | 12/28/2012 | SWIRS_00037661 | a, b, d, e, f, i, k, n, p, r, s | | |
| 243 | Regards, Sears email to Dittman Bayside Starcity note attached | William Sears | 1/23/2013 | SWFBI_00015281 | a, b, d, e, f, i, k, n, p, r, s | | |
| 244 | Marked up copy attached, Attach FusionPharm Bayside | Cliff Bodden | 1/31/2013 | SWFBI_00012956 | a, b, d, e, f, i, k, n, p, r, s | | |
| 245 | Gents, Please review and comment. Add your bios. I'll add financial projections when I get in this morning. Meeting my old Colfax landlord at 9…be at vine right after. Attached to email is Business plan | Scott Dittman | 5/2/2011 | SWFBI_00026858 | a, b, d, e, f, i, k, n, p, r, s | | |
| 246 | For your records. Attached to email summary of minutes | Gino Rodrigues | 5/9/2011 | SWIRS_00001420 | a, b, d, e, f, i, k, n, p, r, s | | |
| 247 | Gentlemen, This was the agreement I was referring to. This would be fro both my interests in FS and Scotts in meadpoint. Guy pleaes review and make appropriate changes. Regards. Attach Nominee Declaration of Shares | William Sears | 10/11/2011 | SWFBI_00024993 | a, b, d, e, f, i, k, n, p, r, s | | |
| 248 | Scott, I guess I read it wrong. The cert is for 182,050….it was late when I pulled it out on Friday evening. Any way the deal will be structured wheras we can have some free anyway. It's just something we need. Regards | William Sears | 6/20/2011 | SWFBI_00027204 | a, b, d, e, f, i, k, n, p, r, s | | |
| 249 | Regards, Attached FusionPharm Disclosure Statement | William Sears | 7/12/2011 | SWFBI_00024090 | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 USDC Colorado Page 24 of 342

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 250 | Dear Pacific Stock Transfer, Please let this e-mail act as a letter of authorization for you to give the company's lawyer Mr. Guy Jean Pierre full and complete details of the company's share structure. We are in the process of filing our information and disclosure statement and this is required for the filing. Thank you for your cooperation regarding this matter. Should you have any questions regarding this matter please feel free to contact me. | Scott Dittman | Jul-11 | SWFBI_00024143.03 | a, b, d, e, f, i, k, n, p, r, s | | |
| 251 | Guy, please forward the information once received. Regards | William Sears | 7/14/2011 | SWFBI_00024143.02 | a, b, d, e, f, i, k, n, p, r, s | | |
| 252 | Guy, what time for Scott tomorrow? Regards | William Sears | 7/15/2011 | SWFBI_00024143.02 | a, b, d, e, f, i, k, n, p, r, s | | |
| 253 | Guy, there is a panerea bread at the corner of sepulveda and Manchester ave right by the airport. How about that spot at 2:30? Please give the attorney my mobile #303-419-6352 and shoot me his contact ifno too pls. | Scott Dittman | 7/18/2011 | SWFBI_00024142 | a, b, d, e, f, i, k, n, p, r, s | | |
| 254 | Guy, I am thinking of soing some business with this group. I would like your to review the attached docs to make sure we would not be breaking any laws. Regards Attached to email Oxford 2011 deal docs. | William Sears | 7/28/2011 | SWFBI_00024194 | a, b, d, e, f, i, k, n, p, r, s | | |
| 255 | Ben trying to hit you on skype. What is your skype name? Mine is Scott.Dittman2 | Scott Dittman | 11/7/2011 | SWFBI_00025420 | a, b, d, e, f, i, k, n, p, r, s | | |
| 256 | Connie, sorrry, traveling this week and just returned last night. Yes indeed, we would still like for you to process our payroll. Do I need to sign/do anything for you? Pls advise. Please mail all checks to the following address: 1610 Wynkoop St #110, Denver CO 80202. | Scott Dittman | 9/29/2011 | SWIRS_00001871 | a, b, d, e, f, i, k, n, p, r, s | | |
| 257 | Yes and Yes! | Scott Dittman | 9/29/2011 | SWIRS_00001871 | a, b, d, e, f, i, k, n, p, r, s | | |
| 258 | Regards. Attached FusionPharm Disclosure Statement | William Sears | 12/5/2011 | SWFBI_00026201 | a, b, d, e, f, i, k, n, p, r, s | | |
| 259 | Scott, This week will be a gross total of $25,118. Minus RS (6,279.00)=$18,839…Minus 900 to Jimmy=17,939 Less 30%=$12,559 net to FP. Regards. | William Sears | 7/2/2012 | SWFBI_00016199 | a, b, d, e, f, i, k, n, p, r, s,t | | |
| 260 | Joslyn, Please instruct Mr. Roy as to the procedure to lift his 144 legend. Many thanks in advance. Regards. | William Sears | 1/31/2013 | SWFBI_00015287.05 | a, b, d, e, f, i, k, n, p, r, s | | |
| 261 | David, William is on vacation for the week, so I'm trying to fill in. I'm not sure where your conversations with Bill left off but I've cc'd the company counsel in these matters, Mr. Guy JeanPierrr on this email. Guy, David Roy is a shareholder with 144 restricted stock from the latter part of 2011 (1 year restriction). He needs assistance with an opinion letter to deposit his cert. Please get whatever info you require from David to provide the opinion letter. Thanks to all. | Scott Dittman | 2/13/2013 | SWFBI_00015287 | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 25 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **262** | Guy, I want to put in a clause regarding to the series A Preferred. I want you to insert a clause that clearly states that in case of Bankruptcy whereas the shares wouldland in the hands of a liquidator or liquidation for said insovency the share hold most give the company the opportunity to purchase the shares back at par. Or a clause that say they cannot be liquidated by a liquidator? Just something that protects the company. Preferably the first. | William Sears | 2/28/2013 | SWFBI_00015324 | a, b, d, e, f, i, k, n, p, r, s | | |
| **263** | Regards, Attached Amended and Restated Articles of Incorporation | William Sears | 2/28/2013 | SWFBI_00015324 | a, b, d, e, f, i, k, n, p, r, s | | |
| **264** | Regards, FWD David Roy's email to Guy | William Sears | 2/20/2012 | SWFBI_00013354.02 | a, b, d, e, f, i, k, n, p, r, s | | |
| **265** | Dave, The officers certificate was executed last week. Perhaps he is awaiting payment to release said documentation. I forwarded the invoice last week. I have attached it again should you have not received it. Give a call when you get a chance this afternoon. Many thanks in advance. Regards. | William Sears | 3/4/2013 | SWFBI_00013354 | a, b, d, e, f, i, k, n, p, r, s | | |
| **266** | My bad regards. Attached FusionPharm OTC markets | William Sears | 3/8/2013 | SWFBI_00015355 | a, b, d, e, f, i, k, n, p, r, s | | |
| **267** | Guy, I need the pink sheeet letter yesterday. I will send the other in one hour | William Sears | 11/20/2012 | SWFBI_00014988.02 | a, b, d, e, f, i, k, n, p, r, s | | |
| **268** | Regards. Sears FWD guy's email. Attach FusionPharm_Lawfirm_attorney letter | William Sears | 6/28/2011 | SWFBI_00014988 | a, b, d, e, f, i, k, n, p, r, s | | |
| **269** | Guy, it would seem I need another letter of opinion for the note. Please reference Meadpoint converting it into the Name of Richared Scholz as in the doucments. Regards. Attache J Dibella doc | William Sears | 8/8/2013 | SWFBI_00008551 | a, b, d, e, f, i, k, n, p, r, s | | |
| **270** | Fed Wire Transfer Request Forms, Microcap Management | William Sears | 9/2011-12/2012 | SEC-DOJ-EPROD-000063311 through 63334 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **271** | Wire Authorization Form, Meadpoint Venture Partners | William Sears | 5/2013-12/2013 | SEC-DOJ-EPROD-000063239 through63276 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **272** | Wire Authorization Form, Bayside Realty Holdings | Sandra Sears (Mother of William Sears) | 2/1/2013-4/13 | SEC-DOJ-EPROD_000063205 throught 63218 | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **273** | Email from Scott Dittman to OTC Markets referring to Guy Jean Pierre as the corporate secretary for FusionPharm and stating "Yes, all of the information is correct…." | Scott Dittman | 12/2/2011 | SWFBI_00026157 (Exb 16) | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 26 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **274** | Email from William Sears to Fred Dahlman referenincg shares to Microcap and Salt and stating "Fred, As per our conversation please transfer the following amounts of preferred shares to complete the transaction. 10,000 to yourself or nominee 50,000 to Microcap Management LLC the balance (1,440,000shs) of the stock should go to Salt Investments LLC. In addition please forward copy's of the original certs or documentation that was used to create said shares." | William Sears | 11/8/2010 | FD_00000112 (Exb 33) | a, b, d, e, f, i, k, n, p, r, s | | |
| **275** | Email from William Sears to Fred Dahoman referencing shares transfer to Microcap, Robert Dittman, and Salt stating "Fred, As per our conversation please transfer the following amounts of preferred shares to complete the transaction. 10,000 to yourself or nominee 100,000 to Microcap Management LLC 25,000 to Robert L. Dittman the balance (1,365,000shs) of the stock should go to Salt Investments LLC. In addition, please forward copy's of the original certs or documentation that was used to create said shares." | William Sears | 11/19/2010 | FD_00000078 (Exb 35) | a, b, d, e, f, i, k, n, p, r, s | | |
| **276** | Email from Kelly Blume to Scott Dittman stating "I paid the Verizon bill last night with Billy's company card." | Kelly Blume | 7/5/2012 | SWFBI_00017781 (Exb 41) | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **277** | Email chain between Bohlender and Scott Dittman discussing Sears role in FusionPharm as well as other items | Scott Dittman/Shane Bohlender | 08/12-15/2011 | SWFBI_00027492 (Exb 43) | a, b, d, e, f, i, k, n, p, r, s | | |
| **278** | Email chain between Pacific Stock Transfer, Sears, and Jean-Pierre in which Sears states "Mr. Jean Pierre is handling the reverse with FINRA." | William Sears | 2/15/2011 | PST_00007071 (Exh 92) | a, b, d, e, f, i, k, n, p, r, s | | |
| **279** | Letter from Richard Scholz to Leslie Eldridge at Pacific Stock Transfer stating that shares in FusionPharm need to be transferred back to MicroCap Management. Scholz states "Once the certificate is created please email a copy to William@williamjSears.com." | Richard Scholz | 5/9/2011 | PST_00000432 (Exhb 99) | a, b, d, e, f, i, k, n, p, r, s | | |
| **280** | Email from Sandra Sears (sandy@la-dee-da.me) to Leslie Eldridge at PSTC confirming that $220.00 was sent as fees for the transfer of shares from FusionPharm to Microcap Management. | Sandra Sears (Mother of William Sears) | 4/5/2011 | PST_00000493 (Exhb 103) | a, b, d, e, f, i, k, n, p, r, s, t | | |
| **281** | Email including Jean-Pierre, Scott Dittman, and PSTC in which Dittman states "Please let this email act as a letter of authorization for you to give the company's lawyer Mr. Guy Jean Pierre full and complete details of the company's share structure." | Scott Dittman | 7/12/2011 | PST_00002889 (Exhb 105) | a, b, d, e, f, i, k, n, p, r, s | | |
| **282** | Email from William Sears to Leslie at PSTC concerning stock certificate for Robert Dittman in which Sears states "The below share holder has to yet receive his certificate. I was asked to follow this up. Was it sent fed ex?" | William Sears | 8/3/2011 | PST_00008768 (Exb107) | a, b, d, e, f, i, k, n, p, r, s | | |
| **283** | Email chain between Sears and Scottsdale Capital in which Scottsdale asks Sears "are you or your company enganged in any type of stock promotion activity with respect to FusionPharm?" Sears replies "NO!!! On both….." | William Sears | 8/10/2012 | SEC-DOJ-EPROD-000062587 (Exb 124) | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 27 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **284** | Letter to Scottsdale Capital Advisors signed by Sandra Sears stating "At this time Bayside Realty Holding Inc is still holding a convertible note in the amount of $187,343" | Sandra Sears (Mother of William Sears) | 1/27/2013 | SEC-DOJ-EPROD-000061934 (Exb 127) | a, b, d, e, f, i, k, n, p, r, s, u | | |
| **285** | Email from Sandra Sears (sandraSears1120@gmail.com) to Scottsdale Capital Advisors discussing outstanding balances of $187,343 which is resluted from the legal opinion balance of $176,950 plus interest. Sandra Sears replies and states "You are correct on all your assumptions" in reference to the balances. | Sandra Sears (Mother of William Sears) | 1/28/2013 | SEC-DOJ-EPROD-000061935 (Exb 127) | a, b, d, e, f, i, k, n, p, r, s | | |
| **286** | As part of an email chain, Sears (wSears@vertifresh.onmicrosoft.com) emails Joanna DiBella at PSTC with a copy to Scott Dittman (sDittman@fusionpharm.onmicrosoft.com) stating "Just saw this one did not go!" | William Sears | 3/7/2013 | GJP_INV_00006170 (Exb 210) | a, b, d, e, f, i, k, n, p, r, s | | |
| **287** | As part of an email chain, Joanna DiBella replies to an email sent by Willaim Sears and includes Scott Dittman (sDittman@fusionpharminc.onmicrosoft.com) stating "This is what we still need" regarding processing of a package. | Joanna DiBella | 3/7/2013 | GJP_INV_00006168 - GJP_INV_00006169 (Exb 210) | a, b, d, e, f, i, k, n, p, r, s | | |
| **288** | As part of an email chain, Joanna DiBella replies to an email sent by William Sears with a copy to Scott Dittman (sDittman@fusionpharminc.onmicrosoft.com) stating "I am still in need of the following to proceed" in reference to processing of a package. | Joanna DiBella | 3/11/2013 | GJP_INV_00006167 - GJP_INV_00006168 (Exb 210) | a, b, d, e, f, i, k, n, p, r, s | | |
| **289** | As part of an email chain, William Sears (wSears@vertifresh.com) replies to an email sent by Joanna DiBella at PSTC with a copy to Scott Dittman (sDittman @fusionpharminc.onmicrosoft.com) discussing opinion letters and states "With regards to the letter of opinions this seems more as a matter of fact. These letter have a significant cost to prepare and amend. I have had council insert statements in both resolutions and issuer letters affirming this." | William Sears | 3/11/2013 | GJP_INV_00006167 (exb 210) | a, b, d, e, f, i, k, n, p, r, s | | |
| **290** | As part of an email chain, William Sears (wSears@vertifresh.com) forwards the email chain to Guy Jean Pierre (guymjeanpierre@yahoo.com, guy@lawfirmofjeanpierre.com, marcelo1@thedeallawyer.com) | William Sears | 3/12/2013 | GJP_INV_00006166 - GJP_INV_00006167 (Exb 210) | a, b, d, e, f, i, k, n, p, r, s | | |
| **291** | Letter signed by Scott Dittman at FusionPharm to Joanna DiBella at PSTC discussing conversion with five shareholders and stating spcifically the indebtedness was "orignally issued by the Compnay on May 2, 2011 in favor of Bayside Realty Holdings, LLC (the "Original Holder") and evidenced by the attached promissory note dated the same date;" | Scott Dittman | 3/8/2013 | GJP_INV_00005202 (Exb 210a) | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 28 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 292 | Letter signed by Scott Dittman at FusionPharm to Joanna DiBella at PSTC stating "Pursuant to the convertible promissory note dated December 8, 2011 held by Meadpoint Venture Parnters LLC (Tax ID #45-3667889), please accept this as authorization for you to convert and issue 475,000 shares of common stock to Meadpoint Venture Partners. The conversion price as outlined on page three of the agreement is $0.01 per share. The shares should be considered as fully paid and non-assessable. Meadpoint Venture Partners is not and has never been an affiliate of the company." | Scott Dittman | 3/29/2013 | GJP_00010012 (Exb 211a) | a, b, d, e, f, i, k, n, p, r, s | | |
| 293 | Email from William Sears to Joanna DiBella (Joanna@pacificstocktransfer.com) stating "The letters state the consideration paid to Medpoint in the first paragraph?" | William Sears | 8/30/2013 | SWFBI_00008905 (Exb 214) | a, b, d, e, f, i, k, n, p, r, s | | |
| 294 | Email forward from William Sears (william@williamjSears.com) to Scott Dittman (sDittman@fusionpharminc.com) containing the Subject of "FW:Letters of opinion" and an attachment labeled "Attach: Signiture Page - FusionPharm - Scholz - Thayden - Thayden - 08-26-13.pdf" | William Sears | 8/30/2013 | SWFBI_00008905 (Exb 214) | a, b, d, e, f, i, k, n, p, r, s | | |
| 295 | Letter signed by Scott Dittman to Joanna DiBella at Pacific Stock Transfer stating "Pursuant to the convertible promissory note dated December 8, 2011 held by Meadpoint Venture Partners LLC (Tax ID # 45-3667889), please accept this as authorization for you to convert and issue 500,000 shares of common stock to Myron Thayden...from the note held by Meadpoint Venture Partners. The conversion price as outlined on page three of the agreement is $0.01 per share. The shares should be considered as fully paid and non-assessable. Meadpoint Venture Parners is not and has never been an affiliate of the company." | Scott Dittman | 8/22/2013 | GJP_00010080 (Exb 215b) | a, b, d, e, f, i, k, n, p, r, s | | |
| 296 | Letter signed by Scott Dittman to Joanna DiBella at Pacific Stock Transfer stating "Pursuant to the convertible promissory note dated December 8, 2011 held by Meadpoint Venture Partners LLC (Tax ID # 45-3667889), please accept this as authorization for you to convert and issue 500,000 shares of common stock to Sharryn Thaden...from the note held by Meadpoint Venture Partners. The conversion price as outlined on page three of the agreement is $0.01 per share. The shares should be considered as fully paid and non-assessable. Meadpoint Venture Parners is not and has never been an affiliate of the company." | Scott Dittman | 8/23/2013 | GJP_00010097 (Exb 215c) | a, b, d, e, f, i, k, n, p, r, s | | |
| 297 | Invoice #00009 from Tod DiTommaso to Guy Jean Pierre with line items showing opinion letters for Meadpoint, OTC Market, and Scholz-Thayden-Thayden each for $175.00 | Tod DiTommaso | 9/15/2013 | GJP_00010667 (Exb 216) | a, b, d, e, f, i, k, n, p, r, s | | |
| 298 | Invoice #00001 from Tod DiTommaso to Guy Jean Pierre dated 01/15/2012 with line item showing an opinion letter for Fusion Pharm - OTC Markets for $175.00 | Tod DiTommaso | 1/15/2012 | GJP_00010651 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **299** | Invoice #00001 from Tod DiTommaso to Guy Jean Pierre dated 01/15/2013 with line items showing opinion letters for FusionPharm - Bayside for $175.00 and FusionPharm Bayside Re do for $25.00 | Tod DiTommaso | 1/15/2013 | GJP_00010653 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | | |
| **300** | Invoice #00002 from Tod DiTommaso to Guy Jean Pierre dated 02/15/2013 with line items showing an opinion letter for FusionPharm - Bayside Re do for $25.00 | Tod DiTommaso | 2/15/2013 | GJP_00010655 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | | |
| **301** | Invoice #00004 from Tod Ditommaso to Guy Jean Pierre dated 04/09/2013 with line items showing opinion leters for FusionPharm- Roy for $175.00, FusionPharm OTC MARKETS for $175.00, FusionPharm-OTC MARKETS re do for $25.00, FusionPharm - Five opinion letters for Black Arch, A. Mauriello, Start City, Vera Group, SGI Group for $600.00 (disount), FusionPharm - Roy re do for $25.00, FusionPharm Five Opinion Letters Black Arch, A. Mauriello, Star City, Vera Group, SGI Group for $100.00 (discount), and FusionPharm - Meadpoint for $175.00 | Tod DiTommaso | 4/9/2013 | GJP_00010657 - GJP_00010658 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | | |
| **302** | Invoice # 00004 from Tod DiTommaso to Guy Jean Pierre dated 04/15/2012 with line items showing opinion letters for Fusion Pharm - Oxford Capital Fund for $175.00 | Tod DiTommaso | 4/15/2012 | GJP_00010660 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | | |
| **303** | Invoice #00006 from Tod DiTommaso to Guy Jean Pierre dated 06/15/2012 with line items showing opinion letters for Fusion Pharm - Stephanie Padilla for $175.00, Fusion Pharm - OTC Markets for $175.00, Fusion Pharm - For Your Information for $175.00, Fusion Pharm - Roger Pawson for $175.00, Fusion Pharm - Adams for $175.00, and Letter to Broker for William Adams re: Fusion Pharm for $100.00 | Tod DiTommaso | 6/15/2012 | GJP_00010662 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | | |
| **304** | Invoice #00007 from Tod DiTommaso to Guy Jean Pierre dated 07/15/2012 with line items showing opinion letters for Fusion Pharm - Thaden for $175.00, Fusion Pharm - Thaden Re do for $25.00, Fusion Pharm - Microcap for $175.00, Fusion Pharm - OTC Markets for $175.00, Fusion Pharm OTC Markets Re do for $25.00, Fusion Pharm - Thaden for $175.00 | Tod DiTommaso | 7/15/2012 | GJP_00010664 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | | |
| **305** | Invoice #00008 from Tod DiTommaso to Guy Jean Pierre dated 08/15/2012 with line items showing opinion letters for Fusion Pharm - Microcap for $175.00, Fusion Pharm - Abbot for $175.00 | Tod DiTommaso | 8/15/2012 | GJP_00010665 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | | |
| **306** | Invoice #00009 from Tod DiTommaso to Guy Jean Pierre dated 09/15/2012 with line items showing opinion letters for Fusion Pharm - OTC Markets for $175.00 | Tod DiTommaso | 9/15/2012 | GJP_00010666 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | | |
| **307** | Invoice #00009 from Tod DiTommaso to Guy Jean Pierre dated 09/15/2013 with line items showing opinion letters for FusionPharm - Meadpoint for $175.00, Fusion Pharm - OTC Market for $175.00, Fusion Pharm - Sholz - Tahyden - Thayden for $175.00 | Tod DiTommaso | 9/15/2013 | GJP_00010667 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | | |
| **308** | Invoice #00005 from Tod DiTommaso to Guy Jean Pierre dated 08/15/2011 with line items showing opinion letters for Fusion Pharm Inc. Pink Sheets for $175.00 | Tod DiTommaso | 8/15/2011 | GJP_00010669 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 30 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **309** | Email from William Sears (william@williamjSears.com) to sDittman@fusionpharminc.com with the subject FW: Reservation Confirmation with a Frontier Airline itinerary for Guy Jean Pierre from Fort Lauderdale, FL to Denver, CO on October 10, 2011 returning October 12, 2011. | William Sears | 9/28/2011 | SWIRS_00001882 - SWIRS_00001882.05 (Exb 226) | a, b, d, e, f, i, k, n, p, r, s | | |
| **310** | Email from Scott Dittman (sDittman@fusionpharminc.com) to A.R. Duke (arduke@fusionpharminc.com) and wSears@fusionpharminc.com with subject of "business plan update" and stating "Here is my attempt at the update yesterday…please review and make notes. I haven't read it in its entirety yet. Projections to follow in 5 minutes." | Scott Dittman | 10/12/2011 | SWFBI_00024898 (Exb 227) | a, b, d, e, f, i, k, n, p, r, s | | |
| **311** | Email from Scott Dittman (sDittman@fusionpharminc.com) to A.R. Duke (arduke@fusionpharminc.com), falconer@fusionpharminc.com, and wSears@fusionpharminc.com with subject of "retreat" and proposing an "evisioning/strategizing" session to "lay it all on paper and break out who is responsible for what." | Scott Dittman | 10/20/2011 | SWFBI_00025059 (Exb 228) | a, b, d, e, f, i, k, n, p, r, s | | |
| **312** | Email from William Sears (william@williamjSears.com) to andrew robert (arduke2000@yahoo.com) and arduke@fusionpharminc.com with the subject of "Status" stating "Let us part ways with reagred to our business regarding Fusionpharm and continue our friendship." | William Sears | 3/23/2012 | SWFBI_00022596 (Exb 229) | a, b, d, e, f, i, k, n, p, r, s | | |
| **313** | As part of an email chain, A.R Duke (arduke@fusionpharminc.com) sent an email to Scott Dittman wth the subject "Fwd: Debt" inquiring if $269,000 in debt listed on the OTCMarkets is a "residual balance" | Andy Duke | 4/17/2012 | SWFBI_00021937 (Exb 230) | a, b, d, e, f, i, k, n, p, r, s, u | | |
| **314** | As part of an email chain, Scott Dittman (sDittman@fusionpharminc.com) sent an email to A.R. Duke (arduke@fusionpharminc.com) with the subject "RE: Debt" and stating that "The Vast Majority is a loan received in installments throughout 2011. Friends and family loan." | Scott Dittman | 4/17/2012 | SWFBI_00021937 (Exb 230) | a, b, d, e, f, i, k, n, p, r, s | | |
| **315** | Email from William Sears (william@williamjSears.com) to sDittman@fusionpharminc.com and cbodden@gsccventure.com with the subject "Fusion Pharm" and stating "Please start communicating with regard to putting a business plane/power point/offering documents together. Cliffe as usual we need this last week! We want it in the format you used for Green street. We will require them in both pdf and word docs for future revisions. Fee for the whole enchilada is 2-k with 500 as retaininer and balance with acceptance of finished product." | William Sears | 3/10/2011 | SWIRS_00008941 (Exb 235) | a, b, d, e, f, i, k, n, p, r, s | | |
| **316** | Email from William Sears (william@williamjSears.com) to cbodden@gsccventure.com with subject "AFFIDAVIT OF CLIFF BODDEN_03 14 11" stating "Cliffe, I need this back to Guy ASAP" | William Sears | 3/14/2011 | SWIRS_00011887 (Exb 236) | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 USDC Colorado Page 31 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 317 | Email from William Sears (william@williamjSears.com) to Cliffe R Bodden (cbodden@gsccventure.com) with subject "Fwd: BBYB Documents" forwarding an emai lfrom Guy Jean Pierre with BBYB documents | William Sears | 3/28/2011 | SWIRS_00012006 (Exb 238) | a, b, d, e, f, i, k, n, p, r, s | | |
| 318 | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to Scott Dittman (sDittman@fusionpharminc.com) and William Sears (wSears@fusionpharminc.com) with the subject "Annual Report" and stating: "Attached is the Annual Report"..."I have made the necessary changes in the report to reflect changes made on the financial statements."..."1. Mechanics of Conversion: Bill said this was good."..."4. Employees: You, Kelly, Frank, and Duke (they don't have to necessarily be salaried or waged employees), with Guy being part time (he's listed in the management section as salaried in your last Information Statement)." | Cliff Bodden | 3/31/2012 | SWFBI_00022930 (Exb 240) | a, b, d, e, f, i, k, n, p, r, s | | |
| 319 | Email from Cilff Bodden (cbodden@gsccventure.onmicrosoft.com) to Nick Malino (nmalino@capitolineadvisors.com) with a CC to Scott Dittman (sDittman@fusionpharminc.com) and William Sears (wSears@fusionpharminc.com) with the subject "Pro Forma Financial Projections" stating "Please find attached, the financial projections." and including contact information for Scott Dittman, William Sears, and Nick Malino. | Cliff Bodden | 4/4/2012 | SWFBI_00023014 (Exb 242) | a, b, d, e, f, i, k, n, p, r, s | | |
| 320 | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to Scott Dittman (sDittman@fusionpharminc.com) and CC to William Sears (wSears@fusionpharminc.com) with the subject "Financial Statement" and stating "Scott Attached is my workbook for the periods ended March 31, 2012 and 2011. All shares issuances (new and conversions) have been reconciled against the bank statements and the transfer agents list." | Cliff Bodden | 5/25/2012 | SWFBI_00022748 (Exb 243) | a, b, d, e, f, i, k, n, p, r, s | | |
| 321 | As part of an email chain…Email from Cliff Bodden to Guy Jean Pierre and William Sears with subject "Meeting" and stating "Guy, Bill and I will be down to Boca Firday morning, let's get together then." | Cliff Bodden | 5/30/2012 | SWIRS_00017394 (Exb 244) | a, b, d, e, f, i, k, n, p, r, s | | |
| 322 | As part of an email chain...Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to Guy Jean Pierre (guy@lawfirmofjeanpierre.com) with subject "Re:Meeting" and stating "Guy Bill is in route to Orlando right now and when he lands I'll get a time for you." | Cliff Bodden | 5/30/2012 | SWIRS_00017394 (Exb 244) | a, b, d, e, f, i, k, n, p, r, s | | |
| 323 | As part of an email chain…Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to William Sears (wSears@fusionpharminc.com) with subject "Draft Note Agreement" and stating "Bill Please review the attached and I'll draft the drawdown requests to match the dates and amounts of the deposits." | Cliff Bodden | 6/4/2012 | SWFBI_00023006 (Exb 245) | a, b, d, e, f, i, k, n, p, r, s | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **324** | As part of an email chain...Email from William Sears (wSears@fusionpharminc.com) to Scott Dittman (sDittman@fusionpharminc.com) with a subject of "Fwd: Draft Note Agreement" containing a fowarded email from Cliff Bodden | William Sears | 6/4/2012 | SWFBI_00023006 (Exb 245) | a, b, d, e, f, i, k, n, p, r, s | | |
| **325** | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to William Sears (wSears@fusionpharminc.com) with subject "Bayside Loan Documents" and stating "Bill Let's get these signed up. Meadpoint's to follow in separate email." | Cliff Bodden | 6/6/2012 | SWIRS_00017304 (Exb 246) | a, b, d, e, f, i, k, n, p, r, s | | |
| **326** | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to William Sears (wSears@fusionpharminc.com) with subject "MeadPoint Loan Documents" stating "See Attached" | Cliff Bodden | 6/6/2012 | SWIRS_00017313 (Exb247) | a, b, d, e, f, i, k, n, p, r, s | | |
| **327** | Email from William Sears (william@williamjSears.com) to Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) with subject "Fwd:FusionPharm - OTC Markets Opn Ltr" with a forwarded email from Guy Jean Pierre to William Sears. | William Sears | 6/12/2012 | SWIRS_00005114 (Exb 249) | a, b, d, e, f, i, k, n, p, r, s | | |
| **328** | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to William Sears (wSears@fusionpharminc.com) and CC to Scott Dittman (sDittman@fusionpharminc.com) and guy@lawfirmofjeanpierre.com with subject "Capitoline Due Diligence" and asking for information for various issues be sent to him and specifically stating among other things: "Most of the due diligence questions I can answer from the filings or information I already have."..."I need guy to complete the revisions to the Certificate of Designation for the Series A Convertible Preferred Stock and provide me with a copy." | Cliff Bodden | 6/13/2012 | SWFBI_00017067 (Exb 250) | a, b, d, e, f, i, k, n, p, r, s | | |
| **329** | Skype message from Sears to GJP: YES!!! Just got the termination agreement from a shareholder to whom had options at a a crazy low price. This would have killed any would be deal. i now have power of atty on the shell and am moving forward on it | William Sears | 9/1/2010 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **330** | Skype message from Sears to GJP: Not next week the following for sure. | William Sears | 9/1/2010 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **331** | Skype message from Sears to GJP: We just flew back in last night at 2:30 am, so Im slow today to sat the least | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **332** | Skype message from Sears to GJP: Looking at a JV with a choclate company | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **333** | Skype message from Sears to GJP: I will have money for you aslo | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **334** | Skype message from Sears to GJP: Thanks for all the help and such with no money on account to start | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **335** | Skype message from Sears to GJP: "This time it will" | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 33 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **336** | Skype message from Sears to GJP: "Also I need your banking details again as I want to deposit money." | William Sears | 6/2/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **337** | Skype message from Sears to GJP: "Scott and I are going over the 211-a right now. We will have it completed today and look forward to filing it asap. please set up the meeting in LA for anytime next week (Beginning) Preferred so we can have this uploaded by Friday of next week" | William Sears | 7/12/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **338** | Skype message from Sears to GJP: "This is a new division of FINRA only enacted post Madoff." | William Sears | 10/5/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **339** | Skype message from Sears to GJP: "In addition please call Scott on Skype as to the Finra guy" | William Sears | 11/7/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **340** | Skype message from Sears to GJP: "just sent the redone 15c 211a notes to financials coming now" | William Sears | 12/19/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **341** | Skype message from Sears to GJP: "Ok the Sept 30s are up with the notes to pinksheets........." | William Sears | 12/22/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **342** | Skype message from Sears to GJP: " just uploaded it......should be live in fifteen minutes. ok upl;oaded" | William Sears | 12/27/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **343** | Skype message from Sears to GJP: "yes it is uploaded" | William Sears | 12/29/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **344** | Skype message from Sears to GJP: "ok new letter uploaded...........did not sleep last night.....I'm sooooo tired. I need a vacation as I have been running hard for a long time now." | William Sears | 12/30/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **345** | Skype message from Sears to GJP: "Good Morning..............Just got in as I had a early morning meeting. Ill call this afternoon. Inaddition the bank would not release the funds befor today so I will have Kelly make a deposit into Chase for you today." | William Sears | 1/3/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **346** | Skype message from Sears to GJP: "We made a deposit after 5:00 yesterday it should show this morning" | William Sears | 1/4/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **347** | Skype message from Sears to GJP: "I had lunch with him yesterday. I have it….I'll get it to you in a few." | William Sears | 1/4/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **348** | Skype message from Sears to GJP: "I do hope to make the deposit tomorrow or monday." | William Sears | 1/19/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **349** | Skype message from Sears to GJP: "Funds have been soooo tight with the holiday slowdown, and a lagre investor check bouncing which sent our accounts into a tail spin" "we recovered however it zeroed us out" | William Sears | 1/19/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s, u | | |
| **350** | Skype message from Sears to GJP: "how is my document?" | William Sears | 1/4/2013 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| **351** | Skype message from Sears to GJP: "Awesome!" | William Sears | 1/4/2013 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 USDC Colorado Page 34 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 352 | Skype message from Sears to GJP: "Guy I am a bit freaked out. How are we making it. This is a major presentation on Monday morning. I need to have the offering docs in hand." | William Sears | 4/25/2013 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| 353 | Skype message from Sears to GJP: "Good Morning. I am back in Colorado now. Things went well. Not the situation I thought it would be. However this is a good starting point for our new investment oppertunity." | William Sears | 5/2/2013 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | | |
| 354 | Skype Message from Dittman to Sears: "puke" | Scott Dittman | 10/6/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | | |
| 355 | Skype Message from Dittman to Sears: "fyi, got a call from Todd today. Nothing big, tell you after duke leaves" | Scott Dittman | 11/4/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | | |
| 356 | Skype Message from Sears to Dittman: "ok…..just poo'd a bit" "seem cool" | William Sears | 11/4/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | | |
| 357 | Skype Message from Dittman to Sears: "Yeah, no big deal" | Scott Dittman | 11/4/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | | |
| 358 | Skype Message from Sears to Dittman: "cool tell me later" | William Sears | 11/4/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | | |
| 359 | Skype Message from Sears to Dittman: "hey I have to pay Guy today. FSPM check or mcm? 2500" | William Sears | 11/21/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | | |
| 360 | Skype Message from Dittman to Sears: "fspm is fine" | Scott Dittman | 11/21/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | | |
| 361 | Skype Message from Sears to Dittman: "ok" | William Sears | 11/21/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | | |
| 362 | Skype Message from Sears to Dittman: "Good morning.I would like to take what Richie did las week and pay Guy and Pink Sheets. That's about all it will cover anyway (if that)." | William Sears | 2/6/2012 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | | |
| 363 | Skype Message from Sears to Dittman: "need a check for 500 to put into Gys acct Should I do MCM this is for Buck I am going to chat with Buck before giving the letter.i want this liquidated responsibily." | William Sears | 5/14/2012 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s, u, t | | |
| 364 | Skype Message from Dittman to Sears: "yes (mcm) Kay asked the "what's in billy's background, why isn't he on anything publicly" question. U need to address with her after this meeting." | Scott Dittman | 5/14/2012 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 35 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **365** | Skype Message from Sears to Dittman: "Need to put her on the back burner. We are only limited information on Pink sheets now. Seems the quarterly deadline is only 45 days now. I need it up (Current Filer Status ) for the IR push. So Cliffe needs to get the financials dione first. In addition lets talk later about finances. Got to get the 3-k to guy for the last two statements." "going to the gym now........call me when free........" | William Sears | 5/23/2012 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s, u, t | | |
| **366** | Email from Dittman to Richard@bhangchocolate.com: "Richard, I'm confirmed on the evening flight with my partner William Sears. Will be out there around 9pm. Can you still do tomorrow morning?9ish? Where is your facility? Would love to see production if at all possible." | Scott Dittman | 5/16/2011 | SWFBI_00027843 | a, b, d, e, f, i, k, n, p, r, s | | |
| **367** | Email from Sears to Jean-Pierre cc Dittman: "Guy, I was wondering if you would do some trademark registration work for us. We need to register in Colorado , Arizona ,California and Michigan. If so I will send over the details. In addition would you be willing to do lunch on Sunday?" | William Sears | 5/31/2011 | SWFBI_00027069 | a, b, d, e, f, i, k, n, p, r, s | | |
| **368** | Email from Sears to Jean-Pierre: "Guy, Please review and advise." Attaches "FSPM Disclosure Statement_06 30 11" | William Sears | 7/12/2011 | SWIRS_00001321 | a, b, d, e, f, i, k, n, p, r, s | | |
| **369** | Email from Sears to Jean-Pierre cc Dittman: "Guy, Scott lands in LAX at one thirty. So if the Lawyer could meet him somewhere close to the airport it would be ideal. His departing flight is 6:55. Given the meeting should be no longer than one hour and a half a two fifteen meeting would be great. Ill look into restaurants close by for the meet. Have a great weekend!" | William Sears | 7/17/2011 | SWFBI_00024138 | a, b, d, e, f, i, k, n, p, r, s | | |
| **370** | Email from Sears to Jean-Pierre cc Dittman: "Guy, We have decided to move ahead with our plan of doing a 506. I would like to file the form D to close the 504. I will send the sub docs for the two subscribers of the 504 so you can do this. I believe we send that for the first sub and the last we accepted. I will prepare most of the 506 document as I have a template I like. I would like you to review and advise once completed." | William Sears | 7/17/2011 | SWIRS_00001731 | a, b, d, e, f, i, k, n, p, r, s | | |
| **371** | Email from Sears to Jean-Pierre cc Dittman: "Guy, Good Morning. I would like to speak later on this afternoon. I want to go over the Form D filing and if it was done. In addition I want to clarify the 15C-211a with pink sheets. Also regarding Robert Taylor, I want to document all the correspondences you have sent to him so if we do not hear from him I want to be able to clean his debt off the books. Last but not least we will be making a deposit into your account on Wednesday." | William Sears | 8/8/2011 | SWFBI_00027437 | a, b, d, e, f, i, k, n, p, r, s | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **372** | Email from Dittman to Sears:<br>"Fyi. Need to get Guy involved at this point?" | Scott Dittman | 10/7/2011 | SWFBI_00024842 | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **373** | Email from Dittman to Sears forwarding his 10/24/2011 email to Todd Kramer at FINRA | Scott Dittman | 11/3/2011 | SWFBI_00025315 | a, b, d, e, f, i, k, n, p, r, s | | |
| **374** | Email from Sears to Jean-Pierre cc Dittman:<br>"Guy, Give this a quick eye as we are going to start sending these out as<br>soon as we get the 504." | William Sears | 11/14/2011 | SWFBI_00025608 | a, b, d, e, f, i, k, n, p, r, s | | |
| **375** | Email from Sears to Jean-Pierre:<br>"Guy Please find attached the 504 with some changes. I need you to go over the risk disclosures as I feel it is totally geared toward cannabis and gives the impression that if cannabis is doomed so are we." | William Sears | 11/16/2011 | SWFBI_00025671 | a, b, d, e, f, i, k, n, p, r, s | | |
| **376** | Email from Dittman to Kocinski, Sears cc Jean-Pierre:<br>"Mike,Please make the following adjustments to the 9/30 financials and return the updated set to all participants on this email:Collapse the 2 revenue line items into 1...just call it salesDebit revenue 60k and set up a 'contract deposits' liability account. $60k of that revenue wasn't earned yet, just deposits on pods to be builtCredit inventory $56,193.64 and debit cost of good sold for the same Flow through all adjustments.. Thanks Mike." | Scott Dittman | 11/23/2011 | MK_00000419 | a, b, d, e, f, i, k, n, p, r, s, u, t | | |
| **377** | Email from Sears to Dittman and Jean-Pierre cc Kocinski:<br>"Guys,I think we have some issues to address ................ " | William Sears | 11/28/2011 | MK_00000426 | a, b, d, e, f, i, k, n, p, r, s | | |
| **378** | Email from Dittman to Sears and Jean-Pierre:<br>"Gentlemen, Made a couple of very small changes, not worth noting. I think we?re good. Billy?" | Scott Dittman | 12/27/2011 | SWFBI_00020031 | a, b, d, e, f, i, k, n, p, r, s | | |
| **379** | Email from Dittman to Sears, Jean-Pierre and DiTommaso:<br>"Gents, I've talked with Garret at OTC markets and what he wants, in paragraph 2 of your item 2, inquiry and investigation, is to note that you've reviewed the December 29th information and disclosure statement. The current letter only references the December 27th information and disclosure statement. The opinion letter needs to reference the December 29th one also, showing that you reviewed the newest version after we made the changes requested by OTC markets to the last one." | Scott Dittman | 12/29/2011 | SWFBI_00020077 | a, b, d, e, f, i, k, n, p, r, s | | |
| **380** | Email from Dittman to Sears and Jean-Pierre:<br>"Gents,<br>Looks like one more? Or did you get this already. See below." | Scott Dittman | 12/29/2011 | SWFBI_00020078 | a, b, d, e, f, i, k, n, p, r, s | | |
| **381** | Email from Sears to Dittman cc Jean-Pierre attaching Fusion Pharm Inc SH Rpt 12-31-2011.pdf | William Sears | 1/3/2012 | SWFBI_00021592 | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 103-1 Filed 05/18/18 Page 37 of 342

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 382 | Letter from Kelly Blume:<br>"My name is Kelly Blume; I am the Office Manager for Fusion Pharm, Inc. I am writing this letter to verify<br>the employment of William Sears. Mr. Sears has been with our company as a 1099 employee with a gross pay of $5,000 per month since January of 2011. As of March 1,2012 Fusion Pharm, Inc. is moving to a payroll system and Mr. Sears will become a W-2 employee for our company at the same gross pay amount.<br>If you require further information on Mr. Sears I can be contacted via phone at 303-681-6875 or via e-mail at kblume@fusionpharminc.com." | Kelly Blume | 1/30/2012 | SWIRS_00002853 | a, b, d, e, f, i, k, n, p, r, s, u | | |
| 383 | Email from Bodden to Malino cc Sears:<br>"Nick<br>I have attached a presentation relating to FusionPharm, a company which I have been involved with since its reorganization last year. The company is seeking $200,000 - $400,000 in financing to complete the construction of its Denver facility and I thought that a facility similar to that which you proposed for Affordable Bio Feedstock would be<br>worth discussing. Please take a look at the information and I'd like to schedule a call with the company next week." | Cliff Bodden | 3/24/2012 | SWIRS_00010844 | a, b, d, e, f, i, k, n, p, r, s, u | | |
| 384 | Email from Sears to Kocinski and Dittman:<br>"Mike,I hope all is well. As you can see we are coming down to the wireregarding the filing the 12/3ls. We hope to have them to you tomorrow. I need to have them uploaded to OTC markets by Friday. Sorry for the small window however you know how these things go.Many Thanks in advance." | William Sears | 12/31/2012 | MK_00000467 | a, b, d, e, f, i, k, n, p, r, s | | |
| 385 | Email from Sears to Jean-Pierre cc Bodden attaching Pacific Transfer's Shareholder List through 3/31/2012 | William Sears | 5/23/2012 | SWFBI_00015733 | a, b, d, e, f, i, k, n, p, r, s | | |
| 386 | Email from Sears to Jean-Pierre and Dittman attaching Pacific Transfer's Shareholder List through 12/31/2011 | William Sears | 5/23/2012 | SWFBI_00023671 | a, b, d, e, f, i, k, n, p, r, s | | |
| 387 | Email from Kocinski to Jean-Pierre cc Sears and Dittman:<br>"Dear Sir, I am the accountant that assisted with the preparation of the financial statements for FSPM for the period ending March 31, 2012. These statements were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years.<br>Please let me know if you need any further information." | Mike Kocinski | 6/7/2012 | SWFBI_00016576 | a, b, d, e, f, i, k, n, p, r, s | | |
| 388 | Email from Dittman to Bodden cc Sears and Jean-Pierre:<br>"Will get on this first thing in the am" | Scott Dittman | 6/13/2012 | SWFBI_00015880 | a, b, d, e, f, i, k, n, p, r, s | | |
| 389 | Email from Bodden to Dittman and Sears:<br>"I will need the attached documents signed and in the case of the Amended and Restated Articles and Bylaws - filed at the State of Nevada SoS's office." | Cliff Bodden | 6/18/2012 | SWFBI_00017246 | a, b, d, e, f, i, k, n, p, r, s | | |
| 390 | Email from Sears to Jean-Pierre attaching FSPM Disclosure Statement_06 30 11:<br>"Guy, Please review and advise." | William Sears | 7/12/2011 | SWIRS_00001321 | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 USDC Colorado Page 38 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **391** | Email from Sears to Dittman:<br>"Scott,<br>Please send to Amanda martin at Pacific Stock Transfer.<br>Amanda,<br>Good Afternoon. I would like to be informed when certificate numbered 11156 in the name of Morningstar Holdings LTD is presented for transfer.<br>At that time I will let you know if we should put a hold transfer. I am trying to find documentation regarding this transfer. Please feel free to contact me should you have any questions regarding this." | William Sears | 7/24/2012 | SWFBI_00016424 | a, b, d, e, f, i, k, n, p, r, s | | |
| **392** | Email from Bodden to Sears:<br>"I need to know how to book these deposits;" Bodden included a list of deposits. | Cliff Bodden | 8/4/2012 | SWIRS_00009406 | a, b, d, e, f, i, k, n, p, r, s | | |
| **393** | Email from Sears to Jean-Pierre and Bodden attaching Pacific Transfer's Shareholder List through 6/30/2012 | William Sears | 8/7/2012 | SWIRS_00033186 | a, b, d, e, f, i, k, n, p, r, s | | |
| **394** | Email from Dittman to Bodden cc Jean-Pierre and Sears:<br>"Please find attached for your review the Quarterly Report for the reporting period ended June 30, 2012 and accompanying financial statements for the periods ended June 30, 2012 and June 30, 2011. I have also attached the shareholder list for Guy's review to confirm the number of shareholders.<br>Please let me know of any revisions or corrections required. Once your review is completed I'll consolidate the pages for filing." | Cliff Bodden | 8/8/2012 | SWIRS_00004403 | a, b, d, e, f, i, k, n, p, r, s | | |
| **395** | Email from Sears to Jean-Pierre cc Dittman attaching forms from Scottsdale Capital:<br>"Just the issuer certification. Cut and paste it on letterhead and sign." | William Sears | 8/9/2010 | SWFBI_00017017 | a, b, d, e, f, i, k, n, p, r, s | | |
| **396** | Email from Sears to Jean-Pierre cc Dittman:<br>"Guy,<br>Please fins attached letter to the transfer agent dated last year. The issuances were to be for 2 year 144 as this was an employee issuance.<br>Can you make sure the transfer agent is aware of this and it is on the books as such. Many thanks in advance." | William Sears | 9/12/2012 | SWFBI_00018984 | a, b, d, e, f, i, k, n, p, r, s | | |
| **397** | Email from Kocinski to Jean-Pierre cc Sears and Dittman:<br>"Dear Sir,<br>The financial statements for Fusion Pharm, Inc (FSPM) for the period ending September 30, 2012 were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any further information." | Mike Kocinski | 11/21/2012 | SWFBI_00015212 | a, b, d, e, f, i, k, n, p, r, s | | |
| **398** | Email from Dittman to Jean-Pierre cc Sears:<br>"Guy,<br>Here is the questionnaire again...appears that both pages are legible. Let me know if you have any problems reading." | Scott Dittman | 11/29/2012 | SWFBI_00015213 | a, b, d, e, f, i, k, n, p, r, s | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 39 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **399** | Email from Sears to Pacific Stock:<br>"I do hope all of you are doing well. Please find attached a convertible note between Bayside Realty Holdings and Fusionpharm Inc. Bayside has chosen to<br>exercise its option to convert into shares. Aside from a legal opinion and payment for the cent (Absorbed by Bayside) what else would be required to get this done in an expeditious fashion? I would like to have a cert generated as quickly as possible. Bayside is a family members company and I am assisting them as I am familiar with all parties. So I will be the point person for all.<br>Regards,<br>William Sears" | William Sears | 12/12/2012 | INV_00008953 | a, b, d, e, f, i, k, n, p, r, s | | |
| **400** | Email from Sears to Pacific Stock:<br>"Good Afternoon. I do believe this is everything you will need and then some." | William Sears | 12/13/2012 | INV_00008953 | a, b, d, e, f, i, k, n, p, r, s | | |
| **401** | Email from Sandra Sears to Pacific Stock cc Sears:<br>"Joanna.<br>Please find attached the revised letter of opinion. I have already sent all the other docs you requested. Any chance of getting this printed and out today?<br>Thank you,<br>Sandy Sears" | Sandra Sears (Mother of William Sears)/William Sears | 12/24/2012 | INV_00008953 | a, b, d, e, f, i, k, n, p, r, s, v | | |
| **402** | Email from Dittman to Sears, Bodden and Jean-Pierre attaching Form 1-a:<br>"Let's discuss" | Scott Dittman | 12/18/2012 | SWFBI_00015233 | a, b, d, e, f, i, k, n, p, r, s | | |
| **403** | Email from Sears to Pacific Stock:<br>"Yes use the cc we sent you. I read it just fine. The last draw down was well over a year ago and it's a financial instrument so just like 144 one year hold? What exactly are you looking for? I am confused" | William Sears | 12/26/2012 | PST_00007756 | a, b, d, e, f, i, k, n, p, r, s | | |
| **404** | Email from Sears to Pacific Stock:<br>"Joanna<br>The first five paragraphs lay it out. I just spoke to the atty and he does not know what else he can possibly write. He is a bit confused. The note like stock is a financial instrument. It is aged. The second paragraph defines it and then it goes on. This transaction is<br>righteous on every aspect of the word. The letter of opinion is very detailed and complete. If there is specific wording you require please advise and I will forward it to the atty to see what he thinks. Please<br>advise as we are all a little confused at this time." | William Sears | 12/26/2012 | PST_00007770 | a, b, d, e, f, i, k, n, p, r, s, | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 40 of 342

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **405** | Email from Sears to Pacific Stock:<br>"It was included with the package as Bayside is paying for the transfer agent fees. Why would it not be? We were trying to augment the process by giving all the paperwork up front. So I just forwarded your comments to the lawyer. Hopefully this can get wrapped up tomorrow." | William Sears | 12/26/2012 | PST_00007770 | a, b, d, e, f, i, k, n, p, r, s | | |
| **406** | Email from Sears to Pacific Stock:<br>"Joanna,<br>Here is the chapter and verse of 144 (d) (3) (ii)<br>(ii) Conversions and exchanges . If the securities sold were acquired from the issuer solely in exchange for other securities of the same issuer, the newly acquired securities shall be deemed to have been acquired at the same time as the securities surrendered for conversion or exchange, even if the securities surrendered were not convertible or exchangeable by their terms. That's out of the book." | William Sears | 12/27/2012 | PST_00007781 | a, b, d, e, f, i, k, n, p, r, s | | |
| **407** | Email from Sears to Dittman attaching a Board Resolution Appointing Officers:<br>"Sign and send to joanna" | William Sears | 12/27/2012 | SWFBI_00015242 | a, b, d, e, f, i, k, n, p, r, s | | |
| **408** | Email from Bodden to Sears attaching a Letter of Authorization:<br>"Bill<br>Fill in the blanks (i) date after the last draw down; and (ii)outstanding balance at that date and print on Fusion letterhead. Have Scott sign and have it ready to present to Guy. I will reference it in my follow up email to you and Guy." | Cliff Bodden | 12/27/2012 | SWIRS_00037681 | a, b, d, e, f, i, k, n, p, r, s | | |
| **409** | Email from Sears to Scottsdale:<br>"I am flying in tomorrow to see you and someone from compliance. I have a deposit to make into the above subjected account. I have EVERY piece of paperwork in existence for this transaction. The cert was just printed from the T/A. I want to go thru it with you and someone from compliance in order to augment the process. I land at ten and should be there around eleven the latest. I look forward to seeing you." | William Sears | 1/21/2013 | SEC-DOJ-EPROD-( | a, b, d, e, f, i, k, n, p, r, s | | |
| **410** | Email from Sears to Scottsdale:<br>"My flight was delayed and unfortunately it will not give me the time to get back tonight as I have another meeting in the morning that I cannot miss. The file is too big to email and has been rejected by your server (It's 40 pages) .. I am sending the documentation VIA Federal Express. Gentlemen this is a very complete Due Diligence file. I do not expect to be held up for two weeks to trade this. Joanna DiBella was the securities Supervisor that worked on this at Pacific Stock Transfer (702) 361-3033. This is a fresh issuance, thoroughly documented and easily verified. Thank you for you cooperation regarding this matter and lets speak tomorrow." | William Sears | 1/22/2013 | SEC-DOJ-EPROD-( | a, b, d, e, f, i, k, n, p, r, s | | |
| **411** | Email from Dittman to Sears attaching the 2012 Annual Information and Disclosure Statement | Scott Dittman | 3/5/2013 | SWFBI_00015340 | a, b, d, e, f, i, k, n, p, r, s | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **412** | Email from Sears to Jean-Pierre, Kocinski and Dittman:<br>"Guy,<br>Mike is going thru the financials now. He will send you his email once he is satisfied. Should be 48 hours." | William Sears | 2/27/2013 | SWFBI_00015323 | a, b, d, e, f, i, k, n, p, r, s | | |
| **413** | Email from Sears to Pacific Stock cc Dittman attching DiTommaso Attorney Opinion Letter for SGI Group, LLC:<br>"Joanna<br>Just saw this one did not go!" | William Sears | 3/7/2013 | PST_00007896 | a, b, d, e, f, i, k, n, p, r, s | | |
| **414** | Email from Sears to Pacific Stock:<br>"J,<br>Strange as this shows as sent on Friday. With regard to the letter of<br>opinions this seems more as a matter of fact. These letter have a significant cost to prepare and amend. I have had council insert statements in both resolutions and issuer letters affirming this." | William Sears | 3/11/2013 | PST_00008019 | a, b, d, e, f, i, k, n, p, r, s | | |
| **415** | Email from Sears to Dittman attaching Private Placement Memorandum:<br>"Scott Just fill in the spread sheet tables. I am filling in and correcting the rest. This is just the first draft." | William Sears | 4/26/2013 | SWFBI_00013898 | a, b, d, e, f, i, k, n, p, r, s | | |
| **416** | Email from Sears to Dittman cc Jean-Pierre:<br>"Financial posted" | William Sears | 6/30/2013 | SWFBI_00015012 | a, b, d, e, f, i, k, n, p, r, s | | |
| **417** | Email from Dittman to Thaden:<br>"We think this investment is best broken<br>into 2 parts.<br>Part 1 would be a $50,000 investment<br>directly into FusionPharm for 5,000 shares of Preferred Stock (convertible into 500,000 shares of free trading). These shares, because they are issued new by FusionPharm would carry a 1 year trading<br>restriction.<br>Part 2: Purchase part of the existing<br>note payable from FusionPharm to Meadpoint Venture Partners. Said note is convertible to class a common stock which would be free trading immediately upon conversion. Purchase price would be $50,000 and would be convertible into 500,000 shares of free trading FSPM stock. I have spoken with Bill Sears of Meadpoint and he is amenable to this transaction.<br><br>Meadpoint would use it's $50,000 to<br>immediately purchase the 2 containers referenced above and as the<br>marketing entity into the cannabis market would use the containers and<br>sales center to further it's sales efforts for PharmPods. Thus, all funds would end up in FusionPharm, $50,000 as an investment | Scott Dittman | 8/5/2013 | SWFBI_00008506 | a, b, d, e, f, i, k, n, p, r, s, u, t | | |

Case 1:17-cr-00008-WJM Document 105-1 Filed 05/18/18 Page 42 of 42

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **418** | Email from Sears to Thaden: "Ok I have got it down on the paperwork. Now as far as free, with 1million shares in your name solely, you would be subject to a trickle rule. Basically considered an insider. We have only 5.6 issued and outstanding and 1mm puts you over the 10% realm. So we need a second company or persons name. In addition I will need the tax Id/ssn for the transfer agent. Ill have all this wrapped up next week! Thanks and I look forward to seeing you shortly as ill be in town." | William Sears | 8/14/2013 | SWFBI_00008651 | a, b, d, e, f, i, k, n, p, r, s | | |
| **419** | Email from Dittman to Sears: "Please read carefully, make sure I updated all the dates from last year (you missed quite a few :-) Let me know if you have the OTC form that needs to be filled out and attached to this." | Scott Dittman | 8/20/2013 | SEC-DOJ-EPROD-( | a, b, d, e, f, i, k, n, p, r, s, l, v | | |
| **420** | Email from Sears to Dittman: "Joanna, Please send the certificates directly to the addresses listed on the conversion notices. In addition the Star City one seemed unclear so here it is: Star City Capital C/O Summit Trust Company Compliance office Attention ABK Capital 465 Furnace Street suite G Marshfield MA 02050 I do believe this wraps it all up. Thank you for your cooperation" | William Sears | 9/13/2013 | SWFBI_00009145 | a, b, d, e, f, i, k, n, p, r, s | | |
| **421** | Email from Dittman to Transfer Agent: "Joanna, Please send the certificates directly to the addresses listed on the conversion notices. In addition the Star City one seemed unclear so here it is: Star City Capital C/O Summit Trust Company Compliance office Attention ABK Capital 465 Furnace Street suite G Marshfield MA 02050 I do believe this wraps it all up. Thank you for your cooperation." | Scott Dittman | 9/13/2013 | PST_00002939 | a, b, d, e, f, i, k, n, p, r, s | | |
| **422** | Email from Dittman to Pacific Stock cc Sears: " Joanna, we will take care of this in the am and will advise when done" | Scott Dittman | 9/18/2013 | PST_00008929 | a, b, d, e, f, i, k, n, p, r, s | | |
| **423** | Email from Sears to Pacific Stock and Dittman: "Please find attached the payment document. May I have a receipt showing the balance zeroed. In addition I never got a receipt for the payment made last week." | William Sears | 9/19/2013 | PST_00008929 | a, b, d, e, f, i, k, n, p, r, s | | |
| | | | | | | | |

Case 1:17-cr-00008-WJM Document 105-2 Filed 05/18/18 Page 1 of 1

Quick Sheet for Purpose of Offering as a Conspirator

(a) (promote conspiracy objectives)
(b) (reveal existence of conspiracy)
(c) (recruit others or obtain assistance)
(d) (ID conspirator or role)
(e) (explain events in conspiracy)
(f) (statement of future intent or actions)
(g) (advise others of progress of conspiracy)
(h) (assure listener of conspirators ability)
(i) (to gain trust or reassure)
(j) (to control damage)
(k) (to obtain response to facilitate conspiracy)
(l) (to conceal objective of conspiracy)
(m) (outline general history of conspiracy)
(n) (directions to facilitate conspiracy objectives)
(o) (provide reassurance among conspirators)
(p) (prompt response to facilitate conspiracy)
(q) (enhance conspirator's usefulness to conspiracy)
(r) (explanation of conspiracy to members)
(s) (set in motion acts)
(t) (indicating payments or demands)
(u) (collection of debts)
(v) (facilitate avoidance of detection)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.17-cr-00008-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE**,

Defendant.

---

**DEFENDANT JEAN-PIERRE'S REPLY TO THE GOVERNMENT'S "RESPONSE TO MOTION TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH OF HP LAPTOP"**

---

THE DEFENDANT, GUY M. JEAN-PIERRE, by and through his attorney, Clifford J. Barnard, hereby replies to the government's *Response to Motion to Suppress Evidence Obtained from Search of HP Laptop [91]* (ECF # 104) as follows:

**1. The Search Warrant Is Overbroad and Lacks Sufficient Particularity.**

The government argued that the search warrant was not overbroad or lacking particularity because of "the limitation on the search contained in the first sentence of Attachment B" (ECF # 104, *Response*, at 4, 5, 7, 9[1]) which stated:

> The following items and information related to the scheme and activities that are described and are the subject of the affidavit in support of this warrant (which affidavit is incorporated by reference herein), which items constitute evidence and/or instrumentalities of ***violations of Title 18, United States Code, Sections 371, 1341, 1343, 1956, 1957and* 2**, and the following items relating to the electronic storage, access and retrieval of such items ...

ECF # 104-1 at 5 and ECF # 104-2 at 42 and 46 (emphasis added). The government

[1] Citations to the record are to the ECF document numbers and ECF pages.

Case 1:17-cr-00008-WJM Document 111 Filed 06/08/18 Page 2 of 9

argued that this language was equivalent to the sufficiently particular language in *United States v. Christie*, 717 F.3d 1156, 1165 (10th Cir.2013) ("information relating to the murder, neglect, and abuse ...") and *United States v. Brooks*, 427 F.3d 1246, 1252 10th Cir.(2005) ("[t]he warrant authorized officers to search two computers and a number of disks 'for evidence of child pornography'"). *See also*, *United States v. Campos*, 221 F.3d 1143, 1147 (10th Cir.2000) ("the warrant was directed at items relating to child pornography. It authorized the agents to seize computer equipment 'which may be, or [is] used to visually depict child pornography...'") and *Davis v. Gracey*, 111 F.3d 1472, 1479 (10th Cir.1997) ("[t]he warrant here was confined to that equipment 'pertaining to the distribution or display of pornographic material'").

However, there is a significant difference between the language in Mr. Jean-Pierre's case and the language in *Christie*, *Brooks*, *Campos* and *Davis*; the language in those cases specifically referred to the crimes themselves (such as "murder, neglect, and abuse") and, thus, the specific references to the specific crimes made those warrants sufficient. On the other hand, the "first sentence" in Mr. Jean-Pierre's case generically listed to the general statutes ("Title 18, United States Code, Sections 371, 1341, 1343, 1956, 1957 and 2"), and thus, the "unadorned reference to [ ] broad federal statute[s]" did "not sufficiently limit the scope" of the search warrant and, thus, made the warrant in Mr. Jean-Pierre's case unacceptable. *See Davis v. Gracey*, 111 F.3d 1472, 1479 (10th Cir.1997) ("[w]e have also held that an "***unadorned reference to a broad federal statute*** does not sufficiently limit the scope of a search warrant." *Leary,* 846 F.2d at 602 ...;" emphasis added). The Tenth Circuit also noted:

Case 1:17-cr-00008-WJM Document 111-2 Filed 06/08/18 Page 3 of 9

Moreover, a series of decisions from other circuits have held that reference to a broad federal statute is not a sufficient limitation on a search warrant. For example, in *Roche v. United States*, 614 F.2d 6, 7 (1st Cir.1980) the warrant authorized the seizure of books, records and documents "which are evidence, fruits, and instrumentalities of the violation of Title 18, United States Code Section 1341 [mail fraud]." The court found this limitation to be "no limitation at all." *Id.* at 8. The Ninth Circuit has consistently applied the same rule. In *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir.1982), "[t]he only limitation on the search and seizure of appellants' business papers was the requirement that they be the instrumentality or evidence of violation of the general tax evasion statute, 26 U.S.C. § 7201. That is not enough." The court's reasoning in *Cardwell* is equally applicable here:

> " '[L]imiting' the search to only records that are evidence of the violation of a certain statute is generally not enough.... If items that are illegal, fraudulent, or evidence of illegality are sought, the warrant must contain some guidelines to aid the determination of what may or may not be seized."
> *Id.* at 78.

*United States v. Leary*, 846 F.2d 592, 601-602 (10th Cir.1988).

The particularity requirement is especially important in computer searches. *See Christie*, 717 F.3d at 1164 ("[i]n today's world, if any place or thing is especially vulnerable to a worrisome exploratory rummaging by the government, it may be our personal computers"). Furthermore, "[o]ur case law ... suggests that warrants for computer searches must affirmatively limit the search to evidence of ***specific federal crimes*** or specific types of material." *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir.2005) (emphasis added). "'As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized.' [*Leary*] at 602." *Davis v. Gracey*, 111 F.3d at 1478. Here, the general, unadorned references to 18 U.S.C. §§ 371, 1341, 1343, 1956, 1957 and 2 was not enough.[2] In fact, the specific reference to 18 U.S.C.

[2] *But see*, *Riccardi*, 405 F.3d at 863 n. 1 ("[w]here the warrant itself is insufficiently specific regarding the items to be searched and seized, this Court has held that the

Case 1:17-cr-00008-WJM Document 111 Filed 06/08/18 USDC Colorado Page 4 of 9

§ 371 greatly expanded the limits of the search by authorizing a "worrisome exploratory rummaging by the government" to look for a broad scope of evidence of a conspiracy alleged in the Affidavit to have taken place in 2010 to 2014, but for which the Affidavit did not supply probable cause to believe evidence of this conspiracy would be found on the laptop. Thus, the warrant placed no limit on the search and expanded it into a general search that permitted the government to look for evidence of a conspiracy crime when that search was not authorized by the scope of the warrant.

**2. There Was No Nexus Between Many of the Items *to Be* Seized and the Crimes for Which the *Application* Alleged There Was Probable Cause.**

The government argued that the "nexus" issue "should be rejected on its face for lack of specificity" because Mr. Jean-Pierre did not specify which "***seized items***" lacked a nexus to the alleged crimes. (ECF # 104 at 9-10.) Mr. Jean-Pierre erroneously used the words " between many of the ***items seized*** ..." (ECF # 91 at 9 and 11; emphasis added) in his motion. The omission of the words "***to be***" in describing the items was a mistake; Mr. Jean-Pierre is not challenging the nexus between the items actually seized and the warrant, but rather is challenging the warrant on its face because the warrant lacked a nexus between the items which were ***authorized to be seized*** and the description of the unlawful activity in the affidavit. In fact, Mr. Jean-Pierre argued in his motion and used language indicating that the issue was the nexus "between some of the items ***to be*** seized

---

affidavit in support of the warrant can cure the want of specificity ..."). However, "an affidavit can be used to demonstrate that a warrant is not constitutionally invalid for lack of particularity ***when the same officer produces the affidavit and executes the warrant***..." *United States v. Ortega-Jimenez*, 232 F.3d 1325, 1329 (10th Cir.2000) (emphasis added). In Mr. Jean-Pierre's case, the officer who produced the affidavit was not the same person who executed the warrant.

Case 1:17-cr-00008-WJM Document 111 Filed 06/08/18 Page 5 of 9

...” (ECF # 91 at 11)[3] ( not the items actually seized) and the unlawful activity. Thus, Mr. Jean-Pierre’s argument is that the warrant and the affidavit failed to establish a nexus between the generically described items set forth in Exhibit B (ECF # 104-1 at 6 and ECF # 104-2 at 47) ***to be*** seized and the alleged crimes.[4] In particular, paragraphs 10-13 generically set forth a number items which were then supposed to be related to the unadorned references to 18 U.S.C. §§ 371, 1341, 1343, 1956, 1957 and 2. This was not sufficient.

**3. There Was No Probable Cause to Believe that the Laptop Contained Evidence of an Alleged 2-to-6 Year Old Conspiracy.**

Although the affidavit may, as the government claimed, be “replete with evidence of two or three individuals, including the defendant, committing a variety of offenses relating to the issuance of stock for FusionPharm in the early portions of this decade” (ECF # 104 at 12), the affidavit lacked probable cause to believe that any evidence of this alleged 2010-2014 conspiracy would be found on the laptop in 2016. *See United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir.2005) (the affidavit lacked a “minimal nexus

---

[3] The government also recognized this to be part of Mr. Jean-Pierre’s argument when it stated: “[t]he defendant then cites numerous cases for the proposition that there must be some nexus between ***that which is authorized to be seized*** and the description of the unlawful activity in the affidavit.” (Emphasis added.) (ECF # 104 at 10.)

[4] The government several times complained that Mr. Jean-Pierre did not specify which specific seized items should be suppressed. (ECF # 104 at 1, 2, 5 and 12). Because Mr. Jean-Pierre is asking that ALL evidence seized from the laptop be suppressed, there is no need at this point to delineate specific items. Furthermore, because of the volume of the discovery and the difficulty in searching the material iin the discovery, it has been extremely difficult for the defense to discern exactly which evidence came from the laptop and which evidence came from other sources. Defense counsel did a search of the entire discovery and the terms “RMRCFL” (Rocky Mountain Regional Computer Forensics Laboratory) and “RCFL” came up twice relating to a 2014 search of the FusionPharm business premises; there does not appear to be any report generated by RMRCFL.

Case 1:17-cr-00008-WJM Document 111 Filed 06/08/18 Page 6 of 9

between the place to be searched and the suspected criminal activity"). Thus, the agents should not have been authorized to search the laptop for any evidence demonstrating the alleged 2-to-6 year old conspiracy regarding evidence which, according to the government, was "too numerous to describe." (ECF # 104 at 12.) The specific reference to 18 U.S.C. § 371, an alleged 2010–2014 conspiracy for which the Affidavit supplied no probable cause to believe any evidence of this conspiracy would be found on the laptop, expanded the search significantly into a general search which covered matters "too numerous to describe" and placed no limit on the search which permitted the rummaging through Mr. Jean-Pierre's laptop looking for any evidence of a conspiracy.

**4. The *Leon* "Good Faith" Exception Should Not Apply in this Case.**

The *Leon* "good faith" exception to the exclusionary rule applies only when the officers executing the search warrant acted "in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate judge that is ultimately deemed invalid." *United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir.2017) (citing *United States v. Leon*, 468 U.S. 897, 922 (1984). "The test is an objective one that asks 'whether a reasonably ***well trained officer*** would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Otero*, 563 F.3d 1127, 1134 (10th Cir.2009) (emphasis added) (quoting *Leon*, 468 U.S. at 922 n.23).

In Mr. Jean-Pierre's case, it was not objectively reasonable for the "officers" to rely on the search warrant because the warrant was so facially deficient that the RMRCFL employee who executed the warrant could not have, for several reasons, presumed it to have been valid. First, the person who executed the warrant was not the same person who

produced the Affidavit. According to the government, the RMRCFL employee who executed the search "was not associated with the investigation at all and only relied on the limitations he perceived as being contained within Attachment B, including the limiting first sentence." ECF # 104 at 13. Thus, the person executing the warrant could not have been presumed to have known what was set forth in the Affidavit. *See United States v. Ortega-Jimenez*, 232 F.3d 1325, 1329 (10th Cir.2000) (emphasis added) ("[b]ecause an affidavit can be used to demonstrate that a warrant is not constitutionally invalid for lack of particularity ***when the same officer produces the affidavit and executes the warrant***, an affidavit also may be used to clarify with 'practical accuracy' the meaning of a disputed term in a warrant ***when the same person is both affiant and executing officer***").

Second, it appears from the government's statement that the RMRCFL employee who executed the search not only did not produce the Affidavit, but did not even see it. According to the government, the RMRCFL employee saw only the warrant, Attachment A and Attachment B (ECF # 104-2), but did not see or review the Affidavit in support of the application for the warrant. If the RMRCFL employee who executed the search did not produce or see the Affidavit, he or she only had reference to the statutes (18 U.S.C. §§ 371, 1341, 1343, 1956, 1957 and 2) and not a statement of what the crimes themselves actually were. The RMRCFL employee has not been shown to be a "reasonably ***well trained officer***," has not been shown to have any legal background or training and has not been shown to have had any idea whatsoever what those statutes stood for. Without legal training or expertise, the RMRCFL employee could not have limited the scope of his or her search of the laptop based on this "unadorned reference to [these] broad federal

Case 1:17-cr-00008-WJM Document 111 Filed 06/08/18 Page 8 of 9

statute[s].” *Leary,* 846 F.2d at 602 quoted above.

Third, the warrant on its face lacked factual support (or probable cause) that any evidence of the alleged general § 371 conspiracy would be found on the laptop. This lack of factual support clearly shows that the RMRCFL employee, or a “reasonably well trained officer,” should have known that the search was illegal despite the magistrate’s authorization. This would also be true even if the RMRCFL employee had seen the Affidavit since it was clearly devoid of factual support to establish probable cause that anything regarding the 2010-2014 conspiracy would have been found on the laptop.

> An affidavit devoid of factual support is “one that merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.” *United States v. Roach*, 582 F.3d 1192, 1204-05 (10th Cir.2009).

*United States v. Chambers*, 882 F.3d 1305, 1311 (10th Cir.2018).

Thus, the good faith exception to the exclusionary rule should not apply.

WHEREFORE, Mr. Jean-Pierre requests that this Court suppress all evidence seized from the HP laptop pursuant to the illegal search warrant in this case which was made in violation of Mr. Jean-Pierre's Fourth Amendment constitutional rights.

DATED this 8th day of June, 2018.

Respectfully submitted,

*s/Clifford J. Barnard*

Clifford J. Barnard
Clifford J. Barnard, Attorney at Law
4450 Arapahoe Avenue, Suite 100
Boulder, Colorado 80303
Telephone: (303) 449-2543
Facsimile: (303) 444-6349
Email: *cliffbarnard@earthlink.net*
Attorney for Defendant Jean-Pierre

Case 1:17-cr-00008-WJM Document 111 Filed 06/08/18 Page 9 of 9

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of June, 2018, I electronically filed the foregoing *Defendant Jean-Pierre's Reply to Government's Response to Motion to Suppress Evidence Obtained from Search of HP Laptop* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

A.U.S.A. Jeremy Sibert *jeremy.sibert@usdoj.gov*

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Guy Jean-Pierre
Register # 78606-054
Independence House South
2765 S. Federal Blvd.
Denver, CO 80236

*Via U.S. Mail*

*s/Clifford J. Barnard*

Clifford J. Barnard
Attorney for Defendant Jean-Pierre

Case 1:17-cr-00008-WJM Document 112 Filed 06/15/18 Page 1 of 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.17-cr-00008-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE**,

Defendant.

---

**DEFENDANT JEAN-PIERRE'S RESPONSE TO THE GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS *JAMES* PROFFER**

---

THE DEFENDANT, GUY M. JEAN-PIERRE, by and through his attorneys, Clifford J. Barnard and Thomas E. Goodreid, hereby responds to the *Government's Memorandum in Support of its James Proffer* (ECF # 105),the *James* proffer (ECF # 105-1) and the "Quick Sheet for Purposes of Offering as a Conspirator" (ECF # 105-2) as follows:

**A. Purposes for the Offered Alleged Coconspirators' Statements**

Mr. Jean-Pierre objects to the use of the government's list of purposes set forth in its "Quick Sheet for Purposes of Offering as a Conspirator" (ECF # 105-2) and in its *James* log (ECF # 105-1); this list of purposes should not be considered. Rather, the Court should use the factors set out in *United States v. Perez*, 989 F.2d 1574 (10th Cir.1993) as the appropriate list of "purposes" for admitting coconspirators' statements. The *Perez* factors are:

a) statements made to induce enlistment or further participation in the group's activities;

Case 1:17-cr-00008-WJM Document 112 Filed 06/15/18 Page 2 of 11

b) statements made to prompt further action on the part of conspirators;

c) statements made to reassure members of a conspiracy's continued existence;

d) statements made to allay a co-conspirator's fears; and

e) statements made to keep co-conspirators abreast of an ongoing conspiracy's activities.

*Perez*, 989 F.2d at 1578 (quoting *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir.1991), *cert. denied*, 506 U.S. 835, 113 S.Ct. 107, 121 L.Ed.2d 65 (1992) (quotation marks omitted). This list specifically does ***not*** include "mere narratives, that is statements relating to past events, even those connected with the operation of the conspiracy where the statement serves no immediate or future conspiratorial purpose." *Perez*, 989 F.2d at 1578 (internal citations and quotation marks omitted).

The government's list should not be used because, first, many of the cases cited for the "purposes" given by government come from other circuits and were decided ***before*** *Perez* was decided and, second, a number of the cases do not support the propositions the government claims they support.

**1. Cases from Other Circuits Which Were Decided before *Perez*.**

The following cases cited by the government should not be considered for the following letters in the government's "Quick Sheet" because they come from other circuits and/or were decided before *Perez* was decided *en banc* on March 30, 1993 and reported in volume 989 of the Federal Report 2d:

(m) *United States v. Stratton*, ***779*** F.2d 820 (***2d Cir.1985***) (outline general history

of conspiracy);

(q) *United States v. Tarantino*, ***846*** F.2d 1384 (***D.C. Cir.1988***) (enhance conspirator's usefulness to conspiracy);

(r) *United States v. Monroe*, ***866*** F.2d 1357 (***11th Cir.1989***) and *United States. v. Turner*, ***871*** F.2d 1574 (***11th Cir.1989***) (explanation of conspiracy to members);

(s) *United States v. Paris*, ***827*** F.2d 395 (***9th Cir.1987***) (set in motion acts);

(t) *United States v. Esacove*, ***943*** F.2d 3 (***5th Cir.1991***) (indicating payments or demands); and

(u) *United States v. Meeks*, ***857*** F.2d 1201 (***8th Cir.1988***) (collection of debts).

These cases are not precedent in the Tenth Circuit and many of them are not consistent with Tenth Circuit cases. *See United States v. Yurek*, 2017 WL 2834544, *8, n.10 (D. Colo.2017) ("The Court finds the Government's argument does not properly reflect the law in the Tenth Circuit. Many of the cases cited are from other circuits, and most precede *Perez*, in which the Tenth Circuit directly addressed the scope of this analysis *en banc*, stating the requirement should be applied narrowly and in a manner that is protective of defendants. In the Court's view, the sweeping application of this analysis proposed by the Government is contrary to spirit and intent of *Perez* The factors presented by the Tenth Circuit in *Perez* should be used').

**2. Cases Which Do Not Support the Propositions the Government Claims They Support.**

The government's list should not be used because, as listed below for the specified government "purpose," the cases cited by the government do not mandate the propositions

Case 1:17-cr-00008-WJM Document 112 Filed 06/15/18 Page 4 of 11

the government claims they support.

(b) ("Statements which reveal existence of a conspiracy ...") *United States v. Garcia*, 994 F.2d 1499, 1505 (10th Cir.1993) stands for the proposition that statements about a person's membership in the conspiracy may properly be admitted under Rule 801(d)(2)(e), but does not stand for the proposition that statements which reveal the existence of a conspiracy are statements made in furtherance of that conspiracy such that they are admissible under Rule 801(d)(2)(e).

(h) ("Statements which are intended to assure the listener of a conspirator's ability to consummate a particular transaction ...") *United States v. Rutland*, 705 F.3d 1238, 1252 (10th Cir.2013) states, in relevant part, that the Tenth Circuit has "found the following sorts of statements to be in furtherance of a conspiracy: (1) statements explaining events of importance to the conspiracy ... (2) 'statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy,' ... (3) statements identifying a fellow coconspirator ... and (4) discussions of future intent 'that set transactions to the conspiracy in motion' or that maintain the flow of information among conspiracy members ..." *Rutland* does not say, however, that "statements which are intended to assure the listener of a conspirator's ability to consummate a particular transaction" are statements in furtherance of a conspiracy.

(j) ("Statements which are intended to control damage to the conspiracy that

Case 1:17-cr-00008-WJM Document 112 Filed 06/15/18 USDC Colorado Page 5 of 11

are made during the course of the conspiracy ...") Mr. Jean-Pierre respectfully disagrees that the statement in *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir.2017), *cert. denied*, 138 S. Ct. 1306, 200 L. Ed. 2d 505 (2018) that "[w]hen a conspiracy is ongoing, statements that relate to 'avoiding detection by law enforcement personnel' can be in furtherance of the conspiracy" is authority to the broader concept that "statements which are intended to control damage to the conspiracy that are made during the course of the conspiracy" are necessarily in furtherance of that conspiracy. Mr. Jean-Pierre acknowledges that the unpublished district court opinion in *United States v. Griggs* cited by the government does explicitly adopt this latter idea, but notes that decisions of other district court judges are not binding upon this Court and urges that this Court not adopt this arguably unduly expansive reading of Tenth Circuit precedents.

(k) ("Statements which prompt the listener to respond in a way that facilitates carrying out the activities of the conspiracy") *Perez*, 989 F.2d at 1578, does not stand for this proposition. To the contrary, *Perez* says that "[w]hen inquiring whether a statement was made 'in furtherance of' a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement." *Id*.

**B. Objections to the Proffered Alleged Coconspirators' Statements.**

Mr. Jean-Pierre objects to the government's proffered alleged coconspirators statements on a number of grounds and has listed these grounds by the following

Case 1:17-cr-00008-WJM Document 112 Filed 06/15/18 Page 6 of 11

applicable numbers in the *James* log in the far right column entitled "Objections to Statement." These objections are as follows:[1]

1. Mr. Jean-Pierre was not a member of the alleged conspiracy.

2. The declarant listed in the government's *James* log was not an alleged coconspirator.

3. This statement is inadmissible because it was not made in furtherance of the conspiracy.

4. The "statement' set forth by the government is not a statement.

5 No such statement was made by this declarant at the source referenced by the government in its *James* log.

6. The defense cannot locate the source document in the discovery supplied by the government.

Stated in greater detail, Mr. Jean-Pierre objects to the government's proffered statements as inadmissible as Federal Rules of Evidence 801(d)(2)(E) statements for the following reasons:

**1. Mr. Jean-Pierre Was Not a Member of the Alleged Conspiracy.**

Mr. Jean-Pierre contends that he was not a member of the alleged conspiracy. If Mr. Jean-Pierre was not a member of the alleged conspiracy, any alleged coconspirators' statements are not admissible against him:

> Before admitting statements into evidence under the coconspirator exception to the hearsay rule, the district court must determine by a preponderance of the evidence that (1) a conspiracy existed, (2) ***the declarant and the defendant were both members of the conspiracy***, and (3) the statements were made in the course of and in furtherance of the conspiracy. *See United States v. Morgan*, 748 F.3d 1024, 1036 (10th Cir. 2014).

---

[1] A list of these objections entitled "Defendant Jean-Pierre's Objections to the Government's Proffered Alleged Coconspirators' Statements" is filed as a separate document accompanying this response.

Case 1:17-cr-00008-WJM Document 112 Filed 06/15/18 Page 7 of 11

*United States v. Alcorta*, 853 F.3d at 1137 (emphasis added).

**2. The Declarant Listed in the Government's *James* Log Was Not an Alleged Coconspirator.**

Several declarants listed by the government in its *James* log are not alleged coconspirators and, thus, their statements are not admissible pursuant to Rule 801(d)(2)(E). Rule 801(d)(2)(E) says that a statement is not hearsay if it "***was made by a party's coconspirator*** during and in furtherance of the conspiracy." (Emphasis added.) *See also*, *United States v. Alcorta*, 853 F.3d at 1137 as quoted above. In its memorandum in support of its *James* log, the government listed the following individuals as alleged coconspirators: Guy Jean-Pierre, William Sears, Scott Dittman, Cliff Bodden, Tod DiTommaso and Richard Scholz. (ECF # 105 at 8.) The following 47 statements listed in the government's log with the following listed declarants should not be admitted pursuant to Rule 801(d)(2)(E) because they are not statements made by alleged coconspirators:

a) statements 1-6 allegedly made by declarant "Todd Abbott;"

b) statements 26-29, 31-32, 34, 41 and 313 allegedly made by declarant "Andy Duke;"

c) statement 81 allegedly made by declarant "Wayne Coleson;"

d) statements 39, 83 and 198 allegedly made by declarant "Robert Dittman;"

e) statements 112-116, 151 (part of this statement), 217, 236, 272, 280, 284-285 and 401 (part of this statement) allegedly made by declarant "Sandra Sears;"

f) statements 208, 210-211, 213-214, 229, 387 and 397 allegedly made by declarant "Mike Kocinski;"

g) statement 246 allegedly made by declarant "Gino Rodrigues;"

h) statements 276 and 382 allegedly made by declarant "Kelly Blume;"

I) statement 277 (part of this statement) allegedly made by declarant “Shane Bohlender;” and

j) statements 287-288 allegedly made by declarant “Joanna DiBella.”

**3. Many of the Government’s “Statements” Were Inadmissible Because They Were Not Made “in Furtherance of the Conspiracy.”**

To be admissible as a conspirator’s statement, the statement had to be made “during and in furtherance of the conspiracy.” Rule 801(d)(2)(E) (a statement is not hearsay if it “was made by a party’s coconspirator ***during and in furtherance of the conspiracy***;” (emphasis added)). Many of the proffered statements do not further the conspiracy. Many of the statements are “mere narratives” relating to past events and do not further the conspiracy. Furthermore, many of the government’s claimed "statements" in its *James* log were not statements made “during” the conspiracy; they were made to law enforcement officers in after-the-fact interviews during debriefings or proffers conducted well ***after*** the end-date (May 15, 2014) of the alleged conspiracy. Thus, these statements were not coconspirator’s statements at all as defined by Rule 801(d)(2)(E). A statement by a coconspirator to law enforcement during a debriefing or proffer after the conspiracy has ended is not a statement made “in furtherance of the conspiracy” and therefore is not admissible under Rule 801(d)(2)(E).

**4. Many of the Government’s “Statements” Were Not Statements.**

Many of the government’s “statements” were not statements at all; rather, they merely set forth narratives of something that the government is alleging to have happened. An example of such a "statement" is # 120 of the government’s *James* log which sets forth the following "statement" (taken from a William Sears interview with the F.B.I. on February

Case 1:17-cr-00008-WJM Document 112 Filed 06/15/18 Page 9 of 11

18, 2016):

> "They were all handshake deals between Dittman and Sears that were not documented."

Such narrative statements were not coconspirator statements and are not admissible under Rule 801(d)(2)(E).

**5. No Such Statement Was Made by this Declarant at the Source Referenced by the Government in its *James* Log.**

In its *James* log (ECF # 105-1), the government listed "statements" and the Bates-stamped locations where the statements were supposedly found in the discovery. Some of the statements were not found at the location cited by the government. Mr. Jean-Pierre therefore objects to the admissibility of statements in this category until and unless the defense can examine the context in which they were supposedly made.

**6. The Defense Cannot Locate the Source Document in the Discovery Supplied by the Government.**

After extensively and repeatedly making searches of the discovery supplied by the government, the defense has not been able to locate the government's cited source document in the discovery and, thus, has been unable to review the proffered statement in context in order to analyze whether it does or does not qualify as a coconspirator statement under Rule 801(d)(2)(E).

WHEREFORE, Mr. Jean-Pierre requests that the Court use the "purposes" set forth in *Perez* to analyze the *James* log statements and, based on the above-listed objections and the objections set forth in the accompanying *James* log, Mr. Jean-Pierre requests that this Court not admit any of the government's proffered statements pursuant to Rule

Case 1:17-cr-00008-WJM Document 112 Filed 06/15/18 Page 10 of 11

801(d)(2)(E).

DATED this 15th day of June, 2018.

Respectfully submitted,

*s/Clifford J. Barnard*

Clifford J. Barnard
Clifford J. Barnard, Attorney at Law
4450 Arapahoe Avenue, Suite 100
Boulder, Colorado 80303
Telephone: (303) 449-2543
Facsimile: (303) 444-6349
Email: *cliffbarnard@earthlink.net*
Attorney for Defendant Jean-Pierre

*s/Thomas E. Goodreid*

Thomas E. Goodreid
Thomas E. Goodreid, Attorney at Law
1801 Broadway, Suite 1400
Denverr, Colorado 80202
Telephone: (303) 296-2048x. 136
Email: *t.goodreid@comcast.com*
Attorney for Defendant Jean-Pierre

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of June, 2018, I electronically filed the foregoing *Defendant Jean-Pierre's Response to the Government's Memorandum in Support of its James Proffer* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

A.U.S.A. Jeremy Sibert *jeremy.sibert@usdoj.gov*

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-

Case 1:17-cr-00008-WJM Document 112 Filed 06/15/18 Page 11 of 11

participant's name:

Guy Jean-Pierre
Register # 78606-054
Independence House South
2765 S. Federal Blvd.
Denver, CO 80236

*Via U.S. Mail*

*s/Clifford J. Barnard*

Clifford J. Barnard
Attorney for Defendant Jean-Pierre

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 1 of 52

Criminal Case No. 17-cr-00008-WJM
UNITED STATES v. GUY M. JEAN-PIERRE

| | Statement | Declarant | Date | Source (Bates Numbers) | Basis for Admission | Objections to Statement |
|---|---|---|---|---|---|---|
| 1 | Scott Dittman and William Sears operated FusionPharm and that they did not appear to work for anyone. | Todd Abbott | 2011 - 2012 | INV_00002972 | e, m | 1, 2 |
| 2 | Abbott does not recall selling shares of FusionPharm to Microcap and/or William "Bill" Sears on or about September 11, 2011, for $40,000.00. Abbott has never received $40,000.00 from Sears. | Todd Abbott | 2011 - 2012 | INV_00002972 | e, m | 1, 2 |
| 3 | Abbot always understood that Dittman and Sears were partnered in Fusion Pharm, Inc | Todd Abbott | 2011 - 2012 | INV_00002975 | b, d, g, l, m | 1,2 |
| 4 | Abbott advised that he would have followed the instructions provided by Scott Dittman in the email dated September 14, 2011, in order to get free trading shares | Todd Abbott | 2011 - 2012 | INV_00002976 | a, d, e, p, n, p, s | 1,2 |
| 5 | trusted Scott Dittman's instructions. He understood that completing the document was all part of the process for Abbott to get shares of FusionPharm that he could sell. Abott advised that the majority of his comunications with Dittman were via email, but that Dittman stopped by Abbott's house on at least two to three occasions for face-to-face meetings. | Todd Abbott | 2011-2012 | INV_00002976 | a, d, e, p, n, p, s, v | 1, 2 |
| 6 | Through R. Dittman, Abbott learned that S. Dittman and Sears needed additional financial support for a pending business deal associated with Fusion Pharm, Inc. | Todd Abbott | 2011 - 2012 | INV_00002976 | a, d, e, p, n, p, s, v | 1,2 |
| 7 | Sears proposed using his mother to be listed as the secretary for FusionPharm and have her sign the stock certificate. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, d, e, p, n, p, s, v | 1, 3 |
| 8 | Sears and Jean-Pierre advised Dittman to put 185,000 preferred shares of FusionPharm in Robert Dittman's name. Robert Dittman understood that he was going to be holding the shares and that Scott Dittman would contact him if he needed to sell shares to raise capital for FusionPharm. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 2, 3, 4 |
| 9 | Sears suggested to release press statements when FusionPharm completed something | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 10 | The April, 2011, 200-1 reverse stock split for FusionPharm's common shares was suggested to Dittman by Sears and Jean-Pierre. The purpose of the split was to increase Dittman's ownership interest in FusionPharm. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 08/15/18 Page 2 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 11 | Sears and Jean-Pierre discussed adding the convertible feature to the note. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 12 | Dittman spoke with Sears and Jean-Pierre about Sears' role with FusionPharm. Dittman did not want to list Sears as an officer of FusionPharm because he would have had to disclose Sears' felony conviction. Dittman described disclosing Sears as "suicide" for FusionPharm. | Scott Dittman | 2011-2013 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s,v | 1, 3, 4 |
| 13 | Dittman had several conversations with Jean-Pierre on the subject of Sears' role with FusionPharm and the concept of "affiliate". Jean-Pierre was aware that Sears was involved with FusionPharm's stock, sales, communication with FusionPharm's accountant and performed administrative tasks for FusionPharm. | Scott Dittman | fall of 2010 - | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 |
| 14 | Dittman discussed with Jean-Pierre that Sears was selling FusionPharm stock and provided proceeds from the sale of the stock back to FusionPharm in the form of loans in 2011. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 15 | Dittman stated that he sent this email to a lot of people with the title "FusionPharm" | Scott Dittman | Apr-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 16 | DiTommaso asked if all the required information had been posted, but did not ask any further questions regarding OTC posting for FusionPharm and conversation with Scott Dittman. | Scott Dittman | 2011-2013 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 17 | DiTommaso and Dittman discussed Dittman's background, the nature of FusionPharm's business, their plans for raising capital and Sear's being Dittman's brother-in-law and his criminal history | Scott Dittman | Jul-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 18 | Dittman spoke to Jean-Pierre about the FINRA investigation and was nervous | Scott Dittman | Oct-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 |
| 19 | Sears told Dittman about his arrangment with Scholz early in 2011 and that Sears wanted to get out of advertising and the Microcap Management Letter | Scott Dittman | Early 2011 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 20 | Sears always had the idea that assets from all the companies to include FusionPharm and Meadpoint would merge together. | Scott Dittman | Oct-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 21 | Dittman told Bohlender that he had discussed the loans with Jean Pierre and Jean Pierre said that it was not a problem. | Scott Dittman | October, 2011 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 3 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 22 | called Dittman on his cellular telephone on October 5, 2011. Dittman contacted Sears and Jean-Pierre again shortly after speaking with Kramer on October 6, 2011 and provided them with an update about the discussion. Jean-Pierre was aware that Sears and Scholz were selling Sears' FusionPharm stock that Sears acquired from Fred Dahlman. | Scott Dittman | Oct-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, o | 1, 3, 4 |
| 23 | Between approximately October 27, 2011 and October 30, 2011, Dittman, Sears and Jean-Pierre had a call to discuss the FINRA inquiry. Jean-Pierre and Sears told Dittman that there was an agreement illustrating the transfer of Microcap Management to Scholz. Dittman told Jean-Pierre that Todd Kramer at FINRA wanted to see the document. Jean-Pierre told Dittman that Dittman cannot send the agreement to FINRA because FINRA should not be asking Dittman for non-company information. Jean-Pierre told Dittman that he would write a letter to FINRA explaining that FusionPharm would not provide a copy of the agreement transferring ownership of Microcap. | Scott Dittman | Oct-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3 |
| 24 | Dittman spoke with Jean-Pierre about the inquiry by FINRA and the investigator questions about Sears' sales of FusionPharm stock. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 |
| 25 | Jean-Pierre, Sears and Dittman discussed the 2011 loans when Jean-Pierre visited FusionPharm in October, 2011. They did not discuss breaking the funds into two separate loans. The loans were not documented until June, 2012, when Bodden drafted them as non-convertible loans. | Scott Dittman | 2011-2012 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 26 | FusionPharm was in a "capital crisis " the entire time that Andy Duke worked there. | Andy Duke | 2011 | GJP_00001759 (Andy Duke - 302 Report) | e, m | 1, 2 |
| 27 | Duke said that Sears was a "Don't see him Don't know him" consultant. Sears was not supposed to be associated with the company and could not operate in an official capacity because of his problems with the SEC in the past. | Andy Duke | 2011 | GJP_INV_000027 82 | a, b, d, e, f, i, k, n, p, r, s, v | 1, 2 |
| 28 | Jean-Pierre was a "securities counsel ace" to Sears. | Andy Duke | 2011 | GJP_00001759 (Andy Duke - 302 Report) | e, m, d | 1, 2 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 4 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **29** | Jean-Pierre knew that he was supposed to discuss legal matters with Dittman as FusionPharm's Chief Executive Officer. Dittman was looking to Sears for how to handle legal matters and so, therefore, Jean-Pierre worked directly with Sears. | Andy Duke | 2011 | GJP_00001759 (Andy Duke - 302 Report) | a, b, d, e, f, i, k, n, p, r, s | 1, 2 |
| **30** | Sears talked about Jean-Pierre advising that Sears had to be invisible with respect to FusionPharm. | William Sears | 2011 | GJP_00001759 (Andy Duke - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 4 |
| **31** | disputing some legal fees that Sears owed Jean-Pierre for work Jean-Pierre did for FusionPharm. Duke felt that Jean-Pierre was throwing Sears "under the bus" as well as Dittman (by his association with Sears) because of the fee dispute. | Andy Duke | 2011 | GJP_00001759 (Andy Duke - 302 Report) | a, b, d, e, f, i, k, n, p, r, s | 1, 2 |
| **32** | Scott Dittman gave Duke the title of Executive Vice President. | Andy Duke | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 2 |
| **33** | Scott Dittman told Duke that he needed someone to be 'the signature' in place of William Sears because Sears was 'not a real person' in FusionPharm. | Scott Dittman | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1 |
| **34** | Duke later found out that Sears was pushing the sale of FusionPharm stock. | Andy Duke | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 2 |
| **35** | Duke met with Scott Dittman and Sears at the FusionPharm Wynkoop office shortly after they started their lease of the office space. The pitch to Duke was that FusionPharm was up and coming in the marijuana industry because of the unique technology they were developing with the container growing system. The selling point was that the containers were self-contained and secure. They wanted to get a patent on the technology. | Scott Dittman/William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, h ,m | 1, 3, 4 |
| **36** | Scott Dittman and Sears told Duke that Sears was to be 'behind the curtain' because Sears had issues with the securities regulators. | Scott Dittman/William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, v | 1 |
| **37** | Duke overheard Sears talk about selling off blocks of FusionPharm stock about five to six times throughout the course of Duke's employment. | William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **38** | Jean-Pierre was "the key" according to Sears. Jean-Pierre was to work his legal magic to help get FusionPharm stock sold in order to raise money for FusionPharm to operate. | William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 |
| **39** | Bob Dittman told Duke that Robert Dittman, the brother of Scott Dittman, had a lot of FusionPharm stock in his name that Sears controlled and was selling. | Bob Dittman | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s | 1, 2 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **40** | Duke recalled hearing Sears at times mention that he was 'waiting' to get something from Jean-Pierre or that he will 'have to see' what Jean-Pierre thought. | William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **41** | and dated October 20, 2011 (Bates #: SWFBI_00025095). Duke stated that Scott Dittman copied Sears on the email without understanding that by doing so, Scott Dittman was creating a paper trail of Sears' involvement with FusionPharm. | Andy Duke | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, q | 1, 2 |
| **42** | Well what happened was, we took this spot down in September of last year and by December 1st we realized we needed this… because that was not going to be big enough for all of a sudden, it was just like a perfect storm. Uh, we had been marketing, marketing, marketing and finally a lot of the deals just started (clap of hands) dropping and before we knew it we were like there's no way we're going to be able to fulfill back there. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, c, g, m | 1, 3 |
| **43** | and Scott's got this…passion, you know, he lives on a hobby farm, and I get you want to feed the world man, but, you know, public company and weed is hot and.. feeding people you can do after we medicate them. I get it, it's just, it really is the sweet spot. And he had to make a decision and it broke his heart to make that decision……to just stick with cannabis and he's still leaning toward produce heavily. And I get it, I think it's great, but, you know, we've got to jump on this now. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **44** | And, you know, for a couple of meatballs like us, so to speak, to put all this together and then we have, you know, we've got Greg here full time, he's a journeyman electrician, I mean, he built ty-you know, power plants for Tyson (PH). Um, now we've got Kyle (PH), we've actually got some real educated engineers and people to help us refine this. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, g, m | 1, 3 |
| **45** | You know, it's kinda-it comes in, in comes in droves because what happens is your average order is, you know, anywhere from six to ten pods. Nobody just buys just one pod anymore. I've sold one and two's here and there in California… | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, g, m | 1, 3 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 46 | This is a big pie and we're aggressive. We're really aggressive. And that's what I think we…that's where I think we have the edge on anybody else out there. One, we've been in the business. We know everybody. We're hungry. I mean, we're-we're out there. Yeah, we're hungry, and we're hungry, we're well wired……and there's no ego, you know? We've always done the right thing by everybody in this industry. We have paid bills that weren't ours just to keep our name clean. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, g, m, | 1, 3 |
| 47 | I'm the hand up Mona Lisa's skirt, we leave it at that. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, g, m, v | 1, 3 |
| 48 | Well, yeah, I mean, that's the great part about Scott and I do, it's… you know, nobody ever steps on the other guy, it's, everybody's got their own niche, their own area of expertise. We just go after it, you know, it's just, there's plenty of money out there, let's go get it. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 |
| 49 | I-you know, I told Scott and this is where it's kind-of…. I said this thing's going to get bigger than us and we're going to have to take a big step aside, it's, (UI) a lot smarter guys to run this company. It's bigger-it's just bigger than us, there's no ego here. You know, we're going to need a proper, you know I mean Scott's great, we're going to need a proper CEO that has very very long arms to run Fusion Pharm one day. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 |
| 50 | I love what I do, guys. and I get up every morning, I love this business, I really do. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **51** | You know, why cheapen yourself? Why-why degrade, oh, you guys don't put out press releases, you don't do this, you have to inform the public. Here's the deal, man. The company will take care of the stock. The day you have to worry about the stock taking care of the company, you've got bigger problems. Do your business. Do your business and the stock will always, always.. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 |
| **52** | I just, I… we started this in…you know…it's…..just an idea, and this is where we are in just a short period of time and… It feels fantastic and, you know, that's what the thing is, it's just been … seven days a week, 12 hours a day it's… …you know, thank god I have an understanding wife… I gotta tell ya, otherwise I'd be divorced… | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 |
| **53** | The reason Billy's never been in Fusion Pharm is because Billy has a felony on his background, right. And so- I couldn't let him in Fusion Pharm, you know I don't have to disclose | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, m, v | 1, 3 |
| **54** | Well, he got caught on a-on a phone call-on a wire tap that he was on while they were wire tapping two other guys, and he was in on the call, and these guys were doing some sort of price fixing market manipulation stock stuff. And Billy-Billy--Wasn't involved, but he was on the call, so he got a-he got a conspiracy charge that plead to. Um, you know. About fifteen thousand dollar fine. Whatever. But enough that I could never let him in to this entity, you know. | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3 |
| **55** | Yeah, well you know-you know, the-the irony of the whole thing is, you know. I mean Bill was Meadpoint, you know, from the time we started this company until a month, two months ago, Bill was Meadpoint. So he was my sales arm and did all the sales. Hell, he owns in that sale center, he owns the two containers and the scaffolding, and all that shit, right. | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, g | 1, 3 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **56** | Plus he was the first investor in the company. Listen, there would be no company if it wasn't for Bill. I just couldn't have him in the company, right. | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 |
| **57** | Um, but you know, the irony is after three years and all that investment and everything that he did for the company, he finally, you know, got paid. Rather handsomely uh when he sold all that stock in the first part of this year. Um and then all of this happens and he gets blown up. | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, m, v | 1, 3 |
| **58** | There's no question, right. Um…you know. But-so we paid off his debt, and we cancelled his agreement in April um, you know, because we decided-attorneys finally said, "Oh, fuck it. You know, everybody else is doing it, and there's safer now, so you don't really need to keep up this silly relationship, just let Meadpoint go and sell direct." Whatever, you know. And it, you know, listen. There's a commission, you know, we pay a pretty heavy commission for doing this, so it's better for my share holders that we just do it direct, and the attorneys finally said, "Eh, whatever. You know, everybody's doing it and the DOJ memo vocabulary makes us feel better so go ahead and kill that," you know, so basically, you know, I paid off Bill's note, took his job away and then, you know, the government came in and blew everything | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, m, v | 1, 3 |
| **59** | Scholz first heard of Guy Jean-Pierre through William Sears. Sears and Jean-Pierre worked together before FusionPharm. | William Sears | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | d, e, m | 1, 3, 4 |
| **60** | Sears hired Jean-Pierre to create legal documents relating to stock to include FusionPharm. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, g, h | 1, 3, 4 |
| **61** | Scholz said that Jean-Pierre's role with FusionPharm was to write the Opinion Letters. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, q h, v | 1, 3 |
| **62** | broker so that Scholz could promote FusionPharm's stock and they could share in the proceeds. The stock belonged to Sears. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, q | 1, 3, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 9 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **63** | Sears indicated to Scholz that Jean-Pierre was aware that Scholz was promoting the stock and getting paid with a percentage of the stock proceeds. Sears indicated to Scholz that Jean-Pierre was aware of all FusionPharm stock sales that Scholz and Sears were attempting to conduct. | William Sears | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, q | 1, 3 |
| **64** | Scholz said that Myron Thaden received an Opinion Letter from Jean-Pierre related to his first lot of FusionPharm shares. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, c, m | 1, 3, 6 |
| **65** | Scholz told Thaden to e-mail Jean-Pierre to get the required Opinion Letter to remove the restrictive legend. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, c, m | 1, 3 |
| **66** | Sears' and Scholz's agreement was to transfer Microcap to Scholz on paper but for Sears to continue to maintain control of Microcap. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, c, m | 1, 3, 4 |
| **67** | Richard Scholz started working with Sears in approximately March, 2011. Sears asked Richard Scholz to help promote FusionPharm's stock. | William Sears | 2011 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, c, m | 1, 3, 4 |
| **68** | Sears provided Richard Scholz with FusionPharm's financial statements, business plans, offering documents and other company reports. Richard Scholz spoke with both Dittman and Sears about what was in the financial statements to identify what would be important to the brokers. Richard Scholz can specifically recall discussing the increases in revenue reported in the financial statements as well as the Vertifresh Licensing Agreement and corresponding press release with Sears and Dittman. | Scott Dittman/William Sears | 2011 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |
| **69** | Occasionally, brokers wanted additional information about FusionPharm. Richard Scholz reached out to Sears with these brokers' contact information so that Sears could have Dittman follow up on the brokers' question. | Richard Scholz | 2011 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |
| **70** | Sears transferred 80,000 shares of FusionPharm stock to Richard Scholz' company, Prestige Media, in April, 2011, Sears did not want the FusionPharm shares in his name. He wanted Richard Scholz to sell the stock and then provide him with a percentage of the proceeds from the stock sales. | William Sears | 2011 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m, v | 1, 3, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 10 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 71 | up an employer identification number (EIN) for Microcap Management in the state of Nevada. Around the spring of 2011, I had discussions with Sears to put my name on the Microcap entity in order to hide Sears's affiliation with Microcap. Sears maintained control of all of Microcap Management throughout 2011, 2012 and 2013, including all FusionPharm stock being held under Microcap and Microcap brokerage accounts, despite my name being on some of the business documents. Microcap was Sears' company. | William Sears | 2011 - 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |
| 72 | In June, 2012, Sears asked me to set up and deposit FusionPharm shares at Moors and Cabot with Scott Eisler. Although the letter drafted by Sears to Moors and Cabot on June 18, 2012, included my name and address, Sears was still controlling Microcap and the stock in Microcap's name. | William Sears | 2012 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, l, m, t | 1, 3, 4 |
| 73 | Around February 7, 2013, Sears sent his Mother and me an email titled "Scottsdale". Sears wanted me to provide trading instructions to his Mother so that she could initiate the trades in the Bayside account on his behalf. I contacted Sears by phone after receiving the email and told him that I was not comfortable with the arrangement. I felt that this arrangement would be illegal since the stock was actually owned and controlled by Sears, and not his Mother. | William Sears | 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 |
| 74 | When Dittman moved from Colorado to Pennsylvania in 2013, Sears was on site at FusionPharm watching over the business. | Richard Scholz | 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 11 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 75 | In September, 2013, Sears and I (Richard Scholz) entered into an agreement where he would transfer 500,000 free-trading shares of FusionPharm stock from Meadpoint to me personally. We agreed that I would pay Sears for the stock after I sold the stock. The stock was related to a convertible note between Meadpoint Venture Partners, hereinafter referred io as "Meadpoint", which was a company run by Sears, and FusionPharm. I was not aware that this note was ever back dated. On the paperwork provided to the transfer agent and the broker at Scottsdale, Sears and I falsely represented that I had paid $50,000 upfront for the stock. I was aware that Sears was using a bank deposit for $50,000 from some source other than me in order to satisfy the transfer agents requirement that they see proof of the payment. Sears was interested in entering into this agreement with me because he was trying to raise money. | William Sears | 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, q, v | 1, 3, 4 |
| 76 | Sears's attorney was Jean-Pierre. Sears and Jean-Pierre worked together before FusionPharm. Jean-Pierre was writing Attorney Opinion Letters for FusionPharm stock transactions. | Richard Scholz | 2011 - 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |
| 77 | I (Richard Scholz) mentioned Jean-Pierre's legal problems to Sears but he did not seem concerned. Sears indicated to me that Jean-Pierre was aware that I was promoting FusionPharm stock and getting paid with stock proceeds. | William Sears | 2011 - 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m, v | 1, 3 |
| 78 | From approximately May of 2011 through early December of 2013, I (Richard Scholz) made approximately $488,000 for promoting FusionPharm stock. I stopped when Sears said that he longer needed anyone to promote the stock. | Richard Scholz | 2011 - 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 |
| 79 | Sears told Scholz that FusionPharm had taken over the shell company Baby Bee Bright. | William Sears | 2011 | INV_00000774 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 |
| 80 | Sometime after the Federal search warrant was executed in May, 2014, Sears told Scholz that he had made $10 million. Scholz assumed it was from the sale of FusionPharm stock. | William Sears | 2014 | INV_00000774 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, t | 1, 3 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 12 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **81** | Wayne Coleson understood that Sears was the major investor in FusionPharm and that Sears and his friends were responsible for getting FusionPharm started. Coleson understood that FusionPharm was building the PharmPods and Vertifresh, which was owned by Sears, was purchasing the PharmPods and selling the produce. During the tour of the warehouse, they discussed the purchase of convertible debt. | Wayne Coleson | 2013 | INV_00000676 (Wayne Coleson - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, c | 1, 2 |
| **82** | Sears offered up a fixed price deal to purchase a portion of the convertible note between Bayside and FusionPharm. | William Sears | 2013 | INV_00000676 (Wayne Coleson - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, t | 1, 3 |
| **83** | Robert Dittman said that he was often trusting of Scott Dittman and Sears and may have signed something without looking it over. | Robert Dittman | 5/16/2014 | INV_00000516 (Robert Dittman - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, o | 1, 2 |
| **84** | William Sears told Robert Dittman that his prison time was a result of criminal charges related to securities. | William Sears | 6/8/2015 | INV_00001282 (Robert Dittman - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 |
| **85** | Bodden was first introduced to Guy JEAN-PIERRE during a meeting in Boca Raton, Florida in 2010. William Sears made the introduction to Jean-Pierre. | William Sears | 2010 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, c | 1, 3, 4 |
| **86** | Sears told Bodden that he (Sears) had conduct prior business deals with Jean-Pierre. | William Sears | 2010 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 |
| **87** | Bodden recalls Jean-Pierre providing a resume and Bodden thought Jean-Pierre was a good attorney that appeared knowledgeable. | Cliff Bodden | 2010 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, c, m | 1, 3, 4 |
| **88** | Bodden recalls that he learned through Sears that Jean-Pierre had been barred as an attorney from the OTC Pink Sheets. | William Sears | 2010 - 2011 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |
| **89** | Bodden learned that Jean-Pierre could no longer write opinion letters from Sears. Bodden and Sears discussed Jean-Pierre's problems with OTC markets. Sears advised that Jean-Pierre's problems were not his fault; instead, it was the fault of the client. | William Sears | 2010 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 |
| **90** | Jean-Pierre was always a name mentioned by Bill Sears during conversations related to microcap stocks. They were always together. | William Sears | 2010 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **91** | While working at FusionPharm….There was a checklist of items that needed to be reviewed by an attorney. Bodden knew that Jean-Pierre was reviewing some of these documents. | Cliff Bodden | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |
| **92** | Bodden and Sears had conversations about Jean-Pierre's legal situation. Sears advised that it was the client's fault and that Jean-Pierre was trying to get removed from the OTC's list of barred attorneys. | William Sears | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 |
| **93** | Sears discussed with Jean-Pierre about what Sears needed to do to get free trading shares. Sears needed opinion letters for the transfer agent and brokerage firm. | William Sears | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m, h, j | 1, 3, 4 |
| **94** | Sears advised Jean-Pierre about the financials because Jean-Pierre was owed money. | William Sears | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 |
| **95** | Jean-Pierre and Sears were actively involved in FusionPharm. Sears would describe the work that he was performing at FusionPharm to JEANPIERRE. | William Sears | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |
| **96** | Bodden advised that Sears and Scott Dittman were business partners. He would ask either Sears or Scott Dittman if he had a question about FusionPharm. | Cliff Bodden | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |
| **97** | Bodden was aware of Sears' involvement in FusionPharm activities, because he worked at the FusionPharm business locations and could also hear conversations among Sears, Scott Dittman, Scholz, and others. | Cliff Bodden | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |
| **98** | Bodden described Bayside Realty as Sears' holding company in his mother's name (Sandra Sears). He stated that Sears wanted to keep stock out of his own name to avoid any disclosure requirements. | William Sears | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m, v | 1, 3 |
| **99** | Sears instructed Cliff Bodden early on that he (Sears) was not to be officially listed as being part of FusionPharm. | William Sears | 2011 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m, l, h, v | 1 |
| **100** | Bodden overheard Sears' telephone calls with Richard Scholz, when Sears was telling Scholz about FusionPharm activities. Bodden also overheard Sears selling FusionPharm shares through broker-dealers in Arizona . | William Sears | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **101** | Bodden overheard Sears and Richard Scholz discussing the stock, future press releases, and the ongoing sales of FusiohPharm stock. | William Sears | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **102** | Based on communications with Jean-Pierre, Bodden assumed that Jean-Pierre was putting together everything necessary for DiTommaso to write the opinion letters | Cliff Bodden | 2011-2013 | GJP_00001605-1606 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 14 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **103** | Sears told Bodden to provide everything necessary to create FusionPharm's opinion letters to Jean-Pierre to include FusionPharm's quarterly and annual filings. | William Sears | 2011-2013 | GJP_00001606 (Bodden) | a, b, d, e, f, i, k, n, p, r, s, c, q, l | 1, 3 |
| **104** | Sears told Jean-Pierre that Sears and Dittman built FusionPharm. | William Sears | 2011-2013 | GJP_00001609 (Bodden) | e, m, d | 1, 3 |
| **105** | At FusionPharm's Vine street location and then again in Boca, Bodden heard Sears tell Jean-Pierre that he needed to get stock cleared because FusionPharm needed money. | William Sears | 2011-2013 | GJP_00001609 (Bodden) | a, b, d, e, f, i, k, n, p, r, s, r, p | 1, 3 |
| **106** | On page 47, Bodden listed Dittman and Jean-Pierre as the companies Officers and Directors and then on page 48, based on instructions from Dittman and Sears, did not list Sears or Robert Dittman under the family relationships section. | William Sears/Scott Dittman | 2012 | GJP_00001610 (Bodden) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 |
| **107** | Sears, and sometimes Dittman, helped Bodden with deciphering the deposits into FusionPharm's bank account as either revenue, a loan, or equity | William Sears/Scott Dittman | 2011-2013 | GJP_00001610 (Bodden) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **108** | Bodden was directed to book certain depoists as loans from Meadpoint or Bayside yet there was no supporting documents fo any loans made by Sears or FusionPharm. | Cliff Bodden | 2012 | GJP_00001610 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **109** | When Sears pitched the deal to Malino,Sears portrayed himself as part of the company | William Sears | 2012 | GJP_00001610-1611 (Bodden) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **110** | Sears directed Bodden to write up two different notes: one for Meadpoint and one for Bayside. | William Sears | 2011-2013 | GJP_00001611 (Bodden) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **111** | Sears provided Jean-Pierre with a llist of things that he needed to do related to the purchase of the debt. | Cliff Bodden | 2013 | GJP_00001612 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **112** | The money deposited into Sandra Sears' Wells Fargo bank account comes from stocks sold from William Sears' investments with Fusion Pharm and possibly other businesses. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 2 |
| **113** | William Sears deposits his money into Sanrda Sears' account because she is the only person he trusts with his money. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, t, v | 1, 2 |
| **114** | William Sears contacts Sandra Sears via telephone only to request when he wants her to wire money out from her Wells Fargo bank account into the brokerage account. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, t, v | 1, 2 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 15 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 115 | Sandra Sears only communicates with William Sears, and no other person, regarding commercial business accounts and financial transactions for Colorado-based companies. Sandra Sears always communicates with William Sears regarding these type of communications via telephone, and never through e-mail and/or any other form of communication. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 2 |
| 116 | Sandra Sears also acknowledged to knowing the reasons why William Sears wanted her to open the Wells Fargo accounts, but she again did not feel comfortable about talking about them. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 2 |
| 117 | DiTommaso told Sears to run everything through Jean-Pierre. | William Sears | 2011 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3 |
| 118 | Dittman wanted to speak with Baby Bee Bright's attorney and accountant. | William Sears | 2011 | INV_00001766 (William Sears - 302) | d, e, m | 1, 3, 6 |
| 119 | When Dahlman transferred Sears the 185,000 preferred shares, Sears notified Jean-Pierre that he was over the 10% affiliate standard. | William Sears | March, 2011 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 5 |
| 120 | They were all handshake deals between Dittman and Sears that were not doucmented | William Sears | 2011 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 121 | Bodden suggested that the loans made by Sears to FusionPharm be split into two notes, one from Meadpoint and one from Bayside, so Sears could keep one note and sell the other note. | Cliff Bodden | 2011-2012 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 122 | Sears and Bodden flew to Florida to met with Jean-Pierre to discuss the notes. | William Sears | Mar-12 | INV_00001766 (William Sears - 302) | e, m, d, f | 1, 3, 4 |
| 123 | When the convertible notes were sent to DiBella at PSTC, Sears did not tell her that the notes were backdated. | William Sears | 2012 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 4 |
| 124 | Sears believed that Jean-Pierre was not aware that he was giving bad legal advice. | William Sears | 2012 | INV_00001766 (William Sears - 302) | e, m | 1, 3, 4 |
| 125 | Scholz told Sears about Jean-Pierre's case being charged by the SEC in 2013. | Richard Scholz | 2013 | INV_00001766 (William Sears - 302) | e, m | 1, 3, 4 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **126** | Dittman and Sears were shocked to find out about Jean-Pierre's legal trouble. | William Sears | 2013 | INV_00001766 (William Sears - 302) | e, m | 1, 3, 4 |
| **127** | Sears and Dittman were "partners". Sears and Dittman were two guys building a business. | William Sears | 2011 - 2013 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **128** | Richard Scholz was involved from the beginning of FusionPharm in 2011. Scholz company, Prestige Media, was making phone calls to registered representatives at Oppenheimer, Merrill Lynch and Prudential to market FusionPharm and generate interest in FusionPharm's stock. Sears and Scholz had an agreement whereby Sears paid Scholz 25% or 30% of the proceeds from Sears' sale of FusionPharm stock. | William Sears | 2011 - 2013 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **129** | Sears paid Jean-Pierre with Microcap or other Sears' controlled bank accounts. | William Sears | 2011 - 2013 | INV_00001766 (William Sears - 302) | e, m, t | 1, 3, 4 |
| **130** | Sears and Dittman (They) discussed disclosing Sears as a part of FusionPharm in the early statges of FusionPharm. | William Sears | 2011 | INV_00001766 (William Sears - 302) | e, d, m | 1, 3, 4 |
| **131** | In March of 2012, Sears and Bodden flew to Florida and met with Jean-Pierre to discuss the notes. Sears was only interested in selling Malino a non-convertible note. Around the time of the discussions with Malino, the note agreements were documented as non-convertible notes. There were multiple versions of the notes, both convertible and non-convertible, all documented after the loans were funded. The conversion rate was $0.01 per share. After meeting with Jean-Pierre in March of 2012, Jean-Pierre and Bodden drafted the notes and they were signed at the same time. The note amounts were determined after Bodden went through the FusionPharm bank statements to identify all of the deposits from Sears. Sears was not interested at the time in selling a convertible note because he was afraid it would tank FusionPharm's stock. He also wanted to be in a position to take back FusionPharm's stock in the event the company failed. Jean-Pierre was aware that the notes sent to Malino reflected a non-convertible note. | William Sears | March, 2012 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **132** | Sears indicated that in Nov 2012 Sears was attempting to bring the notes to market and get money for the company as indicated in an email to Bodden | William Sears | 26-Nov-12 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 17 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **133** | During the confenence call between Malino, Bodden and Sears, Malino asked a lot of questions concerning FusionPharm's OTC filings. Malino wanted the debt to be a convertible note but Sears and Bodden did not. Bodden was communicating with Jean Pierre about the drafting of the notes. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **134** | Sears said that prior to the Malino deal, he did not know what a certificate of designation was until Bodden told him. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **135** | Sears spoke with Jean-Pierre on a daily basis concerning the transition from Baby Bee Bright to Fusionpharm. | William Sears | 2010 - 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **136** | Bodden drafted part of the disclosure statement and it was reviewed by Jean Pierre before being sent to Dittman for signature. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **137** | Sears told Jean-Pierre that Sears would sign documents for/as his Mother. | William Sears | 2010 - 2013 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 |
| **138** | disclosing Sears as family before Sears and Jean Pierre talked about it. Sears said he thought he should be disclosed but Jean Pierre said that since he was not a blood relative and only a brother-in-law he did not need to be disclosed. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **139** | Sears, Jean Pierre, Scott Dittman, and Andy Duke had a meeing where there were discussions about raising capital, notes, and SB1 vs Form 10, and possible discussions about the FINRA investigation. | William Sears | Oct-11 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **140** | Sears said he did discuss the transfer with Scholz prior to the FINRA agreement but Kramer's inquiry pushed it to the top of the list. Jean Pierre wrote the agreement, sent it to Sears who then sent it to Scholz for both to sign. Jean-Pierre was aware that Sears was keeping the stock despite what the agreement said. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **141** | Sears remembers Scholz telling him that FusionPharm stock got "blue slipped" but that may have been up to a year later. | William Sears | 2011-2012 | GJP_00011804 (William Sears - 302) | e, m | 1, 3, 4 |
| **142** | Sears notified Jean-Pierre about the initial call from FINRA. He also told Jean-Pierre that FINRA was asking about Sears. Jean-Pierre was aware that Sears was selling FusionPharm stock at that time. | William Sears | October, 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 18 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **143** | When Jean-Pierre visited FusionPharm in October, 2011, Sears, Dittman, and Andy Duke discussed raising money, the debt/notes from Sears to FusionPharm, up-listing FusionPharm's stock and the associated audit, and possibly FINRA's inquiry. At the time of the meeting, the notes were not yet documented. | William Sears | October, 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4, 5 |
| **144** | The debt consisiting of Sears' loans to FusionPharm was not initially documented by promissory notes. However, Jean Pierre knew that if FusionPharm was to be up-listed then the financials would be auditied and the loans would have to be documented. Sears recalls this topic being brought up by Jean-Pierre and discussed with Dittman, Duke, and Bodden when Jean-Pierre was in Denver. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **145** | Sears stated that any fusionPharm stock certificate issued to Microcap meant that he was the beneficial owner. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **146** | Dittman told Kramer that Sears was divested from Microcap. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | e, j, l, m, v | 1, 3, 4 |
| **147** | After reviewing a FedEx receipt showing a record of him sending a packet to the transfer agent in Nevada on 7/25/2012 and another FedEx record showing him receiving a mailing from the transfer agent on 8/01/2012. Sears said he mailed a packet of information to Pacific Stock Transfer Company by FedEx from Colorado to Las Vegas, NV for the conversion of 40,000 shares from Todd Abbot to Microcap. Sears indicated the packet contained, among many other things, an attorney letter drafted by Jean-Pierre and signed by DiTomasso used by the transfer agent to convert the certificate. Sears said he received the new certificate through FedEx at the Vine Street address in Denver, CO from the transfer agent in Nevada. | William Sears | 2012 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 19 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **148** | After reviewing a FedEx mailing record showing a packet addressed to him being mailed from the transfer agent on 1/18/2013 to Thornton, CO. Sears said he received the certificate for 140,000 shares in the name of Bayside Realty Holdings at his Jackson Drive address in Thornton, CO. Sears said he knows he received the certificate because he would have remembered if it had not arrived. Sears said this certificate would not have been issued had an attorney letter not been presented at some point to the transfer agent. According to Sears, Jean-Pierre would have drafted the letter and DiTomasso would have signed the letter. | William Sears | 2013 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |
| **149** | After reviewing a FedEx mailing record showing a packet addressed to him being mailed from the transfer agent on 8/15/2013 to Brighton, CO. Sears said he received a certificate for 500,000 shares in the name of Meadpoint Ventures Partners at his UPS store box in Brighton, CO. Sears said he knows he received the certificate because he would have remembered if he hadn't. Sears said this certificate would also not have been issued had an attorney letter not been presented at some point to the transfer agent. According to Sears, Jean-Pierre would have drafted the letter and DiTomasso would have signed the letter. | William Sears | 2013 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 |
| **150** | William Sears stating he would like to exercise options to convert shares for Bayside note, addressed in a email | William Sears | 12/12/2012 | SWFBI_00012615.03 | a, b, d, e, f, i, k, n, p, r, s | 1, 5 |
| **151** | Sandy Sears addressing revised letter of opinion and affirming other docs have been sent in an email chain, which includes an email from William Sears stating that he belives this is everything you will need and then some. | Sandra Sears (Mother of William Sears)/William Sears | 12/24/2012 | PST_00002764 | a, b, d, e, f, i, k, n, p, r, s, v | 1, 2 (as to Sandra Sears), 1, 3 |
| **152** | William Sears emailing Dibella that the draw down was well over a year ago and asking what she is looking for? | William Sears | 12/26/2012 | PST_00007756 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **153** | opinion is very detailed and complete and that he just spoke to the attorney. Also, that he is paying with credit card and that he fowarded the transfer agents comments to the lawyer. | William Sears | 12/26/2012 | PST_00007770 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **154** | William Sears emailing Dibella the 144(d)(3)(ii) rule | William Sears | 12/27/2012 | PST_00007781 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **155** | As per Mr. Dittman's request I am forwarding the documentation you requested | William Sears | 12/27/2012 | PST_00000672 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **156** | Just saw this one did not go | William Sears | 3/7/2013 | PST_00007896 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 20 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **157** | With regard to the letter of opinions this seems more as a matter of fact. These letter have a signficant cost to prepare and amend. I have had council insert statements in both resolutions and issuer letters affirming this. | William Sears | 3/11/2013 | PST_00008019 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **158** | Byaside has sold the note(the one we just authenticated and did a conversion on). There are Four new owners of said note. I would like to forward you the sale documents. The individual comanes are looking to cnvert in part. So I am forwarding this documentation so we may front run this. There are penalties for delayed delivery of the certificates so I want the wheel spinning so we can catch it in stride. Once I send the sale documents we should just need conversionrequest and board of directors resolution for said request. You have all the other DD on file. So with that please stand by, Many thanks in advance. | William Sears | 2/5/2013 | PST_00001973 | a, b, d, e, f, i, k, n, p, r, s, t | 1 |
| **159** | Good afternoon. As previously noted the Bayside note has been sold and attached is the documentation required to created and send the certificates. Should you have any queries please feel free to contact myself on behalf of bayside or Mr. Dittman on behalf of Fusionpharm Inc. | William Sears | 3/6/2013 | PST_00001973 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **160** | Just making sure you'd received this email. Please advise as there are penalties associated with delays in share issuances. | Scott Dittman | 3/6/2013 | PST_00001972 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **161** | Please find attached the socumentatino we spoke about last week. Email with documents from William Sears under the subject Meadpoint venture partners FusionPharm | William Sears | 4/11/2013 | PST_00020701 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **162** | Here are all the original docs. Please forward the document templates you require Many Thanks. | William Sears | 8/2/2013 | PST_00000783 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **163** | Good afternoon. I am going to convert a bit more of the Meadpoint note. You have all the documentation file (see below). Do it just email you and fill out a cc receipt? | William Sears | 8/2/2013 | PST_00000784 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **164** | Please find attached (legal opinion letter) | William Sears | 8/27/2013 | PST_00009407 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **165** | Please find attached the documentation for all three transactions. Each transaction has its own letter of opinion. I had previously sent a CC authority so please end each of the certificates individually for priority overnight to the following: (address for Scholtz, Thaden, Thaden) In addition, please forward copy's of the certs and tracking numbers to me Via e-mail. As always it was pleaser working with you and have a happy holiday. Attachments | William Sears | 8/29/2013 | PST_00010489 | a, b, d, e, f, i, k, n, p, r, s | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 21 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **166** | Here are the Thaden paper work. The meadpoint letter of instructions clearly states what is left on the note after conversion. | William Sears | 8/30/2013 | PST_00000844 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **167** | Are the shares levaing today? | William Sears | 9/18/2013 | PST_00008931 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **168** | Joanna, we wil take care of this in the am and will advise when done. | Scott Dittman | 9/18/2013 | PST_00008930 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **169** | Please find attached the payment document. May I have a receipt showing the balance zeroed. In addition I never got a receipt for the payment made last week. | William Sears | 9/19/2013 | PST_00008930 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3 |
| **170** | Cool run it and Ill have it flat with zero in October. 654 | William Sears | 9/19/2013 | PST_00008929 | a, b, d, e, f, i, k, n, p, r, s, t | 1 |
| **171** | Good morning. This morning you will be receiving the certificate and stock power for the attached SCA named document. The other attachment is just the forwarded thread from the last deposit. I am drawing down from the same note you already have on file. Hopefully I got it right the first time. Thank you as always. | William Sears | 8/19/2013 | SEC-DOJ-EPROD-000058360 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **172** | Good Morning. I am currently opening and planning to make a deposit with your firm. Please see the attached documentation for pre clearance. The cert will be on your door step Tuesday the latest. The account will be in the name of Meadpoint Ventrue Partners. I have another email to forward also. This is the exact communication between myself and the securities supervisor at the transfer agent. Attached documents. | William Sears | 4/12/2013 | SEC-DOJ-EPROD-000058360 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **173** | There was no contract or written agreemnt with Mr. Dahlman when we changed the entity from Baby Bee Bright to FusionPharm, just a conversation between Mr. Dahlman and William Sears. I have no emails with Mr. Dahlman but am looking for anhting between Mr. Sears and myself that would be germane to the conversation. attached documents to two emails. | Scott Dittman | 11/14/2011 | SEC-DOJ-EPROD-000075084 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **174** | I will be away for the holidays but have asked my cororate secretoary, Mr. Guy JeanPierre to follow up with you in the interim about anything else you may require. Guy is cc'd here. | Scott Dittman | 11/23/2011 | SEC-DOJ-EPROD-000569906 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **175** | Please find attached. This is the doucmentation fro my associate Richard Scholz. Hi is in need of a letter of opinion for deposit. The shares were derived from the preferred searies A of Baby Bee Bright corporation. I have attached the board minutes that created the shares and such. The shares were transferred to Microcap management as free trading and microcap did the same to Prestige for services. Please note Mr. Scholtz's email. Send him the bill for your services regarding the letter. Attached PDF | William Sears | 4/19/2011 | RS_00000562 | a, b, d, e, f, i, k, n, p, r, s, t, v | 1, 3 |
| **176** | On Wednesday Richard Sholz and I will be looking for a an agreement wereas he is taking over control of the company (Microcap Management LLC a Nevada LLC) and all of its brokage as of May 9th 2011. | William Sears | 10/17/2011 | RS_00001324 | a, b, d, e, f, i, k, n, p, r, s, t , v | 1, 3 |
| **177** | It is a simple assignment. The assignment is for the company and the accts only. Any assets were to remain with me. We have an agreement detailing this. | William Sears | 10/17/2011 | RS_00001323 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **178** | I don't have one. This is what I need you to create | William Sears | 10/17-18/2011 | RS_00001322 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **179** | Rich, As discussed (Attached agreement) | William Sears | 11/8/2011 | RS_00000175 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **180** | Please fins attached the documentation you requested. Please print out, fill out and then scan to Tina for approval…..Call me (attached documents) | William Sears | 6/18/2012 | RS_00000411 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **181** | Mom, you dial 1(408)6034927 They will answer the phone trading: Identify yourself as Sandy Sears with Bayside acct (154204611 if they ask for it) and tell them you want ot place a sell order. Then just twll them what Richie instructs you. That's it! Just like ordering pizza. Rich Scholz (407) 722-0190 | William Sears | 2/7/2013 | RS_00001598 | a, b, d, e, f, i, k, n, p, r, s, v | 1 |
| **182** | Recently, I have partnered with my brother-in-law William Sears, and we have acquired and moved our operations into a publicly traded company: Fusion Pharm, Inc.…Below is our 'coming out' press release explaining our recent expansion into the Arizona marketplace. Feel free to contact me if you have any interest or questions....enclosed press release....Contact: Mr. William Sears, Investor Relations of FusionPharm, Inc. | Scott Dittman | 4/21/2011 | Abbott_00000050 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **183** | Got confirmation that deliveries were done/attempted Monday and yesterday (2 other guys got theirs) They are sent certified…u need to sign…did you get a 'pick up at the post office' card at home? | Scott Dittman | 5/25/2011 | GJP_00010921 | a, b, d, e, f, i, k, n, p, r, s | 1, 6 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 23 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **184** | Got your text too. Hold that cert 'till next week…I will come meet you to trade it out fro a non-restricted one in the same quantity…we can discuss thenif that is OK. | Scott Dittman | 5/26/2011 | GJP_00010921 | a, b, d, e, f, i, k, n, p, r, s | 1, 6 |
| **185** | Yes…and climbing. Can I call u on my drive home..4ish? | Scott Dittman | 6/1/2011 | GJP_00010919 | a, b, d, e, f, i, k, n, p, r, s | 1, 6 |
| **186** | Part 2: Purchasing part of the existing not payable from FusionPharm to Meadpoint Venture Partners. Said note is convertible to class a common stock which would be free trading immediately upon conversion. Purchase price wold be $50,000.00 and would be convertibable into 500,000 shares of free trading FusionPharm stock. I have spoken with Bill Sears of Meadpoint and he is amendable to this transaction. | Scott Dittman | 8/3/2013 | SWFBI_00008486.02 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3 |
| **187** | I will start the paper work ball rolling. Please note that FusionPharm Inc cannot issue free trading securities without a registration statement. Meadpoint Venture Partners had an aged convertible promissory note that will be used to facilitate the free shares. My suugesiont is to use Meadpoint in it's ntirety as the transaction is cleaner.... | William Sears | 8/13/2013 | SWFBI_00008608 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **188** | Ok I have got it down on the paperwork. Now as far as free, with 1 million shares in your name solely, you would be subject to a tricle rule. Basically considered an insider. We have only 5.6 issued and outstanding and 1mm puts you over 10% realm. So we need a second company or persons name. In addition I will need the tax Id/ssn for the transfer agent. Ill have all this wrapped up nex week! | William Sears | 8/14/2013 | SWFBI_00008651 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **189** | Check from William Sears to Jean Pierre | William Sears | 10/14/2011 | SEC-DOJ-EPROD-000069232 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 |
| **190** | Check from William Sears to Jean Pierre | William Sears | 3/12/2012 | SEC-DOJ-EPROD-000069270 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 |
| **191** | Check from William Sears to Jean Pierre Adams Letter of opinion | William Sears | 5/14/2012 | SEC-DOJ-EPROD-000069288 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 |
| **192** | Check from William Sears to Jean Pierre | William Sears | 5/25/2012 | SEC-DOJ-EPROD-000069293 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 |
| **193** | Check from William Sears to Jean Pierre | William Sears | 6/20/2012 | SEC-DOJ-EPROD-000069303 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 |
| **194** | Check from William Sears to Jean Pierre Abbott 144 | William Sears | 7/5/2012 | SEC-DOJ-EPROD-000069313 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 |
| **195** | Check from William Sears to Jean Pierre | William Sears | 11/18/2012 | SEC-DOJ-EPROD-000069343 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 24 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 196 | Check from William Sears to Jean Pierre | William Sears | 3/6/2013 | SEC-DOJ-EPROD-000069351 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 |
| 197 | Check from William Sears to Jean Pierre | William Sears | 8/19/2013 | SEC-DOJ-EPROD-000069361 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 |
| 198 | Scott, my brother and William my brother-in-law have started a vertical farming company producing mainly leafy greens (not hippie lettuce) named Vertifresh, and we all met last week to discuss further entrance into the food market here in Denver. | Robert Dittman | 9/17/2012 | SWFBI_00019028 | a, b, d, e, f, i, k, n, p, r, s | 1, 2 |
| 199 | Good morning, Was wondering how the Sept 30s were coming as I want to put them up before thansgiving. Hope all is well. | William Sears | 11/21/2011 | SWFBI_00025778 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 200 | Mike please make the following adjustments to the 9/30 fiancials and return the updated set to all participants on this email: followed by the adjustments needed to be made | Scott Dittman | 11/23/2011 | MK_00000419 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 201 | Guys, I think we have some issues to address…….. | William Sears | 11/28/2011 | MK_00000426 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 202 | Mike can I have the newst financials with the updated shareholders statemetns along with the notes to the 9-30s | William Sears | 12/22/2011 | SWFBI_00019994 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 203 | Regards (attached Financial statements) | William Sears | 12/22/2011 | SWFBI_00019994 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 204 | Here are the financial satements at last….We have a large note payable to a friendly company who isn't charging us interest yet. Do we need to acure interest anyway? Email continues to discuss accounting details, to include attach documents. | Scott Dittman | 12/31/2011 | SWFBI_00021548 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 205 | I hope all is well. As you can see we are coming downto the wire regarding the filing the 12/31s. We hope to have them to you tomorrow. I need to have them uploaded to OTC markets by Friday. Sorry for the small window however you know how these things go. Many thannkds in advance | William Sears | 3/25/2012 | MK_00000467 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 206 | Gentlemen, Please feel free to communicate with each other with regards to the parparation of the FusionPharm 12-31-12 financial statements Guy Jean Pierre 305 929 3652, Mike Kocinski 954 258 9150. Regards | William Sears | 4/3/2012 | MK_00000484 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 207 | This is the final format. I need you to send an e-mail (as you did last quarter to Guy Jean Pierre stating that you are a CPA and the finacncials are prepared in accordance with gap etc. etc. Many Thanks in advance. I am cc guy on this so you have his e-mail addresses. | William Sears | 6/7/2012 | MK_00000529 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 25 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 208 | acordance with GAAP and that I assisted with the compilation of the statements. However, as stated for the year end statements, I am not a CPA but I am a degreed acountant with over 30 years of experience in compiling financial statements. Let me know if this is acceptable approach and I'll send the email to Guy Jean Pierre as soon as possible. | Mike Kocinski | 6/7/2012 | MK_00000528 | a, b, d, e, f, i, k, n, p, r, s | 1, 2 |
| 209 | Just need it as you did last quarter as this is now required every quarter | William Sears | 6/7/2012 | MK_00000528 | a, b, d, e, f, i, k, n, p, r, s, q | 1, 3 |
| 210 | Understoood, I'll send the email within the next few minutes | Mike Kocinski | 6/7/2012 | SWFBI_00016574 | a, b, d, e, f, i, k, n, p, r, s, n, q | 1, 2 |
| 211 | I am the accountant that assisted with the preparation of the financial statements for FusionPharm for the period ending March 31, 2012. These statements were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any futher information. | Mike Kocinski | 6/7/2012 | SWFBI_00016824 | a, b, d, e, f, i, k, n, p, r, s, p, q | 1, 2 |
| 212 | Regards | William Sears | 6/7/2012 | SWFBI_00016824 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 213 | The financial statements for Fusion Pharm, Inc (FusionPharm) for the period endingn September 30, 2012 were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any further information. | Mike Kocinski | 11/21/2012 | SWFBI_00012286 | a, b, d, e, f, i, k, n, p, r, s, q | 1, 2 |
| 214 | The financial statements for Fusion Pharm, Inc (FusionPharm) for the period endingn December 31, 2012 were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any further information | Mike Kocinski | 3/6/2013 | SWFBI_00013401 | a, b, d, e, f, i, k, n, p, r, s, q | 1, 2 |
| 215 | Invoice from Tod A. Ditommaso to Guy Jean Pierre 12/27/11 Fusion Pharm Inc. OTC Markets Opinion Letter | Tod Ditommaso | 1/15/2012 | GJP_INV_00006140 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 |
| 216 | Tod Abbott's transfer package regarding 40000 shares to Microcap Management (Includes entire package) | Todd Abbott | 9/8/2011 | GJP_00009930 through 9937 GJP_INV_00005419-5426 | a, b, d, e, f, i, k, n, p, r, s | 1, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 26 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 217 | indebtedness originally entered into May 2, 2011 in favor of Bayside Realty Holdings, LLC….has not been aan affiliate of the Company as the term is defined by Rule 144 of the Act | Sandra Sears (Mother of William Sears) | 12/6/2012 | GJP_00009973 | a, b, d, e, f, i, k, n, p, r, s, u, v | 1, 2 |
| 218 | Letter from Scott Dittman ending the draw down request under the promissory note issued by Bayside Realty Holding | Scott Dittman | 12/5/2011 | GJP_00009957 | a, b, d, e, f, i, k, n, p, r, s, q | 1 |
| 219 | Attached is the FusionPharm-Abbott-Microcap opinion letter; see attached. (letter attached) | Tod Ditommaso | 7/25/2012 | PST_00013722 | a, b, d, e, f, i, k, n, p, r, s, q | 1 |
| 220 | Invoice from Tod A. Ditommaso to Guy Jean Pierre 12/13/12 FusionPharm Bayside Opinion Letter, 12/22/12 FusionPharm Bayside Opinion Letter-Redo | Tod Ditommaso | 1/15/2013 | GJP_00010653 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 |
| 221 | Bill, In addition to the items previoulsy requested, please provide (or advise if need to be created), the following: 1. Letter of Regignation and Director's Minutes accepting the resignation of Sandra L. Sears as Director of the cooporation; 2. Director's Resolution appointing Scott Dittman as President and Treasureer and Guy Jean Pierre as Secretary of the corporation; 3. Date Pacific Stock Transfer was appointed as the corporation's transfer agent; 4. Address, email address, and contact phone number of eachof Bayside Realty and Meadpoint Venture Partners, 5. State of Organization for each of Bayside Realty and Meadpoint Venture Partners; 6. Name of Authorized Signatory for each of Bayside Realty and Meapoint Venture Partners; 7. Is or has any beneficial owner of Bayside Realty and Meadpoint Venture Partners ever been an employee, officer, director or married to an officer or director of the corporation (an affiliate). If so, date of resignation or termination. Thanks. | Cliff Bodden | 6/15/2012 | SWFBI_00017215 | a, b, d, e, f, i, k, n, p, r, s, q, p | 1 |
| 222 | Guys, Circle the wagons and get the rest to our outstanding dove wrapped up. I want to get funded this week. | William Sears | 6/17/2012 | SWIRS_00013585 | a, b, d, e, f, i, k, n, p, r, s, t | 1 |
| 223 | Dove? | Cliff Bodden | 6/17/2012 | SWIRS_00013585 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 224 | Docs. Duh | William Sears | 6/17/2012 | SWIRS_00013585 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 225 | Guy, Bill asked me to forward these for your review. Best regards, Cliff Attach Offering documents | Cliff Bodden | 6/18/2012 | SWIRS_00010095 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 226 | Bill Make sure you correspond with Nick only through you non-Fusion affiliated email. | Cliff Bodden | 6/19/2012 | SWIRS_00013585 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 227 | Yes indeed…I only did this as response to you. I NEVER use this one. Only you do…MoMo | William Sears | 6/19/2012 | SWIRS_00013646 | a, b, d, e, f, i, k, n, p, r, s | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 27 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 228 | the reporting period ended June 30, 2012 and accompanying financial statemetns for the periods ended June 30, 2012 and June 30, 2011. I have also attached the shareholder list for Guy's review to confirm the number of shareholders. Please let me know of any revisions or corrections required. Once your review is completed I'll consolidate the pages for filing. Best Regards (attached are the reports etc) | Cliff Bodden | 8/8/2012 | SWFBI_00018453 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 229 | Dear Sir, The financial statements for Fusion Pharm, Inc. (FusionPharm) for the period ending June 30, 2012 were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any further information. Regards | Mike Kocinski | 8/14/2012 | SWFBI_00018592 | a, b, d, e, f, i, k, n, p, r, s, q | 1, 2 |
| 230 | Please find attached, my draft of the quarterly report for the period ended September 30, 2012. Cliff attach Quarterly Report | Cliff Bodden | 11/14/2012 | SWFBI_00012240 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 231 | Looks good to me upon preliminary review cliff. Mike, any questions/concerns? | Scott Dittman | 11/15/2012 | SWFBI_00012251 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 232 | Bill, Please see the attached. The Notes work with the existing draw down requests. Cliff Attach are the Notes | Cliff Bodden | 11/26/2012 | SWIRS_00037431 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 233 | Scott We are in need of a letter which confirms the end of drawdowns under the Bayside promissory note. I have drafted such for your review. If acceptable, please print on letterhead and sign. Thanks. Cliff Attach is Letter of Authorization | Cliff Bodden | 12/27/2012 | SWFBI_00012685 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 234 | Good Afternoon, I do hope all of you are doing well. Please find attached a convertible note between Byaide Realty Holding and Fusionpharm Inc. Bayside has chosen to exercise its option to convert into shares. Aside from a legal opinion and payment for the cert (Absorbed by Bayside) what else would be required to get this done in an expeditious fashion? I would like to have a cert generated as quickly as possible. Byside is a family member company and I am assisting them as I am familiar with all parties. So I will be the point person for all. Regards | William Sears | 12/12/2012 | SWIRS_00036852 .06 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 235 | Joanna, Good Afternoon. I do believe this is everything you will need and then some. Regards | William Sears | 12/13/2012 | SWIRS_00036852 .04 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 28 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **236** | Joanna, Please find attached the revised letter of opinion. I have already sent all the other doc you requested. Any chance of getting this printed and out today? Thank you. Sandy Sears | Sandra Sears (Mother of William Sears) | 12/24/2012 | SWIRS_00036852.03 | a, b, d, e, f, i, k, n, p, r, s | 1, 2 |
| **237** | Joanna, The first five paragraphs lay it out. I just spoke to the atty and he does not know what else he can possibly write. He is a bit confused. The note like stock is a financial instrument. It is aged. The second paragraph defines it and then it goes on. This transaction is righteous on every aspect of the word. The letter of opinion is very detailed and complete. If there is specific wording you required please advise and I will forward it to the atty to see what he thinks. Please advise as we are all a little confused at this time. 303 518 3895. Bill Sears | William Sears | 12/26/2012 | SWIRS_00036852.02 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **238** | Guy I need this yesterday? This T/A is an idiot!!! | William Sears | 12/26/2012 | SWIRS_00036852 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **239** | Bill, Please have this signed and that should complete the package. Cliff attached Sears Letter of Resignation | Cliff Bodden | 12/27/2012 | SWIRS_00037683 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **240** | Joanna, As per Mr. Dittmans request I am forwarding the documentation you requested. Regards. William Sears | William Sears | 12/27/2012 | SWIRS_00036839.02 | a, b, d, e, f, i, k, n, p, r, s | 1, 6 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 29 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 241 | Bill, It seeems that Joanna is seeking additional information in light of the fact that the face value of the note is less than the sum of the drawdowns mae thereunder-presenting the possiblility that the note is still open and therefore the full purchase price or other considerations has not been paid. That and the issue of not having dealt witha promissory not funded in installments. As I remember, the Capitoline due diligence included a letter of authorization terminating the credit line facility on December 5, 2011. I think that should be referenced in the opinion letter as a means of proving payment in full under the terms of the note. Also, under the Note, the lender was under no obligation to fund any draw down and therefore the face value on the note was meant to act as a credit limit not an actual commitment amount. These factors when taken with no funds being advanced since the termination should be evidence enough that the credit line portion of the agreement eneded on December 5, 2011 and the promissory note remained in effect with the principal sume of $176,950. The effective date, date of last draw down and the date the company terminated the credit line facility created by the note all occurred prior to December 5, 2011. Accordingly, I think that is the basis for our reliance on 144(d)(3) or specifically, 144(d)(3)(ii). 144(d)(3)(ii) is stated by Bodden. Cliff | Cliff Bodden | 12/27/2012 | SWIRS_00036842 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 242 | Guy, Please find attached the each drawdown request and proof of receipt of funding by the company under the note. Attached documents to email | Cliff Bodden | 12/28/2012 | SWIRS_00037661 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 243 | Regards, Sears email to Dittman Bayside Starcity note attached | William Sears | 1/23/2013 | SWFBI_00015281 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 244 | Marked up copy attached, Attach FusionPharm Bayside | Cliff Bodden | 1/31/2013 | SWFBI_00012956 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 245 | Gents, Please review and comment. Add your bios. I'll add financial projections when I get in this morning. Meeting my old Colfax landlord at 9…be at vine right after. Attached to email is Business plan | Scott Dittman | 5/2/2011 | SWFBI_00026858 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 246 | For your records. Attached to email summary of minutes | Gino Rodrigues | 5/9/2011 | SWIRS_00001420 | a, b, d, e, f, i, k, n, p, r, s | 1, 2 |
| 247 | Gentlemen, This was the agreement I was referring to. This would be fro both my interests in FS and Scotts in meadpoint. Guy pleaes review and make appropriate changes. Regards. Attach Nominee Declaration of Shares | William Sears | 10/11/2011 | SWFBI_00024993 | a, b, d, e, f, i, k, n, p, r, s | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 30 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **248** | Scott, I guess I read it wrong. The cert is for 182,050….it was late when I pulled it out on Friday evening. Any way the deal will be structured wheras we can have some free anyway. It's just something we need. Regards | William Sears | 6/20/2011 | SWFBI_00027204 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **249** | Regards, Attached FusionPharm Disclosure Statement | William Sears | 7/12/2011 | SWFBI_00024090 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **250** | Dear Pacific Stock Transfer, Please let this e-mail act as a letter of authorization for you to give the company's lawyer Mr. Guy Jean Pierre full and complete details of the company's share structure. We are in the process of filing our information and disclosure statement and this is required for the filing. Thank you for your cooperation regarding this matter. Should you have any questions regarding this matter please feel free to contact me. | Scott Dittman | Jul-11 | SWFBI_00024143.03 | a, b, d, e, f, i, k, n, p, r, s | 1, 5 |
| **251** | Guy, please forward the information once received. Regards | William Sears | 7/14/2011 | SWFBI_00024143.02 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 5 |
| **252** | Guy, what time for Scott tomorrow? Regards | William Sears | 7/15/2011 | SWFBI_00024143.02 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 5 |
| **253** | Guy, there is a panerea bread at the corner of sepulveda and Manchester ave right by the airport. How about that spot at 2:30? Please give the attorney my mobile #303-419-6352 and shoot me his contact ifno too pls. | Scott Dittman | 7/18/2011 | SWFBI_00024142 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 5 |
| **254** | Guy, I am thinking of soing some business with this group. I would like your to review the attached docs to make sure we would not be breaking any laws. Regards Attached to email Oxford 2011 deal docs. | William Sears | 7/28/2011 | SWFBI_00024194 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **255** | Ben trying to hit you on skype. What is your skype name? Mine is Scott.Dittman2 | Scott Dittman | 11/7/2011 | SWFBI_00025420 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **256** | Connie, sorrry, traveling this week and just returned last night. Yes indeed, we would still like for you to process our payroll. Do I need to sign/do anything for you? Pls advise. Please mail all checks to the following address: 1610 Wynkoop St #110, Denver CO 80202. | Scott Dittman | 9/29/2011 | SWIRS_00001871 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **257** | Yes and Yes! | Scott Dittman | 9/29/2011 | SWIRS_00001871 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **258** | Regards. Attached FusionPharm Disclosure Statement | William Sears | 12/5/2011 | SWFBI_00026201 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **259** | Scott, This week will be a gross total of $25,118. Minus RS (6,279.00)=$18,839…Minus 900 to Jimmy=17,939 Less 30%=$12,559 net to FP. Regards. | William Sears | 7/2/2012 | SWFBI_00016199 | a, b, d, e, f, i, k, n, p, r, s,t | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 31 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 260 | Joslyn, Please instruct Mr. Roy as to the procedure to lift his 144 legend. Many thanks in advance. Regards. | William Sears | 1/31/2013 | SWFBI_00015287.05 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 5 |
| 261 | David, William is on vacation for the week, so I'm trying to fill in. I'm not sure where your conversations with Bill left off but I've cc'd the company counsel in these matters, Mr. Guy JeanPierrr on this email. Guy, David Roy is a shareholder with 144 restricted stock from the latter part of 2011 (1 year restriction). He needs assistance with an opinion letter to deposit his cert. Please get whatever info you require from David to provide the opinion letter. Thanks to all. | Scott Dittman | 2/13/2013 | SWFBI_00015287 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 262 | Guy, I want to put in a clause regarding to the series A Preferred. I want you to insert a clause that clearly states that in case of Bankruptcy whereas the shares wouldland in the hands of a liquidator or liquidation for said insovency the share hold most give the company the opportunity to purchase the shares back at par. Or a clause that say they cannot be liquidated by a liquidator? Just something that protects the company. Preferably the first. | William Sears | 2/28/2013 | SWFBI_00015324 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 263 | Regards, Attached Amended and Restated Articles of Incorporation | William Sears | 2/28/2013 | SWFBI_00015324 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 264 | Regards, FWD David Roy's email to Guy | William Sears | 2/20/2012 | SWFBI_00013354.02 | a, b, d, e, f, i, k, n, p, r, s | 1,3 |
| 265 | Dave, The officers certificate was executed last week. Perhaps he is awaiting payment to release said documentation. I forwarded the invoice last week. I have attached it again should you have not received it. Give a call when you get a chance this afternoon. Many thanks in advance. Regards. | William Sears | 3/4/2013 | SWFBI_00013354 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 266 | My bad regards. Attached FusionPharm OTC markets | William Sears | 3/8/2013 | SWFBI_00015355 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 267 | Guy, I need the pink sheeet letter yesterday. I will send the other in one hour | William Sears | 11/20/2012 | SWFBI_00014988.02 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 268 | Regards. Sears FWD guy's email. Attach FusionPharm_Lawfirm_attorney letter | William Sears | 6/28/2011 | SWFBI_00014988 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 269 | Guy, it would seem I need another letter of opinion for the note. Please reference Meadpoint converting it into the Name of Richared Scholz as in the doucments. Regards. Attache J Dibella doc | William Sears | 8/8/2013 | SWFBI_00008551 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 270 | Fed Wire Transfer Request Forms, Microcap Management | William Sears | 9/2011-12/2012 | SEC-DOJ-EPROD-000063311 through 63334 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 32 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **271** | Wire Authorization Form, Meadpoint Venture Partners | William Sears | 5/2013-12/2013 | SEC-DOJ-EPROD-000063239 through63276 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 4 |
| **272** | Wire Authorization Form, Bayside Realty Holdings | Sandra Sears (Mother of William Sears) | 2/1/2013-4/13 | SEC-DOJ-EPROD_000063205 throught 63218 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 2, 4 |
| **273** | Email from Scott Dittman to OTC Markets referring to Guy Jean Pierre as the corporate secretary for FusionPharm and stating "Yes, all of the information is correct…." | Scott Dittman | 12/2/2011 | SWFBI_00026157 (Exb 16) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **274** | Email from William Sears to Fred Dahlman referenincg shares to Microcap and Salt and stating "Fred, As per our conversation please transfer the following amounts of preferred shares to complete the transaction. 10,000 to yourself or nominee 50,000 to Microcap Management LLC the balance (1,440,000shs) of the stock should go to Salt Investments LLC. In addition please forward copy's of the original certs or documentation that was used to create said shares." | William Sears | 11/8/2010 | FD_00000112 (Exb 33) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **275** | shares transfer to Microcap, Robert Dittman, and Salt stating "Fred, As per our conversation please transfer the following amounts of preferred shares to complete the transaction. 10,000 to yourself or nominee 100,000 to Microcap Management LLC 25,000 to Robert L. Dittman the balance (1,365,000shs) of the stock should go to Salt Investments LLC. In addition, please forward copy's of the original certs or documentation that was used to create said shares." | William Sears | 11/19/2010 | FD_00000078 (Exb 35) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **276** | Email from Kelly Blume to Scott Dittman stating "I paid the Verizon bill last night with Billy's company card." | Kelly Blume | 7/5/2012 | SWFBI_00017781 (Exb 41) | a, b, d, e, f, i, k, n, p, r, s, t | 1, 6 |
| **277** | Email chain between Bohlender and Scott Dittman discussing Sears role in FusionPharm as well as other items | Scott Dittman/Shane Bohlender | 08/12-15/2011 | SWFBI_00027492 (Exb 43) | a, b, d, e, f, i, k, n, p, r, s | 1, 2, 3 |
| **278** | Email chain between Pacific Stock Transfer, Sears, and Jean-Pierre in which Sears states "Mr. Jean Pierre is handling the reverse with FINRA." | William Sears | 2/15/2011 | PST_00007071 (Exh 92) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **279** | Letter from Richard Scholz to Leslie Eldridge at Pacific Stock Transfer stating that shares in FusionPharm need to be transferred back to MicroCap Management. Scholz states "Once the certificate is created please email a copy to William@williamjSears.com." | Richard Scholz | 5/9/2011 | PST_00000432 (Exhb 99) | a, b, d, e, f, i, k, n, p, r, s | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 33 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **280** | Email from Sandra Sears (sandy@la-dee-da.me) to Leslie Eldridge at PSTC confirming that $220.00 was sent as fees for the transfer of shares from FusionPharm to Microcap Management. | Sandra Sears (Mother of William Sears) | 4/5/2011 | PST_00000493 (Exhb 103) | a, b, d, e, f, i, k, n, p, r, s, t | 1, 2 |
| **281** | Email including Jean-Pierre, Scott Dittman, and PSTC in which Dittman states "Please let this email act as a letter of authorization for you to give the company's lawyer Mr. Guy Jean Pierre full and complete details of the company's share structure." | Scott Dittman | 7/12/2011 | PST_00002889 (Exhb 105) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **282** | Email from William Sears to Leslie at PSTC concerning stock certificate for Robert Dittman in which Sears states "The below share holder has to yet receive his certificate. I was asked to follow this up. Was it sent fed ex?" | William Sears | 8/3/2011 | PST_00008768 (Exb107) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **283** | Email chain between Sears and Scottsdale Capital in which Scottsdale asks Sears "are you or your company enganged in any type of stock promotion activity with respect to FusionPharm?" Sears replies "NO!!! On both….." | William Sears | 8/10/2012 | SEC-DOJ-EPROD-000062587 (Exb 124) | a, b, d, e, f, i, k, n, p, r, s | 1, 2, 6 |
| **284** | Letter to Scottsdale Capital Advisors signed by Sandra Sears stating "At this time Bayside Realty Holding Inc is still holding a convertible note in the amount of $187,343" | Sandra Sears (Mother of William Sears) | 1/27/2013 | SEC-DOJ-EPROD-000061934 (Exb 127) | a, b, d, e, f, i, k, n, p, r, s, u | 1, 2, 6 |
| **285** | Email from Sandra Sears (sandraSears1120@gmail.com) to Scottsdale Capital Advisors discussing outstanding balances of $187,343 which is resluted from the legal opinion balance of $176,950 plus interest. Sandra Sears replies and states "You are correct on all your assumptions" in reference to the balances. | Sandra Sears (Mother of William Sears) | 1/28/2013 | SEC-DOJ-EPROD-000061935 (Exb 127) | a, b, d, e, f, i, k, n, p, r, s | 1, 6 |
| **286** | As part of an email chain, Sears (wSears@vertifresh.onmicrosoft.com) emails Joanna DiBella at PSTC with a copy to Scott Dittman (sDittman@fusionpharm.onmicrosoft.com) stating "Just saw this one did not go!" | William Sears | 3/7/2013 | GJP_INV_00006170 (Exb 210) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **287** | As part of an email chain, Joanna DiBella replies to an email sent by Willaim Sears and includes Scott Dittman (sDittman@fusionpharminc.onmicrosoft.com) stating "This is what we still need" regarding processing of a package. | Joanna DiBella | 3/7/2013 | GJP_INV_00006168 - GJP_INV_00006169 (Exb 210) | a, b, d, e, f, i, k, n, p, r, s | 1, 2 |
| **288** | As part of an email chain, Joanna DiBella replies to an email sent by William Sears with a copy to Scott Dittman (sDittman@fusionpharminc.onmicrosoft.com) stating "I am still in need of the following to proceed" in reference to processing of a package. | Joanna DiBella | 3/11/2013 | GJP_INV_00006167 - GJP_INV_00006168 (Exb 210) | a, b, d, e, f, i, k, n, p, r, s | 1, 2 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 34 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **289** | As part of an email chain, William Sears (wSears@vertifresh.com) replies to an email sent by Joanna DiBella at PSTC with a copy to Scott Dittman (sDittman @fusionpharminc.onmicrosoft.com) discussing opinion letters and states "With regards to the letter of opinions this seems more as a matter of fact. These letter have a significant cost to prepare and amend. I have had council insert statements in both resolutions and issuer letters affirming this." | William Sears | 3/11/2013 | GJP_INV_00006167 (exb 210) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **290** | As part of an email chain, William Sears (wSears@vertifresh.com) forwards the email chain to Guy Jean Pierre (guymjeanpierre@yahoo.com, guy@lawfirmofjeanpierre.com, marcelo1@thedeallawyer.com) | William Sears | 3/12/2013 | GJP_INV_00006166 - GJP_INV_00006167 (Exb 210) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **291** | Letter signed by Scott Dittman at FusionPharm to Joanna DiBella at PSTC discussing conversion with five shareholders and stating spcifically the indebtedness was "orignally issued by the Compnay on May 2, 2011 in favor of Bayside Realty Holdings, LLC (the "Original Holder") and evidenced by the attached promissory note dated the same date;" | Scott Dittman | 3/8/2013 | GJP_INV_00005202 (Exb 210a) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **292** | Letter signed by Scott Dittman at FusionPharm to Joanna DiBella at PSTC stating "Pursuant to the convertible promissory note dated December 8, 2011 held by Meadpoint Venture Parnters LLC (Tax ID #45-3667889), please accept this as authorization for you to convert and issue 475,000 shares of common stock to Meadpoint Venture Partners. The conversion price as outlined on page three of the agreement is $0.01 per share. The shares should be considered as fully paid and non-assessable. Meadpoint Venture Partners is not and has never been an affiliate of the company." | Scott Dittman | 3/29/2013 | GJP_00010012 (Exb 211a) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **293** | (Joanna@pacificstocktransfer.com) stating "The letters state the consideration paid to Medpoint in the first paragraph?" | William Sears | 8/30/2013 | SWFBI_00008905 (Exb 214) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **294** | Email forward from William Sears (william@williamjSears.com) to Scott Dittman (sDittman@fusionpharminc.com) containing the Subject of "FW:Letters of opinion" and an attachment labeled "Attach: Signiture Page - FusionPharm - Scholz - Thayden - Thayden - 08-26-13.pdf" | William Sears | 8/30/2013 | SWFBI_00008905 (Exb 214) | a, b, d, e, f, i, k, n, p, r, s | 1, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 35 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **295** | Stock Transfer stating "Pursuant to the convertible promissory note dated December 8, 2011 held by Meadpoint Venture Partners LLC (Tax ID # 45-3667889), please accept this as authorization for you to convert and issue 500,000 shares of common stock to Myron Thayden...from the note held by Meadpoint Venture Partners. The conversion price as outlined on page three of the agreement is $0.01 per share. The shares should be considered as fully paid and non-assessable. Meadpoint Venture Parners is not and has never been an affiliate of the company." | Scott Dittman | 8/22/2013 | GJP_00010080 (Exb 215b) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **296** | Stock Transfer stating "Pursuant to the convertible promissory note dated December 8, 2011 held by Meadpoint Venture Partners LLC (Tax ID # 45-3667889), please accept this as authorization for you to convert and issue 500,000 shares of common stock to Sharryn Thaden...from the note held by Meadpoint Venture Partners. The conversion price as outlined on page three of the agreement is $0.01 per share. The shares should be considered as fully paid and non-assessable. Meadpoint Venture Parners is not and has never been an affiliate of the company." | Scott Dittman | 8/23/2013 | GJP_00010097 (Exb 215c) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **297** | Invoice #00009 from Tod DiTommaso to Guy Jean Pierre with line items showing opinion letters for Meadpoint, OTC Market, and Scholz-Thayden-Thayden each for $175.00 | Tod DiTommaso | 9/15/2013 | GJP_00010667 (Exb 216) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **298** | Invoice #00001 from Tod DiTommaso to Guy Jean Pierre dated 01/15/2012 with line item showing an opinion letter for Fusion Pharm - OTC Markets for $175.00 | Tod DiTommaso | 1/15/2012 | GJP_00010651 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 |
| **299** | Invoice #00001 from Tod DiTommaso to Guy Jean Pierre dated 01/15/2013 with line items showing opinion letters for FusionPharm - Bayside for $175.00 and FusionPharm Bayside Re do for $25.00 | Tod DiTommaso | 1/15/2013 | GJP_00010653 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 |
| **300** | Invoice #00002 from Tod DiTommaso to Guy Jean Pierre dated 02/15/2013 with line items showing an opinion letter for FusionPharm - Bayside Re do for $25.00 | Tod DiTommaso | 2/15/2013 | GJP_00010655 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 36 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **301** | Invoice #00004 from Tod Ditommaso to Guy Jean Pierre dated 04/09/2013 with line items showing opinion leters for FusionPharm- Roy for $175.00, FusionPharm OTC MARKETS for $175.00, FusionPharm-OTC MARKETS re do for $25.00, FusionPharm - Five opinion letters for Black Arch, A. Mauriello, Start City, Vera Group, SGI Group for $600.00 (disount), FusionPharm - Roy re do for $25.00, FusionPharm Five Opinion Letters Black Arch, A. Mauriello, Star City, Vera Group, SGI Group for $100.00 (discount), and FusionPharm - Meadpoint for $175.00 | Tod DiTommaso | 4/9/2013 | GJP_00010657 - GJP_00010658 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 |
| **302** | Invoice # 00004 from Tod DiTommaso to Guy Jean Pierre dated 04/15/2012 with line items showing opinion letters for Fusion Pharm - Oxford Capital Fund for $175.00 | Tod DiTommaso | 4/15/2012 | GJP_00010660 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 |
| **303** | dated 06/15/2012 with line items showing opinion letters for Fusion Pharm - Stephanie Padilla for $175.00, Fusion Pharm - OTC Markets for $175.00, Fusion Pharm - For Your Information for $175.00, Fusion Pharm - Roger Pawson for $175.00, Fusion Pharm - Adams for $175.00, and Letter to Broker for William Adams re: Fusion Pharm for $100.00 | Tod DiTommaso | 6/15/2012 | GJP_00010662 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 |
| **304** | Invoice #00007 from Tod DiTommaso to Guy Jean Pierre dated 07/15/2012 with line items showing opinion letters for Fusion Pharm - Thaden for $175.00, Fusion Pharm - Thaden Re do for $25.00, Fusion Pharm - Microcap for $175.00, Fusion Pharm - OTC Markets for $175.00, Fusion Pharm OTC Markets Re do for $25.00, Fusion Pharm - Thaden for $175.00 | Tod DiTommaso | 7/15/2012 | GJP_00010664 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 |
| **305** | Invoice #00008 from Tod DiTommaso to Guy Jean Pierre dated 08/15/2012 with line items showing opinion letters for Fusion Pharm - Microcap for $175.00, Fusion Pharm - Abbot for $175.00 | Tod DiTommaso | 8/15/2012 | GJP_00010665 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 |
| **306** | Invoice #00009 from Tod DiTommaso to Guy Jean Pierre dated 09/15/2012 with line items showing opinion letters for Fusion Pharm - OTC Markets for $175.00 | Tod DiTommaso | 9/15/2012 | GJP_00010666 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 |
| **307** | Invoice #00009 from Tod DiTommaso to Guy Jean Pierre dated 09/15/2013 with line items showing opinion letters for FusionPharm - Meadpoint for $175.00, Fusion Pharm - OTC Market for $175.00, Fusion Pharm - Sholz - Tahyden - Thayden for $175.00 | Tod DiTommaso | 9/15/2013 | GJP_00010667 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 37 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **308** | Invoice #00005 from Tod DiTommaso to Guy Jean Pierre dated 08/15/2011 with line items showing opinion letters for Fusion Pharm Inc. Pink Sheets for $175.00 | Tod DiTommaso | 8/15/2011 | GJP_00010669 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 |
| **309** | Email from William Sears (william@williamjSears.com) to sDittman@fusionpharminc.com with the subject FW: Reservation Confirmation with a Frontier Airline itinerary for Guy Jean Pierre from Fort Lauderdale, FL to Denver, CO on October 10, 2011 returning October 12, 2011. | William Sears | 9/28/2011 | SWIRS_00001882 - SWIRS_00001882 .05 (Exb 226) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **310** | Email from Scott Dittman (sDittman@fusionpharminc.com) to A.R. Duke (arduke@fusionpharminc.com) and wSears@fusionpharminc.com with subject of "business plan update" and stating "Here is my attempt at the update yesterday…please review and make notes. I haven't read it in its entirety yet. Projections to follow in 5 minutes." | Scott Dittman | 10/12/2011 | SWFBI_00024898 (Exb 227) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **311** | Email from Scott Dittman (sDittman@fusionpharminc.com) to A.R. Duke (arduke@fusionpharminc.com), falconer@fusionpharminc.com, and wSears@fusionpharminc.com with subject of "retreat" and proposing an "evisioning/strategizing" session to "lay it all on paper and break out who is responsible for what." | Scott Dittman | 10/20/2011 | SWFBI_00025059 (Exb 228) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **312** | Email from William Sears (william@williamjSears.com) to andrew robert (arduke2000@yahoo.com) and arduke@fusionpharminc.com with the subject of "Status" stating "Let us part ways with reagred to our business regarding Fusionpharm and continue our friendship." | William Sears | 3/23/2012 | SWFBI_00022596 (Exb 229) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **313** | As part of an email chain, A.R Duke (arduke@fusionpharminc.com) sent an email to Scott Dittman wth the subject "Fwd: Debt" inquiring if $269,000 in debt listed on the OTCMarkets is a "residual balance" | Andy Duke | 4/17/2012 | SWFBI_00021937 (Exb 230) | a, b, d, e, f, i, k, n, p, r, s, u | 1, 2 |
| **314** | As part of an email chain, Scott Dittman (sDittman@fusionpharminc.com) sent an email to A.R. Duke (arduke@fusionpharminc.com) with the subject "RE: Debt" and stating that "The Vast Majority is a loan received in installments throughout 2011. Friends and family loan." | Scott Dittman | 4/17/2012 | SWFBI_00021937 (Exb 230) | a, b, d, e, f, i, k, n, p, r, s | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 38 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 315 | Email from William Sears (william@williamjSears.com) to sDittman@fusionpharminc.com and cbodden@gsccventure.com with the subject "Fusion Pharm" and stating "Please start communicating with regard to putting a business plane/power point/offering documents together. Cliffe as usual we need this last week! We want it in the format you used for Green street. We will require them in both pdf and word docs for future revisions. Fee for the whole enchilada is 2-k with 500 as retaininer and balance with acceptance of finished product." | William Sears | 3/10/2011 | SWIRS_00008941 (Exb 235) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 316 | Email from William Sears (william@williamjSears.com) to cbodden@gsccventure.com with subject "AFFIDAVIT OF CLIFF BODDEN_03 14 11" stating "Cliffe, I need this back to Guy ASAP" | William Sears | 3/14/2011 | SWIRS_00011887 (Exb 236) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 317 | Email from William Sears (william@williamjSears.com) to Cliffe R Bodden (cbodden@gsccventure.com) with subject "Fwd: BBYB Documents" forwarding an emai lfrom Guy Jean Pierre with BBYB documents | William Sears | 3/28/2011 | SWIRS_00012006 (Exb 238) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 318 | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to Scott Dittman (sDittman@fusionpharminc.com) and William Sears (wSears@fusionpharminc.com) with the subject "Annual Report" and stating: "Attached is the Annual Report"..."I have made the necessary changes in the report to reflect changes made on the financial statements."..."1. Mechanics of Conversion: Bill said this was good."..."4. Employees: You, Kelly, Frank, and Duke (they don't have to necessarily be salaried or waged employees), with Guy being part time (he's listed in the management section as salaried in your last Information Statement)." | Cliff Bodden | 3/31/2012 | SWFBI_00022930 (Exb 240) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 319 | Email from Cilff Bodden (cbodden@gsccventure.onmicrosoft.com) to Nick Malino (nmalino@capitolineadvisors.com) with a CC to Scott Dittman (sDittman@fusionpharminc.com) and William Sears (wSears@fusionpharminc.com) with the subject "Pro Forma Financial Projections" stating "Please find attached, the financial projections." and including contact information for Scott Dittman, William Sears, and Nick Malino. | Cliff Bodden | 4/4/2012 | SWFBI_00023014 (Exb 242) | a, b, d, e, f, i, k, n, p, r, s | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 39 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **320** | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to Scott Dittman (sDittman@fusionpharminc.com) and CC to William Sears (wSears@fusionpharminc.com) with the subject "Financial Statement" and stating "Scott Attached is my workbook for the periods ended March 31, 2012 and 2011. All shares issuances (new and conversions) have been reconciled against the bank statements and the transfer agents list." | Cliff Bodden | 5/25/2012 | SWFBI_00022748 (Exb 243) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **321** | As part of an email chain…Email from Cliff Bodden to Guy Jean Pierre and William Sears with subject "Meeting" and stating "Guy, Bill and I will be down to Boca Firday morning, let's get together then." | Cliff Bodden | 5/30/2012 | SWIRS_00017394 (Exb 244) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **322** | As part of an email chain...Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to Guy Jean Pierre (guy@lawfirmofjeanpierre.com) with subject "Re:Meeting" and stating "Guy Bill is in route to Orlando right now and when he lands I'll get a time for you." | Cliff Bodden | 5/30/2012 | SWIRS_00017394 (Exb 244) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **323** | As part of an email chain…Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to William Sears (wSears@fusionpharminc.com) with subject "Draft Note Agreement" and stating "Bill Please review the attached and I'll draft the drawdown requests to match the dates and amounts of the deposits." | Cliff Bodden | 6/4/2012 | SWFBI_00023006 (Exb 245) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **324** | As part of an email chain...Email from William Sears (wSears@fusionpharminc.com) to Scott Dittman (sDittman@fusionpharminc.com) with a subject of "Fwd: Draft Note Agreement" containing a fowarded email from Cliff Bodden | William Sears | 6/4/2012 | SWFBI_00023006 (Exb 245) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **325** | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to William Sears (wSears@fusionpharminc.com) with subject "Bayside Loan Documents" and stating "Bill Let's get these signed up. Meadpoint's to follow in separate email." | Cliff Bodden | 6/6/2012 | SWIRS_00017304 (Exb 246) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **326** | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to William Sears (wSears@fusionpharminc.com) with subject "MeadPoint Loan Documents" stating "See Attached" | Cliff Bodden | 6/6/2012 | SWIRS_00017313 (Exb247) | a, b, d, e, f, i, k, n, p, r, s | 1, 6 |
| **327** | Email from William Sears (william@williamjSears.com) to Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) with subject "Fwd:FusionPharm - OTC Markets Opn Ltr" with a forwarded email from Guy Jean Pierre to William Sears. | William Sears | 6/12/2012 | SWIRS_00005114 (Exb 249) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **328** | (cbodden@gsccventure.onmicrosoft.com) to William Sears (wSears@fusionpharminc.com) and CC to Scott Dittman (sDittman@fusionpharminc.com) and guy@lawfirmofjeanpierre.com with subject "Capitoline Due Diligence" and asking for information for various issues be sent to him and specifically stating among other things: "Most of the due diligence questions I can answer from the filings or information I already have."..."I need guy to complete the revisions to the Certificate of Designation for the Series A Convertible Preferred Stock and provide me with a copy." | Cliff Bodden | 6/13/2012 | SWFBI_00017067 (Exb 250) | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **329** | Skype message from Sears to GJP: YES!!! Just got the termination agreement from a shareholder to whom had options at a a crazy low price. This would have killed any would be deal. i now have power of atty on the shell and am moving forward on it | William Sears | 9/1/2010 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **330** | Skype message from Sears to GJP: Not next week the following for sure. | William Sears | 9/1/2010 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **331** | Skype message from Sears to GJP: We just flew back in last night at 2:30 am, so Im slow today to sat the least | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **332** | Skype message from Sears to GJP: Looking at a JV with a choclate company | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **333** | Skype message from Sears to GJP: I will have money for you aslo | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **334** | Skype message from Sears to GJP: Thanks for all the help and such with no money on account to start | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **335** | Skype message from Sears to GJP: "This time it will" | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **336** | Skype message from Sears to GJP: "Also I need your banking details again as I want to deposit money." | William Sears | 6/2/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **337** | Skype message from Sears to GJP: "Scott and I are going over the 211-a right now. We will have it completed today and look forward to filing it asap. please set up the meeting in LA for anytime next week (Beginning) Preferred so we can have this uploaded by Friday of next week" | William Sears | 7/12/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **338** | Skype message from Sears to GJP: "This is a new division of FINRA only enacted post Madoff." | William Sears | 10/5/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 41 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 339 | Skype message from Sears to GJP: "In addition please call Scott on Skype as to the Finra guy" | William Sears | 11/7/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3 |
| 340 | Skype message from Sears to GJP: "just sent the redone 15c 211a notes to financials coming now" | William Sears | 12/19/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 341 | Skype message from Sears to GJP: "Ok the Sept 30s are up with the notes to pinksheets........." | William Sears | 12/22/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 342 | Skype message from Sears to GJP: " just uploaded it......should be live in fifteen minutes. ok upl;oaded" | William Sears | 12/27/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 343 | Skype message from Sears to GJP: "yes it is uploaded" | William Sears | 12/29/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 344 | Skype message from Sears to GJP: "ok new letter uploaded...........did not sleep last night.....I'm sooooo tired. I need a vacation as I have been running hard for a long time now." | William Sears | 12/30/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 345 | Skype message from Sears to GJP: "Good Morning..............Just got in as I had a early morning meeting. Ill call this afternoon. Inaddition the bank would not release the funds befor today so I will have Kelly make a deposit into Chase for you today." | William Sears | 1/3/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 346 | Skype message from Sears to GJP: "We made a deposit after 5:00 yesterday it should show this morning" | William Sears | 1/4/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 347 | Skype message from Sears to GJP: "I had lunch with him yesterday. I have it….I'll get it to you in a few." | William Sears | 1/4/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 348 | Skype message from Sears to GJP: "I do hope to make the deposit tomorrow or monday." | William Sears | 1/19/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 349 | Skype message from Sears to GJP: "Funds have been soooo tight with the holiday slowdown, and a lagre investor check bouncing which sent our accounts into a tail spin" "we recovered however it zeroed us out" | William Sears | 1/19/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s, u | 1, 3 |
| 350 | Skype message from Sears to GJP: "how is my document?" | William Sears | 1/4/2013 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 351 | Skype message from Sears to GJP: "Awesome!" | William Sears | 1/4/2013 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 42 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 352 | Skype message from Sears to GJP:<br>"Guy I am a bit freaked out. How are we making it. This is a major presentation on Monday morning. I need to have the offering docs in hand." | William Sears | 4/25/2013 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 353 | Skype message from Sears to GJP:<br>"Good Morning. I am back in Colorado now. Things went well. Not the situation I thought it would be. However this is a good starting point for our new investment oppertunity." | William Sears | 5/2/2013 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 354 | Skype Message from Dittman to Sears:<br>"puke" | Scott Dittman | 10/6/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 355 | Skype Message from Dittman to Sears:<br>"fyi, got a call from Todd today. Nothing big, tell you after duke leaves" | Scott Dittman | 11/4/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 356 | Skype Message from Sears to Dittman:<br>"ok.....just poo'd a bit"<br>"seem cool" | William Sears | 11/4/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 357 | Skype Message from Dittman to Sears:<br>"Yeah, no big deal" | Scott Dittman | 11/4/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 358 | Skype Message from Sears to Dittman:<br>"cool tell me later" | William Sears | 11/4/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 359 | Skype Message from Sears to Dittman:<br>"hey I have to pay Guy today. FSPM check or mcm? 2500" | William Sears | 11/21/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 360 | Skype Message from Dittman to Sears:<br>"fspm is fine" | Scott Dittman | 11/21/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 361 | Skype Message from Sears to Dittman:<br>"ok" | William Sears | 11/21/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 362 | Skype Message from Sears to Dittman:<br>"Good morning.I would like to take what Richie did las week and pay Guy and Pink Sheets. That's about all it will cover anyway (if that)." | William Sears | 2/6/2012 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 363 | Skype Message from Sears to Dittman:<br>"need a check for 500 to put into Gys acct<br>Should I do MCM<br>this is for Buck<br>I am going to chat with Buck before giving the letter.i want this liquidated responsibily." | William Sears | 5/14/2012 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s, u, t | 1, 3 |
| 364 | Skype Message from Dittman to Sears:<br>"yes (mcm) Kay asked the "what's in billy's background, why isn't he on anything publicly" question. U need to address with her after this meeting." | Scott Dittman | 5/14/2012 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 43 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **365** | Skype Message from Sears to Dittman: "Need to put her on the back burner. We are only limited information on Pink sheets now. Seems the quarterly deadline is only 45 days now. I need it up (Current Filer Status ) for the IR push. So Cliffe needs to get the financials dione first. In addition lets talk later about finances. Got to get the 3-k to guy for the last two statements." "going to the gym now........call me when free........" | William Sears | 5/23/2012 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s, u, t | 1 |
| **366** | Email from Dittman to Richard@bhangchocolate.com: "Richard, I'm confirmed on the evening flight with my partner William Sears. Will be out there around 9pm. Can you still do tomorrow morning?9ish? Where is your facility? Would love to see production if at all possible." | Scott Dittman | 5/16/2011 | SWFBI_00027843 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **367** | Email from Sears to Jean-Pierre cc Dittman: "Guy, I was wondering if you would do some trademark registration work for us. We need to register in Colorado , Arizona ,California and Michigan. If so I will send over the details. In addition would you be willing to do lunch on Sunday?" | William Sears | 5/31/2011 | SWFBI_00027069 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **368** | Email from Sears to Jean-Pierre: "Guy, Please review and advise." Attaches "FSPM Disclosure Statement_06 30 11" | William Sears | 7/12/2011 | SWIRS_00001321 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **369** | Email from Sears to Jean-Pierre cc Dittman: "Guy, Scott lands in LAX at one thirty. So if the Lawyer could meet him somewhere close to the airport it would be ideal. His departing flight is 6:55. Given the meeting should be no longer than one hour and a half a two fifteen meeting would be great. Ill look into restaurants close by for the meet. Have a great weekend!" | William Sears | 7/17/2011 | SWFBI_00024138 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **370** | Email from Sears to Jean-Pierre cc Dittman: "Guy, We have decided to move ahead with our plan of doing a 506. I would like to file the form D to close the 504. I will send the sub docs for the two subscribers of the 504 so you can do this. I believe we send that for the first sub and the last we accepted. I will prepare most of the 506 document as I have a template I like. I would like you to review and advise once completed." | William Sears | 7/17/2011 | SWIRS_00001731 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 44 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 371 | Email from Sears to Jean-Pierre cc Dittman: "Guy, Good Morning. I would like to speak later on this afternoon. I want to go over the Form D filing and if it was done. In addition I want to clarify the 15C-211a with pink sheets. Also regarding Robert Taylor, I want to document all the correspondences you have sent to him so if we do not hear from him I want to be able to clean his debt off the books. Last but not least we will be making a deposit into your account on Wednesday." | William Sears | 8/8/2011 | SWFBI_00027437 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 372 | Email from Dittman to Sears: "Fyi. Need to get Guy involved at this point?" | Scott Dittman | 10/7/2011 | SWFBI_00024842 | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3 |
| 373 | Email from Dittman to Sears forwarding his 10/24/2011 email to Todd Kramer at FINRA | Scott Dittman | 11/3/2011 | SWFBI_00025315 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 374 | Email from Sears to Jean-Pierre cc Dittman: "Guy, Give this a quick eye as we are going to start sending these out as soon as we get the 504." | William Sears | 11/14/2011 | SWFBI_00025608 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 375 | Email from Sears to Jean-Pierre: "Guy Please find attached the 504 with some changes. I need you to go over the risk disclosures as I feel it is totally geared toward cannabis and gives the impression that if cannabis is doomed so are we." | William Sears | 11/16/2011 | SWFBI_00025671 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 376 | Email from Dittman to Kocinski, Sears cc Jean-Pierre: "Mike,Please make the following adjustments to the 9/30 financials and return the updated set to all participants on this email:Collapse the 2 revenue line items into 1...just call it salesDebit revenue 60k and set up a 'contract deposits' liability account. $60k of that revenue wasn't earned yet, just deposits on pods to be builtCredit inventory $56,193.64 and debit cost of good sold for the same Flow through all adjustments.. Thanks Mike." | Scott Dittman | 11/23/2011 | MK_00000419 | a, b, d, e, f, i, k, n, p, r, s, u, t | 1 |
| 377 | Email from Sears to Dittman and Jean-Pierre cc Kocinski: "Guys,I think we have some issues to address ................ " | William Sears | 11/28/2011 | MK_00000426 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 378 | Email from Dittman to Sears and Jean-Pierre: "Gentlemen, Made a couple of very small changes, not worth noting. I think we?re good. Billy?" | Scott Dittman | 12/27/2011 | SWFBI_00020031 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 45 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **379** | Email from Dittman to Sears, Jean-Pierre and DiTommaso: "Gents, I've talked with Garret at OTC markets and what he wants, in paragraph 2 of your item 2, inquiry and investigation, is to note that you've reviewed the December 29th information and disclosure statement. The current letter only references the December 27th information and disclosure statement. The opinion letter needs to reference the December 29th one also, showing that you reviewed the newest version after we made the changes requested by OTC markets to the last one." | Scott Dittman | 12/29/2011 | SWFBI_00020077 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **380** | Email from Dittman to Sears and Jean-Pierre: "Gents, Looks like one more? Or did you get this already. See below." | Scott Dittman | 12/29/2011 | SWFBI_00020078 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **381** | Email from Sears to Dittman cc Jean-Pierre attaching Fusion Pharm Inc SH Rpt 12-31-2011.pdf | William Sears | 1/3/2012 | SWFBI_00021592 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **382** | Letter from Kelly Blume: "My name is Kelly Blume; I am the Office Manager for Fusion Pharm, Inc. I am writing this letter to verify the employment of William Sears. Mr. Sears has been with our company as a 1099 employee with a gross pay of $5,000 per month since January of 2011. As of March 1,2012 Fusion Pharm, Inc. is moving to a payroll system and Mr. Sears will become a W-2 employee for our company at the same gross pay amount. If you require further information on Mr. Sears I can be contacted via phone at 303-681-6875 or via e-mail at kblume@fusionpharminc.com." | Kelly Blume | 1/30/2012 | SWIRS_00002853 | a, b, d, e, f, i, k, n, p, r, s, u | 1, 2 |
| **383** | Email from Bodden to Malino cc Sears: "Nick I have attached a presentation relating to FusionPharm, a company which I have been involved with since its reorganization last year. The company is seeking $200,000 - $400,000 in financing to complete the construction of its Denver facility and I thought that a facility similar to that which you proposed for Affordable Bio Feedstock would be worth discussing. Please take a look at the information and I'd like to schedule a call with the company next week." | Cliff Bodden | 3/24/2012 | SWIRS_00010844 | a, b, d, e, f, i, k, n, p, r, s, u | 1, 3 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **384** | Email from Sears to Kocinski and Dittman:<br>"Mike,I hope all is well. As you can see we are coming down to the wireregarding the filing the 12/3ls. We hope to have them to you tomorrow. I need to have them uploaded to OTC markets by Friday. Sorry for the small window however you know how these things go.Many Thanks in advance." | William Sears | 12/31/2012 | MK_00000467 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **385** | Email from Sears to Jean-Pierre cc Bodden attaching Pacific Transfer's Shareholder List through 3/31/2012 | William Sears | 5/23/2012 | SWFBI_00015733 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| **386** | Email from Sears to Jean-Pierre and Dittman attaching Pacific Transfer's Shareholder List through 12/31/2011 | William Sears | 5/23/2012 | SWFBI_00023671 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **387** | Email from Kocinski to Jean-Pierre cc Sears and Dittman:<br>"Dear Sir, I am the accountant that assisted with the preparation of the financial statements for FSPM for the period ending March 31, 2012. These statements were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years.<br>Please let me know if you need any further information." | Mike Kocinski | 6/7/2012 | SWFBI_00016576 | a, b, d, e, f, i, k, n, p, r, s | 1, 2 |
| **388** | Email from Dittman to Bodden cc Sears and Jean-Pierre:<br>"Will get on this first thing in the am" | Scott Dittman | 6/13/2012 | SWFBI_00015880 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 5 |
| **389** | Email from Bodden to Dittman and Sears:<br>"I will need the attached documents signed and in the case of the Amended and Restated Articles and Bylaws - filed at the State of Nevada SoS's office." | Cliff Bodden | 6/18/2012 | SWFBI_00017246 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **390** | Email from Sears to Jean-Pierre attaching FSPM Disclosure Statement_06 30 11:<br>"Guy, Please review and advise." | William Sears | 7/12/2011 | SWIRS_00001321 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **391** | Email from Sears to Dittman:<br>"Scott,<br>Please send to Amanda martin at Pacific Stock Transfer.<br>Amanda,<br>Good Afternoon. I would like to be informed when certificate numbered 11156 in the name of Morningstar Holdings LTD is presented for transfer.<br>At that time I will let you know if we should put a hold transfer. I am trying to find documentation regarding this transfer. Please feel free to contact me should you have any questions regarding this." | William Sears | 7/24/2012 | SWFBI_00016424 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **392** | Email from Bodden to Sears:<br>"I need to know how to book these deposits;" Bodden included a list of deposits. | Cliff Bodden | 8/4/2012 | SWIRS_00009406 | a, b, d, e, f, i, k, n, p, r, s | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 47 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 393 | Email from Sears to Jean-Pierre and Bodden attaching Pacific Transfer's Shareholder List through 6/30/2012 | William Sears | 8/7/2012 | SWIRS_00033186 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 394 | Email from Dittman to Bodden cc Jean-Pierre and Sears: "Please find attached for your review the Quarterly Report for the reporting period ended June 30, 2012 and accompanying financial statements for the periods ended June 30, 2012 and June 30, 2011. I have also attached the shareholder list for Guy's review to confirm the number of shareholders. Please let me know of any revisions or corrections required. Once your review is completed I'll consolidate the pages for filing." | Cliff Bodden | 8/8/2012 | SWIRS_00004403 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 395 | Email from Sears to Jean-Pierre cc Dittman attaching forms from Scottsdale Capital: "Just the issuer certification. Cut and paste it on letterhead and sign." | William Sears | 8/9/2010 | SWFBI_00017017 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 396 | Email from Sears to Jean-Pierre cc Dittman: "Guy, Please fins attached letter to the transfer agent dated last year. The issuances were to be for 2 year 144 as this was an employee issuance. Can you make sure the transfer agent is aware of this and it is on the books as such. Many thanks in advance." | William Sears | 9/12/2012 | SWFBI_00018984 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 397 | Email from Kocinski to Jean-Pierre cc Sears and Dittman: "Dear Sir, The financial statements for Fusion Pharm, Inc (FSPM) for the period ending September 30, 2012 were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any further information." | Mike Kocinski | 11/21/2012 | SWFBI_00015212 | a, b, d, e, f, i, k, n, p, r, s | 1, 2, 3 |
| 398 | Email from Dittman to Jean-Pierre cc Sears: "Guy, Here is the questionnaire again...appears that both pages are legible. Let me know if you have any problems reading." | Scott Dittman | 11/29/2012 | SWFBI_00015213 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 48 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **399** | Email from Sears to Pacific Stock:<br>"I do hope all of you are doing well. Please find attached a convertible note between Bayside Realty Holdings and Fusionpharm Inc. Bayside has chosen to<br>exercise its option to convert into shares. Aside from a legal opinion and payment for the cent (Absorbed by Bayside) what else would be required to get this done in an expeditious fashion? I would like to have a cert generated as quickly as possible. Bayside is a family members company and I am assisting them as I am familiar with all parties. So I will be the point person for all.<br>Regards,<br>William Sears" | William Sears | 12/12/2012 | INV_00008953 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **400** | Email from Sears to Pacific Stock:<br>"Good Afternoon. I do believe this is everything you will need and then some." | William Sears | 12/13/2012 | INV_00008953 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **401** | Email from Sandra Sears to Pacific Stock cc Sears:<br>"Joanna.<br>Please find attached the revised letter of opinion. I have already sent all the other docs you requested. Any chance of getting this printed and out today?<br>Thank you,<br>Sandy Sears" | Sandra Sears (Mother of William Sears)/William Sears | 12/24/2012 | INV_00008953 | a, b, d, e, f, i, k, n, p, r, s, v | 1, 2 |
| **402** | Email from Dittman to Sears, Bodden and Jean-Pierre attaching Form 1-a:<br>"Let's discuss" | Scott Dittman | 12/18/2012 | SWFBI_00015233 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **403** | Email from Sears to Pacific Stock:<br>"Yes use the cc we sent you. I read it just fine. The last draw down was well over a year ago and it's a financial instrument so just like 144 one year hold? What exactly are you looking for? I am confused" | William Sears | 12/26/2012 | PST_00007756 | a, b, d, e, f, i, k, n, p, r, s | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 USDC Colorado Page 49 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 404 | Email from Sears to Pacific Stock: "Joanna The first five paragraphs lay it out. I just spoke to the atty and he does not know what else he can possibly write. He is a bit confused. The note like stock is a financial instrument. It is aged. The second paragraph defines it and then it goes on. This transaction is righteous on every aspect of the word. The letter of opinion is very detailed and complete. If there is specific wording you require please advise and I will forward it to the atty to see what he thinks. Please advise as we are all a little confused at this time." | William Sears | 12/26/2012 | PST_00007770 | a, b, d, e, f, i, k, n, p, r, s, | 1, 5 |
| 405 | Email from Sears to Pacific Stock: "It was included with the package as Bayside is paying for the transfer agent fees. Why would it not be? We were trying to augment the process by giving all the paperwork up front. So I just forwarded your comments to the lawyer. Hopefully this can get wrapped up tomorrow." | William Sears | 12/26/2012 | PST_00007770 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 406 | Email from Sears to Pacific Stock: "Joanna, Here is the chapter and verse of 144 (d) (3) (ii) (ii) Conversions and exchanges . If the securities sold were acquired from the issuer solely in exchange for other securities of the same issuer, the newly acquired securities shall be deemed to have been acquired at the same time as the securities surrendered for conversion or exchange, even if the securities surrendered were not convertible or exchangeable by their terms. That's out of the book." | William Sears | 12/27/2012 | PST_00007781 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 407 | Email from Sears to Dittman attaching a Board Resolution Appointing Officers: "Sign and send to joanna" | William Sears | 12/27/2012 | SWFBI_00015242 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 408 | Authorization: "Bill Fill in the blanks (i) date after the last draw down; and (ii)outstanding balance at that date and print on Fusion letterhead. Have Scott sign and have it ready to present to Guy. I will reference it in my follow up email to you and Guy." | Cliff Bodden | 12/27/2012 | SWIRS_00037681 | a, b, d, e, f, i, k, n, p, r, s | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 50 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| 409 | Email from Sears to Scottsdale: "I am flying in tomorrow to see you and someone from compliance. I have a deposit to make into the above subjected account. I have EVERY piece of paperwork in existence for this transaction. The cert was just printed from the T/A. I want to go thru it with you and someone from compliance in order to augment the process. I land at ten and should be there around eleven the latest. I look forward to seeing you." | William Sears | 1/21/2013 | SEC-DOJ-EPROD- | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 410 | "My flight was delayed and unfortunately it will not give me the time to get back tonight as I have another meeting in the morning that I cannot miss. The file is too big to email and has been rejected by your server (It's 40 pages) .. I am sending the documentation VIA Federal Express. Gentlemen this is a very complete Due Diligence file. I do not expect to be held up for two weeks to trade this. Joanna DiBella was the securities Supervisor that worked on this at Pacific Stock Transfer (702) 361-3033. This is a fresh issuance, thoroughly documented and easily verified. Thank you for you cooperation regarding this matter and lets speak tomorrow." | William Sears | 1/22/2013 | SEC-DOJ-EPROD- | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 411 | Email from Dittman to Sears attaching the 2012 Annual Information and Disclosure Statement | Scott Dittman | 3/5/2013 | SWFBI_00015340 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 |
| 412 | Email from Sears to Jean-Pierre, Kocinski and Dittman: "Guy, Mike is going thru the financials now. He will send you his email once he is satisfied. Should be 48 hours." | William Sears | 2/27/2013 | SWFBI_00015323 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| 413 | Email from Sears to Pacific Stock cc Dittman attching DiTommaso Attorney Opinion Letter for SGI Group, LLC: "Joanna Just saw this one did not go!" | William Sears | 3/7/2013 | PST_00007896 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| 414 | Email from Sears to Pacific Stock: "J, Strange as this shows as sent on Friday. With regard to the letter of opinions this seems more as a matter of fact. These letter have a significant cost to prepare and amend. I have had council insert statements in both resolutions and issuer letters affirming this." | William Sears | 3/11/2013 | PST_00008019 | a, b, d, e, f, i, k, n, p, r, s | 1 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **415** | Email from Sears to Dittman attaching Private Placement Memorandum: "Scott Just fill in the spread sheet tables. I am filling in and correcting the rest. This is just the first draft." | William Sears | 4/26/2013 | SWFBI_00013898 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **416** | Email from Sears to Dittman cc Jean-Pierre: "Financial posted" | William Sears | 6/30/2013 | SWFBI_00015012 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 |
| **417** | Email from Dittman to Thaden:<br>"We think this investment is best broken into 2 parts.<br>Part 1 would be a $50,000 investment directly into FusionPharm for 5,000 shares of Preferred Stock (convertible into 500,000 shares of free trading). These shares, because they are issued new by FusionPharm would carry a 1 year trading restriction.<br>Part 2: Purchase part of the existing note payable from FusionPharm to Meadpoint Venture Partners. Said note is convertible to class a common stock which would be free trading immediately upon conversion. Purchase price would be $50,000 and would be convertible into 500,000 shares of free trading FSPM stock. I have spoken with Bill Sears of Meadpoint and he is amenable to this transaction.<br><br>Meadpoint would use it's $50,000 to immediately purchase the 2 containers referenced above and as the marketing entity into the cannabis market would use the containers and | Scott Dittman | 8/5/2013 | SWFBI_00008506.( | a, b, d, e, f, i, k, n, p, r, s, u, t | 1, 3 |
| **418** | "Ok I have got it down on the paperwork. Now as far as free, with 1million shares in your name solely, you would be subject to a trickle rule. Basically considered an insider. We have only 5.6 issued and outstanding and 1mm puts you over the 10% realm. So we need a second company or persons name. In addition I will need the tax Id/ssn for the transfer agent. Ill have all this wrapped up next week! Thanks and I look forward to seeing you shortly as ill be in town." | William Sears | 8/14/2013 | SWFBI_00008651 | a, b, d, e, f, i, k, n, p, r, s | 1 |

Case 1:17-cr-00008-WJM Document 112-1 Filed 06/15/18 Page 52 of 52

| | | | | | | |
|---|---|---|---|---|---|---|
| **419** | Email from Dittman to Sears:<br>"Please read carefully, make sure I updated all the dates from last year (you missed quite a few :-) Let me know if you have the OTC form that needs to be filled out and attached to this." | Scott Dittman | 8/20/2013 | SEC-DOJ-EPROD- | a, b, d, e, f, i, k, n, p, r, s, l, v | 1, 6 |
| **420** | Email from Sears to Dittman:<br>"Joanna,<br>Please send the certificates directly to the addresses listed on the<br>conversion notices. In addition the Star City one seemed unclear so here it is:<br>Star City Capital C/O Summit Trust Company<br>Compliance office<br>Attention ABK Capital<br>465 Furnace Street suite G<br>Marshfield MA 02050<br>I do believe this wraps it all up. Thank you for your cooperation" | William Sears | 9/13/2013 | SWFBI_00009145 | a, b, d, e, f, i, k, n, p, r, s | 1, 5 |
| **421** | Email from Dittman to Transfer Agent:<br>"Joanna,<br>Please send the certificates directly to the addresses listed on the conversion notices. In addition the Star City one seemed unclear so here it is:<br>Star City Capital C/O Summit Trust Company<br>Compliance office<br>Attention ABK Capital<br>465 Furnace Street suite G<br>Marshfield MA 02050<br>I do believe this wraps it all up. Thank you for your cooperation." | Scott Dittman | 9/13/2013 | PST_00002939 | a, b, d, e, f, i, k, n, p, r, s | 1 |
| **422** | Email from Dittman to Pacific Stock cc Sears:<br>" Joanna, we will take care of this in the am and will advise when done" | Scott Dittman | 9/18/2013 | PST_00008929 | a, b, d, e, f, i, k, n, p, r, s | 1, 5 |
| **423** | Email from Sears to Pacific Stock and Dittman:<br>"Please find attached the payment document. May I have a receipt showing the balance zeroed. In addition I never got a receipt for the payment made last week." | William Sears | 9/19/2013 | PST_00008929 | a, b, d, e, f, i, k, n, p, r, s | 1, 5 |
| | | | | | | |

Case 1:17-cr-00008-WJM Document 112-2 Filed 08/15/18 Page 1 of 1

**Defendant Jean-Pierre's Objections to the Government's Proffered Alleged Coconspirators' Statements**

1. Mr. Jean-Pierre was not a member of the alleged conspiracy.

2. The declarant listed in the government's *James* log was not an alleged coconspirator.

3. This statement is inadmissible because it was not made in furtherance of the conspiracy.

4. The "statement' set forth by the government is not a statement.

5 No such statement was made by this declarant at the source referenced by the government in its *James* log.

6. The defense cannot locate the source document in the discovery supplied by the government.

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 1 of 26

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA

Plaintiff,

v.

1. GUY M. JEAN-PIERRE,
a/k/a Marcelo Dominguez de Guerra,

Defendant.

---

**SECOND SUPERSEDING INDICTMENT**

---

The Grand Jury charges:

COUNT 1
(Conspiracy to Commit Securities Fraud)

1. Beginning as early as on or about March 25, 2011 and continuing at least through on or about May 15, 2014, the exact dates being unknown, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, did knowingly and willfully conspire, combine and agree with Coconspirators WJS and SMD, and with other persons both known and unknown, (a) to defraud the United States and one of its agencies, the United States Securities and Exchange Commission ("SEC"), by impeding, impairing, defeating and obstructing the lawful governmental functions of the SEC; a (b) to commit the following offenses against the United States:

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 2 of 26

(i) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5 [Rule 10b-5].

Background

2. FusionPharm, Inc. ("FusionPharm) was a corporation with its principal place of business in Denver, Colorado and later in Commerce City, Colorado. Although not registered with the SEC, the corporation's stock had been quoted on the OTC Link and had been publicly traded. In or about November 2010, Co-conspirator WJS, working with defendant JEAN-PIERRE, negotiated for control of the corporation, Baby Bee Bright Corporation, to be turned over to Co-conspirators WJS and SMD.

3. With this change in control and ownership, FusionPharm's principal business became the development, manufacture and sale of steel shipping containers retrofitted and refurbished for use as hydroponic growing pods, branded as "PharmPods," for indoor plant cultivation, primarily cannabis. Co-conspirator SMD was held out to be the founder, Chief Executive Officer and sole Director of FusionPharm but, in fact, operated FusionPharm, and pursued and developed its business, together with Co-conspirator WJS, and the two Co-conspirators together beneficially held and controlled the majority of shares of FusionPharm's common and preferred stock.

4. In disclosure documents filed in December 2011 and in March 2012 on the OTC Link website, defendant JEAN-PIERRE was described as FusionPharm's Corporate Secretary and, at times its Legal Counsel, as well as one of its paid employees. From its inception as FusionPharm through in or about August 2013, JEAN-PIERRE functioned as the

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 3 of 26

company's *de facto* General Counsel and provided legal advice and services in connection with the company's corporate and securities matters.

5. In October 2011, the Financial Industry Regulatory Authority, Inc. ("FINRA") was in the process of conducting an investigation, among other things, of trading activity involving the common stock of FusionPharm, including sales of that common stock that were being conducted by or on behalf of Microcap Management, LLC ("Microcap"), an entity formed by Co-conspirator WJS. The brokerage account records relating to these stock sales included Rule 144 Attorney Letters authored by defendant JEAN-PIERRE's niece, Relative A. On or about October 5, 2011, an investigator for FINRA telephonically contacted Co-conspirator SMD to set up a telephone interview to discuss FusionPharm and its securities trading activities. The FINRA investigator interviewed SMD about these and related subjects the following day. As a part of the manner and means of carrying out the conspiracy, Co-conspirator SMD, in that interview and in follow up communications with the FINRA investigator, represented, in words and substance, among other things, that Co-conspirator WJS' role at FusionPharm was limited to being a part-time salesman; that he was unaware of WJS having owned or sold any FusionPharm stock; that WJS no longer owned Microcap; and that he would undertake to produce written confirmation of this to FINRA.

Manner and Means of the Conspiracy

6. As a further part of the manner and means of carrying out the conspiracy, and attempting to do so, and in order to deflect FINRA's inquiry about FusionPharm stock sales by WJS and Microcap, Co-conspirators WJS and SMD and defendant JEAN-PIERRE undertook the following:

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 4 of 26

A. On or about October 19, 2011, defendant JEAN-PIERRE, at WJS' request, prepared a stock purchase agreement and incorporated assignment of interest, back dated to May 9, 2011, that purported to convey to another individual ("Individual A") as of the May 9th date, all ownership interest that conspirator WJS had had in Microcap, and to transfer to Individual A all right and title in all Microcap brokerage accounts for the purchase price of $10.00. Individual A worked with Co-conspirator WJS to sell Co-conspirator WJS' FusionPharm stock.

B. A short while thereafter, Co-conspirator WJS signed and backdated these documents and caused Individual A to do the same.

C. On or about November 30, 2011, Defendant JEAN-PIERRE, acting in his capacity as FusionPharm's Corporate Secretary, then drafted a letter responding to the FINRA investigators' renewed requests for follow up written information about WJS, the Microcap stock sales and the change in ownership of Microcap. Defendant JEAN-PIERRE provided a draft of the letter for review and approval by SMD and WJS, and following their review and approval, defendant JEAN-PIERRE sent this letter to the FINRA investigator in the form of an email. In this email, defendant JEAN-PIERRE characterized WJS as "a prior owner of Microcap" and indicated, in words and substance, in material part, that the requests concerning WJS and Microcap constituted non-company information that SMD was not authorized to produce to FINRA; that FusionPharm was not, in any event, in possession of the requested written information concerning WJS, Microcap or its new owner; and that FINRA should direct further requests for this information to Microcap.

7. It was a further part of the manner and means of carrying out the conspiracy, in order to generate additional FusionPharm common stock that could immediately be sold, without registration and without limitation, into the public securities markets, that Co-conspirators WJS and SMD, together with defendant JEAN-PIERRE, did and caused the following to be done:

A. Over the course of June 2012 through in or about December 2012, with the knowledge, advice and approval of defendant JEAN-PIERRE, Co-conspirators WJS and SMD, working together with another individual (identified hereinafter as, “Co-conspirator A”), fabricated promissory notes and incorporated credit line agreements, in order to portray some of the money that had previously been deposited into FusionPharm’s bank accounts from the Microcap FusionPharm stock sales as loans from Bayside Realty Holdings, LLC (“Bayside”). Bayside was an entity controlled and operated by Co-conspirator WJS that was held out to be managed and owned by a blood relative family member (hereinafter “Family Member A”), and Meadpoint Venture Partners (“Meadpoint”), an entity set up and controlled by Co-conspirator WJS, that had been extended to FusionPharm over a year before.

B. Co-conspirators WJS and SMD and Co-Conspirator A fabricated documentation making it appear that FusionPharm had drawn down on the supposed credit lines established with Bayside and Meadpoint by specified amounts, and they assembled bank records to offer substantiation for these supposed earlier credit line drawdowns.

C. As part of an initial failed effort to sell one of these supposed debt obligations – the indebtedness to Bayside -- to a prospective outside investor, the Co-conspirators, working with defendant JEAN-PIERRE, portrayed the debt obligation as a

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 6 of 26

straightforward promissory note and provided the prospective investor a due diligence package consisting of a version of the fabricated back-dated promissory note, together with the fabricated draw down requests and other, fabricated back-dated documents that defendant JEAN-PIERRE helped prepare depicting prior corporate actions.

D. Co-conspirators WJS and SMD and Co-Conspirator A, in the final iterations of these fabricated promissory notes and supporting documents, made it appear that the supposed debt evidenced by these notes could be converted in whole or in pieces, at the election of the noteholders, into shares of FusionPharm common stock at a specified conversion rate of one FusionPharm share for every penny of debt supposedly still owed on the notes by FusionPharm.

E. Co-conspirator SMD, on behalf of FusionPharm, and Co-conspirator WJS, on behalf of Meadpoint and acting for Family Member A on behalf of Bayside, executed the backdated promissory notes and documents.

F. Co-conspirators WJS then generated packets of documents that WJS caused to be presented to FusionPharm's stock transfer agent, over a series of months, in order to effectuate the conversion of portions of the supposed debt held by Bayside and Meadpoint into shares of FusionPharm common stock. The packets typically included the following:

- convertible promissory notes that Co-conspirators WJS and SMD had backdated;
- the backdated draw down requests that SMD had signed on behalf of FusionPharm;
- copies of bank account statements showing deposits to FusionPharm's accounts corresponding to the draw down requests;

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 USDC Colorado Page 7 of 26

- letters from Bayside and Meadpoint (depending on the entity exercising the conversion), for signature by Family Member A for Bayside and WJS for Meadpoint, falsely representing that the entities were not affiliates of FusionPharm;

- additional statements of non-affiliation for Bayside and Meadpoint (again depending on the entity exercising the conversion), reiterating that neither entity was a FusionPharm affiliate and additionally representing that neither Family Member A, in the case of Bayside, and WJS, in the case of Meadpoint, was an officer, director, control person or holder of more than ten percent of the securities of FusionPharm;

- a FusionPharm officer's certificate, signed by SMD, representing that neither Bayside nor Meadpoint (depending on the entity making the conversion) were affiliates of FusionPharm and were outsiders to the company and management, with no other method of control over the company, and that the convertible promissory notes that were the vehicles for the conversion were valid obligations of the company;

- letters signed by SMD reiterating that Bayside and Meadpoint were not affiliates of the company.

G. Defendant JEAN-PIERRE, using the foregoing submissions prepared for the FusionPharm stock transfer agent, as part of this process, would prepare Rule 144 Attorney Opinion Letters opining that the shares of FusionPharm stock being converted from the supposed Bayside and Meadpoint debt could be issued as unrestricted, free-trading shares, without the need for a restrictive legend, because of Bayside's and Meadpoint's supposed non-affiliate status and because the one year holding and the other requirements for a registration exemption under SEC Rule 144 had been met.

H. Defendant JEAN-PIERRE would then transmit the Rule 144 Attorney Opinion Letters, together with some or all of the documentation that had been submitted to the FusionPharm stock transfer agent, to an attorney in California whom he had previously

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 8 of 26

recruited to sign Rule 144 Attorney Opinion Letters and other opinion letters on JEAN-PIERRE's behalf generally (said attorney hereinafter, the "Co-conspirator B").

I. Co-conspirator B would then retype the Rule 144 Attorney Opinion Letters on his own letterhead and, upon signing them in his own name, would return the completed letters to defendant JEAN-PIERRE, who, in turn, would forward them to Co-conspirator WJS for submission with FusionPharm's stock transfer. Co-conspirator WJS would then present the completed Rule 144 Attorney Opinion Letters to the transfer agent, completing the process.

J. Through these false portrayals of Bayside and Meadpoint as non-affiliates of FusionPharm and the promissory notes to them as bona fide convertible indebtedness held for a requisite period of time, FusionPharm's stock transfer agent was induced into issuing certificates for hundreds of thousands of shares of FusionPharm common stock that could be immediately sold into the public securities markets without limitation.

8. It was a further part of the manner and means of carrying out the conspiracy that Co-conspirator WJS thereafter caused a substantial portion of the common shares issued to Bayside and Meadpoint as a result of these supposed debt conversions to be deposited into brokerage accounts set up in the names of Bayside and Meadpoint and then caused these shares to be sold in the public securities markets. The Rule 144 Attorney Opinion Letters prepared by JEAN-PIERRE and retyped by Co-conspirator B would be presented to the brokerage firms, as necessary, in order to facilitate the deposit of these shares.

9. As a part of the manner and means of carrying out the conspiracy, the unrestricted commons shares issued to Bayside and Meadpoint as result of the supposed debt

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 9 of 26

conversions would, alternatively, be sold in private transactions to other individuals, who would, in turn, sell the shares into the public securities market. Additionally, remaining portions of the supposed Bayside and Meadpoint convertible debt would be sold outright to other individuals who then converted the purchased debt into free trading, unrestricted common shares of FusionPharm stock and then publicly sold the shares. In each of these instances, the conversions would be facilitated by Rule 144 Attorney Opinion Letters prepared by defendant JEAN-PIERRE, retyped by Co-conspirator B and submitted by Co-conspirator WJS to the stock transfer agent.

10. As a further part of the manner and means of carrying out the conspiracy, defendant JEAN-PIERRE in consultation with Co-conspirators SMD, WJS, and Co-conspirator A, a business associate of WJS, would cause the financial statements and the quarterly and annual reports that were posted to OTC Link website to omit facts to include that Meadpoint, Vertifresh, LLC ("Vertifresh"), and FusionPharm were under the common control of Co-conspirators SMD and WJS, criminal convictions of beneficial owners of FusionPharm, related party transactions with immediate family members and significant beneficial owners of FusionPharm stock, and Co-conspirator WJS' involvement in the FusionPharm and his beneficial ownership of its stock. Vertifresh was a limited liability company jointly owned and controlled by Co-conspirators WJS and SMD. In connection with the posting of these quarterly and annual reports to the OTC Link website, defendant JEAN-PIERRE would and did prepare a series of corresponding Current Information Letters that stated and indicated, among other things, that the letter's author had reviewed FusionPharm's current and past annual and quarterly OTC Link submissions and that in the

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 10 of 26

author's opinion the information disclosed in these findings constituted "adequate current information," within the meaning of the federal securities law, concerning FusionPharm and its securities. JEAN-PIERRE would and did pass these letters along to Co-conspirator B for Co-conspirator B to retype onto his own letterhead. JEAN-PIERRE would then transmit the retyped Current Information Letters to Co-conspirators SMD and WJS, who would upload them onto the OTC Link website.

Overt Acts

11. In furtherance of the conspiracy and to effect the objects thereof, one or more overt acts were carried out by at least one co-conspirator in the State and District of Colorado and elsewhere, which overt acts included the following:

A. On or about September 1, 2010, defendant JEAN-PIERRE sent a Skype message to Co-conspirator WJS that acknowledges Co-conspirator WJS' making a deal with a company he just acquired and Co-conspirator WJS acknowledging his acquisition of the company to defendant JEAN-PIERRE.

B. On or about March 25, 2011, an Issuer Company-Related Action Notification form was filed with the FINRA providing notice of a name change to, and stock symbol change with respect to, FusionPharm, identifying SMD and Family Member A as the sole officers and directors of the company, and representing, among other things, that none of the company's officers, directors or parties related to the company were the subjects of pending, adjudicated or settled civil or criminal action related to fraud or securities violations.

C. On or about July 8, 2011, defendant JEAN-PIERRE sent Co-conspirator WJS an email attaching a draft of a FusionPharm Information and Disclosure

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 11 of 26

Statement to review.

D. On or about July 18, 2011, defendant JEAN-PIERRE sent an email to Co-conspirator SMD to set up a meeting between SMD and Co-conspirator B.

E. On or about October 5, 2011, Co-Conspirator WJS sent defendant JEAN-PIERRE a Skype message stating, "This is a new division of FINRA only enacted post Madoff" after a FINRA investigator reached out to Co-conspirator SMD on the same day.

F. On or about October 6, 2011, Co-conspirator SMD had a telephone conversation with a FINRA investigator during which he described Co-conspirator WJS as a part-time salesman for FusionPharm and stated that he was unaware that WJS owned or was selling FusionPharm stock.

G. On or about October 10, 2011, defendant JEAN-PIERRE traveled to Denver, Colorado to meet with Co-conspirators WJS and SMD.

H. On or about October 19, 2011, defendant JEAN-PIERRE sent Co-conspirator WJS an email, with the subject described as "Proposed Agreement re purchase of MicroCap," attaching a document dated May 9, 2011 and entitled, "Agreement for the Purchase of Ownership Interest."

I. On or about November 3, 2011, Co-conspirator SMD had another telephone conversation with the same FINRA investigator during which he stated that Co-conspirator WJS no longer owned Microcap or any FusionPharm stock.

J. On or about November 7, 2011, Co-conspirator WJS sent defendant JEAN-PIERRE a Skype message stating, "In addition please call scott on skype as to the Finra guy".

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 12 of 26

K. On or about November 30, 2011, defendant JEAN-PIERRE emailed the FINRA investigator a written response to the investigator's requests for further information about Microcap, WJS and the purported change in ownership of Microcap.

L. Sometime around May, 2012, Coconspirator WJS and Conspirator A met with defendant JEAN-PIERRE in Florida to discuss the financing of FusionPharm.

M. On or about June 20, 2012, Conspirator A emailed Co-conspirators WJS and SMD and defendant JEAN-PIERRE a proposed due diligence package for a prospective FusionPharm debt purchaser that included nonconvertible versions of purported promissory notes held by Bayside and Meadpoint.

N. On or about November 26, 2012, Co-Conspirator A sent an email to Co-conspirator WJS attaching drafts of convertible promissory notes for Bayside and Meadpoint and advising that the "Notes work with the existing draw down requests."

O. On or about December 12, 2012, Co-conspirator WJS sent an email to a representative of FusionPharm's stock transfer agent transmitting a convertible promissory note in favor of Bayside, notifying the transfer agent that "Bayside has chosen to exercise its option to convert into shares [sic]," and that "Bayside [was] a family members [sic] company and I am assisting them [sic] as I am familiar with all parties."

P. On or about December 27, 2012, Co-Conspirator A sent Co-conspirator SMD an email stating, "We are in need of a letter which confirms the end of the drawdowns under the Bayside promissory note," and advising that Co-Conspirator A had drafted such a letter for SMD's signature.

Q. On or about January 7, 2013, Co-conspirator WJS sent an email to a

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 13 of 26

representative of FusionPharm's stock transfer agent, with subject identified as "Bayside Note FSPM," transmitting a Rule 144 Attorney Opinion Letter prepared by defendant JEAN-PIERRE and signed by Co-conspirator B, FusionPharm bank account statements "which reflect funding" and a "[c]losing letter that closed the note."

R. On or about the dates set forth below, the following written submissions for FusionPharm were posted to OTC Link's website portal:

| **Overt Act** | **Date** | **Document** |
|---|---|---|
| R.1 | 7/21/11 | FusionPharm Information and Disclosure Statement for the period ended June 30, 2011 (posted as "Initial Company Information and Disclosure Statement) |
| R.2 | 7/22/11 | Current Information Letter |
| R.3 | 12/29/11 | FusionPharm Information and Disclosure Statement for the period ended September 30, 2011 |
| R.4 | 12/30/11 | Current Information Letter |
| R.5 | 3/31/12 | FusionPharm Annual Information and Disclosure Statement for the period ended December 31, 2011 |
| R.6 | 4/10/12 | Current Information Letter |
| R.7 | 6/12/12 | FusionPharm Quarterly Report for the period ended March 31, 2012 (revised) |
| R.8 | 6/14/12 | Current Information Letter |

S. The wire transmissions described and set forth in Counts 2 through 16 of this Second Superseding Indictment are incorporated herein by reference and re-alleged as individual overt acts done in furtherance of the conspiracy.

T. The mailings and deliveries described and set forth in Counts 17 through 20 of this Second Superseding Indictment are incorporated herein by reference and re-alleged as individual overt acts done in furtherance of the conspiracy.

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 14 of 26

U. The securities transactions described and set forth in Counts 21 through 23 of this Second Superseding Indictment are incorporated herein by reference and re-alleged as individual overt acts done in furtherance of the conspiracy.

In violation of Title 18, United States Code, Section 371.

COUNTS 2 – 16
(Wire Fraud)

12. The allegations contained in paragraphs 2 through 11 of this Second Superseding Indictment are hereby re-alleged as if set out in full and incorporated by reference in these counts of the Second Superseding Indictment.

13. At all times material to these counts, OTC Link required attorneys who wished to post Current Information Letters on its website to complete an Attorney Letter Agreement with respect to each company for which the attorney undertook to prepare such letters. The Attorney Letter Agreement required the attorney, among other things, to comply with certain prescribed written guidelines in preparing the Current Information Letters. These guidelines included the requirement that, if the letters relied on the work of another attorney, that counsel be identified and that counsel's own letters accompany the Current Information Letters. These guidelines also included the requirement that the authoring attorney state, to the best of counsel's knowledge, whether the company, and its shareholders owning more than five percent of the company's securities, or counsel him or herself, were under federal or state regulatory investigation for any violation of federal or states securities laws.

14. On or about December 6, 2012, the SEC commenced a federal civil enforcement action in the Southern District of New York alleging that defendant JEAN-

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 15 of 26

PIERRE had committed various federal securities violations in connection with misappropriating Jean-Pierre Relative A's identity and, without her knowledge, preparing a series of Current Information Letters, Rule 144 Attorney Opinion Letters, and similar securities opinion letters in her name and forging her signature on these letters (Case No. 12-cv-8886).

15. From at least in or about March 2011 and continuing at least through in or about August 2013, the exact dates being unknown to the Grand Jury, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, together with, and aiding and abetting, others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud the SEC, FusionPharm's stock transfer agent, OTC Link, and individuals and entities who invested in FusionPharm and its securities in private transactions and were involved in the public trading of its common stock.

16. It was a further part of the scheme and artifice to defraud that defendant JEAN-PIERRE misrepresented, and assisted in the misrepresentation of, Microcap, Bayside and Meadpoint, and falsely portrayed these entities as non-affiliates of FusionPharm in Rule 144 Attorney Opinion Letters and related documents that were submitted to FusionPharm's stock transfer agent, in connection with efforts to convert supposed debt obligations to unrestricted shares of FusionPharm common stock, and in connection with efforts to deposit unrestricted common shares held in the names of these entities into brokerage accounts.

17. As a further part of the scheme and artifice to defraud, defendant JEAN-PIERRE prepared, assisted in the preparation of and reviewed and approved quarterly and

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 16 of 26

annual disclosure documents and financial statements and incorporated notes posted to OTC Link's website that, among other things, concealed the role of WJS in the business of FusionPharm; his status as a *de facto* officer of FusionPharm and his joint control with SMD of its business affairs; and his beneficial ownership of preferred and common shareholdings in FusionPharm; and that concealed and obfuscated related party transactions between FusionPharm, Meadpoint and Vertifresh that were claimed as the basis for FusionPharm's reported revenues.

18. It was a further part of the scheme to defraud that defendant JEAN-PIERRE prepared Current Information Letters that falsely represented that the quarterly and annual disclosure documents and financial statements and incorporated notes uploaded to OTC Link's website on behalf of FusionPharm constituted adequate current information about FusionPharm and its securities within the meaning of applicable federal securities laws.

19. It was a further part of the scheme to defraud that defendant JEAN-PIERRE would prepare these letters and the Rule 144 Attorney Opinion Letters for Co-conspirator B to sign and to represent as his own work product, and to serve as a primary conduit with Co-conspirator B for the information supporting the contents of these letters and the opinions conveyed in them. The letters themselves would fail to disclose defendant JEAN-PIERRE's role and involvement in the preparation of the letters and, after December 2012, the fact that he was the subject of a federal civil law enforcement action alleging wrongdoing with respect to the same type of attorney opinion letters.

<u>Wire Transmissions in Execution of the Scheme</u>

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 17 of 26

20. On or about the dates enumerated as to each count below, in the State and District of Colorado, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by false and fraudulent pretenses, representations and promises, and attempting to do so, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, did knowingly transmit and cause to be transmitted in interstate commerce, and did aid and abet others to cause to be transmitted, from or to a place within the State of Colorado to or from the places outside of Colorado, by means of wire communications, certain writings, signals and sounds, representing and constituting the following:

**The Uploads of FusionPharm Quarterly and Annual Reports to OTC Link.**

| **COUNT** | **DATE** | **WIRE TRANSMISSION** |
|---|---|---|
| 2 | 8/14/12 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Quarterly Report for the period ended June 30, 2012 |
| 3 | 11/15/12 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Quarterly Report for the period ended September 30, 2012 |
| 4 | 3/6/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Annual Information and Disclosure Statement for the period ended December 31, 2012 |
| 5 | 7/5/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Quarterly Report for the period ended March 31, 2013 |
| 6 | 8/20/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Quarterly Report for the period ended June 30, 2013 |
| 7 | 8/20/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Supplemental |

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 18 of 26

| | | |
|---|---|---|
| | | Information - OTC Pink Basic Disclosure Guidelines Questionnaire |

**The Uploads of FusionPharm Current Information Letters to OTC Link.**

| **COUNT** | **DATE** | **WIRE TRANSMISSION** |
|---|---|---|
| 8 | 8/16/12 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Current Information Letter |
| 9 | 3/11/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Current Information Letter |
| 10 | 7/5/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Current Information Letter |
| 11 | 8/23/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Current Information Letter |

**The Submission FusionPharm Rule 144 Attorney Opinion Letters to Pacific Stock Transfer Co. ("PSTC").**

| **COUNT** | **DATE** | **WIRE TRANSMISSION** |
|---|---|---|
| 12 | 1/4/13 | Email from WJS to PSTC attaching Rule 144 Attorney Opinion Letter re: issuance of 140,000 common shares of FusionPharm common stock to Bayside |
| 13 | [9/12/13] | Email from WJS to PSTC attaching five Rule 144 Attorney Opinion Letter re: issuance of common shares of FusionPharm common stock to Bayside for five specified investors |
| 14 | 3/31/13 | Email from WJS to PSTC attaching Rule 144 Attorney Opinion Letter re: issuance of 475,000 common shares of FusionPharm common stock to Meadpoint |
| 15 | 8/13/13 | Email from WJS to Scottsdale attaching Rule 144 Attorney Opinion Letter re: issuance of 500,000 common shares of FusionPharm common stock to Meadpoint |

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 19 of 26

| 16 | 8/26/13 | Email from WJS to PSTC attaching Rule 144 Attorney Opinion Letter re: issuance of 1,500,000 common shares of FusionPharm common stock to Meadpoint to three individuals, each to be allocated 500,000 shares a piece |
|---|---|---|

In violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS 17 -20
(Mail Fraud)

21. The allegations contained in paragraphs 2 through 11 of this Second Superseding Indictment are hereby re-alleged as if set out in full and incorporated by reference in these counts of the Second Superseding Indictment.

22. On or about the dates enumerated as to each count below, in the State and District of Colorado, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money and property by means of false and fraudulent material pretenses and representations, and attempting to do so, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, did knowingly cause, and aid and abet others to cause, the following matters and things to be sent and delivered by a commercial interstate carrier, according to the direction thereon:

| **COUNT** | **DATE** | **MAIL MATTER** |
|---|---|---|
| 17 | 7/25/12 | Federal Express Envelope, Tracking No. 800575942347, addressed to PSTC in Las Vegas, Nevada, containing FusionPharm Stock Cert. 7385 for 40,000 shares in the name of individual shareholder T.A., together with a stock power, a Rule 144 Attorney Opinion Letter, an officer's certificate, stock purchase agreement, debt settlement agreement, and instruction letters from Microcap and T.A. |
| 18 | 8/1/12 | Federal Express Envelope, Tracking No. 798688446223, |

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 20 of 26

| | | |
|---|---|---|
| | | addressed to WJS in Colorado, containing FusionPharm Stock Cert. 11176 issued to Microcap for 40,000 shares |
| 19 | 1/18/13 | Federal Express Envelope, Tracking No. 794557022916, addressed to WJS in Colorado, containing FusionPharm Stock Certificate 11208 issued to Bayside for 140,000 shares |
| 20 | 8/15/13 | Federal Express envelope, Tracking No. 796476186341, addressed to WJS in Colorado, containing FusionPharm Stock Cert. 11227 issued to Meadpoint for 500,000 shares |

In violation of Title 18, United States Code, Sections 1341 and 2.

COUNTS 21-23
(SECURITIES FRUAD)

23. The allegations contained in paragraphs 2 through 11 of this Second Superseding Indictment are hereby re-alleged as if set out in full and incorporated by reference in these counts of the Second Superseding Indictment.

24. From at least in or about April 2011 and continuing until at least in or about August 2013, the exact dates being unknown to the Grand Jury, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, with others known and unknown to the Grand Jury, willfully and knowingly, by the use of means and instrumentalities of interstate commerce, and the mails, did aid, abet, counsel, induce, and cause others to, directly and indirectly use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 21 of 26

would operate as a fraud and deceit upon other persons and entities, all in connection with the purchase and sale of FusionPharm common stock.

25. On or about the dates set forth below, as to each of the enumerated Counts, in the State and District of Colorado, and elsewhere, by use of the means or instrumentalities of interstate commerce, and by use of a national securities exchange, and in furtherance of this scheme to defraud and course of business, the defendant, GUY M. JEAN-PIERRE, did aid and abet, and counsel and induce the following securities transactions to be executed in brokerage accounts held in the names of Microcap, Bayside and Meadpoint:

| **Count** | **Approx. Date** | **Securities Transaction** |
|---|---|---|
| 21 | 10/18/12 | Sale of 5,036 shares of FusionPharm common stock held in a brokerage account in the name of Microcap at Scottsdale Capital Advisors |
| 22 | 2/4/13 | Sale of 2,085 shares of FusionPharm common stock held in a brokerage account in the name of Bayside at Scottsdale Capital Advisors |
| 23 | 5/14/13 | Sale of 21,676 shares of FusionPharm common stock held in a brokerage account in the name of Meadpoint at Scottsdale Capital Advisors |

In violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5 [Rule 10b-5]; and Title 18, United States Code, Section 2.

COUNTS 24 – 28
(Wire Fraud)

26. From on or about February 26, 2016 and continuing until on or about April 29, 2016, the exact dates being unknown to the Grand Jury, in the State and District of Colorado,

and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, devised, and intended to devise, a scheme and artifice to defraud the SEC, OTC Link, and individuals and entities involved in the purchase and sale of securities of microcap companies in the public, over-the-counter securities markets, including, without limitation, stock transfer agents and securities brokerage firms.

a. As part of the scheme and intended scheme that when presented with an opportunity to engage in securities fraud by one of the coconspirators named in Count 1, above, who was then acting as an undercover operative (CW) of the Federal Bureau of Investigation, the defendant accepted the opportunity to assist in the transformation of Vertifresh into a company with publicly traded securities through the acquisition of, and merger with, a dormant publicly traded microcap company which was represented to the defendant as owned and operated by an undercover FBI agent (FBI UCA).

b. As part of the scheme and intended scheme, defendant JEAN-PIERRE, in collaboration with the CW, devised and assisted in devising a plan to secure free trading shares in the contemplated publicly traded company that involved the preparation of a backdated purported promissory note, convertible at the option of the holder, into common stock. The plan entailed portraying money that the CW had supposedly received in the past on behalf of Vertifresh as loan funds from the FBI UCA that would be evidenced by the purported debt instrument. It further involved describing and depicting the FBI UCA and CW as consultants to the newly constituted company, so as to provide a cover and explanation for their involvement in the business without betraying their status as control persons and affiliates of the company. The plan further contemplated ultimately presenting a finalized

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 23 of 26

convertible promissory note, together with supporting documentation, including a Rule 144 Attorney Opinion Letter that defendant JEAN-PIERRE would undertake to procure from an amenable attorney.

27. On or about the dates enumerated as to each count below, in the State and District of Colorado, and elsewhere, for the purpose of executing the aforesaid scheme and intended scheme and artifice to defraud, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, did knowingly transmit and cause to be transmitted in interstate and foreign commerce from a place outside the United States to a place within the State of Colorado, by means of wire communications, certain writings, signals and sounds, representing and constituting the following:

| **COUNT** | **DATE** | **WIRE TRANSMISSION** |
|---|---|---|
| 24 | 3/30/16 | Email from JEAN-PIERRE to the CW attaching a document entitled CMC/Vertifresh Consulting Agreement |
| 25 | 4/1/16 | Email from JEAN-PIERRE to the CW attaching a document entitled Convertible Promissory Note, dated February 28, 2015 |
| 26 | 4/23/16 | Email from JEAN-PIERRE to the CW attaching a document entitled Convertible Promissory Note, dated April 21, 2015, and a document entitled Non-Affiliation Letter |
| 27 | 4/23/16 | Email from JEAN-PIERRE to the CW attaching a document entitled Purchase And Assignment Agreement |
| 28 | 4/24/16 | Email from JEAN-PIERRE to the CW attaching a document identified by file name "Form of Debt Conversion opinion.docx |

All in violation of Title 18, United States Code, Sections 1343 and 2.

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 24 of 26

COUNT 29
(Money Laundering)

28. The allegations contained in paragraphs 2 through 11 and 26 through 27 of this Second Superseding Indictment are hereby re-alleged as if set out in full and incorporated by reference in this count of the Second Superseding Indictment.

29. From on or about February 26, 2016 and continuing through on or about April 29, 2016, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, with the intent to conceal and disguise the location, source, ownership and control, of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce involving property represented by a person at the direction of a federal official authorized to investigate violations of Title 18, United States Code, Section 1956, to be proceeds of specified unlawful activity, to wit: securities fraud, as charged in counts 22-23, in violation of Title 15 United States Code, Sections 78j(b) and 78ff(a), and 17 C.F.R. Section 240.10b-5, and wire fraud, as charged in counts 12, 14-15, in violation of Title 18, United States Code, Section 1343, which financial transaction involved the mailing, receipt and deposit of a cashier's check drawn on First Bank in the amount of $5,000 and made payable to Guy M. Jean-Pierre and represented to be the proceeds of the sale of common stock of FusionPharm, Inc.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2.

FORFEITURE ALLEGATION

30. The allegations contained in Counts 1 through 28 of this Second Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

31. Upon conviction of the violation alleged in Count One of this Information involving the conspiracy to commit of violations of Title 18, United States Code, Section 1343, Title 18, United States Code, Section 1341, Title 15, United States Code, Sections 78j(b) and 78ff(a), all in violation of Title 18, United States Code, Section 371, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) any and all of the defendant's right, title and interest in all property constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of such offense, including a money judgment in the amount of proceeds obtained by him the conspiracy and by the Co-conspirators, for which the Co-conspirators are joint and severally liable, less the amount recovered from directly forfeitable assets.

32. If any of the property described above, as a result of any act or omission of the defendant:

a) cannot be located upon the exercise of due diligence;
b) has been transferred or sold to, or deposited with, a third party;
c) has been placed beyond the jurisdiction of the Court;
d) has been substantially diminished in value; or
e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

Case 1:17-cr-00008-WJM Document 113 Filed 06/21/18 Page 26 of 26

as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A TRUE BILL:

Ink signature on file in Clerk's Office
FOREPERSON

ROBERT C. TROYER
UNITED STATES ATTORNEY

By: s/Jeremy Sibert

Jeremy Sibert
Assistant United States Attorney
U.S. Attorney's Office
1225 17th Street, Suite 700
Denver, CO 80202
Telephone: (303) 454-0100
Fax: (303) 454-0402
Jeremy.Sibert@USDOJ.GOV

Case 1:17-cr-00008-WJM Document 113-1 Filed 08/21/18 Page 1 of 2

DEFENDANT: Guy M. Jean-Pierre, a/k/a Marcello Dominguez de Guerra

YOB: 1956

COMPLAINT FILED? __X__ Yes _____ No

If Yes, MAGISTRATE CASE NUMBER: 16-mj-01103-KMT

HAS DEFENDANT BEEN ARRESTED ON COMPLAINT? __X__ Yes ______ No

OFFENSE(S): Count 1: 18 U.S.C. § 371
Conspiracy to defraud the United States

Counts 2-16: 18 U.S.C. §§ 1343 and 18 U.S.C. § 2
Wire Fraud

Counts 17-20: 18 U.S.C. §§ 1341 and 18 U.S.C. § 2
Mail Fraud

Counts 21-23: 15 U.S.C. §§ 78j(b) and 78ff; Code of Federal Regulations § 240.10b-5 [Rule 10b-5]; and 18 U.S.C. § 2
Securities Fraud

Counts 24-28: 18 U.S.C. §§ 1343 and 18 U.S.C. § 2
A Wire Fraud

Count 29: 18 U.S.C. § 1956(a)(3)(B) and 18 U.S.C. § 2
Conducting Financial Transactions in Property
Represented to be the Proceeds of Specified Unlawful Activity

LOCATION OF OFFENSE: Denver County, CO and elsewhere

PENALTY: Count 1: NMT 5 years imprisonment, a $250,000 fine, or both; NMT 3 years supervised release; $100 Special Assessment Fee

Counts 2-16: Per Count, NMT 20 years imprisonment, a $250,000 fine, or both; Restitution; NMT 3 years supervised release; $100 Special Assessment Fee

Count 17-20: Per Count, NMT 20 years imprisonment, a $250,000 fine, or both; Restitution; NMT 3 years supervised release; $100 Special Assessment Fee

Counts 21-23: Per Count, NMT 20 years imprisonment, a $5,000,000 fine, or both; Restitution; NMT 3 years supervised release; $100 Special Assessment Fee

Counts 24-28: Per Count, NMT 20 years imprisonment, a $250,000 fine, or both; Restitution; NMT 3 years supervised release; $100 Special Assessment Fee

Case 1:17-cr-00008-WJM Document 113-1 Filed 08/21/18 Page 2 of 2

Count 29: NMT 20 years imprisonment, a $250,000 fine, or both; NMT 3 years supervised release; $100 Special Assessment Fee

AGENT: Kate Funk, Special Agent
Federal Bureau of Investigation
Denver, CO

Jared Erwin, Special Agent
Internal Revenue Service
Denver, CO

Robert Barnett, Postal Inspector
U.S. Postal Inspection Service
Denver, CO

AUTHORIZED BY: Jeremy Sibert
Assistant U.S. Attorney

ESTIMATED TIME OF TRIAL:

___ five days or less _X_ over five days other

THE GOVERNMENT

______ will seek detention in this case based on 18 U.S.C. § 3142(f)(2) [***Defendant Already Ordered Detained***]

____X_ will not seek detention [Defendant is Already Placed on Pretrial Bond by District Court Judge]

The statutory presumption of detention **is not** applicable to this defendant.

OCDETF CASE: _ Yes _X_ No

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 17-cr-008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE**,

Defendant.

---

## ORDER DENYING MOTION TO SUPPRESS

---

The Government charges Defendant with conspiracy to defraud the United States (18 U.S.C. § 371), securities fraud (15 U.S.C. §§ 78j(b) & 78ff), wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), and money laundering (18 U.S.C. § 1956(a)(3)(B)). (*See* ECF No. 113.) Before the Court is Defendant's Motion to Suppress Evidence Obtained from Search of HP Laptop. (ECF No. 91.) Defendant does not request a hearing, and the Court finds that a hearing would be unnecessary in any event. The motion, the Government's response brief (ECF No. 104), and the various attachments reveal no material factual disputes and confirm that the dispute may be resolved as a matter of law. *See, e.g.*, *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995) (hearing not required unless defendant carries burden of establishing disputed issues of material fact). For the reasons explained below, the Court denies the motion.

## I. BACKGROUND

The Government began investigating Defendant and his associates in December 2013. (ECF No. 104-2 at 3, ¶ 2.) As to Defendant specifically, the Government suspected him of falsifying documents that his associates needed to convert restricted stock into free-trading stock on the over-the-counter ("OTC") market. (*Id*. at 7, ¶ 8.)

Police officers in Miami, Florida, arrested Defendant on April 29, 2016. (*See id*. at 26–30, ¶¶ 43, 45, 52.) At the time of his arrest, Defendant was carrying a backpack containing a laptop computer. (*Id*. ¶ 52.) Federal agents soon applied for and obtained a warrant from the United States District Court for the Southern District of Florida to search the laptop. The warrant's "Description Of Items To Be Searched And Seized," also known as "Attachment B," begins as follows:

> The following items and information related to the scheme and activities that are described and are the subject of the affidavit in support of this warrant (which affidavit is incorporated by reference herein), which items constitute evidence and/or instrumentalities of violations of Title 18 United States Code, Sections 371 [conspiracy to defraud the United States], 1341 [mail fraud], 1343 [wire fraud], 1956 [money laundering], 1957 [knowingly transacting with money derived from unlawful activity] and 2 [the general conspiracy statute], and the following items relating to the electronic storage, access and retrieval of such items . . . .

(ECF No. 91-2 at 4.) There follows twenty paragraphs of varying specificity regarding items to be seized. Some of these paragraphs describe very specific categories with an obvious relation to the case, such as "written submissions to OTC [m]arkets." (*Id*. at 5.) Other paragraphs describe relatively generic categories, such as:

> Bank records, including bank statements . . . ;
>
> All computer files that act as "address books" or other list[s] of correspondence and contacts;

Case 1:17-cr-00008-WJM Document 132 Filed 05/04/18 Page 3 of 8

> Records and information related to foreign and domestic travel.
>
> Records of Internet activity . . . .

(*Id.*)

The Government represents that, upon receiving the signed search warrant, it transported the laptop to Colorado and delivered it and a copy of the warrant "to a forensic computer examiner at the Rock[y] Mountain Regional Forensics Laboratory." (ECF No. 104 at 4.) Guided only by the warrant, the examiner forensically searched the computer "and copied computer files which only came within the scope of Attachment B and provided those files to FBI agents working on the case." (*Id.*) On the record before the Court, it is not clear what these computer files revealed.

## II. BURDEN OF PROOF

"Generally, if the search or seizure was pursuant to a warrant, the defendant has the burden of [proving that the search violated the Fourth Amendment]." *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994) (internal quotation marks omitted). Defendant does not argue that his motion presents a situation outside of this general rule. Accordingly, Defendant bears the burden here.

## III. ANALYSIS

Defendant does not challenge the constitutionality of the initial seizure of his laptop by the Miami police. Nor does he describe any particular evidence obtained from the laptop that he wishes suppressed. Indeed, he nowhere admits that the evidence obtained from his laptop is even arguably incriminating, such that the Government can be expected to introduce it at trial. However, the Government's response brief does not disavow any intention to use this evidence at trial, so the Court presumes it is

Case 1:17-cr-00008-WJM Document 132 Filed 05/04/18 Page 4 of 8

undisputed that the evidence may be viewed as incriminating and that the Government plans to introduce it at trial.

Even so, Defendant's failure to challenge any particular item of evidence means he must rely on theories that would invalidate the entire warrant. Defendant invokes the Fourth Amendment's "particularity requirement," italicized below:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized*.

The purpose of the particularity requirement is to prohibit "the 'general warrant' abhorred by the colonists" and thereby prevent an "exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985).

Defendant claims that Attachment B "authorized agents to search for a very broad array of items on [his laptop] without the agents having made a showing that those items related to the alleged wire fraud and money laundering offenses." (ECF No. 91 at 6.) Defendant emphasizes items such as those quoted in Part I, above, that seem to have little or no limits, such as address books and Internet history. (*Id*. at 3–4.) Under Tenth Circuit authority, however, Attachment B's opening paragraph and other limiting language save the warrant from a particularity challenge.

In *United States v. Brooks*, 427 F.3d 1246 (10th Cir. 2005), the defendant brought a particularity challenge on a warrant used to search his computer for child

Case 1:17-cr-00008-WJM Document 132 Filed 05/04/18 Page 5 of 8

pornography. The warrant specifically authorized a search "for evidence of child pornography" and then went on to describe categories of files. *Id*. at 1252. Some of those categories, such as "photographs," were specifically limited by qualifications such as "depicting partially nude or nude [children]"; but some categories, such as e-mails, contained no qualification linking the document to child pornography. *Id*. (internal quotation marks omitted). The Tenth Circuit admitted that "the language of the warrant may, on first glance, authorize a broad, unchanneled search." *Id*. But in light of the warrant's opening paragraph and the qualifications appended to certain file categories, the warrant's "language more naturally instructs officers to search those files only for evidence related to child pornography. In this light, the warrant should be—and was—read by officers to implicitly place the same restriction (*i.e.*, to locate child pornography) on the scope of the entire search." *Id*. (emphasis removed). Given this, and given that the defendant had "made no showing that officers improperly . . . expanded the scope of the search," the court held that the warrant was not objectionable on particularity grounds. *Id*. at 1253.

The Tenth Circuit faced a similar particularity challenge in *United States v. Christie*, 717 F.3d 1156 (10th Cir. 2013). There, a child died on an Air Force base due to neglect, and Government charged the mother with second-degree murder and child abuse. *Id*. at 1160, 1161. The warrant authorizing a search of the mother's computer contained broad categories, but also a header paragraph authorizing search for "records and information relating to the murder, neglect, and abuse of [the child]." *Id*. at 1165 (internal quotation marks omitted). The Tenth Circuit agreed with the mother that the warrant was "surely open to interpretation," but held, in light of *Brooks*, "that an

Case 1:17-cr-00008-WJM Document 132 Filed 05/04/18 Page 6 of 8

objectively reasonable officer acting in good faith could have read the warrant . . . as restricting the scope of any search to information 'related to the murder, neglect, and abuse of' [the child]." *Id*. "And," the court continued, "to know just that much is to know suppression cannot follow. The Fourth Amendment's exclusionary rule will not bar the use of evidence obtained by police officers acting in good faith and with reasonable reliance on a facially valid search warrant." *Id*. at 1165–66 (internal quotation marks omitted).

There is no material distinction between this case and the *Brooks* and *Christie* cases. As in *Brooks*, the warrant to search Defendant's computer contained a header paragraph narrowing the scope of the search; and, as to certain categories of files, it contained specific qualifications that can "more naturally" be read "to implicitly place the same restriction[s]" on other categories. 427 F.3d at 1252. Defendant also has made no showing that the forensic agent conducting the search exceeded that scope. *See id*. at 1253. Moreover, as in *Christie*, an objectively reasonable officer acting in good faith would at least read the header paragraph as imputed into all subsequent paragraphs. *See* 717 F.3d at 1165.[1]

In a more specific vein, however, Defendant argues that the affidavit in support of the warrant "did not present any evidence that there was probable cause that the agents might find evidence on [the laptop] of an 18 U.S.C. § 371 conspiracy [to defraud the

[1] Under separate subheadings, Defendant further argues that the warrant was overbroad and lacked a "nexus" between the items authorized to be seized and the crimes for which probable cause had been found. (*See* ECF No. 91 at 7–11.) These arguments are no more than linguistic variations on a lack-of-particularity challenge. (*See, e.g.*, *id*. at 7 ("A search warrant that provides law enforcement agents free reign to rummage through a defendant's papers at will renders the warrant overly broad and vague."); *id*. at 9 (quoting a description of the particularity requirement from *Voss*, 774 F.2d at 405, and applying it to the "nexus" challenge).) For the reasons already stated, the warrant does not fail for lack of particularity.

Case 1:17-cr-00008-WJM Document 132 Filed 05/04/18 Page 7 of 8

United States]. Thus, the agents should not have been authorized to search the laptop for any evidence demonstrating a conspiracy." (ECF No. 91 at 11–12.) The Court disagrees. "To conspire to defraud the United States means [among other things] to interfere with or obstruct one of its lawful government functions by deceit, craft or trickery, or at least by means that are dishonest." *United States v. Scott*, 37 F.3d 1564, 1575 (10th Cir. 1994) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)). The affidavit alleges a scheme between Defendant and at least two others to qualify certain securities for public trading, knowing that those securities could not meet the requirements of the Securities & Exchange Commission ("SEC") for public trading. (*See* ECF No. 104-2 at 5–9.) Defendant does not argue that protecting the investing public is not a lawful government function carried out by the SEC. Defendant does not argue that the SEC requirements in question fail to further that lawful function. Defendant does not argue that the affidavit lacks allegations of deceitful means. Accordingly, the affidavit's allegations establish probable cause of a 18 U.S.C. § 371 conspiracy, and so the search warrant properly authorized agents to search for evidence of that conspiracy.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress Evidence Obtained from Search of HP Laptop (ECF No. 91) is DENIED.

Case 1:17-cr-00008-WJM Document 132 Filed 09/04/18 USDC Colorado Page 8 of 8

Dated this 4th day of September, 2018.

BY THE COURT:

William J. Martinez
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Criminal Case No. 17-cr-00008-WJM**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**1. GUY M. JEAN-PIERRE,**

**Defendant.**

---

**UNITED STATES' RESPONSE TO COURT'S ORDER**

---

The United States, through its representative Jeremy Sibert, Assistant United States Attorney for the District of Colorado, hereby submits this response to the Court's order regarding the defendant's motion for James Hearing, in particular addressing the defendant's argument that many of the listed statements were made to law enforcement officers in after-the-fact interviews.

Hearsay is an out-of-court statement (person's oral assertion, written assertion, or nonverbal conduct intended to be an assertion), other than one made by the declarant while testifying at the trail or hearing, offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801. In addressing this Court's order, the defendant in his response (Doc. #112) to the government's memorandum in support of its James proffer (Doc. #105) argued that many statements set forth by the government are not Hearsay Statements pursuant to Fed. R. Evid.

Case 1:17-cr-00008-WJM Document 140 Filed 10/05/18 USDC Colorado Page 2 of 8

801.[1] The government concurs that these brief summarized conversations are not statements under Fed. R. Evid. 801 and therefore the government will anticipate no hearsay objections by defendant Jean-Pierre.

The government does not disagree that many of the statements listed on the government's memorandum in support of its James proffer (Doc. #105) were from investigation reports, written after the conspiracy had ended. As with any federal investigation, as the investigation develops, new leads, facts, events, witnesses, and issues come to light and need to be analyzed for their prosecutorial value. For example, subpoenaing emails in a conspiracy case can take 6 to 12 months to receive from the provider, let alone the time it takes to analyze thousands of emails. When evidence is collected in an investigation, new names and potential witnesses are often identified.

In this case, several potential witnesses were identified through the investigation, causing the case agents to conduct interviews with these individuals, including co-defendants that wanted to provide statements as part of their plea negotiations. When interviewing these individuals, agents want to gain an understanding of the person's role regarding the investigation and what the person knew, including any statements made by other co-conspirators during the time of the conspiracy. To document these interviews and statements, the lead interviewing agent will write a report.

---

[1] Specifically, defendant Jean-Pierre listed the following as non-hearsay statements pursuant to Fed. R. Evid. 801; 8, 10, 11-13, 15-16, 18-20, 22, 24-25, 30, 35, 38, 59-60, 62, 66-73, 74-76, 78, 85, 87-88, 90-91, 93, 95-97, 102, 106-109, 111, 120-149, 154, 189-197, 203, 212, 215-216, 220, 270-272, 290, 294, 297-299, 301-309, 324, 327, 373, 381, 385, 393, 411. *See* Doc. #112-1 and Doc. #112-2, number 4. "The "statement" set forth by the government is not a statement."

Case 1:17-cr-00008-WJM Document 140 Filed 10/05/18 Page 3 of 6

For example, in this case, the case agents interviewed Andy Duke, a former employee under co-defendant William Sears. Andy Duke stated that Sears explained to him in 2011, within timeframe of the conspiracy, that Jean-Pierre was "the key" by working his legal magic to help get FusionPharm stock sold in order to raise money for FusionPharm to operate, or words to that effect.[2] This statement by Duke was summarized in what is known as a Memorandum of Interview (MOI) and provided as part of discovery. In the government's memorandum in support of its James proffer (Doc. #105), that statement was provided as a statement not subject to hearsay because it was made by a co-conspirator at the time the conspiracy. At trial, I would anticipate that Mr. Duke would be on the stand and asked something to the effect, "What did William Sears tell you about defendant Jean-Pierre, regarding his role in raising money for FusionPharm?" Under the Fed. R. Evid. a statement made by William Sears and testified through Mr. Duke would be hearsay, unless it meets one of the hearsay exceptions or is not consider hearsay, which includes a co-conspirator's statement. The government anticipates the same usage of statements provided in investigative reports and declarations for Scott Dittman, Andy Duke, Richard Scholz, Tod DiTommaso, Cliff Bodden, William Sears, and Todd Kramer.[3]

As stated in previous filings, the Federal Rules of Evidence, "[a] statement is not hearsay if [it] is offered against a party and is . . . a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Statements are admissible pursuant to Rule 801(d)(2)(E) if a court finds, by a preponderance of the evidence, three things: that (1) a conspiracy existed; (2) the declarant and Jean-Pierre were both members

---

[2] Statement Number 38 in Doc. #105-1

[3] Statements 8, 10, 11-13, 16, 18-20, 22, 24-25, 30, 35, 59-60, 62, 66-76, 78, 85, 88, 90, 93, 95, 97, 102, 109, 111, 123-125, 131-146. *See* Doc. #105-1.

Case 1:17-cr-00008-WJM Document 140 Filed 10/05/18 USDC Colorado Page 4 of 6

of the conspiracy; and (3) the statements were made in the course of and in furtherance of the conspiracy. *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017); *Bourjaily v. United States*, 483 U.S. 171, 181 (1987). The government must prove these preliminary facts by a preponderance of the evidence. *United States v. Perez,* 989 F.2d 1574, 1577 (10th Cir. 1993) (en banc).

As to Jean-Pierre's knowledge of the essential objectives of the conspiracy, the government is not required to prove that a conspirator knows all other conspirators, or all the details of the conspiracy. *United States v. Smalls,* 423 F.3d 1164, 1182 (10th Cir. 2005). Nor must the government prove that a conspirator knew of or participated in every aspect of the conspiracy, *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999). A coconspirator statement is also admissible even if the declarant is uncharged. *Champagne Metals v. Ken Mac Metals, Inc*., 458 F.3d 1073, 1081 n.5 (10th Cir. 2006) (Addressing defendant Jean-Pierre's concern about alleged co-conspirators as stated in #2 of Doc. #112-2)

Therefore, as to the defendant's objections based on him not being a member of the alleged conspiracy and that the statement is inadmissible because it was not made in furtherance of the conspiracy (See Doc. #112-2, numbers 1 and 3), the government would rest on its response provided in paragraphs 8 through 56 of Doc. 105 that provides a lengthy summary of the government's case regarding defendant Jean-Pierre's involvement with William Sears, Scott Dittman, and others. Furthermore, two separate grand juries have concluded under the probable cause standard that defendant Jean-Pierre conspired with William Sears, Scott Dittman, and others. The government respectfully requests that this Court apply a liberal standard in determining whether a statement was in furtherance of a conspiracy. *See United States v. Siegelman*, 640 F.3d 1159, 1181 (11th Cir. 2011).

Finally, as to defendant Jean-Pierre's objections based on the statement not being at the source referenced by the government in the James log and the defense not being able to locate the source

Case 1:17-cr-00008-WJM Document 140 Filed 10/05/18 USDC Colorado Page 5 of 6

document in the discovery supplied by the government (See Doc. #112-2, numbers 5 and 6), the government request that these objections be denied. The government on several occasions has assisted the defense in either locating documents or providing additional copies of discovery. The government commits that it will continue to assist the defense regarding discovery and locating specific documents. Furthermore, the government could have made a mistake regarding a source number, which may cause an issue in locating a particular document regarding the James log. If defendant Jean-Pierre needs assist in locating a document from the James log, the government will assist in locating it or providing him a copy in order for him to prepare his defense.

The government requests that this Court considers this response with implementing the legal arguments and facts filed in Doc. #105 when rendering a decision regarding the James log.

Respectfully submitted on this 5th day of October, 2018

Respectfully submitted,

ROBERT TROYER
United States Attorney

*/s/ JEREMY SIBERT*
Jeremy Sibert
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
(303) 454-0100
FAX: (303) 454-0403
Email: jeremy.sibert@usdoj.gov
Attorney for the government

Case 1:17-cr-00008-WJM Document 140 Filed 10/05/18 Page 6 of 6

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of October 2018, I electronically filed the foregoing **UNITED STATES' RESPONSE TO COURT'S ORDER** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Clifford Barnard
Thomas Goodreid
Attorneys for the Defendant

*s/Jeremy Sibert*
JEREMY SIBERT
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0406
Jeremy.Sibert@usdoj.gov

Case 1:17-cr-00008-WJM Document 144 Filed 12/27/18 USDC Colorado Page 1 of 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 17-cr-008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE**,

Defendant.

---

## ORDER ON *JAMES* MATTERS

---

The Government charges Defendant with conspiracy to defraud the United States (18 U.S.C. § 371), securities fraud (15 U.S.C. §§ 78j(b) & 78ff), wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), and money laundering (18 U.S.C. § 1956(a)(3)(B)). (*See* ECF No. 113.) Currently before the Court is Defendant's Motion for Pretrial Determination of Admissibility of Alleged Co-Conspirator Statements (ECF No. 89), in which he seeks a pretrial "*James* determination," *i.e.*, a ruling on whether alleged co-conspirator statements satisfy Federal Rule of Evidence 801(d)(2)(E) and may therefore be introduced against him at trial for the truth of the matters asserted.[1]

Per the undersigned's usual practice, the Government was ordered to respond to

---

[1] The practice surrounding Rule 801(d)(2)(E) embodies what is commonly referred to as a *James* determination, which gets its name from *United States v. James*, where the Fifth Circuit held that a declaration by one defendant is admissible against other defendants only when there is a "sufficient showing, by independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy." 590 F.2d 575, 581 (5th Cir. 1979). The Court at times continues to employ the *James* terminology in this Order, in accordance with common practice. But, ultimately, admissibility of the co-conspirator statements is governed by Rule 801(d)(2)(E).

Case 1:17-cr-00008-WJM Document 144 Filed 12/27/18 Page 2 of 11

Defendant's motion with a detailed written proffer of co-conspirator statements it intends to introduce for the truth of the matters asserted. (*See* ECF No. 90.) The Government submitted a proffer containing 423 statements. (ECF No. 105-1.) Defendant responded with arguments opposing the admissibility of all 423 statements. (ECF No. 112-1.)

For the reasons explained below and as detailed in the attached Chart of Rulings, Defendant's objections are sustained in part and overruled in part.

**I. NO HEARING NECESSARY**

A district court can "only admit co-conspirator statements if it holds a *James* hearing or conditions admission on forthcoming proof of a predicate conspiracy through trial testimony or other evidence." *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (internal quotation marks omitted). Therefore, although a hearing is not required, the Tenth Circuit has expressed a "strong preference" for pre-trial *James* proceedings. *Id*. The reason for this preference is that if a court provisionally admits a statement with the caveat that the Government "connect up" the statement to sufficient evidence of a predicate conspiracy at trial, the risk of prejudice to a defendant is high should the Government later fail to meet its burden. *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994). Nevertheless, whether to hold a *James* hearing rests within the Court's discretion. *Id*.

The Court has reviewed the briefing on this issue and determined that a hearing is not necessary to resolve the admissibility of the Government's proposed co-conspirator statements. The Court therefore decides the matter on the briefing submitted by the parties.

Case 1:17-cr-00008-WJM Document 144 Filed 12/27/18 Page 3 of 11

## II. LEGAL STANDARD

Rule 801(d)(2)(E) provides that a statement is "not hearsay" if it "is offered against an opposing party" and it "was made by the party's coconspirator during and in furtherance of the conspiracy." This Court may not admit such a statement under this Rule without being satisfied by a preponderance of the evidence that (1) "there was a conspiracy"; (2) the conspiracy "involv[ed] the declarant and the nonoffering party"; and (3) "the statement was made during the course and in furtherance of the conspiracy." *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987) (internal quotation marks omitted).

Whether this standard is satisfied is a "preliminary question about whether . . . evidence is admissible," meaning the Court "is not bound by evidence rules, except those on privilege," when resolving the question. Fed. R. Evid. 104(a); *Bourjaily*, 483 U.S. at 178–79. Thus, the challenged statements themselves may be a part of the preponderance of evidence supporting admissibility under Rule 801(d)(2)(E). *See id*. at 180 ("there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy"); *see also United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) ("In making its preliminary factual determination as to whether a conspiracy exists, the court may consider the hearsay statement sought to be admitted . . . .").

However, the Tenth Circuit requires "some independent evidence linking the defendant to the conspiracy," meaning "evidence other than the proffered [co-conspirator] statements themselves." *Id*. (internal quotation marks omitted; alteration in

Case 1:17-cr-00008-WJM Document 144 Filed 12/27/18 Page 4 of 11

original); *see also United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993) ("most courts require some reliable corroborating evidence apart from the coconspirator's statements before those statements may be used"). The required quantum of independent evidence may exist "even when it is not 'substantial.'" *Lopez-Gutierrez*, 83 F.3d at 1242 (quoting *Rascon*, 8 F.3d at 1541).

Assuming the Government establishes the existence of conspiracy in which the declarant and defendant participated, the final question is whether any proffered statements were made by a declarant-conspirator "during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "A wide array of statements can fit this requirement," *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017), assuming the statements were made "before the objectives of the conspiracy have either failed or been achieved," *United States v. Owens*, 70 F.3d 1118, 1126 (10th Cir. 1995) (internal quotation marks omitted); *see also Krulewitch v. United States*, 336 U.S. 440, 442–43 (1949) (holding that a declaration made after the conspiracy's "objectives either had failed or had been achieved" was inadmissible because it was not made pursuant to and in furtherance of the conspiracy).

> Examples of statements which may be found to satisfy the "in furtherance" requirement include statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities.

*United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc) (internal block quote formatting omitted).[2] On the other hand, "statements are not in furtherance of the

---

[2] The Government's briefing argues for a far more sweeping interpretation of the "in

Case 1:17-cr-00008-WJM Document 144 Filed 12/27/18 Page 5 of 11

conspiracy if they are mere narratives, that is statements relating to past events, even those connected with the operation of the conspiracy where the statement serves no immediate or future conspiratorial purpose." *Id*. at 1578 (internal quotation marks omitted).

The Tenth Circuit calls for "a construction of the 'in furtherance' requirement protective of defendants," and applies the test "narrowly." *Id*. The focus is "on the declarant's intent in making the statement," rather than on the statement's effect. *Id*. However, "[n]o talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy and is therefore admissible in accordance with the agency theory of conspiracy. To the contrary, this determination must be made by examining the context in which the challenged statement was made." *Id*. at 1578–79.

## III. ANALYSIS

### A. Existence, Scope, and Duration of Conspiracy

To prove that a conspiracy existed the Government must show: (1) two or more persons agreed to violate the law, (2) the defendants knew the essential objectives of the conspiracy, (3) the defendants knowingly and voluntarily participated in the conspiracy, and (4) the alleged co-conspirators were interdependent. *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005). To prove knowledge of the essential objectives of a conspiracy, the Government does not have to show the alleged co-

---

furtherance of" requirement. (*See* ECF No. 105 ¶ 7.) The Court finds the Government's argument does not properly reflect the law in the Tenth Circuit. Many of the cases cited are from other circuits, and many also precede *Perez*, in which the Tenth Circuit directly addressed the scope of this analysis *en banc*, stating the requirement should be applied narrowly and in a manner that is protective of defendants. In the Court's view, the sweeping application of this analysis proposed by the Government is contrary to spirit and intent of *Perez*.

Case 1:17-cr-00008-WJM Document 144 Filed 12/27/18 Page 6 of 11

conspirators knew all the details or all the members of a conspiracy. *Id*. "Rather, the government only needs to demonstrate the defendant shared a common purpose or design with his alleged co-conspirators." *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006). A conspiracy may be inferred from circumstantial evidence. *United States. v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1986).

Here, the Government alleges a conspiracy to commit securities fraud. (ECF No. 113 ¶ 1.) The Government alleges that the conspiracy began "[o]n or around March 25, 2011 and continued through [o]n or about May 15, 2014." (ECF No. 105 ¶ 8.) The Government alleges that the members of this conspiracy were Defendant, William Sears, Scott Dittman, Cliff Bodden, Tod DiTommaso, and Richard Scholz. (*Id*.) Sears and Dittman are, for present purposes, considered indicted co-conspirators with Defendant,[3] while Bodden, DiTommaso, and Scholz are unindicted co-conspirators.

Sears and Dittman developed a business named FusionPharm to repurpose steel shipping containers as "hydroponic growing pods ('PharmPods') for indoor plant cultivation, primarily cannabis." (*Id*. ¶ 10.) Sears and Dittman wanted to make FusionPharm publicly tradable on the over-the-counter ("OTC") market without the hassle of an IPO, and so conceived a plan to take over a company already traded on the OTC market and transform it into FusionPharm. (*Id*. ¶ 11.) One problem, however, was that Sears already had a felony conviction for securities fraud, and so his formal involvement in a publicly traded company was subject to limitations and disclosure

[3] Sears, Dittman, and Defendant have all been charged with conspiracy to commit securities fraud, and this charge arises from the same set of facts, but—for reasons not important here—Sears and Dittman were charged by information in a separate case. (*See United States v. William J. Sears and Scott M. Dittman*, Case No. 16-cr-301-WJM (D. Colo., filed Sept. 15, 2016).)

Case 1:17-cr-00008-WJM Document 144 Filed 12/27/18 Page 7 of 11

obligations. (*Id.* ¶ 12.) The first alleged object of the conspiracy, therefore, was to permit Sears to acquire the stock of the target corporation, along with Dittman, without having to disclose his participation or true role in the transaction or new corporation. (*Id.* ¶¶ 11–14.) Defendant, a securities lawyer, allegedly assisted Sears and Dittman in this task. (*Id.* ¶¶ 13–15.)

After the takeover, Sears, Dittman, and Bodden (a long-time business associate of Sears) would prepare projections and disclosures to file on an online OTC trading platform. (*Id.* ¶¶ 8(d), 16–18.) None of these disclosures revealed Sears's true role in FusionPharm. (*Id.* ¶ 18.) Defendant worked with Sears on these disclosures. (*Id.* ¶ 19.) Defendant also prepared attorney opinion letters certifying that the information disclosed to the OTC trading platform was "adequate current information" within the meaning of federal securities laws. (*Id.* ¶ 20.) But Defendant would then send these letters to DiTommaso, a California attorney who agreed to put these letters under his own letterhead and over his own signature, thus masking Defendant's involvement. (*Id.*)

Another alleged object of the conspiracy was to permit Sears to convert preferred FusionPharm shares into free-trading common stock without needing to satisfy federal registration requirements and without any restriction on subsequent trading. (*Id.* ¶¶ 23–25.) One requirement was a "Rule 144 Attorney Opinion Letter" certifying that a sale of shares meets the requirements of the SEC's Rule 144. (*Id.* ¶ 26.) Defendant prepared these letters—which were finalized and signed by DiTommaso—allegedly knowing that Rule 144 had not been satisfied. (*Id.* ¶¶ 26–28.) Scholz participated in these transactions apparently as a shell buyer. (*Id.* ¶ 28.)

Case 1:17-cr-00008-WJM Document 144 Filed 12/27/18 USDC Colorado Page 8 of 11

A further alleged object of the conspiracy was to sell FusionPharm shares through other entities without disclosing Sears's and Dittman's roles in those entities. (*Id.* ¶¶ 29–32.) Defendant again prepared legal disclosures, eventually signed by DiTommaso, to facilitate these transactions. (*Id.* ¶ 33.)

Yet another alleged object of the conspiracy was to create yet more common shares by fabricating and backdating promissory notes that were convertible into common stock. (*Id.* ¶¶ 34–41.) The supposed lenders in possession of these promissory notes were business entities controlled by Sears and Dittman. (*Id.*) Sears would then cause the notes to be converted to common shares, assisted by Defendant with a Rule 144 letter (signed by DiTommaso) that represented, falsely, that the Rule 144 requirements were satisfied as to the new shares. (*Id.* ¶¶ 42–52.)

Defendant does not contest that a conspiracy existed between the other alleged co-conspirators, but he contests his involvement. (ECF No. 112 at 6–7.) Sears and Dittman admitted many of the Government's allegations when they pleaded guilty to the conspiracy charge (*see* Case No. 16-cr-301: ECF No. 41 at 13–25; ECF No. 42 at 1–12; ECF No. 67 at 12–37; ECF No. 84 at 13–15; ECF No. 101 at 15–19); but their admissions barely touch on Defendant's role. As to that, the Court has reviewed all 423 statements proffered by the Government allegedly in furtherance of this conspiracy. (ECF No. 105-1.) Not all of these "statements" are actually statements and not all statements are the proper subject of Rule 801(d)(2)(E) analysis (see below), but they are all proper when considering the existence, scope, and duration of a conspiracy, and when identifying its participants. Many of these statements directly implicate Defendant's participation in the objects of the conspiracy, *e.g.*, statements 8, 12, 13, 22,

Case 1:17-cr-00008-WJM Document 144 Filed 12/27/18 Page 9 of 11

29, 30, 61, 65, 88, 89, 93, 102, 117, 131, 137, 140, 215, 220, and 297–308. These statements, together with Sears's and Dittman's admissions, satisfy the Government's burden to establish the existence, scope, and duration of a conspiracy in which Defendant, Sears, Dittman, Bodden, DiTommaso, and Scholz participated.

**B. Statements Made During and in Furtherance of the Conspiracy**

The Court presents its rulings on the Government's 423 proffered statements in the final column of the chart created by the parties. That chart ("Chart of Rulings") is attached and shall be deemed a part of this Order. The Court here explains certain matters that apply to various rulings and categories of proffered statements.

First, many of the Government's proffered statements are summaries of prior conversations (*e.g.*, statements 8, 11, 17, 20). In evaluating these statements, the Court assumed that the person listed in the "Declarant" column is the witness whom the Government will call at trial to testify about statements made by Defendant or another co-conspirator during that conversation and consistent with the proffered summary.

Second, and similar to the foregoing, many of the Government's statements are derived from retrospective accounts during interviews with law enforcement officers. The Court requested further briefing from the Government on these statements, given that retrospective accounts almost certainly are not admissible through Rule 801(d)(2)(E). (*See* ECF No. 133.) The Government clarified that it included these retrospective accounts as evidence of how the Declarant would testify at trial regarding communications made during the conspiracy. (ECF No. 140 at 3.) With that clarification, the Court looked to the name listed in the "Source" column (if there was one) and assumed that the Source would testify to a memory of a statement by a co-conspirator Declarant made during the conspiracy. That assumption is inseparable

Case 1:17-cr-00008-WJM Document 144 Filed 12/27/18 Page 10 of 11

from the Court's ruling. If the Government wishes to have someone else testify about what the Source said that the Declarant said, different analysis is necessary.

Third, when direct quotes are at issue (*e.g.*, statements 42–58), the Court presumed the Declarant to be the source of the quote but that the Government would call *someone else* to testify about what that person said. Absent such a presumption, Rule 801(d)(2)(E) analysis is meaningless. Or in other words, if the Declarant testifies about his or her *own* prior statements, Rule 801(d)(2)(E) does not apply. Relatedly, the Court's sustaining of Defendant's objections in some instances does not mean that the Declarant may not testify to the same content disclosed in the statements. It means only that Rule 801(d)(2)(E) does not permit someone else to testify about what the Declarant said for the truth of the Declarant's assertions.

Fourth, the Court made no ruling on many proffered statements because they are not "statements" subject to Rule 801(d)(2)(E). They are either impressions, opinions, or assertions of historical fact; or they are statements made by persons whom the Government does *not* allege to be co-conspirators.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Pretrial Determination of Admissibility of Alleged Co-Conspirator Statements is GRANTED (ECF No. 89);
2. Defendant's specific objections are SUSTAINED IN PART and OVERRULED IN PART as detailed in the attached Chart of Rulings; and
3. The Court will reset the jury trial and Final Trial Preparation Conference by way of separate Order.

Dated this 27th day of December, 2018.

BY THE COURT:

William J. Martinez
United States District Judge

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 1 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 1 | Scott Dittman and William Sears operated FusionPharm and that they did not appear to work for anyone. | Todd Abbott | 2011 - 2012 | INV_00002972 | e, m | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 2 | Abbott does not recall selling shares of FusionPharm to Microcap and/or William "Bill" Sears on or about September 11, 2011, for $40,000.00. Abbott has never received $40,000.00 from Sears. | Todd Abbott | 2011 - 2012 | INV_00002972 | e, m | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 3 | Abbot always understood that Dittman and Sears were partnered in Fusion Pharm, Inc | Todd Abbott | 2011 - 2012 | INV_00002975 | b, d, g, l, m | 1,2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 4 | Abbott advised that he would have followed the instructions provided by Scott Dittman in the email dated September 14, 2011, in order to get free trading shares | Todd Abbott | 2011 - 2012 | INV_00002976 | a, d, e, p, n, p, s | 1,2 | "Abbott advised...": Declarant is not reporting any statement made by an alleged co-conspirator.<br><br>"...the instructions provided..." [if introducing the instructions themselves]: Objection overruled. |
| 5 | Abbott did not see any red flags at the time because he trusted Scott Dittman's instructions. He understood that completing the document was all part of the process for Abbott to get shares of FusionPharm that he could sell. Abott advised that the majority of his comunications with Dittman were via email, but that Dittman stopped by Abbott's house on at least two to three occasions for face-to-face meetings. | Todd Abbott | 2011-2012 | INV_00002976 | a, d, e, p, n, p, s, v | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 2 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 6 | Through R. Dittman, Abbott learned that S. Dittman and Sears needed additional financial support for a pending business deal associated with Fusion Pharm, Inc. | Todd Abbott | 2011 - 2012 | INV_00002976 | a, d, e, p, n, p, s, v | 1,2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 7 | Sears proposed using his mother to be listed as the secretary for FusionPharm and have her sign the stock certificate. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, d, e, p, n, p, s, v | 1, 3 | Objection overruled. |
| 8 | Sears and Jean-Pierre advised Dittman to put 185,000 preferred shares of FusionPharm in Robert Dittman's name. Robert Dittman understood that he was going to be holding the shares and that Scott Dittman would contact him if he needed to sell shares to raise capital for FusionPharm. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 2, 3, 4 | First sentence: Objection overruled.<br><br>Second sentence: To the extent his understanding was based on statements from a co-conspirator to him, objection overruled. Otherwise, ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 9 | Sears suggested to release press statements when FusionPharm completed something | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 10 | The April, 2011, 200-1 reverse stock split for FusionPharm's common shares was suggested to Dittman by Sears and Jean-Pierre. The purpose of the split was to increase Dittman's ownership interest in FusionPharm. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | First sentence: Objection overruled.<br><br>Second sentence: Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 3 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 11 | Sears and Jean-Pierre discussed adding the convertible feature to the note. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 12 | Dittman spoke with Sears and Jean-Pierre about Sears' role with FusionPharm. Dittman did not want to list Sears as an officer of FusionPharm because he would have had to disclose Sears' felony conviction. Dittman described disclosing Sears as "suicide" for FusionPharm. | Scott Dittman | 2011-2013 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s,v | 1, 3, 4 | Objection overruled. |
| 13 | Dittman had several conversations with Jean-Pierre on the subject of Sears' role with FusionPharm and the concept of "affiliate". Jean-Pierre was aware that Sears was involved with FusionPharm's stock, sales, communication with FusionPharm's accountant and performed administrative tasks for FusionPharm. | Scott Dittman | fall of 2010 - | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 | First sentence: Objection overruled as to declarant's statements; ruling unnecessary as to defendant's statements.<br><br>Second sentence: Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 14 | Dittman discussed with Jean-Pierre that Sears was selling FusionPharm stock and provided proceeds from the sale of the stock back to FusionPharm in the form of loans in 2011. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Ruling unnecessary. Objection overruled as to declarant's statements; ruling unnecessary as to defendant's statements. |
| 15 | Dittman stated that he sent this email to a lot of people with the title "FusionPharm" | Scott Dittman | Apr-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 16 | DiTommaso asked if all the required information had been posted, but did not ask any further questions regarding OTC posting for FusionPharm and conversation with Scott Dittman. | Scott Dittman | 2011-2013 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 4 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 17 | DiTommaso and Dittman discussed Dittman's background, the nature of FusionPharm's business, their plans for raising capital and Sear's being Dittman's brother-in-law and his criminal history | Scott Dittman | Jul-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 18 | Dittman spoke to Jean-Pierre about the FINRA investigation and was nervous | Scott Dittman | Oct-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 | Objection overruled as to declarant's statements; ruling unnecessary as to defendant's statements. |
| 19 | Sears told Dittman about his arrangment with Scholz early in 2011 and that Sears wanted to get out of advertising and the Microcap Management Letter | Scott Dittman | Early 2011 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 20 | Sears always had the idea that assets from all the companies to include FusionPharm and Meadpoint would merge together. | Scott Dittman | Oct-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 21 | Dittman told Bohlender that he had discussed the loans with Jean Pierre and Jean Pierre said that it was not a problem. | Scott Dittman | October, 2011 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled as to declarant's statements; ruling unnecessary as to defendant's statements. |
| 22 | Dittman contacted Jean-Pierre shortly after Todd Kramer called Dittman on his cellular telephone on October 5, 2011. Dittman contacted Sears and Jean-Pierre again shortly after speaking with Kramer on October 6, 2011 and provided them with an update about the discussion. Jean-Pierre was aware that Sears and Scholz were selling Sears' FusionPharm stock that Sears acquired from Fred Dahlman. | Scott Dittman | Oct-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, o | 1, 3, 4 | First two sentences: Objection overruled.<br><br>Third sentence: Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 5 of 63

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 23 | Between approximately October 27, 2011 and October 30, 2011, Dittman, Sears and Jean-Pierre had a call to discuss the FINRA inquiry. Jean-Pierre and Sears told Dittman that there was an agreement illustrating the transfer of Microcap Management to Scholz. Dittman told Jean-Pierre that Todd Kramer at FINRA wanted to see the document. Jean-Pierre told Dittman that Dittman cannot send the agreement to FINRA because FINRA should not be asking Dittman for non-company information. Jean-Pierre told Dittman that he would write a letter to FINRA explaining that FusionPharm would not provide a copy of the agreement transferring ownership of Microcap. | Scott Dittman | Oct-11 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3 | First two sentences: As to Sears's statements, objection overruled; ruling unnecessary as to defendant's statements.<br><br>Third sentence: Objection overruled.<br><br>Remainder: Ruling unnecessary. The statements are defendant's own. |
| 24 | Dittman spoke with Jean-Pierre about the inquiry by FINRA and the investigator questions about Sears' sales of FusionPharm stock. | Scott Dittman | 2011 | INV_00001356 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 | Objection overruled as to declarant's statements; ruling unnecessary as to defendant's statements. |
| 25 | Jean-Pierre, Sears and Dittman discussed the 2011 loans when Jean-Pierre visited FusionPharm in October, 2011. They did not discuss breaking the funds into two separate loans. The loans were not documented until June, 2012, when Bodden drafted them as non-convertible loans. | Scott Dittman | 2011-2012 | GJP_00012127 (Dittman 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | First sentence: Objection overruled.<br><br>Remaining sentences: Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 26 | FusionPharm was in a "capital crisis " the entire time that Andy Duke worked there. | Andy Duke | 2011 | GJP_00001759 (Andy Duke - 302 Report) | e, m | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 6 of 63

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 27 | Duke said that Sears was a "Don't see him Don't know him" consultant. Sears was not supposed to be associated with the company and could not operate in an official capacity because of his problems with the SEC in the past. | Andy Duke | 2011 | GJP_INV_00002782 | a, b, d, e, f, i, k, n, p, r, s, v | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 28 | Jean-Pierre was a "securities counsel ace" to Sears. | Andy Duke | 2011 | GJP_00001759 (Andy Duke - 302 Report) | e, m, d | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 29 | Jean-Pierre knew that he was supposed to discuss legal matters with Dittman as FusionPharm's Chief Executive Officer. Dittman was looking to Sears for how to handle legal matters and so, therefore, Jean-Pierre worked directly with Sears. | Andy Duke | 2011 | GJP_00001759 (Andy Duke - 302 Report) | a, b, d, e, f, i, k, n, p, r, s | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 30 | Sears talked about Jean-Pierre advising that Sears had to be invisible with respect to FusionPharm. | William Sears | 2011 | GJP_00001759 (Andy Duke - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 4 | Objection overruled as to declarant's statements; ruling unnecessary as to defendant's statements. |
| 31 | During the Denver visit, Jean-Pierre and Sears were disputing some legal fees that Sears owed Jean-Pierre for work Jean-Pierre did for FusionPharm. Duke felt that Jean-Pierre was throwing Sears "under the bus" as well as Dittman (by his association with Sears) because of the fee dispute. | Andy Duke | 2011 | GJP_00001759 (Andy Duke - 302 Report) | a, b, d, e, f, i, k, n, p, r, s | 1, 2 | First sentence: Objection SUSTAINED.<br><br>Second sentence: Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 32 | Scott Dittman gave Duke the title of Executive Vice President. | Andy Duke | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 7 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 33 | Scott Dittman told Duke that he needed someone to be 'the signature' in place of William Sears because Sears was 'not a real person' in FusionPharm. | Scott Dittman | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1 | Objection overruled. |
| 34 | Duke later found out that Sears was pushing the sale of FusionPharm stock. | Andy Duke | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 35 | Duke met with Scott Dittman and Sears at the FusionPharm Wynkoop office shortly after they started their lease of the office space. The pitch to Duke was that FusionPharm was up and coming in the marijuana industry because of the unique technology they were developing with the container growing system. The selling point was that the containers were self-contained and secure. They wanted to get a patent on the technology. | Scott Dittman/William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, h ,m | 1, 3, 4 | First sentence:<br>Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation.<br><br>Remainder:<br>Objection overruled. |
| 36 | Scott Dittman and Sears told Duke that Sears was to be 'behind the curtain' because Sears had issues with the securities regulators. | Scott Dittman/William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, v | 1 | Objection overruled. |
| 37 | Duke overheard Sears talk about selling off blocks of FusionPharm stock about five to six times throughout the course of Duke's employment. | William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s | 1 | Ruling unnecessary. Not clear that what Duke overheard is being offered for its truth, or simply that Duke overheard it. |
| 38 | Jean-Pierre was "the key" according to Sears. Jean-Pierre was to work his legal magic to help get FusionPharm stock sold in order to raise money for FusionPharm to operate. | William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 8 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 39 | Bob Dittman told Duke that Robert Dittman, the brother of Scott Dittman, had a lot of FusionPharm stock in his name that Sears controlled and was selling. | Bob Dittman | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 40 | Duke recalled hearing Sears at times mention that he was 'waiting' to get something from Jean-Pierre or that he will 'have to see' what Jean-Pierre thought. | William Sears | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Ruling unnecessary. What Duke "recalled" is Duke's statement, and Duke is not an alleged co-conspirator. |
| 41 | Duke reviewed an email from Scott Dittman titled 'retreat' and dated October 20, 2011 (Bates #: SWFBI_00025095). Duke stated that Scott Dittman copied Sears on the email without understanding that by doing so, Scott Dittman was creating a paper trail of Sears' involvement with FusionPharm. | Andy Duke | 2011 | INV_00009336 (Andy Duke - MOI) | a, b, d, e, f, i, k, n, p, r, s, q | 1, 2 | "...an e-mail from Scott Dittman...": Objection overruled.<br><br>"Duke stated...": Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 42 | Well what happened was, we took this spot down in September of last year and by December 1st we realized we needed this… because that was not going to be big enough for all of a sudden, it was just like a perfect storm. Uh, we had been marketing, marketing, marketing and finally a lot of the deals just started (clap of hands) dropping and before we knew it we were like there's no way we're going to be able to fulfill back there. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, c, g, m | 1, 3 | Objection SUSTAINED. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 9 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)
CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 43 | It really is. And that's what I was telling Scott, you know, and Scott's got this…passion, you know, he lives on a hobby farm, and I get you want to feed the world man, but, you know, public company and weed is hot and.. feeding people you can do after we medicate them. I get it, it's just, it really is the sweet spot. And he had to make a decision and it broke his heart to make that decision……to just stick with cannabis and he's still leaning toward produce heavily. And I get it, I think it's great, but, you know, we've got to jump on this now. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection SUSTAINED. |
| 44 | And, you know, for a couple of meatballs like us, so to speak, to put all this together and then we have, you know, we've got Greg here full time, he's a journeyman electrician, I mean, he built ty-you know, power plants for Tyson (PH). Um, now we've got Kyle (PH), we've actually got some real educated engineers and people to help us refine this. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, g, m | 1, 3 | Objection SUSTAINED. |
| 45 | You know, it's kinda-it comes in, in comes in droves because what happens is your average order is, you know, anywhere from six to ten pods. Nobody just buys just one pod anymore.<br>I've sold one and two's here and there in California… | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, g, m | 1, 3 | Objection SUSTAINED. |
| 46 | This is a big pie and we're aggressive. We're really aggressive. And that's what I think we…that's where I think we have the edge on anybody else out there. One, we've been in the business. We know everybody. We're hungry. I mean, we're-we're out there.<br>Yeah, we're hungry, and we're hungry, we're well wired……and there's no ego, you know? We've always done the right thing by everybody in this industry. We have paid bills that weren't ours just to keep our name clean. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, g, m, | 1, 3 | Objection SUSTAINED. |
| 47 | I'm the hand up Mona Lisa's skirt, we leave it at that. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, g, m, v | 1, 3 | Objection SUSTAINED. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 10 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 48 | Well, yeah, I mean, that's the great part about Scott and I do, it's… you know, nobody ever steps on the other guy, it's, everybody's got their own niche, their own area of expertise.<br>We just go after it, you know, it's just, there's plenty of money out there, let's go get it. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 | Objection SUSTAINED. |
| 49 | I-you know, I told Scott and this is where it's kind-of…. I said this thing's going to get bigger than us and we're going to have to take a big step aside, it's, (UI) a lot smarter guys to run this company. It's bigger-it's just bigger than us, there's no ego here. You know, we're going to need a proper, you know I mean Scott's great, we're going to need a proper CEO that has very very long arms to run Fusion Pharm one day. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 | Objection SUSTAINED. |
| 50 | I love what I do, guys.<br>and I get up every morning, I love this business, I really do. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 | Objection SUSTAINED. |
| 51 | You know, why cheapen yourself? Why-why degrade, oh, you guys don't put out press releases, you don't do this, you have to inform the public.<br>Here's the deal, man. The company will take care of the stock. The day you have to worry about the stock taking care of the company, you've got bigger problems.<br>Do your business. Do your business and the stock will always, always.. | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 | Objection SUSTAINED. |
| 52 | I just, I… we started this in…you know…it's…..just an idea, and this is where we are in just a short period of time and…<br>It feels fantastic and, you know, that's what the thing is, it's just been … seven days a week, 12 hours a day it's…<br>…you know, thank god I have an understanding wife… I gotta tell ya, otherwise I'd be divorced… | William Sears | 5/14/2014 | INV_00008967 - INV_00009111 (Undercover Meeting at FSPM Offices on May 14, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 | Objection SUSTAINED. |
| 53 | The reason Billy's never been in Fusion Pharm is because Billy has a felony on his background, right. And so-<br>I couldn't let him in Fusion Pharm, you know I don't have to disclose | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, m, v | 1, 3 | Objection SUSTAINED. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 11 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 54 | Well, he got caught on a-on a phone call-on a wire tap that he was on while they were wire tapping two other guys, and he was in on the call, and these guys were doing some sort of price fixing market manipulation stock stuff. And Billy-Billy-<br>-Wasn't involved, but he was on the call, so he got a-he got a conspiracy charge that plead to. Um, you know.<br>About fifteen thousand dollar fine. Whatever. But enough that I could never let him in to this entity, you know. | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3 | Objection SUSTAINED. |
| 55 | Yeah, well you know-you know, the-the irony of the whole thing is, you know. I mean Bill was Meadpoint, you know, from the time we started this company until a month, two months ago, Bill was Meadpoint. So he was my sales arm and did all the sales. Hell, he owns in that sale center, he owns the two containers and the scaffolding, and all that shit, right. | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, g | 1, 3 | Objection SUSTAINED. |
| 56 | Plus he was the first investor in the company. Listen, there would be no company if it wasn't for Bill. I just couldn't have him in the company, right. | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 | Objection SUSTAINED. |
| 57 | Um, but you know, the irony is after three years and all that investment and everything that he did for the company, he finally, you know, got paid. Rather handsomely uh when he sold all that stock in the first part of this year. Um and then all of this happens and he gets blown up. | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, m, v | 1, 3 | Objection SUSTAINED. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 12 of 63

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 58 | You know undoubtedly they-undoubtedly they saw that, too. There's no question, right. Um…you know. But-so we paid off his debt, and we cancelled his agreement in April um, you know, because we decided-attorneys finally said, "Oh, fuck it. You know, everybody else is doing it, and there's safer now, so you don't really need to keep up this silly relationship, just let Meadpoint go and sell direct." Whatever, you know. And it, you know, listen. There's a commission, you know, we pay a pretty heavy commission for doing this, so it's better for my share holders that we just do it direct, and the attorneys finally said, "Eh, whatever. You know, everybody's doing it and the DOJ memo vocabulary makes us feel better so go ahead and kill that," you know, so basically, you know, I paid off Bill's note, took his job away and then, you know, the government came in and blew everything | Scott Dittman | 7/18/2014 | GJP_00015738 - GJP_00015819 (Undercover Meeting with Scott Dittman at Starbucks on July 18, 2014) | a, b, d, e, f, i, k, n, p, r, s, m, v | 1, 3 | If "the attorneys" refers to defendant, ruling unnecessary as to defendant's own statements. Otherwise, objection SUSTAINED. |
| 59 | Scholz first heard of Guy Jean-Pierre through William Sears. Sears and Jean-Pierre worked together before FusionPharm. | William Sears | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | d, e, m | 1, 3, 4 | Objection SUSTAINED. |
| 60 | Sears hired Jean-Pierre to create legal documents relating to stock to include FusionPharm. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, g, h | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 61 | Scholz said that Jean-Pierre's role with FusionPharm was to write the Opinion Letters. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, q h, v | 1, 3 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 62 | Sears was trying to get these shares deposited with a broker so that Scholz could promote FusionPharm's stock and they could share in the proceeds. The stock belonged to Sears. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, q | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 13 of 63

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 63 | Sears indicated to Scholz that Jean-Pierre was aware that Scholz was promoting the stock and getting paid with a percentage of the stock proceeds. Sears indicated to Scholz that Jean-Pierre was aware of all FusionPharm stock sales that Scholz and Sears were attempting to conduct. | William Sears | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, q | 1, 3 | Objection overruled. |
| 64 | Scholz said that Myron Thaden received an Opinion Letter from Jean-Pierre related to his first lot of FusionPharm shares. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, c, m | 1, 3, 6 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 65 | Scholz told Thaden to e-mail Jean-Pierre to get the required Opinion Letter to remove the restrictive legend. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, c, m | 1, 3 | Objection overruled. |
| 66 | Sears' and Scholz's agreement was to transfer Microcap to Scholz on paper but for Sears to continue to maintain control of Microcap. | Richard Scholz | 2011 - 2012 | GJP_00001884 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, c, m | 1, 3, 4 | Objection overruled. |
| 67 | Richard Scholz started working with Sears in approximately March, 2011. Sears asked Richard Scholz to help promote FusionPharm's stock. | William Sears | 2011 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, c, m | 1, 3, 4 | Objection overruled. |
| 68 | Sears provided Richard Scholz with FusionPharm's financial statements, business plans, offering documents and other company reports. Richard Scholz spoke with both Dittman and Sears about what was in the financial statements to identify what would be important to the brokers. Richard Scholz can specifically recall discussing the increases in revenue reported in the financial statements as well as the Vertifresh Licensing Agreement and corresponding press release with Sears and Dittman. | Scott Dittman/William Sears | 2011 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Objection overruled. |
| 69 | Occasionally, brokers wanted additional information about FusionPharm. Richard Scholz reached out to Sears with these brokers' contact information so that Sears could have Dittman follow up on the brokers' question. | Richard Scholz | 2011 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 14 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 70 | Sears transferred 80,000 shares of FusionPharm stock to Richard Scholz' company, Prestige Media, in April, 2011, Sears did not want the FusionPharm shares in his name. He wanted Richard Scholz to sell the stock and then provide him with a percentage of the proceeds from the stock sales. | William Sears | 2011 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m, v | 1, 3, 4 | Objection overruled. |
| 71 | In 2011 and at the request of Sears, I (Richard Scholz) set up an employer identification number (EIN) for Microcap Management in the state of Nevada. Around the spring of 2011, I had discussions with Sears to put my name on the Microcap entity in order to hide Sears's affiliation with Microcap. Sears maintained control of all of Microcap Management throughout 2011, 2012 and 2013, including all FusionPharm stock being held under Microcap and Microcap brokerage accounts, despite my name being on some of the business documents. Microcap was Sears' company. | William Sears | 2011 - 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Objection overruled. |
| 72 | In June, 2012, Sears asked me to set up and deposit FusionPharm shares at Moors and Cabot with Scott Eisler.<br>Although the letter drafted by Sears to Moors and Cabot on June 18, 2012, included my name and address, Sears was still controlling Microcap and the stock in Microcap's name. | William Sears | 2012 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, l, m, t | 1, 3, 4 | Objection overruled. |
| 73 | Around February 7, 2013, Sears sent his Mother and me an email titled "Scottsdale". Sears wanted me to provide trading instructions to his Mother so that she could initiate the trades in the Bayside account on his behalf. I contacted Sears by phone after receiving the email and told him that I was not comfortable with the arrangement. I felt that this arrangement would be illegal since the stock was actually owned and controlled by Sears, and not his Mother. | William Sears | 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 | Objection overruled. |
| 74 | When Dittman moved from Colorado to Pennsylvania in 2013, Sears was on site at FusionPharm watching over the business. | Richard Scholz | 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 15 of 63

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 75 | In September, 2013, Sears and I (Richard Scholz) entered into an agreement where he would transfer 500,000 free-trading shares of FusionPharm stock from Meadpoint to me personally. We agreed that I would pay Sears for the stock after I sold the stock. The stock was related to a convertible note between Meadpoint Venture Partners, hereinafter referred io as "Meadpoint", which was a company run by Sears, and FusionPharm. I was not aware that this note was ever back dated. On the paperwork provided to the transfer agent and the broker at Scottsdale, Sears and I falsely represented that I had paid $50,000 upfront for the stock. I was aware that Sears was using a bank deposit for $50,000 from some source other than me in order to satisfy the transfer agents requirement that they see proof of the payment. Sears was interested in entering into this agreement with me because he was trying to raise money. | William Sears | 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, q, v | 1, 3, 4 | Objection overruled. |
| 76 | Sears's attorney was Jean-Pierre. Sears and Jean-Pierre worked together before FusionPharm. Jean-Pierre was writing Attorney Opinion Letters for FusionPharm stock transactions. | Richard Scholz | 2011 - 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 77 | I (Richard Scholz) mentioned Jean-Pierre's legal problems to Sears but he did not seem concerned. Sears indicated to me that Jean-Pierre was aware that I was promoting FusionPharm stock and getting paid with stock proceeds. | William Sears | 2011 - 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, m, v | 1, 3 | Objection overruled. |
| 78 | From approximately May of 2011 through early December of 2013, I (Richard Scholz) made approximately $488,000 for promoting FusionPharm stock. I stopped when Sears said that he longer needed anyone to promote the stock. | Richard Scholz | 2011 - 2013 | INV_00009312 (Richard Scholz - Declaration) | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 | First sentence: Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation.<br><br>Second sentence: Objection overruled. |
| 79 | Sears told Scholz that FusionPharm had taken over the shell company Baby Bee Bright. | William Sears | 2011 | INV_00000774 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 16 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 80 | Sometime after the Federal search warrant was executed in May, 2014, Sears told Scholz that he had made $10 million. Scholz assumed it was from the sale of FusionPharm stock. | William Sears | 2014 | INV_00000774 (Richard Scholz - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, t | 1, 3 | First sentence: Objection SUSTAINED.<br><br>Second sentence: Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 81 | Wayne Coleson understood that Sears was the major investor in FusionPharm and that Sears and his friends were responsible for getting FusionPharm started. Coleson understood that FusionPharm was building the PharmPods and Vertifresh, which was owned by Sears, was purchasing the PharmPods and selling the produce. During the tour of the warehouse, they discussed the purchase of convertible debt. | Wayne Coleson | 2013 | INV_00000676 (Wayne Coleson - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, c | 1, 2 | First two sentences: Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation.<br><br>Third sentence: Objection SUSTAINED. |
| 82 | Sears offered up a fixed price deal to purchase a portion of the convertible note between Bayside and FusionPharm. | William Sears | 2013 | INV_00000676 (Wayne Coleson - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m, t | 1, 3 | Objection SUSTAINED. |
| 83 | Robert Dittman said that he was often trusting of Scott Dittman and Sears and may have signed something without looking it over. | Robert Dittman | 5/16/2014 | INV_00000516 (Robert Dittman - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, o | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 84 | William Sears told Robert Dittman that his prison time was a result of criminal charges related to securities. | William Sears | 6/8/2015 | INV_00001282 (Robert Dittman - 302 Report) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 | Objection SUSTAINED. |
| 85 | Bodden was first introduced to Guy JEAN-PIERRE during a meeting in Boca Raton, Florida in 2010. William Sears made the introduction to Jean-Pierre. | William Sears | 2010 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, c | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 17 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)
CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 86 | Sears told Bodden that he (Sears) had conduct prior business deals with Jean-Pierre. | William Sears | 2010 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 | Objection SUSTAINED. |
| 87 | Bodden recalls Jean-Pierre providing a resume and Bodden thought Jean-Pierre was a good attorney that appeared knowledgeable. | Cliff Bodden | 2010 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, c, m | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 88 | Bodden recalls that he learned through Sears that Jean-Pierre had been barred as an attorney from the OTC Pink Sheets. | William Sears | 2010 - 2011 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Objection SUSTAINED. |
| 89 | Bodden learned that Jean-Pierre could no longer write opinion letters from Sears. Bodden and Sears discussed Jean-Pierre's problems with OTC markets. Sears advised that Jean-Pierre's problems were not his fault; instead, it was the fault of the client. | William Sears | 2010 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 | Objection SUSTAINED. |
| 90 | Jean-Pierre was always a name mentioned by Bill Sears during conversations related to microcap stocks. They were always together. | William Sears | 2010 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Objection SUSTAINED. |
| 91 | While working at FusionPharm….There was a checklist of items that needed to be reviewed by an attorney. Bodden knew that Jean-Pierre was reviewing some of these documents. | Cliff Bodden | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 92 | Bodden and Sears had conversations about Jean-Pierre's legal situation. Sears advised that it was the client's fault and that Jean-Pierre was trying to get removed from the OTC's list of barred attorneys. | William Sears | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 | Objection SUSTAINED. |
| 93 | Sears discussed with Jean-Pierre about what Sears needed to do to get free trading shares. Sears needed opinion letters for the transfer agent and brokerage firm. | William Sears | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m, h, j | 1, 3, 4 | Objection overruled. |
| 94 | Sears advised Jean-Pierre about the financials because Jean-Pierre was owed money. | William Sears | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3 | Objection overruled. |
| 95 | Jean-Pierre and Sears were actively involved in FusionPharm. Sears would describe the work that he was performing at FusionPharm to JEANPIERRE. | William Sears | 2011 - 2013 | GJP_00011190 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 18 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)
CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 96 | Bodden advised that Sears and Scott Dittman were business partners. He would ask either Sears or Scott Dittman if he had a question about FusionPharm. | Cliff Bodden | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 97 | Bodden was aware of Sears' involvement in FusionPharm activities, because he worked at the FusionPharm business locations and could also hear conversations among Sears, Scott Dittman, Scholz, and others. | Cliff Bodden | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 98 | Bodden described Bayside Realty as Sears' holding company in his mother's name (Sandra Sears). He stated that Sears wanted to keep stock out of his own name to avoid any disclosure requirements. | William Sears | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m, v | 1, 3 | Objection overruled. |
| 99 | Sears instructed Cliff Bodden early on that he (Sears) was not to be officially listed as being part of FusionPharm. | William Sears | 2011 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s, m, l, h, v | 1 | Objection overruled. |
| 100 | Bodden overheard Sears' telephone calls with Richard Scholz, when Sears was telling Scholz about FusionPharm activities. Bodden also overheard Sears selling FusionPharm shares through broker-dealers in Arizona . | William Sears | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s | 1 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 101 | Bodden overheard Sears and Richard Scholz discussing the stock, future press releases, and the ongoing sales of FusionPharm stock. | William Sears | 2011 - 2013 | INV_00003800 (Cliff Bodden - MOI) | a, b, d, e, f, i, k, n, p, r, s | 1 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 102 | Based on communications with Jean-Pierre, Bodden assumed that Jean-Pierre was putting together everything necessary for DiTommaso to write the opinion letters | Cliff Bodden | 2011-2013 | GJP_00001605-1606 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 103 | Sears told Bodden to provide everything necessary to create FusionPharm's opinion letters to Jean-Pierre to include FusionPharm's quarterly and annual filings. | William Sears | 2011-2013 | GJP_00001606 (Bodden) | a, b, d, e, f, i, k, n, p, r, s, c, q, l | 1, 3 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 19 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)
CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 104 | Sears told Jean-Pierre that Sears and Dittman built FusionPharm. | William Sears | 2011-2013 | GJP_00001609 (Bodden) | e, m, d | 1, 3 | Objection SUSTAINED. |
| 105 | At FusionPharm's Vine street location and then again in Boca, Bodden heard Sears tell Jean-Pierre that he needed to get stock cleared because FusionPharm needed money. | William Sears | 2011-2013 | GJP_00001609 (Bodden) | a, b, d, e, f, i, k, n, p, r, s, r, p | 1, 3 | Objection overruled. |
| 106 | On page 47, Bodden listed Dittman and Jean-Pierre as the companies Officers and Directors and then on page 48, based on instructions from Dittman and Sears, did not list Sears or Robert Dittman under the family relationships section. | William Sears/Scott Dittman | 2012 | GJP_00001610 (Bodden) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 | Objection overruled. |
| 107 | Sears, and sometimes Dittman, helped Bodden with deciphering the deposits into FusionPharm's bank account as either revenue, a loan, or equity | William Sears/Scott Dittman | 2011-2013 | GJP_00001610 (Bodden) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 108 | Bodden was directed to book certain depoists as loans from Meadpoint or Bayside yet there was no supporting documents fo any loans made by Sears or FusionPharm. | Cliff Bodden | 2012 | GJP_00001610 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Presuming Bodden wsa "directed" by Sears or Dittman, objection overruled. |
| 109 | When Sears pitched the deal to Malino,Sears portrayed himself as part of the company | William Sears | 2012 | GJP_00001610-1611 (Bodden) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection SUSTAINED. |
| 110 | Sears directed Bodden to write up two different notes: one for Meadpoint and one for Bayside. | William Sears | 2011-2013 | GJP_00001611 (Bodden) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 111 | Sears provided Jean-Pierre with a llist of things that he needed to do related to the purchase of the debt. | Cliff Bodden | 2013 | GJP_00001612 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 112 | The money deposited into Sandra Sears' Wells Fargo bank account comes from stocks sold from William Sears' investments with Fusion Pharm and possibly other businesses. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 20 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 113 | William Sears deposits his money into Sanrda Sears' account because she is the only person he trusts with his money. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, t, v | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 114 | William Sears contacts Sandra Sears via telephone only to request when he wants her to wire money out from her Wells Fargo bank account into the brokerage account. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, t, v | 1, 2 | Objection overruled. |
| 115 | Sandra Sears only communicates with William Sears, and no other person, regarding commercial business accounts and financial transactions for Colorado-based companies. Sandra Sears always communicates with William Sears regarding these type of communications via telephone, and never through e-mail and/or any other form of communication. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 116 | Sandra Sears also acknowledged to knowing the reasons why William Sears wanted her to open the Wells Fargo accounts, but she again did not feel comfortable about talking about them. | Sandra Sears (Mother of William Sears) | 5/16/2014 | INV_00000198 (Sandra Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 117 | DiTommaso told Sears to run everything through Jean-Pierre. | William Sears | 2011 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3 | Objection overruled. |
| 118 | Dittman wanted to speak with Baby Bee Bright's attorney and accountant. | William Sears | 2011 | INV_00001766 (William Sears - 302) | d, e, m | 1, 3, 6 | Objection overruled. |
| 119 | When Dahlman transferred Sears the 185,000 preferred shares, Sears notified Jean-Pierre that he was over the 10% affiliate standard. | William Sears | March, 2011 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 5 | Objection overruled. |
| 120 | They were all handshake deals between Dittman and Sears that were not doucmented | William Sears | 2011 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 121 | Bodden suggested that the loans made by Sears to FusionPharm be split into two notes, one from Meadpoint and one from Bayside, so Sears could keep one note and sell the other note. | Cliff Bodden | 2011-2012 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 21 of 63

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 122 | Sears and Bodden flew to Florida to met with Jean-Pierre to discuss the notes. | William Sears | Mar-12 | INV_00001766 (William Sears - 302) | e, m, d, f | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 123 | When the convertible notes were sent to DiBella at PSTC, Sears did not tell her that the notes were backdated. | William Sears | 2012 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 124 | Sears believed that Jean-Pierre was not aware that he was giving bad legal advice. | William Sears | 2012 | INV_00001766 (William Sears - 302) | e, m | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 125 | Scholz told Sears about Jean-Pierre's case being charged by the SEC in 2013. | Richard Scholz | 2013 | INV_00001766 (William Sears - 302) | e, m | 1, 3, 4 | Objection SUSTAINED. |
| 126 | Dittman and Sears were shocked to find out about Jean-Pierre's legal trouble. | William Sears | 2013 | INV_00001766 (William Sears - 302) | e, m | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 127 | Sears and Dittman were "partners". Sears and Dittman were two guys building a business. | William Sears | 2011 - 2013 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 128 | Richard Scholz was involved from the beginning of FusionPharm in 2011. Scholz company, Prestige Media, was making phone calls to registered representatives at Oppenheimer, Merrill Lynch and Prudential to market FusionPharm and generate interest in FusionPharm's stock. Sears and Scholz had an agreement whereby Sears paid Scholz 25% or 30% of the proceeds from Sears' sale of FusionPharm stock. | William Sears | 2011 - 2013 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 22 of 63

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 129 | Sears paid Jean-Pierre with Microcap or other Sears' controlled bank accounts. | William Sears | 2011 - 2013 | INV_00001766 (William Sears - 302) | e, m, t | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 130 | Sears and Dittman (They) discussed disclosing Sears as a part of FusionPharm in the early statges of FusionPharm. | William Sears | 2011 | INV_00001766 (William Sears - 302) | e, d, m | 1, 3, 4 | Objection overruled. |
| 131 | In March of 2012, Sears and Bodden flew to Florida and met with Jean-Pierre to discuss the notes. Sears was only interested in selling Malino a non-convertible note. Around the time of the discussions with Malino, the note agreements were documented as non-convertible notes. There were multiple versions of the notes, both convertible and non-convertible, all documented after the loans were funded. The conversion rate was $0.01 per share. After meeting with Jean-Pierre in March of 2012, Jean-Pierre and Bodden drafted the notes and they were signed at the same time. The note amounts were determined after Bodden went through the FusionPharm bank statements to identify all of the deposits from Sears. Sears was not interested at the time in selling a convertible note because he was afraid it would tank FusionPharm's stock. He also wanted to be in a position to take back FusionPharm's stock in the event the company failed. Jean-Pierre was aware that the notes sent to Malino reflected a non-convertible note. | William Sears | March, 2012 | INV_00001766 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 132 | Sears indicated that in Nov 2012 Sears was attempting to bring the notes to market and get money for the company as indicated in an email to Bodden | William Sears | 26-Nov-12 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 4 | If referring to the e-mail to Bodden, objection overruled. |
| 133 | During the confenence call between Malino, Bodden and Sears, Malino asked a lot of questions concerning FusionPharm's OTC filings. Malino wanted the debt to be a convertible note but Sears and Bodden did not. Bodden was communicating with Jean Pierre about the drafting of the notes. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | First two sentences: Objection SUSTAINED as to anything said by Malino, otherwise overruled.<br><br>Third sentence: Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 23 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 134 | Sears said that prior to the Malino deal, he did not know what a certificate of designation was until Bodden told him. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | If referring to Bodden's explanation, objection overruled. |
| 135 | Sears spoke with Jean-Pierre on a daily basis concerning the transition from Baby Bee Bright to Fusionpharm. | William Sears | 2010 - 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 136 | Bodden drafted part of the disclosure statement and it was reviewed by Jean Pierre before being sent to Dittman for signature. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 137 | Sears told Jean-Pierre that Sears would sign documents for/as his Mother. | William Sears | 2010 - 2013 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 | Objection overruled. |
| 138 | Dittman and Jean Pierre had an initial discussion about disclosing Sears as family before Sears and Jean Pierre talked about it. Sears said he thought he should be disclosed but Jean Pierre said that since he was not a blood relative and only a brother-in-law he did not need to be disclosed. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 139 | Sears, Jean Pierre, Scott Dittman, and Andy Duke had a meeing where there were discussions about raising capital, notes, and SB1 vs Form 10, and possible discussions about the FINRA investigation. | William Sears | Oct-11 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | As to Andy Duke's statements, objection SUSTAINED. Otherwise overuled. |
| 140 | Sears said he did discuss the transfer with Scholz prior to the FINRA agreement but Kramer's inquiry pushed it to the top of the list. Jean Pierre wrote the agreement, sent it to Sears who then sent it to Scholz for both to sign. Jean-Pierre was aware that Sears was keeping the stock despite what the agreement said. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 141 | Sears remembers Scholz telling him that FusionPharm stock got "blue slipped" but that may have been up to a year later. | William Sears | 2011-2012 | GJP_00011804 (William Sears - 302) | e, m | 1, 3, 4 | Objection SUSTAINED. |
| 142 | Sears notified Jean-Pierre about the initial call from FINRA. He also told Jean-Pierre that FINRA was asking about Sears. Jean-Pierre was aware that Sears was selling FusionPharm stock at that time. | William Sears | October, 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3, 4 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 24 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 143 | When Jean-Pierre visited FusionPharm in October, 2011, Sears, Dittman, and Andy Duke discussed raising money, the debt/notes from Sears to FusionPharm, up-listing FusionPharm's stock and the associated audit, and possibly FINRA's inquiry. At the time of the meeting, the notes were not yet documented. | William Sears | October, 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4, 5 | As to Andy Duke's statements, objection SUSTAINED. Otherwise overuled. |
| 144 | The debt consisiting of Sears' loans to FusionPharm was not initially documented by promissory notes. However, Jean Pierre knew that if FusionPharm was to be up-listed then the financials would be auditied and the loans would have to be documented. Sears recalls this topic being brought up by Jean-Pierre and discussed with Dittman, Duke, and Bodden when Jean-Pierre was in Denver. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | As to Andy Duke's statements, objection SUSTAINED. Otherwise overuled. |
| 145 | Sears stated that any fusionPharm stock certificate issued to Microcap meant that he was the beneficial owner. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 146 | Dittman told Kramer that Sears was divested from Microcap. | William Sears | 2011 | GJP_00011804 (William Sears - 302) | e, j, l, m, v | 1, 3, 4 | Objection SUSTAINED. |
| 147 | After reviewing a FedEx receipt showing a record of him sending a packet to the transfer agent in Nevada on 7/25/2012 and another FedEx record showing him receiving a mailing from the transfer agent on 8/01/2012. Sears said he mailed a packet of information to Pacific Stock Transfer Company by FedEx from Colorado to Las Vegas, NV for the conversion of 40,000 shares from Todd Abbot to Microcap. Sears indicated the packet contained, among many other things, an attorney letter drafted by Jean-Pierre and signed by DiTomasso used by the transfer agent to convert the certificate. Sears said he received the new certificate through FedEx at the Vine Street address in Denver, CO from the transfer agent in Nevada. | William Sears | 2012 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 25 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 148 | After reviewing a FedEx mailing record showing a packet addressed to him being mailed from the transfer agent on 1/18/2013 to Thornton, CO. Sears said he received the certificate for 140,000 shares in the name of Bayside Realty Holdings at his Jackson Drive address in Thornton, CO. Sears said he knows he received the certificate because he would have remembered if it had not arrived. Sears said this certificate would not have been issued had an attorney letter not been presented at some point to the transfer agent. According to Sears, Jean-Pierre would have drafted the letter and DiTomasso would have signed the letter. | William Sears | 2013 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 149 | After reviewing a FedEx mailing record showing a packet addressed to him being mailed from the transfer agent on 8/15/2013 to Brighton, CO. Sears said he received a certificate for 500,000 shares in the name of Meadpoint Ventures Partners at his UPS store box in Brighton, CO. Sears said he knows he received the certificate because he would have remembered if he hadn't. Sears said this certificate would also not have been issued had an attorney letter not been presented at some point to the transfer agent. According to Sears, Jean-Pierre would have drafted the letter and DiTomasso would have signed the letter. | William Sears | 2013 | GJP_00011804 (William Sears - 302) | a, b, d, e, f, i, k, n, p, r, s, m | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 150 | William Sears stating he would like to exercise options to convert shares for Bayside note, addressed in a email | William Sears | 12/12/2012 | SWFBI_00012615.03 | a, b, d, e, f, i, k, n, p, r, s | 1, 5 | Objection overruled. |
| 151 | Sandy Sears addressing revised letter of opinion and affirming other docs have been sent in an email chain, which includes an email from William Sears stating that he belives this is everything you will need and then some. | Sandra Sears (Mother of William Sears)/William Sears | 12/24/2012 | PST_00002764 | a, b, d, e, f, i, k, n, p, r, s, v | 1, 2 (as to Sandra Sears), 1, 3 | Sandra Sears: Objection SUSTAINED.<br><br>William Sears: Objection overruled. |
| 152 | William Sears emailing Dibella that the draw down was well over a year ago and asking what she is looking for? | William Sears | 12/26/2012 | PST_00007756 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 153 | William Sears emailing Dibella stating that the letter of opinion is very detailed and complete and that he just spoke to the attorney. Also, that he is paying with credit card and that he fowarded the transfer agents comments to the lawyer. | William Sears | 12/26/2012 | PST_00007770 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 154 | William Sears emailing Dibella the 144(d)(3)(ii) rule | William Sears | 12/27/2012 | PST_00007781 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 26 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 155 | As per Mr. Dittman's request I am forwarding the documentation you requested | William Sears | 12/27/2012 | PST_00000672 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 156 | Just saw this one did not go | William Sears | 3/7/2013 | PST_00007896 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 157 | With regard to the letter of opinions this seems more as a matter of fact. These letter have a signficant cost to prepare and amend. I have had council insert statements in both resolutions and issuer letters affirming this. | William Sears | 3/11/2013 | PST_00008019 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 158 | Byaside has sold the note(the one we just authenticated and did a conversion on). There are Four new owners of said note. I would like to forward you the sale documents. The individual comanes are looking to cnvert in part. So I am forwarding this documentation so we may front run this. There are penalties for delayed delivery of the certificates so I want the wheel spinning so we can catch it in stride. Once I send the sale documents we should just need conversionrequest and board of directors resolution for said request. You have all the other DD on file. So with that please stand by, Many thanks in advance. | William Sears | 2/5/2013 | PST_00001973 | a, b, d, e, f, i, k, n, p, r, s, t | 1 | Objection overruled. |
| 159 | Good afternoon. As previously noted the Bayside note has been sold and attached is the documentation required to created and send the certificates. Should you have any queries please feel free to contact myself on behalf of bayside or Mr. Dittman on behalf of Fusionpharm Inc. | William Sears | 3/6/2013 | PST_00001973 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 160 | Just making sure you'd received this email. Please advise as there are penalties associated with delays in share issuances. | Scott Dittman | 3/6/2013 | PST_00001972 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 161 | Please find attached the socumentatino we spoke about last week. Email with documents from William Sears under the subject Meadpoint venture partners FusionPharm | William Sears | 4/11/2013 | PST_00020701 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 162 | Here are all the original docs. Please forward the document templates you require Many Thanks. | William Sears | 8/2/2013 | PST_00000783 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 163 | Good afternoon. I am going to convert a bit more of the Meadpoint note. You have all the documentation file (see below). Do it just email you and fill out a cc receipt? | William Sears | 8/2/2013 | PST_00000784 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 164 | Please find attached (legal opinion letter) | William Sears | 8/27/2013 | PST_00009407 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 27 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 165 | Please find attached the documentation for all three transactions. Each transaction has its own letter of opinion. I had previously sent a CC authority so please end each of the certificates individually for priority overnight to the following: (address for Scholtz, Thaden, Thaden) In addition, please forward copy's of the certs and tracking numbers to me Via e-mail. As always it was pleaser working with you and have a happy holiday. Attachments | William Sears | 8/29/2013 | PST_00010489 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 166 | Here are the Thaden paper work. The meadpoint letter of instructions clearly states what is left on the note after conversion. | William Sears | 8/30/2013 | PST_00000844 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 167 | Are the shares levaing today? | William Sears | 9/18/2013 | PST_00008931 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 168 | Joanna, we wil take care of this in the am and will advise when done. | Scott Dittman | 9/18/2013 | PST_00008930 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 169 | Please find attached the payment document. May I have a receipt showing the balance zeroed. In addition I never got a receipt for the payment made last week. | William Sears | 9/19/2013 | PST_00008930 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3 | Objection overruled. |
| 170 | Cool run it and Ill have it flat with zero in October. 654 | William Sears | 9/19/2013 | PST_00008929 | a, b, d, e, f, i, k, n, p, r, s, t | 1 | Objection overruled. |
| 171 | Good morning. This morning you will be receiving the certificate and stock power for the attached SCA named document. The other attachment is just the forwarded thread from the last deposit. I am drawing down from the same note you already have on file. Hopefully I got it right the first time. Thank you as always. | William Sears | 8/19/2013 | SEC-DOJ-EPROD-000058360 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 172 | Good Morning. I am currently opening and planning to make a deposit with your firm. Please see the attached documentation for pre clearance. The cert will be on your door step Tuesday the latest. The account will be in the name of Meadpoint Ventrue Partners. I have another email to forward also. This is the exact communication between myself and the securities supervisor at the transfer agent. Attached documents. | William Sears | 4/12/2013 | SEC-DOJ-EPROD-000058360 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 28 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)
CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 173 | There was no contract or written agreemnt with Mr. Dahlman when we changed the entity from Baby Bee Bright to FusionPharm, just a conversation between Mr. Dahlman and William Sears. I have no emails with Mr. Dahlman but am looking for anhting between Mr. Sears and myself that would be germane to the conversation. attached documents to two emails. | Scott Dittman | 11/14/2011 | SEC-DOJ-EPROD-000075084 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 174 | I will be away for the holidays but have asked my cororate secretoary, Mr. Guy JeanPierre to follow up with you in the interim about anything else you may require. Guy is cc'd here. | Scott Dittman | 11/23/2011 | SEC-DOJ-EPROD-000569906 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 175 | Please find attached. This is the doucmentation fro my associate Richard Scholz. Hi is in need of a letter of opinion for deposit. The shares were derived from the preferred searies A of Baby Bee Bright corporation. I have attached the board minutes that created the shares and such. The shares were transferred to Microcap management as free trading and microcap did the same to Prestige for services. Please note Mr. Scholtz's email. Send him the bill for your services regarding the letter. Attached PDF | William Sears | 4/19/2011 | RS_00000562 | a, b, d, e, f, i, k, n, p, r, s, t, v | 1, 3 | Objection overruled. |
| 176 | On Wednesday Richard Sholz and I will be looking for a an agreement wereas he is taking over control of the company (Microcap Management LLC a Nevada LLC) and all of its brokage as of May 9th 2011. | William Sears | 10/17/2011 | RS_00001324 | a, b, d, e, f, i, k, n, p, r, s, t , v | 1, 3 | Objection overruled. |
| 177 | It is a simple assignment. The assignment is for the company and the accts only. Any assets were to remain with me. We have an agreement detailing this. | William Sears | 10/17/2011 | RS_00001323 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 178 | I don't have one. This is what I need you to create | William Sears | 10/17-18/2011 | RS_00001322 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 179 | Rich, As discussed (Attached agreement) | William Sears | 11/8/2011 | RS_00000175 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 180 | Please fins attached the documentation you requested. Please print out, fill out and then scan to Tina for approval…..Call me (attached documents) | William Sears | 6/18/2012 | RS_00000411 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 29 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)
CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 181 | Mom, you dial 1(408)6034927 They will answer the phone trading: Identify yourself as Sandy Sears with Bayside acct (154204611 if they ask for it) and tell them you want ot place a sell order. Then just twll them what Richie instructs you. That's it! Just like ordering pizza. Rich Scholz (407) 722-0190 | William Sears | 2/7/2013 | RS_00001598 | a, b, d, e, f, i, k, n, p, r, s, v | 1 | Objection overruled. |
| 182 | Recently, I have partnered with my brother-in-law William Sears, and we have acquired and moved our operations into a publicly traded company: Fusion Pharm, Inc....Below is our 'coming out' press release explaining our recent expansion into the Arizona marketplace. Feel free to contact me if you have any interest or questions....enclosed press release....Contact: Mr. William Sears, Investor Relations of FusionPharm, Inc. | Scott Dittman | 4/21/2011 | Abbott_00000050 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 183 | Got confirmation that deliveries were done/attempted Monday and yesterday (2 other guys got theirs) They are sent certified…u need to sign…did you get a 'pick up at the post office' card at home? | Scott Dittman | 5/25/2011 | GJP_00010921 | a, b, d, e, f, i, k, n, p, r, s | 1, 6 | Objection overruled. |
| 184 | Got your text too. Hold that cert 'till next week…I will come meet you to trade it out fro a non-restricted one in the same quantity…we can discuss thenif that is OK. | Scott Dittman | 5/26/2011 | GJP_00010921 | a, b, d, e, f, i, k, n, p, r, s | 1, 6 | Objection overruled. |
| 185 | Yes…and climbing. Can I call u on my drive home..4ish? | Scott Dittman | 6/1/2011 | GJP_00010919 | a, b, d, e, f, i, k, n, p, r, s | 1, 6 | Objection overruled. |
| 186 | Part 2: Purchasing part of the existing not payable from FusionPharm to Meadpoint Venture Partners. Said note is convertible to class a common stock which would be free trading immediately upon conversion. Purchase price wold be $50,000.00 and would be convertibable into 500,000 shares of free trading FusionPharm stock. I have spoken with Bill Sears of Meadpoint and he is amendable to this transaction. | Scott Dittman | 8/3/2013 | SWFBI_00008486.02 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3 | Objection overruled. |
| 187 | I will start the paper work ball rolling. Please note that FusionPharm Inc cannot issue free trading securities without a registration statement. Meadpoint Venture Partners had an aged convertiable promissory note that will be used to facilitate the free shares. My suugesiont is to use Meadpoint in it's ntirety as the transaction is cleaner.... | William Sears | 8/13/2013 | SWFBI_00008608 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 30 of 63

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 188 | Ok I have got it down on the paperwork. Now as far as free, with 1 million shares in your name solely, you would be subject to a tricle rule. Basically considered an insider. We have only 5.6 issued and outstanding and 1mm puts you over 10% realm. So we need a second company or persons name. In addition I will need the tax Id/ssn for the transfer agent. Ill have all this wrapped up nex week! | William Sears | 8/14/2013 | SWFBI_00008651 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 189 | Check from William Sears to Jean Pierre | William Sears | 10/14/2011 | SEC-DOJ-EPROD-000069232 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 190 | Check from William Sears to Jean Pierre | William Sears | 3/12/2012 | SEC-DOJ-EPROD-000069270 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 191 | Check from William Sears to Jean Pierre Adams Letter of opinion | William Sears | 5/14/2012 | SEC-DOJ-EPROD-000069288 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 192 | Check from William Sears to Jean Pierre | William Sears | 5/25/2012 | SEC-DOJ-EPROD-000069293 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 193 | Check from William Sears to Jean Pierre | William Sears | 6/20/2012 | SEC-DOJ-EPROD-000069303 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 31 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)
CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 194 | Check from William Sears to Jean Pierre Abbott 144 | William Sears | 7/5/2012 | SEC-DOJ-EPROD-000069313 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 195 | Check from William Sears to Jean Pierre | William Sears | 11/18/2012 | SEC-DOJ-EPROD-000069343 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 196 | Check from William Sears to Jean Pierre | William Sears | 3/6/2013 | SEC-DOJ-EPROD-000069351 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 197 | Check from William Sears to Jean Pierre | William Sears | 8/19/2013 | SEC-DOJ-EPROD-000069361 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 198 | Scott, my brother and William my brother-in-law have started a vertical farming company producing mainly leafy greens (not hippie lettuce) named Vertifresh, and we all met last week to discuss further entrance into the food market here in Denver. | Robert Dittman | 9/17/2012 | SWFBI_00019028 | a, b, d, e, f, i, k, n, p, r, s | 1, 2 | Objection SUSTAINED. |
| 199 | Good morning, Was wondering how the Sept 30s were coming as I want to put them up before thansgiving. Hope all is well. | William Sears | 11/21/2011 | SWFBI_00025778 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 200 | Mike please make the following adjustments to the 9/30 fiancials and return the updated set to all participants on this email: followed by the adjustments needed to be made | Scott Dittman | 11/23/2011 | MK_00000419 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 201 | Guys, I think we have some issues to address…….. | William Sears | 11/28/2011 | MK_00000426 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 202 | Mike can I have the newst financials with the updated shareholders statemetns along with the notes to the 9-30s | William Sears | 12/22/2011 | SWFBI_00019994 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 32 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 203 | Regards (attached Financial statements) | William Sears | 12/22/2011 | SWFBI_00019994 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 204 | Here are the financial satements at last....We have a large note payable to a friendly company who isn't charging us interest yet. Do we need to acure interest anyway? Email continues to discuss accounting details, to include attach documents. | Scott Dittman | 12/31/2011 | SWFBI_00021548 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 205 | I hope all is well. As you can see we are coming downto the wire regarding the filing the 12/31s. We hope to have them to you tomorrow. I need to have them uploaded to OTC markets by Friday. Sorry for the small window however you know how these things go. Many thannkds in advance | William Sears | 3/25/2012 | MK_00000467 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 206 | Gentlemen, Please feel free to communicate with each other with regards to the parparation of the FusionPharm 12-31-12 financial statements Guy Jean Pierre 305 929 3652, Mike Kocinski 954 258 9150. Regards | William Sears | 4/3/2012 | MK_00000484 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 207 | This is the final format. I need you to send an e-mail (as you did last quarter to Guy Jean Pierre stating that you are a CPA and the finacncials are prepared in accordance with gap etc. etc. Many Thanks in advance. I am cc guy on this so you have his e-mail addresses. | William Sears | 6/7/2012 | MK_00000529 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 208 | I can attest to the fact that the statements were prepared in acordance with GAAP and that I assisted with the compilation of the statements. However, as stated for the year end statements, I am not a CPA but I am a degreed acountant with over 30 years of experience in compiling financial statements. Let me know if this is acceptable approach and I'll send the email to Guy Jean Pierre as soon as possible. | Mike Kocinski | 6/7/2012 | MK_00000528 | a, b, d, e, f, i, k, n, p, r, s | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 209 | Just need it as you did last quarter as this is now required every quarter | William Sears | 6/7/2012 | MK_00000528 | a, b, d, e, f, i, k, n, p, r, s, q | 1, 3 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 33 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)
CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 210 | Understoood, I'll send the email within the next few minutes | Mike Kocinski | 6/7/2012 | SWFBI_00016574 | a, b, d, e, f, i, k, n, p, r, s, n, q | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 211 | I am the accountant that assisted with the preparation of the financial statements for FusionPharm for the period ending March 31, 2012. These statements were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any futher information. | Mike Kocinski | 6/7/2012 | SWFBI_00016824 | a, b, d, e, f, i, k, n, p, r, s, p, q | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 212 | Regards | William Sears | 6/7/2012 | SWFBI_00016824 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 213 | The financial statements for Fusion Pharm, Inc (FusionPharm) for the period endingn September 30, 2012 were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any further information. | Mike Kocinski | 11/21/2012 | SWFBI_00012286 | a, b, d, e, f, i, k, n, p, r, s, q | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 214 | The financial statements for Fusion Pharm, Inc (FusionPharm) for the period endingn December 31, 2012 were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any further information | Mike Kocinski | 3/6/2013 | SWFBI_00013401 | a, b, d, e, f, i, k, n, p, r, s, q | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 215 | Invoice from Tod A. Ditommaso to Guy Jean Pierre 12/27/11 Fusion Pharm Inc. OTC Markets Opinion Letter | Tod Ditommaso | 1/15/2012 | GJP_INV_00006140 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 34 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 216 | Tod Abbott's transfer package regarding 40000 shares to Microcap Management (Includes entire package) | Todd Abbott | 9/8/2011 | GJP_00009930 through 9937 GJP_INV_00005419-5426 | a, b, d, e, f, i, k, n, p, r, s | 1, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 217 | Sandra Sears request to convert $1,400 of the certain indebtedness originally entered into May 2, 2011 in favor of Bayside Realty Holdings, LLC….has not been aan affiliate of the Company as the term is defined by Rule 144 of the Act | Sandra Sears (Mother of William Sears) | 12/6/2012 | GJP_00009973 | a, b, d, e, f, i, k, n, p, r, s, u, v | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 218 | Letter from Scott Dittman ending the draw down request under the promissory note issued by Bayside Realty Holding | Scott Dittman | 12/5/2011 | GJP_00009957 | a, b, d, e, f, i, k, n, p, r, s, q | 1 | Objection overruled. |
| 219 | Attached is the FusionPharm-Abbott-Microcap opinion letter; see attached. (letter attached) | Tod Ditommaso | 7/25/2012 | PST_00013722 | a, b, d, e, f, i, k, n, p, r, s, q | 1 | Objection overruled. |
| 220 | Invoice from Tod A. Ditommaso to Guy Jean Pierre 12/13/12 FusionPharm Bayside Opinion Letter, 12/22/12 FusionPharm Bayside Opinion Letter-Redo | Tod Ditommaso | 1/15/2013 | GJP_00010653 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 221 | Bill, In addition to the items previoulsy requested, please provide (or advise if need to be created), the following: 1. Letter of Regignation and Director's Minutes accepting the resignation of Sandra L. Sears as Director of the cooporation; 2. Director's Resolution appointing Scott Dittman as President and Treasureer and Guy Jean Pierre as Secretary of the corporation; 3. Date Pacific Stock Transfer was appointed as the corporation's transfer agent; 4. Address, email address, and contact phone number of eachof Bayside Realty and Meadpoint Venture Partners, 5. State of Organization for each of Bayside Realty and Meadpoint Venture Partners; 6. Name of Authorized Signatory for each of Bayside Realty and Meapoint Venture Partners; 7. Is or has any beneficial owner of Bayside Realty and Meadpoint Venture Partners ever been an employee, officer, director or married to an officer or director of the corporation (an affiliate). If so, date of resignation or termination. Thanks. | Cliff Bodden | 6/15/2012 | SWFBI_00017215 | a, b, d, e, f, i, k, n, p, r, s, q, p | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 35 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 222 | Guys, Circle the wagons and get the rest to our outstanding dove wrapped up. I want to get funded this week. | William Sears | 6/17/2012 | SWIRS_00013585 | a, b, d, e, f, i, k, n, p, r, s, t | 1 | Objection overruled. |
| 223 | Dove? | Cliff Bodden | 6/17/2012 | SWIRS_00013585 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 224 | Docs. Duh | William Sears | 6/17/2012 | SWIRS_00013585 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 225 | Guy, Bill asked me to forward these for your review. Best regards, Cliff Attach Offering documents | Cliff Bodden | 6/18/2012 | SWIRS_00010095 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 226 | Bill Make sure you correspond with Nick only through you non-Fusion affiliated email. | Cliff Bodden | 6/19/2012 | SWIRS_00013585 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 227 | Yes indeed…I only did this as response to you. I NEVER use this one. Only you do…MoMo | William Sears | 6/19/2012 | SWIRS_00013646 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 228 | Please find attached for your review the Quarterly Report for the reporting period ended June 30, 2012 and accompanying financial statemetns for the periods ended June 30, 2012 and June 30, 2011. I have also attached the shareholder list for Guy's review to confirm the number of shareholders. Please let me know of any revisions or corrections required. Once your review is completed I'll consolidate the pages for filing. Best Regards (attached are the reports etc) | Cliff Bodden | 8/8/2012 | SWFBI_00018453 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 229 | Dear Sir, The financial statements for Fusion Pharm, Inc. (FusionPharm) for the period ending June 30, 2012 were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any further information. Regards | Mike Kocinski | 8/14/2012 | SWFBI_00018592 | a, b, d, e, f, i, k, n, p, r, s, q | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 230 | Please find attached, my draft of the quarterly report for the period ended September 30, 2012. Cliff attach Quarterly Report | Cliff Bodden | 11/14/2012 | SWFBI_00012240 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 231 | Looks good to me upon preliminary review cliff. Mike, any questions/concerns? | Scott Dittman | 11/15/2012 | SWFBI_00012251 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 232 | Bill, Please see the attached. The Notes work with the existing draw down requests. Cliff Attach are the Notes | Cliff Bodden | 11/26/2012 | SWIRS_00037431 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 233 | Scott We are in need of a letter which confirms the end of drawdowns under the Bayside promissory note. I have drafted such for your review. If acceptable, please print on letterhead and sign. Thanks. Cliff Attach is Letter of Authorization | Cliff Bodden | 12/27/2012 | SWFBI_00012685 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 36 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 234 | Good Afternoon, I do hope all of you are doing well. Please find attached a convertible note between Byaide Realty Holding and Fusionpharm Inc. Bayside has chosen to exercise its option to convert into shares. Aside from a legal opinion and payment for the cert (Absorbed by Bayside) what else would be required to get this done in an expeditious fashion? I would like to have a cert generated as quickly as possible. Byside is a family member company and I am assisting them as I am familiar with all parties. So I will be the point person for all. Regards | William Sears | 12/12/2012 | SWIRS_00036852.06 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 235 | Joanna, Good Afternoon. I do believe this is everything you will need and then some. Regards | William Sears | 12/13/2012 | SWIRS_00036852.04 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 236 | Joanna, Please find attached the revised letter of opinion. I have already sent all the other doc you requested. Any chance of getting this printed and out today? Thank you. Sandy Sears | Sandra Sears (Mother of William Sears) | 12/24/2012 | SWIRS_00036852.03 | a, b, d, e, f, i, k, n, p, r, s | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 237 | Joanna, The first five paragraphs lay it out. I just spoke to the atty and he does not know what else he can possibly write. He is a bit confused. The note like stock is a financial instrument. It is aged. The second paragraph defines it and then it goes on. This transaction is righteous on every aspect of the word. The letter of opinion is very detailed and complete. If there is specific wording you required please advise and I will forward it to the atty to see what he thinks. Please advise as we are all a little confused at this time. 303 518 3895. Bill Sears | William Sears | 12/26/2012 | SWIRS_00036852.02 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 238 | Guy I need this yesterday? This T/A is an idiot!!! | William Sears | 12/26/2012 | SWIRS_00036852 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 239 | Bill, Please have this signed and that should complete the package. Cliff attached Sears Letter of Resignation | Cliff Bodden | 12/27/2012 | SWIRS_00037683 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 240 | Joanna, As per Mr. Dittmans request I am forwarding the documentation you requested. Regards. William Sears | William Sears | 12/27/2012 | SWIRS_00036839.02 | a, b, d, e, f, i, k, n, p, r, s | 1, 6 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 37 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)
CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 241 | Bill, It seeems that Joanna is seeking additional information in light of the fact that the face value of the note is less than the sum of the drawdowns mae thereunder-presenting the possiblility that the note is still open and therefore the full purchase price or other considerations has not been paid. That and the issue of not having dealt witha promissory not funded in installments. As I remember, the Capitoline due diligence included a letter of authorization terminating the credit line facility on December 5, 2011. I think that should be referenced in the opinion letter as a means of proving payment in full under the terms of the note. Also, under the Note, the lender was under no obligation to fund any draw down and therefore the face value on the note was meant to act as a credit limit not an actual commitment amount. These factors when taken with no funds being advanced since the termination should be evidence enough that the credit line portion of the agreement eneded on December 5, 2011 and the promissory note remained in effect with the principal sume of $176,950. The effective date, date of last draw down and the date the company terminated the credit line facility created by the note all occurred prior to December 5, 2011. Accordingly, I think that is the basis for our reliance on 144(d)(3) or specifically, 144(d)(3)(ii). 144(d)(3)(ii) is stated by Bodden. Cliff | Cliff Bodden | 12/27/2012 | SWIRS_00036842 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 242 | Guy, Please find attached the each drawdown request and proof of receipt of funding by the company under the note. Attached documents to email | Cliff Bodden | 12/28/2012 | SWIRS_00037661 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 243 | Regards, Sears email to Dittman Bayside Starcity note attached | William Sears | 1/23/2013 | SWFBI_00015281 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 244 | Marked up copy attached, Attach FusionPharm Bayside | Cliff Bodden | 1/31/2013 | SWFBI_00012956 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 245 | Gents, Please review and comment. Add your bios. I'll add financial projections when I get in this morning. Meeting my old Colfax landlord at 9…be at vine right after. Attached to email is Business plan | Scott Dittman | 5/2/2011 | SWFBI_00026858 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 38 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 246 | For your records. Attached to email summary of minutes | Gino Rodrigues | 5/9/2011 | SWIRS_00001420 | a, b, d, e, f, i, k, n, p, r, s | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 247 | Gentlemen, This was the agreement I was referring to. This would be fro both my interests in FS and Scotts in meadpoint. Guy pleaes review and make appropriate changes. Regards. Attach Nominee Declaration of Shares | William Sears | 10/11/2011 | SWFBI_00024993 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 248 | Scott, I guess I read it wrong. The cert is for 182,050....it was late when I pulled it out on Friday evening. Any way the deal will be structured wheras we can have some free anyway. It's just something we need. Regards | William Sears | 6/20/2011 | SWFBI_00027204 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 249 | Regards, Attached FusionPharm Disclosure Statement | William Sears | 7/12/2011 | SWFBI_00024090 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 250 | Dear Pacific Stock Transfer, Please let this e-mail act as a letter of authorization for you to give the company's lawyer Mr. Guy Jean Pierre full and complete details of the company's share structure. We are in the process of filing our information and disclosure statement and this is required for the filing. Thank you for your cooperation regarding this matter. Should you have any questions regarding this matter please feel free to contact me. | Scott Dittman | Jul-11 | SWFBI_00024143.03 | a, b, d, e, f, i, k, n, p, r, s | 1, 5 | Objection overruled. |
| 251 | Guy, please forward the information once received. Regards | William Sears | 7/14/2011 | SWFBI_00024143.02 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 5 | Objection overruled. |
| 252 | Guy, what time for Scott tomorrow? Regards | William Sears | 7/15/2011 | SWFBI_00024143.02 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 5 | Objection overruled. |
| 253 | Guy, there is a panerea bread at the corner of sepulveda and Manchester ave right by the airport. How about that spot at 2:30? Please give the attorney my mobile #303-419-6352 and shoot me his contact ifno too pls. | Scott Dittman | 7/18/2011 | SWFBI_00024142 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 5 | Objection overruled. |
| 254 | Guy, I am thinking of soing some business with this group. I would like your to review the attached docs to make sure we would not be breaking any laws. Regards Attached to email Oxford 2011 deal docs. | William Sears | 7/28/2011 | SWFBI_00024194 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection SUSTAINED. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 39 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 255 | Ben trying to hit you on skype. What is your skype name? Mine is Scott.Dittman2 | Scott Dittman | 11/7/2011 | SWFBI_00025420 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection SUSTAINED. |
| 256 | Connie, sorrry, traveling this week and just returned last night. Yes indeed, we would still like for you to process our payroll. Do I need to sign/do anything for you? Pls advise. Please mail all checks to the following address: 1610 Wynkoop St #110, Denver CO 80202. | Scott Dittman | 9/29/2011 | SWIRS_00001871 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection SUSTAINED. |
| 257 | Yes and Yes! | Scott Dittman | 9/29/2011 | SWIRS_00001871 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 258 | Regards. Attached FusionPharm Disclosure Statement | William Sears | 12/5/2011 | SWFBI_00026201 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 259 | Scott, This week will be a gross total of $25,118. Minus RS (6,279.00)=$18,839…Minus 900 to Jimmy=17,939 Less 30%=$12,559 net to FP. Regards. | William Sears | 7/2/2012 | SWFBI_00016199 | a, b, d, e, f, i, k, n, p, r, s,t | 1 | Objection overruled. |
| 260 | Joslyn, Please instruct Mr. Roy as to the procedure to lift his 144 legend. Many thanks in advance. Regards. | William Sears | 1/31/2013 | SWFBI_00015287.05 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 5 | Objection overruled. |
| 261 | David, William is on vacation for the week, so I'm trying to fill in. I'm not sure where your conversations with Bill left off but I've cc'd the company counsel in these matters, Mr. Guy JeanPierrr on this email. Guy, David Roy is a shareholder with 144 restricted stock from the latter part of 2011 (1 year restriction). He needs assistance with an opinion letter to deposit his cert. Please get whatever info you require from David to provide the opinion letter. Thanks to all. | Scott Dittman | 2/13/2013 | SWFBI_00015287 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 262 | Guy, I want to put in a clause regarding to the series A Preferred. I want you to insert a clause that clearly states that in case of Bankruptcy whereas the shares wouldland in the hands of a liquidator or liquidation for said insovency the share hold most give the company the opportunity to purchase the shares back at par. Or a clause that say they cannot be liquidated by a liquidator? Just something that protects the company. Preferably the first. | William Sears | 2/28/2013 | SWFBI_00015324 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 263 | Regards, Attached Amended and Restated Articles of Incorporation | William Sears | 2/28/2013 | SWFBI_00015324 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 264 | Regards, FWD David Roy's email to Guy | William Sears | 2/20/2012 | SWFBI_00013354.02 | a, b, d, e, f, i, k, n, p, r, s | 1,3 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 40 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 265 | Dave, The officers certificate was executed last week. Perhaps he is awaiting payment to release said documentation. I forwarded the invoice last week. I have attached it again should you have not received it. Give a call when you get a chance this afternoon. Many thanks in advance. Regards. | William Sears | 3/4/2013 | SWFBI_00013354 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 266 | My bad regards. Attached FusionPharm OTC markets | William Sears | 3/8/2013 | SWFBI_00015355 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 267 | Guy, I need the pink sheeet letter yesterday. I will send the other in one hour | William Sears | 11/20/2012 | SWFBI_00014988.02 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 268 | Regards. Sears FWD guy's email. Attach FusionPharm_Lawfirm_attorney letter | William Sears | 6/28/2011 | SWFBI_00014988 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 269 | Guy, it would seem I need another letter of opinion for the note. Please reference Meadpoint converting it into the Name of Richared Scholz as in the doucments. Regards. Attache J Dibella doc | William Sears | 8/8/2013 | SWFBI_00008551 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 270 | Fed Wire Transfer Request Forms, Microcap Management | William Sears | 9/2011-12/2012 | SEC-DOJ-EPROD-000063311 through 63334 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 271 | Wire Authorization Form, Meadpoint Venture Partners | William Sears | 5/2013-12/2013 | SEC-DOJ-EPROD-000063239 through63276 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 272 | Wire Authorization Form, Bayside Realty Holdings | Sandra Sears (Mother of William Sears) | 2/1/2013-4/13 | SEC-DOJ-EPROD_000063205 throught 63218 | a, b, d, e, f, i, k, n, p, r, s, t | 1, 2, 4 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 273 | Email from Scott Dittman to OTC Markets referring to Guy Jean Pierre as the corporate secretary for FusionPharm and stating "Yes, all of the information is correct…." | Scott Dittman | 12/2/2011 | SWFBI_00026157 (Exb 16) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 41 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 274 | Email from William Sears to Fred Dahlman referenincg shares to Microcap and Salt and stating "Fred, As per our conversation please transfer the following amounts of preferred shares to complete the transaction. 10,000 to yourself or nominee 50,000 to Microcap Management LLC the balance (1,440,000shs) of the stock should go to Salt Investments LLC. In addition please forward copy's of the original certs or documentation that was used to create said shares." | William Sears | 11/8/2010 | FD_00000112 (Exb 33) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 275 | Email from William Sears to Fred Dahoman referencing shares transfer to Microcap, Robert Dittman, and Salt stating "Fred, As per our conversation please transfer the following amounts of preferred shares to complete the transaction. 10,000 to yourself or nominee 100,000 to Microcap Management LLC 25,000 to Robert L. Dittman the balance (1,365,000shs) of the stock should go to Salt Investments LLC. In addition, please forward copy's of the original certs or documentation that was used to create said shares." | William Sears | 11/19/2010 | FD_00000078 (Exb 35) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 276 | Email from Kelly Blume to Scott Dittman stating "I paid the Verizon bill last night with Billy's company card." | Kelly Blume | 7/5/2012 | SWFBI_00017781 (Exb 41) | a, b, d, e, f, i, k, n, p, r, s, t | 1, 6 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 277 | Email chain between Bohlender and Scott Dittman discussing Sears role in FusionPharm as well as other items | Scott Dittman/Shane Bohlender | 08/12-15/2011 | SWFBI_00027492 (Exb 43) | a, b, d, e, f, i, k, n, p, r, s | 1, 2, 3 | Objection SUSTAINED. |
| 278 | Email chain between Pacific Stock Transfer, Sears, and Jean-Pierre in which Sears states "Mr. Jean Pierre is handling the reverse with FINRA." | William Sears | 2/15/2011 | PST_00007071 (Exh 92) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 279 | Letter from Richard Scholz to Leslie Eldridge at Pacific Stock Transfer stating that shares in FusionPharm need to be transferred back to MicroCap Management. Scholz states "Once the certificate is created please email a copy to William@williamjSears.com." | Richard Scholz | 5/9/2011 | PST_00000432 (Exhb 99) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 280 | Email from Sandra Sears (sandy@la-dee-da.me) to Leslie Eldridge at PSTC confirming that $220.00 was sent as fees for the transfer of shares from FusionPharm to Microcap Management. | Sandra Sears (Mother of William Sears) | 4/5/2011 | PST_00000493 (Exhb 103) | a, b, d, e, f, i, k, n, p, r, s, t | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 42 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 281 | Email including Jean-Pierre, Scott Dittman, and PSTC in which Dittman states "Please let this email act as a letter of authorization for you to give the company's lawyer Mr. Guy Jean Pierre full and complete details of the company's share structure." | Scott Dittman | 7/12/2011 | PST_00002889 (Exhb 105) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 282 | Email from William Sears to Leslie at PSTC concerning stock certificate for Robert Dittman in which Sears states "The below share holder has to yet receive his certificate. I was asked to follow this up. Was it sent fed ex?" | William Sears | 8/3/2011 | PST_00008768 (Exb107) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 283 | Email chain between Sears and Scottsdale Capital in which Scottsdale asks Sears "are you or your company enganged in any type of stock promotion activity with respect to FusionPharm?" Sears replies "NO!!! On both….." | William Sears | 8/10/2012 | SEC-DOJ-EPROD-000062587 (Exb 124) | a, b, d, e, f, i, k, n, p, r, s | 1, 2, 6 | Objection overruled. |
| 284 | Letter to Scottsdale Capital Advisors signed by Sandra Sears stating "At this time Bayside Realty Holding Inc is still holding a convertible note in the amount of $187,343" | Sandra Sears (Mother of William Sears) | 1/27/2013 | SEC-DOJ-EPROD-000061934 (Exb 127) | a, b, d, e, f, i, k, n, p, r, s, u | 1, 2, 6 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 285 | Email from Sandra Sears (sandraSears1120@gmail.com) to Scottsdale Capital Advisors discussing outstanding balances of $187,343 which is resluted from the legal opinion balance of $176,950 plus interest. Sandra Sears replies and states "You are correct on all your assumptions" in reference to the balances. | Sandra Sears (Mother of William Sears) | 1/28/2013 | SEC-DOJ-EPROD-000061935 (Exb 127) | a, b, d, e, f, i, k, n, p, r, s | 1, 6 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 286 | As part of an email chain, Sears (wSears@vertifresh.onmicrosoft.com) emails Joanna DiBella at PSTC with a copy to Scott Dittman (sDittman@fusionpharm.onmicrosoft.com) stating "Just saw this one did not go!" | William Sears | 3/7/2013 | GJP_INV_00006170 (Exb 210) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 287 | As part of an email chain, Joanna DiBella replies to an email sent by Willaim Sears and includes Scott Dittman (sDittman@fusionpharminc.onmicrosoft.com) stating "This is what we still need" regarding processing of a package. | Joanna DiBella | 3/7/2013 | GJP_INV_00006168 - GJP_INV_00006169 (Exb 210) | a, b, d, e, f, i, k, n, p, r, s | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 43 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 288 | As part of an email chain, Joanna DiBella replies to an email sent by William Sears with a copy to Scott Dittman (sDittman@fusionpharminc.onmicrosoft.com) stating "I am still in need of the following to proceed" in reference to processing of a package. | Joanna DiBella | 3/11/2013 | GJP_INV_00006167 - GJP_INV_00006168 (Exb 210) | a, b, d, e, f, i, k, n, p, r, s | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 289 | As part of an email chain, William Sears (wSears@vertifresh.com) replies to an email sent by Joanna DiBella at PSTC with a copy to Scott Dittman (sDittman @fusionpharminc.onmicrosoft.com) discussing opinion letters and states "With regards to the letter of opinions this seems more as a matter of fact. These letter have a significant cost to prepare and amend. I have had council insert statements in both resolutions and issuer letters affirming this." | William Sears | 3/11/2013 | GJP_INV_00006167 (exb 210) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 290 | As part of an email chain, William Sears (wSears@vertifresh.com) forwards the email chain to Guy Jean Pierre (guymjeanpierre@yahoo.com, guy@lawfirmofjeanpierre.com, marcelo1@thedeallawyer.com) | William Sears | 3/12/2013 | GJP_INV_00006166 - GJP_INV_00006167 (Exb 210) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 291 | Letter signed by Scott Dittman at FusionPharm to Joanna DiBella at PSTC discussing conversion with five shareholders and stating spcifically the indebtedness was "orignally issued by the Compnay on May 2, 2011 in favor of Bayside Realty Holdings, LLC (the "Original Holder") and evidenced by the attached promissory note dated the same date;" | Scott Dittman | 3/8/2013 | GJP_INV_00005202 (Exb 210a) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 292 | Letter signed by Scott Dittman at FusionPharm to Joanna DiBella at PSTC stating "Pursuant to the convertible promissory note dated December 8, 2011 held by Meadpoint Venture Parnters LLC (Tax ID #45-3667889), please accept this as authorization for you to convert and issue 475,000 shares of common stock to Meadpoint Venture Partners. The conversion price as outlined on page three of the agreement is $0.01 per share. The shares should be considered as fully paid and non-assessable. Meadpoint Venture Partners is not and has never been an affiliate of the company." | Scott Dittman | 3/29/2013 | GJP_00010012 (Exb 211a) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 293 | Email from William Sears to Joanna DiBella (Joanna@pacificstocktransfer.com) stating "The letters state the consideration paid to Medpoint in the first paragraph?" | William Sears | 8/30/2013 | SWFBI_00008905 (Exb 214) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 294 | Email forward from William Sears (william@williamjSears.com) to Scott Dittman (sDittman@fusionpharminc.com) containing the Subject of "FW:Letters of opinion" and an attachment labeled "Attach: Signiture Page - FusionPharm - Scholz - Thayden - Thayden - 08-26-13.pdf" | William Sears | 8/30/2013 | SWFBI_00008905 (Exb 214) | a, b, d, e, f, i, k, n, p, r, s | 1, 4 | Objection overruled. |
| 295 | Letter signed by Scott Dittman to Joanna DiBella at Pacific Stock Transfer stating "Pursuant to the convertible promissory note dated December 8, 2011 held by Meadpoint Venture Partners LLC (Tax ID # 45-3667889), please accept this as authorization for you to convert and issue 500,000 shares of common stock to Myron Thayden...from the note held by Meadpoint Venture Partners. The conversion price as outlined on page three of the agreement is $0.01 per share. The shares should be considered as fully paid and non-assessable. Meadpoint Venture Parners is not and has never been an affiliate of the company." | Scott Dittman | 8/22/2013 | GJP_00010080 (Exb 215b) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 296 | Letter signed by Scott Dittman to Joanna DiBella at Pacific Stock Transfer stating "Pursuant to the convertible promissory note dated December 8, 2011 held by Meadpoint Venture Partners LLC (Tax ID # 45-3667889), please accept this as authorization for you to convert and issue 500,000 shares of common stock to Sharryn Thaden...from the note held by Meadpoint Venture Partners. The conversion price as outlined on page three of the agreement is $0.01 per share. The shares should be considered as fully paid and non-assessable. Meadpoint Venture Parners is not and has never been an affiliate of the company." | Scott Dittman | 8/23/2013 | GJP_00010097 (Exb 215c) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 297 | Invoice #00009 from Tod DiTommaso to Guy Jean Pierre with line items showing opinion letters for Meadpoint, OTC Market, and Scholz-Thayden-Thayden each for $175.00 | Tod DiTommaso | 9/15/2013 | GJP_00010667 (Exb 216) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 298 | Invoice #00001 from Tod DiTommaso to Guy Jean Pierre dated 01/15/2012 with line item showing an opinion letter for Fusion Pharm - OTC Markets for $175.00 | Tod DiTommaso | 1/15/2012 | GJP_00010651 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 45 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 299 | Invoice #00001 from Tod DiTommaso to Guy Jean Pierre dated 01/15/2013 with line items showing opinion letters for FusionPharm - Bayside for $175.00 and FusionPharm Bayside Re do for $25.00 | Tod DiTommaso | 1/15/2013 | GJP_00010653 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 300 | Invoice #00002 from Tod DiTommaso to Guy Jean Pierre dated 02/15/2013 with line items showing an opinion letter for FusionPharm - Bayside Re do for $25.00 | Tod DiTommaso | 2/15/2013 | GJP_00010655 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1 | Objection overruled. |
| 301 | Invoice #00004 from Tod Ditommaso to Guy Jean Pierre dated 04/09/2013 with line items showing opinion leters for FusionPharm- Roy for $175.00, FusionPharm OTC MARKETS for $175.00, FusionPharm-OTC MARKETS re do for $25.00, FusionPharm - Five opinion letters for Black Arch, A. Mauriello, Start City, Vera Group, SGI Group for $600.00 (disount), FusionPharm - Roy re do for $25.00, FusionPharm Five Opinion Letters Black Arch, A. Mauriello, Star City, Vera Group, SGI Group for $100.00 (discount), and FusionPharm - Meadpoint for $175.00 | Tod DiTommaso | 4/9/2013 | GJP_00010657 - GJP_00010658 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 302 | Invoice # 00004 from Tod DiTommaso to Guy Jean Pierre dated 04/15/2012 with line items showing opinion letters for Fusion Pharm - Oxford Capital Fund for $175.00 | Tod DiTommaso | 4/15/2012 | GJP_00010660 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 303 | Invoice #00006 from Tod DiTommaso to Guy Jean Pierre dated 06/15/2012 with line items showing opinion letters for Fusion Pharm - Stephanie Padilla for $175.00, Fusion Pharm - OTC Markets for $175.00, Fusion Pharm - For Your Information for $175.00, Fusion Pharm - Roger Pawson for $175.00, Fusion Pharm - Adams for $175.00, and Letter to Broker for William Adams re: Fusion Pharm for $100.00 | Tod DiTommaso | 6/15/2012 | GJP_00010662 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 304 | Invoice #00007 from Tod DiTommaso to Guy Jean Pierre dated 07/15/2012 with line items showing opinion letters for Fusion Pharm - Thaden for $175.00, Fusion Pharm - Thaden Re do for $25.00, Fusion Pharm - Microcap for $175.00, Fusion Pharm - OTC Markets for $175.00, Fusion Pharm OTC Markets Re do for $25.00, Fusion Pharm - Thaden for $175.00 | Tod DiTommaso | 7/15/2012 | GJP_00010664 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 305 | Invoice #00008 from Tod DiTommaso to Guy Jean Pierre dated 08/15/2012 with line items showing opinion letters for Fusion Pharm - Microcap for $175.00, Fusion Pharm - Abbot for $175.00 | Tod DiTommaso | 8/15/2012 | GJP_00010665 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 306 | Invoice #00009 from Tod DiTommaso to Guy Jean Pierre dated 09/15/2012 with line items showing opinion letters for Fusion Pharm - OTC Markets for $175.00 | Tod DiTommaso | 9/15/2012 | GJP_00010666 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 307 | Invoice #00009 from Tod DiTommaso to Guy Jean Pierre dated 09/15/2013 with line items showing opinion letters for FusionPharm - Meadpoint for $175.00, Fusion Pharm - OTC Market for $175.00, Fusion Pharm - Sholz - Tahyden - Thayden for $175.00 | Tod DiTommaso | 9/15/2013 | GJP_00010667 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 308 | Invoice #00005 from Tod DiTommaso to Guy Jean Pierre dated 08/15/2011 with line items showing opinion letters for Fusion Pharm Inc. Pink Sheets for $175.00 | Tod DiTommaso | 8/15/2011 | GJP_00010669 (Exb 220) | a, b, d, e, f, i, k, n, p, r, s, t, u | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |
| 309 | Email from William Sears (william@williamjSears.com) to sDittman@fusionpharminc.com with the subject FW: Reservation Confirmation with a Frontier Airline itinerary for Guy Jean Pierre from Fort Lauderdale, FL to Denver, CO on October 10, 2011 returning October 12, 2011. | William Sears | 9/28/2011 | SWIRS_00001882 - SWIRS_00001882.05 (Exb 226) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Ruling unnecessary. Proffered statement is not a "statement" requiring Rule 801(d)(2)(E) evaluation. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 47 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 310 | Email from Scott Dittman (sDittman@fusionpharminc.com) to A.R. Duke (arduke@fusionpharminc.com) and wSears@fusionpharminc.com with subject of "business plan update" and stating "Here is my attempt at the update yesterday…please review and make notes. I haven't read it in its entirety yet. Projections to follow in 5 minutes." | Scott Dittman | 10/12/2011 | SWFBI_00024898 (Exb 227) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 311 | Email from Scott Dittman (sDittman@fusionpharminc.com) to A.R. Duke (arduke@fusionpharminc.com), falconer@fusionpharminc.com, and wSears@fusionpharminc.com with subject of "retreat" and proposing an "evisioning/strategizing" session to "lay it all on paper and break out who is responsible for what." | Scott Dittman | 10/20/2011 | SWFBI_00025059 (Exb 228) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 312 | Email from William Sears (william@williamjSears.com) to andrew robert (arduke2000@yahoo.com) and arduke@fusionpharminc.com with the subject of "Status" stating "Let us part ways with reagred to our business regarding Fusionpharm and continue our friendship." | William Sears | 3/23/2012 | SWFBI_00022596 (Exb 229) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection SUSTAINED. |
| 313 | As part of an email chain, A.R Duke (arduke@fusionpharminc.com) sent an email to Scott Dittman wth the subject "Fwd: Debt" inquiring if $269,000 in debt listed on the OTCMarkets is a "residual balance" | Andy Duke | 4/17/2012 | SWFBI_00021937 (Exb 230) | a, b, d, e, f, i, k, n, p, r, s, u | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 314 | As part of an email chain, Scott Dittman (sDittman@fusionpharminc.com) sent an email to A.R. Duke (arduke@fusionpharminc.com) with the subject "RE: Debt" and stating that "The Vast Majority is a loan received in installments throughout 2011. Friends and family loan." | Scott Dittman | 4/17/2012 | SWFBI_00021937 (Exb 230) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 315 | Email from William Sears (william@williamjSears.com) to sDittman@fusionpharminc.com and cbodden@gsccventure.com with the subject "Fusion Pharm" and stating "Please start communicating with regard to putting a business plane/power point/offering documents together. Cliffe as usual we need this last week! We want it in the format you used for Green street. We will require them in both pdf and word docs for future revisions. Fee for the whole enchilada is 2-k with 500 as retaininer and balance with acceptance of finished product." | William Sears | 3/10/2011 | SWIRS_00008941 (Exb 235) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 316 | Email from William Sears (william@williamjSears.com) to cbodden@gsccventure.com with subject "AFFIDAVIT OF CLIFF BODDEN_03 14 11" stating "Cliffe, I need this back to Guy ASAP" | William Sears | 3/14/2011 | SWIRS_00011887 (Exb 236) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 317 | Email from William Sears (william@williamjSears.com) to Cliffe R Bodden (cbodden@gsccventure.com) with subject "Fwd: BBYB Documents" forwarding an emai lfrom Guy Jean Pierre with BBYB documents | William Sears | 3/28/2011 | SWIRS_00012006 (Exb 238) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 318 | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to Scott Dittman (sDittman@fusionpharminc.com) and William Sears (wSears@fusionpharminc.com) with the subject "Annual Report" and stating: "Attached is the Annual Report"..."I have made the necessary changes in the report to reflect changes made on the financial statements."..."1. Mechanics of Conversion: Bill said this was good."..."4. Employees: You, Kelly, Frank, and Duke (they don't have to necessarily be salaried or waged employees), with Guy being part time (he's listed in the management section as salaried in your last Information Statement)." | Cliff Bodden | 3/31/2012 | SWFBI_00022930 (Exb 240) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 319 | Email from Ciff Bodden (cbodden@gsccventure.onmicrosoft.com) to Nick Malino (nmalino@capitolineadvisors.com) with a CC to Scott Dittman (sDittman@fusionpharminc.com) and William Sears (wSears@fusionpharminc.com) with the subject "Pro Forma Financial Projections" stating "Please find attached, the financial projections." and including contact information for Scott Dittman, William Sears, and Nick Malino. | Cliff Bodden | 4/4/2012 | SWFBI_00023014 (Exb 242) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 320 | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to Scott Dittman (sDittman@fusionpharminc.com) and CC to William Sears (wSears@fusionpharminc.com) with the subject "Financial Statement" and stating "Scott Attached is my workbook for the periods ended March 31, 2012 and 2011. All shares issuances (new and conversions) have been reconciled against the bank statements and the transfer agents list." | Cliff Bodden | 5/25/2012 | SWFBI_00022748 (Exb 243) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 321 | As part of an email chain…Email from Cliff Bodden to Guy Jean Pierre and William Sears with subject "Meeting" and stating "Guy, Bill and I will be down to Boca Firday morning, let's get together then." | Cliff Bodden | 5/30/2012 | SWIRS_00017394 (Exb 244) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 322 | As part of an email chain...Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to Guy Jean Pierre (guy@lawfirmofjeanpierre.com) with subject "Re:Meeting" and stating "Guy Bill is in route to Orlando right now and when he lands I'll get a time for you." | Cliff Bodden | 5/30/2012 | SWIRS_00017394 (Exb 244) | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 49 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 323 | As part of an email chain…Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to William Sears (wSears@fusionpharminc.com) with subject "Draft Note Agreement" and stating "Bill Please review the attached and I'll draft the drawdown requests to match the dates and amounts of the deposits." | Cliff Bodden | 6/4/2012 | SWFBI_00023006 (Exb 245) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 324 | As part of an email chain...Email from William Sears (wSears@fusionpharminc.com) to Scott Dittman (sDittman@fusionpharminc.com) with a subject of "Fwd: Draft Note Agreement" containing a fowarded email from Cliff Bodden | William Sears | 6/4/2012 | SWFBI_00023006 (Exb 245) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 325 | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to William Sears (wSears@fusionpharminc.com) with subject "Bayside Loan Documents" and stating "Bill Let's get these signed up. Meadpoint's to follow in separate email." | Cliff Bodden | 6/6/2012 | SWIRS_00017304 (Exb 246) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 326 | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to William Sears (wSears@fusionpharminc.com) with subject "MeadPoint Loan Documents" stating "See Attached" | Cliff Bodden | 6/6/2012 | SWIRS_00017313 (Exb247) | a, b, d, e, f, i, k, n, p, r, s | 1, 6 | Objection overruled. |
| 327 | Email from William Sears (william@williamjSears.com) to Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) with subject "Fwd:FusionPharm - OTC Markets Opn Ltr" with a forwarded email from Guy Jean Pierre to William Sears. | William Sears | 6/12/2012 | SWIRS_00005114 (Exb 249) | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 328 | Email from Cliff Bodden (cbodden@gsccventure.onmicrosoft.com) to William Sears (wSears@fusionpharminc.com) and CC to Scott Dittman (sDittman@fusionpharminc.com) and guy@lawfirmofjeanpierre.com with subject "Capitoline Due Diligence" and asking for information for various issues be sent to him and specifically stating among other things: "Most of the due diligence questions I can answer from the filings or information I already have."..."I need guy to complete the revisions to the Certificate of Designation for the Series A Convertible Preferred Stock and provide me with a copy." | Cliff Bodden | 6/13/2012 | SWFBI_00017067 (Exb 250) | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 329 | Skype message from Sears to GJP: YES!!! Just got the termination agreement from a shareholder to whom had options at a a crazy low price. This would have killed any would be deal. i now have power of atty on the shell and am moving forward on it | William Sears | 9/1/2010 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)
CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 330 | Skype message from Sears to GJP:<br>Not next week the following for sure. | William Sears | 9/1/2010 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 331 | Skype message from Sears to GJP:<br>We just flew back in last night at 2:30 am, so Im slow today to sat the least | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 332 | Skype message from Sears to GJP:<br>Looking at a JV with a choclate company | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 333 | Skype message from Sears to GJP:<br>I will have money for you aslo | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 334 | Skype message from Sears to GJP:<br>Thanks for all the help and such with no money on account to start | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 335 | Skype message from Sears to GJP:<br>"This time it will" | William Sears | 5/18/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 336 | Skype message from Sears to GJP:<br>"Also I need your banking details again as I want to deposit money." | William Sears | 6/2/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 337 | Skype message from Sears to GJP:<br>"Scott and I are going over the 211-a right now. We will have it completed today and look forward to filing it asap. please set up the meeting in LA for anytime next week (Beginning) Preferred so we can have this uploaded by Friday of next week" | William Sears | 7/12/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 338 | Skype message from Sears to GJP:<br>"This is a new division of FINRA only enacted post Madoff." | William Sears | 10/5/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3 | Objection overruled. |
| 339 | Skype message from Sears to GJP:<br>"In addition please call Scott on Skype as to the Finra guy" | William Sears | 11/7/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3 | Objection overruled. |
| 340 | Skype message from Sears to GJP:<br>"just sent the redone 15c 211a notes to financials coming now" | William Sears | 12/19/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 341 | Skype message from Sears to GJP:<br>"Ok the Sept 30s are up with the notes to pinksheets........." | William Sears | 12/22/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 342 | Skype message from Sears to GJP:<br>" just uploaded it......should be live in fifteen minutes.<br>ok upl;oaded" | William Sears | 12/27/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 343 | Skype message from Sears to GJP:<br>"yes it is uploaded" | William Sears | 12/29/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 51 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 344 | Skype message from Sears to GJP: "ok new letter uploaded...........did not sleep last night.....I'm sooooo tired. I need a vacation as I have been running hard for a long time now." | William Sears | 12/30/2011 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 345 | Skype message from Sears to GJP: "Good Morning..............Just got in as I had a early morning meeting. Ill call this afternoon. Inaddition the bank would not release the funds befor today so I will have Kelly make a deposit into Chase for you today." | William Sears | 1/3/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 346 | Skype message from Sears to GJP: "We made a deposit after 5:00 yesterday it should show this morning" | William Sears | 1/4/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 347 | Skype message from Sears to GJP: "I had lunch with him yesterday. I have it....I'll get it to you in a few." | William Sears | 1/4/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 348 | Skype message from Sears to GJP: "I do hope to make the deposit tomorrow or monday." | William Sears | 1/19/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 349 | Skype message from Sears to GJP: "Funds have been soooo tight with the holiday slowdown, and a lagre investor check bouncing which sent our accounts into a tail spin" "we recovered however it zeroed us out" | William Sears | 1/19/2012 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s, u | 1, 3 | Objection overruled. |
| 350 | Skype message from Sears to GJP: "how is my document?" | William Sears | 1/4/2013 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 351 | Skype message from Sears to GJP: "Awesome!" | William Sears | 1/4/2013 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 352 | Skype message from Sears to GJP: "Guy I am a bit freaked out. How are we making it. This is a major presentation on Monday morning. I need to have the offering docs in hand." | William Sears | 4/25/2013 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 353 | Skype message from Sears to GJP: "Good Morning. I am back in Colorado now. Things went well. Not the situation I thought it would be. However this is a good starting point for our new investment oppertunity." | William Sears | 5/2/2013 | GJP_00010883 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 354 | Skype Message from Dittman to Sears: "puke" | Scott Dittman | 10/6/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 355 | Skype Message from Dittman to Sears: "fyi, got a call from Todd today. Nothing big, tell you after duke leaves" | Scott Dittman | 11/4/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 356 | Skype Message from Sears to Dittman:<br>"ok.....just poo'd a bit"<br>"seem cool" | William Sears | 11/4/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 357 | Skype Message from Dittman to Sears:<br>"Yeah, no big deal" | Scott Dittman | 11/4/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 358 | Skype Message from Sears to Dittman:<br>"cool tell me later" | William Sears | 11/4/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 359 | Skype Message from Sears to Dittman:<br>"hey I have to pay Guy today. FSPM check or mcm?<br>2500" | William Sears | 11/21/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 360 | Skype Message from Dittman to Sears:<br>"fspm is fine" | Scott Dittman | 11/21/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 361 | Skype Message from Sears to Dittman:<br>"ok" | William Sears | 11/21/2011 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 362 | Skype Message from Sears to Dittman:<br>"Good morning.I would like to take what Richie did las week and pay Guy and Pink Sheets. That's about all it will cover anyway (if that)." | William Sears | 2/6/2012 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 363 | Skype Message from Sears to Dittman:<br>"need a check for 500 to put into Gys acct<br>Should I do MCM<br>this is for Buck<br>I am going to chat with Buck before giving the letter.i want this liquidated responsibily." | William Sears | 5/14/2012 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s, u, t | 1, 3 | Objection overruled. |
| 364 | Skype Message from Dittman to Sears:<br>"yes (mcm) Kay asked the "what's in billy's background, why isn't he on anything publicly" question. U need to address with her after this meeting." | Scott Dittman | 5/14/2012 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 365 | Skype Message from Sears to Dittman:<br>"Need to put her on the back burner. We are only limited information on Pink sheets now. Seems the quarterly deadline is only 45 days now. I need it up (Current Filer Status ) for the IR push. So Cliffe needs to get the financials dione first. In addition lets talk later about finances. Got to get the 3-k to guy for the last two statements."<br>"going to the gym now........call me when free........" | William Sears | 5/23/2012 | GJP_00010884 | a, b, d, e, f, i, k, n, p, r, s, u, t | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 53 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 366 | Email from Dittman to Richard@bhangchocolate.com: "Richard, I'm confirmed on the evening flight with my partner William Sears. Will be out there around 9pm. Can you still do tomorrow morning?9ish? Where is your facility? Would love to see production if at all possible." | Scott Dittman | 5/16/2011 | SWFBI_00027843 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 367 | Email from Sears to Jean-Pierre cc Dittman: "Guy, I was wondering if you would do some trademark registration work for us. We need to register in Colorado , Arizona ,California and Michigan. If so I will send over the details. In addition would you be willing to do lunch on Sunday?" | William Sears | 5/31/2011 | SWFBI_00027069 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 368 | Email from Sears to Jean-Pierre: "Guy, Please review and advise." Attaches "FSPM Disclosure Statement_06 30 11" | William Sears | 7/12/2011 | SWIRS_00001321 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 369 | Email from Sears to Jean-Pierre cc Dittman: "Guy, Scott lands in LAX at one thirty. So if the Lawyer could meet him somewhere close to the airport it would be ideal. His departing flight is 6:55. Given the meeting should be no longer than one hour and a half a two fifteen meeting would be great. Ill look into restaurants close by for the meet. Have a great weekend!" | William Sears | 7/17/2011 | SWFBI_00024138 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 370 | Email from Sears to Jean-Pierre cc Dittman: "Guy, We have decided to move ahead with our plan of doing a 506. I would like to file the form D to close the 504. I will send the sub docs for the two subscribers of the 504 so you can do this. I believe we send that for the first sub and the last we accepted. I will prepare most of the 506 document as I have a template I like. I would like you to review and advise once completed." | William Sears | 7/17/2011 | SWIRS_00001731 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 54 of 63

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 371 | Email from Sears to Jean-Pierre cc Dittman:<br>"Guy, Good Morning. I would like to speak later on this afternoon. I want to go over the Form D filing and if it was done. In addition I want to clarify the 15C-211a with pink sheets. Also regarding Robert Taylor, I want to document all the correspondences you have sent to him so if we do not hear from him I want to be able to clean his debt off the books.<br>Last but not least we will be making a deposit into your account on Wednesday." | William Sears | 8/8/2011 | SWFBI_00027437 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 372 | Email from Dittman to Sears:<br>"Fyi. Need to get Guy involved at this point?" | Scott Dittman | 10/7/2011 | SWFBI_00024842 | a, b, d, e, f, i, k, n, p, r, s, v | 1, 3 | Objection overruled. |
| 373 | Email from Dittman to Sears forwarding his 10/24/2011 email to Todd Kramer at FINRA | Scott Dittman | 11/3/2011 | SWFBI_00025315 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 374 | Email from Sears to Jean-Pierre cc Dittman:<br>"Guy, Give this a quick eye as we are going to start sending these out as soon as we get the 504." | William Sears | 11/14/2011 | SWFBI_00025608 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 375 | Email from Sears to Jean-Pierre:<br>"Guy Please find attached the 504 with some changes. I need you to go over the risk disclosures as I feel it is totally geared toward cannabis and gives the impression that if cannabis is doomed so are we." | William Sears | 11/16/2011 | SWFBI_00025671 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 376 | Email from Dittman to Kocinski, Sears cc Jean-Pierre:<br>"Mike,Please make the following adjustments to the 9/30 financials and return the updated set to all participants on this email:Collapse the 2 revenue line items into 1...just call it salesDebit revenue 60k and set up a 'contract deposits' liability account. $60k of that revenue wasn't earned yet, just deposits on pods to be builtCredit inventory $56,193.64 and debit cost of good sold for the same Flow through all adjustments.. Thanks Mike." | Scott Dittman | 11/23/2011 | MK_00000419 | a, b, d, e, f, i, k, n, p, r, s, u, t | 1 | Objection overruled. |
| 377 | Email from Sears to Dittman and Jean-Pierre cc Kocinski:<br>"Guys,I think we have some issues to address ............... " | William Sears | 11/28/2011 | MK_00000426 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 378 | Email from Dittman to Sears and Jean-Pierre:<br>"Gentlemen, Made a couple of very small changes, not worth noting. I think we?re good. Billy?" | Scott Dittman | 12/27/2011 | SWFBI_00020031 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 55 of 63

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 379 | Email from Dittman to Sears, Jean-Pierre and DiTommaso: "Gents, I've talked with Garret at OTC markets and what he wants, in paragraph 2 of your item 2, inquiry and investigation, is to note that you've reviewed the December 29th information and disclosure statement. The current letter only references the December 27th information and disclosure statement. The opinion letter needs to reference the December 29th one also, showing that you reviewed the newest version after we made the changes requested by OTC markets to the last one." | Scott Dittman | 12/29/2011 | SWFBI_00020077 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 380 | Email from Dittman to Sears and Jean-Pierre: "Gents, Looks like one more? Or did you get this already. See below." | Scott Dittman | 12/29/2011 | SWFBI_00020078 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 381 | Email from Sears to Dittman cc Jean-Pierre attaching Fusion Pharm Inc SH Rpt 12-31-2011.pdf | William Sears | 1/3/2012 | SWFBI_00021592 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 382 | Letter from Kelly Blume: "My name is Kelly Blume; I am the Office Manager for Fusion Pharm, Inc. I am writing this letter to verify the employment of William Sears. Mr. Sears has been with our company as a 1099 employee with a gross pay of $5,000 per month since January of 2011. As of March 1,2012 Fusion Pharm, Inc. is moving to a payroll system and Mr. Sears will become a W-2 employee for our company at the same gross pay amount. If you require further information on Mr. Sears I can be contacted via phone at 303-681-6875 or via e-mail at kblume@fusionpharminc.com." | Kelly Blume | 1/30/2012 | SWIRS_00002853 | a, b, d, e, f, i, k, n, p, r, s, u | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 383 | Email from Bodden to Malino cc Sears: "Nick I have attached a presentation relating to FusionPharm, a company which I have been involved with since its reorganization last year. The company is seeking $200,000 - $400,000 in financing to complete the construction of its Denver facility and I thought that a facility similar to that which you proposed for Affordable Bio Feedstock would be worth discussing. Please take a look at the information and I'd like to schedule a call with the company next week." | Cliff Bodden | 3/24/2012 | SWIRS_00010844 | a, b, d, e, f, i, k, n, p, r, s, u | 1, 3 | Objection SUSTAINED. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 56 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 384 | Email from Sears to Kocinski and Dittman:<br>"Mike,I hope all is well. As you can see we are coming down to the wireregarding the filing the 12/3ls. We hope to have them to you tomorrow. I need to have them uploaded to OTC markets by Friday. Sorry for the small window however you know how these things go.Many Thanks in advance." | William Sears | 12/31/2012 | MK_00000467 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 385 | Email from Sears to Jean-Pierre cc Bodden attaching Pacific Transfer's Shareholder List through 3/31/2012 | William Sears | 5/23/2012 | SWFBI_00015733 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 386 | Email from Sears to Jean-Pierre and Dittman attaching Pacific Transfer's Shareholder List through 12/31/2011 | William Sears | 5/23/2012 | SWFBI_00023671 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 387 | Email from Kocinski to Jean-Pierre cc Sears and Dittman:<br>"Dear Sir, I am the accountant that assisted with the preparation of the financial statements for FSPM for the period ending March 31, 2012. These statements were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years.<br>Please let me know if you need any further information." | Mike Kocinski | 6/7/2012 | SWFBI_00016576 | a, b, d, e, f, i, k, n, p, r, s | 1, 2 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 388 | Email from Dittman to Bodden cc Sears and Jean-Pierre:<br>"Will get on this first thing in the am" | Scott Dittman | 6/13/2012 | SWFBI_00015880 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 5 | Objection overruled. |
| 389 | Email from Bodden to Dittman and Sears:<br>"I will need the attached documents signed and in the case of the Amended and Restated Articles and Bylaws - filed at the State of Nevada SoS's office." | Cliff Bodden | 6/18/2012 | SWFBI_00017246 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 390 | Email from Sears to Jean-Pierre attaching FSPM Disclosure Statement_06 30 11:<br>"Guy, Please review and advise." | William Sears | 7/12/2011 | SWIRS_00001321 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 57 of 63

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 391 | Email from Sears to Dittman:<br>"Scott,<br>Please send to Amanda martin at Pacific Stock Transfer.<br>Amanda,<br>Good Afternoon. I would like to be informed when certificate numbered 11156 in the name of Morningstar Holdings LTD is presented for transfer. At that time I will let you know if we should put a hold transfer. I am trying to find documentation regarding this transfer. Please feel free to contact me should you have any questions regarding this." | William Sears | 7/24/2012 | SWFBI_00016424 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 392 | Email from Bodden to Sears:<br>"I need to know how to book these deposits;" Bodden included a list of deposits. | Cliff Bodden | 8/4/2012 | SWIRS_00009406 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 393 | Email from Sears to Jean-Pierre and Bodden attaching Pacific Transfer's Shareholder List through 6/30/2012 | William Sears | 8/7/2012 | SWIRS_00033186 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 394 | Email from Dittman to Bodden cc Jean-Pierre and Sears:<br>"Please find attached for your review the Quarterly Report for the reporting period ended June 30, 2012 and accompanying financial statements for the periods ended June 30, 2012 and June 30, 2011. I have also attached the shareholder list for Guy's review to confirm the number of shareholders.<br>Please let me know of any revisions or corrections required. Once your review is completed I'll consolidate the pages for filing." | Cliff Bodden | 8/8/2012 | SWIRS_00004403 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 395 | Email from Sears to Jean-Pierre cc Dittman attaching forms from Scottsdale Capital:<br>"Just the issuer certification. Cut and paste it on letterhead and sign." | William Sears | 8/9/2010 | SWFBI_00017017 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 396 | Email from Sears to Jean-Pierre cc Dittman:<br>"Guy,<br>Please fins attached letter to the transfer agent dated last year. The issuances were to be for 2 year 144 as this was an employee issuance. Can you make sure the transfer agent is aware of this and it is on the books as such. Many thanks in advance." | William Sears | 9/12/2012 | SWFBI_00018984 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 58 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 397 | Email from Kocinski to Jean-Pierre cc Sears and Dittman:<br>"Dear Sir,<br>The financial statements for Fusion Pharm, Inc (FSPM) for the period ending September 30, 2012 were prepared in accordance to GAAP. I am an accountant that has been providing accounting services for over twenty five years. Please let me know if you need any further information." | Mike Kocinski | 11/21/2012 | SWFBI_00015212 | a, b, d, e, f, i, k, n, p, r, s | 1, 2, 3 | Ruling unnecessary. Declarant is not reporting any statement made by an alleged co-conspirator. |
| 398 | Email from Dittman to Jean-Pierre cc Sears:<br>"Guy,<br>Here is the questionnaire again...appears that both pages are legible. Let me know if you have any problems reading." | Scott Dittman | 11/29/2012 | SWFBI_00015213 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 399 | Email from Sears to Pacific Stock:<br>"I do hope all of you are doing well. Please find attached a convertible note between Bayside Realty Holdings and Fusionpharm Inc. Bayside has chosen to<br>exercise its option to convert into shares. Aside from a legal opinion and payment for the cent (Absorbed by Bayside) what else would be required to get this done in an expeditious fashion? I would like to have a cert generated as quickly as possible. Bayside is a family members company and I am assisting them as I am familiar with all parties. So I will be the point person for all.<br>Regards,<br>William Sears" | William Sears | 12/12/2012 | INV_00008953 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 400 | Email from Sears to Pacific Stock:<br>"Good Afternoon. I do believe this is everything you will need and then some." | William Sears | 12/13/2012 | INV_00008953 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 59 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 401 | Email from Sandra Sears to Pacific Stock cc Sears:<br>"Joanna.<br>Please find attached the revised letter of opinion. I have already sent all the other docs you requested. Any chance of getting this printed and out today?<br>Thank you,<br>Sandy Sears" | Sandra Sears (Mother of William Sears)/William Sears | 12/24/2012 | INV_00008953 | a, b, d, e, f, i, k, n, p, r, s, v | 1, 2 | Sandra Sears:<br>Ruling unnecessary. Declarant is not an alleged co-conspirator. Unclear if declarant is reporting any statement made by an alleged co-conspirator.<br><br>William Sears:<br>Objection overruled. |
| 402 | Email from Dittman to Sears, Bodden and Jean-Pierre attaching Form 1-a:<br>"Let's discuss" | Scott Dittman | 12/18/2012 | SWFBI_00015233 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 403 | Email from Sears to Pacific Stock:<br>"Yes use the cc we sent you. I read it just fine. The last draw down was well over a year ago and it's a financial instrument so just like 144 one year hold? What exactly are you looking for? I am confused" | William Sears | 12/26/2012 | PST_00007756 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 404 | Email from Sears to Pacific Stock:<br>"Joanna<br>The first five paragraphs lay it out. I just spoke to the atty and he does not know what else he can possibly write. He is a bit confused. The note like stock is a financial instrument. It is aged. The second paragraph defines it and then it goes on. This transaction is<br>righteous on every aspect of the word. The letter of opinion is very detailed and complete. If there is specific wording you require please advise and I will forward it to the atty to see what he thinks. Please<br>advise as we are all a little confused at this time." | William Sears | 12/26/2012 | PST_00007770 | a, b, d, e, f, i, k, n, p, r, s, | 1, 5 | Objection overruled. |
| 405 | Email from Sears to Pacific Stock:<br>"It was included with the package as Bayside is paying for the transfer agent fees. Why would it not be? We were trying to augment the process by giving all the paperwork up front. So I just forwarded your comments to the lawyer. Hopefully this can get wrapped up tomorrow." | William Sears | 12/26/2012 | PST_00007770 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 60 of 63

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 406 | Email from Sears to Pacific Stock:<br>"Joanna,<br>Here is the chapter and verse of 144 (d) (3) (ii)<br>(ii) Conversions and exchanges . If the securities sold were acquired from the issuer solely in exchange for other securities of the same issuer, the newly acquired securities shall be deemed to have been acquired at the same time as the securities surrendered for conversion or exchange, even if the securities surrendered were not convertible or exchangeable by their terms.<br>That's out of the book." | William Sears | 12/27/2012 | PST_00007781 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 407 | Email from Sears to Dittman attaching a Board Resolution Appointing Officers:<br>"Sign and send to joanna" | William Sears | 12/27/2012 | SWFBI_00015242 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 408 | Email from Bodden to Sears attaching a Letter of Authorization:<br>"Bill<br>Fill in the blanks (i) date after the last draw down; and (ii)outstanding balance at that date and print on Fusion letterhead. Have Scott sign and have it ready to present to Guy. I will reference it in my follow up email to you and Guy." | Cliff Bodden | 12/27/2012 | SWIRS_00037681 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 409 | Email from Sears to Scottsdale:<br>"I am flying in tomorrow to see you and someone from compliance. I have a deposit to make into the above<br>subjected account. I have EVERY piece of paperwork in existence for this transaction. The cert was just printed from the T/A. I want to go thru it with you and someone from compliance in order to augment the process. I land at ten and should be there around eleven the latest. I look forward to seeing you." | William Sears | 1/21/2013 | SEC-DOJ-EPROD-000( | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 61 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)

CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 410 | Email from Sears to Scottsdale:<br>"My flight was delayed and unfortunately it will not give me the time to get back tonight as I have another meeting in the morning that I cannot miss. The file is too big to email and has been rejected by your server (It's 40 pages) .. I am sending the documentation VIA Federal Express.<br>Gentlemen this is a very complete Due Diligence file. I do not expect to be held up for two weeks to trade this. Joanna DiBella was the securities Supervisor that worked on this at Pacific Stock Transfer (702) 361-3033. This is a fresh issuance, thoroughly documented and easily verified. Thank you for you cooperation regarding this matter and lets speak tomorrow." | William Sears | 1/22/2013 | SEC-DOJ-EPROD-000 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 411 | Email from Dittman to Sears attaching the 2012 Annual Information and Disclosure Statement | Scott Dittman | 3/5/2013 | SWFBI_00015340 | a, b, d, e, f, i, k, n, p, r, s | 1, 3, 4 | Objection overruled. |
| 412 | Email from Sears to Jean-Pierre, Kocinski and Dittman:<br>"Guy,<br>Mike is going thru the financials now. He will send you his email once he is satisfied. Should be 48 hours." | William Sears | 2/27/2013 | SWFBI_00015323 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |
| 413 | Email from Sears to Pacific Stock cc Dittman attching DiTommaso Attorney Opinion Letter for SGI Group, LLC:<br>"Joanna<br>Just saw this one did not go!" | William Sears | 3/7/2013 | PST_00007896 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 414 | Email from Sears to Pacific Stock:<br>"J,<br>Strange as this shows as sent on Friday. With regard to the letter of opinions this seems more as a matter of fact. These letter have a significant cost to prepare and amend. I have had council insert statements in both resolutions and issuer letters affirming this." | William Sears | 3/11/2013 | PST_00008019 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 415 | Email from Sears to Dittman attaching Private Placement Memorandum:<br>"Scott Just fill in the spread sheet tables. I am filling in and correcting the rest. This is just the first draft." | William Sears | 4/26/2013 | SWFBI_00013898 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 416 | Email from Sears to Dittman cc Jean-Pierre:<br>"Financial posted" | William Sears | 6/30/2013 | SWFBI_00015012 | a, b, d, e, f, i, k, n, p, r, s | 1, 3 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 USDC Colorado Page 62 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)
CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 417 | Email from Dittman to Thaden:<br>"We think this investment is best broken into 2 parts.<br>Part 1 would be a $50,000 investment directly into FusionPharm for 5,000 shares of Preferred Stock (convertible into 500,000 shares of free trading). These shares, because they are issued new by FusionPharm would carry a 1 year trading restriction.<br>Part 2: Purchase part of the existing note payable from FusionPharm to Meadpoint Venture Partners. Said note is convertible to class a common stock which would be free trading immediately upon conversion. Purchase price would be $50,000 and would be convertible into 500,000 shares of free trading FSPM stock. I have spoken with Bill Sears of Meadpoint and he is amenable to this transaction.<br>Meadpoint would use it's $50,000 to immediately purchase the 2 containers referenced above and as the marketing entity into the cannabis market would use the containers and sales center to further it's sales efforts for PharmPods. Thus, all funds would end up in FusionPharm, $50,000 as an investment and $50,000 as sales revenue for the 2 containers. | Scott Dittman | 8/5/2013 | SWFBI_00008506.03 | a, b, d, e, f, i, k, n, p, r, s, u, t | 1, 3 | Objection overruled. |
| 418 | Email from Sears to Thaden:<br>"Ok I have got it down on the paperwork. Now as far as free, with 1million shares in your name solely, you would be subject to a trickle rule. Basically considered an insider. We have only 5.6 issued and outstanding and 1mm puts you over the 10% realm. So we need a second company or persons name. In addition I will need the tax Id/ssn for the transfer agent. Ill have all this wrapped up next week! Thanks and I look forward to seeing you shortly as ill be in town." | William Sears | 8/14/2013 | SWFBI_00008651 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |

Case 1:17-cr-00008-WJM Document 144-1 Filed 12/27/18 Page 63 of 63

United States v. Guy M. Jean-Pierre (17-cr-8-WJM)
CHART OF RULINGS

| | Statement | Declarant | Date | Source (Bates Numbers) | Government's Basis for Admission (see ECF No. 105 ¶ 7) | Defendant's Objection(s) (see ECF No. 112-2) | Court's Ruling |
|---|---|---|---|---|---|---|---|
| 419 | Email from Dittman to Sears:<br>"Please read carefully, make sure I updated all the dates from last year (you missed quite a few :-) Let me know if you have the OTC form that needs to be filled out and attached to this." | Scott Dittman | 8/20/2013 | SEC-DOJ-EPROD-0007 | a, b, d, e, f, i, k, n, p, r, s, l, v | 1, 6 | Objection overruled. |
| 420 | Email from Sears to Dittman:<br>"Joanna,<br>Please send the certificates directly to the addresses listed on the conversion notices. In addition the Star City one seemed unclear so here it is:<br>Star City Capital C/O Summit Trust Company<br>Compliance office<br>Attention ABK Capital<br>465 Furnace Street suite G<br>Marshfield MA 02050<br>I do believe this wraps it all up. Thank you for your cooperation" | William Sears | 9/13/2013 | SWFBI_00009145 | a, b, d, e, f, i, k, n, p, r, s | 1, 5 | Objection overruled. |
| 421 | Email from Dittman to Transfer Agent:<br>"Joanna,<br>Please send the certificates directly to the addresses listed on the conversion notices. In addition the Star City one seemed unclear so here it is:<br>Star City Capital C/O Summit Trust Company<br>Compliance office<br>Attention ABK Capital<br>465 Furnace Street suite G<br>Marshfield MA 02050<br>I do believe this wraps it all up. Thank you for your cooperation." | Scott Dittman | 9/13/2013 | PST_00002939 | a, b, d, e, f, i, k, n, p, r, s | 1 | Objection overruled. |
| 422 | Email from Dittman to Pacific Stock cc Sears:<br>" Joanna, we will take care of this in the am and will advise when done" | Scott Dittman | 9/18/2013 | PST_00008929 | a, b, d, e, f, i, k, n, p, r, s | 1, 5 | Objection overruled. |
| 423 | Email from Sears to Pacific Stock and Dittman:<br>"Please find attached the payment document. May I have a receipt showing the balance zeroed. In addition I never got a receipt for the payment made last week." | William Sears | 9/19/2013 | PST_00008929 | a, b, d, e, f, i, k, n, p, r, s | 1, 5 | Objection overruled. |
| | | | | | | | |

Case 1:17-cr-00008-WJM Document 192 Filed 01/06/19 Page 1 of 63

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. GUY M. JEAN-PIERRE,
a/k/a Marcello Dominguez de Guerra,

draft 1-6 -- 1108

Defendant.

---

GOVERNMENT'S STIPULATED JURY INSTRUCTIONS

---

The United States of America, by and through Assistant United States Attorney Jeremy Sibert, submits the following: (1) a set of jury instructions with authority.

Jason Dunn
United States Attorney

By: *s/ Jeremy Sibert*
Jeremy Sibert
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0216
Facsimile: 303-454-0402
E-mail: jeremy.sibert@usdoj.gov
Attorney for the United States

Case 1:17-cr-00008-WJM Document 192 Filed 01/08/19 Page 2 of 63

STATEMENT OF THE CASE

The defendant Guy M. Jean-Pierre is charged in a 28-count second superseding indictment with violations of federal criminal laws: one count of conspiracy to commit mail, wire and securities fraud, 20 counts of wire fraud, 4 counts of mail fraud, 3 counts of securities fraud and one count of money laundering. The indictment also contains a forfeiture allegation regarding the proceeds of the alleged frauds.

The conspiracy and fraud counts allege a scheme to defraud FusionPharm investors, a microcap stock traded on the Over-the-Counter market. The scheme included the defendant preparing and transmitting documents and assisting others in the preparation of documents that: (a) allowed FusionPharm control person(s)/co-conspirator(s) to sell stock in violation of securities laws in order to fund FusionPharm; (b) falsely portrayed deposits of proceeds from the sale of FusionPharm common stock as convertible debt obligations owed to affiliate companies of FusionPharm, Bayside and Meadpoint; (c) falsely portrayed Microcap, Bayside, and Meadpoint as non-affiliates of FusionPharm; (d) concealed the role of other co-conspirators in the FusionPharm business; (e) falsely represented that the quarterly and annual disclosure documents and financial statements constituted adequate current information about FusionPharm; and (f) failed to disclose his role in drafting documents for another attorney to sign and represent as the other attorney's own work product. The conspiracy count alleges an agreement and overt acts involving the defendant and others in the posting of false documents on the Over-the-Counter website and the selling of FusionPharm stock on the penny stock market. These offenses allegedly occurred between 2011 and 2014.

Case 1:17-cr-00008-WJM Document 192 Filed 01/08/19 Page 3 of 85

Other wire fraud counts allege a similar scheme to defraud involving the defendant acting in a similar role in a scheme that involved law enforcement personnel and their agents acting in an undercover role which occurred in February through April 2016. The money laundering count alleges the defendant knowingly conducted or attempted to conduct a financial transaction affecting interstate and foreign commerce involving property that was proceeds of securities fraud or wire fraud which was intended to conceal and disguise the location, source, ownership and control, of the financial transaction.

The defendant denies these charges and has plead not guilty to them.

Case 1:17-cr-00008-WJM Document 192 Filed 01/08/19 Page 4 of 63

PRELIMINARY INSTRUCTIONS BEFORE TRIAL

Members of the Jury:

At the end of the trial, I will give you detailed guidance on the law and on how you will go about reaching your decision. But now I simply want to generally explain how the trial will proceed.

This criminal case has been brought by the United States government. I will sometimes refer to the government as the prosecution. The government is represented by two assistant United States Attorneys, Jeremy Sibert and Robert Brown. The defendant Guy M. Jean-Pierre is represented by his lawyers Clifford Barnard and Thomas Goodreid .

The Indictment is simply the description of the charges made by the government against the defendant; it is not evidence of guilt or anything else. The defendant has pleaded not guilty and is presumed innocent. He may not be found guilty by you unless all twelve of you unanimously find that the government has proved his guilt beyond a reasonable doubt.

The first step in the trial will be the opening statements. The government in its opening statement will tell you about the evidence which it intends to put before you. Just as the indictment is not evidence, neither is the opening statement. Its purpose is only to help you understand what the evidence will be. It is a road map to show you what is ahead.

After the government's opening statement, the defendant's attorney may make opening statements or may reserve his statement until later.

Evidence will be presented from which you will have to determine the facts. The evidence will consist of the testimony of the witnesses, documents and other things received into the record as exhibits.

The government will offer its evidence. After the government's evidence, the defendant's lawyer may make an opening statement and may present evidence, but he is not required to do so. I remind you that the defendant is presumed innocent and it is the government that must prove the defendant's guilt beyond a reasonable doubt. If the defendant submits evidence, the government may introduce rebuttal evidence.

At times during the trial, a lawyer may make an objection to a question asked by another lawyer, or to an answer by a witness. This simply means that the lawyer is requesting that I make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. If I sustain an objection to a question, the witness may not answer it. Do not attempt to guess what answer might have been given if I had allowed the answer. If I overrule the objection, treat the answer as any other. If I tell you not to consider a particular statement, you may not refer to that statement in your later deliberations. Similarly, if I tell you to consider a particular piece of evidence for a specific purpose, you may consider it only for that purpose.

During the course of the trial, I may have to interrupt the proceedings to confer with the attorneys about the rules of law that should apply. Sometimes we will talk briefly, at the bench. But some of these conferences may take more time, so I will excuse you from the courtroom. I will try to avoid such interruptions whenever possible, but please be patient even if the trial seems to be moving slowly because conferences often actually save time in the end.

Case 1:17-cr-00008-WJM Document 192 Filed 01/08/19 Page 6 of 85

You are to consider all the evidence received in this trial. It will be up to you to decide what evidence to believe and how much of any witness's testimony to accept or reject.

After you have heard all the evidence on both sides, the government and the defense will each be given time for their final arguments. The final part of the trial occurs when I instruct you on the rules of law which you are to use in reaching your verdict.

During the course of the trial, I may ask a question of a witness. If I do, that does not indicate I have any opinion about the facts in the case but am only trying to bring out facts that you may consider.

If you would like to take notes during the trial, you may. On the other hand, you are not required to take notes.

If you do decide to take notes, be careful not to get so involved in note taking that you become distracted, and remember that your notes will not necessarily reflect exactly what was said, so your notes should be used only as memory aids. Therefore, you should not give your notes precedence over your independent recollection of the evidence. You should also not be unduly influenced by the notes of other jurors. If you do take notes, leave them in the jury room at night and do not discuss the contents of your notes until you begin deliberations.

Ordinarily, the attorneys will develop all the relevant evidence that will be necessary for you to reach your verdict. However, in rare situations, a juror may believe a question is critical to reaching a decision on a necessary element of the case. In that exceptional circumstance, you may write out a question and provide it to the courtroom

deputy while the witness is on the stand. I will then consider that question with the lawyers. If it is determined to be a proper and necessary question, I will ask it. If I do not ask it, you should recognize that I have determined it is not a legally appropriate question and not worry about why it was not asked or what the answer would have been.

During the course of the trial, you should not talk with any witness, or with the defendant, or with any of the lawyers at all. In addition, during the course of the trial you should not talk about the trial with anyone else.  Do not discuss the case with anyone or provide any information about the trial to anyone outside the courtroom until the verdict is received.  Do not use the internet or any other form of electronic communication to provide any information.  Simply put, do not communicate with anyone about the trial until your verdict is received.  Also, you should not discuss this case among yourselves until I have instructed you on the law and you have gone to the jury room to make your decision at the end of the trial. It is important that you wait until all the evidence is received and you have heard my instructions on the controlling rules of law before you deliberate among yourselves.  Let me add that during the course of the trial you will receive all the evidence you properly may consider to decide the case. Because of this, you should not attempt to gather any information or do any research on your own. Do not attempt to visit any places mentioned in the case, either actually or on the internet, and do not in any other way try to learn about the case outside the courtroom.

The court reporter is making stenographic notes of everything that is said.  This is basically to assist any appeals.  However, a typewritten copy of the testimony will not

Case 1:17-cr-00008-WJM Document 192 Filed 01/08/19 Page 8 of 85

be available for your use during deliberations. On the other hand, any exhibits will be available to you during your deliberations.

Now that the trial has begun, you must not hear or read about it in the media. The reason for this is that your decision in this case must be made solely on the evidence presented at the trial.

With that introduction, Mr. Sibert, you may present the opening statement for the government.

10th Cir. Pattern Crim. Jury Instr. §§ 1.01, 1.02 (2011).

INSTRUCTION NO. 1

INTRODUCTION TO FINAL INSTRUCTIONS

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then, I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

10th Cir. Pattern Crim. Jury Instr. § 1.03 (2011).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 10 of 63

INSTRUCTION NO. 2

DUTY TO FOLLOW INSTRUCTIONS

You, as jurors, are the judges of the facts. But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

10th Cir. Pattern Crim. Jury Instr. § 1.04 (2011).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 11 of 63

INSTRUCTION NO. 3

PRESUMPTION OF INNOCENCE-BURDEN OF PROOF-REASONABLE DOUBT

The government has the burden of proving the defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

10th Cir. Pattern Crim. Jury Instr. § 1.05 (2011).

Case 1:17-cr-00008-WJM Document 152 Filed 01/08/19 Page 12 of 63

INSTRUCTION NO. 4

EVIDENCE-DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

10th Cir. Pattern Crim. Jury Instr. § 1.06 (2011).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 13 of 63

INSTRUCTION NO. 5

LAWYERS' OBJECTIONS

The lawyers for the government and the lawyer for the defendant objected to some of things that were said or done during the trial. Do not hold that against either side. The lawyers have a duty to object whenever they think that something is not permitted by the rules of evidence. Those rules are designed to make sure that both sides receive a fair trial.

Do not interpret my rulings on their objections as any indication of how I think the case should be decided. My rulings were based on the rules of evidence, not on how I feel about the case. Remember, your verdicts must be based only on the evidence that you saw and heard here in court.

Pattern Crim. Jury Instr. 6th Cir. §1.09 (2013) (modified to change "decision" to "verdicts).

INSTRUCTION NO. 6

EVIDENCE-DIRECT AND CIRCUMSTANTIAL EVIDENCE-INFERENCES

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

10th Cir. Pattern Crim. Jury Instr. § 1.07 (2011) (modified).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 15 of 63

INSTRUCTION NO. 7

STIPULATIONS

You have heard me say that the parties have stipulated to certain facts. This agreement makes the presentation of any evidence to prove this fact unnecessary. The agreement means that you may accept this fact as true without further proof.

In this case, the parties have stipulated to the following facts:

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 16 of 63

INSTRUCTION NO. 8

CREDIBILITY OF WITNESSES

I remind you that it is your job to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses [including the defendant] who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 17 of 65

[The testimony of the defendant should be weighed and his credibility evaluated in the same way as that of any other witness.]

**OR**

[The defendant did not testify and I remind you that you cannot consider his decision not to testify as evidence of guilt. I want you to clearly understand, please, that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant does not take the witness stand and testify or call any witnesses.]

In reaching a conclusion on particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

10th Cir. Pattern Crim. Jury Instr. § 1.08 (2011) (modified).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 18 of 65

INSTRUCTION NO. 9

ON OR ABOUT

You will note that the indictment charges that the crimes were committed on or about certain dates. The government must prove beyond a reasonable doubt that the defendant committed the crimes reasonably near those dates.

Pattern Crim. Jury Instr. 10th Cir. § 1.18 (2011) (modified).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 19 of 65

INSTRUCTION NO. 10

CONJUNCTIVE - DISJUNCTIVE

Some counts of the indictment may accuse a defendant of violating the same statute in more than one way. In other words, the indictment may allege that the statute in question was violated by various acts which are in the indictment joined by the conjunctive "and," while the statute and the elements of the offense are stated in the disjunctive, using the word "or." In these instances, it is sufficient for a finding of guilt if the evidence established beyond a reasonable doubt the violation of the statute by any one of the acts charged. In order for you to return a guilty verdict, however, all twelve of you must agree that the same act has been proven.

Fed. R. Crim. P. 7(c), advisory committee notes, n. 2 (1944). *United States v. Iverson*, 818 F.3d 1015, 1026 (10th Cir.), *cert. denied*, 137 S.Ct. 217 (2016). *See also United States v. Gunther*, 546 F.2d 861, 868-69 (10th Cir. 1976) ("It is hornbook law that crime denounced in a statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive.") (internal citations omitted).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 20 of 93

INSTRUCTION NO. 11

SEPARATE CRIMES

A separate crime is charged in each count of the Second Superseding Indictment. You must separately consider the evidence on each count and return a separate verdict.

Your verdict as to any one count, whether guilty or not guilty, should not influence your verdict as to any other count.

TENTH CIRCUIT PATTERN JURY INSTRUCTION, CRIMINAL § 1.22 (2011)

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 21 of 63

INSTRUCTION NO. 12

CAUTION—CONSIDER ONLY CRIMES CHARGED

You are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crimes charged. The defendant is not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for any of the crimes charged. The fact that another person also may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crimes charged.

10th Cir. Pattern Crim. Jury Instr. § 1.19 (2011) (modified).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 22 of 63

INSTRUCTION NO. 13

EVIDENCE ADMITTED FOR LIMITED PURPOSE

In certain instances, evidence may be admitted only for a particular purpose and not generally against all parties or for all purposes. For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves. You may not, however, use this evidence for any other purpose or against any party not specifically mentioned.

*United States v. Executive Recycling, Inc.,* No. 11-cr-00376-WJM, 2014 WL 10155718 (D.Colo., Jan. 13, 2014) (Final Jury Instructions) (modified to exclude provision referencing multiple parties.)

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 23 of 63

INSTRUCTION NO. 14

EXPERT WITNESS

[During the trial you heard the testimony of ______ who expressed opinions concerning ______.] In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

10th Cir. Pattern Crim. Jury Instr. § 1.17 (2011) (modified).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 24 of 63

INSTRUCTION NO. 15

TRANSCRIPT OF RECORDED CONVERSATION

During this trial, you have heard sound recordings of certain conversations. These conversations were legally recorded; they are a proper form of evidence and may be considered by you as you would any other evidence. You were also given transcripts of those recorded conversations.

Keep in mind that the transcripts are not evidence. They were given to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. If you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

10th Cir. Pattern Crim. Jury Instr. § 1.40 (2011) (removed title of pattern instruction “Cautionary Instruction During Trial”, however according to the notes in this instruction this instruction should be given when the sound recording is played and again in the final charge).

Case 1:17-cr-00008-WJM Document 152 Filed 01/08/19 Page 25 of 63

INSTRUCTION NO. 16

COCONSPIRATOR—INFORMANT—IMMUNITY

A coconspirator is someone who joined with another person in committing a crime, voluntarily and with common intent. The testimony of a co-conspirator may be received in evidence and considered by you, even though it is not supported by other evidence. You may decide how much weight it should have.

You are to keep in mind, however, that co-conspirator testimony should be received with caution and considered with great care. You should not convict a defendant based on the unsupported testimony of an alleged co-conspirator, unless you believe the unsupported testimony beyond a reasonable doubt.

An informant is someone who provides evidence against someone else for a personal reason or advantage. The testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence. You must examine and weigh an informant's testimony with greater care than the testimony or evidence acquired as a result of actions of an ordinary witness. You must determine whether the informant's testimony or has been affected by self-interest, by an agreement he has with the government, by his own interest in the outcome of the case, or by prejudice against a defendant.

You should not convict a defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony or evidence beyond a reasonable doubt.

10th Cir. Pattern Crim. Jury Instr. § 1.40 (2011, 2018) (modifying language in the first two paragraphs from accomplice to coconspirator).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 26 of 65

INSTRUCTION NO. 17

SIMILAR ACTS

You have heard evidence of other crimes, acts, and wrongs engaged in by the defendant. You may consider that evidence only as it bears on the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident, and for no other purpose. Of course, the fact that the defendant may have previously committed an act similar to the one charged in this case does not mean that the defendant necessarily committed the act charged in this case.

10th Cir. Pattern Crim. Jury Instr. § 1.30 (2011) (modified).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 27 of 63

INSTRUCTION NO. 18

IMPEACHMENT BY PRIOR CONVICTION

(DEFENDANT'S TESTIMONY)

You have heard evidence that the defendant and witnesses have been convicted of a felony or misdemeanor, that is, a crime punishable by imprisonment for a term of years. This conviction has been brought to your attention only because you may wish to consider it when you decide, as with any witness, how much of his testimony you will believe in this trial. The fact that the defendant has been convicted of another crime does not mean that he committed the crime charged in this case, and you must not use his prior conviction as proof of the crime charged in this case. You may find him guilty of the crime charged here only if the government has proved beyond a reasonable doubt that he committed it.

10th Cir. Pattern Crim. Jury Instr. § 1.11 (2011 modified to include reference to misdemeanor involving a dishonest act or false statement.)

INSTRUCTION NO. 19

TESTIFYING UNDER A PSEUDONYM

The Court allowed two Federal Bureau of Investigation Undercover Agents (FBI UCA-1 and FBI UCA-2) to testify under pseudonyms (a fictitious name) at trial.  The jury is instructed not to consider the use of pseudonyms by FBI UCA-1 and FBI UCA-2 in its deliberations.

*UNITED STATES v. KURBANOV,* NO. 1:13-CR-00120 EJL, 2015 WL 5001226 (D. Idaho, Aug. 12, 2015) (Jury Instructions).

Case 1:17-cr-00008-WJM Document 152 Filed 01/08/19 Page 29 of 63

INSTRUCTION NO. 20

KNOWINGLY

When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact. Knowledge can be inferred if the defendant was aware of a high probability of the existence of the fact in question, unless the defendant did not actually believe the fact in question.

10th Cir. Pattern Crim. Jury Instr. § 1.37 (2011)

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 30 of 65

INSTRUCTION NO. 21

PROOF OF KNOWLEDGE OR INTENT

The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done or omitted by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. No matter what you infer, you must remember that the burden is always on the government to prove the elements of the offense charged beyond a reasonable doubt.

1A Kevin F. O'Malley *et al*., *Fed. Jury Prac. & Instr.* § 17:07 (6th ed.) (database updated August 2017) (modified). *United States v. John*, 849 F.3d 912,920 (10th Cir. 2017).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 31 of 63

INSTRUCTION NO. 22

COUNT 1 CONSPIRACY ELEMENTS

The defendant is charged in Count 1 with a violation of Title 18, United States Code, Section 371. This statute makes it a crime to conspire to commit an offense against the United States or to defraud the United States or an agency of the United States, in this case the Securities and Exchange Commission.

As alleged in the indictment, the defendant is charged with conspiring with William J. Sears and Scott M. Dittman to conspire to commit wire fraud, mail fraud, or securities fraud as those offenses are described herein at Instructions ___ - ___. The defendant is also alleged to have conspired to violate Section 5 of the Securities Act which is described herein at instructions ___-___. The defendant is also alleged to have conspired to defraud the United States Securities and Exchange Commission by impeding, impairing, defeating or obstructing its lawful functions.

To find the defendant guilty of Count 1, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant agreed with at least one other person to violate any one of the laws described above or to defraud the SEC, as described above;

*Second*: at least one of the conspirators engaged in at least one overt act furthering any of the conspiracy's objectives;

*Third*: the defendant knew the essential objective of the conspiracy;

*Fourth*: the defendant knowingly and voluntarily participated;

*Fifth*: there was interdependence among the members of the conspiracy. Interdependence means that the activities of a defendant charged with conspiracy or

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 32 of 63

facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole.

**Conspiracy—Agreement**

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. It is a kind of ‘‘partnership in criminal purposes’’ in which each member becomes the agent or partner of every other member. Once a person becomes a member of a conspiracy, he is held legally responsible for the acts of the other members done in furtherance of the conspiracy, even though he was not present or aware that the acts were being committed. An agreement to violate the law can be inferred by the conduct of the parties, as well as the facts and circumstances of the case. Likewise, the jury may infer that a defendant is a knowing and voluntary participant in a conspiracy when he acts in furtherance of the conspiracy's objectives. But mere similarity of conduct among various persons, and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy.

The evidence in the case need not show that the members entered into any express or formal agreement. Nor is it necessary that the evidence show that the members stated between themselves what their object or purpose was to be, or the details thereof, or the means by which the object or purpose was to be accomplished. In order to establish proof that a conspiracy existed, the evidence must show beyond a reasonable doubt that the members in some way or manner, or through some contrivance, expressly or impliedly came to a mutual understanding to try to accomplish

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 33 of 63

a common and unlawful plan.

**Overt Acts**

The government must prove that at least one overt act was committed by at least one coconspirator. An overt act is an act done in furtherance of the conspiracy. An overt act does not itself have to be unlawful. A lawful act may be an overt act of a conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not required to prove that each of the defendants personally did one of the overt acts. The government need only prove that at least one of the coconspirators, including uncharged coconspirators, committed at least one overt act in furtherance of the conspiracy.

**Membership in Conspiracy**

If you conclude from the evidence beyond a reasonable doubt that a conspiracy as charged did exist, then you must next determine whether the defendant was a member of that conspiracy; that is, whether the defendant participated in the conspiracy with knowledge of its unlawful purposes and in furtherance of its unlawful objectives. In determining whether the defendant was a member of the conspiracy, the jury must consider only his acts and statements. The defendant cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed, and that he was one of its members. And mere association, standing alone, is inadequate. However, the jury may infer the presence of a conspiracy from the defendants' conduct and other circumstantial evidence indicating coordination and concert of action.

**Interdependence**

To be a member of the conspiracy, the defendant need not know all of the other

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 34 of 63

members or all of the details of the conspiracy, nor the means by which the objects were to be accomplished. Each member of the conspiracy may perform separate and distinct acts. It is necessary, however, that for the defendant to be a member of the conspiracy, the government must prove beyond a reasonable doubt that he was aware of the common purpose and was a willing participant with the intent to advance the purposes of the conspiracy. In other words, while a defendant need not participate in all the acts or statements of the other members of the

conspiracy to be bound by them, the acts or statements must be interdependent so that each member of the conspiracy depends upon the acts and statements of the other conspirators to make the conspiracy succeed.

**Extent of Participation**

The extent of a defendant's participation in the conspiracy is not relevant to whether he is guilty or not guilty. A defendant may be convicted as a conspirator even though he plays a minor part in the conspiracy.

**Unanimity of Theory**

Your verdict must be unanimous. Count 1 accuses the defendant and/or his coconspirators of committing several overt acts in furtherance of the conspiracy. The government does not have to prove all of these different acts for you to return a guilty verdict on Count 1. But in order to return a guilty verdict, all twelve of you must agree upon which of the listed acts, if any, the defendant and/or his coconspirators committed *and* that at least the defendant and/or his coconspirators committed at least of the acts listed.

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 35 of 65

Tenth Cir. Pattern Criminal Jury Inst. § 2.19 (2011)(modified to fit indictment)

<u>“Interdependence” defined</u> - *United States v. Wardell*, 591 F.2d 1279, 1291 (10th Cir. 2009) (“Interdependence is present if ‘the activities of a defendant charged with conspiracy facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole.’”) (quoting *United States v. Horn*, 946 F,2d 738, 740-741 (10th Cir. 1991));

<u>Permitted inferences</u> - *United States v. Rogers*, 556 F.3d 1130, 1138-1139 (10th Cir. 2009) (“[a]n agreement to violate the law can be inferred by the conduct of the parties, as well as the facts and circumstances of the case. Likewise, the jury may presume a defendant is a knowing participant when he acts in furtherance of the conspiracy’s objectives.”) (citing *United States v. McCullough,* 457 F.3d 1150, 1160 (10th Cir. 2006); and *United States v. Green,* 175 F.3d 822, 832 (10th Cir.1999)); *United States v. Wardell*, 591 F.2d 1279, 1287 (10th Cir. 2009) (“conspiracy convictions may be based on circumstantial evidence, and the jury may infer conspiracy from the defendants' conduct and other circumstantial evidence indicating coordination and concert of action.”) (quoting *United States v. Dazey,* 403 F.3d 1147, 1159 (10th Cir. 2005)).<u>Overt acts</u> - *United States v. Dago,* 441 F.3d 1238, 1242 n. 1 (10th Cir.2006) (finding that the overt act requirement of 18 U.S.C. § 371 is satisfied by “any act to effect the object of the conspiracy”); *United States v. Thompson*, 518 F.3d 822, 854 (10th Cir. 2008) (“the government only had to prove that one of the members of the conspiracy committed an overt act in furtherance of the conspiracy”); and *United States v. Pursley*, 474 F.3d 757, 768 (10th Cir. 2007).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 36 of 63

INSTRUCTION NO. 23

COUNTS 2-16 WIRE FRAUD ELEMENTS

The defendant is charged in counts 2-16 and 24-28 with wire fraud, in violation of 18 U.S.C. Section 1343, or aiding and abetting this offense, in violation of 18 U.S.C. section 2(a).

This law makes it a crime to use interstate wire communication facilities in carrying out a scheme to defraud. A scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises is a specific type of scheme to defraud.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: the defendant devised or intended to devise a scheme to defraud, as alleged in the indictment;

Second: the defendant acted with specific intent to defraud;

Third: the defendant used interstate wire communications facilities, or caused another person to use interstate wire communications facilitates for the purpose of carrying out the scheme;

Fourth: the scheme employed false or fraudulent pretenses, representations, or promises that were material.

A "scheme to defraud" is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension. A "scheme to defraud" includes a scheme to deprive another of money, property or the intangible right of honest services.

An "intent to defraud" means an intent to deceive or cheat someone.

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 37 of 63

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

What must be proved beyond a reasonable doubt is that the defendant devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the indictment, and that the use of a wire was closely related to the scheme, in that the defendant sent a wire or caused a wired to e transmitted in an attempt to execute or carry out the scheme. To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

Aiding and abetting wire fraud

The defendant is alternatively charged with aiding and abetting the commission of wire fraud. Title 18, United States Code, Section 2, provides: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: someone else committed the charged crime (wire fraud); and

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 38 of 83

Second: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

10th Cir. Pattern Crim. Jury Instr. § 2.57 (2011) (modified);
10th Cir. Pattern Crim. Jury Instr. § 2.06 (2011) (modified

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 39 of 63

INSTRUCTION NO.24

USE OF INTERSTATE WIRE COMMUNICATIONS FACILITY DEFINED

The use of interstate wire or radio (wireless) communications are considered a use of an interstate wire communications facility.

Interstate communications, are communications that cross state lines.

A "Wire communication" includes telephone calls, electronic signals sent by wire (such as a fax or a financial wire), the use of the internet to send a message (such as an e-mail), and communicating with a website via the internet.

The phrase "transmits by means of wire, radio, or television communication in interstate commerce" means to send from one state to another by means of telephone or telegraph lines or by means of radio or television.

The phrase "transmits by means of wire, radio, or television communication in interstate commerce" includes a telephone conversation by a person in one state with a person in another state.

The use of a wire, radio, or television communication facility in interstate commerce is an essential element of the offense of wire fraud as charged in Counts 2-16 of the indictment. The government need not prove that the defendant actually used a wire communication in interstate commerce or that the defendant even intended that anything be transmitted in interstate commerce by means of a wire, radio, or television communication to further, or to advance, or to carry out the scheme or plan to defraud.

The government must prove beyond a reasonable doubt, however, that a transmission by a wire, radio, or television communication facility in interstate commerce was, in fact, used in some manner to further, or to advance, or to carry out

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 40 of 93

the scheme to defraud. The government must also prove that the use of the wire, radio, or television communication in interstate commerce would follow in the ordinary course of business or events or that the use of the wire, radio, or television communication facility in interstate commerce by someone was reasonably foreseeable.

It is not necessary for the government to prove that the information transmitted by means of wire, radio, or television communication in interstate commerce itself was false or fraudulent or contained any false or fraudulent pretense, representation, or promise, or contained any request for money or thing of value.

The government must prove beyond a reasonable doubt, however, that the use of the wire, radio, or television communication in interstate commerce furthered, or advanced, or carried out, in some way, the scheme or plan to defraud.

Paragraph 1: *United States v. Kieffer*, 681 F.3d 1143, 1152 (10th Cir. 2012) (stating that, "By its plain terms, §1343 required the Government to prove, among other things, that Defendant (1) used interstate wire or radio (wireless) communications (2) for the purpose of executing a scheme to defraud.")

Paragraphs 2 and 3: *UNITED STATES v. EXECUTIVE RECYCLING, INC.*, et al., 2014 WL 10155718 (D.Colo., Jan 13, 2014) (Final Jury Instructions).

Paragraphs 4-9: 2 Kevin F. O'Malley *et al*., *Fed. Jury Prac. & Instr.* § 47:08 (6th ed.) (August 2017) (modified).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 41 of 63

INSTRUCTION NO. 25

COUNTS 17-20 MAIL FRAUD ELEMENTS

The defendant is charged in counts 17-20 with mail fraud in violation of 18 U.S.C. Section 1341, or aiding and abetting this offense, in violation of 18 U.S.C. section 2(a).

This law makes it a crime to use the mails in carrying out a scheme to defraud.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant devised or intended to devise a scheme to defraud, by impeding, impairing, defeating and obstructing the lawful government functions of the SEC and committing the wire fraud, mail fraud, securities fraud, and prohibitions relating to interstate commerce and the mails, offenses charged in Counts 2 through 28 of the indictment;

*Second*: the defendant acted with specific intent to defraud;

*Third*: the defendant mailed something, or caused another person to mail something through a commercial interstate carrier for the purpose of carrying out the scheme;

*Fourth*: the scheme employed false or pretenses, representations, or promises that were material.

A "scheme to defraud” is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension. A "scheme to defraud" includes a scheme to deprive another of money, property or the intangible right of honest services.

An "intent to defraud” means an intent to deceive or cheat someone.

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 42 of 63

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

What must be proved beyond a reasonable doubt is that the defendant devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the indictment, and that the use of the mails was closely related to the scheme, in that the defendant either mailed something or caused it to be mailed in an attempt to execute or carry out the scheme. To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

Aiding and abetting mail fraud

The defendant is alternatively charged with aiding and abetting the commission of mail fraud. Title 18, United States Code, Section 2, provides: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: someone else committed the charged crime (mail fraud); and

Case 1:17-cr-00008-WJM Document 152 Filed 01/08/19 Page 43 of 63

Second: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

10th Cir. Pattern Crim. Jury Instr. § 2.56 (2018) (modified)
10th Cir. Pattern Crim. Jury Instr. § 2.06 (2011) (modified

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 44 of 93

INSTRUCTION NO. 26

COUNTS 21-23 SECURITIES FRAUD ELEMENTS

Counts 21-23 charge the defendant with committing securities fraud, or aiding and abetting the commission of securities fraud, relating to FusionPharm stock. Specifically, the defendant is charged under Title 15, United States Code, Sections 78j(b) and 78ff, and a regulation promulgated thereunder. Section 78j(b) provides in relevant part that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5 (Title 15, United States Code, Section 78(j)(B)) was promulgated by the Securities and Exchange Commission, or the SEC, as "necessary or appropriate in the public interest" "for the protection of investors." Rule10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

These provisions make unlawful all "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 45 of 63

securities."[1] Such activity "mislead[s] investors by artificially affecting market activity."[2] It "deceiv[es] investors as to how other market participants have valued a security"; the investors are "misled to believe that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."[3] "The basis of such manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."[4]

The Indictment alleges that the defendant engaged in a series of actions designed to manipulate the market price and volume of FusionPharm stock and to orchestrate artificial investor demand for FusionPharm stock. To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant, in connection with the purchase or sale of securities,

(a) employed any device, scheme, or artifice to defraud, or

(b) made any untrue statement of a material fact, or

---

[1] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976).

[2] *Santa Fe Indus. v. Green*, 430 U.S. 462, 476 (1977).

[3] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007) (internal quotations and citation omitted); *see Ala. Farm Bureau Mut. Cas. Co., v. Inc. Am. Fidelity Life Ins. Co.*, 606 F.2d 602, 612 (5th Cir. 1979) (scheme to contrive stock trades qualifies as "manipulative" under § 10(b) because it "induce[s] investment in a company's stock").

[4] *Levy v. United States*, 626 F. App'x 319, 322 (2d Cir. 2015) (citing *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir.1999))

(c) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(d) engaged in a transaction, practice, or course of business which operated or would operate as a fraud and deceit on any person.

*Second*: the defendant aced knowingly, intentionally and wilfully;

*Third*: made use of, or caused the use of,

(a) any means or instrumentality of interstate commerce, or

(b) of the mails, or

(c) of any facility of any national securities exchange,

in connection with the purchase or sale of securities

*Fourth*: the defendant acted with the intent to defraud.

Aiding and abetting securities fraud

The defendant is alternatively charged with aiding and abetting the commission of securities fraud. Title 18, United States Code, Section 2, provides: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: someone else committed the charged crime (securities fraud); and

*Second*: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 47 of 63

about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Title 15, United States Code, Sections 78j(b)

Title 15, United States Code, Section 78(j)(B)

*United States v. Bercoon,* 15-cr-0022-LMM, N.D. Ga 2015 (instruction given).

2B Kevin F. O'Malley *et al*., *Fed. Jury Prac. & Instr.* § 62:05, 62.07 (6th ed.) (modified to match 10th circuit format).

10th Cir. Pattern Crim. Jury Instr. § 2.06 (2011) (modified

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 48 of 93

INSTRUCTION NO. 27

"IN CONNECTION WITH THE PURCHASE OR SALE OF ANY SECURITY"-DEFINED"

Counts 21-23 of the indictment allege certain types of fraudulent conduct "in connection with the purchase or sale of any security." The government must prove beyond a reasonable doubt, therefore, that there were purchases or sales of securities and that the "fraud or deceit" described in the indictment had some relationship to or was connected with these sales or purchases.

The government need not show, however, that the defendant, or anyone associated with him bought or sold the securities in question.

It is sufficient to establish that there were purchases or sales or both and that the conduct was of the type that would cause reasonable investors to rely and that some did sorely.

2B Kevin F. O'Malley *et al*., *Fed. Jury Prac. & Instr.* § 62:11 (database updated August 2017) (6th ed) (modified).

Case 1:17-cr-00008-WJM Document 152 Filed 01/08/19 Page 49 of 63

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 50 of 93

INSTRUCTION NO. 28

"THE USE OF ANY MEANS OR INSTRUMENTALITY OF INTERSTATE COMMERCE OR OF THE MAILS, OR OF ANY NATIONAL SECURITIES EXCHANGE"-DEFINED

The term "interstate commerce" as used in these instructions means "trade or commerce in securities or any transportation or communication relating … [to such trade or commerce] among the several states…"

This element of the crime charged may be established if the government proves beyond a reasonable doubt that any means or instrumentality of interstate transportation or communication, including the mails, or the facilities of a national securities exchange were, in fact, used in the scheme or that such use was reasonably foreseeable.

In this regard, however, it is not necessary for the government to prove that the defendant personally used any means or instrumentality of interstate commerce or the mails, or used a national exchange, or that such use was contemplated or intended by anyone involved in any scheme. It is sufficient for the government to prove that the defendant set forces in motion which foreseeably resulted in such use.

The matter, material, or information mailed, transported, or communicated need not itself contain a fraudulent representation or request money, but must be a part of the overall scheme.

2B Kevin F. O'Malley *et al*., *Fed. Jury Prac. & Instr.* § 62:08 (database updated August 2017).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 51 of 83

INSTRUCTION NO. 29

GENERAL RULES AND RESTRICTIONS UNDER SECURITIES LAW

The Securities Act of 1933 Section 5, Titled Prohibitions relating to interstate commerce and the mails, which falls under Chapter 15 United States Code, Section 77e, states that unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly: (1) To make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise, or (2) To carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

If the issuer, a company or person, has not registered it's "securities" with the Security Exchange Commission in order to have a registration statement, the issuer must fall under an exemption in order to be able to sell the "securities."

Section 4(a)(1) of Securities Act of 1933 is an exemption to all the sale of "securities" without having a registration statement for transactions by any person other than an issuer, underwriter, or dealer. In order for an "underwriter" to be able to sell "securities" without a registration statement, an "underwriter" must look to another rule.

One rule that would allow an underwriter to sell a "security" without a registration statement is the SAFE HARBOR RULE 144, 17 CFR 230.144 - Persons deemed not to be engaged in a distribution and therefore not underwriters. A "person" satisfying the applicable conditions of the Rule 144 safe harbor is deemed not to be engaged in a distribution of the securities and therefore not an underwriter of the securities.

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 52 of 63

Therefore, such a person is deemed not to be an underwriter when determining whether a sale is eligible for the Section (4)(1) exemption and the sale is permitted.

Rule 144 under the Securities Act ("Rule 144") provides certain requirements for resellers to avoid being classified as an underwriter. These rules vary on whether or not an individual is classified as an "affiliate." Rule 144(a) (1) defines an "affiliate" to mean "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with the issuer." Rule 405 under the Securities Act defines "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise."

If a person is considered an affiliate, additional requirements must be met in order to sell securities since the securities will be termed "restricted securities" since the securities are acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering. The additional requirements include a holding period, limitation on amount of securities sold, manner of sale, and requirement for brokers' transactions to include a reasonable inquiry.

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 53 of 83

INSTRUCTION NO. 30

DEFINITIONS UNDER SECURITIES LAW

You are instructed the securities law relevant to this case has a number of definitions:

Security. The term "security" means any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, and put, call, straddle, option, or privilege on any security certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Restricted Security: The term restricted securities means:

(i) Securities acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering;

(ii) Securities acquired from the issuer that are subject to the resale limitations of § 230.502(d) under Regulation D or § 230.701(c);

(iii) Securities acquired in a transaction or chain of transactions meeting the requirements of § 230.144A;

(iv) Securities acquired from the issuer in a transaction subject to the conditions of Regulation CE ( § 230.1001);

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 54 of 65

(v) Equity securities of domestic issuers acquired in a transaction or chain of transactions subject to the conditions of § 230.901 or § 230.903 under Regulation S ( § 230.901 through § 230.905, and Preliminary Notes);

(vi) Securities acquired in a transaction made under § 230.801 to the same extent and proportion that the securities held by the security holder of the class with respect to which the rights offering was made were, as of the record date for the rights offering, “restricted securities” within the meaning of this paragraph (a)(3);

(vii) Securities acquired in a transaction made under § 230.802 to the same extent and proportion that the securities that were tendered or exchanged in the exchange offer or business combination were “restricted securities” within the meaning of this paragraph (a)(3); and

(viii) Securities acquired from the issuer in a transaction subject to an exemption under section 4(5) ( 15 U.S.C. 77d(5)) of the Act.

Sale or sell: The term “sale” or “sell” shall include every contract of sale or disposition of a security or interest in a security, for value. The term “offer to sell”, “offer for sale”, or “offer” shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value. The terms defined in this paragraph and the term “offer to buy” as used in subsection (c) of section 77e of this title shall not include preliminary negotiations or agreements between an issuer (or any person directly or indirectly controlling or controlled by an issuer, or under direct or indirect common control with an issuer) and any underwriter or among underwriters who are or are to be in privity of contract with an issuer (or any person directly or indirectly controlling or controlled by an issuer, or under direct or indirect common control with an issuer). Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been offered and sold for value. The issue or transfer of a right or privilege, when originally issued or transferred with a security, giving the holder of

Case 1:17-cr-00008-WJM Document 152 Filed 01/08/19 Page 55 of 93

such security the right to convert such security into another security of the same issuer or of another person, or giving a right to subscribe to another security of the same issuer or of another person, which right cannot be exercised until some future date, shall not be deemed to be an offer or sale of such other security; but the issue or transfer of such other security upon the exercise of such right of conversion or subscription shall be deemed a sale of such other security. Any offer or sale of a security futures product by or on behalf of the issuer of the securities underlying the security futures product, an affiliate of the issuer, or an underwriter, shall constitute a contract for sale of, sale of, offer for sale, or offer to sell the underlying securities. Any offer or sale of a security-based swap by or on behalf of the issuer of the securities upon which such security-based swap is based or is referenced, an affiliate of the issuer, or an underwriter, shall constitute a contract for sale of, sale of, offer for sale, or offer to sell such securities. The publication or distribution by a broker or dealer of a research report about an emerging growth company that is the subject of a proposed public offering of the common equity securities of such emerging growth company pursuant to a registration statement that the issuer proposes to file, or has filed, or that is effective shall be deemed for purposes of paragraph (10) of this subsection and section 77e(c) of this title not to constitute an offer for sale or offer to sell a security, even if the broker or dealer is participating or will participate in the registered offering of the securities of the issuer. As used in this paragraph, the term "research report" means a written, electronic, or oral communication that includes information, opinions, or recommendations with respect to securities of an issuer or an analysis of a security or an issuer, whether or not it provides information reasonably sufficient upon which to base an investment decision.

Person: The term "person" means an individual, a corporation, a partnership, an association, a joint-stock company, a trust, any unincorporated organization, or a government or political subdivision thereof. As used in this paragraph the term "trust" shall include only a trust where the interest or interests of the beneficiary or beneficiaries are evidenced by a security.

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 56 of 93

Issuer: The term "issuer" means every person who issues or proposes to issue any security; except that with respect to certificates of deposit, voting-trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors (or persons performing similar functions) or of the fixed, restricted management, or unit type, the term "issuer" means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued; except that in the case of an unincorporated association which provides by its articles for limited liability of any or all of its members, or in the case of a trust, committee, or other legal entity, the trustees or members thereof shall not be individually liable as issuers of any security issued by the association, trust, committee, or other legal entity; except that with respect to equipment-trust certificates or like securities, the term "issuer" means the person by whom the equipment or property is or is to be used; and except that with respect to fractional undivided interests in oil, gas, or other mineral rights, the term "issuer" means the owner of any such right or of any interest in such right (whether whole or fractional) who creates fractional interests therein for the purpose of public offering.

Underwriter: The term "underwriter" means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

Dealer: The term “dealer” means any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person.

17 CFR 230.144

Securities Act of 933

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 58 of 65

INSTRUCTION NO. 31

COUNT 29 MONEY LAUNDERING ELEMENTS

The defendant is charged in Count 29 with money laundering, in violation of 18 U.S.C. section 1956(a)(3)(B), or aiding and abetting this offense, in violation of 18 U.S.C. section 2(a).

This law makes it a crime to knowingly use what is represented to be the proceeds of specified unlawful activity to conceal or disguise the nature, location, source, ownership or control of the property believed to be the proceeds of specified unlawful activity.

To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant conducted or attempted to conduct a financial transaction, or the defendant aided and abetted others to conduct or attempt to conduct a financial transaction;

*Second*: the financial transaction involved property that was represented by a person acting at the direction of, or with the approval of, an agent of the United States Postal Service or the United States Immigration and Customs Enforcement, to be the proceeds of specified unlawful activity;

*Third:* the financial transaction was believed by the defendant to be the proceeds wire fraud or securities fraud;

*Fourth*: the defendant conducted, or aided and abetted others to conduct the financial transaction or the attempted financial transaction with the intent to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of wire fraud or securities fraud.

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 59 of 63

The term "conducts" includes initiating, concluding, or participating in initiating or concluding, a transaction.

The term "financial transaction" means: (A) a transaction involving the use of a financial institution that is engaged in, or the activities of which affect, interstate commerce in any way or degree; or (B) a transaction that in any way or degree affects interstate commerce, and that involves: (i) the movement of funds by wire or other means; or (ii) one or more monetary instruments; or (iii) the transfer of title to any real property, vehicle, vessel, or aircraft.

The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through specified unlawful activity, including the gross receipts of such activity.

"Interstate commerce" means commerce or travel between the states, territories or possessions of the United States, including the District of Columbia. It is not necessary that the defendant have intended or anticipated an effect on interstate commerce. All that is necessary is that the natural and probable consequence of the acts the defendant took would be to affect interstate commerce.

Aiding and abetting money laundering

The defendant is alternatively charged with aiding and abetting the commission of money laundering. Title 18, United States Code, Section 2, provides: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 60 of 83

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: someone else committed the charged crime (money laundering); and

*Second*: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

10th Cir. Pattern Crim. Jury Instr. § 2.73.2 (2011) (modified).
10th Cir. Pattern Crim. Jury Instr. § 2.06 (2011) (modified).

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 61 of 63

INSTRUCTION NO. 32

CAUTION—PUNISHMENT

If you find the defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdicts.

10th Cir. Pattern Crim. Jury Instr. § 1.20 (2011).

Case 1:17-cr-00008-WJM Document 152 Filed 01/08/19 Page 62 of 63

INSTRUCTION NO. 33

DUTY TO DELIBERATE—VERDICT FORM

In a moment, the court security officer will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdicts must be unanimous on each count of the indictment. Your deliberations will be secret. You will never have to explain your verdicts to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges—judges of the facts. You must decide whether the government has proved the defendant guilty beyond a reasonable doubt.

Forms of verdicts has been prepared for your convenience.

[Explain the Verdict Forms]

Case 1:17-cr-00008-WJM Document 152 Filed 01/06/19 Page 63 of 63

The foreperson will mark the unanimous answer of the jury in the space provided for each count of the indictment on each verdict form, either guilty or not guilty. At the conclusion of your deliberations, the foreperson should date and sign the verdict forms.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the court security officer. I will either reply in writing or bring you back into the court to respond to your message. Under no circumstances should you reveal to me the numerical division of the jury.

10th Cir. Pattern Crim. Jury Instr. § 1.23 (2011) (modified).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.17-cr-00008-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE**,

Defendant.

---

**DEFENDANT JEAN-PIERRE'S**
**POTENTIALLY DISPUTED JURY INSTRUCTIONS**

---

THE DEFENDANT, GUY M. JEAN-PIERRE, by and through his attorney, Clifford J. Barnard, hereby submits the following jury instructions which are in addition to the *Government's Stipulated Jury Instructions* (Document No. 152). Defense counsel had sent these instructions to government counsel but, due to time constraints, the parties were not able to include these instructions in the "stipulated" packet filed in Document No. 152. Undersigned counsel expects that the parties will be able to resolve any differences regarding these additional proposed jury instruction before the Final Trial Preparation Conference on January 8, 2019.

Case 1:17-cr-00008-WJM Document 156 Filed 01/06/19 Page 2 of 9

INSTRUCTION NO. 1

IMPEACHMENT BY PRIOR CONVICTION

(Witness Other Than Defendant)

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a [felony, that is, of a crime punishable by imprisonment for a term of years] or of a [crime of dishonesty or false statement]. A prior conviction does not mean that a witness is not qualified to testify, but is merely one circumstance that you may consider in determining the credibility of the witness. You may decide how much weight to give any [prior felony conviction] [crime of dishonesty] that was used to impeach a witness.

Tenth Circuit Pattern Jury Instruction No. 1.12 (2011 ed.) (updated 2018).

Case 1:17-cr-00008-WJM Document 156 Filed 01/06/19 Page 3 of 9

INSTRUCTION NO. 2

ACCOMPLICE—CO-DEFENDANT—PLEA AGREEMENT

The government called as one of its witnesses an alleged accomplice, who was named as a co-defendant in the indictment. The government has entered into a plea agreement with the co-defendant, providing [e.g., for the dismissal of some charges and a recommendation of a lesser sentence than the co-defendant would otherwise likely receive]. Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of an alleged accomplice may, by itself, support a guilty verdict. You should receive this type of testimony with caution and weigh it with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice, unless you believe that testimony beyond a reasonable doubt. The fact that an accomplice has entered a guilty plea to the offense charged is not evidence of the guilt of any other person

Tenth Circuit Pattern Jury Instruction No. 1.15 (2011 ed.) (updated 2018).

Case 1:17-cr-00008-WJM Document 156 Filed 01/06/19 Page 4 of 9

INSTRUCTION NO. 3

SUMMARIES AND CHARTS

Not Received in Evidence

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

Tenth Circuit Pattern Jury Instruction No. 1.41 (2011 ed.) (updated 2018).

DATED this 6th day of January, 2019.

Respectfully submitted,

*s/Clifford J. Barnard*

Clifford J. Barnard
Clifford J. Barnard, Attorney at Law
4450 Arapahoe Avenue, Suite 100
Boulder, Colorado 80303
Telephone: (303) 449-2543
Facsimile: (303) 444-6349
Email: *cliffbarnard@earthlink.net*
Attorney for Defendant Jean-Pierre

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of January, 2019, I electronically filed the foregoing *Defendant Jean-Pierre's Potentially Disputed Jury Instructions* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

A.U.S.A. Jeremy Sibert *jeremy.sibert@usdoj.gov*

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Guy Jean-Pierre
Register # 78606-054
Independence House South
2765 S. Federal Blvd.
Denver, CO 80236

*Via U.S. Mail*

*s/Clifford J. Barnard*

Clifford J. Barnard
Attorney for Defendant Jean-Pierre

Case 1:17-cr-00008-WJM Document 160 Filed 01/07/19 Page 1 of 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. GUY M. JEAN-PIERRE,
a/k/a Marcelo Dominguez de Guerra,

---

**STIPULATED STATEMENT OF THE CASE**

---

In accordance with WJM Revised Practice Standards VI(B), the United States of America, by undersigned counsel, submits a stipulated Statement of the Case which it/he failed to include in the Stipulated Jury Instructions submitted [ECF 77].

The parties stipulate that an appropriate, brief statement of the case is:

"The defendant Guy M. Jean-Pierre is charged in a 28-count second superseding indictment with violations of federal criminal laws: one count of conspiracy to commit mail, wire and securities fraud, 20 counts of wire fraud, 4 counts of mail fraud, 3 counts of securities fraud and one count of money laundering. The indictment also contains a forfeiture allegation regarding the proceeds of the alleged frauds.

The conspiracy and fraud counts allege a scheme to defraud FusionPharm investors, a microcap stock traded on the Over-the-Counter market. The scheme included the defendant preparing and transmitting documents and assisting others in the preparation of documents that: (a) allowed FusionPharm control person(s)/co-conspirator(s) to sell stock in violation of securities laws in order to fund FusionPharm;

(b) falsely portrayed deposits of proceeds from the sale of FusionPharm common stock as convertible debt obligations owed to affiliate companies of FusionPharm, Bayside and Meadpoint; (c) falsely portrayed Microcap, Bayside, and Meadpoint as non-affiliates of FusionPharm; (d) concealed the role of other co-conspirators in the FusionPharm business; (e) falsely represented that the quarterly and annual disclosure documents and financial statements constituted adequate current information about FusionPharm; and (f) failed to disclose his role in drafting documents for another attorney to sign and represent as the other attorney's own work product.   The conspiracy count alleges an agreement and overt acts involving the defendant and others in the posting of false documents on the Over-the-Counter website and the selling of FusionPharm stock on the penny stock market.   These offenses allegedly occurred between 2011 and 2014.

Other wire fraud counts allege a similar scheme to defraud involving the defendant acting in a similar role in a scheme that involved law enforcement personnel and their agents acting in an undercover role which occurred in February through April 2016.   The money laundering count alleges the defendant knowingly conducted or attempted to conduct a financial transaction affecting interstate and foreign commerce involving property that was proceeds of securities fraud or wire fraud which was intended to conceal and disguise the location, source, ownership and control, of the financial transaction.

The defendant denies these charges and has plead not guilty to them.

Dated this 6th day of January 2019.

Respectfully submitted,

JASON DUNN
United States Attorney

By:   s/ Jeremy Sibert
JEREMY SIBERT
Assistant United States Attorney
United States Attorney's Office
1801 California Street #1600
Denver, Colorado 80202
Telephone: (303) 454-0100

Case 1:17-cr-00008-WJM Document 160 Filed 01/07/19 Page 4 of 4

CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January 2019, I electronically filed the foregoing GOVERNMENT'S PROPOSED VOIR DIRE with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record

/s *Robert Brown*
ROBERT BROWN
Assistant U.S. Attorney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No.1:17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

GUY JEAN-PIERRE,

Defendant.

---

**UNITED STATES' RESPONSE TO DEFENDANT'S NOTIFICATION TO OBJECT TO GOVERNMENT'S 404(b) EVIDENCE**

---

The United States of America ("the Government"), by and through United States Attorney Jason R. Dunn and Assistant United States Attorney Jeremy Sibert, respectfully responds to Defendant's notification that he will object to government's 404(b) evidence. All the evidence that the government is seeking to admit was provided to the defense months in advance of this trial. The government is filing this response base on the email from defendant Jean-Pierre's lawyer that stated they would be objecting to the government's 404(b) evidence.

**INTRODUCTION**

In this case, defendant Guy Jean-Pierre is charged in a 28-count second superseding indictment with violations of federal criminal laws: one count of conspiracy to commit mail, wire and securities fraud, 20 counts of wire fraud, 4 counts of mail fraud, 3 counts of securities

Case 1:17-cr-00008-WJM Document 161 Filed 01/07/19 Page 2 of 8

fraud and one count of money laundering. Prior to this indictment defendant Guy Jean-Pierre was convicted for Forgery 3rd Degree, Falsifying Business Records 2nd Degree, and Identity Theft 3rd Degree, Case Number 03811-2013, out of the Supreme Court of the State of New York, New York County. In addition, he was disbarred from the State of Florida by the Supreme Court of Florida on January 13, 2014 for filing of fraudulent attorney opinion letter with Pink OTC Markets, and was suspended from appearing or practicing before the Security Exchange Commission based on his disbarment from the Florida State Bar. Broadly speaking, the circumstances surrounding Defendant's prior convictions for fraud related conduct may be admissible under Rule 404(b) in relation to the charges in this case. Recognizing the potential admissibility of this evidence under Fed. R. Evid. 404(b), on January 3, 2019, the Government provided notice of the general nature of the evidence, as required by the rule, including the additional intrinsic evidence.

**Argument**

At trial, the Government will not seek to introduce any evidence under Rule 404(b) until after it has presented evidence related to the charged offenses. If at that point it intends to offer any evidence under Rule 404(b), the Government will alert the Court and Defendant outside the presence of the jury. In this way, the points of contention at trial will properly be before the Court, and the Court can make an informed ruling outside the presence of the jury on whether, to what extent, and for what purpose evidence of the circumstances surrounding the three incidents described above is admissible under Rule 404(b).

If the Court is called upon to conduct this inquiry, the test to be applied is well

Case 1:17-cr-00008-WJM Document 161 Filed 01/07/19 Page 3 of 8

established. Since *Huddleston v. United States*, 485 U.S. 681, 687-88 (1988), and *United States v. Record*, 873 F.2d at 1363, courts in this Circuit have approached the admissibility of Rule 404(b) evidence as an "inclusionary" as opposed to "exclusionary" exercise. Indeed, the presumption is that the jury should hear all relevant evidence bearing on all legitimate issues at the trial, assuming the evidence has met the relevant four-part test. *See Record*, 873 F.2d at 1375 (noting that Congress was more concerned with avoiding restrictions on the admissibility of evidence than with its potential prejudicial effect); *United States v. Segien*, 114 F.3d 1014, 1022 (10th Cir. 1997) (finding rule to be one of inclusion rather than exclusion), *overruled on other grounds as recognized in United States v. Hathaway*, 318 F.3d 1001, 1006 (10th Cir. 2003).

The four-part test in question is: "(1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests." *United States v. Cardinas-Garcia*, 596 F.3d 788, 797 (10th Cir. 2010) (citing *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006)); *see also United States v.Wilson*, 107 F.3d 774, 782 (10th Cir. 1997). The first three steps of the test require courts to evaluate proffered evidence in the context of the case as a whole, including all other evidence. The Court will be in a better position to make this determination after hearing evidence regarding the charged incident in this case and the points of dispute between the parties. The Court should therefore defer ruling on the Motion, and address the issue of the admissibility of evidence under Rule 404(b) if and when it arises at trial.

Case 1:17-cr-00008-WJM Document 161 Filed 01/07/19 Page 4 of 8

Specifically regarding to fraud related, "white collar type cases," the Tenth Circuit favors the use of prior fraud related charges to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

In *United States v. Hudson,* 556 Fed.Appx. 688 (10th Cir. 2014), WL 661480, the defendant argued that the uncharged acts were not sufficiently similar to the charges in the indictment, thus the District Court committed error in permitting the charges to be admitted as 404(b). Mr. Hudson contended that the evidence failed to satisfy the second Rule 404(b) factor: relevance. *See United States v. Becker*,230 F.3d 1224, 1232–33 (10th Cir.2000)(holding that district court abused its discretion by admitting prior acts relating to methamphetamine possession and trafficking to prove a common scheme of manufacturing the drug). The Tenth Circuit disagreed with Mr. Hudson. The Court concluded that under the wire fraud statute, the Government was required to prove that Mr. Hudson had "devised or intend[ed] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. The proffered Rule 404(b) testimony was offered to prove Mr. Hudson's intent to defraud related to other transactions in which he allegedly pursued a similar scheme.

In justifying it's decision, the Court looked it's prior cases where it affirmed the admission of other acts evidence under Rule 404**(**b) *citing*; *United States v. Grissom,* 44 F.3d 1507, 1509, 1513 (10th Cir.1995) (in prosecution for false statements to a bank, district court did not abuse its discretion by admitting evidence of defendant's unrelated falsification of union payroll records to show defendant's intent, knowledge, and lack of mistake); *United States v.*

Case 1:17-cr-00008-WJM Document 161 Filed 01/07/19 Page 5 of 8

*Bolt,* 776 F.2d 1463, 1464, 1470–71 (10th Cir.1985) (in prosecution for material false statements to a bank and mail fraud, district court did not abuse its discretion by admitting evidence of the general fraudulent nature of defendant's business as relevant to defendant's identity, existence of a scheme to defraud, intent, and absence of mistake); *United States v. Bonnett,* 877 F.2d 1450, 1452, 1460–61 (10th Cir.1989) (in bank fraud prosecution involving one bank, district court did not abuse its discretion by admitting evidence of defendant's accounts with insufficient funds at a different bank, which tended to show intent, motive, and knowledge with respect to defendant's fraudulent scheme); *United States v. Parnell,* 581 F.2d 1374, 1378 (10th Cir.1978) (in prosecution related to scheme involving forged cashier's checks, district court did not abuse its discretion in admitting evidence of defendant's previous check scheme which tended to show defendant's knowledge and absence of mistake).

Other courts have made similar rulings to the Tenth Circuit regarding 404(b) evidence. In United States v. Kalish, 403 Fed.Appx. 541, 546 (C.A.2, N.Y., 2010), WL 5071808, the Court took the inclusionary approach of allowing evidence, which is supported by the Tenth Circuit. First of all, this "Circuit takes an inclusionary approach to the admission of [404(b) ] evidence under which such evidence is admissible for any purpose other than to show the defendant's criminal propensity." *United States v. McCallum,* 584 F.3d 471, 475 (2d Cir.2009). In Kalish, the trial court found that the evidence demonstrated Kalish's "knowledge that [he] had to be careful in making representations to borrowers [and] potential borrowers[ ] that would mislead them" and his "knowledge of the unlawful nature of conduct which would mislead or tend to mislead the borrowers." *United States v. Kalish,* 403 Fed.Appx. 541 at 547. The appellate Court

Case 1:17-cr-00008-WJM Document 161 Filed 01/07/19 Page 6 of 8

reasoned that demonstrating such knowledge is clearly a proper purpose citing *United States v. McCallum*, 584 F.3d at 475. The Court then reasoned that the evidence was relevant to whether Kalish had the necessary intent to defraud, indicating that the jury could reasonably infer that Kalish's awareness of the illegality of conduct tending to mislead potential borrowers demonstrated an intent to defraud. Third, the Court stated that there was not an prejudicial impact because the prior conduct was not more "sensational or disturbing than the crime with which [Kalish] was charged." *citing United States v. Roldan–Zapata*, 916 F.2d 795, 804 (2d Cir.1990). Finally, the district court gave an emphatic limiting instruction immediately after admitting the evidence, and repeated the entirety of that instruction in its final charge to the jury. The government would support the same if this Court would allow the introduction of the 404(b) evidence.

Based on the indictment in this case, the government will be calling several witnesses and presenting several pieces of evidence in an attempt to prove Mr. Jean-Pierre's fraudulent conduct. Specifically, the government will be call one witness that will testify that a Rule 144 attorney letter was fraudulently drafted and signed with the witness's name with the defendant's business letterhead attached to it. Further the government will be providing evidence that several Rule 144 attorney letters were fraudulently written with the assistance of the defendant, which allowed FusionPharm stock to be traded, which mislead investors. Finally, the government would argue that the fraudulent conduct that Mr. Jean-Pierre was convicted of is less severe than his charges in this case.

Case 1:17-cr-00008-WJM Document 161 Filed 01/07/19 Page 7 of 8

## CONCLUSION

For the foregoing reasons, the government is requesting that the Court withhold its 404(b) ruling until evidence is presented in this case. The government will indicate to the Court outside the presence of the jury if and when it would like to move forward in introducing the 404(b) evidence of Mr. Jean-Pierre's prior conviction. Finally, based on the legal reasoning in this response and the Tenth Circuit's support of including 404(b) with the proper instructions, the government requests that this 404(b) evidence be permitted.

Dated this 7th day of January, 2019.

JASON R. DUNN
United States Attorney

by: *s/ Jeremy Sibert*
JEREMY SIBERT
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0406
Email: Jeremy.Sibert@usdoj.gov

Case 1:17-cr-00008-WJM Document 161 Filed 01/07/19 Page 8 of 8

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of January 2019, I electronically filed the foregoing **UNITED STATES' RESPONSE TO DEFENDANT'S NOTIFICATION TO OBJECT TO 404(B) EVIDENCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email address:

**Cliff Barnard**

by: *s/ Jeremy Sibert*
JEREMY SIBERT
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0406
Email: Jeremy.Sibert@usdoj.gov

Case 1:17-cr-00008-WJM Document 163 Filed 01/07/19 USDC Colorado Page 1 of 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.17-cr-00008-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE**,

Defendant.

---

**DEFENDANT JEAN-PIERRE'S OBJECTIONS TO CERTAIN OF THE "GOVERNMENT'S STIPULATED JURY INSTRUCTIONS" (DOCKET # 152)**

---

THE DEFENDANT, GUY M. JEAN-PIERRE, by and through his attorney, Clifford J. Barnard, hereby objects to the following jury instructions which were set forth in the *Government's Stipulated Jury Instructions* (Document No. 152). The parties had been working together attempting to stipulate to as many of the proposed jury instructions as possible and have been able to agree on a great number of them. However, due the short deadlines dealing with a number of matters, the parties were not able to complete negotiations and discussions on all of the jury instructions and each party then filed instructions that had been agreed upon and instructions which had not yet been agreed upon. Based on the Court's "Practice Standards" Section VI (E), Mr. Jean-Pierre is objecting to the government's following proposed jury instructions for the following reasons:

(1) INSTRUCTION NO. 22 (COUNT 1 CONSPIRACY ELEMENTS)

In the "Fifth" element at the bottom of the first page, the present instruction reads:

Case 1:17-cr-00008-WJM Document 163 Filed 01/07/19 Page 2 of 4

> *Fifth*: there was interdependence among the members of the conspiracy. Interdependence means that the activities of a defendant charged with conspiracy or facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole.

Document No. 152, *Government's Stipulated Jury Instructions*, at 31.

Mr. Jean-Pierre objects to the second sentence of this paragraph on the grounds that it is not the language in the Tenth Circuit Pattern Jury Instructions and proposes to replace it with this language with the Tenth Circuit Pattern Jury Instructions § 2.19 (2011 ed.) (updated 2018) which states:

> Fifth: there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

(2) INSTRUCTION NO. 26 (Counts 21-23 Securities Fraud Elements) and INSTRUCTION NO. 29 (General Rules and Restrictions Under Securities Law)

The government initially presented the defense with a number of proposed jury instructions regarding the securities fraud, SEC Rule 144 and 17 C.F.R. § 240.10b-5 issues. The defense had stipulated to most or almost all of these instructions. However, late on Sunday, January 6, 2019, the government sent the defense a set of proposed instructions in which the government replaced the previous jury instructions with a set with some completely new jury instructions dealing with some of these matters. These new jury instructions are also contained in the government's Document No. 152, *Government's Stipulated Jury Instructions*, filed late on January 6, 2019.

Defense counsel has sent these new instructions to the expert with whom the defense has been consulting and has subsequently consulted with him regarding these instructions. Based on this initial consultation, Mr. Jean-Pierre has a number of objections

Case 1:17-cr-00008-WJM Document 163 Filed 01/07/19 Page 3 of 4

to these instructions regarding:

(a) the inclusion of statements of law which do not apply as broadly as set forth in the instructions and thus are inaccurate and/or misleading;

(b) the inclusion of statements that omit key legal standards and thus are inaccurate, misleading, suggestive and potentially prejudicial;

(c) the inclusion of statements which, as set forth in the instructions, are inaccurate and/or untrue;

(d) the inclusion of language which does not apply to the charges in this case but which could be misleading, suggestive and potentially prejudicial;

(e) the inclusion of surplusage which appears to be unnecessary and potentially misleading; and

(f) the incorrect formatting which in at least one instance causes the statements to be inaccurate and/or misleading.

Due to time constraints and the complexity of these issues, the defense has not yet been able to delineate all of the specific objections to the different parts of these instructions, to specify the specific authority relied on for the objections, to prepare proposed alternate instructions or to specify the specific authority relied on for the proposed alternate instructions. Counsel will continue to consult both with the expert and government counsel to try to arrive at agreed-upon jury instructions or to narrow the focus of the specific items upon with the parties do not agree.

DATED this 7th day of January, 2019.

Case 1:17-cr-00008-WJM Document 163 Filed 01/07/19 USDC Colorado Page 4 of 4

Respectfully submitted,

*s/Clifford J. Barnard*

______________________________

Clifford J. Barnard
Clifford J. Barnard, Attorney at Law
4450 Arapahoe Avenue, Suite 100
Boulder, Colorado 80303
Telephone: (303) 449-2543
Facsimile: (303) 444-6349
Email: *cliffbarnard@earthlink.net*
Attorney for Defendant Jean-Pierre

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of January, 2019, I electronically filed the foregoing *Defendant Jean-Pierre's Objections to Certain of the "Government's Stipulated Jury Instructions" (Docket # 152)* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

A.U.S.A. Jeremy Sibert *jeremy.sibert@usdoj.gov*

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Guy Jean-Pierre
Register # 78606-054
Independence House South
2765 S. Federal Blvd.
Denver, CO 80236

*Via U.S. Mail*

*s/Clifford J. Barnard*

______________________________

Clifford J. Barnard
Attorney for Defendant Jean-Pierre

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. GUY M. JEAN-PIERRE
a/k/a Marcello Dominguez de Guerra

Defendant.

---

**DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INTENT TO INTRODUCE CERTAIN EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(b)**

---

Defendant Guy M. Jean-Pierre, through counsel, hereby objects to the Government's intention to introduce at the forthcoming trial evidence of prior crimes, wrongs, or bad acts, under Federal Rule of Evidence 404(b).

That part of Rule 404 provides, in relevant part, that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character . . . [but] [t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Rule goes on to state that in a criminal case, upon request of a defendant, the prosecution must provide reasonable notice of intent to introduce evidence of prior wrongs under F.R.E. 404(b). In this particular matter, the amount of notice was set by the Court in its 9 February 2017 Discovery Conference Memorandum and Order [#18, ¶ (I)(C)] as "no later than 21 days before trial unless, for good cause

Case 1:17-cr-00008-WJM Document 164 Filed 01/08/19 Page 2 of 9

shown, the court permits less notice in accordance with Rule 404(b)."

On 3 January 2019 the Government provided the defense with the attached (Exhibit A) letter notice of intent to introduce at trial evidence of prior bad acts by the Defendant. According to the letter, the Government intends to introduce prior bad acts evidence that falls into three categories: a) prior crimes evidence, b) information related to Defendant's disbarment in Florida, and c) information related to the suspension of his right to practice before the SEC. Mr. Jean-Pierre objects to the introduction of this evidence at trial.

Lack of Timeliness--To begin with, Mr. Jean-Pierre objects to the Government's efforts to introduce 404(b) evidence because the prosecution's notice of same is late. As stated, *supra*., the Court ordered nearly two years ago that the Government was required to provide notice of intent to introduce 404(b) evidence at least 21 days in advance of trial. While it is true that the Court did not formally set the trial date until 18 days in advance of its commencement, the Government should reasonably have anticipated that the Court would set the trial to begin on 14 January 2019 because all parties have been aware for a long time that the Speedy Trial clock expired on 13 January 2019 (a Sunday).

The trial of this matter, with present counsel in place, originally was set to begin on 21 May 2018. The Government could have provided its 404(b) notice at any time in the intervening seven months, but the prosecution did not do so. The Government also could have provided its notice on 27 December 2018, after receiving the Court's formal notice of the current trial setting (that would have at least given the defense 18 days' notice), but, again, the Government chose not to do so. Instead, the prosecution

Case 1:17-cr-00008-WJM Document 164 Filed 01/08/19 Page 3 of 9

waited another week, until 3 January 2019, to give the defense only eleven days' notice of the Government's intent to offer into evidence matters that, as discussed, *infra.*, are not germane to the trial at hand. In proceeding in this manner, the Government not only was untimely but also failed to seek permission from the Court for the prosecution's late submission.

The Government contends in its filing [#161] on 404(b) that the defense has had the 404(b) evidence for many months, so there is no prejudice in allowing the evidence into trial. While it is true that the defense has in fact had the prior crimes evidence as part of the 2.5 million pages of discovery provided in this case, that fact neither excuses the Government's failure timely to disclose its notice to use that evidence nor provides a basis for the evidence's admission.

The defense needed timely notice that Mr. Jean-Pierre would have to defend against the 404(b) evidence, which is about a whole separate series of transactions, individuals and entities, and alleged wrongs. Allowing the 404(b) evidence in would lengthen what already is shaping up, even without this evidence, as a very long trial indeed. The Court should not countenance such a result and should instead bar the Government's planned introduction of the prior bad acts under Rule 404(b). As follows, the Court also should not permit the evidence in at trial for substantive reasons.

Prior Crimes--On 8 September 2016, Mr. Jean Pierre, after having earlier pled guilty, was convicted in a New York state court of the misdemeanor crimes of third-degree forgery, third-degree identity theft, and second degree falsification of business records. The convictions all stemmed from Defendant having sent out opinion letters regarding various companies, under the name and letterhead of his

Case 1:17-cr-00008-WJM Document 164 Filed 01/08/19 Page 4 of 9

niece (also an attorney) rather than under his own name. This prior crimes type of evidence is not properly admissible in this case under Rule 404(b).

Under this Rule, courts must:

> distinguish between evidence that is extrinsic or intrinsic to the charged crime. . . Rule 404(b) prohibits evidence of "other acts," "but this rule does not cover evidence that is considered intrinsic" to the charged crime. . . ***Evidence is intrinsic when it is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury."***

United States v. Durham, 902 F.3d 1180, 1224 (10th Cir. 2018), *cert. denied*, 2019 WL 113548 (U.S. Jan. 7, 2019) (emphasis added).

The prior crimes evidence that the Government seeks to introduce here is not evidence intrinsic to the type of fraud alleged in the instant case. The prior crimes evidence relates to misappropriation and fraudulent use of another individual's identity. The fraud involved in the case before this Court involves securities fraud. There are no allegations that Defendant used anyone else's identity to perpetrate the securities fraud.

The Government's conclusory assertion in its notice that the other crimes evidence "tends to prove Defendant's motive, opportunity, intent, preparation, plan, knowledge, and absence of mistake or accident" is unpersuasive. To take the first of this lengthy litany as an example, how does Defendant's involvement in misappropriating his niece's identity and letterhead establish a motive for him participating in a securities fraud scheme with Messrs. Dittman and Sears? The answer is that the prior crimes evidence does no such thing.

Case 1:17-cr-00008-WJM Document 164 Filed 01/08/19 USDC Colorado Page 5 of 9

Moreover, the Government's 404(b) notice is silent as to why motive, plan, opportunity, preparation and intent is at issue or, if it is at issue, how the introduction of evidence from the New York misdemeanor convictions case fits into a chain of logical inferences, absent propensity, that shows motive, a common plan or scheme, preparation, or intent in this particular case. As such, not only is the prior bad acts evidence lacking in relevance, but it is loaded with prejudice that would substantially outweigh any limited probative value that exists.

Defendant's 2014 Disbarment in Florida—On top of the matters discussed above, the Government additionally wishes to present evidence of Mr. Jean-Pierre's January 13, 2014 disbarment by the Florida State Supreme Court for the "filing of fraudulent attorney opinion letter with Pink OTC" (as alleged by the government in its Notice). First, the Government does not allege any non-propensity 404(b) purposes for the admission of evidence of this "prior bad act." Second, this was not a prior bad act by Mr. Jean-Pierre; it was an act by the Florida Supreme Court. Third, this action occurred in 2014 after all of Mr. Jean-Pierre's activities in the FusionPharm fraud case had been concluded. Fourth, this evidence is action from an unrelated incident.

Defendant's Subsequent Suspension by the SEC--The Government also wishes to present evidence of Mr. Jean-Pierre's "suspension from appearing or practicing before the Security Exchange Commission based on his [January 13, 2014] disbarment from the Florida State Bar" (as alleged by the government in its Notice). Just as with the 2014 disbarment evidence, (1) the Government does not allege any non-propensity 404(b) purposes for the admission of evidence of this "prior bad act;" (2) this was not a prior bad act by Mr. Jean-Pierre; it was an act by the SEC.; (3) this action occurred in 2014 after all

Case 1:17-cr-00008-WJM Document 164 Filed 01/08/19 Page 6 of 9

of Mr. Jean-Pierre's activities in the FusionPharm fraud case had been concluded; and (4) this evidence is action from an unrelated incident.

Probity/Prejudice--"When prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered: to suggest that the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again'" United States v. Clay, 667 F.3d 689, 698 (6th Cir. 2012). For this reason, *inter alia*, the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice. United States v. Cherry, 433 F.3d 698, 700 (10th Cir. 2005), *cert. denied*, 547 U.S. 1120 (2006). Here, the analysis tilts the Rule 403 balance in Mr. Jean-Pierre's direction.

The proffered reasons for introducing the prior bad acts evidence – the New York conviction, the Florida disbarment and the SEC suspension – are of questionable relevance. If, however, one assumes some probative value, it is certainly and substantially outweighed by the real danger present in presenting evidence that, after the fact, Mr. Jean-Pierre was disbarred from practicing law and suspended by the SEC. This information invites the jury to either (1) convict a "bad man" who deserves to be punished, not because he is guilty of the crime charged, but because of his prior or subsequent misdeeds or (2) infer that, because the accused committed the other bad acts, he probably committed the crimes charged. These inferences are impermissible and should be avoided by prohibiting the introduction of the 404(b) evidence.

Dated this 8th day of January, 2018.

Respectfully submitted,

Case 1:17-cr-00008-WJM Document 164 Filed 01/08/19 Page 7 of 9

s/Thomas E. Goodreid
Thomas E. Goodreid
Attorney at Law
1801 Broadway, Suite 1400
Denver, CO 80202
(303) 296-2048x.136
*t.goodreid@comcast.net*
Attorney for Defendant Guy M. Jean-Pierre

## CERTIFICATE OF SERVICE

I certify that on this 8th day of January, 2019, I electronically filed the foregoing **DEFENDANT'S OBJECTIONS TO GOVERNMENT'S INTENT TO INTRODUCE CERTAIN EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(b)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/Thomas E. Goodreid
Thomas E. Goodreid
Attorney at Law
1801 Broadway, Suite 1400
Denver, CO 80202
(303) 296-2048x.136
*t.goodreid@comcast.net*
Attorney for Defendant Guy M. Jean-Pierre

Case 1:17-cr-00008-WJM Document 164-1 Filed 01/08/19 Page 1 of 2
EXHIBIT A

**U.S. DEPARTMENT OF JUSTICE**

**Jason R. Dunn**
*United States Attorney*
*District of Colorado*

*Jeremy Sibert*
*Assistant United States Attorney*

*1801 California Street, Suite 1600*
*Denver, CO 80202*

*(303) 454-0100*
*FAX (303) 454-0401*

January 3, 2019

**Via USPS and Email**

Mr. Clifford J. Barnard
4450 Arapahoe Ave, #100
Boulder, CO 80303
Cliffbarnard@earthlink.net

Mr. Thomas Edward Goodreid
1801 Broadway, Suite 1400
Denver, CO 80202
t.goodreid@comcast.net

*Re: United States v. Guy Jean-Pierre*
Criminal Case No. 17-cr-00008-WJM

Dear Mr. Barnard and Mr. Goodreid:

I am writing to provide formal notice of the Government's intent to offer evidence of prior crimes, wrongs, or bad acts pursuant to Fed. R. Evid. 404(b) against Defendant Mr. Guy Jean-Pierre at trial in this case. The evidence consists of the circumstances surrounding Defendant's prior conviction for Forgery 3rd Degree, Falsifying Business Records 2nd Degree, and Identity Theft 3rd Degree, Case Number 03811-2013, out of the Supreme Court of the State of New York, New York County, his disbarment the State of Florida by the Supreme Court of Florida on January 13, 2014 for filing of fraudulent attorney opinion letter with Pink OTC Markets, and his suspension from appearing or practicing before the Security Exchange Commission based on his disbarment from the Florida State Bar.

In addition, the government is notifying the defense that it intends to introduce intrinsic evidence of prior relationship that Mr. Jean Pierre had with William Sears and evidence that Mr. Jean Pierre was the author of various current information letters and 144 attorney letters for various other companies, including letters signed by Leslie Dinwoodie and Tod DiTommaso. The government will offer evidence that Mr. Jean Pierre was banned from the Pink OTC Markets

Case 1:17-cr-00008-WJM Document 164-1 Filed 01/08/19 Page 2 of 2

and Pacific Stock Transfer Company (PSTC) from writing further current information letters and 144 attorney letters. It is the government's position that Mr. Jean-Pierre's prior relationship with Mr. Sears, his drafting of attorney letters, and him being banned is intrinsic evidence regarding the charges in the superseding indictment and not 404(b) evidence, however, out of an abundance of caution; we are providing it as 404(b).

The evidence concerning Jean-Pierre's Forgery 3rd Degree, Falsifying Business Records 2nd Degree, and Identity Theft 3rd Degree charges are admissible because it tends to prove Defendant's motive, opportunity, intent, preparation, plan, knowledge, and absence of mistake or accident in this case where he is accused of conspiring and committing security fraud, wire fraud, and mail fraud. The defendant's past convictions for fraud tend to show that the defendant lacked any mistake and that he had knowledge in this case. Further, the prior conviction also supports the fact that the defendant had a plan or a certain intent concerning committing similar fraud in this case.

Rule 404(b) only requires that the defendant be placed on notice concerning the general nature of the evidence that the government intends to use in its case. United States v. Zhitlovsky, 2003 WL 21939024 (D.Kan.). The 1991 Advisory Committee Notes rejected a "particularity" requirement similar to that in a charging document and favor a generalize notice provision that only requires the government to simply disclose the general nature of the extrinsic act evidence. Id. "The notice "'need not provide precise details regarding the date, time, and place of the prior acts,' but it must characterize the conduct to a sufficient degree to fairly apprise the defendant of its general nature." United States v. Jackson, 850 F.Supp. 1481, 1493 (D.Kan.1994)(quoting United States v. Long, 814 F.Supp. 72, 74 (D.Kan.1993). The government is not required to produce documents, specific evidence, reports, or documentary evidence when notifying the defendant under Rule 404(b). Courts have often rejected defendants' requests for greater particularity than a general notification. United States v. Erickson, 75 F.3d 470, 478 (9th Cir 1996), cert. denied.

Sincerely,

s/Jeremy Sibert
Jeremy Sibert
Assistant United States Attorney

Case 1:17-cr-00008-WJM Document 165 Filed 01/08/19 Page 1 of 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.1:17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

GUY JEAN-PIERRE,

Defendant.

---

**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTION TO 404(B)**

---

The United States of America ("the Government"), by and through United States Attorney Jason R. Dunn and Assistant United States Attorney Jeremy Sibert, respectfully responds to Defendant's 404(b) argument.

First, the defense was placed on notice in January 2018 when the government conducted a very detail reverse proffer with both defense counsel for Mr. Jean Pierre, which included Mr. Jean-Pierre's troubles with the Florida State Bar and his criminal matters with New York. The purpose of any reserve proffer is to disclose to the defense the evidence that will be used against the defendant in a criminal trial. Furthermore, not only were Mr. Jean-Pierre's counsel provided a reverse proffer, Mr. Jean-Pierre himself was provided the reverse proffer by the government that indicated the use of all his legal and professional issues.

Second, the government disagrees with the defense regarding the speedy trial clock and

Case 1:17-cr-00008-WJM Document 165 Filed 01/08/19 Page 2 of 6

based on the Court's rulings in this case, there is approximately 10 days left on the speedy trial clock after January 14, 2019.

Third, the government provided 404(b) notice in a timely fashion based on the Court's order regarding the trial in this case. Based on the Court's order, it was impossible for the government to provide a 21 day advance notice to the defense regarding the intent of the government's use 404(b) notification. Even based on all the event regarding the timing issues, the government was able to provide an eleven day notice of 404(b) to Mr. Jean-Pierre, after he was informed that the government would attempt to use this evidence over a year ago.

The notice provision in Rule 404(b) was added in 1991, and the Advisory Committee Notes that accompany the 1991 amendment state that notice "is intended to reduce surprise and promote early resolution on the issue of admissibility," and that "no specific time limits are stated in recognition that what constitutes a reasonable request or disclosure will depend largely on the circumstances of each case." *See* Fed.R.Evid. 404(b) advisory committee's note (1991); *United States v. Carrasco*, 381 F.3d 1237, 1241 (11th Cir.2004) (per curiam); *United States v. Vega*, 188 F.3d 1150, 1152–55 (9th Cir.1999). In *United States v. Blount*, 502 F.3d 674, 678 (7th Cir. 2007), the Court found that a week was proper time for notice under 404(b). In *United States v. Lujan*, 2011 WL 13210276, (United States District Court, District of New Mexico, 2011), the Court's order for a capital murder case was to disclose 404(b) evidence five days before trial. The Eleventh Circuit upheld a ruling from the District Court where the prosecution provided 404(b) notice a day before trial. *See United States v. Carswell*, 178 Fed.Appx. 1009, 1011-1012 (11th. Cir. 2006). Based on the defendant's past notice of the government's desire to

Case 1:17-cr-00008-WJM Document 165 Filed 01/08/19 Page 3 of 6

use this evidence and providing written notification 11 days before a trial meets the committee's intent to avoid any surprises.

The notice offered by the Government is sufficiently detailed to comply with the requirements of Fed. R. Evid. 404(b). The text of Rule 404(b) expressly states that the Government need only describe the "general nature" of the evidence it intends to introduce under the rule. Fed. R. Evid. 404(b); *see also United States v. Watt*, 911 F. Supp. 538, 556 (D.D.C. 1995); *United States v. Richardson*, 837 F. Supp. 570, 575-76 (S.D.N.Y. 1993). In fact, the notes of the Advisory Committee responsible for the rule indicate that the Committee specifically considered and rejected a "particularity" requirement when it amended Rule 404(b) to establish the pre-trial notice requirement. *See* Fed. R. Evid. 404, Advisory Committee Notes, 1991 amendment. Instead, "the Committee opted for a generalized notice provision that requires the prosecution to apprise the defense of the general nature of the evidence of extrinsic acts." *Id.* Courts have routinely denied requests by defendants for greater particularity in Rule 404(b) notices in connection with notices that were far less detailed than the notice in this case. *See, e.g.*, *United States v. Kern*, 12 F.3d 122, 124 (9th Cir. 1993) (holding that the government's statement that it "might use evidence from local robberies" was sufficient to describe the general nature of the acts under Rule 404(b)); *United States v. Schoeneman*, 893 F. Supp. 820, 823 (N.D. Ill. 1995) (holding that the government need not "turn over specific evidentiary detail" in a 404(b) notice); *United States v. Rusin*, 889 F. Supp. 1035, 1036 (N.D. Ill. 1995) (rejecting defendant's argument that a Rule 404(b) notice requires the government to disclose "dates, places, and persons involved in specific acts; documents that pertain to the acts, a statement of the issues to which

Case 1:17-cr-00008-WJM Document 165 Filed 01/08/19 Page 4 of 6

the government believes the evidence may be relevant . . ."); *see also United States v. Russell*, 109 F.3d 1503, 1507 (10th Cir. 1997) (holding notification that government might offer "prior and subsequent conduct involving the distribution of controlled substances" to be adequate under the rule).

The Government is aware of no case law requiring its notice to pigeonhole the Rule 404(b) evidence the Government may seek to offer with the particularity Defendant requests. While it is true that before specific evidence may be admitted under Rule 404(b), it must be found admissible under one or more of the Rule 404(b) categories, *see, e.g.*, *United States v. Higgins*, 282 F.3d 1261, 1274 (10th Cir. 2002); *United States v. Record*, 873 F.2d 1363, 1374 (10th Cir. 1989), such a finding is not required at this juncture. This is particularly so when, as in this case, there is no indication of the particular defenses a defendant may pursue. At this juncture, a requirement forcing the Government to articulate the precise theory under which Rule 404(b) evidence may be admissible, and the precise aspects of prior incidents that would support such a theory, would require the attorneys for the Government to know with precision exactly what issues Defendant will contest and what approaches he will pursue at trial.

It is for just this reason that courts have regularly recognized the wisdom of deferring a ruling on the admissibility of evidence under Rule 404(b) until trial. *See, e.g.*, *United States v. Eisenberg*, 773 F. Supp. 662, 685 (D.N.J. 1991) ("Questions as to the admissibility of prior bad acts under Rule 404(b) are properly asserted during trial, not at the pretrial stage."); *United States v. Vastola*, 670 F. Supp. 1244, 1268 (D.N.J. 1987) ("It would be unduly speculative to try

Case 1:17-cr-00008-WJM Document 165 Filed 01/08/19 USDC Colorado Page 5 of 6

to resolve [Rule 404(b) and other issues that require the balancing of the prejudicial effect of the evidence against the probative value] without developing the factual context of the case.").

The rule to exclude evidence is "extraordinary remedy ... which should be used sparingly since it permits the trial court to **exclude** concededly probative **evidence**." *United States v. Wright*, 392 F.3d 1269, 1276 (11th Cir.2004), *cert. denied*, 544 U.S. 968, 125 S.Ct. 1751, 161 L.Ed.2d 615 (2005). *1013 Rule **404**(**b**) "is a rule of inclusion." *Baker*, 432 F.3d at 1204–05. Both the "rules and practice favor the admission of **evidence** rather than its exclusion if it has any probative value at all." *Young v. Illinois Cent. Gulf R.R. Co.*, 618 F.2d 332, 337 (5th Cir.1980).

Dated this 8th day of January, 2019.

JASON R. DUNN
United States Attorney

by: *s/ Jeremy Sibert*
JEREMY SIBERT
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0406
Email: Jeremy.Sibert@usdoj.gov

Case 1:17-cr-00008-WJM Document 165 Filed 01/08/19 USDC Colorado Page 6 of 6

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of January 2019, I electronically filed the foregoing **UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTION TO 404(B)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email address:

**Cliff Barnard**

by: *s/ Jeremy Sibert*
JEREMY SIBERT
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0406
Email: Jeremy.Sibert@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. GUY M. JEAN-PIERRE,
a/k/a Marcello Dominguez de Guerra,

Defendant.

---

GOVERNMENT'S AMENDED STIPULATED JURY INSTRUCTIONS

---

The United States of America, by and through Assistant United States Attorney Jeremy Sibert, after consultation with counsel for the defendant, submits its amended stipulated set of jury instructions with authority.

Jason Dunn
United States Attorney

By: *s/ Jeremy Sibert*
Jeremy Sibert
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0216
Facsimile: 303-454-0402
E-mail: jeremy.sibert@usdoj.gov
Attorney for the United States

## STATEMENT OF THE CASE

The defendant Guy M. Jean-Pierre is charged in a 29-count second superseding indictment with violations of federal criminal laws: one count of conspiracy to commit mail, wire and securities fraud, 20 counts of wire fraud, 4 counts of mail fraud, 3 counts of securities fraud and one count of money laundering. The indictment also contains a forfeiture allegation regarding the proceeds of the alleged frauds.

The conspiracy and fraud counts allege a scheme to defraud FusionPharm investors, a microcap stock traded on the Over-the-Counter market. The scheme included the defendant preparing and transmitting documents and assisting others in the preparation of documents that: (a) allowed FusionPharm control person(s)/co-conspirator(s) to sell stock in violation of securities laws in order to fund FusionPharm; (b) falsely portrayed deposits of proceeds from the sale of FusionPharm common stock as convertible debt obligations owed to affiliate companies of FusionPharm, Bayside and Meadpoint; (c) falsely portrayed Microcap, Bayside, and Meadpoint as non-affiliates of FusionPharm; (d) concealed the role of other co-conspirators in the FusionPharm business; (e) falsely represented that the quarterly and annual disclosure documents and financial statements constituted adequate current information about FusionPharm; and (f) failed to disclose his role in drafting documents for another attorney to sign and represent as the other attorney's own work product. The conspiracy count alleges an agreement and overt acts involving the defendant and others in the posting of false documents on the Over-the-Counter website and the selling of FusionPharm stock on the penny stock market. These offenses allegedly occurred between 2011 and 2014.

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 3 of 61

Other wire fraud counts allege a similar scheme to defraud involving the defendant acting in a similar role in a scheme that involved law enforcement personnel and their agents acting in an undercover role which occurred in February through April 2016. The money laundering count alleges the defendant knowingly conducted or attempted to conduct a financial transaction affecting interstate and foreign commerce involving property that was proceeds of securities fraud or wire fraud which was intended to conceal and disguise the location, source, ownership and control, of the financial transaction.

The defendant denies these charges and has plead not guilty to them.

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 4 of 61

PRELIMINARY INSTRUCTIONS BEFORE TRIAL

Members of the Jury:

At the end of the trial, I will give you detailed guidance on the law and on how you will go about reaching your decision. But now I simply want to generally explain how the trial will proceed.

This criminal case has been brought by the United States government. I will sometimes refer to the government as the prosecution. The government is represented by two assistant United States Attorneys, Jeremy Sibert and Robert Brown. The defendant Guy M. Jean-Pierre is represented by his lawyers Clifford Barnard and Thomas Goodreid .

The Indictment is simply the description of the charges made by the government against the defendant; it is not evidence of guilt or anything else. The defendant has pleaded not guilty and is presumed innocent. He may not be found guilty by you unless all twelve of you unanimously find that the government has proved his guilt beyond a reasonable doubt.

The first step in the trial will be the opening statements. The government in its opening statement will tell you about the evidence which it intends to put before you. Just as the indictment is not evidence, neither is the opening statement. Its purpose is only to help you understand what the evidence will be. It is a road map to show you what is ahead.

After the government's opening statement, the defendant’s attorney may make opening statements or may reserve his statement until later.

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 5 of 61

Evidence will be presented from which you will have to determine the facts. The evidence will consist of the testimony of the witnesses, documents and other things received into the record as exhibits.

The government will offer its evidence. After the government's evidence, the defendant's lawyer may make an opening statement and may present evidence, but he is not required to do so. I remind you that the defendant is presumed innocent and it is the government that must prove the defendant's guilt beyond a reasonable doubt. If the defendant submits evidence, the government may introduce rebuttal evidence.

At times during the trial, a lawyer may make an objection to a question asked by another lawyer, or to an answer by a witness. This simply means that the lawyer is requesting that I make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. If I sustain an objection to a question, the witness may not answer it. Do not attempt to guess what answer might have been given if I had allowed the answer. If I overrule the objection, treat the answer as any other. If I tell you not to consider a particular statement, you may not refer to that statement in your later deliberations. Similarly, if I tell you to consider a particular piece of evidence for a specific purpose, you may consider it only for that purpose.

During the course of the trial, I may have to interrupt the proceedings to confer with the attorneys about the rules of law that should apply. Sometimes we will talk briefly, at the bench. But some of these conferences may take more time, so I will excuse you from the courtroom. I will try to avoid such interruptions whenever possible, but please be patient even if the trial seems to be moving slowly because conferences often actually save time in the end.

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 6 of 61

You are to consider all the evidence received in this trial. It will be up to you to decide what evidence to believe and how much of any witness's testimony to accept or reject.

After you have heard all the evidence on both sides, the government and the defense will each be given time for their final arguments. The final part of the trial occurs when I instruct you on the rules of law which you are to use in reaching your verdict.

During the course of the trial, I may ask a question of a witness. If I do, that does not indicate I have any opinion about the facts in the case but am only trying to bring out facts that you may consider.

If you would like to take notes during the trial, you may. On the other hand, you are not required to take notes.

If you do decide to take notes, be careful not to get so involved in note taking that you become distracted, and remember that your notes will not necessarily reflect exactly what was said, so your notes should be used only as memory aids. Therefore, you should not give your notes precedence over your independent recollection of the evidence. You should also not be unduly influenced by the notes of other jurors. If you do take notes, leave them in the jury room at night and do not discuss the contents of your notes until you begin deliberations.

Ordinarily, the attorneys will develop all the relevant evidence that will be necessary for you to reach your verdict. However, in rare situations, a juror may believe a question is critical to reaching a decision on a necessary element of the case. In that exceptional circumstance, you may write out a question and provide it to the courtroom

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 7 of 81

deputy while the witness is on the stand. I will then consider that question with the lawyers. If it is determined to be a proper and necessary question, I will ask it. If I do not ask it, you should recognize that I have determined it is not a legally appropriate question and not worry about why it was not asked or what the answer would have been.

During the course of the trial, you should not talk with any witness, or with the defendant, or with any of the lawyers at all. In addition, during the course of the trial you should not talk about the trial with anyone else. Do not discuss the case with anyone or provide any information about the trial to anyone outside the courtroom until the verdict is received. Do not use the internet or any other form of electronic communication to provide any information. Simply put, do not communicate with anyone about the trial until your verdict is received. Also, you should not discuss this case among yourselves until I have instructed you on the law and you have gone to the jury room to make your decision at the end of the trial. It is important that you wait until all the evidence is received and you have heard my instructions on the controlling rules of law before you deliberate among yourselves. Let me add that during the course of the trial you will receive all the evidence you properly may consider to decide the case. Because of this, you should not attempt to gather any information or do any research on your own. Do not attempt to visit any places mentioned in the case, either actually or on the internet, and do not in any other way try to learn about the case outside the courtroom.

The court reporter is making stenographic notes of everything that is said. This is basically to assist any appeals. However, a typewritten copy of the testimony will not

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 8 of 81

be available for your use during deliberations. On the other hand, any exhibits will be available to you during your deliberations.

Now that the trial has begun, you must not hear or read about it in the media. The reason for this is that your decision in this case must be made solely on the evidence presented at the trial.

With that introduction, Mr. Sibert, you may present the opening statement for the government.

Tenth Circuit Pattern Crim. Jury Instr. §§ 1.01, 1.02 (2011).

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 9 of 61

INSTRUCTION NO. 1

INTRODUCTION TO FINAL INSTRUCTIONS

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges; you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then, I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

Tenth Circuit Pattern Crim. Jury Instr. § 1.03 (2011).

INSTRUCTION NO. 2

DUTY TO FOLLOW INSTRUCTIONS

You, as jurors, are the judges of the facts.  But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you.  You must not substitute or follow your own notion or opinion as to what the law is or ought to be.  It is your duty to apply the law as I explain it to you, regardless of the consequences.  However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be.  That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy.  That was the promise you made and the oath you took.

Tenth Circuit Pattern Crim. Jury Instr. § 1.04 (2011).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 11 of 61

INSTRUCTION NO. 3

PRESUMPTION OF INNOCENCE-BURDEN OF PROOF-REASONABLE DOUBT

The government has the burden of proving the defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Tenth Circuit Pattern Crim. Jury Instr. § 1.05 (2011).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 12 of 61

INSTRUCTION NO. 4

EVIDENCE-DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Tenth Circuit Pattern Crim. Jury Instr. § 1.06 (2011).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 13 of 61

INSTRUCTION NO. 5

LAWYERS' OBJECTIONS

The lawyers for the government and the lawyer for the defendant objected to some of things that were said or done during the trial. Do not hold that against either side. The lawyers have a duty to object whenever they think that something is not permitted by the rules of evidence. Those rules are designed to make sure that both sides receive a fair trial.

Do not interpret my rulings on their objections as any indication of how I think the case should be decided. My rulings were based on the rules of evidence, not on how I feel about the case. Remember, your verdicts must be based only on the evidence that you saw and heard here in court.

Pattern Crim. Jury Instr. 6th Cir. §1.09 (2013) (modified to change "decision" to "verdicts).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 14 of 61

INSTRUCTION NO. 6

EVIDENCE-DIRECT AND CIRCUMSTANTIAL EVIDENCE-INFERENCES

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

Tenth Circuit Pattern Crim. Jury Instr. § 1.07 (2011) (modified).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 15 of 61

INSTRUCTION NO. 7

STIPULATIONS

You have heard me say that the parties have stipulated to certain facts. This agreement makes the presentation of any evidence to prove this fact unnecessary. The agreement means that you may accept this fact as true without further proof.

In this case, the parties have stipulated to the following facts:

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 16 of 61

INSTRUCTION NO. 8

SUMMARIES AND CHARTS

Not received in Evidence

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts. u have heard me say that the parties have stipulated to certain facts.

Tenth Circuit Pattern Jury Instruction No. 1.41 (2011 ed.)(updated 2018)

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 17 of 61

INSTRUCTION NO. 9

CREDIBILITY OF WITNESSES

I remind you that it is your job to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses [including the defendant] who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 18 of 61

[The testimony of the defendant should be weighed and his credibility evaluated in the same way as that of any other witness.]

**OR**

[The defendant did not testify and I remind you that you cannot consider his decision not to testify as evidence of guilt. I want you to clearly understand, please, that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant does not take the witness stand and testify or call any witnesses.]

In reaching a conclusion on particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

Tenth Circuit Pattern Crim. Jury Instr. § 1.08 (2011) (modified).

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 19 of 61

INSTRUCTION NO. 10

ON OR ABOUT

You will note that the indictment charges that the crimes were committed on or about certain dates. The government must prove beyond a reasonable doubt that the defendant committed the crimes reasonably near those dates.

Tenth Circuit Pattern Crim. Jury Instr. No § 1.18 (2011) (modified).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 20 of 61

INSTRUCTION NO. 11

CONJUNCTIVE - DISJUNCTIVE

Some counts of the indictment may accuse a defendant of violating the same statute in more than one way. In other words, the indictment may allege that the statute in question was violated by various acts which are in the indictment joined by the conjunctive "and," while the statute and the elements of the offense are stated in the disjunctive, using the word "or." In these instances, it is sufficient for a finding of guilt if the evidence established beyond a reasonable doubt the violation of the statute by any one of the acts charged. In order for you to return a guilty verdict, however, all twelve of you must agree that the same act has been proven.

Fed. R. Crim. P. 7(c), advisory committee notes, n. 2 (1944). *United States v. Iverson*, 818 F.3d 1015, 1026 (10th Cir.), *cert. denied*, 137 S.Ct. 217 (2016). *See also United States v. Gunther*, 546 F.2d 861, 868-69 (10th Cir. 1976) ("It is hornbook law that crime denounced in a statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive.") (internal citations omitted).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 21 of 61

INSTRUCTION NO. 12

SEPARATE CRIMES

A separate crime is charged in each count of the Second Superseding Indictment. You must separately consider the evidence on each count and return a separate verdict.

Your verdict as to any one count, whether guilty or not guilty, should not influence your verdict as to any other count.

Tenth Circuit Pattern Crim. Jury Instr. § 1.22 (2011)

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 22 of 61

INSTRUCTION NO. 13

CAUTION—CONSIDER ONLY CRIMES CHARGED

You are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crimes charged. The defendant is not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for any of the crimes charged. The fact that another person also may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crimes charged.

Tenth Circuit Pattern Crim. Jury Instr. § 1.19 (2011) (modified).

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 23 of 61

INSTRUCTION NO. 14

EVIDENCE ADMITTED FOR LIMITED PURPOSE

In certain instances, evidence may be admitted only for a particular purpose and not generally against all parties or for all purposes. For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves. You may not, however, use this evidence for any other purpose or against any party not specifically mentioned.

*United States v. Executive Recycling, Inc.,* No. 11-cr-00376-WJM, 2014 WL 10155718 (D.Colo., Jan. 13, 2014) (Final Jury Instructions) (modified to exclude provision referencing multiple parties.)

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 24 of 61

INSTRUCTION NO. 15

EXPERT WITNESS

[During the trial you heard the testimony of ______ who expressed opinions concerning ______.] In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

Tenth Circuit Pattern Crim. Jury Instr. § 1.17 (2011) (modified).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 25 of 61

INSTRUCTION NO. 16

TRANSCRIPT OF RECORDED CONVERSATION

During this trial, you have heard sound recordings of certain conversations. These conversations were legally recorded; they are a proper form of evidence and may be considered by you as you would any other evidence. You were also given transcripts of those recorded conversations.

Keep in mind that the transcripts are not evidence. They were given to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. If you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

Tenth Circuit Pattern Crim. Jury Instr. § 1.40 (2011) (removed title of pattern instruction "Cautionary Instruction During Trial", however according to the notes in this instruction this instruction should be given when the sound recording is played and again in the final charge).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 26 of 61

INSTRUCTION NO. 17

COCONSPIRATOR—INFORMANT—IMMUNITY

A coconspirator is someone who joined with another person in committing a crime, voluntarily and with common intent. The testimony of a co-conspirator may be received in evidence and considered by you, even though it is not supported by other evidence. You may decide how much weight it should have.

You are to keep in mind, however, that co-conspirator testimony should be received with caution and considered with great care. You should not convict a defendant based on the unsupported testimony of an alleged co-conspirator, unless you believe the unsupported testimony beyond a reasonable doubt.

An informant is someone who provides evidence against someone else for a personal reason or advantage. The testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence. You must examine and weigh an informant's testimony with greater care than the testimony or evidence acquired as a result of actions of an ordinary witness. You must determine whether the informant's testimony or has been affected by self-interest, by an agreement he has with the government, by his own interest in the outcome of the case, or by prejudice against a defendant.

You should not convict a defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony or evidence beyond a reasonable doubt.

Tenth Circuit Pattern Crim. Jury Instr. § 1.40 (2011, 2018) (modifying language in the first two paragraphs from accomplice to coconspirator).

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 27 of 61

INSTRUCTION 18

ACCOMPLICE—CO-DEFENDANT—PLEA AGREEMENT

The government has called as a witness an alleged accomplice, who was identified as a co-conspirator in the conspiracy alleged in the indictment. The government has entered into a plea agreement with the witness(es), providing [e.g. for the dismissal of some charges and a recommendation of a lesser sentence than he would have otherwise likely receive. Plea bargaining is lawful and proper, and the rules of the court expressly provide for it.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of an alleged accomplice may, by itself, support a guilty verdict. You should never convict a defendant upon the unsupported testimony of an alleged accomplice, unless you believe that testimony beyond a reasonable doubt. The act that an accomplice has entered a guilty plea to the offense charged is not evidence of the guilt of any other person.

Tenth Circuit Pattern Jury Instruction No. 1.15 (2011 ed.) (updated 2018)

INSTRUCTION NO. 19

SIMILAR ACTS

You have heard evidence of other crimes, acts, and wrongs engaged in by the defendant. You may consider that evidence only as it bears on the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident, and for no other purpose. Of course, the fact that the defendant may have previously committed an act similar to the one charged in this case does not mean that the defendant necessarily committed the act charged in this case.

Tenth Circuit Pattern Crim. Jury Instr. § 1.30 (2011) (modified).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 29 of 61

INSTRUCTION NO. 20

IMPEACHMENT BY PRIOR CONVICTION

(Witness other than Defendant)

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a [felony, that is, of a crime punishable by imprisonment for a term of years] or [a crime of dishonesty or false statement]. A prior conviction does not mean that a witness I s not qualified to testify, but is merely one circumstance that you may consider in determining the credibility of the witness. You may decide how much weight to give any [prior felony conviction][crime of dishonesty] that was used to impeach a witness.

Tenth Circuit Pattern Jury Instruciton No. 1.12 (2011 ed)(updated 2018)

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 30 of 31

INSTRUCTION NO. 21

IMPEACHMENT BY PRIOR CONVICTION

(DEFENDANT'S TESTIMONY)

You have heard evidence that the defendant and witnesses have been convicted of a felony or misdemeanor, that is, a crime punishable by imprisonment for a term of years. This conviction has been brought to your attention only because you may wish to consider it when you decide, as with any witness, how much of his testimony you will believe in this trial. The fact that the defendant has been convicted of another crime does not mean that he committed the crime charged in this case, and you must not use his prior conviction as proof of the crime charged in this case. You may find him guilty of the crime charged here only if the government has proved beyond a reasonable doubt that he committed it.

Tenth Circuit Pattern Crim. Jury Instr. § 1.11 (2011 modified to include reference to misdemeanor involving a dishonest act or false statement.)

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 31 of 61

INSTRUCTION NO. 22

TESTIFYING UNDER A PSEUDONYM

The Court allowed two Federal Bureau of Investigation Undercover Agents (FBI UCA-1 and FBI UCA-2) to testify under pseudonyms (a fictitious name) at trial. The jury is instructed not to consider the use of pseudonyms by FBI UCA-1 and FBI UCA-2 in its deliberations.

*UNITED STATES v. KURBANOV,* NO. 1:13-CR-00120 EJL, 2015 WL 5001226 (D. Idaho, Aug. 12, 2015) (Jury Instructions).

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 32 of 61

INSTRUCTION NO. 23

KNOWINGLY

When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact. Knowledge can be inferred if the defendant was aware of a high probability of the existence of the fact in question, unless the defendant did not actually believe the fact in question.

Tenth Circuit Pattern Crim. Jury Instr. § 1.37 (2011)

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 33 of 61

INSTRUCTION NO. 24

PROOF OF KNOWLEDGE OR INTENT

The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done or omitted by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

No matter what you infer, you must remember that the burden is always on the government to prove the elements of the offense charged beyond a reasonable doubt.

1A Kevin F. O'Malley *et al*., *Fed. Jury Prac. & Instr.* § 17:07 (6th ed.) (database updated August 2017) (modified). *United States v. John*, 849 F.3d 912,920 (10th Cir. 2017).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 34 of 81

INSTRUCTION NO. 25

COUNT 1 CONSPIRACY ELEMENTS

The defendant is charged in Count 1 with a violation of Title 18, United States Code, Section 371. This statute makes it a crime to conspire to commit an offense against the United States or to defraud the United States or an agency of the United States, in this case the Securities and Exchange Commission.

As alleged in the indictment, the defendant is charged with conspiring with William J. Sears and Scott M. Dittman to conspire to commit wire fraud, mail fraud, or securities fraud as those offenses are described herein at Instructions ___ - ___. The defendant is also alleged to have conspired to violate Section 5 of the Securities Act which is described herein at instructions ___-___. The defendant is also alleged to have conspired to defraud the United States Securities and Exchange Commission by impeding, impairing, defeating or obstructing its lawful functions.

To find the defendant guilty of Count 1, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant agreed with at least one other person to violate any one of the laws described above or to defraud the SEC, as described above;

*Second*: at least one of the conspirators engaged in at least one overt act furthering any of the conspiracy's objectives;

*Third*: the defendant knew the essential objective of the conspiracy;

*Fourth*: the defendant knowingly and voluntarily participated;

*Fifth*: there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 35 of 81

benefit within the scope of the conspiracy charged.

**Conspiracy—Agreement**

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. It is a kind of ‘‘partnership in criminal purposes’’ in which each member becomes the agent or partner of every other member. Once a person becomes a member of a conspiracy, he is held legally responsible for the acts of the other members done in furtherance of the conspiracy, even though he was not present or aware that the acts were being committed. An agreement to violate the law can be inferred by the conduct of the parties, as well as the facts and circumstances of the case. Likewise, the jury may infer that a defendant is a knowing and voluntary participant in a conspiracy when he acts in furtherance of the conspiracy's objectives. But mere similarity of conduct among various persons, and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy.

The evidence in the case need not show that the members entered into any express or formal agreement. Nor is it necessary that the evidence show that the members stated between themselves what their object or purpose was to be, or the details thereof, or the means by which the object or purpose was to be accomplished. In order to establish proof that a conspiracy existed, the evidence must show beyond a reasonable doubt that the members in some way or manner, or through some contrivance, expressly or impliedly came to a mutual understanding to try to accomplish a common and unlawful plan.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 36 of 81

**Overt Acts**

The government must prove that at least one overt act was committed by at least one coconspirator. An overt act is an act done in furtherance of the conspiracy. An overt act does not itself have to be unlawful. A lawful act may be an overt act of a conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not required to prove that each of the defendants personally did one of the overt acts. The government need only prove that at least one of the coconspirators, including uncharged coconspirators, committed at least one overt act in furtherance of the conspiracy.

**Membership in Conspiracy**

If you conclude from the evidence beyond a reasonable doubt that a conspiracy as charged did exist, then you must next determine whether the defendant was a member of that conspiracy; that is, whether the defendant participated in the conspiracy with knowledge of its unlawful purposes and in furtherance of its unlawful objectives. In determining whether the defendant was a member of the conspiracy, the jury must consider only his acts and statements. The defendant cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed, and that he was one of its members. And mere association, standing alone, is inadequate. However, the jury may infer the presence of a conspiracy from the defendants' conduct and other circumstantial evidence indicating coordination and concert of action.

**Interdependence**

To be a member of the conspiracy, the defendant need not know all of the other members or all of the details of the conspiracy, nor the means by which the objects

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 37 of 61

were to be accomplished. Each member of the conspiracy may perform separate and distinct acts. It is necessary, however, that for the defendant to be a member of the conspiracy, the government must prove beyond a reasonable doubt that he was aware of the common purpose and was a willing participant with the intent to advance the purposes of the conspiracy. In other words, while a defendant need not participate in all the acts or statements of the other members of the conspiracy to be bound by them, the acts or statements must be interdependent so that each member of the conspiracy depends upon the acts and statements of the other conspirators to make the conspiracy succeed.

**Extent of Participation**

The extent of a defendant's participation in the conspiracy is not relevant to whether he is guilty or not guilty. A defendant may be convicted as a conspirator even though he plays a minor part in the conspiracy.

**Unanimity of Theory**

Your verdict must be unanimous. Count 1 accuses the defendant and/or his coconspirators of committing several overt acts in furtherance of the conspiracy. The government does not have to prove all of these different acts for you to return a guilty verdict on Count 1. But in order to return a guilty verdict, all twelve of you must agree upon which of the listed acts, if any, the defendant and/or his coconspirators committed *and* that at least the defendant and/or his coconspirators committed at least one of the acts listed.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 38 of 61

Tenth Cir. Pattern Criminal Jury Inst. § 2.19 (2011)(modified to fit indictment)

<u>“Interdependence” defined</u> - *United States v. Wardell*, 591 F.2d 1279, 1291 (10th Cir. 2009) (“Interdependence is present if ‘the activities of a defendant charged with conspiracy facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole.’”) (quoting *United States v. Horn*, 946 F,2d 738, 740-741 (10th Cir. 1991));

<u>Permitted inferences</u> - *United States v. Rogers*, 556 F.3d 1130, 1138-1139 (10th Cir. 2009) (“[a]n agreement to violate the law can be inferred by the conduct of the parties, as well as the facts and circumstances of the case. Likewise, the jury may presume a defendant is a knowing participant when he acts in furtherance of the conspiracy’s objectives.”) (citing *United States v. McCullough,* 457 F.3d 1150, 1160 (10th Cir. 2006); and *United States v. Green,* 175 F.3d 822, 832 (10th Cir.1999)); *United States v. Wardell*, 591 F.2d 1279, 1287 (10th Cir. 2009) (“conspiracy convictions may be based on circumstantial evidence, and the jury may infer conspiracy from the defendants' conduct and other circumstantial evidence indicating coordination and concert of action.”) (quoting *United States v. Dazey,* 403 F.3d 1147, 1159 (10th Cir. 2005)).<u>Overt acts</u> - *United States v. Dago,* 441 F.3d 1238, 1242 n. 1 (10th Cir.2006) (finding that the overt act requirement of 18 U.S.C. § 371 is satisfied by “any act to effect the object of the conspiracy”); *United States v. Thompson*, 518 F.3d 822, 854 (10th Cir. 2008) (“the government only had to prove that one of the members of the conspiracy committed an overt act in furtherance of the conspiracy”); and *United States v. Pursley*, 474 F.3d 757, 768 (10th Cir. 2007).

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 39 of 61

INSTRUCTION NO. 26

COUNTS 2-16 AND 24-28 WIRE FRAUD ELEMENTS

The defendant is charged in counts 2-16 and 24-28 with wire fraud, in violation of 18 U.S.C. Section 1343, or aiding and abetting this offense, in violation of 18 U.S.C. section 2(a).

This law makes it a crime to use interstate wire communication facilities in carrying out a scheme to defraud. A scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises is a specific type of scheme to defraud.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: the defendant devised or intended to devise a scheme to defraud, as alleged in the indictment;

Second: the defendant acted with specific intent to defraud;

Third: the defendant used interstate wire communications facilities, or caused another person to use interstate wire communications facilitates for the purpose of carrying out the scheme;

Fourth: the scheme employed false or fraudulent pretenses, representations, or promises that were material.

A "scheme to defraud" is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension. A "scheme to defraud" includes a scheme to deprive another of money, property or the intangible right of honest services.

An "intent to defraud" means an intent to deceive or cheat someone.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 40 of 81

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

What must be proved beyond a reasonable doubt is that the defendant devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the indictment, and that the use of a wire was closely related to the scheme, in that the defendant sent a wire or caused a wired to e transmitted in an attempt to execute or carry out the scheme. To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

Aiding and abetting wire fraud

The defendant is alternatively charged with aiding and abetting the commission of wire fraud. Title 18, United States Code, Section 2, provides: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: someone else committed the charged crime (wire fraud); and

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 41 of 61

Second: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Tenth Circuit Pattern Crim. Jury Instr. § 2.57 (2011) (modified);
Tenth Circuit Pattern Crim. Jury Instr. § 2.06 (2011) (modified

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 42 of 81

INSTRUCTION NO.27

USE OF INTERSTATE WIRE COMMUNICATIONS FACILITY DEFINED

The use of interstate wire or radio (wireless) communications are considered a use of an interstate wire communications facility.

Interstate communications, are communications that cross state lines.

A "Wire communication" includes telephone calls, electronic signals sent by wire (such as a fax or a financial wire), the use of the internet to send a message (such as an e-mail), and communicating with a website via the internet.

The phrase "transmits by means of wire, radio, or television communication in interstate commerce" means to send from one state to another by means of telephone or telegraph lines or by means of radio or television.

The phrase "transmits by means of wire, radio, or television communication in interstate commerce" includes a telephone conversation by a person in one state with a person in another state.

The use of a wire, radio, or television communication facility in interstate commerce is an essential element of the offense of wire fraud as charged in Counts 2-16 of the indictment. The government need not prove that the defendant actually used a wire communication in interstate commerce or that the defendant even intended that anything be transmitted in interstate commerce by means of a wire, radio, or television communication to further, or to advance, or to carry out the scheme or plan to defraud.

The government must prove beyond a reasonable doubt, however, that a transmission by a wire, radio, or television communication facility in interstate commerce was, in fact, used in some manner to further, or to advance, or to carry out

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 43 of 81

the scheme to defraud. The government must also prove that the use of the wire, radio, or television communication in interstate commerce would follow in the ordinary course of business or events or that the use of the wire, radio, or television communication facility in interstate commerce by someone was reasonably foreseeable.

It is not necessary for the government to prove that the information transmitted by means of wire, radio, or television communication in interstate commerce itself was false or fraudulent or contained any false or fraudulent pretense, representation, or promise, or contained any request for money or thing of value.

The government must prove beyond a reasonable doubt, however, that the use of the wire, radio, or television communication in interstate commerce furthered, or advanced, or carried out, in some way, the scheme or plan to defraud.

Paragraph 1: *United States v. Kieffer*, 681 F.3d 1143, 1152 (10th Cir. 2012) (stating that, “By its plain terms, §1343 required the Government to prove, among other things, that Defendant (1) used interstate wire or radio (wireless) communications (2) for the purpose of executing a scheme to defraud.”)

Paragraphs 2 and 3: *UNITED STATES v. EXECUTIVE RECYCLING, INC.*, et al., 2014 WL 10155718 (D.Colo., Jan 13, 2014) (Final Jury Instructions).

Paragraphs 4-9: 2 Kevin F. O’Malley *et al*., *Fed. Jury Prac. & Instr.* § 47:08 (6th ed.) (August 2017) (modified).

INSTRUCTION NO. 28

COUNTS 17-20 MAIL FRAUD ELEMENTS

The defendant is charged in counts 17-20 with mail fraud in violation of 18 U.S.C. Section 1341, or aiding and abetting this offense, in violation of 18 U.S.C. section 2(a).

This law makes it a crime to use the mails in carrying out a scheme to defraud.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant devised or intended to devise a scheme to defraud, by impeding, impairing, defeating and obstructing the lawful government functions of the SEC and committing the wire fraud, mail fraud, securities fraud, and prohibitions relating to interstate commerce and the mails, offenses charged in Counts 2 through 28 of the indictment;

*Second*: the defendant acted with specific intent to defraud;

*Third*: the defendant mailed something, or caused another person to mail something through a commercial interstate carrier for the purpose of carrying out the scheme;

*Fourth*: the scheme employed false or pretenses, representations, or promises that were material.

A "scheme to defraud" is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension. A "scheme to defraud" includes a scheme to deprive another of money, property or the intangible right of honest services.

An "intent to defraud" means an intent to deceive or cheat someone.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 45 of 61

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

What must be proved beyond a reasonable doubt is that the defendant devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the indictment, and that the use of the mails was closely related to the scheme, in that the defendant either mailed something or caused it to be mailed in an attempt to execute or carry out the scheme. To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

Aiding and abetting mail fraud

The defendant is alternatively charged with aiding and abetting the commission of mail fraud. Title 18, United States Code, Section 2, provides: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: someone else committed the charged crime (mail fraud); and

Second: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Tenth Circuit Pattern Crim. Jury Instr. § 2.56 (2018) (modified)
Tenth Circuit Pattern Crim. Jury Instr. § 2.06 (2011) (modified

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 47 of 61

INSTRUCTION NO. 29

COUNTS 21-23 SECURITIES FRAUD ELEMENTS

*The government's proposed instruction relating to the elements for the securities fraud counts, counts 21-23, is disputed.*

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 48 of 81

INSTRUCTION NO. 30

"IN CONNECTION WITH THE PURCHASE OR SALE OF ANY SECURITY"-DEFINED"

Counts 21-23 of the indictment allege certain types of fraudulent conduct "in connection with the purchase or sale of any security." The government must prove beyond a reasonable doubt, therefore, that there were purchases or sales of securities and that the "fraud or deceit" described in the indictment had some relationship to or was connected with these sales or purchases.

The government need not show, however, that the defendant, or anyone associated with him bought or sold the securities in question.

It is sufficient to establish that there were purchases or sales or both and that the conduct was of the type that would cause reasonable investors to rely and that some did sorely.

2B Kevin F. O'Malley *et al*., *Fed. Jury Prac. & Instr.* § 62:11 (database updated August 2017) (6th ed) (modified).

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 49 of 81

INSTRUCTION NO. 31

“THE USE OF ANY MEANS OR INSTRUMENTALITY OF INTERSTATE COMMERCE OR OF THE MAILS, OR OF ANY NATIONAL SECURITIES EXCHANGE”-DEFINED

The term “interstate commerce” as used in these instructions means “trade or commerce in securities or any transportation or communication relating … [to such trade or commerce] among the several states…”

This element of the crime charged may be established if the government proves beyond a reasonable doubt that any means or instrumentality of interstate transportation or communication, including the mails, or the facilities of a national securities exchange were, in fact, used in the scheme or that such use was reasonably foreseeable.

In this regard, however, it is not necessary for the government to prove that the defendant personally used any means or instrumentality of interstate commerce or the mails, or used a national exchange, or that such use was contemplated or intended by anyone involved in any scheme. It is sufficient for the government to prove that the defendant set forces in motion which foreseeably resulted in such use.

The matter, material, or information mailed, transported, or communicated need not itself contain a fraudulent representation or request money, but must be a part of the overall scheme.

2B Kevin F. O’Malley *et al*., *Fed. Jury Prac. & Instr.* § 62:08 (database updated August 2017).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 50 of 61

INSTRUCTION NO. 32

GENERAL RULES AND RESTRICTIONS UNDER SECURITIES LAW

*The government's proposed instruction relating to general rules and restrictions under securities law is disputed*

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 51 of 61

INSTRUCTION NO. 33

DEFINITIONS UNDER SECURITIES LAW

You are instructed the securities law relevant to this case has a number of definitions:

Security. The term "security" means any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, and put, call, straddle, option, or privilege on any security certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Restricted Security: The term restricted securities means:

(i) Securities acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering;

(ii) Securities acquired from the issuer that are subject to the resale limitations of § 230.502(d) under Regulation D or § 230.701(c);

(iii) Securities acquired in a transaction or chain of transactions meeting the requirements of § 230.144A;

(iv) Securities acquired from the issuer in a transaction subject to the conditions of Regulation CE ( § 230.1001);

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 52 of 81

(v) Equity securities of domestic issuers acquired in a transaction or chain of transactions subject to the conditions of § 230.901 or § 230.903 under Regulation S ( § 230.901 through § 230.905, and Preliminary Notes);

(vi) Securities acquired in a transaction made under § 230.801 to the same extent and proportion that the securities held by the security holder of the class with respect to which the rights offering was made were, as of the record date for the rights offering, “restricted securities” within the meaning of this paragraph (a)(3);

(vii) Securities acquired in a transaction made under § 230.802 to the same extent and proportion that the securities that were tendered or exchanged in the exchange offer or business combination were “restricted securities” within the meaning of this paragraph (a)(3); and

(viii) Securities acquired from the issuer in a transaction subject to an exemption under section 4(5) ( 15 U.S.C. 77d(5)) of the Act.

Sale or sell: The term “sale” or “sell” shall include every contract of sale or disposition of a security or interest in a security, for value. The term “offer to sell”, “offer for sale”, or “offer” shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value. The terms defined in this paragraph and the term “offer to buy” as used in subsection (c) of section 77e of this title shall not include preliminary negotiations or agreements between an issuer (or any person directly or indirectly controlling or controlled by an issuer, or under direct or indirect common control with an issuer) and any underwriter or among underwriters who are or are to be in privity of contract with an issuer (or any person directly or indirectly controlling or controlled by an issuer, or under direct or indirect common control with an issuer). Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been offered and sold for value. The issue or transfer of a right or privilege, when originally issued or transferred with a security, giving the holder of

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 53 of 61

such security the right to convert such security into another security of the same issuer or of another person, or giving a right to subscribe to another security of the same issuer or of another person, which right cannot be exercised until some future date, shall not be deemed to be an offer or sale of such other security; but the issue or transfer of such other security upon the exercise of such right of conversion or subscription shall be deemed a sale of such other security. Any offer or sale of a security futures product by or on behalf of the issuer of the securities underlying the security futures product, an affiliate of the issuer, or an underwriter, shall constitute a contract for sale of, sale of, offer for sale, or offer to sell the underlying securities. Any offer or sale of a security-based swap by or on behalf of the issuer of the securities upon which such security-based swap is based or is referenced, an affiliate of the issuer, or an underwriter, shall constitute a contract for sale of, sale of, offer for sale, or offer to sell such securities. The publication or distribution by a broker or dealer of a research report about an emerging growth company that is the subject of a proposed public offering of the common equity securities of such emerging growth company pursuant to a registration statement that the issuer proposes to file, or has filed, or that is effective shall be deemed for purposes of paragraph (10) of this subsection and section 77e(c) of this title not to constitute an offer for sale or offer to sell a security, even if the broker or dealer is participating or will participate in the registered offering of the securities of the issuer. As used in this paragraph, the term “research report” means a written, electronic, or oral communication that includes information, opinions, or recommendations with respect to securities of an issuer or an analysis of a security or an issuer, whether or not it provides information reasonably sufficient upon which to base an investment decision.

Person: The term “person” means an individual, a corporation, a partnership, an association, a joint-stock company, a trust, any unincorporated organization, or a government or political subdivision thereof. As used in this paragraph the term “trust” shall include only a trust where the interest or interests of the beneficiary or beneficiaries are evidenced by a security.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 54 of 61

Issuer: The term "issuer" means every person who issues or proposes to issue any security; except that with respect to certificates of deposit, voting-trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors (or persons performing similar functions) or of the fixed, restricted management, or unit type, the term "issuer" means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued; except that in the case of an unincorporated association which provides by its articles for limited liability of any or all of its members, or in the case of a trust, committee, or other legal entity, the trustees or members thereof shall not be individually liable as issuers of any security issued by the association, trust, committee, or other legal entity; except that with respect to equipment-trust certificates or like securities, the term "issuer" means the person by whom the equipment or property is or is to be used; and except that with respect to fractional undivided interests in oil, gas, or other mineral rights, the term "issuer" means the owner of any such right or of any interest in such right (whether whole or fractional) who creates fractional interests therein for the purpose of public offering.

Underwriter: The term "underwriter" means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 55 of 61

Dealer: The term “dealer” means any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person.

17 CFR 230.144

Securities Act of 1933

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 56 of 61

INSTRUCTION NO. 34

COUNT 29 MONEY LAUNDERING ELEMENTS

The defendant is charged in Count 29 with money laundering, in violation of 18 U.S.C. section 1956(a)(3)(B), or aiding and abetting this offense, in violation of 18 U.S.C. section 2(a).

This law makes it a crime to knowingly use what is represented to be the proceeds of specified unlawful activity to conceal or disguise the nature, location, source, ownership or control of the property believed to be the proceeds of specified unlawful activity.

To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant conducted or attempted to conduct a financial transaction, or the defendant aided and abetted others to conduct or attempt to conduct a financial transaction;

*Second*: the financial transaction involved property that was represented by a person acting at the direction of, or with the approval of, an agent of the United States Postal Service or the United States Immigration and Customs Enforcement, to be the proceeds of specified unlawful activity;

*Third:* the financial transaction was believed by the defendant to be the proceeds wire fraud or securities fraud;

*Fourth*: the defendant conducted, or aided and abetted others to conduct the financial transaction or the attempted financial transaction with the intent to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of wire fraud or securities fraud.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 57 of 61

The term "conducts" includes initiating, concluding, or participating in initiating or concluding, a transaction.

The term "financial transaction" means: (A) a transaction involving the use of a financial institution that is engaged in, or the activities of which affect, interstate commerce in any way or degree; or (B) a transaction that in any way or degree affects interstate commerce, and that involves: (i) the movement of funds by wire or other means; or (ii) one or more monetary instruments; or (iii) the transfer of title to any real property, vehicle, vessel, or aircraft.

The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through specified unlawful activity, including the gross receipts of such activity.

"Interstate commerce" means commerce or travel between the states, territories or possessions of the United States, including the District of Columbia. It is not necessary that the defendant have intended or anticipated an effect on interstate commerce. All that is necessary is that the natural and probable consequence of the acts the defendant took would be to affect interstate commerce.

Aiding and abetting money laundering

The defendant is alternatively charged with aiding and abetting the commission of money laundering. Title 18, United States Code, Section 2, provides: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 58 of 61

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: someone else committed the charged crime (money laundering); and

*Second*: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Tenth Circuit Pattern Crim. Jury Instr. § 2.73.2 (2011) (modified).
Tenth Circuit Pattern Crim. Jury Instr. § 2.06 (2011) (modified).

INSTRUCTION NO. 35

CAUTION—PUNISHMENT

If you find the defendant guilty, it will be my duty to decide what the punishment

will be.  You should not discuss or consider the possible punishment in any way while

deciding your verdicts.

Tenth Circuit Pattern Crim. Jury Instr. § 1.20 (2011).

INSTRUCTION NO. 36

DUTY TO DELIBERATE—VERDICT FORM

In a moment, the court security officer will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdicts must be unanimous on each count of the indictment. Your deliberations will be secret. You will never have to explain your verdicts to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges—judges of the facts. You must decide whether the government has proved the defendant guilty beyond a reasonable doubt.

Forms of verdicts has been prepared for your convenience.

[Explain the Verdict Forms]

The foreperson will mark the unanimous answer of the jury in the space provided for each count of the indictment on each verdict form, either guilty or not guilty. At the conclusion of your deliberations, the foreperson should date and sign the verdict forms.

Case 1:17-cr-00008-WJM Document 176 Filed 01/11/19 Page 61 of 61

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the court security officer. I will either reply in writing or bring you back into the court to respond to your message. Under no circumstances should you reveal to me the numerical division of the jury.

Tenth Circuit Pattern Crim. Jury Instr. § 1.23 (2011) (modified).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. GUY M. JEAN-PIERRE,
a/k/a Marcello Dominguez de Guerra,
Defendant.

---

GOVERNMENT'S DISPUTED JURY INSTRUCTIONS

---

The United States of America, by and through Assistant United States Attorney Jeremy Sibert submits two disputed jury instructions with authority.

Jason Dunn

United States Attorney

By: *s/ Jeremy Sibert*
Jeremy Sibert
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0216
Facsimile: 303-454-0402
E-mail: jeremy.sibert@usdoj.gov
Attorney for the United States

Case 1:17-cr-00008-WJM Document 177 Filed 01/11/19 Page 2 of 9

INSTRUCTION NO. 29

COUNTS 21-23 SECURITIES FRAUD ELEMENTS

Counts 21-23 charge the defendant with committing securities fraud, or aiding and abetting the commission of securities fraud, relating to FusionPharm stock. Specifically, the defendant is charged under Title 15, United States Code, Sections 78j(b) and 78ff, and a regulation promulgated thereunder. Section 78j(b) provides in relevant part that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5 (Title 15, United States Code, Section 78(j)(B)) was promulgated by the Securities and Exchange Commission, or the SEC, as "necessary or appropriate in the public interest" "for the protection of investors." Rule10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

These provisions make unlawful all "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of

Case 1:17-cr-00008-WJM Document 177 Filed 01/11/19 Page 3 of 9

securities."[1] Such activity "mislead[s] investors by artificially affecting market activity."[2] It "deceiv[es] investors as to how other market participants have valued a security"; the investors are "misled to believe that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."[3] "The basis of such manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."[4]

The Indictment alleges that the defendant engaged in a series of actions designed to manipulate the market price and volume of FusionPharm stock and to orchestrate artificial investor demand for FusionPharm stock. To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant, in connection with the purchase or sale of securities,

(a) employed any device, scheme, or artifice to defraud, or

(b) made any untrue statement of a material fact, or

---

[1] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976).

[2] *Santa Fe Indus. v. Green*, 430 U.S. 462, 476 (1977).

[3] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007) (internal quotations and citation omitted); *see Ala. Farm Bureau Mut. Cas. Co., v. Inc. Am. Fidelity Life Ins. Co.*, 606 F.2d 602, 612 (5th Cir. 1979) (scheme to contrive stock trades qualifies as "manipulative" under § 10(b) because it "induce[s] investment in a company's stock").

[4] *Levy v. United States*, 626 F. App'x 319, 322 (2d Cir. 2015) (citing *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir.1999))

Case 1:17-cr-00008-WJM Document 177 Filed 01/11/19 USDC Colorado Page 4 of 9

(c) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(d) engaged in a transaction, practice, or course of business which operated or would operate as a fraud and deceit on any person.

*Second*: the defendant aced knowingly, intentionally and wilfully;

*Third*: made use of, or caused the use of,

(a) any means or instrumentality of interstate commerce, or

(b) of the mails, or

(c) of any facility of any national securities exchange,

in connection with the purchase or sale of securities

*Fourth*: the defendant acted with the intent to defraud.

Aiding and abetting securities fraud

The defendant is alternatively charged with aiding and abetting the commission of securities fraud. Title 18, United States Code, Section 2, provides: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: someone else committed the charged crime (securities fraud); and

*Second*: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring

Case 1:17-cr-00008-WJM Document 177 Filed 01/11/19 Page 5 of 9

about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Title 15, United States Code, Sections 78j(b)

Title 15, United States Code, Section 78(j)(B)

*United States v. Bercoon,* 15-cr-0022-LMM, N.D. Ga 2015 (instruction given).

2B Kevin F. O'Malley *et al*., *Fed. Jury Prac. & Instr.* § 62:05, 62.07 (6th ed.) (modified to match 10th circuit format).

Tenth Circuit Pattern Crim. Jury Instr. § 2.06 (2011) (modified

Case 1:17-cr-00008-WJM Document 177 Filed 01/11/19 Page 6 of 9

INSTRUCTION NO. 32

GENERAL RULES AND RESTRICTIONS UNDER SECURITIES LAW

The Securities Act of 1933 Section 5, Titled Prohibitions relating to interstate commerce and the mails, which falls under Chapter 15 United States Code, Section 77e, states that unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly: (1) To make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise, or (2) To carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

If the issuer, a company or person, has not registered it's "securities" with the Security Exchange Commission in order to have a registration statement, the issuer must fall under an exemption in order to be able to sell the "securities."

Section 4(a)(1) of Securities Act of 1933 is an exemption to all the sale of "securities" without having a registration statement for transactions by any person other than an issuer, underwriter, or dealer. In order for an "underwriter" to be able to sell "securities" without a registration statement, an "underwriter" must look to another rule.

One rule that would allow an underwriter to sell a "security" without a registration statement is the SAFE HARBOR RULE 144, 17 CFR 230.144 - Persons deemed not to be engaged in a distribution and therefore not underwriters. A "person" satisfying the applicable conditions of the Rule 144 safe harbor is deemed not to be engaged in a distribution of the securities and therefore not an underwriter of the securities.

Case 1:17-cr-00008-WJM Document 177 Filed 01/11/19 Page 7 of 9

Therefore, such a person is deemed not to be an underwriter when determining whether a sale is eligible for the Section (4)(1) exemption and the sale is permitted.

Rule 144 under the Securities Act ("Rule 144") provides certain requirements for resellers to avoid being classified as an underwriter. These rules vary on whether or not an individual is classified as an "affiliate." Rule 144(a) (1) defines an "affiliate" to mean "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with the issuer." Rule 405 under the Securities Act defines "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise."

If a person is considered an affiliate, additional requirements must be met in order to sell securities since the securities will be termed "restricted securities" since the securities are acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering. The additional requirements include a holding period, limitation on amount of securities sold, manner of sale, and requirement for brokers' transactions to include a reasonable inquiry.

15 U.S. Code § 77e

17 C.F.R. § 230.144

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 1 of 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.17-cr-00008-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE**,

Defendant.

---

**DEFENDANT JEAN-PIERRE'S AMENDED DISPUTED JURY INSTRUCTIONS AND OBJECTIONS TO GOVERNMENT'S INSTRUCTIONS 26 AND 29 IN THE "GOVERNMENT'S STIPULATED JURY INSTRUCTIONS" (DOCKET # 152)**

---

THE DEFENDANT, GUY M. JEAN-PIERRE, by and through his attorney, Clifford J. Barnard, hereby objects to the following jury instructions which were set forth in the *Government's Stipulated Jury Instructions* (Document No. 152) (hereinafter "Gov't's Instructions") filed on January 6, 2019 and proposes the alternate jury instructions set forth after the objections. Mr. Jean-Pierre objects to the government's following proposed jury instructions for the following reasons:

**(1) INSTRUCTION NO. 26 (Counts 21-23 Securities Fraud Elements)**

The following sentence beginning paragraph 2, page 1 of the Gov't's Instruction No. 26 is unnecessary to explain any relevant legal standard to the jury and could lead to confusion of the jury:

> Rule 10b-5 (Title 15, United States Code, Section 78(j)(B)) was promulgated by the Securities and Exchange Commission, or the SEC, as "necessary or appropriate in the public interest" "for the protection of investors."

Mr. Jean-Pierre requests striking this sentence.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 2 of 18

The formatting of the next paragraph quoting Rule 10b-5 from the Gov't's Instruction No. 26 could mislead the jury into thinking that the "in connection with the purchase or sale of any security" requirement only modifies clause (c):

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> > (a) To employ any device, scheme, or artifice to defraud,
> > (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,
> > (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

In fact, this requirement applies to all of Rule 10b-5.[1] Mr. Jean-Pierre requests replacing this paragraph with the following:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> > (a) To employ any device, scheme, or artifice to defraud,
> > (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,
> > (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,[2]
>
> And, in the case of (a), (b), and (c), in connection with the purchase or sale of any security.

The following statement beginning in the last paragraph of the Gov't's Instruction No. 26 is both unnecessary and potentially misleading in that it could cause a jury to

---

[1] 17 C.F.R. § 240.10b-5; *Blue Chip Stamps, et al. v. Manor Drug Stores*, 421 U.S. 723, 754-5 (1975).

[2] 17 C.F.R. § 240.10b-5.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 3 of 18

believe that, for criminal liability to attach, a defendant must act *either* intentionally *or* willfully:

> These provisions make unlawful all "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities.

In fact, criminal penalties can only be imposed for willful violations of Rule 10b-5 by a defendant.[3] This willful requirement is in addition to, rather than a substitute for, the *scienter* requirement for Rule 10b-5 criminal and civil liability.[4] To avoid misleading the jury about the standard for criminal liability, the Mr. Jean-Pierre requests striking the foregoing statement.

The following statements at the top of page 2 of the Gov't's Instruction No. 26, culled from case law, are both unnecessary and potentially misleading:

> "Such activity "mislead[s] investors by artificially affecting market activity."
>
> It "deceiv[es] investors as to how other market participants have valued a security"; the investors are "misled to believe that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."
>
> "The basis of such manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators.

The cases cited by the government in support of these statements all describe general dicta for cases of market manipulation, which is covered by clauses (a) and (c) of Rule

---

3 15 U.S.C § 78ff.

4 17 C.F.R. § 240.10b-5; *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 4 of 18

10b-5.[5] By contrast, the gravamen of the government's indictment is that Mr. Jean-Pierre made a material misstatement or omitted a material fact that made the statements misleading.[6] Material misstatements and omissions are covered by clause (b) of Rule 10b-5.[7] Moreover, the general statements about prices "determined by the natural interplay of supply and demand" adds unnecessary vagueness and confusion. The focus of Rule 10b-5 is on deceit, not an economist's inquiry into what constitutes natural versus unnatural supply and demand.[8] Mr. Jean-Pierre also notes that the text from *U.S. v. Levy* appears to be misquoted. Instead of "The basis of such manipulation …", that case speaks of "The gravamen of manipulation …"[9] Mr. Jean-Pierre requests striking all three of these statements.

The following statement beginning the first full paragraph of page 2 of the Gov't's

---

[5] Rule 10b-5 provides as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5.

[6] *Government's Superseding Indictment* Counts 21-23.

[7] 17 C.F.R. § 240.10b-5.

[8] *See Santa Fe Industries, Inc., et al. v. Green et al.*, 430 U.S. 462, 472-4 (1977).

[9] *Levy v. United States*, 626 F. App'x 319, 322 (2d Cir. 2015).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 5 of 18

Instruction No. 26 is inaccurate and misleading in that it states that the government's indictment is about market manipulation, when the gravamen of the government's indictment is about material misstatements and omissions:

> The Indictment alleges that the defendant engaged in a series of actions designed to manipulate the market price and volume of FusionPharm stock and to orchestrate artificial investor demand for FusionPharm stock.

Mr. Jean-Pierre requests striking this statement and replacing it with the following wording:

> The indictment alleges that the defendant intentionally, willfully, and knowingly made a misstatement of a material fact, namely that securities offered or sold by FusionPharm were exempted from registration with the Securities and Exchange Commission under Rule 144 under the Securities Act.
>
> The government must therefore prove beyond a reasonable doubt, that
>
> (a) that the defendant made this alleged statement;[10]
>
> (b) that this statement was made by defendant in connection with the purchase or sale of securities;[11]
>
> (c) that this alleged statement was material;[12]
>
> (d) that this alleged statement was untrue;[13]
>
> (e) that the defendant intentionally made this alleged misstatement;[14] and
>
> (f) that the defendant acted knowingly and willfully in making this alleged

---

[10] 17 C.F.R. § 240.10b-5; *Janus Capital Group, Inc., et al. v. First Derivative Traders*, 131 S.Ct. 2296, 2301-2 (2011).

[11] 17 C.F.R. § 240.10b-5; *Blue Chip Stamps, et al. v. Manor Drug Stores*, 421 U.S. 723, 754-5 (1975).

[12] 17 C.F.R. § 240.10b-5; *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-2 (1988).

[13] 17 C.F.R. § 240.10b-5; *Santa Fe Industries, Inc., et al. v. Green et al.*, 430 U.S. 462, 472-4 (1977) (10b-5 liability requires "manipulation or deception").

[14] 17 C.F.R. § 240.10b-5; *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 6 of 18

misstatement.[15]

The jury iInstructions must also include instructions on what constitutes "materiality." Therefore Mr. Jean-Pierre requests that the following be added to the end of Instruction 26:

> For purposes of this case, for a statement of a fact or an omission of a fact about the FusionPharm securities to be "material," there must be a substantial likelihood that the disclosure of the statement or omission of the fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available about FusionPharm.[16]

**(2) INSTRUCTION NO. 29 (General Rules and Restrictions Under Securities Law)**

Mr. Jean-Pierre objects to Instruction 29 because it lacks context and would mislead the jury into believing that a violation of the requirements of Rule 144 is *per se* criminal. The probability of the jury being misled by this Instruction without further context is high. In fact, the government's indictment alleges that Mr. Jean-Pierre willfully made a series of misstatements and omissions about whether FusionPharm's securities were exempt from registration under Rule 144. This means that the government must prove beyond a reasonable doubt not only that Rule 144 was not complied with (*i.e.*, that the alleged statement was false) but also a number of other elements of the alleged crime. Mr. Jean-Pierre therefore requests striking the first paragraph of Gov't's .Instruction No. 29 and replacing it with the following.

> The government alleges that the defendant intentionally, willfully, and knowingly made a misstatement of a material fact, namely that securities offered or sold by FusionPharm were exempted from registration with the Securities and Exchange Commission under Rule 144 under the Securities Act.

---

15 15 U.S.C §§ 78j, 78ff.

16 *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-2 (1988).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 7 of 18

The government must therefore prove beyond a reasonable doubt, that

(a) that the defendant made this alleged statement;[17]

(b) that this statement was made by defendant in connection with the purchase or sale of securities;[18]

(c) that this alleged statement was material;[19]

(d) that this alleged statement was untrue;[20]

(e) that the defendant intentionally made this alleged misstatement;[21] and

(f) that the defendant acted knowingly and willfully in making this alleged misstatement.[22]

In addition, Mr. Jean-Pierre requests the additional statement in Gov't's Instruction No. 29 to clarify that a violation of Rule 144 is not *per se* criminal and to explain to the jury why the following statements in the Gov't's Instruction No. 29 on Rule 144 have been included:

> In order to prove part (d) above, the government must prove beyond a reasonable doubt that the securities offered or sold by FusionPharm were *not* subject to an exemption under Rule 144 and that the securities were not otherwise registered with the Securities and Exchange Commission or exempt from registration. However, even if the government proves this, it must still prove all of

---

17 17 C.F.R. § 240.10b-5; *Janus Capital Group, Inc., et al. v. First Derivative Traders*, 131 S.Ct. 2296, 2301-2 (2011).

18 17 C.F.R. § 240.10b-5; *Blue Chip Stamps, et al. v. Manor Drug Stores*, 421 U.S. 723, 754-5 (1975).

19 17 C.F.R. § 240.10b-5; *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-2 (1988).

20 17 C.F.R. § 240.10b-5; *Santa Fe Industries, Inc., et al. v. Green et al.*, 430 U.S. 462, 472-4 (1977) (10b-5 liability requires "manipulation or deception").

21 17 C.F.R. § 240.10b-5; *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).

22 15 U.S.C §§ 78j, 78ff.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 8 of 18

> the other elements of the alleged crime. Mere failure by FusionPharm to comply with Rule 144 or with registration requirements under the Securities Act of 1933 is not enough to find the defendant guilty.
>
> The remaining part of this instruction includes a description of the registration requirements under the Securities Act and a description of the requirements of Rule 144.

Mr. Jean-Pierre requests the following minor changes to Gov't's Instruction No. 29 to make the statements therein accurate and less confusing:

a. In the second paragraph, replace "Section 4(a)(1) is an exception…" with the following: "Section 4(a)(1) is one exception." This clarifies that there are other exceptions to the registration requirements under the Securities Act of 1933 in addition to Rule 144.

b. In the next paragraph, add to the end of the following sentence: "These rules vary on whether or not an individual is classified as an 'affiliate,'" the words: "of the issuer." This clarifies how Rule 144 operates.[23]

c. In the first sentence of the next paragraph, immediately after the following: "If a person is considered an affiliate, additional requirements must be met in order to sell securities," insert the following phrase: "to qualify under the Rule 144 safe harbor exemption from registration." This clarifies that the government's specific allegation in this part of the case is that Rule 144 was not complied with.

In the next paragraph in the last sentence of Gov't's Instruction No. 29, the inclusion of the "requirement for broker's transactions to include a reasonable inquiry" is both unnecessary and seriously misleading:

> The additional requirements include a holding period, limitation on amount of securities sold, manner of sale, **and requirement for brokers' transactions to**

---

23 17 C.F.R. § 240.144(b)(2).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 9 of 18

**include a reasonable inquiry**. [emphasis added]

Rule 144(g) does include a number of requirements with respect to broker's transactions. However, these requirements are not relevant to this case. The government's inclusion of this phrase suggests Mr. Jean-Pierre should have made reasonable inquiries specified in Rule 144(g). But it is the broker not the issuer of securities or any of the issuer's officers, attorneys, or employees who must make this inquiry. This inquiry required of brokers involves asking either of "other brokers or dealers"[24] or the broker's customers[25] whether anyone has an interest in purchasing the securities in question. In no way did this provision impose an obligation on Mr. Jean-Pierre. Because this language is both unnecessary, overly suggestive, and seriously misleading, Mr. Jean-Pierre requests striking the phrase "and requirement for brokers' transactions to include a reasonable inquiry."

In that same paragraph beginning "If a person is considered an affiliate…," the government must also establish that the FusionPharm securities constituted "restricted securities" under Rule 144 in order to prove that Rule 144 was not complied with. The government must prove this in order to prove that the alleged statement that FusionPharm securities were exempt under that regulation was in fact a false statement.[26] Mr. Jean-Pierre therefore requests that the following statement be added to the end of that paragraph:

> In order to prove that Rule 144 was not complied with and that the alleged statement that FusionPharm securities were exempt from registration under that

---

[24] 17 C.F.R. § 240.144(g)(3)(i).

[25] 17 C.F.R. § 240.144(a)(3).

[26] 17 C.F.R. § 240.144(a)(3).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 10 of 18

regulation was in fact false, the government must prove beyond a reasonable doubt among other things that these securities constituted "restricted securities" under Rule 144. Instruction No. 30 sets forth the relevant legal definition of "restricted securities."

**(3) Defendant's Proposed Jury Instructions**

Mr. Jean-Pierre submits the following proposed jury instructions to replace the government's proposed instructions on these matters:

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 11 of 18

DEFENDANT'S INSTRUCTION NO. A

Counts 21-23 Securities Fraud Elements

Counts 21-23 charge the defendant with committing securities fraud, or aiding and abetting the commission of securities fraud, relating to FusionPharm stock. Specifically, the defendant is charged under Title 15, United States Code, Sections 78j(b) and 78ff, and a regulation promulgated thereunder. Section 78j(b) provides in relevant part that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> > (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> > (a) To employ any device, scheme, or artifice to defraud,
> > (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,
> > (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,[27]
>
> and, in the case of (a), (b), and (c), in connection with the purchase or sale of any security.

---

[27] 17 C.F.R. § 240.10b-5; *Blue Chip Stamps, et al. v. Manor Drug Stores*, 421 U.S. 723, 754-5 (1975).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 12 of 18

The indictment alleges that the defendant intentionally, willfully, and knowingly made a misstatement of a material fact, namely that securities offered or sold by FusionPharm were exempted from registration with the Securities and Exchange Commission under Rule 144 under the Securities Act.

The government must therefore prove beyond a reasonable doubt, that

(a) that the defendant made this alleged statement;[28]

(b) that this statement was made by defendant in connection with the purchase or sale of securities;[29]

(c) that this alleged statement was material;[30]

(d) that this alleged statement was untrue;[31]

(e) that the defendant intentionally made this alleged misstatement;[32] and

(f) that the defendant acted knowingly and willfully in making this alleged misstatement.[33]

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

---

28 17 C.F.R. § 240.10b-5; *Janus Capital Group, Inc., et al. v. First Derivative Traders*, 131 S.Ct. 2296, 2301-2 (2011).

29 17 C.F.R. § 240.10b-5; *Blue Chip Stamps, et al. v. Manor Drug Stores*, 421 U.S. 723, 754-5 (1975).

30 17 C.F.R. § 240.10b-5; *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-2 (1988).

31 17 C.F.R. § 240.10b-5; *Santa Fe Industries, Inc., et al. v. Green et al.*, 430 U.S. 462, 472-4 (1977) (10b-5 liability requires “manipulation or deception”).

32 17 C.F.R. § 240.10b-5; *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).

33 15 U.S.C §§ 78j, 78ff.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 13 of 18

*First*: the defendant, in connection with the purchase or sale of securities,

(a) employed any device, scheme, or artifice to defraud, or

(b) made any untrue statement of a material fact, or

(c) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(d) engaged in a transaction, practice, or course of business which operated or would operate as a fraud and deceit on any person.

*Second*: the defendant acted knowingly, intentionally and wilfully;

*Third*: the defendant made use of, or caused the use of,

(a) any means or instrumentality of interstate commerce, or

(b) of the mails, or

(c) of any facility of any national securities exchange,

in connection with the purchase or sale of securities

*Fourth*: the defendant acted with the willfull intent to defraud.

For purposes of this case, for a statement of a fact or an omission of a fact about the FusionPharm securities to be “material,” there must be a substantial likelihood that the disclosure of the statement or omission of the fact would have been viewed by the reasonable investor as having significantly altered the “total mix” of information made available about FusionPharm.”[34]

<u>Aiding and abetting securities fraud</u>

34 *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-2 (1988).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 14 of 18

The defendant is alternatively charged with aiding and abetting the commission of securities fraud. Title 18, United States Code, Section 2, provides: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: someone else committed the charged crime (securities fraud); and

*Second*: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Title 15, United States Code, Sections 78j(b)

Title 15, United States Code, Section 78(j)(B)

2B Kevin F. O'Malley *et al*., *Fed. Jury Prac. & Instr.* § 62:05, 62.07 (6th ed.) (modified to match 10th Ccircuit format).

Tenth Circuit Pattern Jury Instruction No. 1.12 (2011 ed.) (updated 2018) (modified).

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 15 of 18

DEFENDANT'S INSTRUCTION NO. B

General Rules and Restrictions Under Securities Law

The indictment alleges that the defendant intentionally, willfully, and knowingly made a misstatement of a material fact, namely that securities offered or sold by FusionPharm were exempted from registration with the Securities and Exchange Commission under Rule 144 under the Securities Act.

The government must therefore prove beyond a reasonable doubt, that

(a) that the defendant made this alleged statement;[35]

(b) that this statement was made by defendant in connection with the purchase or sale of securities;[36]

(c) that this alleged statement was material;[37]

(d) that this alleged statement was untrue;[38]

(e) that the defendant intentionally made this alleged misstatement;[39] and

(f) that the defendant acted knowingly and willfully in making this alleged misstatement.[40]

---

35 17 C.F.R. § 240.10b-5; *Janus Capital Group, Inc., et al. v. First Derivative Traders*, 131 S.Ct. 2296, 2301-2 (2011).

36 17 C.F.R. § 240.10b-5; *Blue Chip Stamps, et al. v. Manor Drug Stores*, 421 U.S. 723, 754-5 (1975).

37 17 C.F.R. § 240.10b-5; *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-2 (1988).

38 17 C.F.R. § 240.10b-5; *Santa Fe Industries, Inc., et al. v. Green et al.*, 430 U.S. 462, 472-4 (1977) (10b-5 liability requires "manipulation or deception").

39 17 C.F.R. § 240.10b-5; *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).

40 15 U.S.C §§ 78j, 78ff.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 16 of 18

In order to prove part (d) above, the government must prove beyond a reasonable doubt that the securities offered or sold by FusionPharm were *not* subject to an exemption under Rule 144 and that the securities were not otherwise registered with the Securities and Exchange Commission or exempt from registration. However, even if the government proves this, it must still prove all of the other elements of the alleged crime. Mere failure by FusionPharm to comply with Rule 144 or with registration requirements under the Securities Act of 1933 is not enough to find the defendant guilty.

The remaining part of this instruction includes a description of the registration requirements under the Securities Act and a description of the requirements of Rule 144.

If the issuer, a company or person, has not registered it's "securities" with the Security Exchange Commission in order to have a registration statement, the issuer must fall under an exemption in order to be able to sell the "securities."
Section 4(a)(1) of the Securities Act of 1933 is one exemption to the sale of "securities" without having a registration statement for transactions by any person other than an issuer, underwriter, or dealer. In order for an "underwriter" to be able to sell "securities" without a registration statement, an "underwriter" must look to another rule.
One rule that would allow an underwriter to sell a "security" without a registration statement is the Safe Harbor Rule 144, 17 CFR 230.144 - Persons deemed not to be engaged in a distribution and therefore not underwriters. A "person" satisfying the applicable conditions of the Rule 144 safe harbor is deemed not to be engaged in a distribution of the securities and therefore not an underwriter of the securities.

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 17 of 18

Therefore, such a person is deemed not to be an underwriter when determining whether a sale is eligible for the Section (4)(1) exemption and the sale is permitted.

Rule 144 under the Securities Act ("Rule 144") provides certain requirements for resellers to avoid being classified as an underwriter. These rules vary on whether or not an individual is classified as an "affiliate"of the issuer. Rule 144(a)(1) defines an "affiliate" to mean "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with the issuer." Rule 405 under the Securities Act defines "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise."

If a person is considered an affiliate, additional requirements must be met in order to sell securities to qualify under the Rule 144 Safe Harbor exemption from registration since the securities will be termed "restricted securities" since the securities are acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering. The additional requirements include a holding period, limitation on the amount of securities sold, and the manner of sale. In order to prove that Rule 144 was not complied with and that the alleged statement that FusionPharm securities were exempt from registration under that regulation was in fact false, the government must prove beyond a reasonable doubt among other things that these securities constituted "restricted securities" under Rule 144. Instruction Number 30 sets forth the relevant legal definition of "restricted securities."

Case 1:17-cr-00008-WJM Document 178 Filed 01/11/19 Page 18 of 18

DATED this 11th day of January, 2019.

Respectfully submitted,

*s/Clifford J. Barnard*

Clifford J. Barnard
Clifford J. Barnard, Attorney at Law
4450 Arapahoe Avenue, Suite 100
Boulder, Colorado 80303
Telephone: (303) 449-2543
Facsimile: (303) 444-6349
Email: *cliffbarnard@earthlink.net*
Attorney for Defendant Jean-Pierre

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of January, 2019, I electronically filed the foregoing *Defendant Jean-Pierre's Amended Disputed Jury Instructions and Objections to Government's Instructions 26 and 29 in the "Government's Stipulated Jury Instructions" (Docket # 152)* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

A.U.S.A. Jeremy Sibert *jeremy.sibert@usdoj.gov*

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Guy Jean-Pierre
Register # 78606-054
Independence House South
2765 S. Federal Blvd.
Denver, CO 80236

*Via U.S. Mail*

*s/Clifford J. Barnard*

Clifford J. Barnard
Attorney for Defendant Jean-Pierre

Case 1:17-cr-00008-WJM Document 182 Filed 01/14/19 USDC Colorado Page 1 of 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

GUY JEAN-PIERRE,

Defendant.

---

**STIPULATION AND ORDER REGARDING
CUSTODY OF ORIGINAL EXHIBITS**

---

IT IS STIPULATED AND ORDERED that at the conclusion of the jury trial, counsel for the parties shall retain custody of their respective original exhibits until such time as all need for the exhibits has terminated and the time to appeal has expired or all appellate proceedings have been terminated, plus sixty days.

DATED at Denver, Colorado this 14th day of January, 2019.

BY THE COURT:

William J. Martínez, Judge

Attorney for the Government

Attorney for Defendant

Case 1:17-cr-00008-WJM Document 184 Filed 01/15/19 Page 1 of 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 15, 2019
Courtroom Deputy: Anna Frank and Cathy Pearson
Court Reporter: Mary George

---

Criminal Action No. 17-cr-00008-WJM

Counsel:

UNITED STATES OF AMERICA,

Plaintiff,

Jeremy Sibert
Robert Brown

v.

GUY JEAN-PIERRE,

Defendant.

Thomas Goodreid
Clifford Barnard

---

**COURTROOM MINUTES**

---

Jury Trial: Day Two

**8:50 a.m. Court in session.** Jury is not present.

Discussion held regarding Rule 403 and 404(b).

Discussion held as to advising counsel of witnesses to be called.

Deferred ruling on Government's oral motion to dismiss juror 100362524.

**ORDERED:** Government's oral motion to stay proceedings is denied.

9:11 a.m. Jury is present.

Government resumes. Continued direct examination of Mr. Sears by Mr. Sibert.

10:20 a.m. Jury is excused.

**10:21 a.m. Court in recess.**
**10:49 a.m. Court in session.** Jury is not present.

Case 1:17-cr-00008-WJM Document 184 Filed 01/15/19 USDC Colorado Page 2 of 3

10:53 a.m. Jury is present.

Government resumes. Continued direct examination of Mr. Sears by Mr. Sibert.

Government's Exhibits 170, 171, 173, 174, 177, 249, 258, 372c, 372e, 372f, 372r, 372x, 372bb, 372dd, 372ff, 372gg, 372hh, 372kk, 372qq, 372uu, 372ccc, 372eee, 372hhh, 372iii, 372kkk, 372ooo, 384, 385, 391, 398, 399 and 175 are admitted into evidence.

12:09 p.m. Jury is excused.

Court states its finding on Rules 403, 404(b) and Defendant's Objections to Government's Intent to Introduce Certain Evidence Under Federal Rule of Evidence 404(b) Notice [ECF 164].

**ORDERED:** Defendant's Objections to Government's Intent to Introduce Certain Evidence Under Federal Rule of Evidence 404(b) Notice [ECF 164] is overruled in part. The Court will exclude the evidence at issue, as stated on the record.

**12:16 p.m. Court in recess.**
**1:26 p.m. Court in session.** Jury present.

Government resumes. Continued direct examination of Mr. Sears by Mr. Sibert.

Government's Exhibits 140, 141, 142, 143, 144, 69, 70, 74, 77, 81, 82, 133, 155, 156, 245, 252, 268, 269, 270, 271, 272, 274, 372nn, 372xx, 372aaa, 372bbb, 372ddd, 372mmm and 400 are admitted into evidence.

3:05 p.m. Jury is excused.

Discussion held regarding juror 100362524.

**3:07 p.m. Court in recess.**
**3:27 p.m. Court in session.** Jury present.

Government resumes. Continued direct examination of Mr. Sears by Mr. Sibert.

Government's Exhibits 383, 107, 393, 372p, 372ee, 115, 124, 85, 389a, 389b, 389c, and 389d are admitted into evidence.

4:55 p.m. Jury is excused, to return at 8:35 a.m. on Wednesday, January 16, 2019. The Court instructs juror number 100362524 to remain in the courtroom.

The Court's colloquy with and examination of juror number 100362524.

Examination of juror number 100362524 by the parties.

Case 1:17-cr-00008-WJM Document 184 Filed 01/15/19 USDC Colorado Page 3 of 3

The Court's instructions to juror number 100362524, as stated on the record.

5:15 p.m. Juror number 100362524 is excused, to return at 8:35 a.m. on Wednesday, January 16, 2019.

**ORDERED:** The Government's oral motion to excuse juror number 100362524 is denied.

**5:16 p.m.** **Court in recess.** Trial continued. Defendant continued on bond.

Total time in court: 6:28

Case 1:17-cr-00008-WJM Document 185 Filed 01/14/19 Page 1 of 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 14, 2019
Courtroom Deputy: Anna Frank and Leigh Roberson
Court Reporter: Mary George

| Criminal Action No. 17-cr-00008-WJM | Counsel: |
|---|---|
| UNITED STATES OF AMERICA, | Jeremy Sibert<br>Robert Brown |
| Plaintiff, | |
| v. | |
| GUY JEAN-PIERRE, | Thomas Goodreid<br>Clifford Barnard |
| Defendant. | |

## AMENDED COURTROOM MINUTES

Jury Trial: Day One

**8:36 a.m. Court in session.** Prospective jurors not present.

Appearances. Defendant is present on bond. Also seated at Government's counsel table are Agent Kate Funk, FBI and Agent Jared Erwin, IRS. Seated at Government's rear table is Denise Touchton.

Court's comments regarding parties' proposed voir dire questions.

Court's comments regarding trial protocol.

**ORDERED:** With the exception of expert witnesses, witnesses shall be excluded from the courtroom until called to testify pursuant to Rule 615, as stated on the record.

Discussion held regarding the Second Superseding Indictment.

**ORDERED:** Government's Motion to Amend the Specific Dates Alleged in Counts 12-16 of the Second Superseding Indictment [ECF 172] is granted.

Case 1:17-cr-00008-WJM Document 185 Filed 01/14/19 USDC Colorado Page 2 of 4

Government moves orally to allow witness Cliffe Bodden to testify in civilian clothes.

**ORDERED:** The Government's oral motion to allow witness Cliffe Bodden to testify in civilian clothes is granted.

Discussion held regarding witness order.

**8:58 a.m. Court in recess.**
**9:14 a.m. Court in session.** Jury panel present.

Court's opening remarks to the venire.

Oath administered. Voir dire by the Court.

**10:30 a.m. Court in recess.**
**10:47 a.m. Court in session.** Jury panel present.

Continued voir dire by the Court.

**12:14 p.m. Court in recess.**
**1:30 p.m. Court in session.** Jury panel present.

Voir dire by Mr. Brown for the Government.

Voir dire by Mr. Goodreid for the Defendant.

Challenges for cause:

1. 100337135
2. 100369557
3. 100359401
4. 100363573
5. 100351569
6. 100331216
7. 100357186
8. 100356365
9. 100375239
10. 100347779
11. 100360252
12. 100342435
13. 100339171

Government's challenges:

1. 100343784

Case 1:17-cr-00008-WJM Document 185 Filed 01/14/19 Page 3 of 4

2. 100335929
3. 100364571
4. 100359628
5. 100330019
6. 100354396
7. None

Defendant's challenges:

1. 100334354
2. 100348294
3. 100342569
4. 100364668
5. 100342750
6. 100369763
7. 100366594
8. 100365539
9. 100357625
10. 100360774
11. 100365880

Jurors sworn to try case:

1. 100358208
2. 100345726
3. 100364907
4. 100341382
5. 100375790
6. 100372630
7. 100364313
8. 100349008
9. 100362524
10. 100351990
11. 100367300
12. 100332854
13. 100340051
14. 100340552

Court's preliminary instructions to the jury.

**3:02 p.m. Court in recess.**
**3:28 p.m. Court in session.** Jury present.

Opening statement for the Government by Mr. Sibert.

Defendant reserves his opening statement.

Case 1:17-cr-00008-WJM Document 185 Filed 01/14/19 Page 4 of 4

4:10 p.m. Government's witness William Sears called and sworn.

Direct examination of Mr. Sears by Mr. Sibert.

Government's Exhibits 32, 33, 35, 36, 37, 92, 238, 235, 380, 381, 372b, 372d, 372h, 372i, 372j, 372k, 372L, 372m, 226, 382, 372q, 372t, 372u, 372cc, 40, 229, 372ii, 372mm, 254, 372oo, 372pp, 372rr, 372tt, 372yy, 396, 397, 372ggg, 372ppp, 158, 159, 160, 161, 162, 163, 164, 165, 166 admitted into evidence.

5:03 p.m. Jury excused, to return at 8:35 a.m. on Tuesday, January 15, 2019.

Court's remarks to witness regarding order of sequestration.

Discussion held regarding juror 100362524.

Discussion held regarding testimony of Mr. Sears.

**5:23 p.m. Court in recess.** Trial continued. Defendant continued on bond.

Total time in court: 6:32

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 16, 2019
Courtroom Deputy: Anna Frank and Cathy Pearson
Court Reporter: Mary George

---

| Criminal Action No. 17-cr-00008-WJM | Counsel: |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff, | Jeremy Sibert<br>Robert Brown |
| v. | |
| GUY JEAN-PIERRE,<br><br>Defendant. | Thomas Goodreid<br>Clifford Barnard |

---

**COURTROOM MINUTES**

---

Jury Trial: Day Three

**8:51 a.m. Court in session.** Jury present.

Government resumes. Continued direct examination of Mr. Sears by Mr. Sibert.

Government's Exhibits 72, Page 1 of Exhibit 236, 2a, 2b, 2c, 2d, 2e, 2f, 1, 1a, and 1b are admitted into evidence.

The Court instructs the jury that the captioning used in video exhibits 2a, 2b, 2c, 2d, 2e, 2f, 1, 1a, and 1b should not be considered as evidence.

**10:08 a.m. Court in recess.**
**10:32 a.m. Court in session.** Jury present.

Continued direct examination of Mr. Sears by Mr. Sibert.

Government's Exhibits 320a, 320b, 320c, 320d, 320e, 320f, 320g, 320h, 320i, 320j, 320k, 320L, 320m, 322a, 322b, 322c, 322d, 322e, 322f, 322g, 322h, 322i, 322j, 322k, 322L, 322m, 322n, 322o, 322p, 322q, and 322r are admitted into evidence.

Case 1:17-cr-00008-WJM Document 186 Filed 01/16/19 USDC Colorado Page 2 of 3

The Court instructs the jury that the captioning used in the audio exhibits 322a through 322r should not be considered as evidence.

**12:14 p.m. Court in recess.**
**1:26 p.m. Court in session.** Jury present.

Continued direct examination of Mr. Sears by Mr. Sibert.

Government's Exhibits 350, 351a, 351b, 351c, 351d, 351e, 351f, 351g, 351h, 357, 358a, 358b, 358c, 358d, 358e, 358f, 358g, 358h, 358i, 358j, 358k, 358L, 358m, 358n, 360, 361, 362, 363a, 363b, 363c, 363d, 363e, 363f, 363g, 363h, and 363i are admitted into evidence.

The Court instructs the jury that the captioning used in the audio/video exhibits 351a through 351h, 358a through 358n, 361, and 363a through 363i should not be considered as evidence.

Cross-examination of Mr. Sears by Mr. Goodreid.

**3:06 p.m. Court in recess.**
**3:23p.m. Court in session.** Jury present.

Continued cross-examination of Mr. Sears by Mr. Goodreid.

Redirect of Mr. Sears by Mr. Sibert.

Government's Exhibit 446 is admitted into evidence.

Mr. Sears is excused.

3:40 p.m. Government's witness Fred Dahlman is called and sworn.

Direct examination of Mr. Dahlman by Mr. Sibert.

Government's Exhibits 34, 61 and 63 are admitted into evidence.

Mr. Dahlman is excused.

4:32 p.m. Government's witness Scott Dittman is called and sworn.

Direct examination of Mr. Dittman by Mr. Sibert.

Government's Exhibit 150 is admitted into evidence.

Case 1:17-cr-00008-WJM Document 186 Filed 01/16/19 Page 3 of 3

**5:01 p.m.** **Court in recess.** Trial continued. Defendant continued on bond.

Total time in court: 6:17

Case 1:17-cr-00008-WJM Document 187 Filed 01/16/19 Page 1 of 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. GUY M. JEAN-PIERRE
a/k/a Marcello Dominguez de Guerra

Defendant.

---

**DEFENDANT'S MOTION FOR RECONSIDERATION OF ADMISSION OF GOVERNMENT'S EXHIBIT #446**

---

Defendant Guy M. Jean-Pierre, through counsel, moves for reconsideration of the Court's ruling admitting into evidence the William Sears plea agreement [Govt. Exhibit 446].[1]

Background: Mr. Sears testified on direct examination over the course of three days. The bulk of his testimony consisted of identifying documents (most of them emails) related to the "historical case" and explaining the context and meaning of video and audio evidence related to the Government's undercover operation. This afternoon the defense conducted a brief cross-examination of Mr. Sears. On re-direct, the Government asked Mr. Sears a question or two and then requested the Court's permission to question Sears about his plea agreement.

The prosecution quickly moved from that feint, though, to moving that Sears's

[1] It is not too late at this juncture to "un-ring the bell" because this Exhibit has not yet been published to the jury.

Case 1:17-cr-00008-WJM Document 187 Filed 01/16/19 Page 2 of 6

plea agreement be admitted substantively into evidence, purportedly so that Sears could be questioned about the statement of facts in that document. The defense objected to admission of the plea agreement. After considering the arguments of the parties and engaging in a colloquy with the parties, the Court admitted the plea agreement into evidence as Government Exhibit #446.[2] Incredibly, though, the Government then declined to ask Mr. Sears any questions whatsoever about the plea agreement.

The Exhibit: The Sears plea agreement contains a 29-page statement of the factual basis for Sears's guilty plea. This statement contains an in-depth recitation and explanation of the "historical case", which the Government is attempting to prove against Mr. Jean-Pierre in the trial of this case. Mr. Jean-Pierre is referred to in the statement of facts as "Co-Conspirator A", but his identity is easily discernible by anyone with even a passing knowledge of this case.

The Law: The plea agreement is clearly hearsay because the plea agreement was offered for the proof of the matters put forth in the statement of facts contained in the plea agreement. As such, the plea agreement should not be admitted into evidence. In arguing this matter this afternoon, the prosecution argued that the plea agreement be admitted as an exception to the hearsay rule under Fed.R.Evid. 803(5). However, under Fed.R.Evid. 803(5), a record may be admitted into evidence, irrespective of the availability of the declarant, only when the record: "(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully

[2] Again, though, as noted, *supra*., the Exhibit was not published to the jury because of a paucity of copies.

Case 1:17-cr-00008-WJM Document 187 Filed 01/16/19 Page 3 of 6

and accurately;[3] (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge. In addition, the Rule goes on to state that "[i]f admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party.

Admissibility: The Sears plea agreement thus fails to be admissible on several grounds under the Rule. To begin with, by failing to ask Sears any predicate questions, the Government did not establish that the plea agreement dealt with a matter that the witness once knew about but could now cannot recall well enough to testify fully and accurately. Secondly, the Government did not have Sears establish that the statement of facts within the plea agreement was made by the witness when then matter was fresh in Sears' mind[4] or that the statement of facts accurately reflected his knowledge. Finally, the plea agreement was not read into evidence, and the document certainly was not offered as an exhibit by the adverse party, namely the defense. For each of these reasons, the Sears plea agreement should not be in evidence.

Moreover, the defense respectfully urges the Court to consider the following. For much of the three days that Mr. Sears testified, the prosecution clearly was frustrated by the substance of his testimony and by the Government's inability to elicit information from Sears that was consistent with the Government's theory of prosecution of Defendant Guy Jean-Pierre. Instead of being stuck with that unhelpful

---

[3] A witness's inability to testify fully and accurately from memory is foundational element for admission of a record under Fed.R.Evid. 803(5). United States v. Dazey, 403 F.3d 1147, 1166 (10th Cir. 2005).

[4] Indeed, the statement of facts references matters that occurred years before 2016, when Sears executed the plea agreement.

Case 1:17-cr-00008-WJM Document 187 Filed 01/16/19 Page 4 of 6

testimony of its own witness, though, the Government, at the final point of Sears' time on the witness stand, under the guise of supposedly intending to question him about his plea agreement, instead got something infinitely better: admission of the plea agreement itself, which contains in the statement of facts a very nice, neat, written explanation of the complicated historical case, which implicates Defendant Jean-Pierre. With this plea agreement in evidence, in closing argument, the Government need not address Sears's live testimony whatsoever; all the prosecution need do is refer the jury to the statement of facts in Sears' plea agreement. The Court should not countenance this end-run-around by the Government and should instead keep the plea agreement out of evidence.

Moreover, the Court also should keep the Sears plea agreement out of evidence because the document, as admitted, implicates Defendant Jean-Pierre's 6th Amendment Confrontation Clause rights. The statement of facts in the plea agreement is a confession by Sears of his wrongdoing in the historical case and, as noted previously, implicates Jean-Pierre. However, since by and large Sears did not testify to his "confession" on his direct examination, the defense did not cross-examine on the topic. Since the confession now has come in, only on re-direct, with no further opportunity for questions by the defense, Mr. Jean-Pierre has been denied the opportunity to confront Sears about the confession. This would seem a problem under Crawford v. Washington, 541 U.S. 36 (2004) and its progeny and might constitute reversible error.

For all the foregoing reasons, therefore, Defendant Jean-Pierre respectfully urges that the Court reconsider its ruling earlier today and instead keep the Sears

Case 1:17-cr-00008-WJM Document 187 Filed 01/16/19 USDC Colorado Page 5 of 6

plea agreement out of evidence.

Dated this 16th day of January, 2019.

Respectfully submitted,

s/Thomas E. Goodreid
Thomas E. Goodreid
Attorney at Law
1801 Broadway, Suite 1400
Denver, CO 80202
(303) 296-2048x.136
*t.goodreid@comcast.net*
Attorney for Defendant Guy M. Jean-Pierre

**CERTIFICATE OF SERVICE**

I certify that on this 16th day of January, 2019, I electronically filed the foregoing **DEFENDANT'S MOTION FOR RECONSIDERATION OF ADMISSION OF GOVERNMENT'S EXHIBIT #446** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/Thomas E. Goodreid
Thomas E. Goodreid
Attorney at Law
1801 Broadway, Suite 1400
Denver, CO 80202
(303) 296-2048x.136
*t.goodreid@comcast.net*
Attorney for Defendant Guy M. Jean-Pierre

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 1 of 72

## FINAL LIST OF PROPOSED EXHIBITS

144

CASE NO. 17-cr-00008-WJM PLAINTIFF'S LIST: ☒ DEFENDANT'S LIST: ☐ THIRD PTY DEFTS. LIST: ☐

CASE CAPTION United States vs. Guy Jean-Pierre DATE: January 14, 2018

LIST PLAINTIFF'S EXHIBITS BY NUMBERS (1, 2, 3, etc.) and DEFENDANT'S BY LETTER (A, B, C, etc.)

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 1 | W. Sears FBI UC#1 | DVD - Audio Only - 2014-05-14 Recording of Meeting at FSPM Office 1D6 | | | | | | | |
| 1a | W. Sears FBI UC#1 | DVD - Video/Audio - 2014-05-14 Recording of Meeting at FSPM Office 1D7 Disk 1 of 2 | | | | | | | |
| 1b | W. Sears FBI UC#1 | DVD - Video/Audio - 2014-05-14 Recording of Meeting at FSPM Office 1D7 Disk 2 of 2 | | | | | | | |
| 2 | | | | | | | | | |
| 2a | W. Sears FBI UC#1 | 2014-05-14 (Excerpt 1) Recording of Meeting at FSPM Office - Synced Video & Transcript | | | | | | | |
| 2b | W. Sears FBI UC#1 | 2014-05-14 (Excerpt 2) Recording of Meeting at FSPM Office - Synced Video & Transcript | | | | | | | |
| 2c | W. Sears FBI UC#1 | 2014-05-14 (Excerpt 3) Recording of Meeting at FSPM Office - Synced Video & Transcript | | | | | | | |
| 2d | W. Sears FBI UC#1 | 2014-05-14 (Excerpt 4) Recording of Meeting at FSPM Office - Synced Video & Transcript | | | | | | | |

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 2e | W. Sears FBI UC#1 | 2014-05-14 (Excerpt 5) Recording of Meeting at FSPM Office - Synced Video & Transcript | | | | | | | |
| 2f | W. Sears FBI UC#1 | 2014-05-14 (Excerpt 6) Recording of Meeting at FSPM Office - Synced Video & Transcript | | | | | | | |
| 3 | W. Sears FBI UC#1 | Transcript - 2014-05-14 Recording of Meeting at FSPM Office | | | | | | | |
| 4 | S. Dittman FBI UC#1 | DVD - Audio Only - 2014-07-18 Recording of Meeting with Scott Dittman at Starbucks 1D9 | | | | | | | |
| 4a | S. Dittman FBI UC#1 | DVD - Video/Audio - 2014-07-18 Recording of Meeting with Scott Dittman at Starbucks 1D10 | | | | | | | |
| 5 | | | | | | | | | |
| 5a | S. Dittman FBI UC#1 | 2014-07-18 (Excerpt 1) Recording of Meeting with Scott Dittman at Coffeeshop - Synced Video & Transcript | | | | | | | |
| 5b | S. Dittman FBI UC#1 | 2014-07-18 (Excerpt 2) Recording of Meeting with Scott Dittman at Coffeeshop - Synced Video & Transcript | | | | | | | |
| 6 | S. Dittman FBI UC#1 | Transcript - 2014-07-18 Recording of Meeting with Scott Dittman at Starbucks | | | | | | | |
| 7 | | | | | | | | | |
| 8 | OTC | OTC Attorney Letter Agreements - Jean-Pierre | | | | | | | |
| 9 | OTC | Summary Chart - OTC Filings | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 3 of 12

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 10 | OTC | Letter from OTC Markets to Jean-Pierre re: List of Prohibited Attorneys | | | | | | | |
| 11 | OTC | Email from Heese to Finra dated 6/6/2011 with subject "Guy Jean Pierre and his successors" | | | | | | | |
| 12 | OTC | OTC Filing - FusionPharm Information and Disclosure Statement for the period ended June 30, 2011 | | X | | | | | |
| 13 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended June 30, 2011 | | X | | | | | |
| 14 | OTC | OTC Filing - FusionPharm Statement of Income for period ended June 30, 2011 | | X | | | | | |
| 15 | OTC | OTC Filing - FusionPharm Notes to Financial Statements for period ended June 30, 2011 | | X | | | | | |
| 16 | OTC | Email from Dittman to OTC Markets dated 12/02/2011 subject: "RE: OTCIQ User: Company Information Update for Fusion Pharm, Inc. | | X | | | | | |
| 17 | OTC | OTC Filing - FusionPharm Statement of Income for period ended September 30, 2011 | | X | | | | | |
| 18 | OTC | OTC Filing - FusionPharm Notes to Financial Statements for period ended September30, 2011 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 4 of 72

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 19 | OTC Bodden Duke | OTC Filing - FusionPharm Annual Information and Disclosure Statement for period ended December 31, 2011 | | X | | | | | |
| 19a | OTC Bodden | OTC Filing - FusionPharm Quarterly Report for the period ended March 31, 2012 | | X | | | | | |
| 19b | OTC Bodden | OTC Filing - FusionPharm Quarterly Report for the period ended June 30, 2012 | | X | | | | | |
| 19c | Bodden | OTC Filing - FusionPharm Quarterly Report for the period ended September 30, 2012 | | X | | | | | |
| 20 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended September 30, 2011 | | X | | | | | |
| 21 | OTC | OTC Filing - FusionPharm Information and Disclosure Statement for the period ended September 30, 2011 | | X | | | | | |
| 22 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended December 31, 2011 | | X | | | | | |
| 23 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended March 31, 2012 | | X | | | | | |
| 24 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended June 30, 2012 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 5 of 42

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 25 | OTC DiTommaso | OTC Filing - FusionPharm Annual Information and Disclosure Statement for period ended December 31, 2012 | | X | | | | | |
| 26 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended December 31, 2012 | | X | | | | | |
| 27 | OTC | OTC Filing - FusionPharm Quarterly Report for the period ended March 31, 2013 | | X | | | | | |
| 28 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended March 31, 2013 | | X | | | | | |
| 29 | OTC | OTC Filing - FusionPharm OTC Pink Basic Disclosure Guidelines filled in by FSPM | | X | | | | | |
| 30 | OTC | OTC Filing - FusionPharm Quarterly Report for the period ended June 30, 2013 | | X | | | | | |
| 31 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended June 30, 2013 | | X | | | | | |
| 32 | Dahlman | Email from Sears to Dahlman dated 09/14/2010 attaching Debt Settlement Agreement signed by Dahlman and Sears | | X | | | | | |
| 33 | Dahlman | Email from Sears to Dahlman on 11/08/2010 Instruction for share transfers to Dahlman, Microcap and Salt | | X | | | | | |
| 34 | Dahlman | Frederick and Belle Dahlman's resignation from Baby Bee Bright | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 6 of 12

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 35 | Dahlman R. Dittman | Email from Sears to Fred Dahlman dated 11/19/2010 Instruction for share transfers to Dahlman, Microcap, Robert Dittman, and Salt | | X | | | | | |
| 36 | Dahlman | Letter from Dahlman to Pacific Stock Transfer Co. with instructions for share transfers | | X | | | | | |
| 37 | Dahlman | Email from Sears to Dahlman dated 03/01/2011 attaching Letter of Transfer of Series A Preferred Shares of Baby Bee Bright to Microcap to be given to DiBella | | X | | | | | |
| 38 | | | | | | | | | |
| 39 | | | | | | | | | |
| 40 | W. Sears Blume | Email from Sears to bjohn@mazdaoflakewood.dealercrm cc Blume dated 1/30/2012 attaching Blume letter | | X | | | | | |
| 41 | Blume | Email from Blume to Dittman dated 7/5/2012 with subject "FYI" | | X | | | | | |
| 42 | | | | | | | | | |
| 43 | Bohlender | Email from Bohlender to Dittman dated 8/15/2011 with subject "Billy's role and the company structure" | | X | | | | | |
| 44 | Bohlender | Email from Bohlender to Dittman dated 9/14/2011 with subject "Hey" | | X | | | | | |
| 45 | | | | | | | | | |
| 46 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 7 of 12

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 47 | Saia | Oppenheimer -Due Diligence and Wire Instructions for Microcap Management account ending in 9990 | | | | | | | |
| 48 | | | | | | | | | |
| 49 | | | | | | | | | |
| 50 | L. Jean-Pierre | Leslie Jean-Pierre SEC testimony | | | | | | | |
| 51 | L. Jean-Pierre | Leslie Jean-Pierre Grand Jury testimony in the NY state case on 8/15/2013 | | | | | | | |
| 52 | L. Jean-Pierre | OTC Attorney Letter Agreements - Dinwoodie | | | | | | | |
| 53 | OTC | Attorney Letter Agreement v2.4 January 14, 2011 | | X | | | | | |
| 54 | OTC | Guidelines for Providing Adequate Current Information - v. 10.0 updated 1/14/2011 - | | X | | | | | |
| 55 | OTC | Guidelines for Providing Adequate Current Information - v. 10.1 updated 1/31/2012 | | X | | | | | |
| 56 | OTC | Pink Basic Disclosure Guidelines v. 1.0 updated 1/3/2013 | | X | | | | | |
| 57 | OTC | Pink Basic Disclosure Guidelines v. 1.1 updated 4/25/2013 | | X | | | | | |
| 58 | | | | | | | | | |
| 59 | | | | | | | | | |
| 60 | PSTC - DiBella Dahlman W. Sears | Email from Dibella to Sears and Dahlman dated 12/2/2010 with subject "Transfer of BBYB Preferred Shares (Cert No 1007)" | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 8 of 72

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 61 | PSTC - DiBella Dahlman | PSTC packet for transaction number 10701 | | X | | | | | |
| 62 | PSTC - DiBella Kramer W. Sears | Email from Jean-Pierre to Dibella with cc Sears dated 2/11/2011 with subject "BBYB Information" | | X | | | | | |
| 63 | PSTC - DiBella Dahlman | PSTC packet for transaction number 12834 | | X | | | | | |
| 64 | | | | | | | | | |
| 65 | PSTC - DiBella | Email from Dibella to Beth Looker cc Claiborne dated 11/7/2012 with subject "FusionPharm notes?" | | X | | | | | |
| 66 | PSTC - DiBella | Email from DiBella to Dittman dated 12/17/2012 attaching a convertible note between Bayside Realty Holdings and Fusion Pharm from Sandra Sears to DiBella dated 12/13/2012 | | X | | | | | |
| 67 | PSTC - DiBella W. Sears | Email from Sandra Sears to Dibella cc Sears dated 12/24/2012 with subject "Convertible note" | | X | | | | | |
| 68 | | | | | | | | | |
| 69 | PSTC - DiBella W. Sears | Email from Sears to Dibella dated 12/26/2012 with subject "Convertible note" | | X | | | | | |
| 70 | PSTC - DiBella W. Sears | Email #2 from Sears to Dibella dated 12/26/2012 with subject "Convertible note" | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 9 of 72

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 71 | PSTC - DiBella W. Sears | Email from Dibella to Sears dated 12/27/2012 with subject "Convertible note" | | X | | | | | |
| 72 | PSTC - DiBella DiTommaso Ssears | PSTC packet for transaction number 12986 | | X | | | | | |
| 73 | PSTC - DiBella | FedEx Tracking number 794557022916 | | X | | | | | |
| 74 | PSTC - DiBella W. Sears | Email from Sears to Dibella dated 3/7/2013 with subject "BSRH Note LOP.pdf attaching DiTommaso Attorney Opinion Letters | | X | | | | | |
| 75 | PSTC - DiBella W. Sears | Email from Dibella to Sears cc Dittman dated 3/11/2013 with blank subject | | X | | | | | |
| 76 | PSTC - DiBella DiTommaso S. Sears (mom) | PSTC packet for transaction number 12992 | | X | | | | | |
| 77 | PSTC - DiBella W. Sears | Email from Sears to Dibella cc Dittman dated 4/11/2013 with subject "Meadpoint Venture Partners FSPM" | | X | | | | | |
| 78 | PSTC - DiBella DiTommaso | PSTC packet for transaction number 12998 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 10 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 79 | PSTC - DiBella DiTommaso | PSTC packet for transaction number 13002 | | X | | | | | |
| 80 | PSTC - DiBella | FedEx Tracking number 796476186341 | | X | | | | | |
| 81 | PSTC - DiBella W. Sears | Email from Sears to Dibella dated 8/27/2013 with subject "Mdpt" attaching DiTommaso Attorney Opinion Letter and Credit Card Authorization | | X | | | | | |
| 82 | PSTC - DiBella W. Sears | Email from Dibella to Sears dated 8/27/2013 with subject "Mdpt" | | X | | | | | |
| 83 | PSTC - DiBella W. Sears | Email from Sears to Dibella dated 8/29/2013 with "Mdpt" | | X | | | | | |
| 84 | PSTC - DiBella DiTommaso Thaden Scholz | PSTC packet for transaction number 13003 | | X | | | | | |
| 85 | PSTC - DiBella W. Sears | Email from Sears to PSTC dated 9/19/2013 with subject "Issuance" | | X | | | | | |
| 86 | | | | | | | | | |
| 87 | | | | | | | | | |
| 88 | | | | | | | | | |
| 89 | | | | | | | | | |
| 90 | PSTC - Claiborne | List of Attorneys for Heightened Review | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 11 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 91 | PSTC - Claiborne S. Sears (mom) | Baby Bee Bright Shareholder consent to appoint Dittman and Sandra Sears | | X | | | | | |
| 92 | PSTC - Claiborne Kramer W. Sears | Email from Sears to PSTC and Jean-Pierre dated 2/15/2011 with subject "Baby Bee Bright Corporation Reverse Split" | | X | | | | | |
| 93 | PSTC - Claiborne | Email from Upham to PSTC dated 2/16/2011 with subject "Baby Bee Bright Corporation Reverse Split" | | X | | | | | |
| 94 | PSTC - Claiborne | Letter from Jean-Pierre to NASDAQ OMX Group dated 2/16/2011 | | X | | | | | |
| 95 | PSTC - Claiborne | PSTC packet for transaction number 12883 | | X | | | | | |
| 96 | PSTC - Claiborne | BBYB: Reverse Split Information | | X | | | | | |
| 97 | PSTC - Claiborne S. Sears (wife) Scholz | PSTC packet for transaction number 12868 | | X | | | | | |
| 98 | PSTC - Claiborne | PSTC packet for transaction numbers 12895 and 12900 | | X | | | | | |
| 99 | PSTC - Claiborne Scholz | PSTC packet for transaction numbers 12895 and 12900 | | X | | | | | |
| 100 | PSTC - Claiborne Abott | Email from Dittman to Eldridge dated 05/16/2011 attaching Certificate Order dated 05/09/2011 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 12 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 101 | PSTC - Claiborne S. Sears (wife) | PSTC packet for transaction number 12903 | | X | | | | | |
| 102 | PSTC - Claiborne | PSTC packet for transaction number 12905 | | X | | | | | |
| 103 | PSTC - Claiborne S. Sears (wife) | PSTC packet for transaction number 12912 | | X | | | | | |
| 104 | PSTC - Claiborne | PSTC packet for transaction number 12913 | | X | | | | | |
| 105 | PSTC - Claiborne | Email from Jean-Pierre to PSTC cc Dittman dated 7/12/2011 with subject "Guy Jean Pierre" | | X | | | | | |
| 106 | PSTC - Claiborne S. Sears (mom) S. Sears (wife) | PSTC packet for transaction numbers 12917 and 12918 | | X | | | | | |
| 107 | PSTC - Claiborne W. Sears | Emails from Sears to PSTC dated August 3, 2011 with subject "FSPM Preferred Stock Certificate" | | X | | | | | |
| 108 | PSTC - Claiborne S. Sears (mom) | PSTC packet for transaction number 12924 | | X | | | | | |
| 109 | PSTC - Claiborne S. Sears (mom) | PSTC packet for transaction number 12935 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 13 of 32

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 110 | PSTC - Claiborne R. Dittman S. Sears (mom) | PSTC packet for transaction number 12940 | | X | | | | | |
| 111 | PSTC - Claiborne R. Dittman | PSTC packet for transaction number 12945 | | X | | | | | |
| 112 | PSTC - Claiborne | Email from PSTC to Jean-Pierre dated 4/5/2012 with subject "FSPM Information" | | X | | | | | |
| 113 | PSTC - Claiborne R. Dittman | PSTC packet for transaction numbers 12951, 12952, and 12953 | | X | | | | | |
| 114 | PSTC - Claiborne | FedEx Tracking number 800575942347 | | X | | | | | |
| 115 | PSTC - Claiborne W. Sears | Email from Sears to Claiborne dated 7/31/2012 with subject "FSPM Cert" attaching due diligence package | | X | | | | | |
| 116 | PSTC - Claiborne DiTommaso Abbott | PSTC packet for transaction number 12964 | | X | | | | | |
| 117 | PSTC - Claiborne | FedEx Tracking number 798688446223 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 14 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 118 | PSTC - Claiborne | Email from Jean-Pierre to PSTC cc Dittman dated 9/24/2012 with subject "Follow up re 70,000 restricted shares issued November 2011" attaching (unsigned) letter from Dittman to PSTC | | X | | | | | |
| 119 | | | | | | | | | |
| 120 | Scottsdale | Scottsdale documents related to the opening of Microcap account on 7/13/2012 | | | | | | | |
| 121 | Scottsdale | Documents provided by Scottsdale/Alpine related to Microcap's deposit of 16,273 shares of FusionPharm on approximately 8/6/2012 | | | | | | | |
| 122 | Scottsdale | Documents provided by Scottsdale/Alpine related to Microcap's deposit of 40,000 shares of FusionPharm on approximately 8/1/2012 | | X | | | | | |
| 123 | Scottsdale | Signed letter from Dittman to Scottsdale dated 8/8/2012 relating to stock certificate 11176 for 40,000 shares | | X | | | | | |
| 124 | W. Sears Scottsdale | Email from Sears to Craig D'Mura at Scottsdale dated 8/10/2012 | | X | | | | | |
| 125 | | | | | | | | | |
| 126 | Scottsdale | Scottsdale Account ending in 4611 - Opening Documents for Bayside | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 15 of 32

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 127 | Scottsdale | Documents provided by Scottsdale/Alpine related to Bayside's deposit of 140,000 shares of FusionPharm on approximately 1/21/2013 | | | | | | | |
| 128 | | | | | | | | | |
| 129 | Scottsdale | Scottsdale documents related to the opening of Meadpoint account on 4/11/2013 | | | | | | | |
| 130 | | | | | | | | | |
| 131 | Scottsdale | Documents provided by Scottsdale/Alpine related to Meadpoint's deposit of 475,000 shares of FusionPharm on approximately 4/18/2013 | | | | | | | |
| 132 | | | | | | | | | |
| 133 | Scottsdale | Email from Sears to Scottsdale dated 8/19/2013 containing two attachments with supporting documentation for Meadpoint's deposit of 500,000 shares | | X | | | | | |
| 134 | Scottsdale | Documents provided by Scottsdale/Alpine related to Meadpoint's deposit of 500,000 shares of FusionPharm on approximately 8/23/2013 | | | | | | | |
| 135 | Kramer | Emails between Dittman and Kramer at FINRA from 10/6/2011 through 11/14/2011 with attachments | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 16 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 136 | Kramer | Emails between Dittman and Kramer at FINRA from 10/5/2011 through 11/30/2011 | | X | | | | | |
| 137 | Kramer | Finra Investigation Timeline | | | | | | | |
| 138 | Kramer | Record of Oppenheimer response to FINRA requests and copy of 5 FINRA requests | | | | | | | |
| 139 | Kramer | Documents provided by Oppenheimer to FINRA related to account number G51-1429990 held in the name Microcap Management LLC | | | | | | | |
| 140 | Scholz | Email from Sears to Jean-Pierre with cc to Scholz dated 04/19/2011 attaching Special Board of Directors Meeting dated 08/20/2007, Dahlman Resignation dated 11/15/2010 and Baby Bee Bright Preferred Stock Origin dated 04/15/2011 | | X | | | | | |
| 141 | Scholz W. Sears | Email from Sears to Scholz dated 10/19/2011 attaching Stock Purchase Agreement dated 05/09/2011 between Scholz and Sears | | X | | | | | |
| 142 | Scholz W. Sears | Email from Sears to Scholz dated 11/08/2011 attaching Company Purchase 05/09/2011 and Share Purchase Agreement 11/02/2011 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 17 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 143 | Scholz<br>DiTommaso<br>W. Sears | Email from Sears to Scholz dated 06/18/2012 attaching M&C Due Diligence dated 06/18/2012 | | X | | | | | |
| 144 | Scholz<br>S. Sears (mom)<br>W. Sears | Email from Sears to Casskri1120@aol.com cc Scholz dated 2/7/2013 with subject "Scottsdale" | | X | | | | | |
| 145 | Scholz | Richard Scholz - Declaration | | | | | | | |
| 146 | | | | | | | | | |
| 147 | | | | | | | | | |
| 148 | | | | | | | | | |
| 149 | | | | | | | | | |
| 150 | Abbott | Email from Dittman to Dittman dated 04/21/2011 subject: "Fusion Pharm" | | X | | | | | |
| 151 | Abbott | E-mail from Dittman to Abbott with subject "evite" | | X | | | | | |
| 152 | Abbott | Email from Dittman to Abbott dated 07/13/2011 subject: "Follow Up" | | X | | | | | |
| 153 | Thaden | Email from Thaden to Dittman dated 08/05/2013 subject "Fwd: conversation follow up" | | X | | | | | |
| 154 | Thaden | Email from lldittman22@gmail to Dittman dated 8/6/2013 with subject "conversation follow up" | | X | | | | | |
| 155 | Thaden | Email from Sears to Thaden cc Dittman dated 8/13/2013 with subject "FSPM" | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 18 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 156 | Thaden | Email from Thaden to Sears cc Dittman dated 8/14/2013 with subject "drafting an agreement" | | X | | | | | |
| 157 | W. Sears S. Sears (mom) | Sandra Sears SEC transcript from testimony on 11/18/2015 | | X | | | | | |
| 158 | W. Sears S. Sears (mom) | Check Number 5014 from Bayside to Jean-Pierre for $2500 | | X | | | | | |
| 159 | W. Sears S. Sears (mom) | Check Number 5047 from Bayside to Jean-Pierre for $2500 | | X | | | | | |
| 160 | W. Sears S. Sears (mom) | Check Number 5057 from Bayside to Jean-Pierre for $500 | | X | | | | | |
| 161 | W. Sears S. Sears (mom) | Check Number 5063 from Bayside to Jean-Pierre for $3000 | | X | | | | | |
| 162 | W. Sears S. Sears (mom) | Check Number 5069 from Bayside to Jean-Pierre for $2500 | | X | | | | | |
| 163 | W. Sears S. Sears (mom) | Check Number 5082 from Bayside to Jean-Pierre for $500 | | X | | | | | |
| 164 | W. Sears S. Sears (mom) | Check Number 5116 from Bayside to Jean-Pierre for $500 | | X | | | | | |
| 165 | W. Sears S. Sears (mom) | Check Number 5101 from Bayside to Jean-Pierre for $2500 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 19 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 166 | W. Sears S. Sears (mom) | Check Number 5104 from Bayside to Jean-Pierre for $500 | | X | | | | | |
| 167 | R. Dittman | Email from Dittman to Robert Dittman and Jamey Fader dated 9/17/2012 with subject "Vertifresh" | | X | | | | | |
| 168 | W. Sears Kocinski | Email from Kocinski to Sears cc Dittman dated 11/21/2011 with subject "Sept 30s" | | X | | | | | |
| 169 | W. Sears Kocinski | Email from Dittman to Kocinski and Sears with cc to Jean-Pierre dated 11/23/2011 subject: "RE: Sept 30s" | | X | | | | | |
| 170 | W. Sears Kocinski | Email from Sears to Dittman and Jean-Pierre with cc to Kocinski dated 11/28/2011 subject: "FW:Financial Statements" | | X | | | | | |
| 171 | W. Sears Kocinski | Email from Sears to Dittman and Jean-Pierre dated 12/22/2011 attaching Financial Statements FusionPharm 3rd Quarter 2011, Fusion Pharm Shareholders Statement dated 09/30/2011, and Fusion Pharm Financial Statement Notes dated 09/30/2011 | | X | | | | | |
| 172 | Kocinski | Email from Dittman to Kocinski dated 03/28/2012 attaching Fusion Pharm Financials dated 12/31/2011 | | X | | | | | |
| 173 | W. Sears Kocinski | Email from Sears to Kocinski and Dittman dated 3/25/2012 with subject "12/31/12 financials" | | X | | | | | |

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 174 | W. Sears Kocinski | Email from Sears to Jean-Pierre with cc to Kocinski dated 04/03/2012 subject: "FSPM" | | X | | | | | |
| 175 | W. Sears Kocinski | Email from Sears to Kocinski cc:ing Jean-Pierre dated 06/07/2012 | | | | | | | |
| 176 | W. Sears Kocinski | Email from Kocinski to Sears re Quarterly Report June 2012 | | X | | | | | |
| 177 | W. Sears Kocinski | Email from Sears to Dittman and Jean-Pierre forwarding email from Kocinski to Jean-Pierre with cc to Sears and Dittman dated 06/07/2012 subject: "FW: FSPM Financial Statements as of 3/31/12" | | X | | | | | |
| 178 | W. Sears Kocinski | Email from Kocinski to Jean-Pierre with cc to Sears, Dittman, and Bodden dated 11/21/2012 subject "Fusion Pharm Financials for Period Ending 9/30/12" | | X | | | | | |
| 179 | W. Sears Kocinski | Email from Kocinski to Jean-Pierre with cc to Sears and Dittman dated 03/06/2013 subject "Fusion Pharm Financials for Period Ending 12/31/12" | | X | | | | | |
| 180 | DiTommaso | Information and Disclosure Statement for the Period Ended 06/30/2011 | | X | | | | | |
| 181 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 12/27/2011 attaching document named "FSPM_LawFirm_AttorneyLetter_12.27.11" | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 21 of 32

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 182 | DiTommaso | Tod DiTommaso invoice submitted to Jean-Pierre dated 1/15/2012 | | X | | | | | |
| 183 | DiTommaso Kocinski | Email from Jean-Pierre to DiTommaso dated 06/11/2012 forwarding confirmation from Kocinski who prepared FSPM Financial Statements period ended 03/31/2012 | | X | | | | | |
| 184 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 4/6/2012 attaching document named "FSPM_LawFirm_AttorneyLetter_04.05.12" | | X | | | | | |
| 185 | | | | | | | | | |
| 186 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 5/1/2012 attaching various documents for the Pawson, Padilla, OTC and For Your Information transaction | | X | | | | | |
| 186a | DiTommaso | Drafted Attorney Opinion Letter for For Your Information, Inc | | X | | | | | |
| 186b | DiTommaso | Drafted Attorney Opinion Letter for OTC Market Services | | X | | | | | |
| 186c | DiTommaso | Drafted Attorney Opinion Letter for Padilla | | X | | | | | |
| 186d | DiTommaso | Drafted Attorney Opinion Letter for Pawson | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 22 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 186e | DiTommaso | Signed Officer's Certificate for Pawson, Padilla, OTC Market Services and For Your Information transaction | | X | | | | | |
| 186f | DiTommaso | Pawson, Padilla, For Your Information Letters requesting to remove the legend | | X | | | | | |
| 186g | DiTommaso | OTC Market Services Letters requesting to remove the legend | | X | | | | | |
| 186h | DiTommaso | FusionPharm Stock Certificates 11159, 11160, 11161, 11162 | | X | | | | | |
| 187 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 6/6/2012 attaching four files related to a Microcap Opinion Letter. | | X | | | | | |
| 187a | DiTommaso | FSPM Stock Certificate number 11167 for 190,000 shares in the name Microcap Management | | X | | | | | |
| 187b | DiTommaso | Signed FSPM - Microcap Non-Affiliation Form | | X | | | | | |
| 187c | DiTommaso | FusionPharm Officer's Certificate relating to stock certificat number 11167 | | X | | | | | |
| 187d | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to stock certificate number 11167 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 23 of 32

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 188 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 06/11/2012 forwarding share structure provided by PSTC | | X | | | | | |
| 189 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 6/11/12 with subjet "FSPM Pink Sheets Opn Ltr" attaching document named "FSPM_LawFirm_AttorneyLetter_06.06.12" | | X | | | | | |
| 190 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 6/13/2012 with subject "Revised FSPM Pink Sheets Opn Ltr" attaching document named "FSPM_LawFirm_AttorneyLetter_06.13.12_R" | | X | | | | | |
| 191 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 7/2/2012 with subject "FSPM-MICROCAP OPN LTR" attaching a revised Microcap Attorney Opinion Letter | | X | | | | | |
| 191a | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to stock certificate 11167 | | X | | | | | |
| 192 | DiTommaso | Email from Jean-Pierre to DITommaso dated 7/21/2012 with subject "FSPM Abbott-Microcap Opinion Letter" | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 24 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 192a | DiTommaso | Packet of documents related to Abbott transaction to include the Debt Settlement Agreement, Officer's Certificate, Stock Certificate number 7385, and Share Purchase Agreement | | X | | | | | |
| 192b | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to stock certificate 7385 | | X | | | | | |
| 193 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 8/15/2012 with subject "FSPM Pink Sheets Opn Ltr - Period ending June 30, 2012" attaching document named "FSPM_LawFirm_AttorneyLetter_08.09.12" | | X | | | | | |
| 193a | DiTommaso | FusionPharm Shareholder Report through 06/30/12 | | X | | | | | |
| 194 | DiTommaso | Signed Officer's Certificate dated 12/07/2012 | | X | | | | | |
| 195 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 12/13/2012 with subject "FSPM - Bayside: 144 Debt Conversion Opinion Letter" | | X | | | | | |
| 195a | DiTommaso | Signed Bayside Line of Credit Agreement dated 5/2/2011 | | X | | | | | |
| 195b | DiTommaso | Bayside Non-Affiliation Letter dated December 6, 2012 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 25 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 195c | DiTommaso | Bayside Notice of Conversion for 140,000 shares of FusionPharm | | X | | | | | |
| 195d | DiTommaso | Officer's Certificate dated 12/7/12 for 140,000 shares of Bayside | | X | | | | | |
| 195e | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 140,000 shares of FSPM converted from the Bayside note dated 12/13/2012 | | X | | | | | |
| 196 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 12/21/2012 with subject "FSPM - Bayside: Final 144 Debt Conversion Opinion Letter" | | X | | | | | |
| 196a | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 140,000 shares of FSPM converted from the Bayside note dated 12/21/2012 | | X | | | | | |
| 197 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 1/4/2013 with subject "Revised FSPM-Bayside Realty Opinion Letter" | | X | | | | | |
| 197a | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 140,000 shares of FSPM converted from the Bayside note dated 1/4/2012 | | X | | | | | |
| 197b | DiTommaso | Letter from Dittman dated 12/05/2012 authorizing to close the line of credit from Bayside Realty Holdings | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 26 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 198 | DiTommaso | Email from DiTommaso to Claiborne dated 7/26/2012 with subject "FSPM-Abbott-Microcap Opn Ltr" attaching the DiTommaso Attorney Opinion Letter | | X | | | | | |
| 199 | DiTommaso | Tod DiTommaso invoice submitted to Jean-Pierre dated 1/15/2013 | | X | | | | | |
| 200 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/4/2013 with subject "FSPM - STARCITY OPN LTR" attaching 3 documents related to the transaction | | X | | | | | |
| 200a | DiTommaso | Securities transfer agreement between Bayside Realty Holdings and Starcity Capital | | X | | | | | |
| 200b | DiTommaso | Starcity Capital - Notice of Conversion dated 2/27/2013 | | X | | | | | |
| 200c | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 137,500 shares of FSPM Starcity Capital converted from the Bayside note | | X | | | | | |
| 201 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/4/2013 with subject "FSPM - VERA GROUP OPN LTR" attaching 3 documents related to the transaction | | X | | | | | |
| 201a | DiTommaso | Securities transfer agreement between Bayside Realty Holdings and VERA GROUP | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 27 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 201b | DiTommaso | Vera Group - Notice of Conversion dated 2/27/2013 | | X | | | | | |
| 201c | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 12,500 shares of FSPM Vera Group converted from the Bayside note | | X | | | | | |
| 202 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/4/2013 with subject "FSPM - A. Mauriello Debt Conversion" attaching 3 documents related to the transaction | | X | | | | | |
| 202a | DiTommaso | Securities transfer agreement between Bayside Realty Holdings and Alexandra Mauriello | | X | | | | | |
| 202b | DiTommaso | Alexandra Mauriello - Notice of Conversion dated 2/27/2013 | | X | | | | | |
| 202c | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 25,000 shares of FSPM Mauriello converted from the Bayside note | | X | | | | | |
| 203 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/4/2013 with subject "FSPM - Black Arch Debt Conversion" attaching 4 documents related to the transaction | | X | | | | | |
| 203a | DiTommaso | Securities transfer agreement between Bayside Reality Holdings and Black Arch Opportunity Fund LP | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 28 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 203b | DiTommaso | Black Arch Opportunity Fund LP - Notice of Conversion dated 2/27/2013 | | X | | | | | |
| 203c | DiTommaso | FusionPharm Officer's Certificate dated 2/28/2013 relating to the sale of the Bayside Note | | X | | | | | |
| 203d | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 12,500 shares of FSPM Black Arch Opportunity Fund LP converted from the Bayside note | | X | | | | | |
| 204 | DiTommaso | Email from Rob Hoffman to DiTommaso dated 3/4/2013 with subject FSPM-Roy Legend Removal Opinion Letter | | X | | | | | |
| 205 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/4/2013 with subject "FSPM Pink Sheets Attorney Letter for period ending 12.31.12" | | X | | | | | |
| 205a | DiTommaso | Blank FusionPharm Officer and Directors Questionnaire for period ended December 31, 2012 | | X | | | | | |
| 205b | DiTommaso | FusionPharm Shareholder Report through 02/26/2013 | | X | | | | | |
| 206 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/5/2013 with subject "FSPM-SGI Group Debt Conversion" | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 29 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 206a | DiTommaso | Securities transfer agreement between Bayside Reality Holdings and SGI Group, LLC | | X | | | | | |
| 206b | DiTommaso | SGI Group LLC - Notice of Conversion dated 2/27/2013 | | X | | | | | |
| 206c | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 12,500 shares of SGI Group converted from the Bayside note | | X | | | | | |
| 207 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/6/2013 with subject "Re: FSPM OTC Markets Opn Ltr" attaching document named "FSPM_LawFirm_AttorneyLetter_03.06.13_R" | | X | | | | | |
| 208 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/11/2013 with subject "package - Dave Roy - FusionPharm" | | X | | | | | |
| 209 | DiTommaso | Email from Jean-Pierre to DITomasso dated 3/12/2013 with subject "FSPM-Black Additional Revised Opinion Letter(s) attaching 4 drafted Attorney Opinion Letters | | X | | | | | |
| 209a | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 25,000 shares of FSPM Mauriello converted from the Bayside note | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 30 of 32

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 209b | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 12,500 shares of FSPM SGI Group converted from the Bayside note | | X | | | | | |
| 209c | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 137,500 shares of FSPM Starcity Capital converted from the Bayside note | | X | | | | | |
| 209d | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 12,500 shares of FSPM Vera Group converted from the Bayside note | | X | | | | | |
| 210 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/12/2013 with subject "FSPM-Black Arch Debt Conversion Revised Letter" attaching 2 documents related to the transaction | | X | | | | | |
| 210a | DiTommaso | Letter dated 3/8/13 to DiBella from Dittman | | X | | | | | |
| 210b | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 12,500 shares of FSPM Black Arch Opportunity Fund LP converted from the Bayside note | | X | | | | | |
| 211 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/30/13 with subject "FSPM-Meadpoint Opinion" | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 31 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 211a | DiTommaso | Packet of documents related to conversion of 475,000 shares from the Meadpoint note to include the Officer's Certificate, the Meadpoint Note, the letter from Dittman to PSTC, and the Written Consent of the Board of Directors | | X | | | | | |
| 211b | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 475,000 shares of FSPM converted from the Meadpoint note dated 03/31/2013 | | X | | | | | |
| 212 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 8/22/2013 with subject "FSPM: Pink Sheets Letter - 06-30-13 Financials" | | X | | | | | |
| 212a | DiTommaso | FusionPharm Shareholder Report through 06/03/2013 | | X | | | | | |
| 212b | DiTommaso | FusionPharm Officer and Directors Questionnaire for period ended June 30, 2013 | | X | | | | | |
| 213 | DiTommaso | OTC Markets DiTommaso Opinion Letter dated 08/22/2013 (PDF) | | X | | | | | |
| 214 | DiTommaso | Email from Sears to Dittman dated 08/30/2013 attaching the signature page for Scholz and Thayden's Attorney Opinion Letter from Tod DiTommaso | | X | | | | | |

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 215 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 8/26/2013 with subject "FSPM: Opinion letter request" attaching 4 documents related to the transaction | | X | | | | | |
| 215a | DiTommaso | Due Diligence Documents related to the transfer to Scholz | | X | | | | | |
| 215b | DiTommaso | Due Diligence Documents related to the transfer to Myron Thaden | | X | | | | | |
| 215c | DiTommaso | Due Diligence Documents related to the transfer to Sharryn Thaden | | X | | | | | |
| 215d | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to the conversion of the Meadpoint note for shareholders Myron and Sharryn Thaden and Scholz | | X | | | | | |
| 216 | DiTommaso | Tod DiTommaso invoice submitted to Jean-Pierre dated 9/15/2013 | | X | | | | | |
| 217 | DiTommaso OTC | OTC Attorney Letter Agreements - DiTommaso | | X | | | | | |
| 218 | DiTommaso | FusionPharm Current Information Letters Reviewed and Verified by DiTommaso | | X | | | | | |
| 219 | DiTommaso | FusionPharm Attorney Opinion Letters Reviewed and Verified by DiTommaso | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 33 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 220 | DiTommaso | DiTommaso Invoices sent to Jean-Pierre | | X | | | | | |
| 221 | | | | | | | | | |
| 222 | | | | | | | | | |
| 223 | | | | | | | | | |
| 224 | | | | | | | | | |
| 225 | Duke | Andrew Duke's sketch of the FusionPharm Office located on Wynkoop Street | | X | | | | | |
| 226 | W. Sears Duke | Email from Sears to Dittman dated 09/28/2011 subject: "FW: Reservation Confirmation" | | X | | | | | |
| 227 | W. Sears Duke | Email from Dittman to Duke and Sears dated 10/12/2011 with subject "business plan update" | | X | | | | | |
| 228 | W. Sears Duke | Email from Duke to Dittman, Sears and Frank Falconer dated 10/20/2011 with subject "retreat" | | X | | | | | |
| 229 | W. Sears Duke | Email from Sears to Duke dated 3/23/2012 with subject "Status" | | X | | | | | |
| 230 | Duke | Email from Dittman to Duke dated 4/17/2012 with subject "Debt" | | X | | | | | |
| 231 | | | | | | | | | |
| 232 | | | | | | | | | |
| 233 | | | | | | | | | |
| 234 | | | | | | | | | |
| 235 | W. Sears Bodden | Email from Sears to Bodden cc Dittman dated 3/10/2011 with subject "Fusion Pharm" | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 34 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 236 | W. Sears Bodden | Email from Sears to Bodden dated 03/14/2011 attaching Affidavit of Cliff Bodden 03/14/2011 | | X | | | | | |
| 237 | W. Sears Bodden | Email from Jean-Pierre to Bodden with cc to Sears dated 03/14/2011 subject: "RE: Affidavit" | | X | | | | | |
| 238 | W. Sears Bodden | Email from Sears to Bodden dated 03/28/2011 forwarding email from Jean-Pierre to Sears attachinhg Baby Bee Bright Articles of Incorporation and Baby Bee Bright Supporting Documents | | X | | | | | |
| 239 | W. Sears Bodden | Email from Bodden to Malino with cc to Sears dated 03/24/2012 attaching FusionPharm 2-Page Summary and FusionPharm Private Investor Presentation | | X | | | | | |
| 240 | W. Sears Bodden | Email from Bodden to Dittman and Sears dated 03/31/2012 attaching Annual Information and Disclosure Statement dated 12/31/2011 and Annual Information and Disclosure Statement dated 12/31/2011 Revision from 03/31/2012 | | X | | | | | |
| 241 | | | | | | | | | |
| 242 | W. Sears Bodden | Email from Bodden to Malino cc Dittman and Sears dated 4/4/2012 with subject "Pro Forma Financial Projections" | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 35 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 243 | W. Sears Bodden | Email from Bodden to Dittman with cc to Sears dated 05/25/2012 attaching Financial Statements dated 03/2012 and 03/2011 | | X | | | | | |
| 244 | Bodden | Email from Bodden to Jean-Pierre dated 05/30/2012 subject: "RE: Meeting" | | X | | | | | |
| 245 | W. Sears Bodden | Email from Sears to Dittman forwarding email from Bodden to Sears dated 06/04/2012 attaching Promissory Note and Credit Line Agreement Draft | | X | | | | | |
| 246 | W. Sears Bodden | Email from Bodden to Sears dated 06/06/2012 attaching Bayside Loan Documents (8 attachments) | | X | | | | | |
| 247 | W. Sears Bodden | Email from Bodden to Sears dated 06/06/2012 attaching MeadPoint Loan Documents (5 attachments) | | X | | | | | |
| 248 | | | | | | | | | |
| 249 | W. Sears Bodden | Email from Sears to Bodden dated 06/12/2012 forwarding email from Jean-Pierre to Sears dated 06/11/2012 subject: "FSPM - OTC Markets Opn Ltr" | | X | | | | | |
| 250 | W. Sears Bodden | Email from Bodden to Sears with cc to Dittman and Jean-Pierre dated 06/13/2012 subject: "Capitoline Due Diligence" | | X | | | | | |
| 251 | W. Sears Bodden | Email from Bodden to Sears with cc to Dittman dated 06/15/2012 subject: "Due Diligence Items" | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 36 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 252 | W. Sears Bodden | Email from Sears to Bodden dated 06/17/2012 forwarding email from Jean-Pierre to Bodden subject: "RE: FSPM" | | X | | | | | |
| 253 | W. Sears Bodden | Email from Bodden to Jean-Pierre and Sears dated 06/18/2012 attaching Fusion Pharm 504 Offering Documents dated 06/2012 | | X | | | | | |
| 254 | W. Sears Bodden | Email from Sears to Bodden dated 6/19/2012 with blank subject | | X | | | | | |
| 255 | W. Sears Bodden | Email from Bodden to Dittman with cc to Jean-Pierre and Sears dated 06/20/2012 attaching Capitoline Due Diligence Package (14 attachments) | | X | | | | | |
| 256 | W. Sears Bodden | Email from Bodden to Nick Malino with cc to Sears and Barbarosh dated 06/20/2012 attaching the Due Diligence Package (14 attachments) | | X | | | | | |
| 257 | W. Sears Bodden | Email from Bodden to Sears dated 8/5/2012 with subject "Deposits" | | X | | | | | |
| 258 | W. Sears Bodden | Email from Sears to Bodden and Jean-Pierre dated 08/07/2012 forwarding email from Amanda Martin to Sears attaching Fusion Pharm Inc. Shareholders Report Common dated 06/30/2012 | | X | | | | | |
| 259 | W. Sears Bodden | Email from Bodden to Dittman with cc to Jean-Pierre and Sears dated 08/08/2012 attaching Quarterly Financials (6 attachments) | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 37 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 260 | W. Sears Bodden Kocinski | Email from Kocinski to Jean-Pierre with cc to Sears, Dittman, and Bodden dated 08/14/2012 subject: "Fusion Pharm Financials for Period Ending 06/30/12" | | X | | | | | |
| 261 | | | | | | | | | |
| 262 | W. Sears Bodden Kocinski | Email from Bodden to Dittman and Sears with cc to Kocinsky and Jean-Pierre dated 11/04/2012 attaching Quarterly Report 09/30/2012 | | X | | | | | |
| 263 | W. Sears Bodden Kocinski | Email from Dittman to Bodden and Sears with cc to Kocinski and Jean-Pierre dated 11/15/2012 subject "Quarterly Report - September 2012" | | X | | | | | |
| 264 | | | | | | | | | |
| 265 | W. Sears Bodden | Email from Bodden to Sears dated 11/26/2012 attaching Bayside Convertible Promissory Note and MeadPoint Convertible Promissory Note | | X | | | | | |
| 266 | Bodden | Email from Bodden to Dittman dated 12/27/2012 attaching a Letter of Authorization dated 12/05/2011 | | X | | | | | |
| 267 | | | | | | | | | |
| 268 | W. Sears Bodden | Email from Sears to Bodden dated 12/27/2012 forwarding email chain between Jean-Pierre, Sears and DiBella subject: "Fwd: Convertible Note" | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 38 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 269 | W. Sears Bodden | Email from Sears to Bodden dated 12/27/2012 with subject "Convertible note" | | X | | | | | |
| 270 | W. Sears Bodden | Email from Bodden to Sears dated 12/27/2012 attaching Sandra Sears Letter of Resignation dated 05/02/2011 | | X | | | | | |
| 271 | W. Sears Bodden | Email from Sears to Jean-Pierre and Bodden dated 12/27/2012 forwarding email from DiBella to Sears and Dittman subject: "Fwd: missing docs" | | X | | | | | |
| 272 | W. Sears Bodden | Email from Sears to Bodden cc Jean-Pierre and Dittman dated 12/27/2012 with subject Convertible Note | | X | | | | | |
| 273 | W. Sears Bodden | Email from Bodden to Jean-Pierre with cc to Sears dated 12/28/2012 attaching Drawdown Requests and Proof of Receipt documents (6 attachments) | | X | | | | | |
| 274 | W. Sears Bodden | Email from Sears to Dittman dated 1/23/2013 with subject FSPM-Bayside-Starcity STA 1-23-2013 not signed v1-3GJP | | X | | | | | |
| 275 | W. Sears Bodden Coleson | Email from Bodden to Sears and Dittman dated 1/31/2013 with blank subject attaching FSPM-Bayside-Starcity STA. | | X | | | | | |
| 276 | | | | | | | | | |
| 277 | | | | | | | | | |
| 278 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 39 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 279 | | | | | | | | | |
| 280 | Scoufis | FusionPharm Corporate Action Calendar | | | | | | | |
| 281 | Scoufis | Summary Chart - Pre-FusionPharm Converted Preferred Stock Analysis as of 2/28/11 | | X | | | | | |
| 282 | Scoufis | Summary Chart - Pre-FusionPharm Converted Preferred Stock Analysis as of 3/1/11 | | X | | | | | |
| 283 | Scoufis | Summary Chart - Pre-FusionPharm Converted Preferred Stock Analysis as of 3/16/11 | | X | | | | | |
| 284 | Scoufis | Summary Chart - FusionPharm Common Stock with Converted Preferred Stock as of 6/30/2011 | | X | | | | | |
| 285 | Scoufis | Summary Chart - FusionPharm Common Stock with Converted Preferred Stock as of 11/30/2011 | | X | | | | | |
| 286 | Scoufis | Summary Chart - FusionPharm Common Stock with Converted Preferred Stock as of 12/31/2011 | | X | | | | | |
| 287 | Scoufis | Summary Chart - FusionPharm Common Stock with Converted Bayside and Meadpoint Notes as of 12/31/2012 | | X | | | | | |
| 288 | Scoufis | Summary Chart - FusionPharm Common Stock with Converted Preferred Stock as of 06/30/2013 | | X | | | | | |
| 289 | Scoufis | Summary Chart - FusionPharm Oustanding Common Stock as of 09/3/2013 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 40 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 290 | Scoufis | Summary chart - Price and Volume Analysis with Selected Accounts - 3/31/2011-6/29/2011 | | X | | | | | |
| 291 | Scoufis | Summary chart - Price and Volume Analysis with Selected Accounts - 3/25/2011-7/16/2013 | | X | | | | | |
| 292 | Scoufis | Summary chart - Price and Volume Analysis with Selected Accounts - 3/25/2011-5/15/2014 | | X | | | | | |
| 293 | Scoufis | Summary chart - Price and Volume Analysis with Selected Accounts - 3/25/2011-12/31/2013 | | X | | | | | |
| 294 | Scoufis | Summary Chart - FusionPharm Share Flowcharts for Abbott Transaction - 8/1/2012 | | | | | | | |
| 295 | Scoufis | Summary Chart - FusionPharm Share Flowcharts for Bayside Stock Issuance - 1/18/2013 | | | | | | | |
| 296 | Scoufis | Summary Chart - FusionPharm Share Flowcharts for Sale of Convertible Promissory Note - 3/14/2013 | | | | | | | |
| 297 | Scoufis | Summary Chart - FusionPharm Share Flowcharts for Meadpoint Stock Issuance - 4/12/2013 | | | | | | | |
| 298 | Scoufis | Summary Chart - FusionPharm Share Flowcharts for Meadpoint Stock Issuance - 8/15/2013 | | | | | | | |
| 299 | Scoufis | Summary Chart - FusionPharm Share Flowcharts Scholz and Thaden Stock Issuance - 9/3/2013 | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 41 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 300 | Scoufis | Summary Chart - FusionPharm Trading Summary | | X | | | | | |
| 301 | Scoufis | Summary Chart - FusionPharm Rule 144 Affiliate Volume Calculations | | | | | | | |
| 302 | Scoufis | Summary Chart - FusionPharm Common Stock with Converted Preferred Stock as of 12/31/2012 | | | | | | | |
| 303 | Scoufis | Summary Chart - FusionPharm Wire Transfers | | X | | | | | |
| 304 | Scoufis | Summary Chart - FusionPharm Wire Transfers Flowchart | | X | | | | | |
| 305 | | | | | | | | | |
| 306 | | | | | | | | | |
| 307 | | | | | | | | | |
| 308 | | | | | | | | | |
| 309 | FBI - Newton | Summary Chart - Payments to Guy Jean-Pierre from 2011 to 2013 | | X | | | | | |
| 310 | FBI - Newton | Summary Chart - Guy Jean-Pierre Google Voice Records - (305)929-3652 | | X | | | | | |
| 311 | FBI - Newton | Summary Chart - Tod DiTommaso Invoices to Jean-Pierre and Payments from Jean-Pierre | | X | | | | | |
| 312 | FBI - Newton | Summary Chart - Tod DiTommaso Verizon Wireless Records - (323)497-1418 | | X | | | | | |
| 313 | FBI - Newton | Summary Chart - Fusion Pharm Stock Sale Proceeds 2011 through 2013 | | X | | | | | |
| 314 | FBI - Newton | Summary Chart - Check Signers on FusionPharm Wells Fargo Account #0090 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 42 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 315 | FBI - Newton | Summary Chart - FusionPharm Related Expenses paid from Other Accounts | | X | | | | | |
| 316 | FBI - Newton | Summary Chart - FusionPharm Revenue versus Cash Receipts | | X | | | | | |
| 317 | FBI - Newton | Summary Chart - Analysis of Proof of Funding for Notes | | X | | | | | |
| 318 | | | | | | | | | |
| 319 | | | | | | | | | |
| 320 | | | | | | | | | |
| 320a | W. Sears Agent - Erwin | 2016-02-26 Recorded Phone Call between Sears and GJP | | | | | | | |
| 320b | W. Sears Agent - Erwin | 2016-03-03 Recorded Phone Call between Sears and GJP | | | | | | | |
| 320c | W. Sears Agent - Erwin | 2016-03-24 Recorded Phone Call between Sears and GJP | | | | | | | |
| 320d | W. Sears Agent - Erwin | 2016-03-30 Recorded Phone Call between Sears and GJP | | | | | | | |
| 320e | W. Sears Agent - Erwin | 2016-04-04 Recorded Phone Call between Sears and GJP | | | | | | | |
| 320f | W. Sears Agent - Erwin | 2016-04-06 Recorded Phone Call between Sears and GJP | | | | | | | |
| 320g | W. Sears Agent - Erwin | 2016-04-17 Recorded Phone Call between Sears and GJP | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 43 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 320h | W. Sears Agent - Erwin | 2016-04-22 (Call #1) Recorded Phone Call between Sears and GJP | | | | | | | |
| 320i | W. Sears Agent - Erwin | 2016-04-22 (Call #2) Recorded Phone Call between Sears and GJP | | | | | | | |
| 320j | W. Sears Agent - Erwin | 2016-04-22 (Call #3) Recorded Phone Call between Sears and GJP | | | | | | | |
| 320k | W. Sears Agent - Erwin | 2016-04-23 Recorded Phone Call between Sears and GJP | | | | | | | |
| 320l | W. Sears Agent - Erwin | 2016-04-25 Recorded Phone Call between Sears and GJP | | | | | | | |
| 320m | W. Sears Agent - Erwin | 2016-04-26 Recorded Phone Call between Sears and GJP | | | | | | | |
| 321 | | | | | | | | | |
| 321a | Agent - Erwin | Transcript - 2016-02-26 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321b | Agent-Erwin | Transcript - 2016-03-03 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321c | Agent-Erwin | Transcript - 2016-03-24 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321d | Agent-Erwin | Transcript - 2016-03-30 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 44 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 321e | Agent-Erwin | Transcript - 2016-04-04 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321f | Agent-Erwin | Transcript - 2016-04-06 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321g | Agent-Erwin | Transcript - 2016-04-17 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321h | Agent-Erwin | Transcript - 2016-04-22 (#1) Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321i | Agent-Erwin | Transcript - 2016-04-22 (#2) Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321j | Agent-Erwin | Transcript - 2016-04-22 (#3) Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321k | Agent-Erwin | Transcript - 2016-04-23 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321l | Agent-Erwin | Transcript - 2016-04-25 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321m | Agent-Erwin | Transcript - 2016-04-26 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 322 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 45 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 322a | W. Sears Agent- Funk Agent-Erwin | 2016-02-26 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322b | W. Sears Agent- Funk Agent-Erwin | 2016-03-03 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322c | W. Sears Agent- Funk Agent-Erwin | 2016-03-24 (Excerpt #1) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322d | W. Sears Agent- Funk Agent-Erwin | 2016-03-24 (Excerpt #2) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322e | W. Sears Agent- Funk Agent-Erwin | 2016-03-30 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322f | W. Sears Agent- Funk Agent-Erwin | 2016-04-04 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 46 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 322g | W. Sears Agent- Funk Agent-Erwin | 2016-04-06 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322h | W. Sears Agent- Funk Agent-Erwin | 2016-04-17 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322i | W. Sears Agent- Funk Agent-Erwin | 2016-04-22 (Call #1) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322j | W. Sears Agent- Funk Agent-Erwin | 2016-04-22 (Call #2 - Excerpt #1) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322k | W. Sears Agent- Funk Agent-Erwin | 2016-04-22 (Call #2 - Excerpt #2) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322l | W. Sears Agent- Funk Agent-Erwin | 2016-04-22 (Call #3) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 47 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 322m | W. Sears Agent- Funk Agent-Erwin | 2016-04-23 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322n | W. Sears Agent- Funk Agent-Erwin | 2016-04-25 (Excerpt #1) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322o | W. Sears Agent- Funk Agent-Erwin | 2016-04-25 (Excerpt #2) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322p | W. Sears Agent- Funk Agent-Erwin | 2016-04-25 (Excerpt #3) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322q | W. Sears Agent- Funk Agent-Erwin | 2016-04-25 (Excerpt #4) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |
| 322r | W. Sears Agent- Funk Agent-Erwin | 2016-04-26 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 48 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 323 | W. Sears Agent- Funk Agent - Erwin | Emails exchanged between Sears and Jean-Pierre between 3/2/2016 and 4/26/2016 | | X | | | | | |
| 324 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Sears titled "VertiFresh Business Plan 2012-2015 CO.docx | | X | | | | | |
| 325 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Jean-Pierre titled "CMC-Vert Consult AGR_04_15_16.doc" | | X | | | | | |
| 326 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Jean-Pierre titled "VERT_conv_note_02_28_15.doc" | | X | | | | | |
| 327 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Jean-Pierre titled "VERT_conv_note_02_28_15.doc" dated 4/21/2015 | | X | | | | | |
| 328 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Jean-Pierre titled "Non-Aff LTR.docx" | | X | | | | | |

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 329 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Jean-Pierre titled "Purchase and Assignment Agreement_THORE.doc" | | X | | | | | |
| 330 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Jean-Pierre titled "Form of Debt Conversion Opinion.docx" | | X | | | | | |
| 331 | | | | | | | | | |
| 332 | | | | | | | | | |
| 333 | | | | | | | | | |
| 334 | | | | | | | | | |
| 335 | | | | | | | | | |
| 336 | | | | | | | | | |
| 337 | | | | | | | | | |
| 338 | | | | | | | | | |
| 339 | | | | | | | | | |
| 340 | | | | | | | | | |
| 341 | | | | | | | | | |
| 342 | | | | | | | | | |
| 343 | | | | | | | | | |
| 344 | | | | | | | | | |
| 345 | | | | | | | | | |
| 346 | | | | | | | | | |
| 347 | | | | | | | | | |
| 348 | | | | | | | | | |
| 349 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 50 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 350 | W. Sears Agent Varel Agent - Erwin | DVD-Audio Recording - 2016-04-28 Recording of William Sears and Guy Jean-Pierre travel from MIA Airport to Hotel | | | | | | | |
| 351 | | | | | | | | | |
| 351a | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #1) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | | | | |
| 351b | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #2) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | | | | |
| 351c | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #3) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | | | | |
| 351d | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #4) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | | | | |
| 351e | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #5) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 51 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 351f | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #6) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | | | | |
| 351g | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #7) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | | | | |
| 351h | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #8) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | | | | |
| 352 | | | | | | | | | |
| 353 | | | | | | | | | |
| 354 | | | | | | | | | |
| 355 | | | | | | | | | |
| 356 | Agent - Erwin | Transcript - 2016-04-28 Recording of William Sears and Guy Jean-Pierre travel from MIA Airport to Hotel | | | | | | | |
| 357 | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | DVD-Audio Recording - 2016-04-28 Recording of Dinner Meeting: William Sears, Guy Jean-Pierre, and "EJ" | | | | | | | |
| 358 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 52 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 358a | W. Sears<br>FBI UC #2<br>Agent - Varel<br>Agent -<br>Erwin | 2016-04-28 (Excerpt #1) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |
| 358b | W. Sears<br>FBI UC #2<br>Agent - Varel<br>Agent -<br>Erwin | 2016-04-28 (Excerpt #2) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |
| 358c | W. Sears<br>FBI UC #2<br>Agent - Varel<br>Agent -<br>Erwin | 2016-04-28 (Excerpt #3) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |
| 358d | W. Sears<br>FBI UC #2<br>Agent - Varel<br>Agent -<br>Erwin | 2016-04-28 (Excerpt #4) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |
| 358e | W. Sears<br>FBI UC #2<br>Agent - Varel<br>Agent -<br>Erwin | 2016-04-28 (Excerpt #5) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 53 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 358f | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #6) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |
| 358g | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #7) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |
| 358h | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #8) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |
| 358i | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #9) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |
| 358j | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #10) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 54 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 358k | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #11) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |
| 358l | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #12) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |
| 358m | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #13) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |
| 358n | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #14) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | | | | |
| 359 | Agent - Erwin | Transcript - 2016-04-28 Recording of Dinner Meeting: William Sears, Guy Jean-Pierre, and "EJ" | | | | | | | |
| 360 | Agent - Erwin | DVD-Audio Recording - Events of 2016-04-29 Meeting: William Sears, Guy Jean-Pierre, and "EJ" | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 55 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 361 | W. Sears Agent- Varel Agent - Erwin | DVD-2016-04-29 Recording Excerpt of Walk to Meeting: William Sears and Guy Jean-Pierre - Audio synced with Transcript | | | | | | | |
| 362 | W. Sears Agent- Varel Agent - Erwin | DVD-Video/Audio - Events of 2016-04-29 Meeting: William Sears, Guy Jean-Pierre, and "EJ" | | | | | | | |
| 363 | Agent - Erwin | Transcript - Events of 2016-04-29 Meeting: William Sears, Guy Jean-Pierre, and "EJ" | | | | | | | |
| 363a | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #1) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | | | | |
| 363b | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #2) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | | | | |
| 363c | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #3) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 56 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 363d | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #4) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | | | | |
| 363e | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #5) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | | | | |
| 363f | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #6) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | | | | |
| 363g | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #7) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | | | | |
| 363h | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #8) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | | | | |
| 363i | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #9) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | | | | |
| 364 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 57 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 365 | Agent-Varel Interstate Bank | Negotiated Check made out to Guy M. Jean-Pierre for $5,000 | | X | | | | | |
| 366 | Agent-Varel Interstate Bank | FirstBank Declaration for $5,000 Cashier's Check | | X | | | | | |
| 367 | Agent-Varel Interstate Bank | Bank of America - Declaration and Record of $5,000 Cashier's Check negotiated at Banco Popular | | | | | | | |
| 368 | | | | | | | | | |
| 369 | | | | | | | | | |
| 370 | Agent- Varel | FedEx Slip with tracking number 807645904914 dated 04/22/2016 | | X | | | | | |
| 371 | | | | | | | | | |
| 372 | Agent-Funk | Disc with all email attachments 372a-372ppp | | | | | | | |
| 372a | W. Sears Agent- Funk | 5/23/2011 E-mail from Dittman to Samson | | X | | | | | |
| 372b | W. Sears Agent- Funk | 5/31/2011 - E-mail from Sears to Jean-Piere | | X | | | | | |
| 372c | W. Sears Agent- Funk | 7/12/2011 - E-mail from Sears to Jean-Pierre | | X | | | | | |
| 372d | W. Sears Agent- Funk | 7/17/2011 - E-mail from Sears to Jean-Pierre | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 58 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372e | W. Sears Agent- Funk | 7/17/2011 - E-mail from Sears to Jean-Pierre | | X | | | | | |
| 372f | W. Sears Agent- Funk | 7/18/2011 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372g | W. Sears Agent- Funk | 7/26/2011 - E-mail from DiTommaso to Jean-Pierre | | X | | | | | |
| 372h | W. Sears Agent- Funk | 7/28/2011 - E-mail from Oxford Capital to Sears | | X | | | | | |
| 372i | W. Sears Agent- Funk | 8/8/2011 - E-mail from Sears to Jean-Pierre | | X | | | | | |
| 372j | W. Sears Agent- Funk | 8/9/2011 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372k | W. Sears Agent- Funk | 8/24/2011 - E-mail chain from Jean-Pierre to Sears | | X | | | | | |
| 372l | W. Sears Agent- Funk | 9/13/2011 - E-mail from Jean-Pierre to Sears and Dittman | | X | | | | | |
| 372m | W. Sears Agent- Funk | 9/14/2011 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372n | W. Sears Agent- Funk | 9/15/2011 - E-mail from Jean-Pierre to Sears | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 59 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372o | W. Sears Agent- Funk | 9/15/2011 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372p | W. Sears Agent- Funk | 10/7/2011 - E-mail from Dittman to Sears | | X | | | | | |
| 372q | W. Sears Agent- Funk | 10/25/2011 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372r | W. Sears Agent- Funk | 10/26/2011 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372s | W. Sears Agent- Funk | 11/3/2011 - E-mail from Dittman to Kramer | | X | | | | | |
| 372t | W. Sears Agent- Funk | 11/14/2011 - E-mail from Sears to Jean-Pierre | | X | | | | | |
| 372u | W. Sears Agent- Funk | 11/16/2011- E-mail from Sears to Jean-Pierre | | X | | | | | |
| 372w | W. Sears Agent- Funk | 11/30/2011 - E-mail from Jean-Pierre to Dittman | | X | | | | | |
| 372x | W. Sears Agent- Funk | 12/26/2011 -E-mail from Jean-Pierre to Dittman and Sears | | X | | | | | |
| 372y | W. Sears Agent- Funk | 12/27/2011 - E-mail from Dittman to Sears and Jean-Pierre | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 60 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372z | W. Sears Agent- Funk | 12/29/2011 - E-mail from Dittman to Sears, Jean-Pierre, and DiTommaso | | X | | | | | |
| 372aa | W. Sears Agent- Funk | 12/29/2011 - E-mail from OTC to Dittman | | X | | | | | |
| 372bb | W. Sears Agent- Funk | 1/3/2012 - E-mail from Sears to Dittman | | X | | | | | |
| 372cc | W. Sears Agent- Funk | 1/14/2012 - E-mail between Sears and Jean-Pierre | | X | | | | | |
| 372dd | W. Sears Agent- Funk | 3/14/2012 - E-mail from Jean-Pierre to Sears cc Dittman | | X | | | | | |
| 372ee | W. Sears Agent- Funk | 3/23/2012 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372ff | W. Sears Agent- Funk | 5/23/2012 - E-mail from Sears to Jean-Pierre and Dittman | | X | | | | | |
| 372gg | W. Sears Agent- Funk | 5/23/2012 - E-mail from Sears to Jean-Pierre cc Bodden | | X | | | | | |
| 372hh | W. Sears Agent- Funk | 6/7/2012 - E-mail from Sears to Dittman and Jean-Pierre | | X | | | | | |
| 372ii | W. Sears Agent- Funk | 6/11/2012 - E-mail from McGehee at Pacific Stock Tranfer to Sears | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 61 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372jj | W. Sears Agent- Funk | 6/13/2012 - E-mail from Dittman to Bodden cc Sears and Jean-Pierre | | X | | | | | |
| 372kk | W. Sears Agent- Funk | 6/14/2012 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372ll | W. Sears Agent- Funk | 6/18/2012 - E-mail from Bodden to Dittman and Sears | | X | | | | | |
| 372mm | W. Sears Agent- Funk | 6/18/2012 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372nn | W. Sears Agent- Funk | 6/19/2012 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372oo | W. Sears Agent- Funk | 6/28/2012 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372pp | W. Sears Agent- Funk | 7/11/2012 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372qq | W. Sears Agent- Funk | 7/20/2012 - E-mail from Sears to Dittman | | X | | | | | |
| 372rr | W. Sears Agent- Funk | 7/24/2012 - E-mail from Sears to Dittman | | X | | | | | |
| 372ss | W. Sears Agent- Funk | 8/8/2012 - E-mail from Dittman to Bodden cc Sears and Jean-Pierre | | X | | | | | |

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372tt | W. Sears Agent- Funk | 9/12/2012 - E-mail from Sears to Jean-Pierre cc Dittman | | X | | | | | |
| 372uu | W. Sears Agent- Funk | 11/26/2012 - E-mail from Jean-Pierre to Sears cc Dittman | | X | | | | | |
| 372vv | W. Sears Agent- Funk | 11/26/2012 - E-mail from Dittman to Jean-Pierre | | X | | | | | |
| 372ww | W. Sears Agent- Funk | 11/29/2012 - E-mail from Dittman to Jean-Pierre cc Sears | | X | | | | | |
| 372xx | W. Sears Agent- Funk | 12/8/2012 - E-mail from Jean-Pierre to Sears then forwarded to Dittman | | X | | | | | |
| 372yy | W. Sears Agent- Funk | 12/10/2012 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372zz | W. Sears Agent- Funk | 12/18/2012 - E-mail from Dittman to Sears, Jean-Pierre, and Bodden | | X | | | | | |
| 372aaa | W. Sears Agent- Funk | 12/27/2012 - E-mail from Sears to Dittman | | X | | | | | |
| 372bbb | W. Sears Agent- Funk | 1/22/2013 - E-mail from Sears to Eric Miller at Scottdale | | X | | | | | |
| 372ccc | W. Sears Agent- Funk | 2/27/2013 - E-mail from Sears to Jean-Pierre | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 63 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372ddd | W. Sears Agent- Funk | 3/1/2013 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372eee | W. Sears Agent- Funk | 3/5/2013 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372fff | W. Sears Agent- Funk | 3/6/2013 - E-mail from Jean-Pierre to Dittman cc Sears | | X | | | | | |
| 372ggg | W. Sears Agent- Funk | 4/26/2013 - E-mail from Jean-Pierre to Sears then forwarded to Dittman | | X | | | | | |
| 372hhh | W. Sears Agent- Funk | 6/28/2013 - E-mail from Jean-Pierre to Sears forwarded to Dittman | | X | | | | | |
| 372iii | W. Sears Agent- Funk | 6/29/2013 - E-mail from Sears to Dittman forwarding an email from Jean-Pierre | | X | | | | | |
| 372jjj | W. Sears Agent- Funk | 6/30/2013 - E-mail from Jean-Pierre to Dittman cc Sears | | X | | | | | |
| 372kkk | W. Sears Agent- Funk | 6/30/2013 - E-mail from Sears to Dittman cc Jean-Pierre | | X | | | | | |
| 372lll | W. Sears Agent- Funk | 7/2/2013 - E-mail from Jean-Pierre to Dittman cc Sears | | X | | | | | |
| 372mmm | W. Sears Agent- Funk | 8/15/2013 - E-mail from Jean-Pierre to Sears | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 64 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372nnn | W. Sears Agent- Funk | 8/20/2013 - E-mail from Dittman to Sears | | X | | | | | |
| 372ooo | W. Sears Agent- Funk | 8/21/2013 -E-mail from Sears to Dittman forwarding email from Jean-Pierre | | X | | | | | |
| 372ppp | W. Sears Agent- Funk | 9/13/2013 - E-mail from Sears to Dittman | | X | | | | | |
| 373 | Agent - Funk | SDNY Case 04-cr-00556 - Judgment (William Sears) | | X | | | | | |
| 374 | Agent - Funk | Florida Bar File re Jean-Pierre | | | | | | | |
| 375 | Agent - Funk | Jean-Pierre SEC transcript from testimony on 10/18/2011 | | | | | | | |
| 376 | Agent - Funk | Jean-Pierre SEC transcript from 12/13/2012 deposition | | | | | | | |
| 377 | Agent - Funk | SEC Judgment in NY case re defendant Jean-Pierre | | | | | | | |
| 378 | Agent - Funk | Florida Supreme Court records for Case Number SC12-2727 | | | | | | | |
| 379 | Agent - Funk | Guy Jean Pierre's Conviction | | | | | | | |
| 380 | W. Sears Agent - Funk | Emails from Sears to Dittman dated 5/4/2011 with subject "business plan" | | X | | | | | |
| 381 | W. Sears Agent - Funk | Email from Gino Rodrigues to Dittman and Sears dated 5/9/2011 attaching Corporate Minutes_05911.pdf | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 65 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 382 | W. Sears Agent - Funk | Email from Sears to Jean-Pierre with cc to Dittman dated 10/17/2011 attaching Nominee Declaration of Shares (with variables) | | X | | | | | |
| 383 | W. Sears Agent - Funk | Email from Sears to Dittman dated 6/20/2011 with subject "Stock" | | X | | | | | |
| 384 | W. Sears Agent - Funk | Email from Sears to Dittman dated 07/12/2011 forwarding email from Jean-Pierre to Sears attaching Fusion Pharm Disclosure Statement dated 06/30/2011 | | X | | | | | |
| 385 | W. Sears Agent - Funk | Email from Jean-Pierre to Dittman dated 07/18/2011 subject: "Meeting with Attorney re Pink Sheets Opinion Letter" | | X | | | | | |
| 386 | W. Sears Agent - Funk | Email from Sears to Jean-Pierre with cc to Dittman dated 07/28/2011 attaching Oxford 2011 Deals, Share Purchase Overview, and Oxford Sample OSP Share Purchase Agreement | | X | | | | | |
| 387 | W. Sears Agent - Funk | Email from Dittman to Richard Rhodes dated 10/18/2011 with subject "skype" | | X | | | | | |
| 388 | W. Sears Agent - Funk | Email from Jean-Pierre to Dittman dated 11/7/2011 with subject "skype" | | X | | | | | |
| 389 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 66 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 389a | W. Sears RCFL Examiner Agent-Funk | Skyp messages between users donmarcusi and wjsears66 | | X | | | | | |
| 389b | W. Sears RCFL Examiner Agent-Funk | Skype messages between users donmarcusi and billysears66 | | X | | | | | |
| 389c | W. Sears RCFL Examiner Agent-Funk | Skype messages between users elcommandante1 and trader5280 | | X | | | | | |
| 389d | W. Sears RCFL Examiner Agent-Funk | Skype message for user elcommandante1 | | X | | | | | |
| 390 | W. Sears Agent - Funk | Email from Dittman to Paychex dated 9/29/2011 with subject "Payroll - Paychex" | | X | | | | | |
| 391 | W. Sears Agent - Funk | Email from Sears to Dittman dated 12/05/2011 attaching Fusion Pharm Disclosure Statement Draft dated 12/02/2011 | | X | | | | | |
| 392 | RCFL Examiner Agent - Funk | Skype messages recovered from Dittman's computer | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 67 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 393 | W. Sears Agent - Funk | Email from Sears to Dittman dated 7/2/2012 with subject "Cash" | | X | | | | | |
| 394 | W. Sears Agent - Funk | Email from Dittman to Roy and Sears with cc to Jean-Pierre dated 02/13/2013 subject: "RE:FSPM" | | X | | | | | |
| 395 | W. Sears Agent - Funk | Annual Information and Disclosure Statement dated 12/31/2012 | | X | | | | | |
| 396 | W. Sears Agent - Funk | Email from Sears to Dittman forwarding email from Jean-Pierre to Sears dated 02/28/2013 attaching Amended and Restated Articles of Incorporation | | X | | | | | |
| 397 | W. Sears Agent - Funk | Email from Sears to Dave Roy dated 3/4/2013 with subject "FSPM" | | X | | | | | |
| 398 | W. Sears Agent - Funk | Email from Sears to Dittman dated 3/8/2013 with subject 'FSPM OTC Markets Opn Ltr" | | X | | | | | |
| 399 | W. Sears Agent - Funk | Email from Sears to Dittman dated 06/28/2013 attaching Pink Sheets Opinion Letter dated 11/21/2012 | | X | | | | | |
| 400 | W. Sears Agent - Funk | Email from Sears to Jean-Pierre with cc to Dittman dated 08/08/2013 attaching DiBella document dated 03/29/2013 and Meadpoint Letter of Opinion dated 08/08/2013 | | X | | | | | |
| 401 | Agent - Funk | PRNewswire Press Release dated 8/27/2012 - FusionPharm Enters Major Expansion Phase | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 68 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 402 | Agent - Funk | PRNewswire Press Release dated 9/10/2012 - Vertifresh Outlines Urban Farming Strategy | | | | | | | |
| 403 | Agent - Funk | PRNewswire Press Release dated 11/26/2012 - FusionPharm Signs Licensing Agreement for Flowering Containers | | | | | | | |
| 404 | Agent - Funk | PRNewswire Press Release dated 2/6/2013 - FusionPharm Completes Sale of PharmPod High Intensity Containers | | | | | | | |
| 405 | Agent - Funk | Accesswire Press Release dated 7/29/2013 - Meadpoint Completes First California Sale | | | | | | | |
| 406 | Agent - Funk | GoDaddy Return for William Sears account | | X | | | | | |
| 407 | Agent - Funk | GoDaddy return - advisor@flbusinesshelp.com | | X | | | | | |
| 408 | | | | | | | | | |
| 408a | Agent - Funk | Summary Chart - Sears Role Transition of Baby Bee Bright to FusionPharm | | X | | | | | |
| 408b | Agent - Funk | Summary Chart - Sears Role at FusionPharm | | X | | | | | |
| 408c | Agent - Funk | Summary Chart - Sears Role - FusionPharm Stock | | X | | | | | |
| 408d | Agent - Funk | Summary Chart - Sears Role - OTC Filings | | X | | | | | |
| 408e | Agent - Funk | Summary Chart - Sears Role - Payments to Jean-Pierre | | X | | | | | |
| 408f | Agent - Funk | Summary Chart - Sears Role - Bayside and Meadpoint Notes | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 69 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 408g | Agent - Funk | Summary Chart - Sears Role - FINRA | | X | | | | | |
| 409 | Agent - Funk | Summary Chart - Jean-Pierre's Role with FusionPharm | | | | | | | |
| 410 | | | | | | | | | |
| 410a | | | | | | | | | |
| 410b | Agent-Funk | Colorado Secretary of State Records - Microcap Management | | X | | | | | |
| 410c | Agent-Funk | Nevada Secretary of State Records - Bayside Realty Holdings LLC | | X | | | | | |
| 410d | Agent-Funk | North Carolina Secretary of State Records - Bayside Realty Holdings LLC | | X | | | | | |
| 410e | Agent-Funk | Colorado Secretary of State Records - Bayside Realty Holdings LLC | | X | | | | | |
| 410f | Agent-Funk | Nevada Secretary of State Records - FusionPharm Inc | | X | | | | | |
| 410g | Agent-Funk | Colorado Secretary of State Records - FusionPharm Inc | | X | | | | | |
| 410h | Agent-Funk | Nevada Secretary of State Records - Meadpoint Venture Partners LLC | | X | | | | | |
| 410i | Agent-Funk | Colorado Secretary of State Records - Meadpoint Venture Partners LLC | | X | | | | | |
| 410j | Agent-Funk | Colorado Secretary of State Records - VF Management Inc | | X | | | | | |
| 410k | Agent-Funk | Colorado Secretary of State Records - LaDeeDa | | X | | | | | |
| 410l | | | | | | | | | |
| 410m | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 70 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 410n | Agent-Funk | Florida Secretary of State Records - Prestige Media | | X | | | | | |
| 410o | Agent-Funk | Colorado Secretary of State Records - Salt Investments LLC | | X | | | | | |
| 410p | Agent Funk | Colorado Secretary of State Records - Vertifresh LLC | | X | | | | | |
| 411 | Agent - Funk | SEC Attestation of Non-existence of Registration for FusionPharm | | X | | | | | |
| 412 | | | | | | | | | |
| 413 | Agent - Funk | SEC Complaint RE Jean-Pierre - 12/06/2012 | | | | | | | |
| 414 | Agent - Funk | SEC Order Imposing Temporary Suspension RE Jean-Pierre - 05/20/2015 | | | | | | | |
| 415 | Agent - Funk | SEC Order of Suspension RE Jean-Pierre - 05/20/2015 | | | | | | | |
| 416 | | JP Morgan Chase - Jean-Pierre & Jean-Pierre, LLC<br>IOLTA Trust Account<br>Escrow Account<br>Acct Ending: 0238 | | | | | | | |
| 417 | | Bank of America - Florida IOTA Trust Account<br>Jean-Pierre & Jean-Pierre<br>Acct Ending: 4688 | | | | | | | |
| 418 | | Union Bank - Tod A. Ditommaso<br>Acct Ending: 3439 | | X | | | | | |
| 419 | | Union Bank - Tod A. Ditommaso<br>Law Office of Tod Ditommaso<br>Attorney Client Trust Account<br>Acct Ending: 3447 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 71 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 420 | | Wells Fargo Bank - Bayside Realty Holdings LLC Acct Ending: 2037 | | X | | | | | |
| 421 | | Wells Fargo Bank - Vertifresh LLC Acct Ending: 0233 | | X | | | | | |
| 422 | | Wells Fargo Bank - Fusion Pharm Inc Acct Ending: 0307 | | X | | | | | |
| 423 | | Wells Fargo Bank - Fusion Pharm Inc Acct Ending: 0090 | | X | | | | | |
| 424 | | Wells Fargo Bank - Meadpoint Venture Partners Acct Ending: 9917 | | X | | | | | |
| 425 | | Wells Fargo Bank - Microcap Management LLC Acct Ending: 0560 | | X | | | | | |
| 426 | | Wells Fargo Account for 10MM Holdings LLC ending in 1196 | | X | | | | | |
| 427 | | Pacific Stock Transfer Declaration | | X | | | | | |
| 428 | | Oppenheimer Declaration | | X | | | | | |
| 429 | | Scottsdale Declaration | | X | | | | | |
| 430 | | | | | | | | | |
| 431 | | Oppenheimer - Monthly Statements for Microcap account ending in 9990 | | X | | | | | |
| 432 | | Scottsdale - Account Activity Reports for Meadpoint account ending in 7669 | | X | | | | | |
| 433 | | Scottsdale - Account Activity Reports for Microcap account ending in 7090 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 188 Filed 01/17/19 Page 72 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 434 | | Scottsdale - Account Activity Reports for Bayside account ending in 4611 | | X | | | | | |
| 435 | | Scottsdale - Wire Transfer request for Microcap account ending in 9990 | | X | | | | | |
| 436 | | Scottsdale - Wire Transfer request for Meadpoint account ending in 7669 | | X | | | | | |
| 437 | | Scottsdale - Wire Transfer request for Bayside account ending in 4611 | | X | | | | | |
| 438 | | Sears eTrade Account ending in #1511 | | X | | | | | |
| 439 | | DiTommaso's Verizon Wireless records | | X | | | | | |
| 440 | | Google Voice records associated with Account 305-929-3652 | | X | | | | | |
| 441 | | PSTC - Shareholders Lists for FusionPharm | | | | | | | |
| 442 | | | | | | | | | |
| 443 | DiTommaso | DiTommaso SEC transcript from testimony on 01/08/2015 | | | | | | | |
| 444 | Thel | Summary Chart - Security Law | | | | | | | |
| 445 | OTC | OTC Markets Website - Fusion Pharm, Inc. Overview | | | | | | | |
| 446 | | William J Sears Plea Agreement | | | | | | | |
| 447 | | | | | | | | | |
| 448 | | | | | | | | | |
| 449 | | | | | | | | | |
| 450 | | | | | | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 17, 2019
Courtroom Deputy: Anna Frank
Court Reporter: Mary George

---

Criminal Action No. 17-cr-00008-WJM

Counsel:

UNITED STATES OF AMERICA,

Plaintiff,

Jeremy Sibert
Robert Brown

v.

GUY JEAN-PIERRE,

Defendant.

Thomas Goodreid
Clifford Barnard

---

## COURTROOM MINUTES

---

Jury Trial: Day Four

**9:02 a.m. Court in session.** Jury not present.

Discussion held regarding juror number 100341382.

Discussion held regarding Defendant's Motion for Reconsideration of Admission of Government's Exhibit #446 [ECF 187].

**ORDERED:** Government will have until Sunday, January 20, 2019 to respond to Defendant's Motion for Reconsideration of Admission of Government's Exhibit #446 [ECF 187].

9:09 a.m. Jury present.

Government resumes. Continued direct examination of Mr. Dittman by Mr. Sibert.

Pages 304 and 305 of Government's Exhibit 374 are admitted into evidence.

Government's Exhibits 25, 169, 263, 372y, 372z, 372aa, 372ss, 372vv, 372ww, 372zz, 372fff, 372jjj, 372LLL, 372nnn, 394, and 395 are admitted into evidence.

Case 1:17-cr-00008-WJM Document 189 Filed 01/17/19 Page 2 of 3

**10:18 a.m. Court in recess.**
**10:39 a.m. Court in session.** Jury present

Continued direct examination of Mr. Dittman by Mr. Sibert.

**12:13 p.m. Court in recess.**
**1:20 p.m. Court in session.** Jury present.

Continued direct examination of Mr. Dittman by Mr. Sibert.

Government's Exhibits 19a, 172, 230, 372jj, 100, 123, 151, 135, 136, 372s, 372w, 387, 388, 392, 167, 19, 40, and 390 are admitted into evidence.

**2:58 p.m. Court in recess.**
**3:18 p.m. Court in session.** Jury present.

Continued direct examination of Mr. Dittman by Mr. Sibert.

Government's Exhibits 5a and 5b are admitted into evidence.

The Court instructs the jury that the captioning used in the audio exhibits 5a and 5b should not be considered as evidence.

Cross-examination of Mr. Dittman by Mr. Barnard.

Redirect of Mr. Dittman by Mr. Sibert.

Mr. Dittman is excused.

4:11 p.m. Jury excused

Discussion held regarding Government's next witness.

**ORDERED:** The trial transcript shall be sealed as discussed on the record.

4:16 p.m. Jury present.

4:17 p.m. Government's witness Undercover Agent No. 1 is called and sworn.

Direct examination of Undercover Agent No. 1 by Mr. Sibert.

Cross-examination of Undercover Agent No. 1 by Mr. Barnard.

Undercover Agent No. 1 is excused.

4:30 p.m. Government's witness Shane Bohlender is called and sworn.

Case 1:17-cr-00008-WJM Document 189 Filed 01/17/19 Page 3 of 3

Direct examination of Mr. Bohlender by Mr. Brown

Cross-examination of Mr. Bohlender by Mr. Goodreid.

Mr. Bohlender is excused.

**4:49 p.m.** **Court in recess.** Trial continued. Defendant continued on bond.

Total time in court: 5:59

Case 1:17-cr-00008-WJM Document 190 Filed 01/18/19 Page 1 of 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 18, 2019
Courtroom Deputy: Anna Frank
Court Reporter: Mary George

---

Criminal Action No. 17-cr-00008-WJM

Counsel:

UNITED STATES OF AMERICA,

Plaintiff,

Jeremy Sibert
Robert Brown

v.

GUY JEAN-PIERRE,

Defendant.

Thomas Goodreid
Clifford Barnard

---

**COURTROOM MINUTES**

---

Jury Trial: Day Five

**8:53 a.m. Court in session. Jury is not present.**

Discussion held regarding juror 100372630.

8:59 a.m. Jury present.

9:00 a.m. Government's witness Kelly Blume is called and sworn.

Government resumes. Direct examination of Ms. Blume by Mr. Brown.

Government's Exhibit 41 is admitted into evidence.

Cross-examination of Ms. Blume by Mr. Goodreid.

Redirect of Ms. Blume by Mr. Brown.

Ms. Blume is excused.

9:43 a.m. Government's witness Elizabeth Hess is called and sworn.

Case 1:17-cr-00008-WJM Document 190 Filed 01/18/19 Page 2 of 3

Direct examination of Ms. Hess by Mr. Sibert.

Government's Exhibit 53 is admitted into evidence.

**10:20 a.m. Court in recess.**
**10:40 a.m. Court in session.** Jury present.

Continued direct examination of Ms. Hess by Mr. Sibert.

Government's Exhibits 8, 54, 55, 56, 57, 19b, 19c, 12, 13, 14, 15, 17, 18, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 9, 10 and 11 are admitted into evidence.

Cross-examination of Ms. Hess by Mr. Barnard.

Ms. Hess is excused.

**12:10 p.m. Court in recess.**
**1:18 p.m. Court in session.** Jury present.

1:20 p.m. Government's witness Joslyn Claiborne is called and sworn.

Direct examination of Ms. Claiborne by Mr. Sibert.

Government's Exhibits 72, 73, 76, 77, 78, 79, 80, 81, 84, 114, 116, 117 and 90 are admitted into evidence.

Cross-examination of Ms. Claiborne by Mr. Barnard.

Ms. Claiborne is excused.

2:33 p.m. Government's witness Joanna DiBella is called and sworn.

Direct examination of Ms. DiBella by Mr. Sibert.

Government's Exhibits 60, 62, 65, 66, 67, and 71 are admitted into evidence.

**3:12 p.m. Court in recess.**
**3:32 p.m. Court in session.** Jury present.

Continued direct examination of Ms. DiBella by Mr. Sibert.

Cross-examination of Ms. DiBella by Mr. Barnard.

Ms. DiBella is excused.

4:17 p.m. Government's witness Kathleen Saia is called and sworn.

Case 1:17-cr-00008-WJM Document 190 Filed 01/18/19 Page 3 of 3

Direct examination of Ms. Saia by Mr. Sibert.

Government's Exhibit 47 is admitted into evidence.

Cross-examination of Ms. Saia by Mr. Barnard.

Ms. Saia is excused.

4:46 p.m. Government's witness Leslie Jean-Pierre is called and sworn.

Direct examination of Ms. Jean-Pierre by Mr. Brown.

**5:17 p.m. Court in recess.** Trial continued. Defendant continued on bond.

Total time in court: 6:36

Case 1:17-cr-00008-WJM Document 191 Filed 01/20/19 Page 1 of 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 17-cr-00008-WJM

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

1. **GUY M. JEAN-PIERRE,**

**Defendant.**

---

**RESPONSE TO MOTION TO RECONSIDER ADMISSION OF EXHIBIT 446 [187]**

---

The United States submits this response to the defendant's motion to reconsider the admission of exhibit 446, the plea agreement of William Sears in *United States v. William Sears*, 16-cr-00371-WJM [ECF 187].

BACKGROUND/FACTS

William Sears testified for approximately 12-14 hours between January 14 and 16, 2019. The beginning of his direct examination included an admission by Sears he pleaded guilty to conspiracy to commit securities fraud relating to Fusion Pharm stock before this court, entered into a stipulation of facts, made an agreement to be sentenced to 5-8 years, agreed to tell the truth if called as a witness and was promised nothing further. The government chose, tactically, not to introduce a copy of his plea agreement. The change of intention to offer the plea agreement was a direct result of

the door opened by the defendant when he suggested the witness was following a script drafted by the FBI and directed by AUSA Sibert.

Sears also testified that after he had been targeted in the investigation he offered and agreed to cooperate with the government with the hopes that his cooperation would lessen any punishment for his crimes. In the latter stages of his direct examination, Sears testified concerning an undercover operation. He indicated to former AUSA Harmon that he could assist in luring the defendant back into the jurisdiction of the United States which was the genesis of the undercover operation. The undercover investigation included monitored and recorded telephone conversations, emails and skype messages between Sears and the defendant who was then in the Dominican Republic. The undercover operation culminated, as Sears suggested, in the luring of the defendant into the United States when he agreed to meet Sears and a person who was an undercover FBI agent at a hotel in south Florida. That meeting, as well as a conversation in an automobile enroute from the airport to a hotel, was also monitored and recorded.

Numerous times in his direct examination when inquiry was made concerning some of the recordings between Sears and the defendant, when questioned about what he said to the defendant which elicited an arguably incriminating response from the defendant, Sears reply was that he was acting according to the “script” provided to him by the FBI. He did not indicate in his direct examination that he disagreed with the “script.” When the court took the noon recess on January 16, it admonished Sears to not speak with lawyers during the recess, as it had done for three days. As Sears was excused from the witness stand, he stormed out of the courtroom glaring at AUSA

Case 1:17-cr-00008-WJM Document 191 Filed 01/20/19 Page 3 of 9

Sibert as he passed the lectern. AUSA Sibert did not notice the glare but immediately followed Sears from the courtroom enroute to the restroom. Sears held the courtroom door for AUSA Sibert and as Sibert passed him said, "You didn't follow the script. Dickhead." Upon returning to the courtroom, AUSA Sibert advised defense counsel of the communication by the witness contrary to the court's direction. AUSA Sibert also provided courtroom staff a copy of a note he wrote describing the contact. Direct examination proceeded in the afternoon session. Sears testified regarding a conversation between himself and the defendant in a car from the Miami airport to a hotel. Sears admitted there were no agents with him to provide him a script but intimated that the whole scenario had been scripted. Sears acknowledged the fact of a meeting in the hotel room which was video and studio recorded and that the recordings were accurate. No questions about the meeting were asked of him. The recording was not published to the jury. Direct examination concluded during the afternoon.

During cross-examination, defense counsel focused his questions on the "script" that Sears had raised. Counsel suggested the "script" that Sears was told to follow was one "just like Fusion Pharm" in the eyes of law enforcement but not in Sears' view. He asked Sears about his disagreement with the "script." Sears provided no details but said, "Fusion Pharm was not like that." ("That" being the scenario the undercover operation followed). Defense counsel did not ask Sears to explain his disagreement with the purported FBI "script" but amplified it by implying the FBI undercover "script" was not the only "script" provided to Sears. Defense counsel inquired into the statement the defendant made to AUSA Sibert after the noon recess. He asked (paraphrasing) if the FBI script was the only script he was angry about and if in fact he

said to AUSA Sibert at the noon recess that "Sibert was off script." The cross examination ended.

    With the defense having brought up and solely emphasized the fact that Sears disagreed with the FBI scenario in which he seemingly enthusiastically participated as someone who did not need prodding along and with the defendant focusing on a government "script," the government on redirect sought to inquire into the "disagreement." Due to the fact the door had been opened, the government chose to drive through it and change their strategic decision of not introducing the plea agreement of Sears. The Sears plea agreement, exhibit 446, contains 29 pages of a factual recitation which details Sears' crime and details whether or not "Fusion Pharm was not like" the script used in the undercover scenario. The government began its redirect attempting to have Sears examine the factual details in the plea agreement and see if his assessment of the factual basis for the plea would differ from the scenario. However, Sears was not going to have any part of it. The government suggested Sears read the factual basis (to himself) and see if it refreshed his recollection and if not, have it admitted as an exhibit. The court indicated in its discretion it was not going to have the defendant read aloud the 29 pages to the jury. It was clear that examining the defendant as to the details of the factual recitation and inquiring whether those were within what he called a government manufactured "script" would have taken another three days. Recognizing that, the government chose to offer the entire plea agreement as an exhibit, which it could have done independently of the witness's memory or lack thereof. The court inquired twice of the government if that is what it wanted to do and admitted the exhibit.

Case 1:17-cr-00008-WJM Document 191 Filed 01/20/19 Page 5 of 9

ARGUMENT

The defense argument is premised on the mistaken assumption that plea agreements of a cooperating witness are inadmissible hearsay. He is wrong. "It is perfectly permissible for a prosecutor to introduce a witness's plea agreement on direct examination, even if it includes a truthfulness provision." *United States v. Harlow*, 444 F.3d 1255, 1262 (10th Cir. 2006). This rule was first noted by the Tenth Circuit in *United States v. Lord*, 907 F.2d 1028, 1029-31 (10th Cir. 1990), where the court ruled that not only could the plea agreement of a cooperating witness could be admitted but that the "truthfulness provisions" [that the witness agreed to testify truthfully] could be admitted, even absent a challenge to the witness' credibility by the defendant. The court focused on the issue of the truthfulness provision, accepting as a given that the plea agreement was admissible. "The majority of circuits allow the government to admit evidence of the truthfulness provisions of an agreement on direct examination of a witness, prior to any challenge to the witness's credibility." *Id.* at 1029. The court specifically rejected the Second Circuit's rule requiring the witness's credibility to be attacked prior to the admission of the entire plea agreement. *Id.* at 1030.

The Seventh Circuit explained the basis for the principle in *United States v. Lefluer,* 798 F.2d 977, 983-84 (7th Cir. 1979):

> To bolster a witness's credibility in advance is improper. See Fed.R.Evid. 608(a)(2). It not only has the potential for extending the length of trials enormously, but asks the jury to take the witness's testimony on faith; it may therefore reduce the care with which jurors listen for inconsistencies and other signs of falsehood or inaccuracy. But asking a witness whether he is testifying by agreement is not likely to bolster his credibility. If anything it is likely to have the opposite effect, by imputing a motive for the witness's testifying as the prosecution wants him to testify, regardless of the truth; few jurors would believe that the government would retaliate against a witness

> because he had lied *for* the government. If the government does not ask the witness whether he is testifying by agreement, the defense is very likely to do so on cross-examination.
>
> May the government pull the sting of cross-examination by asking the question on direct examination? We have twice upheld the propriety of this practice, see *United States v. Craig,* 573 F.2d 513, 519 (7th Cir.1978); *United States v. Hedman,* 630 F.2d 1184, 1198–99 (7th Cir.1980); see also *United States v. McNeill,* 728 F.2d 5, 14 (1st Cir.1984); *United States v. Henderson,* 717 F.2d 135, 137–38 (4th Cir.1983), and we are not persuaded to depart from these holdings. The practice is justified by the same considerations that underlie the “completeness” rule codified in Fed.R.Evid. 106. A party ought to be able to extract the complete testimony of his witness, including the essential circumstances bearing on its believability, rather than forced to leave gaping holes to be poked at by his opponent. This is particularly true in the matter of a plea or immunity agreement, since the jury is bound to wonder from the outset why someone should be testifying to all these things that damn him along with the defendant, and having wondered may be shocked or puzzled to discover the reason for the first time on cross-examination. A trial is not just combat; it is also truth-seeking; and each party is entitled to place its case before the jury at one time in an orderly, measured, and balanced fashion, and thus spare the jury from having to deal with bombshells later on. It is on this theory that defense counsel, in beginning their examination of a defendant, will often ask him about his criminal record, knowing that if they do not ask, the prosecutor will do so on cross-examination. See, e.g., *United States v. Fountain,* 768 F.2d 790, 795, modified on other grounds, 777 F.2d 345 (7th Cir.1985) (per curiam). What is sauce for the goose is sauce for the gander.

*Accord, United States v. Mealy*, 851.F.2d 890 (2nd Cir. 890, 899 (7th Cir. 1988).

Thus, it was legally permissible for the government to introduce the full, written plea agreement in direct examination, or simply at another point in its case in chief (which is ongoing). The fact that the government did not deem it necessary to do so until it felt the defendant opened the door to the witness’s prior version of the facts of “what happened at Fusion Pharm,” does not preclude admission. The defendant makes oblique references to the prosecutor’s motives, but avoids the simple fact that he

opened the door that the prosecution was not going to open – the details of the written plea agreement.

The defendant also challenges whether the predicates of Fed R. Evid 803(5) were satisfied. Frankly, undersigned counsel does not have a sufficient recollection of what was asked and answered of the witness. We do not have an appellate record from which to argue and the government defers to the court which has a better ability to access the record. However, that is immaterial. Whether or not those predicates are satisfied is not the point. If the court chooses to exclude the exhibit as offered during the testimony of Sears when it became clear he was trying to deny the “script” to which he affixed his signature on the plea agreement sometime ago on the ground predicates were not satisfied, the exhibit can still be admitted. The government can simply offer it as an exhibit to which the court can take judicial notice, the court’s own records under Fed.R. Evid 201(b)(2). *Harris v. County of* Orange, 682 F.3d 1126, 1131 (9th Cir. 2012); United *States v.* Estep, 760 F.2d 1060, 1063 (10th Cir. 1985). The admissibility is clear based upon the authority noted above. Apart from that authority, the relevance was made clear when the defense focused on what Sears stated was an untrue “script” written by the FBI and directed by AUSA Sibert in his direct examination.

Case 1:17-cr-00008-WJM Document 191 Filed 01/20/19 USDC Colorado Page 8 of 9

CONCLUSION

Based upon the arguments and authorities adduced herein, the defendant's motion to reconsider the decision to admit exhibit 446 should be denied.

Dated this 20th day of January 2019.

Respectfully submitted,

Jason A. Dunn
United States Attorney

By: *s/Robert Brown*
ROBERT BROWN
Assistant United States Attorney
U.S. Attorney's Office-Denver
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: (303)454-0100
Email: Jeremy.Sibert@usdoj.gov

Case 1:17-cr-00008-WJM Document 191 Filed 01/20/19 USDC Colorado Page 9 of 9

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January 2019, I electronically filed the foregoing **RESPONSE TO MOTION TO RECONSIDER ADMISSION OF EXHIBIT 446 [187]** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By: *s/ Robert Brown*
ROBERT BROWN
United States Attorney's Office

Case 1:17-cr-00008-WJM Document 192 Filed 01/22/19 Page 1 of 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 22, 2019
Courtroom Deputy: Anna Frank
Court Reporter: Mary George

---

| Criminal Action No. 17-cr-00008-WJM | Counsel: |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff, | Jeremy Sibert<br>Robert Brown |
| v. | |
| GUY JEAN-PIERRE,<br><br>Defendant. | Thomas Goodreid<br>Clifford Barnard |

---

**COURTROOM MINUTES**

---

Jury Trial: Day Six

**8:49 a.m. Court in session.** Jury is not present.

Discussion held regarding Government's Exhibit 52.

9:20 a.m. Jury present.

Government resumes. Continued direct examination of Ms. Jean-Pierre by Mr. Brown.

Government's Exhibit 52 (pages 3, 4, 7, 8, 11-18 and 37-72 are removed) is admitted into evidence.

10:13 a.m. Jury is excused.

Discussion held regarding Defendant's Motion for Reconsideration of Admission of Government's Exhibit #446 [ECF 187].

**ORDERED:** Defendant's Motion for Reconsideration of Admission of Government's Exhibit #446 [ECF 187] is granted. Government's Exhibit 446 is excluded and will not be provided to the Jury.

Case 1:17-cr-00008-WJM Document 192 Filed 01/22/19 Page 2 of 3

**10:18 a.m. Court in recess.**
**10:37 a.m. Court in session.** Jury present.

Continued direct examination of Ms. Jean-Pierre by Mr. Brown.

Ms. Jean-Pierre is excused.

10:46 a.m. Government's witness Darryl Michael Cruz is called and sworn.

Direct examination of Mr. Cruz by Mr. Sibert.

Government's Exhibits 120 and 121 are admitted into evidence.

**12:08 p.m. Court in recess.**
**1:19 p.m. Court in session.** Jury present.

Continued direct examination of Mr. Cruz by Mr. Sibert.

Government's Exhibits 126, 122, 127, 129, 131, 435, 436, 437 and 134 are admitted into evidence.

The paper copies of Government's Exhibits 432, 433 and 434 are admitted into evidence. The Court reserves ruling on the admissibility of the CD's associated with Government's Exhibits 432, 433 and 434.

3:02 p.m. Jury is excused.

The paper copy of Government's Exhibit 429 is admitted into evidence. The Court reserves ruling on the admissibility of the CD associated with Government's Exhibit 429.

**3:10 p.m. Court in recess.**
**3:27 p.m. Court in session.** Jury present.

Mr. Cruz is excused.

3:29 p.m. Government's witness Todd Abbott is called and sworn.

Direct examination of Mr. Abbott by Mr. Sibert.

Government's Exhibits 152 and 291 are admitted into evidence.

Cross-examination of Mr. Abbott by Mr. Barnard.

Redirect of Mr. Abbott by Mr. Sibert.

Mr. Abbott is excused.

4:05 p.m. Government's witness Todd Kramer is called and sworn.

Direct examination of Mr. Kramer by Mr. Brown.

Government's Exhibits 135, 136, and 138 are admitted.

**5:05 p.m.** **Court in recess.** Trial continued. Defendant continued on bond.

Total time in court: 6:29

Case 1:17-cr-00008-WJM Document 193 Filed 01/23/19 Page 1 of 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 23, 2019
Courtroom Deputy: Anna Frank
Court Reporter: Mary George

---

| | |
|---|---|
| Criminal Action No. 17-cr-00008-WJM | Counsel: |
| UNITED STATES OF AMERICA,<br><br>Plaintiff, | Jeremy Sibert<br>Robert Brown |
| v. | |
| GUY JEAN-PIERRE,<br><br>Defendant. | Thomas Goodreid<br>Clifford Barnard |

---

**COURTROOM MINUTES**

---

Jury Trial: Day Seven

**8:47 a.m. Court in session.** Jury present.

Government resumes. Continued direct examination of Mr. Kramer by Mr. Brown.

Government's Exhibit 139 is admitted into evidence.

**10:19 a.m. Court in recess.**
**10:41 a.m. Court in session.** Jury is not present.

Complete copies of Government's Exhibits 432, 433 and 434 are admitted into evidence.

10:42 a.m. Jury present.

Cross-examination of Mr. Kramer by Mr. Barnard.

Redirect of Mr. Kramer by Mr. Brown.

Mr. Kramer is excused.

Case 1:17-cr-00008-WJM Document 193 Filed 01/23/19 USDC Colorado Page 2 of 3

10:50 a.m. Government's witness Richard Scholz is called and sworn.

Direct examination of Mr. Scholz by Mr. Sibert.

Cross-examination of Mr. Scholz by Mr. Barnard.

Redirect of Mr. Scholz by Mr. Sibert.

Mr. Scholz is excused.

11:54 a.m. Government's witness Wayne Harold Coleson is called and sworn.

Direct examination of Mr. Coleson by Mr. Brown.

**12:14 p.m. Court in recess.**
**1:24 p.m. Court in session.** Jury is not present.

The Court directs counsel to agree to a streamlined document to be provided to the Jury in place of the Second Superseding Indictment [ECF 113] by Sunday, January 27th, 2019, as stated on the record.

1:30 p.m. Jury present.

Continued direct examination of Mr. Coleson by Mr. Brown.

Cross-examination of Mr. Coleson by Mr. Goodreid.

Mr. Coleson is excused.

1:42 p.m. Government's witness Myron Thaden is called and sworn.

Direct examination of Mr. Thaden by Mr. Sibert.

Cross-examination of Mr. Thaden by Mr. Goodreid.

Redirect of Mr. Thaden by Mr. Sibert.

Mr. Thaden is excused.

2:11 p.m. Government's witness Michael Kocinski is called and sworn.

Direct examination of Mr. Kocinski by Mr. Brown.

Government's Exhibits 262, 168, 176, 178 and 179 are admitted into evidence.

Cross-examination of Mr. Kocinski by Mr. Goodreid.

Case 1:17-cr-00008-WJM Document 193 Filed 01/23/19 Page 3 of 3

Mr. Kocinski is excused.

2:56 p.m. Government's witness Sandra Sears (mother of William Sears) is called and sworn.

Direct examination of Ms. Sears (mother) by Mr. Sibert.

**3:10 p.m. Court in recess.**
**3:29 p.m. Court in session.** Jury present.

Continued direct examination of Ms. Sears (mother) by Mr. Sibert.

Government's Exhibits 91, 106,108, 109, and 110 are admitted into evidence.

Ms. Sears (mother) is excused.

3:42 p.m. Government's witness Sandra Sears (wife of William Sears) is called and sworn.

Direct examination of Ms. Sears (wife) by Mr. Sibert.

Government's Exhibits 97 and 101 are admitted into evidence.

Ms. Sears (wife) is excused.

4:02 p.m. Government's witness Andrew Duke is called and sworn.

Direct examination of Mr. Duke by Mr. Sibert.

Government's Exhibits 225, 227 and 228 are admitted into evidence.

**5:05 p.m. Court in recess.** Trial continued. Defendant continued on bond.

Total time in court: 6:27

Case 1:17-cr-00008-WJM Document 195 Filed 01/24/19 Page 1 of 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 24, 2019
Courtroom Deputy: Anna Frank
Court Reporter: Mary George

---

Criminal Action No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

GUY JEAN-PIERRE,

Defendant.

Counsel:

Jeremy Sibert
Robert Brown

Thomas Goodreid
Clifford Barnard

---

**COURTROOM MINUTES**

---

Jury Trial: Day Eight

**8:52 a.m. Court in session.** Jury is not present.

Discussion held regarding trial timing. The Court informs Government that it will impose a trial time clock if necessary.

**9:00 a.m. Court in recess.**
**9:28 a.m. Court in session.** Jury present.

Government resumes. Continued direct examination of Mr. Duke by Mr. Sibert.

Cross-examination of Mr. Duke by Mr. Barnard.

Redirect of Mr. Duke by Mr. Sibert.

Mr. Duke is excused.

9:54 a.m. Government's witness Robert Dittman is called and sworn.

Direct examination of Mr. R. Dittman by Mr. Sibert.

Case 1:17-cr-00008-WJM Document 195 Filed 01/24/19 Page 2 of 3

Government's Exhibit 111 is admitted into evidence.

Mr. R. Dittman is excused.

**10:19 a.m. Court in recess.**
**10:38 a.m. Court in session.** Jury present.

10:38 a.m. Government's witness Cliffe Bodden is called and sworn.

Direct examination of Mr. Bodden by Mr. Sibert.

Government's Exhibits 257, 240, 243, 259, 260, 239, 242, 244, 246, 247, 250, 251, 255 and 256 are admitted into evidence.

**12:21 p.m. Court in recess.**
**1:33 p.m. Court in session.** Jury present.

Continued direct examination of Mr. Bodden by Mr. Sibert.

Government Exhibits 253, 265, 266, 273, 275, 236 (all pages) and 237 are admitted into evidence.

Cross-examination of Mr. Bodden by Mr. Barnard.

**3:12 p.m. Court in recess.**
**3:31 p.m. Court in session.** Jury present.

Re-direct of Mr. Bodden by Mr. Sibert.

3:37 p.m. Jury is excused.

Mr. Bodden is excused.

Discussion held regarding United States' Motion for Material Witness [ECF 162].

3:39 p.m. Jury present.

3:40 p.m. Government's witness Anthony DiTommaso is called and sworn.

Direct examination of Mr. DiTommaso by Mr. Sibert.

Government's Exhibits 180, 181, 182, 183, 184, 186, 186a, 186b, 186c, 186d, 186e, 186f, 186g, 186h, 218, 219, 187, 187a, 187b, 187c, 187d, 188, 189, 190, 191, 191a, 192, 192a 192b, 193, 193a, 194, 195, 195a, 195b, 195c, 195d, 195e, 196, 196a, 197, 200, 200a, 200b, 200c, 201, 201a, 201b, 201c, 202, 202a, 202b, 202c, 203, 203a, 203b, 203c, 203d, 204, 205, 205a, 205b, 206, 206a, 206b, 206c, 207, 208, 209, 212,

Case 1:17-cr-00008-WJM Document 195 Filed 01/24/19 Page 3 of 3

212a, 212b,197a, 197b, 198, 199, 213, 214, 215, 215a, 215b, 215c, 215d, 216, 217, and 220 are admitted into evidence.

**5:09 p.m.** **Court in recess.** Trial continued. Defendant continued on bond.

Total time in court: 5:59

Case 1:17-cr-00008-WJM Document 199 Filed 01/25/19 Page 1 of 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 25, 2019
Courtroom Deputy: Anna Frank
Court Reporter: Mary George

---

Criminal Action No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

GUY JEAN-PIERRE,

Defendant.

Counsel:

Jeremy Sibert
Robert Brown

Thomas Goodreid
Clifford Barnard

---

**COURTROOM MINUTES**

---

Jury Trial: Day Nine

**8:59 a.m. Court in session.** Jury is not present.

Discussion held regarding trial schedule. Court will extend the trial by one day. Government must rest at 3:15 p.m. on Monday, January 28, 2019. Court will hear Rule 29 motions after the afternoon recess.

Government's Exhibits 209a, 209b, 209c, 209d, 210, 210a, 210b, 211, 211a and 211b are admitted into evidence.

Discussion held regarding expert witnesses.

**9:06 a.m. Court in recess.**
**9:14 a.m. Court in session.** Jury present.

Government resumes. Continued direct examination of Mr. DiTommaso by Mr. Sibert.

Cross-examination of Mr. DiTommaso by Mr. Goodreid.

Case 1:17-cr-00008-WJM Document 199 Filed 01/25/19 Page 2 of 3

**10:29 a.m.** **Court in recess.**
**10:47 a.m.** **Court in session.** Jury present.

Continued cross-examination of Mr. DiTommaso by Mr. Goodreid.

Redirect of Mr. DiTommaso by Mr. Sibert.

Mr. DiTommaso is excused.

11:25 a.m. Government's witness Joe Ivanich is called and sworn.

Direct examination of Mr. Ivanich by Mr. Brown.

Government's Exhibit 404 is admitted into evidence.

Mr. Ivanich is excused.

12:06 p.m. Government's witness Alex Scoufis is called and sworn.

Direct examination of Mr. Scoufis by Mr. Sibert.

Government's witness Mr. Scoufis is qualified to provide expert opinion testimony.

**12:18 p.m.** **Court in recess.**
**1:26 p.m.** **Court in session.** Jury present.

Continued direct examination of Mr. Scoufis by Mr. Sibert.

Government's Exhibits 284, 286, 287, 289, 290, 300, 294, 295 and 296 are admitted into evidence.

**3:12 p.m.** **Court in recess.**
**3:38 p.m.** **Court in session.** Jury is not present.

Discussion held regarding juror number 100364907.

Juror number 100364907 is excused.

Government's Exhibits 303, 406, 407, 408a, 408b, 408c, 408d, 408e, 408f, 408g, 410b, 410c, 410d, 410e, 410f, 410g, 410h, 410i, 410j, 410k, 410n, 410o, 410p, and 411 are admitted into evidence.

3:50 p.m. Jury present.

Continued direct examination of Mr. Scoufis by Mr. Sibert.

Case 1:17-cr-00008-WJM Document 199 Filed 01/25/19 Page 3 of 3

Government's Exhibits 297, 298, 299 and 301 are admitted into evidence.

Cross-examination of Mr. Scoufis by Mr. Barnard.

Government's Exhibits 288 and 292 are admitted into evidence.

Re-direct of Mr. Scoufis by Mr. Sibert.

Mr. Scoufis is excused.

**5:08 p.m. Court in recess.** Trial continued. Defendant continued on bond.

Total time in court: 6:09

Case 1:17-cr-00008-WJM Document 260 Filed 01/27/19 Page 1 of 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. GUY M. JEAN-PIERRE,
a/k/a Marcello Dominguez de Guerra,

Defendant.

---

**GOVERNMENT'S SECOND AMENDED STIPULATED JURY INSTRUCTIONS (First pages of Instructions 25, 26, 28 and 33)**

---

The United States of America, by and through the undersigned Assistant United States Attorney, after consultation with counsel for the defendant, and partly in response to the communication from the Court's chambers, submits this Second Amended Stipulated portions of jury instructions 25, 26, 28 and 33.

Only the first pages of instructions 25, 26 and 28 are submitted as those first pages contain the only changes to the instructions, and counsel was of the belief that if fewer pages were submitted, there would be less room for errors. The Court's chamber's communication to counsel only related to instructions 25, 32 and 33. In examining the subject of the communication, counsel noticed a few errors he made on instruction 25 and 28 which led to further, minor rewriting of instruction 26 (Wire Fraud) to be consistent with the corrected instruction 28 (Mail Fraud).

Instruction 25 (Conspiracy) had conspiracy to commit mail and wire fraud

included in the instructions, but conspiracy to commit those offenses had been deleted from the Second Superseding Indictment. The instruction also clarified the issue raised in the Court's communication, hopefully. The description of the scheme to defraud contained in the previously submitted instruction 28 was different from that charged in the Second Superseding Indictment and that was corrected. After instruction 26 was corrected, defense counsel notice some other areas needing correction to both 28 (mail fraud) and 26 (wire fraud), and those corrections were made.

In response to the Court's communication, the government sought to simplify its previously Disputed Instructions relating to securities fraud [ECF 177]. To do so the government drastically scaled down instruction 33 which has now been stipulated to by the defendant, and is included herewith. Other portions of the government's alleged simplification relate to Disputed instructions 29 and 32, which will be submitted in Amended Disputed Instructions 29 and 32. As those had been disputed, upon consultation with defense counsel, those instructions remain disputed and the defendant's previously filed objections remain.

Jason Dunn

United States Attorney

By: *s/ Robert Brown*
Robert Brown
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0216
E-mail: robert.brown5@usdoj.gov
Attorney for the United States

Case 1:17-cr-00008-WJM Document 200 Filed 01/27/19 Page 3 of 3

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January 2019, I electronically filed the foregoing GOVERNMENT'S SECOND AMENDED STIPIULATED JIURY INSTRUCTONS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record

/s Robert Brown
ROBERT BROWN
U.S. Attorney's Office

Case 1:17-cr-00008-WJM Document 200-1 Filed 01/27/19 Page 1 of 1

SECOND AMENDED STIPULATED INSTRUCTION NO. 25 (p. 34)

COUNT 1, CONSPIRACY ELEMENTS

The defendant is charged in Count 1 with a violation of Title 18, United States Code, Section 371. This statute makes it a crime to conspire to commit an offense against the United States or to defraud the United States or an agency of the United States, in this case the Securities and Exchange Commission.

As alleged in the indictment, the defendant is charged with conspiring with William J. Sears, Scott M. Dittman and with other persons to commit securities fraud, a violation of Rule 10b-5 of the Securities and Exchange and to defraud the United States Securities and Exchange Commission by impeding, impairing, defeating or obstructing its lawful functions.

To find the defendant guilty of Count 1, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant agreed with at least one other person to commit securities fraud, or to violate Rule 10-b(5), as that is described within these instructions, or to defraud the SEC, by impeding, impairing, defeating or obstructing its lawful functions;

*Second*: at least one of the conspirators engaged in at least one overt act furthering any of the conspiracy's objectives;

*Third*: the defendant knew the essential objective of the conspiracy;

*Fourth*: the defendant knowingly and voluntarily participated;

*Fifth*: there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual

Case 1:17-cr-00008-WJM Document 200-2 Filed 01/27/19 Page 1 of 1

SECOND AMENDED STIPUILATED INSTRUCTION NO. 26 (p. 39)

COUNTS 2-16 AND 24-28 WIRE FRAUD ELEMENTS

The defendant is charged in counts 2-16 and 24-28 with wire fraud, in violation of 18 U.S.C. Section 1343, or aiding and abetting this offense, in violation of 18 U.S.C. section 2(a).

This law makes it a crime to use interstate wire communication facilities in carrying out a scheme to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises or attempting to do so.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: the defendant devised or intended to devise a scheme to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, or attempting to do so;

Second: the defendant acted with specific intent to defraud;

Third: the defendant used interstate wire communications facilities, or caused another person to use interstate wire communications facilitates for the purpose of carrying out the scheme;

Fourth: the scheme employed false or fraudulent pretenses, representations, or promises that were material.

A "scheme to defraud” is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension. A "scheme to defraud" includes a scheme to deprive another of money, property or the intangible right of honest services.

An "intent to defraud” means an intent to deceive or cheat someone.

SECOND AMENDED INSTRUCTION NO. 28 (p. 44)

COUNTS 17-20, MAIL FRAUD ELEMENTS

The defendant is charged in counts 17-20 with mail fraud in violation of 18 U.S.C. Section 1341, or aiding and abetting this offense, in violation of 18 U.S.C. section 2(a).

This law makes it a crime to use the mails in carrying out a scheme to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, or attempting to do so.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant devised or intended to devise a scheme to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, or attempting to do so;

*Second*: the defendant acted with specific intent to defraud;

*Third*: the defendant mailed something, or caused another person to mail something through a commercial interstate carrier for the purpose of carrying out the scheme;

*Fourth*: the scheme employed false or fraudulent pretenses, representations, or promises that were material.

A "scheme to defraud" is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension. A "scheme to defraud" includes a scheme to deprive another of money, property or the intangible right of honest services.

An "intent to defraud" means an intent to deceive or cheat someone.

Case 1:17-cr-00008-WJM Document 200-4 Filed 01/27/19 Page 1 of 2

SECOND AMENDED STIPULATED INSTRUCTIONS NO. 33.

DEFINITIONS UNDER SECURITIES LAW

You are instructed the securities law relevant to this case has a number of definitions:

Security. The term "security" means any note, stock, security-based swap, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Restricted Security: The term restricted securities means securities acquired directly or indirectly from the issuer, or from an affiliate of the issuer, ina transaction or chain of transactions not involving any public offering.

Sale or sell: The term "sale" or "sell" shall include every contract of sale or disposition of a security or interest in a security, for value. The term "offer to sell", "offer for sale", or "offer" shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value.

Person: The term "person" means an individual, a corporation, a partnership, an association, a joint-stock company, a trust, or any unincorporated organization subdivision thereof.

Issuer: The term "issuer" means every person who issues or proposes to issue any security.

Underwriter: The term "underwriter" means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking. As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person

Case 1:17-cr-00008-WJM Document 200-4 Filed 01/27/19 Page 2 of 2

directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

17 CFR 230.144

Securities Act of 1933

15 U.S. Code § 77e

17 C.F.R. § 230.144

Case 1:17-cr-00008-WJM Document 201 Filed 01/27/19 Page 1 of 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. GUY M. JEAN-PIERRE,
a/k/a Marcello Dominguez de Guerra,

Defendant.

---

**GOVERNMENT'S AMENDED DISPUTED JURY INSTRUCTIONS (Instructions 29, 32)**

---

The United States of America, by and through the undersigned Assistant United States Attorney, after consultation with counsel for the defendant, and in response to the communication from the Court's chambers, submits this Amended Disputed Instructions relating to jury instructions 29 and 33.

In response to the Court's communication to counsel on the afternoon of January 25, 2019,, the government sought to simplify its previously Disputed Instructions relating to securities fraud [ECF 177]. To do so, the government scaled down instruction 33 which has now been stipulated to by the defendant [see ECF 200]. As securities law is a complicated area of the law, counsel for the government and the defense attempted to find common ground but were able to do so only insofar as to the reducing of the length of Stipulated Instruction 33. Government counsel understands that the defendant's objection to the original Disputed Instructions remain as to the Amended Disputed

Case 1:17-cr-00008-WJM Document 201 Filed 01/27/19 Page 2 of 3

Instructions.

The government's Amended Disputed Instructions involve only instruction 29 and 32. The government simplified and reduced its version of 32 and the now stipulated 33 which led to some minor additions to instruction 29 which mostly general concepts but not duplicative as the additions uniquely apply to securities law.

Jason Dunn

United States Attorney

By: *s/ Robert Brown*
Robert Brown
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0216
E-mail: robert.brown5@usdoj.gov
Attorney for the United States

Case 1:17-cr-00008-WJM Document 201 Filed 01/27/19 Page 3 of 3

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January 2019, I electronically filed the foregoing GOVERNMENT'S AMENDED DISPUTED JIURY INSTRUCTONS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record

/s Robert Brown
ROBERT BROWN
U.S. Attorney's Office

GOVT. AMENDED DISPUTED INSTRUCTION NO. 29

COUNTS 21-23 SECURITIES FRAUD ELEMENTS

Counts 21-23 charge the defendant with committing securities fraud, or aiding and abetting the commission of securities fraud, relating to FusionPharm stock. Specifically, the defendant is charged under Title 15, United States Code, Sections 78j(b) and 78ff, and a regulation promulgated thereunder. Section 78j(b) provides in relevant part that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5 (Title 15, United States Code, Section 78(j)(B)) was promulgated by the Securities and Exchange Commission, or the SEC, as “necessary or appropriate in the public interest” “for the protection of investors.” Rule10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

These provisions make unlawful all “intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of

Case 1:17-cr-00008-WJM Document 201-1 Filed 01/27/19 Page 2 of 5

securities."[1] Such activity "mislead[s] investors by artificially affecting market activity."[2] It "deceiv[es] investors as to how other market participants have valued a security"; the investors are "misled to believe that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."[3] "The basis of such manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."[4]

The Indictment alleges that the defendant engaged in a series of actions designed to manipulate the market price and volume of FusionPharm stock and to orchestrate artificial investor demand for FusionPharm stock. To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant, in connection with the purchase or sale of securities,

(a) employed any device, scheme, or artifice to defraud, or

(b) made any untrue statement of a material fact, or

---

[1] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976).

[2] *Santa Fe Indus. v. Green*, 430 U.S. 462, 476 (1977).

[3] *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007) (internal quotations and citation omitted); *see Ala. Farm Bureau Mut. Cas. Co., v. Inc. Am. Fidelity Life Ins. Co.*, 606 F.2d 602, 612 (5th Cir. 1979) (scheme to contrive stock trades qualifies as "manipulative" under § 10(b) because it "induce[s] investment in a company's stock").

[4] *Levy v. United States*, 626 F. App'x 319, 322 (2d Cir. 2015) (citing *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir.1999))

Case 1:17-cr-00008-WJM Document 201-1 Filed 01/27/19 Page 3 of 37

(c) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(d) engaged in a transaction, practice, or course of business which operated or would operate as a fraud and deceit on any person.

*Second*: the defendant aced knowingly, intentionally and wilfully;

*Third*: made use of, or caused the use of,

(a) any means or instrumentality of interstate commerce, or

(b) of the mails, or

(c) of any facility of any national securities exchange, in connection with the purchase or sale of securities

*Fourth*: the defendant acted with the intent to defraud.

Information is material if there is a substantial likelihood that a reasonable investor would have considered it important in deciding whether to buy, sell, or hold a security and at what price to buy, sell, or hold the security. In other words, there must be a substantial likelihood that a reasonable investor would have viewed the information at issue as significantly altering the total mix of information available. Materiality of information is judged as of the time the information is used to trade.

A person uses information in connection with trading a stock or options when that information is a factor, however small, in his/her decision to buy or sell the stock or option. You may find that a person's conduct was in connection with the purchase or sale of stock or option even if there was no evidence that other purchasers or sellers were harmed.

Case 1:17-cr-00008-WJM Document 201-1 Filed 01/27/19 Page 4 of 7

To act willfully means to act knowingly and purposefully with the intent to do something that the law forbids, that is, with bad purpose either to disobey or to disregard the law. It is not required that the government show that person, in addition to knowing what he was doing and deliberately doing it, also knew he was violating some particular statute. But the defendant must have acted with knowledge and intent to carry out the scheme.

Intent to defraud in the context of the securities laws means to act knowingly and with the intent to deceive. For a person to have acted with the specific intent to deceive means that he must have known of the fraudulent nature of the scheme and acted with intent that it succeed.

The question of whether a person acted knowingly, willfully, and with the intent to defraud is a question of fact for you to determine like any other fact question. This question involves one's state of mind.

The term "instrumentality of interstate commerce" means instruments, devices, and means of conducting trade, commerce, transportation, or communication among any two states. Instrumentality of interstate commerce includes the use purely within one state of a telephone or any other instrument used in the conduct of interstate commerce.

I instruct you that the Over the Counter Markets is a national securities exchange. The term "facility of a national securities exchange" includes any property or services maintained by Over the Counter Markets.

It is not necessary that the defendant be directly or personally involved in the use of an instrumentality of interstate commerce or use of any facility of a national security

Case 1:17-cr-00008-WJM Document 201-1 Filed 01/27/19 Page 5 of 37

exchange. It is enough for you to find that the defendant was an active participant in a scheme and took steps or engaged in conduct that he knew or could reasonably foresee would naturally and probably result in the use of an instrumentality of interstate commerce or use of a facility of a national securities exchange. This includes placing a telephone call, email, or an order to a brokerage firm to buy or sell securities.

It is not necessary that the communication over the instrumentality of interstate commerce concern any fraudulent material or anything criminal or objectionable. The matter communicated may be entirely innocent so long as it is in furtherance of a scheme to defraud or fraudulent conduct.

The use of an instrumentality of interstate commerce need not be central to the execution of the scheme and may even be incidental to it. All that is required is that the use of an instrument of interstate commerce bore some relationship to the object of the scheme or fraudulent conduct.

Each specific use of an instrumentality of interstate commerce in furtherance of a scheme to defraud constitutes a separate and distinct criminal offense.

Aiding and abetting securities fraud

The defendant is charged with aiding and abetting the commission of securities fraud. Title 18, United States Code, Section 2, provides: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

Case 1:17-cr-00008-WJM Document 201-1 Filed 01/27/19 Page 6 of 7

*First*: someone else committed the charged crime (securities fraud); and

*Second*: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Title 15, United States Code, Sections 78j(b)
Title 15, United States Code, Section 78(j)(B)

United States v. Edward Kosinski Criminal No 3:16CR 148 United States District Court District of Connecticut

United States v. James M. Schneider No 17-201712-CR-FAM(s) United States District Court Southern District of Florida

*United States v. Bercoon,* 15-cr-0022-LMM, N.D. Ga 2015 (instruction given).
2B Kevin F. O'Malley *et al*., *Fed. Jury Prac. & Instr.* § 62:05, 62.07 (6th ed.) (modified to match 10th circuit format).
Tenth Circuit Pattern Crim. Jury Instr. § 2.06 (2011) (modified

Case 1:17-cr-00008-WJM Document 201-1 Filed 01/27/19 Page 7 of 37

GOVT. AMENDED DISPUTED INSTRUCTION NO. 32

GENERAL RULES AND RESTRICTIONS UNDER SECURITIES LAW

Rule 144 under the Securities Act ("Rule 144") provides certain requirements for resellers to avoid being classified as an underwriter. These rules vary on whether or not an individual is classified as an "affiliate." Rule 144(a) (1) defines an "affiliate" to mean "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with the issuer." Rule 405 under the Securities Act defines "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise."

If a person is considered an affiliate, additional requirements must be met in order to sell securities since the securities will be termed "restricted securities" since the securities are acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering. The additional requirements include a holding period, limitation on amount of securities sold, manner of sale, and requirement for brokers' transactions to include a reasonable inquiry.

15 U.S. Code § 77e

17 C.F.R. § 230.144

Case 1:17-cr-00008-WJM Document 202 Filed 01/27/19 Page 1 of 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.17-cr-00008-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE**,

Defendant.

---

**DEFENDANT JEAN-PIERRE'S SECOND AMENDED DISPUTED JURY INSTRUCTION REGARDING GOVERNMENT'S INSTRUCTION NO. 32**

---

THE DEFENDANT, GUY M. JEAN-PIERRE, by and through his attorney, Clifford J. Barnard, hereby submits his amended proposed Instruction No. 32. Mr. Jean-Pierre continues to object to the government's proposed Instructions 26 and 29 as set forth in *Defendant Jean-Pierre's Amended Disputed Jury Instructions and Objections to Government's Instructions 26 and 29 in the "Government's Stipulated Jury Instructions" (Docket # 152)* (Document No. 178).

Mr. Jean-Pierre submits the following proposed amended jury Instruction B to replace the government's proposed Instructions No. 32:

Case 1:17-cr-00008-WJM Document 202 Filed 01/27/19 Page 2 of 9

DEFENDANT'S INSTRUCTION NO. B

General Rules and Restrictions Under Securities Law

The indictment alleges that the defendant intentionally, willfully, and knowingly made a misstatement of a material fact, namely that securities offered or sold by FusionPharm were exempted from registration with the Securities and Exchange Commission under Rule 144 under the Securities Act.

The government must therefore prove beyond a reasonable doubt, that

(a) that the defendant made this alleged statement;[1]

(b) that this statement was made by defendant in connection with the purchase or sale of securities;[2]

(c) that this alleged statement was material;[3]

(d) that this alleged statement was untrue;[4]

(e) that the defendant intentionally made this alleged misstatement;[5] and

(f) that the defendant acted knowingly and willfully in making this alleged misstatement.[6]

---

[1] 17 C.F.R. § 240.10b-5; *Janus Capital Group, Inc., et al. v. First Derivative Traders*, 131 S.Ct. 2296, 2301-2 (2011).

[2] 17 C.F.R. § 240.10b-5; *Blue Chip Stamps, et al. v. Manor Drug Stores*, 421 U.S. 723, 754-5 (1975).

[3] 17 C.F.R. § 240.10b-5; *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-2 (1988).

[4] 17 C.F.R. § 240.10b-5; *Santa Fe Industries, Inc., et al. v. Green et al.*, 430 U.S. 462, 472-4 (1977) (10b-5 liability requires "manipulation or deception").

[5] 17 C.F.R. § 240.10b-5; *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).

[6] 15 U.S.C §§ 78j, 78ff.

Case 1:17-cr-00008-WJM Document 202 Filed 01/27/19 Page 3 of 9

In order to prove part (d) above, the government must prove beyond a reasonable doubt that the securities offered or sold by FusionPharm were *not* subject to an exemption under Rule 144 and that the securities were not otherwise registered with the Securities and Exchange Commission or exempt from registration. However, even if the government proves this, it must still prove all of the other elements of the alleged crime. Mere failure by FusionPharm to comply with Rule 144 or with registration requirements under the Securities Act of 1933 is not enough to find the defendant guilty.

Rule 144 under the Securities Act ("Rule 144") provides certain requirements for resellers to avoid being classified as an underwriter. These rules vary on whether or not an individual is classified as an "affiliate"of the issuer. Rule 144(a)(1) defines an "affiliate" to mean "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with the issuer." Rule 405 under the Securities Act defines "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise."

If a person is considered an affiliate, additional requirements must be met in order to sell securities to qualify under the Rule 144 Safe Harbor exemption from registration since the securities will be termed "restricted securities" since the securities are acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering. The additional requirements include a holding period, limitation on the amount of securities sold, and the manner of sale. In order to prove that Rule 144 was not complied with and that the alleged statement that FusionPharm securities were exempt from registration under that regulation was in fact

Case 1:17-cr-00008-WJM Document 202 Filed 01/27/19 Page 4 of 5

false, the government must prove beyond a reasonable doubt among other things that these securities constituted "restricted securities" under Rule 144. Instruction Number 30 sets forth the relevant legal definition of "restricted securities."

17 C.F.R. § 230.144, Safe Harbor Rule 144

Case 1:17-cr-00008-WJM Document 202 Filed 01/27/19 USDC Colorado Page 5 of 5

DATED this 27th day of January, 2019.

Respectfully submitted,

*s/Clifford J. Barnard*

Clifford J. Barnard
Clifford J. Barnard, Attorney at Law
4450 Arapahoe Avenue, Suite 100
Boulder, Colorado 80303
Telephone: (303) 449-2543
Facsimile: (303) 444-6349
Email: *cliffbarnard@earthlink.net*
Attorney for Defendant Jean-Pierre

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of January, 2019, I electronically filed the foregoing *Defendant Jean-Pierre's Second Amended Disputed Jury Instruction Regarding Government's Instruction No. 32* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

A.U.S.A. Jeremy Sibert *jeremy.sibert@usdoj.gov*

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Guy Jean-Pierre
Register # 78606-054
Independence House South
2765 S. Federal Blvd.
Denver, CO 80236

*Via U.S. Mail*

*s/Clifford J. Barnard*

Clifford J. Barnard
Attorney for Defendant Jean-Pierre

Case 1:17-cr-00008-WJM Document 203 Filed 01/28/19 Page 1 of 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 28, 2019
Courtroom Deputy: Anna Frank
Court Reporter: Mary George

---

Criminal Action No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

GUY JEAN-PIERRE,

Defendant.

Counsel:

Jeremy Sibert
Robert Brown

Thomas Goodreid
Clifford Barnard

---

**COURTROOM MINUTES**

---

Jury Trial: Day Ten

**9:56 a.m. Court in session.** Jury is not present.

Discussion held regarding trial schedule.

9:57 a.m. Jury present

Government resumes. Government's witness Kate Funk is called and sworn.

Direct examination of Ms. Funk by Mr. Sibert.

Government's Exhibits 323, 324, 325, 328, 327, 329, and 330 are admitted into evidence.

**11:10 a.m. Court in recess.**
**11:23 a.m. Court in session.** Jury is not present.

Discussion held regarding trial schedule. The Government shall rest today at 4:45 p.m.

11:25 a.m. Jury present.

Case 1:17-cr-00008-WJM Document 203 Filed 01/28/19 USDC Colorado Page 2 of 3

Direct examination continued of Ms. Funk by Mr. Sibert.

Government's Exhibits 75, 93, 154, 372a, 372g, 372LL and 326 are admitted into evidence.

Cross-examination of Ms. Funk by Mr. Goodreid.

Redirect of Ms. Funk by Mr. Sibert.

Ms. Funk is excused.

11:55 a.m. Government's witness Kirsten Varel is called and sworn.

Direct examination of Ms. Varel by Mr. Sibert.

Government's Exhibits 365 and 366 are admitted into evidence.

**12:39 p.m. Court in recess.**
**1:38 p.m. Court in session.** Jury is not present.

**1:39 p.m. Court in recess.**
**1:41 p.m. Court in session.** Jury is not present.

Discussion held regarding Rule 29 motions.

1:47 p.m. Jury present.

Continued direct examination of Ms. Varel by Mr. Sibert.

Cross-examination of Ms. Varel by Mr. Goodreid.

Government's Exhibit 370 is admitted into evidence.

Ms. Varel is excused.

2:18 p.m. Government's witness Luis Reyes is called and sworn.

Direct examination of Mr. Reyes by Mr. Brown.

Government's Exhibit 367 is admitted into evidence.

Cross-examination of Mr. Reyes by Mr. Barnard.

Redirect of Mr. Reyes by Mr. Brown.

Mr. Reyes is excused.

Case 1:17-cr-00008-WJM Document 203 Filed 01/28/19 Page 3 of 3

2:40 p.m. Government's witness Erin Newton is called and sworn.

Direct examination of Ms. Newton by Mr. Brown.

Government's Exhibits 311, 312, 313, 314, 316 and 310 are admitted into evidence.

Cross-examination of Ms. Newton by Mr. Barnard.

Government's Exhibits 309 and 315 are admitted into evidence.

Redirect of Ms. Newton by Mr. Brown.

Ms. Newton is excused.

**3:22 p.m. Court in recess.**
**3:38 p.m. Court in session.** Jury present.

3:40 p.m. Government's witness Steven Thel is called and sworn.

Direct examination of Mr. Thel by Mr. Sibert.

Government's witness Mr. Thel is qualified to provide expert opinion testimony.

Government's Exhibit 444 is admitted into evidence.

Cross-examination of Mr. Thel by Mr. Barnard.

Redirect of Mr. Thel by Mr. Sibert.

4:47 p.m. Government rests.

4:48 p.m. Jury is excused.

Defendant moves orally for judgment of acquittal under Fed. R. Crim. P. 29.

**5:21 p.m. Court in recess.**
**6:00 p.m. Court in session.** Jury is not present.

**ORDERED:** Defendant's oral Motion for Judgment of Acquittal under Fed. R. Crim. P. 29(a) is granted in part and denied in part, as stated on the record.

Discussion held regarding trial schedule and providing the Second Superseding Indictment to the jury.

**6:32 p.m. Court in recess.** Trial continued. Defendant continued on bond.

Total time in court: 6:27 p.m.

Case 1:17-cr-00008-WJM Document 204 Filed 01/29/19 USDC Colorado Page 1 of 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 29, 2019
Courtroom Deputy: Anna Frank
Court Reporter: Mary George

---

Criminal Action No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

GUY JEAN-PIERRE,

Defendant.

Counsel:

Jeremy Sibert
Robert Brown

Thomas Goodreid
Clifford Barnard

---

**COURTROOM MINUTES**

---

Jury Trial: Day Eleven

**8:59 a.m. Court in session.** Jury present.

Defendant waives his opening statement.

9:01 a.m. Defendant's witness Frederick Gerding is called and sworn.

Direct examination of Mr. Gerding by Mr. Barnard.

Defendant's witness Mr. Gerding is qualified to provide expert opinion testimony.

Cross-examination of Mr. Gerding by Mr. Sibert.

**10:11 a.m. Court in recess.**
**10:34 a.m. Court in session.** Jury present.

Continued cross-examination of Mr. Gerding by Mr. Sibert.

Mr. Gerding is excused.

10:44 a.m.    Defense rests. No rebuttal from the Government.

10:46 a.m.    Jury is excused.

Discussion held regarding closing arguments and proposed jury instructions.

Admitted exhibits read into the record.

**11:23 a.m.    Court in recess.**
**12:38 p.m.    Court in session.**    Jury is not present.

Charging conference.

**1:09 p.m.    Court in recess.**
**1:37 p.m.    Court in session.**    Jury is not present.

Charging conference, continued.

**1:39 p.m.    Court in recess.**
**2:08 p.m.    Court in session.**    Jury present.

Court's jury instructions read to the jury.

3:19 p.m.    Jury is excused, to return at 8:35 a.m. on Tuesday, January 30, 2019.

Discussion held regarding jury instructions.

**3:23 p.m.    Court in recess.**    Trial continued. Defendant continued on bond.

Total time in court: 3:49

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 30, 2019
Courtroom Deputy: Anna Frank
Court Reporter: Mary George

---

Criminal Action No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

GUY JEAN-PIERRE,

Defendant.

Counsel:

Jeremy Sibert
Robert Brown

Thomas Goodreid
Clifford Barnard

---

**COURTROOM MINUTES**

---

Jury Trial: Day Twelve

**9:03 a.m. Court in session.** Jury present.

Court's comments regarding closing arguments.

9:05 a.m. Government's closing argument by Mr. Sibert.

**9:57 a.m. Court in recess.**
**10:09 a.m. Court in session.** Jury present.

10:10 a.m. Defendant's closing argument by Mr. Barnard.

10:56 a.m. Government's closing rebuttal argument by Mr. Sibert.

Discussion held regarding the alternate juror.

Court addresses and releases alternate Juror 100345726.

**ORDERED:** Lunches are to be provided to the jury beginning January 30, 2019, and for the duration of deliberations.

Case 1:17-cr-00008-WJM Document 206 Filed 01/30/19 Page 2 of 2

11:24 a.m. Court Security Officer sworn.

11:25 a.m. Jury is excused.

Discussion held regarding trial schedule. Should the jury's deliberation continue beyond today, proceedings will be held in courtroom 702.

**11:28 a.m. Court in recess.**
**2:24 p.m. Court in session.** Jury is not present.

Discussion held regarding question from the jury.

**2:31 p.m. Court in recess.**
**3:39 p.m. Court in session.** Jury is not present.

Probation officer Paige Meador present.

Court informs counsel that a note has been tendered to the Court indicating that the jury has reached a verdict.

3:41 p.m. Jury present.

Verdict tendered to the Court.

Court reads verdict and polls the jury.

Court's concluding remarks to the jury.

3:49 p.m. Jury is excused.

Discussion held regarding sentencing.

**ORDERED:** Sentencing is set for July 10, 2019 at 9:30 a.m.

**ORDERED:** All outstanding motions denied as moot.

**3:55 p.m. Court in recess.** Trial concluded. Defendant continued on bond.

Total time in court: 2:36

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 1 of 72

**FINAL LIST OF PROPOSED EXHIBITS**

144

CASE NO. 17-cr-00008-WJM PLAINTIFF'S LIST: ☒ DEFENDANT'S LIST: ☐ THIRD PTY DEFTS. LIST: ☐

CASE CAPTION United States vs. Guy Jean-Pierre DATE: January 14, 2018

LIST PLAINTIFF'S EXHIBITS BY NUMBERS (1, 2, 3, etc.) and DEFENDANT'S BY LETTER (A, B, C, etc.)

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 1 | W. Sears FBI UC#1 | DVD - Audio Only - 2014-05-14 Recording of Meeting at FSPM Office 1D6 | | | | 1/16 | | | Day 3 |
| 1a | W. Sears FBI UC#1 | DVD - Video/Audio - 2014-05-14 Recording of Meeting at FSPM Office 1D7 Disk 1 of 2 | | | | 1/16 | | | Day 3 |
| 1b | W. Sears FBI UC#1 | DVD - Video/Audio - 2014-05-14 Recording of Meeting at FSPM Office 1D7 Disk 2 of 2 | | | | 1/16 | | | Day 3 |
| 2 | | | | | | | | | |
| 2a | W. Sears FBI UC#1 | 2014-05-14 (Excerpt 1) Recording of Meeting at FSPM Office - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 2b | W. Sears FBI UC#1 | 2014-05-14 (Excerpt 2) Recording of Meeting at FSPM Office - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 2c | W. Sears FBI UC#1 | 2014-05-14 (Excerpt 3) Recording of Meeting at FSPM Office - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 2d | W. Sears FBI UC#1 | 2014-05-14 (Excerpt 4) Recording of Meeting at FSPM Office - Synced Video & Transcript | | | | 1/16 | | | Day 3 |

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 2e | W. Sears FBI UC#1 | 2014-05-14 (Excerpt 5) Recording of Meeting at FSPM Office - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 2f | W. Sears FBI UC#1 | 2014-05-14 (Excerpt 6) Recording of Meeting at FSPM Office - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 3 | W. Sears FBI UC#1 | Transcript - 2014-05-14 Recording of Meeting at FSPM Office | | | | | | | |
| 4 | S. Dittman FBI UC#1 | DVD - Audio Only - 2014-07-18 Recording of Meeting with Scott Dittman at Starbucks 1D9 | | | | | | | |
| 4a | S. Dittman FBI UC#1 | DVD - Video/Audio - 2014-07-18 Recording of Meeting with Scott Dittman at Starbucks 1D10 | | | | | | | |
| 5 | | | | | | | | | |
| 5a | S. Dittman FBI UC#1 | 2014-07-18 (Excerpt 1) Recording of Meeting with Scott Dittman at Coffeeshop - Synced Video & Transcript | | | | 1/17 | | | Day 4 |
| 5b | S. Dittman FBI UC#1 | 2014-07-18 (Excerpt 2) Recording of Meeting with Scott Dittman at Coffeeshop - Synced Video & Transcript | | | | 1/17 | | | Day 4 |
| 6 | S. Dittman FBI UC#1 | Transcript - 2014-07-18 Recording of Meeting with Scott Dittman at Starbucks | | | | | | | |
| 7 | | | | | | | | | |
| 8 | OTC | OTC Attorney Letter Agreements - Jean-Pierre | | | | 1/18 | | | Day 5 |
| 9 | OTC | Summary Chart - OTC Filings | | X | | 1/18 | | | Day 5 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 3 of 12

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 10 | OTC | Letter from OTC Markets to Jean-Pierre re: List of Prohibited Attorneys | | | | 1/18 | | | Day 5 |
| 11 | OTC | Email from Heese to Finra dated 6/6/2011 with subject "Guy Jean Pierre and his successors" | | | | 1/18 | | | Day 5 |
| 12 | OTC | OTC Filing - FusionPharm Information and Disclosure Statement for the period ended June 30, 2011 | | X | | 1/18 | | | Day 5 |
| 13 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended June 30, 2011 | | X | | 1/18 | | | Day 5 |
| 14 | OTC | OTC Filing - FusionPharm Statement of Income for period ended June 30, 2011 | | X | | 1/18 | | | Day 5 |
| 15 | OTC | OTC Filing - FusionPharm Notes to Financial Statements for period ended June 30, 2011 | | X | | 1/18 | | | Day 5 |
| 16 | OTC | Email from Dittman to OTC Markets dated 12/02/2011 subject: "RE: OTCIQ User: Company Information Update for Fusion Pharm, Inc. | | X | | | | | |
| 17 | OTC | OTC Filing - FusionPharm Statement of Income for period ended September 30, 2011 | | X | | 1/18 | | | Day 5 |
| 18 | OTC | OTC Filing - FusionPharm Notes to Financial Statements for period ended September30, 2011 | | X | | 1/18 | | | Day 5 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 4 of 12

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 19 | OTC Bodden Duke | OTC Filing - FusionPharm Annual Information and Disclosure Statement for period ended December 31, 2011 | | X | | 1/17 | | | Day 4 |
| 19a | OTC Bodden | OTC Filing - FusionPharm Quarterly Report for the period ended March 31, 2012 | | X | | 1/17 | | | Day 4 |
| 19b | OTC Bodden | OTC Filing - FusionPharm Quarterly Report for the period ended June 30, 2012 | | X | | 1/18 | | | Day 5 |
| 19c | Bodden | OTC Filing - FusionPharm Quarterly Report for the period ended September 30, 2012 | | X | | 1/18 | | | Day 5 |
| 20 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended September 30, 2011 | | X | | 1/18 | | | Day 5 |
| 21 | OTC | OTC Filing - FusionPharm Information and Disclosure Statement for the period ended September 30, 2011 | | X | | 1/18 | | | Day 5 |
| 22 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended December 31, 2011 | | X | | 1/18 | | | Day 5 |
| 23 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended March 31, 2012 | | X | | 1/18 | | | Day 5 |
| 24 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended June 30, 2012 | | X | | 1/18 | | | Day 5 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 5 of 12

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 25 | OTC DiTommaso | OTC Filing - FusionPharm Annual Information and Disclosure Statement for period ended December 31, 2012 | | X | | 1/17 | | | Day 4 |
| 26 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended December 31, 2012 | | X | | 1/18 | | | Day 5 |
| 27 | OTC | OTC Filing - FusionPharm Quarterly Report for the period ended March 31, 2013 | | X | | 1/18 | | | Day 5 |
| 28 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended March 31, 2013 | | X | | 1/18 | | | Day 5 |
| 29 | OTC | OTC Filing - FusionPharm OTC Pink Basic Disclosure Guidelines filled in by FSPM | | X | | 1/18 | | | Day 5 |
| 30 | OTC | OTC Filing - FusionPharm Quarterly Report for the period ended June 30, 2013 | | X | | 1/18 | | | Day 5 |
| 31 | OTC DiTommaso | OTC Filing - FusionPharm Attorney Opinion Letter by DiTommaso for period ended June 30, 2013 | | X | | 1/18 | | | Day 5 |
| 32 | Dahlman | Email from Sears to Dahlman dated 09/14/2010 attaching Debt Settlement Agreement signed by Dahlman and Sears | | X | | 1/14 | | | Day 1 |
| 33 | Dahlman | Email from Sears to Dahlman on 11/08/2010 Instruction for share transfers to Dahlman, Microcap and Salt | | X | | 1/14 | | | Day 1 |
| 34 | Dahlman | Frederick and Belle Dahlman's resignation from Baby Bee Bright | | X | | 1/16 | | | Day 3 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 6 of 12

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 35 | Dahlman R. Dittman | Email from Sears to Fred Dahlman dated 11/19/2010 Instruction for share transfers to Dahlman, Microcap, Robert Dittman, and Salt | | X | | 1/14 | | | Day 1 |
| 36 | Dahlman | Letter from Dahlman to Pacific Stock Transfer Co. with instructions for share transfers | | X | | 1/14 | | | Day 1 |
| 37 | Dahlman | Email from Sears to Dahlman dated 03/01/2011 attaching Letter of Transfer of Series A Preferred Shares of Baby Bee Bright to Microcap to be given to DiBella | | X | | 1/14 | | | Day 1 |
| 38 | | | | | | | | | |
| 39 | | | | | | | | | |
| 40 | W. Sears Blume | Email from Sears to bjohn@mazdaoflakewood.dealercrm cc Blume dated 1/30/2012 attaching Blume letter | | X | | 1/14 | | | Day 1 and 4 |
| 41 | Blume | Email from Blume to Dittman dated 7/5/2012 with subject "FYI" | | X | | 1/18 | | | Day 5 |
| 42 | | | | | | | | | |
| 43 | Bohlender | Email from Bohlender to Dittman dated 8/15/2011 with subject "Billy's role and the company structure" | | X | | | | | |
| 44 | Bohlender | Email from Bohlender to Dittman dated 9/14/2011 with subject "Hey" | | X | | | | | |
| 45 | | | | | | | | | |
| 46 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 7 of 12

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 47 | Saia | Oppenheimer -Due Diligence and Wire Instructions for Microcap Management account ending in 9990 | | | | 1/18 | | | Day 5 |
| 48 | | | | | | | | | |
| 49 | | | | | | | | | |
| 50 | L. Jean-Pierre | Leslie Jean-Pierre SEC testimony | | | | | | | |
| 51 | L. Jean-Pierre | Leslie Jean-Pierre Grand Jury testimony in the NY state case on 8/15/2013 | | | | | | | |
| 52 | L. Jean-Pierre | OTC Attorney Letter Agreements - Dinwoodie | | | | 1/22 | | | Day 6 - Duplicative Pages Must be Removed (Pages 3, 4, 7, 8, 11-18 &37-72 are removed) |
| 53 | OTC | Attorney Letter Agreement v2.4 January 14, 2011 | | X | | 1/18 | | | Day 5 |
| 54 | OTC | Guidelines for Providing Adequate Current Information - v. 10.0 updated 1/14/2011 - | | X | | 1/18 | | | Day 5 |
| 55 | OTC | Guidelines for Providing Adequate Current Information - v. 10.1 updated 1/31/2012 | | X | | 1/18 | | | Day 5 |
| 56 | OTC | Pink Basic Disclosure Guidelines v. 1.0 updated 1/3/2013 | | X | | 1/18 | | | Day 5 |
| 57 | OTC | Pink Basic Disclosure Guidelines v. 1.1 updated 4/25/2013 | | X | | 1/18 | | | Day 5 |
| 58 | | | | | | | | | |
| 59 | | | | | | | | | |
| 60 | PSTC - DiBella Dahlman W. Sears | Email from Dibella to Sears and Dahlman dated 12/2/2010 with subject "Transfer of BBYB Preferred Shares (Cert No 1007)" | | X | | 1/18 | | | Day 5 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 8 of 12

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 61 | PSTC - DiBella Dahlman | PSTC packet for transaction number 10701 | | X | | 1/16 | | | Day 3 |
| 62 | PSTC - DiBella Kramer W. Sears | Email from Jean-Pierre to Dibella with cc Sears dated 2/11/2011 with subject "BBYB Information" | | X | | 1/18 | | | Day 5 |
| 63 | PSTC - DiBella Dahlman | PSTC packet for transaction number 12834 | | X | | 1/16 | | | Day 3 |
| 64 | | | | | | | | | |
| 65 | PSTC - DiBella | Email from Dibella to Beth Looker cc Claiborne dated 11/7/2012 with subject "FusionPharm notes?" | | X | | 1/18 | | | Day 5 |
| 66 | PSTC - DiBella | Email from DiBella to Dittman dated 12/17/2012 attaching a convertible note between Bayside Realty Holdings and Fusion Pharm from Sandra Sears to DiBella dated 12/13/2012 | | X | | 1/18 | | | Day 5 |
| 67 | PSTC - DiBella W. Sears | Email from Sandra Sears to Dibella cc Sears dated 12/24/2012 with subject "Convertible note" | | X | | 1/18 | | | Day 5 |
| 68 | | | | | | | | | |
| 69 | PSTC - DiBella W. Sears | Email from Sears to Dibella dated 12/26/2012 with subject "Convertible note" | | X | | 1/15 | | | Day 2 |
| 70 | PSTC - DiBella W. Sears | Email #2 from Sears to Dibella dated 12/26/2012 with subject "Convertible note" | | X | | 1/15 | | | Day 2 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 9 of 12

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 71 | PSTC - DiBella W. Sears | Email from Dibella to Sears dated 12/27/2012 with subject "Convertible note" | | X | | 1/18 | | | Day 5 |
| 72 | PSTC - DiBella DiTommaso Ssears | PSTC packet for transaction number 12986 | | X | | 1/16 | | | Day 3 |
| 73 | PSTC - DiBella | FedEx Tracking number 794557022916 | | X | | 1/18 | | | Day 5 |
| 74 | PSTC - DiBella W. Sears | Email from Sears to Dibella dated 3/7/2013 with subject "BSRH Note LOP.pdf attaching DiTommaso Attorney Opinion Letters | | X | | 1/15 | | | Day 2 |
| 75 | PSTC - DiBella W. Sears | Email from Dibella to Sears cc Dittman dated 3/11/2013 with blank subject | | X | | 1/28 | | | Day 10 |
| 76 | PSTC - DiBella DiTommaso S. Sears (mom) | PSTC packet for transaction number 12992 | | X | | 1/18 | | | Day 5 |
| 77 | PSTC - DiBella W. Sears | Email from Sears to Dibella cc Dittman dated 4/11/2013 with subject "Meadpoint Venture Partners FSPM" | | X | | 1/15 | | | Day 2 |
| 78 | PSTC - DiBella DiTommaso | PSTC packet for transaction number 12998 | | X | | 1/18 | | | Day 5 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 10 of 32

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 79 | PSTC - DiBella DiTommaso | PSTC packet for transaction number 13002 | | X | | 1/18 | | | Day 5 |
| 80 | PSTC - DiBella | FedEx Tracking number 796476186341 | | X | | 1/18 | | | Day 5 |
| 81 | PSTC - DiBella W. Sears | Email from Sears to Dibella dated 8/27/2013 with subject "Mdpt" attaching DiTommaso Attorney Opinion Letter and Credit Card Authorization | | X | | 1/15 | | | Day 2 |
| 82 | PSTC - DiBella W. Sears | Email from Dibella to Sears dated 8/27/2013 with subject "Mdpt" | | X | | 1/15 | | | Day 2 |
| 83 | PSTC - DiBella W. Sears | Email from Sears to Dibella dated 8/29/2013 with "Mdpt" | | X | | | | | |
| 84 | PSTC - DiBella DiTommaso Thaden Scholz | PSTC packet for transaction number 13003 | | X | | 1/18 | | | Day 5 |
| 85 | PSTC - DiBella W. Sears | Email from Sears to PSTC dated 9/19/2013 with subject "Issuance" | | X | | 1/15 | | | Day 2 |
| 86 | | | | | | | | | |
| 87 | | | | | | | | | |
| 88 | | | | | | | | | |
| 89 | | | | | | | | | |
| 90 | PSTC - Claiborne | List of Attorneys for Heightened Review | | | | 1/18 | | | Day 5 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 11 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 91 | PSTC - Claiborne S. Sears (mom) | Baby Bee Bright Shareholder consent to appoint Dittman and Sandra Sears | | X | | 1/23 | | | Day 7 |
| 92 | PSTC - Claiborne Kramer W. Sears | Email from Sears to PSTC and Jean-Pierre dated 2/15/2011 with subject "Baby Bee Bright Corporation Reverse Split" | | X | | 1/14 | | | Day 1 |
| 93 | PSTC - Claiborne | Email from Upham to PSTC dated 2/16/2011 with subject "Baby Bee Bright Corporation Reverse Split" | | X | | 1/28 | | | Day 10 |
| 94 | PSTC - Claiborne | Letter from Jean-Pierre to NASDAQ OMX Group dated 2/16/2011 | | X | | | | | |
| 95 | PSTC - Claiborne | PSTC packet for transaction number 12883 | | X | | | | | |
| 96 | PSTC - Claiborne | BBYB: Reverse Split Information | | X | | | | | |
| 97 | PSTC - Claiborne S. Sears (wife) Scholz | PSTC packet for transaction number 12868 | | X | | 1/23 | | | Day 7 |
| 98 | PSTC - Claiborne | PSTC packet for transaction numbers 12895 and 12900 | | X | | | | | |
| 99 | PSTC - Claiborne Scholz | PSTC packet for transaction numbers 12895 and 12900 | | X | | | | | |
| 100 | PSTC - Claiborne Abott | Email from Dittman to Eldridge dated 05/16/2011 attaching Certificate Order dated 05/09/2011 | | X | | 1/17 | | | Day 4 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 12 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 101 | PSTC - Claiborne S. Sears (wife) | PSTC packet for transaction number 12903 | | X | | 1/23 | | | Day 7 |
| 102 | PSTC - Claiborne | PSTC packet for transaction number 12905 | | X | | | | | |
| 103 | PSTC - Claiborne S. Sears (wife) | PSTC packet for transaction number 12912 | | X | | | | | |
| 104 | PSTC - Claiborne | PSTC packet for transaction number 12913 | | X | | | | | |
| 105 | PSTC - Claiborne | Email from Jean-Pierre to PSTC cc Dittman dated 7/12/2011 with subject "Guy Jean Pierre" | | X | | | | | |
| 106 | PSTC - Claiborne S. Sears (mom) S. Sears (wife) | PSTC packet for transaction numbers 12917 and 12918 | | X | | 1/23 | | | Day 7 |
| 107 | PSTC - Claiborne W. Sears | Emails from Sears to PSTC dated August 3, 2011 with subject "FSPM Preferred Stock Certificate" | | X | | 1/15 | | | Day 2 |
| 108 | PSTC - Claiborne S. Sears (mom) | PSTC packet for transaction number 12924 | | X | | 1/23 | | | Day 7 |
| 109 | PSTC - Claiborne S. Sears (mom) | PSTC packet for transaction number 12935 | | X | | 1/23 | | | Day 7 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 13 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 110 | PSTC - Claiborne R. Dittman S. Sears (mom) | PSTC packet for transaction number 12940 | | X | | 1/23 | | | Day 7 |
| 111 | PSTC - Claiborne R. Dittman | PSTC packet for transaction number 12945 | | X | | 1/24 | | | Day 8 |
| 112 | PSTC - Claiborne | Email from PSTC to Jean-Pierre dated 4/5/2012 with subject "FSPM Information" | | X | | | | | |
| 113 | PSTC - Claiborne R. Dittman | PSTC packet for transaction numbers 12951, 12952, and 12953 | | X | | | | | |
| 114 | PSTC - Claiborne | FedEx Tracking number 800575942347 | | X | | 1/18 | | | Day 5 |
| 115 | PSTC - Claiborne W. Sears | Email from Sears to Claiborne dated 7/31/2012 with subject "FSPM Cert" attaching due diligence package | | X | | 1/15 | | | Day 2 |
| 116 | PSTC - Claiborne DiTommaso Abbott | PSTC packet for transaction number 12964 | | X | | 1/18 | | | Day 5 |
| 117 | PSTC - Claiborne | FedEx Tracking number 798688446223 | | X | | 1/18 | | | Day 5 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 14 of 32

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 118 | PSTC - Claiborne | Email from Jean-Pierre to PSTC cc Dittman dated 9/24/2012 with subject "Follow up re 70,000 restricted shares issued November 2011" attaching (unsigned) letter from Dittman to PSTC | | X | | | | | |
| 119 | | | | | | | | | |
| 120 | Scottsdale | Scottsdale documents related to the opening of Microcap account on 7/13/2012 | | | | 1/22 | | | Day 6 |
| 121 | Scottsdale | Documents provided by Scottsdale/Alpine related to Microcap's deposit of 16,273 shares of FusionPharm on approximately 8/6/2012 | | | | 1/22 | | | Day 6 |
| 122 | Scottsdale | Documents provided by Scottsdale/Alpine related to Microcap's deposit of 40,000 shares of FusionPharm on approximately 8/1/2012 | | X | | 1/22 | | | Day 6 |
| 123 | Scottsdale | Signed letter from Dittman to Scottsdale dated 8/8/2012 relating to stock certificate 11176 for 40,000 shares | | X | | 1/17 | | | Day 4 |
| 124 | W. Sears Scottsdale | Email from Sears to Craig D'Mura at Scottsdale dated 8/10/2012 | | X | | 1/15 | | | Day 2 |
| 125 | | | | | | | | | |
| 126 | Scottsdale | Scottsdale Account ending in 4611 - Opening Documents for Bayside | | | | 1/22 | | | Day 6 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 15 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 127 | Scottsdale | Documents provided by Scottsdale/Alpine related to Bayside's deposit of 140,000 shares of FusionPharm on approximately 1/21/2013 | | | | 1/22 | | | Day 6 |
| 128 | | | | | | | | | |
| 129 | Scottsdale | Scottsdale documents related to the opening of Meadpoint account on 4/11/2013 | | | | 1/22 | | | Day 6 |
| 130 | | | | | | | | | |
| 131 | Scottsdale | Documents provided by Scottsdale/Alpine related to Meadpoint's deposit of 475,000 shares of FusionPharm on approximately 4/18/2013 | | | | 1/22 | | | Day 6 |
| 132 | | | | | | | | | |
| 133 | Scottsdale | Email from Sears to Scottsdale dated 8/19/2013 containing two attachments with supporting documentation for Meadpoint's deposit of 500,000 shares | | X | | 1/15 | | | Day 2 |
| 134 | Scottsdale | Documents provided by Scottsdale/Alpine related to Meadpoint's deposit of 500,000 shares of FusionPharm on approximately 8/23/2013 | | | | 1/22 | | | Day 6 |
| 135 | Kramer | Emails between Dittman and Kramer at FINRA from 10/6/2011 through 11/14/2011 with attachments | | X | | 1/17 | | | Day 4 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 16 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 136 | Kramer | Emails between Dittman and Kramer at FINRA from 10/5/2011 through 11/30/2011 | | X | | 1/17 | | | Day 4 |
| 137 | Kramer | Finra Investigation Timeline | | | | | | | |
| 138 | Kramer | Record of Oppenheimer response to FINRA requests and copy of 5 FINRA requests | | | | 1/22 | | | Day 6 |
| 139 | Kramer | Documents provided by Oppenheimer to FINRA related to account number G51-1429990 held in the name Microcap Management LLC | | | | 1/23 | | | Day 7 |
| 140 | Scholz | Email from Sears to Jean-Pierre with cc to Scholz dated 04/19/2011 attaching Special Board of Directors Meeting dated 08/20/2007, Dahlman Resignation dated 11/15/2010 and Baby Bee Bright Preferred Stock Origin dated 04/15/2011 | | X | | 1/15 | | | Day 2 |
| 141 | Scholz W. Sears | Email from Sears to Scholz dated 10/19/2011 attaching Stock Purchase Agreement dated 05/09/2011 between Scholz and Sears | | X | | 1/15 | | | Day 2 |
| 142 | Scholz W. Sears | Email from Sears to Scholz dated 11/08/2011 attaching Company Purchase 05/09/2011 and Share Purchase Agreement 11/02/2011 | | X | | 1/15 | | | Day 2 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 17 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 143 | Scholz DiTommaso W. Sears | Email from Sears to Scholz dated 06/18/2012 attaching M&C Due Diligence dated 06/18/2012 | | X | | 1/15 | | | Day 2 |
| 144 | Scholz S. Sears (mom) W. Sears | Email from Sears to Casskri1120@aol.com cc Scholz dated 2/7/2013 with subject "Scottsdale" | | X | | 1/15 | | | Day 2 |
| 145 | Scholz | Richard Scholz - Declaration | | | | | | | |
| 146 | | | | | | | | | |
| 147 | | | | | | | | | |
| 148 | | | | | | | | | |
| 149 | | | | | | | | | |
| 150 | Abbott | Email from Dittman to Dittman dated 04/21/2011 subject: "Fusion Pharm" | | X | | 1/16 | | | Day 3 |
| 151 | Abbott | E-mail from Dittman to Abbott with subject "evite" | | X | | 1/17 | | | Day 4 |
| 152 | Abbott | Email from Dittman to Abbott dated 07/13/2011 subject: "Follow Up" | | X | | 1/22 | | | Day 6 |
| 153 | Thaden | Email from Thaden to Dittman dated 08/05/2013 subject "Fwd: conversation follow up" | | X | | | | | |
| 154 | Thaden | Email from lldittman22@gmail to Dittman dated 8/6/2013 with subject "conversation follow up" | | X | | 1/28 | | | Day 10 |
| 155 | Thaden | Email from Sears to Thaden cc Dittman dated 8/13/2013 with subject "FSPM" | | X | | 1/15 | | | Day 2 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 18 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 156 | Thaden | Email from Thaden to Sears cc Dittman dated 8/14/2013 with subject "drafting an agreement" | | X | | 1/15 | | | Day 2 |
| 157 | W. Sears S. Sears (mom) | Sandra Sears SEC transcript from testimony on 11/18/2015 | | X | | | | | |
| 158 | W. Sears S. Sears (mom) | Check Number 5014 from Bayside to Jean-Pierre for $2500 | | X | | 1/14 | | | Day 1 |
| 159 | W. Sears S. Sears (mom) | Check Number 5047 from Bayside to Jean-Pierre for $2500 | | X | | 1/14 | | | Day 1 |
| 160 | W. Sears S. Sears (mom) | Check Number 5057 from Bayside to Jean-Pierre for $500 | | X | | 1/14 | | | Day 1 |
| 161 | W. Sears S. Sears (mom) | Check Number 5063 from Bayside to Jean-Pierre for $3000 | | X | | 1/14 | | | Day 1 |
| 162 | W. Sears S. Sears (mom) | Check Number 5069 from Bayside to Jean-Pierre for $2500 | | X | | 1/14 | | | Day 1 |
| 163 | W. Sears S. Sears (mom) | Check Number 5082 from Bayside to Jean-Pierre for $500 | | X | | 1/14 | | | Day 1 |
| 164 | W. Sears S. Sears (mom) | Check Number 5116 from Bayside to Jean-Pierre for $500 | | X | | 1/14 | | | Day 1 |
| 165 | W. Sears S. Sears (mom) | Check Number 5101 from Bayside to Jean-Pierre for $2500 | | X | | 1/14 | | | Day 1 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 19 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 166 | W. Sears S. Sears (mom) | Check Number 5104 from Bayside to Jean-Pierre for $500 | | X | | 1/14 | | | Day 1 |
| 167 | R. Dittman | Email from Dittman to Robert Dittman and Jamey Fader dated 9/17/2012 with subject "Vertifresh" | | X | | 1/17 | | | Day 4 |
| 168 | W. Sears Kocinski | Email from Kocinski to Sears cc Dittman dated 11/21/2011 with subject "Sept 30s" | | X | | 1/23 | | | Day 7 |
| 169 | W. Sears Kocinski | Email from Dittman to Kocinski and Sears with cc to Jean-Pierre dated 11/23/2011 subject: "RE: Sept 30s" | | X | | 1/17 | | | Day 4 |
| 170 | W. Sears Kocinski | Email from Sears to Dittman and Jean-Pierre with cc to Kocinski dated 11/28/2011 subject: "FW:Financial Statements" | | X | | 1/15 | | | Day 2 |
| 171 | W. Sears Kocinski | Email from Sears to Dittman and Jean-Pierre dated 12/22/2011 attaching Financial Statements FusionPharm 3rd Quarter 2011, Fusion Pharm Shareholders Statement dated 09/30/2011, and Fusion Pharm Financial Statement Notes dated 09/30/2011 | | X | | 1/15 | | | Day 2 |
| 172 | Kocinski | Email from Dittman to Kocinski dated 03/28/2012 attaching Fusion Pharm Financials dated 12/31/2011 | | X | | 1/17 | | | Day 4 |
| 173 | W. Sears Kocinski | Email from Sears to Kocinski and Dittman dated 3/25/2012 with subject "12/31/12 financials" | | X | | 1/15 | | | Day 2 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 20 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 174 | W. Sears Kocinski | Email from Sears to Jean-Pierre with cc to Kocinski dated 04/03/2012 subject: "FSPM" | | X | | 1/15 | | | Day 2 |
| 175 | W. Sears Kocinski | Email from Sears to Kocinski cc:ing Jean-Pierre dated 06/07/2012 | | | | 1/15 | | | Day 2 |
| 176 | W. Sears Kocinski | Email from Kocinski to Sears re Quarterly Report June 2012 | | X | | 1/23 | | | Day 7 |
| 177 | W. Sears Kocinski | Email from Sears to Dittman and Jean-Pierre forwarding email from Kocinski to Jean-Pierre with cc to Sears and Dittman dated 06/07/2012 subject: "FW: FSPM Financial Statements as of 3/31/12" | | X | | 1/15 | | | Day 2 |
| 178 | W. Sears Kocinski | Email from Kocinski to Jean-Pierre with cc to Sears, Dittman, and Bodden dated 11/21/2012 subject "Fusion Pharm Financials for Period Ending 9/30/12" | | X | | 1/23 | | | Day 7 |
| 179 | W. Sears Kocinski | Email from Kocinski to Jean-Pierre with cc to Sears and Dittman dated 03/06/2013 subject "Fusion Pharm Financials for Period Ending 12/31/12" | | X | | 1/23 | | | Day 7 |
| 180 | DiTommaso | Information and Disclosure Statement for the Period Ended 06/30/2011 | | X | | 1/24 | | | Day 8 |
| 181 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 12/27/2011 attaching document named "FSPM_LawFirm_AttorneyLetter_12.27.11" | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 21 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 182 | DiTommaso | Tod DiTommaso invoice submitted to Jean-Pierre dated 1/15/2012 | | X | | 1/24 | | | Day 8 |
| 183 | DiTommaso Kocinski | Email from Jean-Pierre to DiTommaso dated 06/11/2012 forwarding confirmation from Kocinski who prepared FSPM Financial Statements period ended 03/31/2012 | | X | | 1/24 | | | Day 8 |
| 184 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 4/6/2012 attaching document named "FSPM_LawFirm_AttorneyLetter_04.05.12" | | X | | 1/24 | | | Day 8 |
| 185 | | | | | | | | | |
| 186 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 5/1/2012 attaching various documents for the Pawson, Padilla, OTC and For Your Information transaction | | X | | 1/24 | | | Day 8 |
| 186a | DiTommaso | Drafted Attorney Opinion Letter for For Your Information, Inc | | X | | 1/24 | | | Day 8 |
| 186b | DiTommaso | Drafted Attorney Opinion Letter for OTC Market Services | | X | | 1/24 | | | Day 8 |
| 186c | DiTommaso | Drafted Attorney Opinion Letter for Padilla | | X | | 1/24 | | | Day 8 |
| 186d | DiTommaso | Drafted Attorney Opinion Letter for Pawson | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 22 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 186e | DiTommaso | Signed Officer's Certificate for Pawson, Padilla, OTC Market Services and For Your Information transaction | | X | | 1/24 | | | Day 8 |
| 186f | DiTommaso | Pawson, Padilla, For Your Information Letters requesting to remove the legend | | X | | 1/24 | | | Day 8 |
| 186g | DiTommaso | OTC Market Services Letters requesting to remove the legend | | X | | 1/24 | | | Day 8 |
| 186h | DiTommaso | FusionPharm Stock Certificates 11159, 11160, 11161, 11162 | | X | | 1/24 | | | Day 8 |
| 187 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 6/6/2012 attaching four files related to a Microcap Opinion Letter. | | X | | 1/24 | | | Day 8 |
| 187a | DiTommaso | FSPM Stock Certificate number 11167 for 190,000 shares in the name Microcap Management | | X | | 1/24 | | | Day 8 |
| 187b | DiTommaso | Signed FSPM - Microcap Non-Affiliation Form | | X | | 1/24 | | | Day 8 |
| 187c | DiTommaso | FusionPharm Officer's Certificate relating to stock certificat number 11167 | | X | | 1/24 | | | Day 8 |
| 187d | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to stock certificate number 11167 | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 23 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 188 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 06/11/2012 forwarding share structure provided by PSTC | | X | | 1/24 | | | Day 8 |
| 189 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 6/11/12 with subjet "FSPM Pink Sheets Opn Ltr" attaching document named "FSPM_LawFirm_AttorneyLetter_06.06.12" | | X | | 1/24 | | | Day 8 |
| 190 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 6/13/2012 with subject "Revised FSPM Pink Sheets Opn Ltr" attaching document named "FSPM_LawFirm_AttorneyLetter_06.13.12_R" | | X | | 1/24 | | | Day 8 |
| 191 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 7/2/2012 with subject "FSPM-MICROCAP OPN LTR" attaching a revised Microcap Attorney Opinion Letter | | X | | 1/24 | | | Day 8 |
| 191a | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to stock certificate 11167 | | X | | 1/24 | | | Day 8 |
| 192 | DiTommaso | Email from Jean-Pierre to DITommaso dated 7/21/2012 with subject "FSPM Abbott-Microcap Opinion Letter" | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 24 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 192a | DiTommaso | Packet of documents related to Abbott transaction to include the Debt Settlement Agreement, Officer's Certificate, Stock Certificate number 7385, and Share Purchase Agreement | | X | | 1/24 | | | Day 8 |
| 192b | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to stock certificate 7385 | | X | | 1/24 | | | Day 8 |
| 193 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 8/15/2012 with subject "FSPM Pink Sheets Opn Ltr - Period ending June 30, 2012" attaching document named "FSPM_LawFirm_AttorneyLetter_08.09.12" | | X | | 1/24 | | | Day 8 |
| 193a | DiTommaso | FusionPharm Shareholder Report through 06/30/12 | | X | | 1/24 | | | Day 8 |
| 194 | DiTommaso | Signed Officer's Certificate dated 12/07/2012 | | X | | 1/24 | | | Day 8 |
| 195 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 12/13/2012 with subject "FSPM - Bayside: 144 Debt Conversion Opinion Letter" | | X | | 1/24 | | | Day 8 |
| 195a | DiTommaso | Signed Bayside Line of Credit Agreement dated 5/2/2011 | | X | | 1/24 | | | Day 8 |
| 195b | DiTommaso | Bayside Non-Affiliation Letter dated December 6, 2012 | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 25 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 195c | DiTommaso | Bayside Notice of Conversion for 140,000 shares of FusionPharm | | X | | 1/24 | | | Day 8 |
| 195d | DiTommaso | Officer's Certificate dated 12/7/12 for 140,000 shares of Bayside | | X | | 1/24 | | | Day 8 |
| 195e | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 140,000 shares of FSPM converted from the Bayside note dated 12/13/2012 | | X | | 1/24 | | | Day 8 |
| 196 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 12/21/2012 with subject "FSPM - Bayside: Final 144 Debt Conversion Opinion Letter" | | X | | 1/24 | | | Day 8 |
| 196a | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 140,000 shares of FSPM converted from the Bayside note dated 12/21/2012 | | X | | 1/24 | | | Day 8 |
| 197 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 1/4/2013 with subject "Revised FSPM-Bayside Realty Opinion Letter" | | X | | 1/24 | | | Day 8 |
| 197a | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 140,000 shares of FSPM converted from the Bayside note dated 1/4/2012 | | X | | 1/24 | | | Day 8 |
| 197b | DiTommaso | Letter from Dittman dated 12/05/2012 authorizing to close the line of credit from Bayside Realty Holdings | | X | | 1/24 | | | Day 8 |

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 198 | DiTommaso | Email from DiTommaso to Claiborne dated 7/26/2012 with subject "FSPM-Abbott-Microcap Opn Ltr" attaching the DiTommaso Attorney Opinion Letter | | X | | 1/24 | | | Day 8 |
| 199 | DiTommaso | Tod DiTommaso invoice submitted to Jean-Pierre dated 1/15/2013 | | X | | 1/24 | | | Day 8 |
| 200 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/4/2013 with subject "FSPM - STARCITY OPN LTR" attaching 3 documents related to the transaction | | X | | 1/24 | | | Day 8 |
| 200a | DiTommaso | Securities transfer agreement between Bayside Realty Holdings and Starcity Capital | | X | | 1/24 | | | Day 8 |
| 200b | DiTommaso | Starcity Capital - Notice of Conversion dated 2/27/2013 | | X | | 1/24 | | | Day 8 |
| 200c | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 137,500 shares of FSPM Starcity Capital converted from the Bayside note | | X | | 1/24 | | | Day 8 |
| 201 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/4/2013 with subject "FSPM - VERA GROUP OPN LTR" attaching 3 documents related to the transaction | | X | | 1/24 | | | Day 8 |
| 201a | DiTommaso | Securities transfer agreement between Bayside Realty Holdings and VERA GROUP | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 27 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 201b | DiTommaso | Vera Group - Notice of Conversion dated 2/27/2013 | | X | | 1/24 | | | Day 8 |
| 201c | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 12,500 shares of FSPM Vera Group converted from the Bayside note | | X | | 1/24 | | | Day 8 |
| 202 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/4/2013 with subject "FSPM - A. Mauriello Debt Conversion" attaching 3 documents related to the transaction | | X | | 1/24 | | | Day 8 |
| 202a | DiTommaso | Securities transfer agreement between Bayside Realty Holdings and Alexandra Mauriello | | X | | 1/24 | | | Day 8 |
| 202b | DiTommaso | Alexandra Mauriello - Notice of Conversion dated 2/27/2013 | | X | | 1/24 | | | Day 8 |
| 202c | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 25,000 shares of FSPM Mauriello converted from the Bayside note | | X | | 1/24 | | | Day 8 |
| 203 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/4/2013 with subject "FSPM - Black Arch Debt Conversion" attaching 4 documents related to the transaction | | X | | 1/24 | | | Day 8 |
| 203a | DiTommaso | Securities transfer agreement between Bayside Reality Holdings and Black Arch Opportunity Fund LP | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 28 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 203b | DiTommaso | Black Arch Opportunity Fund LP - Notice of Conversion dated 2/27/2013 | | X | | 1/24 | | | Day 8 |
| 203c | DiTommaso | FusionPharm Officer's Certificate dated 2/28/2013 relating to the sale of the Bayside Note | | X | | 1/24 | | | Day 8 |
| 203d | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 12,500 shares of FSPM Black Arch Opportunity Fund LP converted from the Bayside note | | X | | 1/24 | | | Day 8 |
| 204 | DiTommaso | Email from Rob Hoffman to DiTommaso dated 3/4/2013 with subject FSPM-Roy Legend Removal Opinion Letter | | X | | 1/24 | | | Day 8 |
| 205 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/4/2013 with subject "FSPM Pink Sheets Attorney Letter for period ending 12.31.12" | | X | | 1/24 | | | Day 8 |
| 205a | DiTommaso | Blank FusionPharm Officer and Directors Questionnaire for period ended December 31, 2012 | | X | | 1/24 | | | Day 8 |
| 205b | DiTommaso | FusionPharm Shareholder Report through 02/26/2013 | | X | | 1/24 | | | Day 8 |
| 206 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/5/2013 with subject "FSPM-SGI Group Debt Conversion" | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 29 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 206a | DiTommaso | Securities transfer agreement between Bayside Reality Holdings and SGI Group, LLC | | X | | 1/24 | | | Day 8 |
| 206b | DiTommaso | SGI Group LLC - Notice of Conversion dated 2/27/2013 | | X | | 1/24 | | | Day 8 |
| 206c | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 12,500 shares of SGI Group converted from the Bayside note | | X | | 1/24 | | | Day 8 |
| 207 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/6/2013 with subject "Re: FSPM OTC Markets Opn Ltr" attaching document named "FSPM_LawFirm_AttorneyLetter_03.06.13_R" | | X | | 1/24 | | | Day 8 |
| 208 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/11/2013 with subject "package - Dave Roy - FusionPharm" | | X | | 1/24 | | | Day 8 |
| 209 | DiTommaso | Email from Jean-Pierre to DITomasso dated 3/12/2013 with subject "FSPM-Black Additional Revised Opinion Letter(s) attaching 4 drafted Attorney Opinion Letters | | X | | 1/24 | | | Day 8 |
| 209a | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 25,000 shares of FSPM Mauriello converted from the Bayside note | | X | | 1/25 | | | Day 9 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 30 of 32

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 209b | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 12,500 shares of FSPM SGI Group converted from the Bayside note | | X | | 1/25 | | | Day 9 |
| 209c | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 137,500 shares of FSPM Starcity Capital converted from the Bayside note | | X | | 1/25 | | | Day 9 |
| 209d | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 12,500 shares of FSPM Vera Group converted from the Bayside note | | X | | 1/25 | | | Day 9 |
| 210 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/12/2013 with subject "FSPM-Black Arch Debt Conversion Revised Letter" attaching 2 documents related to the transaction | | X | | 1/25 | | | Day 9 |
| 210a | DiTommaso | Letter dated 3/8/13 to DiBella from Dittman | | X | | 1/25 | | | Day 9 |
| 210b | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 12,500 shares of FSPM Black Arch Opportunity Fund LP converted from the Bayside note | | X | | 1/25 | | | Day 9 |
| 211 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 3/30/13 with subject "FSPM-Meadpoint Opinion" | | X | | 1/25 | | | Day 9 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 31 of 32

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 211a | DiTommaso | Packet of documents related to conversion of 475,000 shares from the Meadpoint note to include the Officer's Certificate, the Meadpoint Note, the letter from Dittman to PSTC, and the Written Consent of the Board of Directors | | X | | 1/25 | | | Day 9 |
| 211b | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to 475,000 shares of FSPM converted from the Meadpoint note dated 03/31/2013 | | X | | 1/25 | | | Day 9 |
| 212 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 8/22/2013 with subject "FSPM: Pink Sheets Letter - 06-30-13 Financials" | | X | | 1/24 | | | Day 8 |
| 212a | DiTommaso | FusionPharm Shareholder Report through 06/03/2013 | | X | | 1/24 | | | Day 8 |
| 212b | DiTommaso | FusionPharm Officer and Directors Questionnaire for period ended June 30, 2013 | | X | | 1/24 | | | Day 8 |
| 213 | DiTommaso | OTC Markets DiTommaso Opinion Letter dated 08/22/2013 (PDF) | | X | | 1/24 | | | Day 8 |
| 214 | DiTommaso | Email from Sears to Dittman dated 08/30/2013 attaching the signature page for Scholz and Thayden's Attorney Opinion Letter from Tod DiTommaso | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 32 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 215 | DiTommaso | Email from Jean-Pierre to DiTommaso dated 8/26/2013 with subject "FSPM: Opinion letter request" attaching 4 documents related to the transaction | | X | | 1/24 | | | Day 8 |
| 215a | DiTommaso | Due Diligence Documents related to the transfer to Scholz | | X | | 1/24 | | | Day 8 |
| 215b | DiTommaso | Due Diligence Documents related to the transfer to Myron Thaden | | X | | 1/24 | | | Day 8 |
| 215c | DiTommaso | Due Diligence Documents related to the transfer to Sharryn Thaden | | X | | 1/24 | | | Day 8 |
| 215d | DiTommaso | Drafted Attorney Opinion Letter on blank letterhead relating to the conversion of the Meadpoint note for shareholders Myron and Sharryn Thaden and Scholz | | X | | 1/24 | | | Day 8 |
| 216 | DiTommaso | Tod DiTommaso invoice submitted to Jean-Pierre dated 9/15/2013 | | X | | 1/24 | | | Day 8 |
| 217 | DiTommaso OTC | OTC Attorney Letter Agreements - DiTommaso | | X | | 1/24 | | | Day 8 |
| 218 | DiTommaso | FusionPharm Current Information Letters Reviewed and Verified by DiTommaso | | X | | 1/24 | | | Day 8 |
| 219 | DiTommaso | FusionPharm Attorney Opinion Letters Reviewed and Verified by DiTommaso | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 33 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 220 | DiTommaso | DiTommaso Invoices sent to Jean-Pierre | | X | | 1/24 | | | Day 8 |
| 221 | | | | | | | | | |
| 222 | | | | | | | | | |
| 223 | | | | | | | | | |
| 224 | | | | | | | | | |
| 225 | Duke | Andrew Duke's sketch of the FusionPharm Office located on Wynkoop Street | | X | | 1/23 | | | Day 7 |
| 226 | W. Sears Duke | Email from Sears to Dittman dated 09/28/2011 subject: "FW: Reservation Confirmation" | | X | | 1/14 | | | Day 1 |
| 227 | W. Sears Duke | Email from Dittman to Duke and Sears dated 10/12/2011 with subject "business plan update" | | X | | 1/23 | | | Day 7 |
| 228 | W. Sears Duke | Email from Duke to Dittman, Sears and Frank Falconer dated 10/20/2011 with subject "retreat" | | X | | 1/23 | | | Day 7 |
| 229 | W. Sears Duke | Email from Sears to Duke dated 3/23/2012 with subject "Status" | | X | | 1/14 | | | Day 1 |
| 230 | Duke | Email from Dittman to Duke dated 4/17/2012 with subject "Debt" | | X | | 1/17 | | | Day 4 |
| 231 | | | | | | | | | |
| 232 | | | | | | | | | |
| 233 | | | | | | | | | |
| 234 | | | | | | | | | |
| 235 | W. Sears Bodden | Email from Sears to Bodden cc Dittman dated 3/10/2011 with subject "Fusion Pharm" | | X | | 1/14 | | | Day 1 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 34 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 236 | W. Sears Bodden | Email from Sears to Bodden dated 03/14/2011 attaching Affidavit of Cliff Bodden 03/14/2011 | | X | | 1/24 | | | Day 8 |
| 237 | W. Sears Bodden | Email from Jean-Pierre to Bodden with cc to Sears dated 03/14/2011 subject: "RE: Affidavit" | | X | | 1/24 | | | Day 8 |
| 238 | W. Sears Bodden | Email from Sears to Bodden dated 03/28/2011 forwarding email from Jean-Pierre to Sears attachinhg Baby Bee Bright Articles of Incorporation and Baby Bee Bright Supporting Documents | | X | | 1/14 | | | Day 1 |
| 239 | W. Sears Bodden | Email from Bodden to Malino with cc to Sears dated 03/24/2012 attaching FusionPharm 2-Page Summary and FusionPharm Private Investor Presentation | | X | | 1/24 | | | Day 8 |
| 240 | W. Sears Bodden | Email from Bodden to Dittman and Sears dated 03/31/2012 attaching Annual Information and Disclosure Statement dated 12/31/2011 and Annual Information and Disclosure Statement dated 12/31/2011 Revision from 03/31/2012 | | X | | 1/24 | | | Day 8 |
| 241 | | | | | | | | | |
| 242 | W. Sears Bodden | Email from Bodden to Malino cc Dittman and Sears dated 4/4/2012 with subject "Pro Forma Financial Projections" | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 35 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 243 | W. Sears Bodden | Email from Bodden to Dittman with cc to Sears dated 05/25/2012 attaching Financial Statements dated 03/2012 and 03/2011 | | X | | 1/24 | | | Day 8 |
| 244 | Bodden | Email from Bodden to Jean-Pierre dated 05/30/2012 subject: "RE: Meeting" | | X | | 1/24 | | | Day 8 |
| 245 | W. Sears Bodden | Email from Sears to Dittman forwarding email from Bodden to Sears dated 06/04/2012 attaching Promissory Note and Credit Line Agreement Draft | | X | | 1/15 | | | Day 2 |
| 246 | W. Sears Bodden | Email from Bodden to Sears dated 06/06/2012 attaching Bayside Loan Documents (8 attachments) | | X | | 1/24 | | | Day 8 |
| 247 | W. Sears Bodden | Email from Bodden to Sears dated 06/06/2012 attaching MeadPoint Loan Documents (5 attachments) | | X | | 1/24 | | | Day 8 |
| 248 | | | | | | | | | |
| 249 | W. Sears Bodden | Email from Sears to Bodden dated 06/12/2012 forwarding email from Jean-Pierre to Sears dated 06/11/2012 subject: "FSPM - OTC Markets Opn Ltr" | | X | | 1/15 | | | Day 2 |
| 250 | W. Sears Bodden | Email from Bodden to Sears with cc to Dittman and Jean-Pierre dated 06/13/2012 subject: "Capitoline Due Diligence" | | X | | 1/24 | | | Day 8 |
| 251 | W. Sears Bodden | Email from Bodden to Sears with cc to Dittman dated 06/15/2012 subject: "Due Diligence Items" | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 36 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 252 | W. Sears Bodden | Email from Sears to Bodden dated 06/17/2012 forwarding email from Jean-Pierre to Bodden subject: "RE: FSPM" | | X | | 1/15 | | | Day 2 |
| 253 | W. Sears Bodden | Email from Bodden to Jean-Pierre and Sears dated 06/18/2012 attaching Fusion Pharm 504 Offering Documents dated 06/2012 | | X | | 1/24 | | | Day 8 |
| 254 | W. Sears Bodden | Email from Sears to Bodden dated 6/19/2012 with blank subject | | X | | 1/14 | | | Day 1 |
| 255 | W. Sears Bodden | Email from Bodden to Dittman with cc to Jean-Pierre and Sears dated 06/20/2012 attaching Capitoline Due Diligence Package (14 attachments) | | X | | 1/24 | | | Day 8 |
| 256 | W. Sears Bodden | Email from Bodden to Nick Malino with cc to Sears and Barbarosh dated 06/20/2012 attaching the Due Diligence Package (14 attachments) | | X | | 1/24 | | | Day 8 |
| 257 | W. Sears Bodden | Email from Bodden to Sears dated 8/5/2012 with subject "Deposits" | | X | | 1/24 | | | Day 8 |
| 258 | W. Sears Bodden | Email from Sears to Bodden and Jean-Pierre dated 08/07/2012 forwarding email from Amanda Martin to Sears attaching Fusion Pharm Inc. Shareholders Report Common dated 06/30/2012 | | X | | 1/15 | | | Day 2 |
| 259 | W. Sears Bodden | Email from Bodden to Dittman with cc to Jean-Pierre and Sears dated 08/08/2012 attaching Quarterly Financials (6 attachments) | | X | | 1/24 | | | Day 8 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 37 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 260 | W. Sears Bodden Kocinski | Email from Kocinski to Jean-Pierre with cc to Sears, Dittman, and Bodden dated 08/14/2012 subject: "Fusion Pharm Financials for Period Ending 06/30/12" | | X | | 1/24 | | | Day 8 |
| 261 | | | | | | | | | |
| 262 | W. Sears Bodden Kocinski | Email from Bodden to Dittman and Sears with cc to Kocinsky and Jean-Pierre dated 11/04/2012 attaching Quarterly Report 09/30/2012 | | X | | 1/23 | | | Day 7 |
| 263 | W. Sears Bodden Kocinski | Email from Dittman to Bodden and Sears with cc to Kocinski and Jean-Pierre dated 11/15/2012 subject "Quarterly Report - September 2012" | | X | | 1/17 | | | Day 4 |
| 264 | | | | | | | | | |
| 265 | W. Sears Bodden | Email from Bodden to Sears dated 11/26/2012 attaching Bayside Convertible Promissory Note and MeadPoint Convertible Promissory Note | | X | | 1/24 | | | Day 8 |
| 266 | Bodden | Email from Bodden to Dittman dated 12/27/2012 attaching a Letter of Authorization dated 12/05/2011 | | X | | 1/24 | | | Day 8 |
| 267 | | | | | | | | | |
| 268 | W. Sears Bodden | Email from Sears to Bodden dated 12/27/2012 forwarding email chain between Jean-Pierre, Sears and DiBella subject: "Fwd: Convertible Note" | | X | | 1/15 | | | Day 2 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 38 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 269 | W. Sears Bodden | Email from Sears to Bodden dated 12/27/2012 with subject "Convertible note" | | X | | 1/15 | | | Day 2 |
| 270 | W. Sears Bodden | Email from Bodden to Sears dated 12/27/2012 attaching Sandra Sears Letter of Resignation dated 05/02/2011 | | X | | 1/15 | | | Day 2 |
| 271 | W. Sears Bodden | Email from Sears to Jean-Pierre and Bodden dated 12/27/2012 forwarding email from DiBella to Sears and Dittman subject: "Fwd: missing docs" | | X | | 1/15 | | | Day 2 |
| 272 | W. Sears Bodden | Email from Sears to Bodden cc Jean-Pierre and Dittman dated 12/27/2012 with subject Convertible Note | | X | | 1/15 | | | Day 2 |
| 273 | W. Sears Bodden | Email from Bodden to Jean-Pierre with cc to Sears dated 12/28/2012 attaching Drawdown Requests and Proof of Receipt documents (6 attachments) | | X | | 1/24 | | | Day 8 |
| 274 | W. Sears Bodden | Email from Sears to Dittman dated 1/23/2013 with subject FSPM-Bayside-Starcity STA 1-23-2013 not signed v1-3GJP | | X | | 1/15 | | | Day 2 |
| 275 | W. Sears Bodden Coleson | Email from Bodden to Sears and Dittman dated 1/31/2013 with blank subject attaching FSPM-Bayside-Starcity STA. | | X | | 1/24 | | | Day 8 |
| 276 | | | | | | | | | |
| 277 | | | | | | | | | |
| 278 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 39 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 279 | | | | | | | | | |
| 280 | Scoufis | FusionPharm Corporate Action Calendar | | | | | | | |
| 281 | Scoufis | Summary Chart - Pre-FusionPharm Converted Preferred Stock Analysis as of 2/28/11 | | X | | | | | |
| 282 | Scoufis | Summary Chart - Pre-FusionPharm Converted Preferred Stock Analysis as of 3/1/11 | | X | | | | | |
| 283 | Scoufis | Summary Chart - Pre-FusionPharm Converted Preferred Stock Analysis as of 3/16/11 | | X | | | | | |
| 284 | Scoufis | Summary Chart - FusionPharm Common Stock with Converted Preferred Stock as of 6/30/2011 | | X | | 1/25 | | | Day 9 |
| 285 | Scoufis | Summary Chart - FusionPharm Common Stock with Converted Preferred Stock as of 11/30/2011 | | X | | | | | |
| 286 | Scoufis | Summary Chart - FusionPharm Common Stock with Converted Preferred Stock as of 12/31/2011 | | X | | 1/25 | | | Day 9 |
| 287 | Scoufis | Summary Chart - FusionPharm Common Stock with Converted Bayside and Meadpoint Notes as of 12/31/2012 | | X | | 1/25 | | | Day 9 |
| 288 | Scoufis | Summary Chart - FusionPharm Common Stock with Converted Preferred Stock as of 06/30/2013 | | X | | 1/25 | | | Day 9 |
| 289 | Scoufis | Summary Chart - FusionPharm Oustanding Common Stock as of 09/3/2013 | | X | | 1/25 | | | Day 9 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 40 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 290 | Scoufis | Summary chart - Price and Volume Analysis with Selected Accounts - 3/31/2011-6/29/2011 | | X | | 1/25 | | | Day 9 |
| 291 | Scoufis | Summary chart - Price and Volume Analysis with Selected Accounts - 3/25/2011-7/16/2013 | | X | | 1/22 | | | Day 6 |
| 292 | Scoufis | Summary chart - Price and Volume Analysis with Selected Accounts - 3/25/2011-5/15/2014 | | X | | 1/25 | | | Day 9 |
| 293 | Scoufis | Summary chart - Price and Volume Analysis with Selected Accounts - 3/25/2011-12/31/2013 | | X | | | | | |
| 294 | Scoufis | Summary Chart - FusionPharm Share Flowcharts for Abbott Transaction - 8/1/2012 | | | | 1/25 | | | Day 9 |
| 295 | Scoufis | Summary Chart - FusionPharm Share Flowcharts for Bayside Stock Issuance - 1/18/2013 | | | | 1/25 | | | Day 9 |
| 296 | Scoufis | Summary Chart - FusionPharm Share Flowcharts for Sale of Convertible Promissory Note - 3/14/2013 | | | | 1/25 | | | Day 9 |
| 297 | Scoufis | Summary Chart - FusionPharm Share Flowcharts for Meadpoint Stock Issuance - 4/12/2013 | | | | 1/25 | | | Day 9 |
| 298 | Scoufis | Summary Chart - FusionPharm Share Flowcharts for Meadpoint Stock Issuance - 8/15/2013 | | | | 1/25 | | | Day 9 |
| 299 | Scoufis | Summary Chart - FusionPharm Share Flowcharts Scholz and Thaden Stock Issuance - 9/3/2013 | | | | 1/25 | | | Day 9 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 41 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 300 | Scoufis | Summary Chart - FusionPharm Trading Summary | | X | | 1/25 | | | Day 9 |
| 301 | Scoufis | Summary Chart - FusionPharm Rule 144 Affiliate Volume Calculations | | | | 1/25 | | | Day 9 |
| 302 | Scoufis | Summary Chart - FusionPharm Common Stock with Converted Preferred Stock as of 12/31/2012 | | | | | | | |
| 303 | Scoufis | Summary Chart - FusionPharm Wire Transfers | | X | | 1/25 | | | Day 9 |
| 304 | Scoufis | Summary Chart - FusionPharm Wire Transfers Flowchart | | X | | | | | |
| 305 | | | | | | | | | |
| 306 | | | | | | | | | |
| 307 | | | | | | | | | |
| 308 | | | | | | | | | |
| 309 | FBI - Newton | Summary Chart - Payments to Guy Jean-Pierre from 2011 to 2013 | | X | | 1/28 | | | Day 10 |
| 310 | FBI - Newton | Summary Chart - Guy Jean-Pierre Google Voice Records - (305)929-3652 | | X | | 1/28 | | | Day 10 |
| 311 | FBI - Newton | Summary Chart - Tod DiTommaso Invoices to Jean-Pierre and Payments from Jean-Pierre | | X | | 1/28 | | | Day 10 |
| 312 | FBI - Newton | Summary Chart - Tod DiTommaso Verizon Wireless Records - (323)497-1418 | | X | | 1/28 | | | Day 10 |
| 313 | FBI - Newton | Summary Chart - Fusion Pharm Stock Sale Proceeds 2011 through 2013 | | X | | 1/28 | | | Day 10 |
| 314 | FBI - Newton | Summary Chart - Check Signers on FusionPharm Wells Fargo Account #0090 | | X | | 1/28 | | | Day 10 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 42 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 315 | FBI - Newton | Summary Chart - FusionPharm Related Expenses paid from Other Accounts | | X | | 1/28 | | | Day 10 |
| 316 | FBI - Newton | Summary Chart - FusionPharm Revenue versus Cash Receipts | | X | | 1/28 | | | Day 10 |
| 317 | FBI - Newton | Summary Chart - Analysis of Proof of Funding for Notes | | X | | | | | |
| 318 | | | | | | | | | |
| 319 | | | | | | | | | |
| 320 | | | | | | | | | |
| 320a | W. Sears Agent - Erwin | 2016-02-26 Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |
| 320b | W. Sears Agent - Erwin | 2016-03-03 Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |
| 320c | W. Sears Agent - Erwin | 2016-03-24 Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |
| 320d | W. Sears Agent - Erwin | 2016-03-30 Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |
| 320e | W. Sears Agent - Erwin | 2016-04-04 Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |
| 320f | W. Sears Agent - Erwin | 2016-04-06 Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |
| 320g | W. Sears Agent - Erwin | 2016-04-17 Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 43 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 320h | W. Sears Agent - Erwin | 2016-04-22 (Call #1) Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |
| 320i | W. Sears Agent - Erwin | 2016-04-22 (Call #2) Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |
| 320j | W. Sears Agent - Erwin | 2016-04-22 (Call #3) Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |
| 320k | W. Sears Agent - Erwin | 2016-04-23 Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |
| 320l | W. Sears Agent - Erwin | 2016-04-25 Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |
| 320m | W. Sears Agent - Erwin | 2016-04-26 Recorded Phone Call between Sears and GJP | | | | 1/16 | | | Day 3 |
| 321 | | | | | | | | | |
| 321a | Agent - Erwin | Transcript - 2016-02-26 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321b | Agent-Erwin | Transcript - 2016-03-03 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321c | Agent-Erwin | Transcript - 2016-03-24 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321d | Agent-Erwin | Transcript - 2016-03-30 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 44 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 321e | Agent-Erwin | Transcript - 2016-04-04 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321f | Agent-Erwin | Transcript - 2016-04-06 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321g | Agent-Erwin | Transcript - 2016-04-17 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321h | Agent-Erwin | Transcript - 2016-04-22 (#1) Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321i | Agent-Erwin | Transcript - 2016-04-22 (#2) Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321j | Agent-Erwin | Transcript - 2016-04-22 (#3) Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321k | Agent-Erwin | Transcript - 2016-04-23 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321l | Agent-Erwin | Transcript - 2016-04-25 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 321m | Agent-Erwin | Transcript - 2016-04-26 Recorded Phone Call between William Sears and Guy Jean-Pierre | | | | | | | |
| 322 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 45 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 322a | W. Sears Agent- Funk Agent-Erwin | 2016-02-26 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322b | W. Sears Agent- Funk Agent-Erwin | 2016-03-03 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322c | W. Sears Agent- Funk Agent-Erwin | 2016-03-24 (Excerpt #1) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322d | W. Sears Agent- Funk Agent-Erwin | 2016-03-24 (Excerpt #2) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322e | W. Sears Agent- Funk Agent-Erwin | 2016-03-30 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322f | W. Sears Agent- Funk Agent-Erwin | 2016-04-04 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 46 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 322g | W. Sears Agent- Funk Agent-Erwin | 2016-04-06 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322h | W. Sears Agent- Funk Agent-Erwin | 2016-04-17 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322i | W. Sears Agent- Funk Agent-Erwin | 2016-04-22 (Call #1) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322j | W. Sears Agent- Funk Agent-Erwin | 2016-04-22 (Call #2 - Excerpt #1) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322k | W. Sears Agent- Funk Agent-Erwin | 2016-04-22 (Call #2 - Excerpt #2) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322l | W. Sears Agent- Funk Agent-Erwin | 2016-04-22 (Call #3) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 47 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 322m | W. Sears<br>Agent- Funk<br>Agent-Erwin | 2016-04-23 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322n | W. Sears<br>Agent- Funk<br>Agent-Erwin | 2016-04-25 (Excerpt #1) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322o | W. Sears<br>Agent- Funk<br>Agent-Erwin | 2016-04-25 (Excerpt #2) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322p | W. Sears<br>Agent- Funk<br>Agent-Erwin | 2016-04-25 (Excerpt #3) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322q | W. Sears<br>Agent- Funk<br>Agent-Erwin | 2016-04-25 (Excerpt #4) Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 322r | W. Sears<br>Agent- Funk<br>Agent-Erwin | 2016-04-26 Recorded Phone Call between Sears and GJP - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 48 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 323 | W. Sears Agent- Funk Agent - Erwin | Emails exchanged between Sears and Jean-Pierre between 3/2/2016 and 4/26/2016 | | X | | 1/28 | | | Day 10 |
| 324 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Sears titled "VertiFresh Business Plan 2012-2015 CO.docx | | X | | 1/28 | | | Day 10 |
| 325 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Jean-Pierre titled "CMC-Vert Consult AGR_04_15_16.doc" | | X | | 1/28 | | | Day 10 |
| 326 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Jean-Pierre titled "VERT_conv_note_02_28_15.doc" | | X | | 1/28 | | | Day 10 |
| 327 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Jean-Pierre titled "VERT_conv_note_02_28_15.doc" dated 4/21/2015 | | X | | 1/28 | | | Day 10 |
| 328 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Jean-Pierre titled "Non-Aff LTR.docx" | | X | | 1/28 | | | Day 10 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 49 of 52

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 329 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Jean-Pierre titled "Purchase and Assignment Agreement_THORE.doc" | | X | | 1/28 | | | Day 10 |
| 330 | W. Sears Agent- Funk Agent - Erwin | Email attachment from Jean-Pierre titled "Form of Debt Conversion Opinion.docx" | | X | | 1/28 | | | Day 10 |
| 331 | | | | | | | | | |
| 332 | | | | | | | | | |
| 333 | | | | | | | | | |
| 334 | | | | | | | | | |
| 335 | | | | | | | | | |
| 336 | | | | | | | | | |
| 337 | | | | | | | | | |
| 338 | | | | | | | | | |
| 339 | | | | | | | | | |
| 340 | | | | | | | | | |
| 341 | | | | | | | | | |
| 342 | | | | | | | | | |
| 343 | | | | | | | | | |
| 344 | | | | | | | | | |
| 345 | | | | | | | | | |
| 346 | | | | | | | | | |
| 347 | | | | | | | | | |
| 348 | | | | | | | | | |
| 349 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 50 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 350 | W. Sears Agent Varel Agent - Erwin | DVD-Audio Recording - 2016-04-28 Recording of William Sears and Guy Jean-Pierre travel from MIA Airport to Hotel | | | | 1/16 | | | Day 3 |
| 351 | | | | | | | | | |
| 351a | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #1) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 351b | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #2) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 351c | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #3) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 351d | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #4) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 351e | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #5) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 51 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 351f | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #6) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 351g | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #7) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 351h | W. Sears Agent Varel Agent - Erwin | 2016-04-28 (Excerpt #8) Recording of Sears and GJP travel from MIA to Hotel - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 352 | | | | | | | | | |
| 353 | | | | | | | | | |
| 354 | | | | | | | | | |
| 355 | | | | | | | | | |
| 356 | Agent - Erwin | Transcript - 2016-04-28 Recording of William Sears and Guy Jean-Pierre travel from MIA Airport to Hotel | | | | | | | |
| 357 | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | DVD-Audio Recording - 2016-04-28 Recording of Dinner Meeting: William Sears, Guy Jean-Pierre, and "EJ" | | | | 1/16 | | | Day 3 |
| 358 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 52 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 358a | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #1) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 358b | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #2) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 358c | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #3) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 358d | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #4) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 358e | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #5) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 53 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 358f | W. Sears<br>FBI UC #2<br>Agent - Varel<br>Agent - Erwin | 2016-04-28 (Excerpt #6) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 358g | W. Sears<br>FBI UC #2<br>Agent - Varel<br>Agent - Erwin | 2016-04-28 (Excerpt #7) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 358h | W. Sears<br>FBI UC #2<br>Agent - Varel<br>Agent - Erwin | 2016-04-28 (Excerpt #8) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 358i | W. Sears<br>FBI UC #2<br>Agent - Varel<br>Agent - Erwin | 2016-04-28 (Excerpt #9) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 358j | W. Sears<br>FBI UC #2<br>Agent - Varel<br>Agent - Erwin | 2016-04-28 (Excerpt #10) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 54 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 358k | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #11) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 358l | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #12) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 358m | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #13) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 358n | W. Sears FBI UC #2 Agent - Varel Agent - Erwin | 2016-04-28 (Excerpt #14) Recording of Dinner Meeting: Sears, GJP, and EJ - Synced Audio & Transcript | | | | 1/16 | | | Day 3 |
| 359 | Agent - Erwin | Transcript - 2016-04-28 Recording of Dinner Meeting: William Sears, Guy Jean-Pierre, and "EJ" | | | | | | | |
| 360 | Agent - Erwin | DVD-Audio Recording - Events of 2016-04-29 Meeting: William Sears, Guy Jean-Pierre, and "EJ" | | | | 1/16 | | | Day 3 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 55 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 361 | W. Sears Agent- Varel Agent - Erwin | DVD-2016-04-29 Recording Excerpt of Walk to Meeting: William Sears and Guy Jean-Pierre - Audio synced with Transcript | | | | 1/16 | | | Day 3 |
| 362 | W. Sears Agent- Varel Agent - Erwin | DVD-Video/Audio - Events of 2016-04-29 Meeting: William Sears, Guy Jean-Pierre, and "EJ" | | | | 1/16 | | | Day 3 |
| 363 | Agent - Erwin | Transcript - Events of 2016-04-29 Meeting: William Sears, Guy Jean-Pierre, and "EJ" | | | | | | | |
| 363a | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #1) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 363b | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #2) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 363c | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #3) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | 1/16 | | | Day 3 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 56 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 363d | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #4) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 363e | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #5) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 363f | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #6) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 363g | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #7) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 363h | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #8) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 363i | W. Sears Agent- Varel Agent - Erwin | 2016-04-29 (Excerpt #9) Recording of Breakfast Meeting: Sears, GJP, and EJ - Synced Video & Transcript | | | | 1/16 | | | Day 3 |
| 364 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 57 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 365 | Agent-Varel Interstate Bank | Negotiated Check made out to Guy M. Jean-Pierre for $5,000 | | X | | 1/28 | | | Day 10 |
| 366 | Agent-Varel Interstate Bank | FirstBank Declaration for $5,000 Cashier's Check | | X | | 1/28 | | | Day 10 |
| 367 | Agent-Varel Interstate Bank | Bank of America - Declaration and Record of $5,000 Cashier's Check negotiated at Banco Popular | | | | 1/28 | | | Day 10 |
| 368 | | | | | | | | | |
| 369 | | | | | | | | | |
| 370 | Agent- Varel | FedEx Slip with tracking number 807645904914 dated 04/22/2016 | | X | | 1/28 | | | Day 10 |
| 371 | | | | | | | | | |
| 372 | Agent-Funk | Disc with all email attachments 372a-372ppp | | | | | | | |
| 372a | W. Sears Agent- Funk | 5/23/2011 E-mail from Dittman to Samson | | X | | 1/28 | | | Day 10 |
| 372b | W. Sears Agent- Funk | 5/31/2011 - E-mail from Sears to Jean-Piere | | X | | 1/14 | | | Day 1 |
| 372c | W. Sears Agent- Funk | 7/12/2011 - E-mail from Sears to Jean-Pierre | | X | | 1/15 | | | Day 2 |
| 372d | W. Sears Agent- Funk | 7/17/2011 - E-mail from Sears to Jean-Pierre | | X | | 1/14 | | | Day 1 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 58 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372e | W. Sears Agent- Funk | 7/17/2011 - E-mail from Sears to Jean-Pierre | | X | | 1/15 | | | Day 2 |
| 372f | W. Sears Agent- Funk | 7/18/2011 - E-mail from Jean-Pierre to Sears | | X | | 1/15 | | | Day 2 |
| 372g | W. Sears Agent- Funk | 7/26/2011 - E-mail from DiTommaso to Jean-Pierre | | X | | 1/28 | | | Day 10 |
| 372h | W. Sears Agent- Funk | 7/28/2011 - E-mail from Oxford Capital to Sears | | X | | 1/14 | | | Day 1 |
| 372i | W. Sears Agent- Funk | 8/8/2011 - E-mail from Sears to Jean-Pierre | | X | | 1/14 | | | Day 1 |
| 372j | W. Sears Agent- Funk | 8/9/2011 - E-mail from Jean-Pierre to Sears | | X | | 1/14 | | | Day 1 |
| 372k | W. Sears Agent- Funk | 8/24/2011 - E-mail chain from Jean-Pierre to Sears | | X | | 1/14 | | | Day 1 |
| 372l | W. Sears Agent- Funk | 9/13/2011 - E-mail from Jean-Pierre to Sears and Dittman | | X | | 1/14 | | | Day 1 |
| 372m | W. Sears Agent- Funk | 9/14/2011 - E-mail from Jean-Pierre to Sears | | X | | 1/14 | | | Day 1 |
| 372n | W. Sears Agent- Funk | 9/15/2011 - E-mail from Jean-Pierre to Sears | | X | | | | | |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 59 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372o | W. Sears Agent- Funk | 9/15/2011 - E-mail from Jean-Pierre to Sears | | X | | | | | |
| 372p | W. Sears Agent- Funk | 10/7/2011 - E-mail from Dittman to Sears | | X | | 1/15 | | | Day 2 |
| 372q | W. Sears Agent- Funk | 10/25/2011 - E-mail from Jean-Pierre to Sears | | X | | 1/14 | | | Day 1 |
| 372r | W. Sears Agent- Funk | 10/26/2011 - E-mail from Jean-Pierre to Sears | | X | | 1/15 | | | Day 2 |
| 372s | W. Sears Agent- Funk | 11/3/2011 - E-mail from Dittman to Kramer | | X | | 1/17 | | | Day 4 |
| 372t | W. Sears Agent- Funk | 11/14/2011 - E-mail from Sears to Jean-Pierre | | X | | 1/14 | | | Day 1 |
| 372u | W. Sears Agent- Funk | 11/16/2011- E-mail from Sears to Jean-Pierre | | X | | 1/14 | | | Day 1 |
| 372w | W. Sears Agent- Funk | 11/30/2011 - E-mail from Jean-Pierre to Dittman | | X | | 1/17 | | | Day 4 |
| 372x | W. Sears Agent- Funk | 12/26/2011 -E-mail from Jean-Pierre to Dittman and Sears | | X | | 1/15 | | | Day 2 |
| 372y | W. Sears Agent- Funk | 12/27/2011 - E-mail from Dittman to Sears and Jean-Pierre | | X | | 1/17 | | | Day 4 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 60 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372z | W. Sears Agent- Funk | 12/29/2011 - E-mail from Dittman to Sears, Jean-Pierre, and DiTommaso | | X | | 1/17 | | | Day 4 |
| 372aa | W. Sears Agent- Funk | 12/29/2011 - E-mail from OTC to Dittman | | X | | 1/17 | | | Day 4 |
| 372bb | W. Sears Agent- Funk | 1/3/2012 - E-mail from Sears to Dittman | | X | | 1/15 | | | Day 2 |
| 372cc | W. Sears Agent- Funk | 1/14/2012 - E-mail between Sears and Jean-Pierre | | X | | 1/14 | | | Day 1 |
| 372dd | W. Sears Agent- Funk | 3/14/2012 - E-mail from Jean-Pierre to Sears cc Dittman | | X | | 1/15 | | | Day 2 |
| 372ee | W. Sears Agent- Funk | 3/23/2012 - E-mail from Jean-Pierre to Sears | | X | | 1/15 | | | Day 2 |
| 372ff | W. Sears Agent- Funk | 5/23/2012 - E-mail from Sears to Jean-Pierre and Dittman | | X | | 1/15 | | | Day 2 |
| 372gg | W. Sears Agent- Funk | 5/23/2012 - E-mail from Sears to Jean-Pierre cc Bodden | | X | | 1/15 | | | Day 2 |
| 372hh | W. Sears Agent- Funk | 6/7/2012 - E-mail from Sears to Dittman and Jean-Pierre | | X | | 1/15 | | | Day 2 |
| 372ii | W. Sears Agent- Funk | 6/11/2012 - E-mail from McGehee at Pacific Stock Tranfer to Sears | | X | | 1/14 | | | Day 1 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 61 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372jj | W. Sears Agent- Funk | 6/13/2012 - E-mail from Dittman to Bodden cc Sears and Jean-Pierre | | X | | 1/17 | | | Day 4 |
| 372kk | W. Sears Agent- Funk | 6/14/2012 - E-mail from Jean-Pierre to Sears | | X | | 1/15 | | | Day 2 |
| 372ll | W. Sears Agent- Funk | 6/18/2012 - E-mail from Bodden to Dittman and Sears | | X | | 1/28 | | | Day 10 |
| 372mm | W. Sears Agent- Funk | 6/18/2012 - E-mail from Jean-Pierre to Sears | | X | | 1/14 | | | Day 1 |
| 372nn | W. Sears Agent- Funk | 6/19/2012 - E-mail from Jean-Pierre to Sears | | X | | 1/15 | | | Day 2 |
| 372oo | W. Sears Agent- Funk | 6/28/2012 - E-mail from Jean-Pierre to Sears | | X | | 1/14 | | | Day 1 |
| 372pp | W. Sears Agent- Funk | 7/11/2012 - E-mail from Jean-Pierre to Sears | | X | | 1/14 | | | Day 1 |
| 372qq | W. Sears Agent- Funk | 7/20/2012 - E-mail from Sears to Dittman | | X | | 1/15 | | | Day 2 |
| 372rr | W. Sears Agent- Funk | 7/24/2012 - E-mail from Sears to Dittman | | X | | 1/14 | | | Day 1 |
| 372ss | W. Sears Agent- Funk | 8/8/2012 - E-mail from Dittman to Bodden cc Sears and Jean-Pierre | | X | | 1/17 | | | Day 4 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 62 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372tt | W. Sears Agent- Funk | 9/12/2012 - E-mail from Sears to Jean-Pierre cc Dittman | | X | | 1/14 | | | Day 1 |
| 372uu | W. Sears Agent- Funk | 11/26/2012 - E-mail from Jean-Pierre to Sears cc Dittman | | X | | 1/15 | | | Day 2 |
| 372vv | W. Sears Agent- Funk | 11/26/2012 - E-mail from Dittman to Jean-Pierre | | X | | 1/17 | | | Day 4 |
| 372ww | W. Sears Agent- Funk | 11/29/2012 - E-mail from Dittman to Jean-Pierre cc Sears | | X | | 1/17 | | | Day 4 |
| 372xx | W. Sears Agent- Funk | 12/8/2012 - E-mail from Jean-Pierre to Sears then forwarded to Dittman | | X | | 1/15 | | | Day 2 |
| 372yy | W. Sears Agent- Funk | 12/10/2012 - E-mail from Jean-Pierre to Sears | | X | | 1/14 | | | Day 1 |
| 372zz | W. Sears Agent- Funk | 12/18/2012 - E-mail from Dittman to Sears, Jean-Pierre, and Bodden | | X | | 1/17 | | | Day 4 |
| 372aaa | W. Sears Agent- Funk | 12/27/2012 - E-mail from Sears to Dittman | | X | | 1/15 | | | Day 2 |
| 372bbb | W. Sears Agent- Funk | 1/22/2013 - E-mail from Sears to Eric Miller at Scottdale | | X | | 1/15 | | | Day 2 |
| 372ccc | W. Sears Agent- Funk | 2/27/2013 - E-mail from Sears to Jean-Pierre | | X | | 1/15 | | | Day 2 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 63 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372ddd | W. Sears Agent- Funk | 3/1/2013 - E-mail from Jean-Pierre to Sears | | X | | 1/15 | | | Day 2 |
| 372eee | W. Sears Agent- Funk | 3/5/2013 - E-mail from Jean-Pierre to Sears | | X | | 1/15 | | | Day 2 |
| 372fff | W. Sears Agent- Funk | 3/6/2013 - E-mail from Jean-Pierre to Dittman cc Sears | | X | | 1/17 | | | Day 4 |
| 372ggg | W. Sears Agent- Funk | 4/26/2013 - E-mail from Jean-Pierre to Sears then forwarded to Dittman | | X | | 1/14 | | | Day 1 |
| 372hhh | W. Sears Agent- Funk | 6/28/2013 - E-mail from Jean-Pierre to Sears forwarded to Dittman | | X | | 1/15 | | | Day 2 |
| 372iii | W. Sears Agent- Funk | 6/29/2013 - E-mail from Sears to Dittman forwarding an email from Jean-Pierre | | X | | 1/15 | | | Day 2 |
| 372jjj | W. Sears Agent- Funk | 6/30/2013 - E-mail from Jean-Pierre to Dittman cc Sears | | X | | 1/17 | | | Day 4 |
| 372kkk | W. Sears Agent- Funk | 6/30/2013 - E-mail from Sears to Dittman cc Jean-Pierre | | X | | 1/15 | | | Day 2 |
| 372lll | W. Sears Agent- Funk | 7/2/2013 - E-mail from Jean-Pierre to Dittman cc Sears | | X | | 1/17 | | | Day 4 |
| 372mmm | W. Sears Agent- Funk | 8/15/2013 - E-mail from Jean-Pierre to Sears | | X | | 1/15 | | | Day 2 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 64 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 372nnn | W. Sears Agent- Funk | 8/20/2013 - E-mail from Dittman to Sears | | X | | 1/17 | | | Day 4 |
| 372ooo | W. Sears Agent- Funk | 8/21/2013 -E-mail from Sears to Dittman forwarding email from Jean-Pierre | | X | | 1/15 | | | Day 2 |
| 372ppp | W. Sears Agent- Funk | 9/13/2013 - E-mail from Sears to Dittman | | X | | 1/14 | | | Day 1 |
| 373 | Agent - Funk | SDNY Case 04-cr-00556 - Judgment (William Sears) | | X | | | | | |
| 374 | Agent - Funk | Florida Bar File re Jean-Pierre | | | | 1/17 | | | Day 4 - Pages 304-305 ONLY |
| 375 | Agent - Funk | Jean-Pierre SEC transcript from testimony on 10/18/2011 | | | | | | | |
| 376 | Agent - Funk | Jean-Pierre SEC transcript from 12/13/2012 deposition | | | | | | | |
| 377 | Agent - Funk | SEC Judgment in NY case re defendant Jean-Pierre | | | | | | | |
| 378 | Agent - Funk | Florida Supreme Court records for Case Number SC12-2727 | | | | | | | |
| 379 | Agent - Funk | Guy Jean Pierre's Conviction | | | | | | | |
| 380 | W. Sears Agent - Funk | Emails from Sears to Dittman dated 5/4/2011 with subject "business plan" | | X | | 1/14 | | | Day 1 |
| 381 | W. Sears Agent - Funk | Email from Gino Rodrigues to Dittman and Sears dated 5/9/2011 attaching Corporate Minutes_05911.pdf | | X | | 1/14 | | | Day 1 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 65 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 382 | W. Sears Agent - Funk | Email from Sears to Jean-Pierre with cc to Dittman dated 10/17/2011 attaching Nominee Declaration of Shares (with variables) | | X | | 1/14 | | | Day 1 |
| 383 | W. Sears Agent - Funk | Email from Sears to Dittman dated 6/20/2011 with subject "Stock" | | X | | 1/15 | | | Day 2 |
| 384 | W. Sears Agent - Funk | Email from Sears to Dittman dated 07/12/2011 forwarding email from Jean-Pierre to Sears attaching Fusion Pharm Disclosure Statement dated 06/30/2011 | | X | | 1/15 | | | Day 2 |
| 385 | W. Sears Agent - Funk | Email from Jean-Pierre to Dittman dated 07/18/2011 subject: "Meeting with Attorney re Pink Sheets Opinion Letter" | | X | | 1/15 | | | Day 2 |
| 386 | W. Sears Agent - Funk | Email from Sears to Jean-Pierre with cc to Dittman dated 07/28/2011 attaching Oxford 2011 Deals, Share Purchase Overview, and Oxford Sample OSP Share Purchase Agreement | | X | | | | | |
| 387 | W. Sears Agent - Funk | Email from Dittman to Richard Rhodes dated 10/18/2011 with subject "skype" | | X | | 1/17 | | | Day 4 |
| 388 | W. Sears Agent - Funk | Email from Jean-Pierre to Dittman dated 11/7/2011 with subject "skype" | | X | | 1/17 | | | Day 4 |
| 389 | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 66 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 389a | W. Sears RCFL Examiner Agent-Funk | Skyp messages between users donmarcusi and wjsears66 | | X | | 1/15 | | | Day 2 |
| 389b | W. Sears RCFL Examiner Agent-Funk | Skype messages between users donmarcusi and billysears66 | | X | | 1/15 | | | Day 2 |
| 389c | W. Sears RCFL Examiner Agent-Funk | Skype messages between users elcommandante1 and trader5280 | | X | | 1/15 | | | Day 2 |
| 389d | W. Sears RCFL Examiner Agent-Funk | Skype message for user elcommandante1 | | X | | 1/15 | | | Day 2 |
| 390 | W. Sears Agent - Funk | Email from Dittman to Paychex dated 9/29/2011 with subject "Payroll - Paychex" | | X | | 1/17 | | | Day 4 |
| 391 | W. Sears Agent - Funk | Email from Sears to Dittman dated 12/05/2011 attaching Fusion Pharm Disclosure Statement Draft dated 12/02/2011 | | X | | 1/15 | | | Day 2 |
| 392 | RCFL Examiner Agent - Funk | Skype messages recovered from Dittman's computer | | X | | 1/17 | | | Day 4 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 67 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 393 | W. Sears Agent - Funk | Email from Sears to Dittman dated 7/2/2012 with subject "Cash" | | X | | 1/15 | | | Day 2 |
| 394 | W. Sears Agent - Funk | Email from Dittman to Roy and Sears with cc to Jean-Pierre dated 02/13/2013 subject: "RE:FSPM" | | X | | 1/17 | | | Day 4 |
| 395 | W. Sears Agent - Funk | Annual Information and Disclosure Statement dated 12/31/2012 | | X | | 1/17 | | | Day 4 |
| 396 | W. Sears Agent - Funk | Email from Sears to Dittman forwarding email from Jean-Pierre to Sears dated 02/28/2013 attaching Amended and Restated Articles of Incorporation | | X | | 1/14 | | | Day 1 |
| 397 | W. Sears Agent - Funk | Email from Sears to Dave Roy dated 3/4/2013 with subject "FSPM" | | X | | 1/14 | | | Day 1 |
| 398 | W. Sears Agent - Funk | Email from Sears to Dittman dated 3/8/2013 with subject 'FSPM OTC Markets Opn Ltr" | | X | | 1/15 | | | Day 2 |
| 399 | W. Sears Agent - Funk | Email from Sears to Dittman dated 06/28/2013 attaching Pink Sheets Opinion Letter dated 11/21/2012 | | X | | 1/15 | | | Day 2 |
| 400 | W. Sears Agent - Funk | Email from Sears to Jean-Pierre with cc to Dittman dated 08/08/2013 attaching DiBella document dated 03/29/2013 and Meadpoint Letter of Opinion dated 08/08/2013 | | X | | 1/15 | | | Day 2 |
| 401 | Agent - Funk | PRNewswire Press Release dated 8/27/2012 - FusionPharm Enters Major Expansion Phase | | | | | | | |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 68 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 402 | Agent - Funk | PRNewswire Press Release dated 9/10/2012 - Vertifresh Outlines Urban Farming Strategy | | | | | | | |
| 403 | Agent - Funk | PRNewswire Press Release dated 11/26/2012 - FusionPharm Signs Licensing Agreement for Flowering Containers | | | | | | | |
| 404 | Agent - Funk | PRNewswire Press Release dated 2/6/2013 - FusionPharm Completes Sale of PharmPod High Intensity Containers | | | | 1/25 | | | ADMITTED DAY 8 REFUSED - Day 4 |
| 405 | Agent - Funk | Accesswire Press Release dated 7/29/2013 - Meadpoint Completes First California Sale | | | | | | | |
| 406 | Agent - Funk | GoDaddy Return for William Sears account | | X | | 1/25 | | | Day 9 |
| 407 | Agent - Funk | GoDaddy return - advisor@flbusinesshelp.com | | X | | 1/25 | | | Day 9 |
| 408 | | | | | | | | | |
| 408a | Agent - Funk | Summary Chart - Sears Role Transition of Baby Bee Bright to FusionPharm | | X | | 1/25 | | | Day 9 |
| 408b | Agent - Funk | Summary Chart - Sears Role at FusionPharm | | X | | 1/25 | | | Day 9 |
| 408c | Agent - Funk | Summary Chart - Sears Role - FusionPharm Stock | | X | | 1/25 | | | Day 9 |
| 408d | Agent - Funk | Summary Chart - Sears Role - OTC Filings | | X | | 1/25 | | | Day 9 |
| 408e | Agent - Funk | Summary Chart - Sears Role - Payments to Jean-Pierre | | X | | 1/25 | | | Day 9 |
| 408f | Agent - Funk | Summary Chart - Sears Role - Bayside and Meadpoint Notes | | X | | 1/25 | | | Day 9 |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 69 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 408g | Agent - Funk | Summary Chart - Sears Role - FINRA | | X | | 1/25 | | | Day 9 |
| 409 | Agent - Funk | Summary Chart - Jean-Pierre's Role with FusionPharm | | | | | | | DEMONSTRATIVE ONLY - NOT to Jury |
| 410 | | | | | | | | | |
| 410a | | | | | | | | | |
| 410b | Agent-Funk | Colorado Secretary of State Records - Microcap Management | | X | | 1/25 | | | Day 9 |
| 410c | Agent-Funk | Nevada Secretary of State Records - Bayside Realty Holdings LLC | | X | | 1/25 | | | Day 9 |
| 410d | Agent-Funk | North Carolina Secretary of State Records - Bayside Realty Holdings LLC | | X | | 1/25 | | | Day 9 |
| 410e | Agent-Funk | Colorado Secretary of State Records - Bayside Realty Holdings LLC | | X | | 1/25 | | | Day 9 |
| 410f | Agent-Funk | Nevada Secretary of State Records - FusionPharm Inc | | X | | 1/25 | | | Day 9 |
| 410g | Agent-Funk | Colorado Secretary of State Records - FusionPharm Inc | | X | | 1/25 | | | Day 9 |
| 410h | Agent-Funk | Nevada Secretary of State Records - Meadpoint Venture Partners LLC | | X | | 1/25 | | | Day 9 |
| 410i | Agent-Funk | Colorado Secretary of State Records - Meadpoint Venture Partners LLC | | X | | 1/25 | | | Day 9 |
| 410j | Agent-Funk | Colorado Secretary of State Records - VF Management Inc | | X | | 1/25 | | | Day 9 |
| 410k | Agent-Funk | Colorado Secretary of State Records - LaDeeDa | | X | | 1/25 | | | Day 9 |
| 410l | | | | | | | | | |
| 410m | | | | | | | | | |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 70 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 410n | Agent-Funk | Florida Secretary of State Records - Prestige Media | | X | | 1/25 | | | Day 9 |
| 410o | Agent-Funk | Colorado Secretary of State Records - Salt Investments LLC | | X | | 1/25 | | | Day 9 |
| 410p | Agent Funk | Colorado Secretary of State Records - Vertifresh LLC | | X | | 1/25 | | | Day 9 |
| 411 | Agent - Funk | SEC Attestation of Non-existence of Registration for FusionPharm | | X | | 1/25 | | | Day 9 |
| 412 | | | | | | | | | |
| 413 | Agent - Funk | SEC Complaint RE Jean-Pierre - 12/06/2012 | | | | | | | |
| 414 | Agent - Funk | SEC Order Imposing Temporary Suspension RE Jean-Pierre - 05/20/2015 | | | | | | | |
| 415 | Agent - Funk | SEC Order of Suspension RE Jean-Pierre - 05/20/2015 | | | | | | | |
| 416 | | JP Morgan Chase - Jean-Pierre & Jean-Pierre, LLC<br>IOLTA Trust Account<br>Escrow Account<br>Acct Ending: 0238 | | | | | | | |
| 417 | | Bank of America - Florida IOTA Trust Account<br>Jean-Pierre & Jean-Pierre<br>Acct Ending: 4688 | | | | | | | |
| 418 | | Union Bank - Tod A. Ditommaso<br>Acct Ending: 3439 | | X | | | | | |
| 419 | | Union Bank - Tod A. Ditommaso<br>Law Office of Tod Ditommaso<br>Attorney Client Trust Account<br>Acct Ending: 3447 | | X | | | | | |

Case 1:17-cr-00008-WJM Document 207 Filed 01/30/19 Page 71 of 92

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 420 | | Wells Fargo Bank - Bayside Realty Holdings LLC Acct Ending: 2037 | | X | | | | | |
| 421 | | Wells Fargo Bank - Vertifresh LLC Acct Ending: 0233 | | X | | | | | |
| 422 | | Wells Fargo Bank - Fusion Pharm Inc Acct Ending: 0307 | | X | | | | | |
| 423 | | Wells Fargo Bank - Fusion Pharm Inc Acct Ending: 0090 | | X | | | | | |
| 424 | | Wells Fargo Bank - Meadpoint Venture Partners Acct Ending: 9917 | | X | | | | | |
| 425 | | Wells Fargo Bank - Microcap Management LLC Acct Ending: 0560 | | X | | | | | |
| 426 | | Wells Fargo Account for 10MM Holdings LLC ending in 1196 | | X | | | | | |
| 427 | | Pacific Stock Transfer Declaration | | X | | | | | |
| 428 | | Oppenheimer Declaration | | X | | | | | |
| 429 | | Scottsdale Declaration | | X | | 1/22 | | | Day 6 - Paper Copy Only |
| 430 | | | | | | | | | |
| 431 | | Oppenheimer - Monthly Statements for Microcap account ending in 9990 | | X | | | | | |
| 432 | | Scottsdale - Account Activity Reports for Meadpoint account ending in 7669 | | X | | 1/22 | | | Day 6 |
| 433 | | Scottsdale - Account Activity Reports for Microcap account ending in 7090 | | X | | 1/22 | | | Day 6 |

| EXHIBIT NO. /LTR | WITNESS | DESCRIPTION | ADM / AUTH | STIP | OFFER | RECD | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 434 | | Scottsdale - Account Activity Reports for Bayside account ending in 4611 | | X | | 1/22 | | | Day 6 |
| 435 | | Scottsdale - Wire Transfer request for Microcap account ending in 9990 | | X | | 1/22 | | | Day 6 |
| 436 | | Scottsdale - Wire Transfer request for Meadpoint account ending in 7669 | | X | | 1/22 | | | Day 6 |
| 437 | | Scottsdale - Wire Transfer request for Bayside account ending in 4611 | | X | | 1/22 | | | Day 6 |
| 438 | | Sears eTrade Account ending in #1511 | | X | | | | | |
| 439 | | DiTommaso's Verizon Wireless records | | X | | | | | |
| 440 | | Google Voice records associated with Account 305-929-3652 | | X | | | | | |
| 441 | | PSTC - Shareholders Lists for FusionPharm | | | | | | | |
| 442 | | | | | | | | | |
| 443 | DiTommaso | DiTommaso SEC transcript from testimony on 01/08/2015 | | | | | | | |
| 444 | Thel | Summary Chart - Security Law | | | | 1/28 | | | Day 10 |
| 445 | OTC | OTC Markets Website - Fusion Pharm, Inc. Overview | | | | | | | |
| 446 | | Mr. Sears' Plea Agreement | | | | | | | Admitted Day 3 and Ordered removed |
| 447 | | | | | | | | | Day 6 [ECF 187] |
| 448 | | | | | | | | | |
| 449 | | | | | | | | | |
| 450 | | | | | | | | | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 17-cr-008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE,**
a/k/a Marcello Dominguez de Guerra,

Defendant.

---

## FINAL JURY INSTRUCTIONS

---

## PART I: GENERAL INSTRUCTIONS & EVIDENTIARY CONSIDERATIONS

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 2 of 79

jury room, so you need not take notes.[1]

---

[1] Tenth Circuit Criminal Pattern Jury Instructions § 1.03.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 3 of 79

**JURORS' DUTIES**

In reaching your decision as to the facts, it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

You are not to be concerned with the wisdom of any rule of law stated by me. It would be a violation of your oath to base your verdict on anything other than the law as presented in these instructions and the facts as you find them. Counsel may properly refer to some of the governing rules of law in their arguments. If there is any difference between the law as stated by counsel or in the exhibits, and that stated by me in these instructions, my instructions prevail. The law contained in these instructions is the law that must govern your deliberations in this case.

Finally, it is your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.[2]

---

[2] Tenth Circuit Criminal Pattern Jury Instructions § 1.04.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 4 of 79

## EVIDENCE—DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath and the exhibits that I allowed into evidence.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.[3]

---

[3] Tenth Circuit Criminal Pattern Jury Instructions § 1.06.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved. By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.[4]

---

[4] Tenth Circuit Criminal Pattern Jury Instructions § 1.07.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 6 of 79

## INDICTMENT IS NOT EVIDENCE

The Defendant has been charged by the Government with violation of federal laws. The charges against the Defendant are contained in the second superseding indictment. The indictment is simply the description of the charges made by the Government against the Defendant; it is not evidence of anything. The Defendant pleaded not guilty to the charges and denies committing the offenses. He is presumed innocent and may not be found guilty by you unless all twelve of you unanimously find that the Government has proved his guilt beyond a reasonable doubt.[5]

[5] Fed. Jury Prac. and Instr. § 1.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 7 of 79

**SEPARATE CRIMES**

A separate crime is charged in each count of the indictment. You must separately consider the evidence on each count and return a separate verdict.

Your verdict as to any one count, whether guilty or not guilty, should not influence your verdict as to any other count.[6]

[6] Stipulated Instruction #12.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 8 of 79

## CAUTION—CONSIDER ONLY CRIMES CHARGED

You are here to decide whether the Government has proved beyond a reasonable doubt that the Defendant is guilty of the crimes charged. The Defendant is not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for any of the crimes charged. The fact that another person also may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crimes charged.[7]

[7] Stipulated Instruction #13.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 USDC Colorado Page 9 of 49

## BURDEN OF PROOF

The Government has the burden of proving the Defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. The Government has the burden of proving the Defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the Defendant not guilty.

Convinced WJM

Proof beyond a reasonable doubt is proof that leaves you firmly ~~convicted~~ of the Defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the Government's proof exclude any "reasonable doubt" concerning the Defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in this case. If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crimes charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.[8]

---

[8] Tenth Circuit Criminal Pattern Instructions § 1.05.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 10 of 97

## RECORDED CONVERSATIONS

During trial, you heard sound recordings of certain conversations. These conversations were legally recorded; they are a proper form of evidence and may be considered by you as you would any other evidence.

Sometimes these recordings contained captioning. Captions are not evidence. They were given to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the captions, you must rely on what you heard, not what you read. If you could not hear or understand certain parts of the recordings, you must ignore the captions as far as those parts are concerned.[9]

[9] Tenth Circuit Pattern Jury Instructions—Criminal § 1.40 (modified).

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 11 of 97

## SUMMARIES AND CHARTS

Exhibit 409 was shown to you as a demonstrative to help explain the evidence in this case. Its only purpose is to help explain the evidence. This summary is not evidence or proof of any facts.[10]

[10] Stipulated Instruction #8.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 12 of 97

**CREDIBILITY OF WITNESSES**

You are not required to accept all of the evidence as true or accurate. You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case.

You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions:

- Did the witness impress you as honest?
- Did the witness have any particular reason not to tell the truth?
- Did the witness have a personal interest in the outcome in this case?
- Did the witness have any relationship with either party?
- Did the witness seem to have a good memory?
- Did the witness clearly see or hear the things about which he/she testified?
- Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?
- Did the witness's testimony differ from the testimony of other witnesses?

When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

In reaching a conclusion on particular point, or ultimately in reaching a verdict in

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 13 of 37

this case, do not make any decisions simply because there were more witnesses on one side than on the other.[11]

[11] Tenth Circuit Criminal Pattern Jury Instructions § 1.08 (modified).

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 USDC Colorado Page 14 of 37

## CO-CONSPIRATOR—INFORMANT

A co-conspirator is someone who joined with another person in committing a crime, voluntarily and with common intent. The testimony of a co-conspirator may be received in evidence and considered by you, even though it is not supported by other evidence. You may decide how much weight it should have.

You are to keep in mind, however, that co-conspirator testimony should be received with caution and considered with great care. You should not convict a defendant based on the unsupported testimony of an alleged co-conspirator, unless you believe the unsupported testimony beyond a reasonable doubt.

An informant is someone who provides evidence against someone else for a personal reason or advantage. The testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence. You must examine and weigh an informant's testimony with greater care than the testimony or evidence acquired as a result of actions of an ordinary witness. You must determine whether the informant's testimony has been affected by self-interest, by an agreement he has with the Government, by his own interest in the outcome of the case, or by prejudice against a defendant.

You should not convict a defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony or evidence beyond a reasonable doubt.[12]

---

[12] Stipulated Instruction #17.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 15 of 97

ACCOMPLICE—CO-DEFENDANT—PLEA AGREEMENT

The Government has called as witnesses alleged accomplices, William Sears and Scott Dittman, who were identified as co-conspirators in the conspiracy alleged in the indictment. The Government has entered into plea agreements with them. Plea bargaining is lawful and proper, and the rules of the court expressly provide for it.

An alleged accomplice, including one who has entered into a plea agreement with the Government, is not prohibited from testifying. On the contrary, the testimony of an alleged accomplice may, by itself, support a guilty verdict. You should never convict a defendant upon the unsupported testimony of an alleged accomplice, unless you believe that testimony beyond a reasonable doubt. The act that an accomplice has entered a guilty plea to the offense charged is not evidence of the guilt of any other person.[13]

[13] Stipulated Instruction #18.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 16 of 97

## NON-TESTIFYING DEFENDANT

The Defendant did not testify and I instruct you that you cannot consider his decision not to testify as evidence of guilt. You must understand that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant does not take the witness stand and testify.[14]

[14] Tenth Circuit Pattern Jury Instructions—Criminal § 1.08.1.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 17 of 97

## IMPEACHMENT BY PRIOR CONVICTION

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a felony, meaning a crime punishable by imprisonment for a term of years, or of a crime of dishonesty. A prior conviction does not mean that a witness is not qualified to testify, but is merely one circumstance that you may consider in determining the credibility of the witness. You may decide how much weight to give any prior felony conviction or crime of dishonesty that was used to impeach a witness.[15]

Instruction Not Given
WJM
29 Jan 2019

[15] Tenth Circuit Pattern Jury Instructions—Criminal § 1.12.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 18 of 97

**SIMILAR ACTS**

You have heard evidence of other wrongful acts engaged in by the Defendant. You may consider that evidence only as it bears on the Defendant's intent, preparation, plan, or knowledge with respect to the crimes charged here, and for no other purpose. Of course, the fact that the Defendant may have previously committed an act similar to the one charged in this case does not mean that the Defendant necessarily committed the act charged in this case.[16]

[16] Tenth Circuit Pattern Jury Instructions—Criminal § 1.30.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 19 of 37

## EXPERT WITNESS

In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

During the trial you heard the testimony of Alex Scoufis, Steven Thel, and Erik Gerding, who were designated as expert witnesses. You are not required to accept their opinions. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.[17]

[17] Tenth Circuit Pattern Jury Instructions—Criminal § 1.17 (modified).

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 20 of 97

## TESTIFYING UNDER A PSEUDONYM

I allowed a Federal Bureau of Investigation Undercover Agent (FBI UCA-1) to testify under a pseudonym (fictitious name) at trial. You may not consider the use of pseudonym by FBI UCA-1 in your deliberations.[18]

[18] Stipulated Instruction #22.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 21 of 97

## NUMBER OF WITNESSES

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.[19]

---

[19] 3 Fed. Jury Prac. & Instr. § 104.54 (5th ed.).

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 22 of 97

## LAWYERS' OBJECTIONS

The lawyers for both sides objected to some of the things that were said or done during the trial. Do not hold that against either side. The lawyers have a duty to object whenever they think that something is not permitted by the rules of evidence. Those rules are designed to make sure that both sides receive a fair trial.

Do not interpret my rulings on their objections as any indication of how I think the case should be decided. My rulings were based on the rules of evidence, not on how I feel about the case.[20]

[20] Sixth Circuit Criminal Pattern Jury Instructions § 1.09.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 23 of 97

**PART II: ELEMENTS OF CRIMES CHARGED**

That concludes the part of my instructions explaining your duties and the general rules that apply in every criminal case. Now I will explain the elements of the crimes charged in this case.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 24 of 97

**COUNT 1: CONSPIRACY ELEMENTS**

The Defendant is charged in count 1 with a violation of Title 18, United States Code, Section 371. This statute makes it a crime to conspire to commit an offense against the United States or to defraud the United States or an agency of the United States, in this case the Securities and Exchange Commission.

As alleged in the indictment, the defendant is charged with conspiring with William J. Sears, Scott M. Dittman and with other persons to commit securities fraud, a violation of Rule 10b-5 of the Securities and Exchange Commission WJM and to defraud the United States Securities and Exchange Commission by impeding, impairing, defeating or obstructing its lawful functions.

To find the Defendant guilty under count 1, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:

*First*: the Defendant agreed with at least one other person to commit securities fraud, or to violate Rule 10-b(5), as described later in these instructions, or to defraud the SEC, by impeding, impairing, defeating or obstructing its lawful functions;

*Second*: at least one of the conspirators engaged in at least one overt act furthering any of the conspiracy's objectives;

*Third*: the Defendant knew the essential objective of the conspiracy;

*Fourth*: the Defendant knowingly and voluntarily participated;

*Fifth*: there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

**Conspiracy—Agreement**

A conspiracy is an agreement between two or more persons to accomplish an

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 25 of 97

unlawful purpose. It is a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member. Once a person becomes a member of a conspiracy, he is held legally responsible for the acts of the other members done in furtherance of the conspiracy, even though he was not present or aware that the acts were being committed. An agreement to violate the law can be inferred by the conduct of the parties, as well as the facts and circumstances of the case. Likewise, the jury may infer that a defendant is a knowing and voluntary participant in a conspiracy when he acts in furtherance of the conspiracy's objectives. But mere similarity of conduct among various persons, and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy.

The evidence in the case need not show that the members entered into any express or formal agreement. Nor is it necessary that the evidence show that the members stated between themselves what their object or purpose was to be, or the details thereof, or the means by which the object or purpose was to be accomplished. In order to establish proof that a conspiracy existed, the evidence must show beyond a reasonable doubt that the members in some way or manner, or through some contrivance, expressly or impliedly came to a mutual understanding to try to accomplish a common and unlawful plan.

**Overt Acts**

The Government must prove that at least one overt act was committed by at least one co-conspirator. An overt act is an act done in furtherance of the conspiracy. An overt act does not itself have to be unlawful. A lawful act may be an overt act of a

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 26 of 37

conspiracy if it was done for the purpose of carrying out the conspiracy. The Government is not required to prove that each of the ~~Defendants~~ conspirators personally did one of the overt acts. The Government need only prove that at least one of the co-conspirators, including uncharged co-conspirators, committed at least one overt act in furtherance of the conspiracy.

**Membership in Conspiracy**

If you conclude from the evidence beyond a reasonable doubt that a conspiracy as charged did exist, then you must next determine whether the Defendant was a member of that conspiracy, that is, whether the Defendant participated in the conspiracy with knowledge of its unlawful purposes and in furtherance of its unlawful objectives. In determining whether the Defendant was a member of the conspiracy, the jury must consider only his acts and statements. The Defendant cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed, and that he was one of its members. And mere association, standing alone, is inadequate. However, the jury may infer the presence of a conspiracy from the Defendant's conduct and other circumstantial evidence indicating coordination and concert of action.

**Interdependence**

To be a member of the conspiracy, the Defendant need not know all of the other members or all of the details of the conspiracy, nor the means by which the objects were to be accomplished. Each member of the conspiracy may perform separate and distinct acts. It is necessary, however, that for the Defendant to be a member of the conspiracy, the Government must prove beyond a reasonable doubt that he was aware of the common purpose and was a willing participant with the intent to advance the purposes of the conspiracy. In other words, while a defendant need not participate in all

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 27 of 97

the acts or statements of the other members of the conspiracy to be bound by them, the acts or statements must be interdependent so that each member of the conspiracy depends upon the acts and statements of the other conspirators to make the conspiracy succeed.

**Extent of Participation**

The extent of a defendant's participation in the conspiracy is not relevant to whether he is guilty or not guilty. A defendant may be convicted as a conspirator even though he plays a minor part in the conspiracy.

**Unanimity of Theory**

Your verdict must be unanimous. Count 1 accuses the Defendant and/or his co-conspirators of committing several overt acts in furtherance of the conspiracy. The Government does not have to prove all of these different acts for you to return a guilty verdict on count 1. But in order to return a guilty verdict, all twelve of you must agree upon which of the listed acts, if any, the Defendant and/or his co-conspirators committed *and* that at least the Defendant and/or his co-conspirators committed at least one of the acts listed.[21]

[21] Stipulated Instruction #25, as revised by ECF No. 200-1.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 28 of 97

## COUNTS 2–16 AND 24–28: WIRE FRAUD ELEMENTS

The Defendant is charged in counts 2–16 and 24–28 with wire fraud, in violation of Title 18, United States Code, Section 1343, or with aiding and abetting wire fraud, in violation of Title 18, United States Code, Section 2(a). Specifically, counts 2–16 address aiding and abetting wire fraud only, while counts 24–28 address both wire fraud itself and, alternatively, aiding and abetting wire fraud.

The law regarding wire fraud makes it a crime to use interstate wire communication facilities in carrying out a scheme to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or attempting to do so.

To find the Defendant guilty on any of counts 24–28, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:

*First*: the defendant devised or intended to devise a scheme to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, or attempting to do so;

*Second*: the Defendant acted with specific intent to defraud;

*Third*: the Defendant used interstate wire communications facilities, or caused another person to use interstate wire communications facilitates for the purpose of carrying out the scheme;

*Fourth*: the scheme employed false or fraudulent pretenses, representations, or promises that were material.

A “scheme to defraud” is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension. A “scheme to defraud” includes a

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 29 of 97

scheme to deprive another of money, property or the intangible right of honest services.

An "intent to defraud" means an intent to deceive or cheat someone.

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

What must be proved beyond a reasonable doubt is that the Defendant devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the indictment, and that the use of a wire was closely related to the scheme, in that the Defendant sent a wire or caused a wire to be transmitted in an attempt to execute or carry out the scheme. To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

**Aiding and Abetting Wire Fraud**

Title 18, United States Code, Section 2, provides: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." This law makes it a crime to intentionally help someone else commit a crime.

Under counts 2–16, the Defendant is charged only with aiding and abetting the commission of wire fraud.

Under counts 24–28, in addition to being charged with wire fraud itself, the Defendant is alternatively charged with aiding and abetting wire fraud.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 30 of 97

To find the Defendant guilty of aiding and abetting wire fraud under any of counts 2–16 or 24–28, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:

*First*: someone else committed wire fraud as charged in the indictment, under the elements described previously; and

*Second*: the Defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the Government must prove that the Defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The Defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 31 of 97

## DEFINITIONS OF WIRE FRAUD TERMS

The use of interstate wire or radio (wireless) communications are considered a use of an interstate wire communications facility.

Interstate communications are communications that cross state lines.

A "wire communication" includes telephone calls, electronic signals sent by wire (such as a fax or a financial wire), the use of the internet to send a message (such as an e-mail), and communicating with a website via the internet.

The phrase "transmits by means of wire, radio, or television communication in interstate commerce" means to send from one state to another by means of telephone or telegraph lines or by means of radio or television.

The phrase "transmits by means of wire, radio, or television communication in interstate commerce" includes a telephone conversation by a person in one state with a person in another state.

The use of a wire, radio, or television communication facility in interstate commerce is an essential element of the offense of wire fraud. But the Government need not prove that the Defendant or another person specifically decided that he would further, advance, or carry out the scheme or plan to defraud through wire, radio, or television communications. The Government must prove beyond a reasonable doubt, however, that a transmission by a wire, radio, or television communication facility in interstate commerce was, in fact, used in some manner to further, advance, or carry out the scheme to defraud. The Government must also prove that the use of the wire, radio, or television communication in interstate commerce would follow in the ordinary course of business or events or that the use of the wire, radio, or television communication

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 32 of 97

facility in interstate commerce by someone was reasonably foreseeable.

It is not necessary for the Government to prove that the information transmitted by means of wire, radio, or television communication in interstate commerce itself was false or fraudulent or contained any false or fraudulent pretense, representation, or promise, or contained any request for money or thing of value. The Government must prove beyond a reasonable doubt, however, that the use of the wire, radio, or television communication in interstate commerce furthered, or advanced, or carried out, in some way, the scheme or plan to defraud.[23]

---

[23] Stipulated Instruction #27 (modified).

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 33 of 97

## COUNTS 17–20: MAIL FRAUD ELEMENTS

The Defendant is charged in counts 17–20 with aiding and abetting mail fraud in violation of Title 18, United States Code, Section 1341 and Title 18, United States Code, Section 2(a).

The law regarding mail fraud makes it a crime to use the mails in carrying out a scheme to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, or attempting to do so. And, as I mentioned before, Title 18, United States Code, Section 2 makes it a crime to intentionally help someone else commit a crime.

To find the Defendant guilty of aiding and abetting mail fraud under any of counts 17–20, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:

*First*: someone else committed mail fraud as charged in the indictment; and

*Second*: the Defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. Just as before, this means that the Government must prove that the Defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

As I stated previously, the Defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 34 of 97

aiding and abetting.

The first element of aiding and abetting mail fraud requires the Government to prove that someone else committed mail fraud. To find as much, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:

*First*: someone else devised or intended to devise a scheme to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, or attempted to do so;

*Second*: that person acted with specific intent to defraud;

*Third*: that person mailed something, or caused another person to mail something through a commercial interstate carrier for the purpose of carrying out the scheme; and

fraudulent WJM

*Fourth*: the scheme employed false or pretenses, representations, or promises that were material.

A "scheme to defraud" is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension. A "scheme to defraud" includes a scheme to deprive another of money, property or the intangible right of honest services.

An "intent to defraud" means an intent to deceive or cheat someone.

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 35 of 97

What must be proved beyond a reasonable doubt is that the person devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the indictment, and that the use of the mails was closely related to the scheme, in that the person either mailed something or caused it to be mailed in an attempt to execute or carry out the scheme. To "cause" the mails to be used is to do an act with knowledge that the use of the mails will follow in the ordinary course of business or where such use can reasonably be foreseen even though the Defendant did not intend or request the mails to be used.[24]

---

[24] Stipulated Instruction #28, as revised by ECF No. 200-3 (modified).

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 36 of 97

## COUNTS 21–23: SECURITIES FRAUD ELEMENTS

Counts 21–23 charge the Defendant with committing securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, or aiding and abetting this offense, in violation of Title 18, United States Code, Section 2(a).

These laws make it a crime to willfully employ a device, scheme, or artifice to defraud, willfully make statements or material omissions, or willfully engage in a transaction or course of business which operated or would operate as a fraud and deceit on any person, in connection with the purchase or sale of any security.

To find the Defendant guilty of this crime under any of counts 21–23 you must be convinced that the Government has proved each of the following beyond a reasonable doubt:

*First*: the Defendant knowingly and willfully (a) employed any device, scheme, or artifice to defraud; or (b) made any untrue statement of a material fact; or (c) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (d) engaged in a transaction, practice, or course of business which operated or would operate as a fraud and deceit on any person;

*Second*: the Defendant did so in connection with the purchase or sale of securities;

*Third*: the Defendant made use of, or caused the use of, (a) any means or instrumentality of interstate commerce, or (b) of the mails, or (c) of any facility of any national securities exchange, in connection with the purchase or sale of securities; and

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 37 of 97

*Fourth*: the defendant acted with the intent to defraud.

Information is "material" if there is a substantial likelihood that a reasonable investor would have considered it important in deciding whether to buy, sell, or hold a security and at what price to buy, sell, or hold the security. In other words, there must be a substantial likelihood that a reasonable investor would have viewed the information at issue as significantly altering the total mix of information available. Materiality of information is judged as of the time the information is used to trade.

A person uses information in connection with trading a stock or options when that information is a factor, however small, in his or her decision to buy or sell the stock or option. You may find that a person's conduct was "in connection with the purchase or sale of securities" even if there was no evidence that other purchasers or sellers were harmed.

"Intent to defraud" in the context of the securities laws means to act knowingly and with the intent to deceive. For a person to have acted with the intent to defraud means that he must have known of the fraudulent nature of the scheme and acted with intent that it succeed.

The question of whether a person acted knowingly and with the intent to defraud is a question of fact for you to determine like any other fact question. This question involves one's state of mind.

The term "instrumentality of interstate commerce" means instruments, devices, and means of conducting trade, commerce, transportation, or communication among any two states. Instrumentality of interstate commerce includes the use purely within one state of a telephone or any other instrument used in the conduct of interstate

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 38 of 97

commerce.

The term "facility of a national securities exchange" includes any property or services maintained by Over the Counter Markets.

It is not necessary that the defendant be directly or personally involved in the use of an instrumentality of interstate commerce or use of any facility of a national security exchange. It is enough for you to find that the defendant was an active participant in a scheme and took steps or engaged in conduct that he knew or could reasonably foresee would naturally and probably result in the use of an instrumentality of interstate commerce or use of a facility of a national securities exchange. This includes placing a telephone call, e-mail, or an order to a brokerage firm to buy or sell securities.

It is not necessary that the communication over the instrumentality of interstate commerce concern any fraudulent material or anything criminal or objectionable. The matter communicated may be entirely innocent so long as it is in furtherance of a scheme to defraud or fraudulent conduct.

The use of an instrumentality of interstate commerce need not be central to the execution of the scheme and may even be incidental to it. All that is required is that the use of an instrument of interstate commerce bore some relationship to the object of the scheme or fraudulent conduct.

Each specific use of an instrumentality of interstate commerce in furtherance of a scheme to defraud constitutes a separate and distinct criminal offense.

**Aiding and Abetting Securities Fraud**

The Defendant is alternatively charged with aiding and abetting the commission of securities fraud, again under Title 18, United States Code, Section 2. To find the Defendant guilty of aiding and abetting securities fraud under any of counts 21–23, you

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 39 of 97

must be convinced that the Government has proved each of the following beyond a reasonable doubt:

*First*: someone else committed securities fraud as charged in the indictment; and

*Second*: the Defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. As before, this means that the Government must prove that the Defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

Again, the Defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.[25]

[25] Court's own formulation based on Government's Disputed Instruction #29, as revised by ECF No. 201-1; Defendant's Disputed Instruction #A; and 2B Fed. Jury Prac. & Instr. §§ 62:05 & 62:07 (6th ed.).

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 40 of 97

## DEFINITION OF "IN CONNECTION WITH THE PURCHASE OR SALE OF ANY SECURITY"

Counts 21–23 of the indictment allege certain types of fraudulent conduct "in connection with the purchase or sale of any security." The Government must prove beyond a reasonable doubt, therefore, that there were purchases or sales of securities and that the "fraud or deceit" described in the indictment had some relationship to or was connected with these sales or purchases.

The Government need not show, however, that the Defendant, or anyone associated with him bought or sold the securities in question.

It is sufficient to establish that there were purchases or sales or both and that the conduct was of the type that would cause reasonable investors to rely and that some did so rely.[26]

[26] Stipulated Instruction #30.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 41 of 97

**DEFINITION OF "THE USE OF ANY MEANS OR INSTRUMENTALITY OF INTERSTATE COMMERCE OR OF THE MAILS, OR OF ANY NATIONAL SECURITIES EXCHANGE"**

The term "interstate commerce" as used in these instructions means trade or commerce in securities or any transportation or communication relating to such trade or commerce among the several states.

This element of the crime charged may be established if the Government proves beyond a reasonable doubt that any means or instrumentality of interstate transportation or communication, including the mails, or the facilities of a national securities exchange were, in fact, used in the scheme or that such use was reasonably foreseeable.

In this regard, however, it is not necessary for the Government to prove that the Defendant personally used any means or instrumentality of interstate commerce or the mails, or used a national exchange, or that such use was contemplated or intended by anyone involved in any scheme. It is sufficient for the Government to prove that the Defendant set forces in motion which foreseeably resulted in such use.

The matter, material, or information mailed, transported, or communicated need not itself contain a fraudulent representation or request money, but must be a part of the overall scheme.[27]

[27] Stipulated Instruction #31.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 42 of 97

## DEFINITIONS UNDER SECURITIES LAWS

The securities laws relevant to this case have a number of definitions that you must know.

Security: The term "security" means any note, stock, security-based swap, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Restricted Security: The term restricted securities means securities acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering.

Sale or Sell: The term "sale" or "sell" shall include every contract of sale or disposition of a security or interest in a security, for value. The term "offer to sell", "offer for sale", or "offer" shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value.

Person: The term "person" means an individual, a corporation, a partnership, an association, a joint-stock company, a trust, or any unincorporated organization subdivision thereof.

Issuer: The term "issuer" means every person who issues or proposes to issue any security.

Underwriter: The term "underwriter" means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the

distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking. As used in this definition, the term "issuer" shall include, in addition to the definition of "issuer" above, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.[28]

---

[28] Stipulated Instruction #33, as revised by ECF No. 200-4.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 44 of 97

## RULE 144

Rule 144 under the Securities Act provides certain requirements for resellers to avoid being classified as an underwriter. These rules vary on whether or not an individual is classified as an "affiliate." Rule 144(a)(1) defines an "affiliate" to mean "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with the issuer." Rule 405 under the Securities Act defines "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise."

If a person is considered an affiliate, additional requirements must be met in order to sell securities since the securities will be termed "restricted securities" since the securities are acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering. The additional requirements include a holding period, limitation on amount of securities sold, manner of sale, and requirement for brokers' transactions to include a reasonable inquiry.[28]

---

[28] Government's Proposed Instruction #32 & Defendant's Proposed Instruction #B (modified).

**COUNT 29: MONEY LAUNDERING ELEMENTS**

The Defendant is charged in count 29 with money laundering, in violation of Title 18, United States Code, Section 1956(a)(3)(B), or aiding and abetting this offense, in violation of Title 18, United States Code, Section 2(a).

This law makes it a crime to knowingly use what is represented to be the proceeds of specified unlawful activity to conceal or disguise the nature, location, source, ownership or control of the property believed to be the proceeds of specified unlawful activity.

To find the Defendant guilty under count 29, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:

*First*: the Defendant conducted or attempted to conduct a financial transaction, or the Defendant aided and abetted others to conduct or attempt to conduct a financial transaction;

*Second*: the financial transaction involved property that was represented by a person acting at the direction of, or with the approval of, an agent of the United States, to be the proceeds of specified unlawful activity;

*Third*: the financial transaction was believed by the Defendant to be the proceeds of wire fraud or securities fraud; WJM

*Fourth*: the Defendant conducted, or aided and abetted others to conduct the financial transaction or the attempted financial transaction with the intent to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of wire fraud or securities fraud.

The term "conducts" includes initiating, concluding, or participating in initiating or

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 46 of 97

concluding, a transaction.

The term "financial transaction" means: (A) a transaction involving the use of a financial institution that is engaged in, or the activities of which affect, interstate commerce in any way or degree; or (B) a transaction that in any way or degree affects interstate commerce, and that involves: (1) the movement of funds by wire or other means; or (2) one or more monetary instruments; or (3) the transfer of title to any real property, vehicle, vessel, or aircraft.

The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through specified unlawful activity, including the gross receipts of such activity.

"Interstate commerce" means commerce or travel between the states, territories or possessions of the United States, including the District of Columbia. It is not necessary that the Defendant have intended or anticipated an effect on interstate commerce. All that is necessary is that the natural and probable consequence of the acts the Defendant took would be to affect interstate commerce.

**Aiding and Abetting Money Laundering**

The Defendant is alternatively charged with aiding and abetting the commission of money laundering under the same statute mentioned previously, Title 18, United States Code, Section 2.

To find the Defendant guilty under count 29 of aiding and abetting money laundering, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:

*First*: someone else committed money laundering as charged in the indictment; and

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 47 of 97

*Second*: the Defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. Once more, this means that the Government must prove that the Defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help that person.

The Defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.[30]

---

[30] Stipulated Instruction #34.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 48 of 97

**KNOWINGLY**

When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident.

Although knowledge on the part of the Defendant cannot be established merely by demonstrating that the Defendant was negligent, careless, or foolish, knowledge can be inferred if the Defendant deliberately blinded himself to the existence of a fact.

Knowledge can be inferred if the Defendant was aware of a high probability of the existence of the fact in question, unless the Defendant did not actually believe the fact in question.[31]

---

[31] Stipulated Instruction #23.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 49 of 97

## PROOF OF KNOWLEDGE OR INTENT

The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done or omitted by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

No matter what you infer, you must remember that the burden is always on the Government to prove the elements of the offense charged beyond a reasonable doubt.[32]

[32] Stipulated Instruction #24.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 50 of 97

## CAUTION—PUNISHMENT

If you find the Defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdicts.[33]

[33] Stipulated Instruction #35.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 51 of 97

## PART III: DELIBERATION AND VERDICT FORM

That concludes the part of my instructions explaining the law that applies in this case. Now let me finish up by explaining some things about your deliberations in the jury room and your possible verdicts.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 52 of 97

## DUTY TO DELIBERATE

After the parties' closing statements, the bailiff will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations.

To reach a verdict, whether not guilty or guilty on any particular count, all of you must agree. Your verdict must be unanimous. Your deliberations will be secret. You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

The Court has prepared a Verdict Form for your convenience. It reads as follows:

**[Explain the Verdict Form]**

After you have deliberated and consulted with each other, the foreperson will

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 53 of 97

write the unanimous answer of the jury in response to each question on the Verdict Form.

Only one copy of this Verdict Form will be provided to you. If you make an error on the Form, please tell the bailiff. The bailiff will destroy the erroneous form and a blank form will be provided.[34]

[34] Tenth Circuit Pattern Jury Instructions—Criminal § 1.23 (2011) (modified).

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 54 of 97

## COMMUNICATION WITH THE COURT

If you want to communicate with me at any time during your deliberations, please write down your message or question and give it to the bailiff, who will bring it to my attention. I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally. I caution you, however, that with any message or question you might send, you should not tell me any details of your deliberations or indicate how many of you are voting in a particular way on any issue.

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial was meant to suggest to you what I think your decision should be. That is your exclusive responsibility.[25]

[25] Tenth Circuit Pattern Jury Instructions—Criminal § 1.44.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 55 of 97

## PART IV: THE INDICTMENT

The portions of the indictment that you will need to assist your deliberations are reproduced below for your convenience.

You will note that the indictment charges that crimes were committed on or about specified dates. The Government must prove beyond a reasonable doubt that the Defendant committed the crime reasonably near the specified date.[35]

Some counts of the indictment may accuse a defendant of violating the same statute in more than one way. In other words, the indictment may allege that the statute in question was violated by various acts which are in the indictment joined by the conjunctive "and," while the statute and the elements of the offense are stated in the disjunctive, using the word "or." In these instances, it is sufficient for a finding of guilt if the evidence established beyond a reasonable doubt the violation of the statute by any one of the acts charged. In order for you to return a guilty verdict, however, all twelve of you must agree that the same act has been proven.[36]

Remember, the indictment is not evidence. You may not rely on anything said in the indictment to find the Defendant guilty on any charge, and you must not let the indictment influence your weighing of the evidence. You are receiving the indictment simply to help you understand what you are deliberating about when you consider each count.[37]

---

[35] Stipulated Instruction #10.

[36] Stipulated Instruction #11.

[37] Court's own formulation.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 56 of 97

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 17-cr-008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE,**
a/k/a Marcello Dominguez de Guerra,

Defendant.

---

**SECOND SUPERSEDING INDICTMENT**

---

The Grand Jury charges:

COUNT 1
(Conspiracy to Commit Securities Fraud)

1. Beginning as early as on or about March 25, 2011 and continuing at least through on or about May 15, 2014, the exact dates being unknown, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, did knowingly and willfully conspire, combine and agree with Coconspirators WJS and SMD, and with other persons both known and unknown, (a) to defraud the United States and one of its agencies, the United States Securities and Exchange Commission ("SEC"), by impeding, impairing, defeating and obstructing the lawful governmental functions of the SEC; a (b) to commit the following offenses against the United States: (i) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5 [Rule 10b-5].

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 USDC Colorado Page 57 of 97

## Background

2. FusionPharm, Inc. ("FusionPharm") was a corporation with its principal place of business in Denver, Colorado and later in Commerce City, Colorado. Although not registered with the SEC, the corporation's stock had been quoted on the OTC Link and had been publicly traded. In or about November 2010, Co-conspirator WJS, working with defendant JEAN-PIERRE, negotiated for control of the corporation, Baby Bee Bright Corporation, to be turned over to Co-conspirators WJS and SMD.

3. With this change in control and ownership, FusionPharm's principal business became the development, manufacture and sale of steel shipping containers retrofitted and refurbished for use as hydroponic growing pods, branded as "PharmPods," for indoor plant cultivation, primarily cannabis. Co-conspirator SMD was held out to be the founder, Chief Executive Officer and sole Director of FusionPharm but, in fact, operated FusionPharm, and pursued and developed its business, together with Co-conspirator WJS, and the two Co-conspirators together beneficially held and controlled the majority of shares of FusionPharm's common and preferred stock.

4. In disclosure documents filed in December 2011 and in March 2012 on the OTC Link website, defendant JEAN-PIERRE was described as FusionPharm's Corporate Secretary and, at times its Legal Counsel, as well as one of its paid employees. From its inception as FusionPharm through in or about August 2013, JEAN-PIERRE functioned as the company's de facto General Counsel and provided legal advice and services in connection with the company's corporate and securities matters.

5. In October 2011, the Financial Industry Regulatory Authority, Inc. ("FINRA") was in the process of conducting an investigation, among other things, of trading activity

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 58 of 97

involving the common stock of FusionPharm, including sales of that common stock that were being conducted by or on behalf of Microcap Management, LLC ("Microcap"), an entity formed by Co-conspirator WJS. The brokerage account records relating to these stock sales included Rule 144 Attorney Letters authored by defendant JEAN-PIERRE's niece, Relative A. On or about October 5, 2011, an investigator for FINRA telephonically contacted Co- conspirator SMD to set up a telephone interview to discuss FusionPharm and its securities trading activities. The FINRA investigator interviewed SMD about these and related subjects the following day. As a part of the manner and means of carrying out the conspiracy, Co-conspirator SMD, in that interview and in follow up communications with the FINRA investigator, represented, in words and substance, among other things, that Co- conspirator WJS' role at FusionPharm was limited to being a part-time salesman; that he was unaware of WJS having owned or sold any FusionPharm stock; that WJS no longer owned Microcap; and that he would undertake to produce written confirmation of this to FINRA.

Manner and Means of the Conspiracy

6. As a further part of the manner and means of carrying out the conspiracy, and attempting to do so, and in order to deflect FINRA's inquiry about FusionPharm stock sales by WJS and Microcap, Co-conspirators WJS and SMD and defendant JEAN-PIERRE undertook the following:

A. On or about October 19, 2011, defendant JEAN-PIERRE, at WJS' request, prepared a stock purchase agreement and incorporated assignment of interest, back dated to May 9, 2011, that purported to convey to another individual ("Individual A") as of the May 9th date, all ownership interest that conspirator WJS had had in Microcap, and to transfer to Individual A all right and title in all Microcap brokerage accounts for the purchase price of $10.00. Individual

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 59 of 97

A worked with Co-conspirator WJS to sell Co-conspirator WJS' FusionPharm stock.

B. A short while thereafter, Co-conspirator WJS signed and backdated these documents and caused Individual A to do the same.

C. On or about November 30, 2011, Defendant JEAN-PIERRE, acting in his capacity as FusionPharm's Corporate Secretary, then drafted a letter responding to the FINRA investigators' renewed requests for follow up written information about WJS, the Microcap stock sales and the change in ownership of Microcap. Defendant JEAN-PIERRE provided a draft of the letter for review and approval by SMD and WJS, and following their review and approval, defendant JEAN-PIERRE sent this letter to the FINRA investigator in the form of an email. In this email, defendant JEAN-PIERRE characterized WJS as "a prior owner of Microcap" and indicated, in words and substance, in material part, that the requests concerning WJS and Microcap constituted non-company information that SMD was not authorized to produce to FINRA; that FusionPharm was not, in any event, in possession of the requested written information concerning WJS, Microcap or its new owner; and that FINRA should direct further requests for this information to Microcap.

7. It was a further part of the manner and means of carrying out the conspiracy, in order to generate additional FusionPharm common stock that could immediately be sold, without registration and without limitation, into the public securities markets, that Co- conspirators WJS and SMD, together with defendant JEAN-PIERRE, did and caused the following to be done:

A. Over the course of June 2012 through in or about December 2012, with the knowledge, advice and approval of defendant JEAN-PIERRE, Co-conspirators WJS and SMD, working together with another individual (identified hereinafter as, "Co-conspirator A"), fabricated promissory notes and incorporated credit line agreements, in order to portray some of

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 60 of 97

the money that had previously been deposited into FusionPharm's bank accounts from the Microcap FusionPharm stock sales as loans from Bayside Realty Holdings, LLC ("Bayside"). Bayside was an entity controlled and operated by Co-conspirator WJS that was held out to be managed and owned by a blood relative family member (hereinafter "Family Member A"), and Meadpoint Venture Partners ("Meadpoint"), an entity set up and controlled by Co-conspirator WJS, that had been extended to FusionPharm over a year before.

B. Co-conspirators WJS and SMD and Co-Conspirator A fabricated documentation making it appear that FusionPharm had drawn down on the supposed credit lines established with Bayside and Meadpoint by specified amounts, and they assembled bank records to offer substantiation for these supposed earlier credit line drawdowns.

C. As part of an initial failed effort to sell one of these supposed debt obligations – the indebtedness to Bayside -- to a prospective outside investor, the Co-conspirators, working with defendant JEAN-PIERRE, portrayed the debt obligation as a straightforward promissory note and provided the prospective investor a due diligence package consisting of a version of the fabricated back-dated promissory note, together with the fabricated draw down requests and other, fabricated back-dated documents that defendant JEAN-PIERRE helped prepare depicting prior corporate actions.

D. Co-conspirators WJS and SMD and Co-Conspirator A, in the final iterations of these fabricated promissory notes and supporting documents, made it appear that the supposed debt evidenced by these notes could be converted in whole or in pieces, at the election of the noteholders, into shares of FusionPharm common stock at a specified conversion rate of one FusionPharm share for every penny of debt supposedly still owed on the notes by FusionPharm.

      Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 61 of 97

E. Co-conspirator SMD, on behalf of FusionPharm, and Co-conspirator WJS, on behalf of Meadpoint and acting for Family Member A on behalf of Bayside, executed the backdated promissory notes and documents.

F. Co-conspirators WJS then generated packets of documents that WJS caused to be presented to FusionPharm's stock transfer agent, over a series of months, in order to effectuate the conversion of portions of the supposed debt held by Bayside and Meadpoint into shares of FusionPharm common stock. The packets typically included the following:

- convertible promissory notes that Co-conspirators WJS and SMD had backdated;
- the backdated draw down requests that SMD had signed on behalf of FusionPharm;
- copies of bank account statements showing deposits to FusionPharm's accounts corresponding to the draw down requests;
- letters from Bayside and Meadpoint (depending on the entity exercising the conversion), for signature by Family Member A for Bayside and WJS for Meadpoint, falsely representing that the entities were not affiliates of FusionPharm;
- additional statements of non-affiliation for Bayside and Meadpoint (again depending on the entity exercising the conversion), reiterating that neither entity was a FusionPharm affiliate and additionally representing that neither Family Member A, in the case of Bayside, and WJS, in the case of Meadpoint, was an officer, director, control person or holder of more than ten percent of the securities of FusionPharm;
- a FusionPharm officer's certificate, signed by SMD, representing that neither Bayside nor Meadpoint (depending on the entity making the conversion) were affiliates of FusionPharm and were outsiders to the company and management, with no other method of control over the company, and that the convertible promissory notes that were the vehicles for the conversion were valid obligations of the company;
- letters signed by SMD reiterating that Bayside and Meadpoint were not affiliates of the company.

G. Defendant JEAN-PIERRE, using the foregoing submissions prepared for the FusionPharm stock transfer agent, as part of this process, would prepare Rule 144 Attorney

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 62 of 97

Opinion Letters opining that the shares of FusionPharm stock being converted from the supposed Bayside and Meadpoint debt could be issued as unrestricted, free-trading shares, without the need for a restrictive legend, because of Bayside's and Meadpoint's supposed non-affiliate status and because the one year holding and the other requirements for a registration exemption under SEC Rule 144 had been met.

H. Defendant JEAN-PIERRE would then transmit the Rule 144 Attorney Opinion Letters, together with some or all of the documentation that had been submitted to the FusionPharm stock transfer agent, to an attorney in California whom he had previously recruited to sign Rule 144 Attorney Opinion Letters and other opinion letters on JEAN- PIERRE's behalf generally (said attorney hereinafter, the "Co-conspirator B").

I. Co-conspirator B would then retype the Rule 144 Attorney Opinion Letters on his own letterhead and, upon signing them in his own name, would return the completed letters to defendant JEAN-PIERRE, who, in turn, would forward them to Co-conspirator WJS for submission with FusionPharm's stock transfer. Co-conspirator WJS would then present the completed Rule 144 Attorney Opinion Letters to the transfer agent, completing the process.

J. Through these false portrayals of Bayside and Meadpoint as non- affiliates of FusionPharm and the promissory notes to them as bona fide convertible indebtedness held for a requisite period of time, FusionPharm's stock transfer agent was induced into issuing certificates for hundreds of thousands of shares of FusionPharm common stock that could be immediately sold into the public securities markets without limitation.

8. It was a further part of the manner and means of carrying out the conspiracy that Co-conspirator WJS thereafter caused a substantial portion of the common shares issued to

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 63 of 97

Bayside and Meadpoint as a result of these supposed debt conversions to be deposited into brokerage accounts set up in the names of Bayside and Meadpoint and then caused these shares to be sold in the public securities markets. The Rule 144 Attorney Opinion Letters prepared by JEAN-PIERRE and retyped by Co-conspirator B would be presented to the brokerage firms, as necessary, in order to facilitate the deposit of these shares.

9. As a part of the manner and means of carrying out the conspiracy, the unrestricted commons shares issued to Bayside and Meadpoint as result of the supposed debt conversions would, alternatively, be sold in private transactions to other individuals, who would, in turn, sell the shares into the public securities market. Additionally, remaining portions of the supposed Bayside and Meadpoint convertible debt would be sold outright to other individuals who then converted the purchased debt into free trading, unrestricted common shares of FusionPharm stock and then publicly sold the shares. In each of these instances, the conversions would be facilitated by Rule 144 Attorney Opinion Letters prepared by defendant JEAN-PIERRE, retyped by Co-conspirator B and submitted by Co- conspirator WJS to the stock transfer agent.

10. As a further part of the manner and means of carrying out the conspiracy, defendant JEAN-PIERRE in consultation with Co-conspirators SMD, WJS, and Co- conspirator A, a business associate of WJS, would cause the financial statements and the quarterly and annual reports that were posted to OTC Link website to omit facts to include that Meadpoint, Vertifresh, LLC ("Vertifresh"), and FusionPharm were under the common control of Co-conspirators SMD and WJS, criminal convictions of beneficial owners of FusionPharm, related party transactions with immediate family members and significant beneficial owners of FusionPharm stock, and Co-conspirator WJS' involvement in the FusionPharm and his beneficial ownership of its stock. Vertifresh was a limited liability company jointly owned and controlled

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 64 of 97

by Co-conspirators WJS and SMD. In connection with the posting of these quarterly and annual reports to the OTC Link website, defendant JEAN-PIERRE would and did prepare a series of corresponding Current Information Letters that stated and indicated, among other things, that the letter's author had reviewed FusionPharm's current and past annual and quarterly OTC Link submissions and that in the author's opinion the information disclosed in these findings constituted "adequate current information," within the meaning of the federal securities law, concerning FusionPharm and its securities. JEAN-PIERRE would and did pass these letters along to Co-conspirator B for Co-conspirator B to retype onto his own letterhead. JEAN-PIERRE would then transmit the retyped Current Information Letters to Co-conspirators SMD and WJS, who would upload them onto the OTC Link website.

Overt Acts

11. In furtherance of the conspiracy and to effect the objects thereof, one or more overt acts were carried out by at least one co-conspirator in the State and District of Colorado and elsewhere, which overt acts included the following:

A. On or about September 1, 2010, defendant JEAN-PIERRE sent a Skype message to Co-conspirator WJS that acknowledges Co-conspirator WJS' making a deal with a company he just acquired and Co-conspirator WJS acknowledging his acquisition of the company to defendant JEAN-PIERRE.

B. On or about March 25, 2011, an Issuer Company-Related Action Notification form was filed with the FINRA providing notice of a name change to, and stock symbol change with respect to, FusionPharm, identifying SMD and Family Member A as the sole officers and directors of the company, and representing, among other things, that none of the company's officers, directors or parties related to the company were the subjects of pending,

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 65 of 97

adjudicated or settled civil or criminal action related to fraud or securities violations.

C. On or about July 8, 2011, defendant JEAN-PIERRE sent Co- conspirator WJS an email attaching a draft of a FusionPharm Information and Disclosure Statement to review.

D. On or about July 18, 2011, defendant JEAN-PIERRE sent an email to Co-conspirator SMD to set up a meeting between SMD and Co-conspirator B.

E. On or about October 5, 2011, Co-Conspirator WJS sent defendant JEAN-PIERRE a Skype message stating, "This is a new division of FINRA only enacted post Madoff" after a FINRA investigator reached out to Co-conspirator SMD on the same day.

F. On or about October 6, 2011, Co-conspirator SMD had a telephone conversation with a FINRA investigator during which he described Co-conspirator WJS as a part-time salesman for FusionPharm and stated that he was unaware that WJS owned or was selling FusionPharm stock.

G. On or about October 10, 2011, defendant JEAN-PIERRE traveled to Denver, Colorado to meet with Co-conspirators WJS and SMD.

H. On or about October 19, 2011, defendant JEAN-PIERRE sent Co-conspirator WJS an email, with the subject described as "Proposed Agreement re purchase of MicroCap," attaching a document dated May 9, 2011 and entitled, "Agreement for the Purchase of Ownership Interest."

I. On or about November 3, 2011, Co-conspirator SMD had another telephone conversation with the same FINRA investigator during which he stated that Co-conspirator WJS no longer owned Microcap or any FusionPharm stock.

J. On or about November 7, 2011, Co-conspirator WJS sent defendant

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 66 of 97

JEAN-PIERRE a Skype message stating, "In addition please call scott on skype as to the Finra guy".

K. On or about November 30, 2011, defendant JEAN-PIERRE emailed the FINRA investigator a written response to the investigator's requests for further information about Microcap, WJS and the purported change in ownership of Microcap.

L. Sometime around May, 2012, Coconspirator WJS and Conspirator A met with defendant JEAN-PIERRE in Florida to discuss the financing of FusionPharm.

M. On or about June 20, 2012, Conspirator A emailed Co-conspirators WJS and SMD and defendant JEAN-PIERRE a proposed due diligence package for a prospective FusionPharm debt purchaser that included nonconvertible versions of purported promissory notes held by Bayside and Meadpoint.

N. On or about November 26, 2012, Co-Conspirator A sent an email to Co-conspirator WJS attaching drafts of convertible promissory notes for Bayside and Meadpoint and advising that the "Notes work with the existing draw down requests."

O. On or about December 12, 2012, Co-conspirator WJS sent an email to a representative of FusionPharm's stock transfer agent transmitting a convertible promissory note in favor of Bayside, notifying the transfer agent that "Bayside has chosen to exercise its option to convert into shares [sic]," and that "Bayside [was] a family members [sic] company and I am assisting them [sic] as I am familiar with all parties."

P. On or about December 27, 2012, Co-Conspirator A sent Co-conspirator SMD an email stating, "We are in need of a letter which confirms the end of the drawdowns under the Bayside promissory note," and advising that Co-Conspirator A had drafted such a letter for SMD's signature.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 USDC Colorado Page 67 of 97

Q. On or about January 7, 2013, Co-conspirator WJS sent an email to a representative of FusionPharm's stock transfer agent, with subject identified as "Bayside Note FSPM," transmitting a Rule 144 Attorney Opinion Letter prepared by defendant JEAN- PIERRE and signed by Co-conspirator B, FusionPharm bank account statements "which reflect funding" and a "[c]losing letter that closed the note."

R. On or about the dates set forth below, the following written submissions for FusionPharm were posted to OTC Link's website portal:

| Overt Act | Date | Document |
|---|---|---|
| R.1 | 7/21/11 | FusionPharm Information and Disclosure Statement for the period ended June 30, 2011 (posted as "Initial Company Information and Disclosure Statement) |
| R.2 | 7/22/11 | Current Information Letter |
| R.3 | 12/29/11 | FusionPharm Information and Disclosure Statement for the period ended September 30, 2011 |
| R.4 | 12/30/11 | Current Information Letter |
| R.5 | 3/31/12 | FusionPharm Annual Information and Disclosure Statement for the period ended December 31, 2011 |
| R.6 | 4/10/12 | Current Information Letter |
| R.7 | 6/12/12 | FusionPharm Quarterly Report for the period ended March 31, 2012 (revised) |
| R.8 | 6/14/12 | Current Information Letter |

S. The wire transmissions described and set forth in Counts 2 through 16 of this Second Superseding Indictment are incorporated herein by reference and re-alleged as individual overt acts done in furtherance of the conspiracy.

T. The mailings and deliveries described and set forth in Counts 17 through 20 of this Second Superseding Indictment are incorporated herein by reference and re-alleged as individual overt acts done in furtherance of the conspiracy.

U. The securities transactions described and set forth in Counts 21 through 23 of this Second Superseding Indictment are incorporated herein by reference and re-alleged as

individual overt acts done in furtherance of the conspiracy.

In violation of Title 18, United States Code, Section 371.

COUNTS 2 – 16
(Wire Fraud)

12. The allegations contained in paragraphs 2 through 11 of this Second Superseding Indictment are hereby re-alleged as if set out in full and incorporated by reference in these counts of the Second Superseding Indictment.

13. At all times material to these counts, OTC Link required attorneys who wished to post Current Information Letters on its website to complete an Attorney Letter Agreement with respect to each company for which the attorney undertook to prepare such letters. The Attorney Letter Agreement required the attorney, among other things, to comply with certain prescribed written guidelines in preparing the Current Information Letters. These guidelines included the requirement that, if the letters relied on the work of another attorney, that counsel be identified and that counsel's own letters accompany the Current Information Letters. These guidelines also included the requirement that the authoring attorney state, to the best of counsel's knowledge, whether the company, and its shareholders owning more than five percent of the company's securities, or counsel him or herself, were under federal or state regulatory investigation for any violation of federal or states securities laws.

14. On or about December 6, 2012, the SEC commenced a federal civil enforcement action in the Southern District of New York alleging that defendant JEAN-PIERRE had committed various federal securities violations in connection with misappropriating Jean-Pierre Relative A's identity and, without her knowledge, preparing a series of Current Information Letters, Rule 144 Attorney Opinion Letters, and similar securities opinion letters in her name and forging her signature on these letters (Case No. 12- cv-8886).

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 69 of 97

15. From at least in or about March 2011 and continuing at least through in or about August 2013, the exact dates being unknown to the Grand Jury, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, together with, and aiding and abetting, others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud the SEC, FusionPharm's stock transfer agent, OTC Link, and individuals and entities who invested in FusionPharm and its securities in private transactions and were involved in the public trading of its common stock.

16. It was a further part of the scheme and artifice to defraud that defendant JEAN-PIERRE misrepresented, and assisted in the misrepresentation of, Microcap, Bayside and Meadpoint, and falsely portrayed these entities as non-affiliates of FusionPharm in Rule 144 Attorney Opinion Letters and related documents that were submitted to FusionPharm's stock transfer agent, in connection with efforts to convert supposed debt obligations to unrestricted shares of FusionPharm common stock, and in connection with efforts to deposit unrestricted common shares held in the names of these entities into brokerage accounts.

17. As a further part of the scheme and artifice to defraud, defendant JEAN- PIERRE prepared, assisted in the preparation of and reviewed and approved quarterly and annual disclosure documents and financial statements and incorporated notes posted to OTC Link's website that, among other things, concealed the role of WJS in the business of FusionPharm; his status as a de facto officer of FusionPharm and his joint control with SMD of its business affairs; and his beneficial ownership of preferred and common shareholdings in FusionPharm; and that concealed and obfuscated related party transactions between FusionPharm, Meadpoint and Vertifresh that were claimed as the basis for FusionPharm's reported revenues.

18. It was a further part of the scheme to defraud that defendant JEAN-PIERRE

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 70 of 97

prepared Current Information Letters that falsely represented that the quarterly and annual disclosure documents and financial statements and incorporated notes uploaded to OTC Link's website on behalf of FusionPharm constituted adequate current information about FusionPharm and its securities within the meaning of applicable federal securities laws.

19. It was a further part of the scheme to defraud that defendant JEAN-PIERRE would prepare these letters and the Rule 144 Attorney Opinion Letters for Co-conspirator B to sign and to represent as his own work product, and to serve as a primary conduit with Co-conspirator B for the information supporting the contents of these letters and the opinions conveyed in them. The letters themselves would fail to disclose defendant JEAN-PIERRE's role and involvement in the preparation of the letters and, after December 2012, the fact that he was the subject of a federal civil law enforcement action alleging wrongdoing with respect to the same type of attorney opinion letters.

Wire Transmissions in Execution of the Scheme

20. On or about the dates enumerated as to each count below, in the State and District of Colorado, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by false and fraudulent pretenses, representations and promises, and attempting to do so, the defendant, GUY M. JEAN- PIERRE, a/k/a Marcelo Dominguez de Guerra, did knowingly transmit and cause to be transmitted in interstate commerce, and did aid and abet others to cause to be transmitted, from or to a place within the State of Colorado to or from the places outside of Colorado, by means of wire communications, certain writings, signals and sounds, representing and constituting the following:

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 71 of 97

**The Uploads of FusionPharm Quarterly and Annual Reports to OTC Link.**

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| 2 | 8/14/12 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Quarterly Report for the period ended June 30, 2012 |
| 3 | 11/15/12 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Quarterly Report for the period ended September 30, 2012 |
| 4 | 3/6/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Annual Information and Disclosure Statement for the period ended December 31, 2012 |
| 5 | 7/5/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Quarterly Report for the period ended March 31, 2013 |
| 6 | 8/20/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Quarterly Report for the period ended June 30, 2013 |
| 7 | 8/20/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Supplemental Information - OTC Pink Basic Disclosure Guidelines Questionnaire |

**The Uploads of FusionPharm Current Information Letters to OTC Link.**

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| 8 | 8/16/12 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Current Information Letter |
| 9 | 3/11/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Current Information Letter |
| 10 | 7/5/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Current Information Letter |
| 11 | 8/23/13 | Electronic transmission to OTC Link website portal www.otciq.com of FusionPharm Current Information Letter |

**The Submission FusionPharm Rule 144 Attorney Opinion Letters to Pacific Stock Transfer Co. ("PSTC").**

| **COUNT** | **DATE** | **WIRE TRANSMISSION** |
|---|---|---|
| 12 | 12/13/13 | Email from WJS to PSTC attaching Rule 144 Attorney Opinion Letter re: issuance of 140,000 common shares of FusionPharm common stock to Bayside |
| 13 | 3/7/13 | Email from WJS to PSTC attaching five Rule 144 Attorney Opinion Letter re: issuance of common shares of FusionPharm common stock to Bayside for five specified investors |
| 14 | 4/11/13 | Email from WJS to PSTC attaching Rule 144 Attorney Opinion Letter re: issuance of 475,000 common shares of FusionPharm common stock to Meadpoint |
| 15 | 8/19/13 | Email from WJS to Scottsdale attaching Rule 144 Attorney Opinion Letter re: issuance of 500,000 common shares of FusionPharm common stock to Meadpoint |
| 16 | 8/30/13 | Email from WJS to PSTC attaching Rule 144 Attorney Opinion Letter re: issuance of 1,500,000 common shares of FusionPharm common stock to Meadpoint to three individuals, each to be allocated 500,000 shares a piece |

In violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS 17 – 20
(Mail Fraud)

21. The allegations contained in paragraphs 2 through 11 of this Second Superseding Indictment are hereby re-alleged as if set out in full and incorporated by reference in these counts of the Second Superseding Indictment.

22. On or about the dates enumerated as to each count below, in the State and District of Colorado, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money and property by means of false and fraudulent material pretenses and representations, and attempting to do so, the defendant, GUY M. JEAN- PIERRE, a/k/a Marcelo Dominguez de Guerra, did knowingly cause, and aid and abet others to cause, the following matters and things to be sent and delivered by a commercial interstate carrier,

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 USDC Colorado Page 73 of 97

according to the direction thereon:

| COUNT | DATE | MAIL MATTER |
|---|---|---|
| 17 | 7/25/12 | Federal Express Envelope, Tracking No. 800575942347, addressed to PSTC in Las Vegas, Nevada, containing FusionPharm Stock Cert. 7385 for 40,000 shares in the name of individual shareholder T.A., together with a stock power, a Rule 144 Attorney Opinion Letter, an officer's certificate, stock purchase agreement, debt settlement agreement, and instruction letters from Microcap and T.A. |
| 18 | 8/1/12 | Federal Express Envelope, Tracking No. 798688446223, addressed to WJS in Colorado, containing FusionPharm Stock Cert. 11176 issued to Microcap for 40,000 shares |
| 19 | 1/18/13 | Federal Express Envelope, Tracking No. 794557022916, addressed to WJS in Colorado, containing FusionPharm Stock Certificate 11208 issued to Bayside for 140,000 shares |
| 20 | 8/15/13 | Federal Express envelope, Tracking No. 796476186341, addressed to WJS in Colorado, containing FusionPharm Stock Cert. 11227 issued to Meadpoint for 500,000 shares |

In violation of Title 18, United States Code, Sections 1341 and 2.

COUNTS 21 – 23
(Securities Fraud)

23. The allegations contained in paragraphs 2 through 11 of this Second Superseding Indictment are hereby re-alleged as if set out in full and incorporated by reference in these counts of the Second Superseding Indictment.

24. From at least in or about April 2011 and continuing until at least in or about August 2013, the exact dates being unknown to the Grand Jury, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, with others known and unknown to the Grand Jury, willfully and knowingly, by the use of means and instrumentalities of interstate commerce, and the mails, did aid, abet, counsel, induce, and cause others to, directly and indirectly use and employ manipulative and deceptive

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 74 of 97

devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon other persons and entities, all in connection with the purchase and sale of FusionPharm common stock.

25. On or about the dates set forth below, as to each of the enumerated Counts, in the State and District of Colorado, and elsewhere, by use of the means or instrumentalities of interstate commerce, and by use of a national securities exchange, and in furtherance of this scheme to defraud and course of business, the defendant, GUY M. JEAN-PIERRE, did aid and abet, and counsel and induce the following securities transactions to be executed in brokerage accounts held in the names of Microcap, Bayside and Meadpoint:

| **Count** | **Approx. Date** | **Securities Transaction** |
|---|---|---|
| 21 | 10/18/12 | Sale of 5,036 shares of FusionPharm common stock held in a brokerage account in the name of Microcap at Scottsdale Capital Advisors |
| 22 | 2/4/13 | Sale of 2,085 shares of FusionPharm common stock held in a brokerage account in the name of Bayside at Scottsdale Capital Advisors |
| 23 | 5/14/13 | Sale of 21,676 shares of FusionPharm common stock held in a brokerage account in the name of Meadpoint at Scottsdale Capital Advisors |

In violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5 [Rule 10b-5]; and Title 18, United States Code, Section 2.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 75 of 97

COUNTS 24 – 28
(Wire Fraud)

26. From on or about February 26, 2016 and continuing until on or about April 29, 2016, the exact dates being unknown to the Grand Jury, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, devised, and intended to devise, a scheme and artifice to defraud the SEC, OTC Link, and individuals and entities involved in the purchase and sale of securities of microcap companies in the public, over-the-counter securities markets, including, without limitation, stock transfer agents and securities brokerage firms.

a. As part of the scheme and intended scheme that when presented with an opportunity to engage in securities fraud by one of the coconspirators named in Count 1, above, who was then acting as an undercover operative (CW) of the Federal Bureau of Investigation, the defendant accepted the opportunity to assist in the transformation of Vertifresh into a company with publicly traded securities through the acquisition of, and merger with, a dormant publicly traded microcap company which was represented to the defendant as owned and operated by an undercover FBI agent (FBI UCA).

b. As part of the scheme and intended scheme, defendant JEAN-PIERRE, in collaboration with the CW, devised and assisted in devising a plan to secure free trading shares in the contemplated publicly traded company that involved the preparation of a backdated purported promissory note, convertible at the option of the holder, into common stock. The plan entailed portraying money that the CW had supposedly received in the past on behalf of Vertifresh as loan funds from the FBI UCA that would be evidenced by the purported debt instrument. It further involved describing and depicting the FBI UCA and CW as consultants to the newly constituted company, so as to provide a cover and explanation for their involvement in

the business without betraying their status as control persons and affiliates of the company. The plan further contemplated ultimately presenting a finalized convertible promissory note, together with supporting documentation, including a Rule 144 Attorney Opinion Letter that defendant JEAN-PIERRE would undertake to procure from an amenable attorney.

27. On or about the dates enumerated as to each count below, in the State and District of Colorado, and elsewhere, for the purpose of executing the aforesaid scheme and intended scheme and artifice to defraud, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, did knowingly transmit and cause to be transmitted in interstate and foreign commerce from a place outside the United States to a place within the State of Colorado, by means of wire communications, certain writings, signals and sounds, representing and constituting the following:

| **COUNT** | **DATE** | **WIRE TRANSMISSION** |
|---|---|---|
| 24 | 3/30/16 | Email from JEAN-PIERRE to the CW attaching a document entitled CMC/Vertifresh Consulting Agreement |
| 25 | 4/1/16 | Email from JEAN-PIERRE to the CW attaching a document entitled Convertible Promissory Note, dated February 28, 2015 |
| 26 | 4/23/16 | Email from JEAN-PIERRE to the CW attaching a document entitled Convertible Promissory Note, dated April 21, 2015, and a document entitled Non-Affiliation Letter |
| 27 | 4/23/16 | Email from JEAN-PIERRE to the CW attaching a document entitled Purchase And Assignment Agreement |
| 28 | 4/24/16 | Email from JEAN-PIERRE to the CW attaching a document identified by file name "Form of Debt Conversion opinion.docx |

All in violation of Title 18, United States Code, Sections 1343 and 2.

Case 1:17-cr-00008-WJM Document 208 Filed 01/30/19 Page 77 of 97

<u>COUNT 29</u>
(Money Laundering)

28. The allegations contained in paragraphs 2 through 11 and 26 through 27 of this Second Superseding Indictment are hereby re-alleged as if set out in full and incorporated by reference in this count of the Second Superseding Indictment.

29. From on or about February 26, 2016 and continuing through on or about April 29, 2016, in the State and District of Colorado, and elsewhere, the defendant, GUY M. JEAN-PIERRE, a/k/a Marcelo Dominguez de Guerra, with the intent to conceal and disguise the location, source, ownership and control, of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce involving property represented by a person at the direction of a federal official authorized to investigate violations of Title 18, United States Code, Section 1956, to be proceeds of specified unlawful activity, to wit: securities fraud, as charged in counts 22-23, in violation of Title 15 United States Code, Sections 78j(b) and 78ff(a), and 17 C.F.R. Section 240.10b-5, and wire fraud, as charged in counts 12, 14-15, in violation of Title 18, United States Code, Section 1343, which financial transaction involved the mailing, receipt and deposit of a cashier's check drawn on First Bank in the amount of $5,000 and made payable to Guy M. Jean-Pierre and represented to be the proceeds of the sale of common stock of FusionPharm, Inc.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2.

Case 1:17-cr-00008-WJM Document 211 Filed 01/30/19 Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

**Case Number:** United States of America v. Guy M. Jean-Pierre
17-cr-00008-WJM

**NOTE TO COURT**

X We the jury have reached a verdict.

_____ We the jury have a question.

3:13 PM
Date & Time

Juror Name Redacted
Foreperson (signature)

**Answer from the Court**

Date & Time

Judge William J. Martínez

Case 1:17-cr-00008-WJM Document 213 Filed 01/30/19 USDC Colorado Page 1 of 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 17-cr-008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE,**
a/k/a Marcello Dominguez de Guerra,

Defendant.

---

## VERDICT FORM

---

We, the jury, upon our oaths, unanimously find the defendant, Guy M. Jean-Pierre,

| | | |
|---|---|---|
| As to Conspiracy as charged in Count 1 of the Second Superseding Indictment: | ____<br>X | Not Guilty<br>Guilty |
| As to Wire Fraud as charged in Count 2 of the Second Superseding Indictment: | ____<br>X | Not Guilty<br>Guilty |
| As to Wire Fraud as charged in Count 3 of the Second Superseding Indictment: | ____<br>X | Not Guilty<br>Guilty |
| As to Wire Fraud as charged in Count 4 of the Second Superseding Indictment: | ____<br>X | Not Guilty<br>Guilty |
| As to Wire Fraud as charged in Count 5 of the Second Superseding Indictment: | ____<br>X | Not Guilty<br>Guilty |
| As to Wire Fraud as charged in Count 6 of the Second Superseding Indictment: | ____<br>X | Not Guilty<br>Guilty |

| Count | Verdict |
|---|---|
| As to Wire Fraud as charged in Count 7 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |
| As to Wire Fraud as charged in Count 8 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |
| As to Wire Fraud as charged in Count 9 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |
| As to Wire Fraud as charged in Count 10 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |
| As to Wire Fraud as charged in Count 11 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |
| As to Wire Fraud as charged in Count 12 of the Second Superseding Indictment: | _X_ Not Guilty<br>____ Guilty |
| As to Wire Fraud as charged in Count 13 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |
| As to Wire Fraud as charged in Count 14 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |
| As to Wire Fraud as charged in Count 15 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |
| As to Wire Fraud as charged in Count 16 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |
| As to Mail Fraud as charged in Count 17 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |
| As to Mail Fraud as charged in Count 18 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |
| As to Mail Fraud as charged in Count 19 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |
| As to Mail Fraud as charged in Count 20 of the Second Superseding Indictment: | ____ Not Guilty<br>_X_ Guilty |

Case 1:17-cr-00008-WJM Document 218 Filed 01/30/19 Page 3 of 3

| | | |
|---|---|---|
| As to Securities Fraud as charged in Count 21 of the Second Superseding Indictment: | ___<br>_X_ | Not Guilty<br>Guilty |
| As to Securities Fraud as charged in Count 22 of the Second Superseding Indictment: | ___<br>_X_ | Not Guilty<br>Guilty |
| As to Securities Fraud as charged in Count 23 of the Second Superseding Indictment: | ___<br>_X_ | Not Guilty<br>Guilty |
| As to Wire Fraud as charged in Count 24 of the Second Superseding Indictment: | ___<br>_X_ | Not Guilty<br>Guilty |
| As to Wire Fraud as charged in Count 25 of the Second Superseding Indictment: | ___<br>_X_ | Not Guilty<br>Guilty |
| As to Wire Fraud as charged in Count 26 of the Second Superseding Indictment: | ___<br>_X_ | Not Guilty<br>Guilty |
| As to Wire Fraud as charged in Count 27 of the Second Superseding Indictment: | ___<br>_X_ | Not Guilty<br>Guilty |
| As to Wire Fraud as charged in Count 28 of the Second Superseding Indictment: | ___<br>_X_ | Not Guilty<br>Guilty |
| As to Money Laundering as charged in Count 29 of the Second Superseding Indictment: | ___<br>_X_ | Not Guilty<br>Guilty |

*The Foreperson must sign and date this Verdict Form, and then give a note to the Bailiff stating that you have reached a verdict, but do not give this Verdict Form to the Bailiff.*

1/30/19
DATE

Juror Name Redacted
FOREPERSON

3:13 PM
TIME

Case 1:17-cr-00008-WJM Document 215 Filed 01/30/19 USDC Colorado Page 1 of 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Date: January 30, 2019
Courtroom Deputy: Anna Frank
Court Reporter: Mary George

---

Criminal Action No. 17-cr-00008-WJM

Counsel:

UNITED STATES OF AMERICA,

Plaintiff,

Jeremy Sibert
Robert Brown

v.

GUY JEAN-PIERRE,

Defendant.

Thomas Goodreid
Clifford Barnard

---

**AMENDED COURTROOM MINUTES**

---

Jury Trial: Day Twelve

**9:03 a.m. Court in session.** Jury present.

Court's comments regarding closing arguments.

9:05 a.m. Government's closing argument by Mr. Sibert.

**9:57 a.m. Court in recess.**
**10:09 a.m. Court in session.** Jury present.

10:10 a.m. Defendant's closing argument by Mr. Barnard.

10:56 a.m. Government's closing rebuttal argument by Mr. Sibert.

Discussion held regarding the alternate juror.

Court addresses and releases alternate Juror 100345726.

**ORDERED:** Lunches are to be provided to the jury beginning January 30, 2019, and for the duration of deliberations.

Case 1:17-cr-00008-WJM Document 215 Filed 01/30/19 Page 2 of 2

11:24 a.m. Court Security Officer sworn.

11:25 a.m. Jury is escorted to the jury deliberation room by the bailiff to begin deliberations.

Discussion held regarding trial schedule. Should the jury's deliberation continue beyond today, proceedings will be held in courtroom 702.

**11:28 a.m. Court in recess.**
**2:24 p.m. Court in session.** Jury is not present.

Discussion held regarding question from the jury.

**2:31 p.m. Court in recess.**
**3:39 p.m. Court in session.** Jury is not present.

Probation officer Paige Meador present.

Court informs counsel that a note has been tendered to the Court indicating that the jury has reached a verdict.

3:41 p.m. Jury present.

Verdict tendered to the Court.

Court reads verdict and polls the jury.

Court's concluding remarks to the jury.

3:49 p.m. Jury is discharged.

Discussion held regarding sentencing.

**ORDERED:** Sentencing is set for July 10, 2019 at 9:30 a.m.

**ORDERED:** All outstanding motions denied as moot.

**3:55 p.m. Court in recess.** Trial concluded. Defendant continued on bond.

Total time in court: 2:36

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-00008-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

GUY JEAN-PIERRE

Defendant.

---

**GOVERNMENT'S POST TRIAL STATEMENT OF THE CASE**

---

The United States of America (the government), by Jeremy Sibert, Assistant United States Attorneys, submits this post trial statement.

During the course of defendant Jean-Pierre's twelve day trail the following information was put into evidence via witnesses' testimony or documents, not necessary in the order outlined below.

**Background**
**Personal Background of Jean-Pierre.**

Until in or about 2014, Guy M. Jean-Pierre was actively and overtly engaged in the practice of law in the United States, having at one point been licensed in the state of Florida.

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 2 of 20

Defendant Jean-Pierre was the managing member of Jean-Pierre and Jean-Pierre, a Boca Raton based law firm specializing in corporate transactional and securities law matters for small and medium-sized businesses. From 2004-2008, defendant Jean-Pierre was a managing member of Gold Coast Professional Services where he took a lead role in various securities related matters and corporate transactions such as mergers, corporate finance, acquisitions or divestitures. Defendant Jean-Pierre was a Senior Attorney for the Federal Deposit Insurance Corporation and was an associate with Skadden, Arps, Slate, Meagher & Flom. He received his law degree at Columbia University School of Law and his BA degree from Amherst College.

Jean-Pierre's small private practice in South Florida, focused on representing and providing legal services to penny stock publicly traded companies. A significant portion of his practice entailed preparing and issuing certain types of opinion letters on behalf of these companies.

One type of opinion letter that Jean-Pierre would prepare would be a "current information" letter that would be presented to OTC Markets Group, Inc. ("OTC Markets"), a company operating an internet based, electronic marketplace trading platform where the quotes for the stocks of these companies would be listed and trades in their stocks arranged among market makers in the stock. In these letters, Jean-Pierre would opine that there was adequate "current information" publicly available about these companies, a factor that OTC Markets would consider in classifying or grading the stock of these companies for investors on its website.[1]

[1] Without such a representation by a licensed attorney, OTC Markets would issue a warning on its website,

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 3 of 20

A second type of opinion letter that Jean-Pierre routinely prepared and issued in connection with his work for these penny stock companies was presented to their stock transfer agents. These letters opined that the stocks held by certain prospective shareholders seeking to sell their shares in the public markets need not be designated as "restricted" shares and could be publicly sold without registration with the United States Securities and Exchange Commission ("SEC") because the shareholder had satisfied certain regulatory requirements, under SEC Rule 144, 17 C.F.R. §240.144, to be afforded a "safe harbor" from registration. The basic "safe harbor" requirements that allowed unlimited stock sales included that the holder, and prospective seller, not be deemed an "affiliate" within the meaning of the regulation, typically someone who was an officer, director, large shareholder or a person involved in the control and management of the company. (These opinion letters are hereafter referred to as "Rule 144 attorney opinion letters.")

On or about April 21, 2010, OTC Markets banned Jean-Pierre from issuing opinion letters for submission to it, finding that the companies that were the subject of these letters were making incomplete and inconsistent disclosures and that Jean-Pierre was not performing the due diligence necessary to opine about the disclosures. Witness Liz Hesse testified in detail about defendant Jean-Pierre's ban. As a result of the ban, stock transfer agents would no longer accept opinion letters from Jean-Pierre as well. Pacific Stock Transfer Agent Ms. Claiborne testified

---

next to a red "Stop" sign symbol, advising investors that the particular company whose stock was being quoted may not be making material information about itself publicly available.
The attorney opinion about adequate current information also had bearing with a company's stock transfer agent, in connection with determining whether shares of the company that were not registered with the SEC could nonetheless be publicly traded based on meeting a "safe harbor" exemption from registration recognized under SEC Rule 144, 17 C.F.R. §240.144, the subject matter of the second type of opinion letter discussed below.

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 4 of 20

about the list of attorneys that were subjected to heightened review, to include defendant Jean-Pierre.

**The Historical Case Concerning Fusion Pharm.**

Since in or about December 2013, FBI-Denver, IRS-CID and USPIS, in conjunction with the United States Attorney's Office, and under the auspices of a federal grand jury in the District of Colorado, investigated whether certain federal criminal offenses, including securities fraud, wire fraud, and money laundering, have been committed in relation, *inter alia*, to the financial reporting and other disclosures made concerning Fusion Pharm from the company's inception, in late 2010, through in or about May 2014 and in relation to the sale of Fusion Pharm common stock to the investing public during this time frame. The primary targets of the investigation were the company's founders and co-partners, Scott Dittman, a former accountant, and his brother-in-law, William Sears, a career penny stock promoter who was convicted of felony securities fraud related offenses in the Southern District of New York in 2007 (Case No. 04-cr-00556). Both, Sears and Dittman, have plead guilty to conspiring to commit securities fraud before Judge Martinez. In addition, Sears plead guilty to filing a false tax return regarding Fusion Pharm.

Operating out of Denver, Colorado, Fusion Pharm, during these years endeavored to establish a business that would obtain and retrofit steel shipping containers so that they could be used to grow plants hydroponically. Fusion Pharm would then seek to resell these repurposed shipping containers, which Fusion Pharm called "pharm pods," to hydroponic growers. The pharm pods were, at times, marketed by Sears and Dittman as effective vehicles to get fresh produce, such as lettuce, quickly and efficiently to restaurants and local groceries in urban

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 USDC Colorado Page 5 of 20

markets. Over time, however, the pharm pods were primarily marketed to marijuana or cannabis entrepreneurs in Colorado and other states where the sale of marijuana was being legalized.

Evidence gathered in the investigation indicated that Sears and Dittman conspired, among other things, to conceal Sears' role and involvement in the management and operation of Fusion Pharm, as well as his beneficial ownership of a significant portion of its stock, from securities regulators and the investing public. They also pursued a scheme to fabricate revenues for Fusion Pharm, so that they could portray the company as enjoying progressive and consistent growth. The fraudulent revenue scheme entailed, among other things, booking as revenues funds that Sears was depositing into the company's accounts from the sale of Fusion Pharm stock he held in the name of two of his shell companies (Microcap Management and Bayside Realty) and portraying the funds either as proceeds that Fusion Pharm was receiving from the sale of pharm pods to Meadpoint Ventures, a sham pharm pod distributorship set up using another shell entity, or as licensing fees that Fusion Pharm was receiving from Vertifresh, LLC, yet another sham entity formed by Sears and portrayed to the public as a company that was undertaking to develop and exploit the Fusion Pharm "pharm pod technology" to grow and distribute fresh produce. Bayside Realty was supposedly owned by Sears' mother, Sandra Sears.

As part of the scheme, Sears and Dittman funneled Fusion Pharm shares to Meadpoint and Bayside Realty by falsely portraying the entities as lenders to Fusion Pharm who held promissory notes that were convertible, at the election of the lender, into Fusion Pharm common stock. Dittman and Sears, working with others, falsely depicted some of the stock sales proceeds that Sears was depositing into the company's accounts as loan funds and prepared backdated

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 6 of 20

promissory notes that reflected that this debt could be convertible into Fusion Pharm common stock. This fabricated paper work was presented to Fusion Pharm's transfer agent in connection with securing unrestricted Fusion Pharm common stock that Sears, in turn, deposited into brokerage accounts and then sold.

As a final part of the scheme, in order to lift restrictions on the Fusion Pharm stock that Sears was undertaking to sell through his various shell entities,[2] Dittman and Sears prepared and presented various documents to Fusion Pharm's transfer agent that falsely represented and depicted the entities as not being affiliates of Fusion Pharm, thereby concealing from the transfer agent Sears' role and involvement in the company and his connections to and control of the shell entities that were the nominal seller of the stock. These documents, together with Rule 144 attorney opinion letters, convinced the transfer agent to remove the restrictive legend on the Fusion Pharm shares that Sears and Dittman were undertaking to sell and allowed public sales of the stock to proceed without the securities first being registered with the SEC.

Through use of these machinations, Sears and Dittman were able to liquidate and realize in excess of $12 million in stock sales proceeds prior to a warranted search of Fusion Pharm's offices premises in May 2014, as a result of evidence gathered in the investigation to that date, and the suspension of public trading in Fusion Pharm's stock at that same time by the SEC. To date, agents working the Fusion Pharm investigation, together with the United States Attorney's

[2] The shell entities – Microcap Management, Bayside Realty, Meadpoint Ventures and Vertifresh, LLC – are hereinafter, at times, collectively referred to as the "Sears' entities."

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 7 of 20

Office, have been able to locate, seize and otherwise restrain approximately $8.9 million of these proceeds.

**Guy M. Jean-Pierre's Connection to Fusion Pharm and Role in the Scheme.**

Evidence gathered in the historical investigation to date reflected that Jean-Pierre had extensive involvement in a broad range of aspects of Fusion Pharm's development as a company and its operations and that he acted as a *de facto* general counsel to Fusion Pharm and Sears and Dittman, from its inception in late 2010 through in or about fall 2013. During this time, he provided legal advice and assistance to Sears, in particular, in connection with efforts to liquidate the Fusion Pharm shares held in the names of the various shell entities.

Jean-Pierre was introduced to Sears in or about 2009 and, prior to his involvement with Fusion Pharm, assisted Sears in his efforts to convert into free trading status shares of common stock that Sears would receive from various microcap companies as compensation for his promotional work for them. Jean-Pierre prepared the requisite Rule 144 attorney opinion letters to facilitate lifting the restrictions on these shares so that they could be publicly traded.

In about November 2010, Sears recruited Jean-Pierre to assist him and Dittman in connection with taking over the shell company, Baby Bee Bright, through which Fusion Pharm became a publicly traded company. Jean-Pierre prepared the requisite corporate documents and did other work to facilitate the transfer of control and ownership of the shell to Dittman. Emails introduced into evidence and other documents and witnesses reflected that Jean-Pierre assisted Fusion Pharm in various ways thereafter, including through the preparation of corporate governance records and records relating to the capital structure of the company. This evidence

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 8 of 20

showed that Jean-Pierre was involved in the review of private placement memoranda that was issued to prospective Fusion Pharm investors. Jean-Pierre was involved in reviewing financial statements and narratives and factual questionnaires about the company that were submitted to OTC Markets and posted on its website for the investing public to review. None of these disclosure materials indicated that Sears was part of the company, had an ownership interest in Fusion Pharm, or displayed his criminal conviction for securities fraud. None of these disclosure materials reflected that entities controlled by Sears and Dittman were involved in financing and sales transactions with the company. Finally, none of these materials indicated that Dittman and Sears were selling Fusion Pharm stock and using the proceeds as a basis for revenue recognition. Several witnesses testified about defendant Jean-Pierre's role regarding the OTC disclosures, including Sears, Dittman, Bodden, Kocinski, and DiTommaso.

Emails, witnesses, and other documents showed that Jean-Pierre was involved in the review of the backdated convertible notes that were used as a pretext to issue Fusion Pharm stock to Sears through Meadpoint Ventures and Bayside Realty. The convertible notes were first indicated on corporate records in 2013 and backdated to 2011. Cliff Bodden testified about the two trips that he and Sears made to Florida to discuss these notes with defendant Jean-Pierre in person. Jean-Pierre was aware that prior to the creation of these back dated notes, none of the notes prior to 2013 were convertible. Further, Jean-Pierre knew that Sears controlled Bayside and Meadpoint and that Sears was going to receive a very favorable convertible rate of one cent per one share of Fusion Pharm stock even though the price of the stock was above a dollar.

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 9 of 20

Evidence showed that both Bayside and Meadpoint paid Jean-Pierre for his legal work and several of those checks were signed by William Sears.

In addition to his review of the OTC disclosures and financials, defendant Jean-Pierre assisted Dittman in efforts to mislead the U.S. Financial Industry Regulatory Authority ("FINRA") in 2011 in connection with its inquiries into Fusion Pharm shareholdings that Sears maintained through Microcap. Jean-Pierre drafted a Rule 144 letter that stated Sears was not an affiliate of Fusion Pharm, knowing that Sears was an affiliate. This Rule 144 letter allowed Sears to remove the restricted legend off the stock certificates and trade Fusion Pharm shares from his Microcap brokerage accounts. Following his April 2010 OTC Markets ban, Jean-Pierre enlisted his niece, a newly minted attorney, to form a law partnership with him specializing in preparing these attorney letters but that, after getting copies of her signature and driver's license, he never engaged her to do any legal work. Instead, Jean-Pierre authored the letters in his niece's name and forged her signature to them. Jean-Pierre's fraudulent acts of signing his niece's name, allowed his Rule 144 letter that he wrote for Sears regarding Microcap's ownership of Fusion Pharm shares to go undetected with the transfer agents and brokerage firms. In addition, Jean-Pierre fraudulently drafted a backdated sale's agreement regarding Sears selling Microcap to a Richard Scholz for ten dollars in order to mislead FINRA's investigation. Jean-Pierre drafted this agreement to be effective as of May 2011 even though it was not discussed or drafted until October 2011. The evidence presented showed that Jean-Pierre knew that Sears was the owner of Microcap from 2011 through 2013, including two Rule 144 letters and

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 10 of 20

packages that Jean-Pierre sent DiTommaso for signature. Jean-Pierre was listed as the company's corporate secretary and "legal counsel" on

Fusion Pharm's written submissions to OTC Markets from July 2011 through August 2013, identified itself as having an outside counsel, Tod A. DiTomasso. Throughout this time, DiTomasso was identified as the author of "current information" letters submitted on Fusion Pharm's behalf to OTC Markets, the letters being signed by DiTomasso and on his letterhead. Further, Fusion Pharm's transfer agent's and brokerage records reflect that DiTomasso was the purported author of numerous Rule 144 attorney opinion letters that were submitted throughout this time in order to lift trading restrictions on Fusion Pharm stock sold by the Sears' entities, as well as restrictions on other stock sold in private transactions to Fusion Pharm investors. These letters too were on DiTomasso's letterhead and signed by him. DiTomasso, during testimony indicated that the Rule 144 attorney opinion letters and "current information opinion letters" that he signed were all prepared by Guy Jean-Pierre, who hired and paid him for the letters, and that he simply reviewed materials that Jean-Pierre provided to him in support of the opinion letters and copied the letters authored by Jean-Pierre onto his own letterhead. DiTomasso's main contact person within the Fusion Pharm chain was Guy Jean-Pierre. Defendant Jean-Pierre would contact DiTomasso when a current information letter or Rule 144 letter was needed by Fusion Pharm and then provide him the supporting documents, along with a drafted letter for his signature.

**Guy M. Jean-Pierre's Legal Problems and Relocation to the Dominican Republic.**

While in the midst of assisting Sears and Dittman in these various ways with Fusion

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 11 of 20

Pharm, Jean-Pierre became the subject of civil and regulatory actions arising from his efforts to circumvent the OTC Market's April 2010 ban against him and to continue his penny stock securities law practice as it had been before the ban. These actions led to civil complaints to be filed against defendant Jean-Pierre by the SEC and the Florida Bar. Jean-Pierre's niece also became the subject of various state bar grievances and SEC investigations based upon defendant Jean-Pierre's fraudulent use of her name, signature, and status as a licensed attorney. On or about August 12, 2011, in the midst of these challenges, Jean-Pierre legally changed his name to "Marcelo Dominguez de Guerra." Information available to federal investigators in this case indicated that Jean-Pierre had permanently relocated to the Dominican Republic.

**The Undercover Investigation**
**Origins of the Undercover Investigation.**

Beginning in or about January 2016, the United States Attorney's Office entered into pre-indictment plea discussions with counsel for Dittman and Sears. One of the terms of a pre-indictment disposition under discussion was possible cooperation by the Fusion Pharm principals against their confederates in the historical investigation. Jean-Pierre was identified as a central potential subject of anticipated assistance and, pursuant to the pre-indictment discussions, Dittman and Sears agreed to provide proffers of their information about Jean-Pierre's involvement in Fusion Pharm.

As part of this arrangement, William Sears gave his proffer over the course of a two day period in February 2016. During the proffer sessions, Sears confirmed, *inter alia*, the role that Jean-Pierre had played in the Fusion Pharm scheme, as had been adumbrated in the email communications and other records obtained in the investigation. Sears stated that Jean-Pierre

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 12 of 20

had been well aware of the extent of Sear's role and involvement in Fusion Pharm and his control and ownership of the Fusion Pharm stock that Sears, with Jean-Pierre's assistance, was selling through the Sears' entities. Sears indicated that Jean-Pierre knew of these factual circumstances, in particular, when he was preparing the "current information" opinion and Rule 144 letters for OTC Markets, Fusion Pharm's transfer agent, and Sears' brokers. He indicated as well that he and Dittman had regularly consulted with Jean-Pierre about the disclosures that they were (and were not) making in the financial statements and narrative submissions about the company that were posted on the OTC Markets website.

At the conclusion of this two day proffer session, Sears stated that he knew that Jean-Pierre was residing in the Dominican Republic[3] and that he had been in periodic contact with Jean-Pierre since May 2014, when the search warrant was conducted of Fusion Pharm's business premises. Sears related that over this period Jean-Pierre was still providing legal services and would occasionally solicit Sears for work. Sears further related that, in the weeks leading up to his proffer, he responded to these solicitations by discussing a particular investment venture that Sears claimed to be considering and for which he could use legal assistance. Sears recounted that he told Jean-Pierre at that time that he knew of a particular promising microcap company that was struggling to raise funds, and a particular large investor in the company seeking a return on the money he had invested in the company, and that Sears saw an opportunity to approach the

[3] Jean-Pierre apparently confirmed his relocation to the Dominican Republic, in recent recorded conversations with the FBI CI, in connection with discussing his impending trip to Miami, Florida. During the conversation, Jean-Pierre made reference to the fact that he had not been back to South Florida and the United States in three years and was looking forward to seeing friends and family there.

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 13 of 20

company to do an initial public offering on its behalf, for which Sears would enlist Jean-Pierre to do the legal work. Sears said that Jean-Pierre responded favorably to the opportunity and agreed to meet with Sears and the purported investor in the United States, tentatively set for Miami, Florida, to further discuss the opportunity. Sears acknowledged that, though the company he had in mind was real and was seeking investment capital, his proposal to Jean-Pierre (and the investor who came with it) was a ploy that Sears had devised on his own, as part of an overall offer to assist the government in the Fusion Pharm investigation and to secure for himself a more favorable pre-indictment disposition of his case.[4] Sears indicated that he had put Jean-Pierre off for the time being, claiming that the "investor" would be in Europe for the next several weeks.

In the ensuing days, an undercover investigation, involving a modified proposal, was devised and eventually approved by DOJ. The plan retained as its ultimate goal a meeting between Sears and Jean-Pierre in Miami, Florida, and included an FBI undercover agent as the interested "investor," but now focused on enlisting Jean-Pierre to do legal work in connection with Vertifresh, one of shell companies Sears and Dittman had used in the Fusion Pharm scheme.

**The Undercover**

[4] These claims have credence. As part of the resolution of his criminal case in the Southern District of New York, Sears apparently worked in an undercover capacity with the FBI and, in exchange for his efforts, received a significantly reduced sentence in consideration of his cooperation. Neither prosecutors in the United States Attorney's Office nor the agents involved in the Fusion Pharm investigation were aware of the pre-proffer contacts and discussions between Sears and Jean-Pierre, and neither prosecutors nor agents encouraged or suggested to Sears directly or through counsel that he should undertake to pursue a path of 'anticipatory assistance' with Jean-Pierre or any other potential target. Sears was aware of the SEC case against Jean-Pierre.

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 14 of 20

Beginning in late February 2016 and continuing through April 2016, Sears, acting under the direction and supervision of agents, had a series of recorded telephone calls and exchanged a series of emails with Jean-Pierre. In these communications, Sears advised Jean-Pierre that plans for the initial public offering that he had previously mentioned are on hold but that Sears and his investor are seeking to resurrect and develop the hydroponic produce business that had previously been marketed through Vertifresh. Sears has "explained" to Jean-Pierre that his investor, "EJ," had provided Sears various amounts of cash over the past several years for use in various contemplated investment projects but now needed to see some return on the money that he had placed with Sears. Sears explained their vehicle for accomplishing this would be the sale of stock in a reconstituted company that would go public through the acquisition of a publicly traded shell company and a reverse merger of Vertifresh into that shell company. Sears told Jean-Pierre that his investor was working on obtaining the shell company and that the two are looking for Jean-Pierre to prepare the corporate documents and do the legal work necessary to facilitate a reverse merger. More importantly, Sears explained, they are looking for Jean-Pierre's help in converting restricted shares that Sears and his investor would get from the reverse merger into free-trading shares that they could immediately sell in the public securities market. Sears has further made clear that Sears and EJ plan to actively manage and control the reconstituted company going forward and that the documents effectuating the stock conversions and sales would need to conceal their involvement in the business and connections to the transactions.

Jean-Pierre, in response, proposed that the free trading shares in the reconstituted company be generated in a way similar to how Sears obtained some of his free trading stock in

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 15 of 20

Fusion Pharm, *i.e.*, by characterizing EJ's previous funds to Sears as loans from a shell company to Vertifresh that had been contemporaneously secured by promissory notes that were convertible into Vertifresh stock. As had been done in the Fusion Pharm scheme, documents exercising these conversions would then be prepared and submitted to the transfer agent for the reconstituted, publicly traded company, together with Rule 144 attorney opinion letters that would opine that the shares that were the result of the conversions met the Rule 144 "safe harbor" exemption from securities registration (and, in particular, were held in the hands of "non-affiliates") and so could be issued without restriction and eligible for sale in the public securities markets. Jean-Pierre, in lawfully recorded conversations, has agreed to prepare the necessary documents, including the Rule 144 opinion letters, and to find an attorney who would purportedly author and sign the letters. He has agreed to accept payment for this work through a combination of cash payments from EJ and through transfer to him of some of the free trading shares that result from these machinations.

During these recorded conversations, Sears further explained to Jean-Pierre that the two would need to meet with EJ in Miami to explain the overall plan and how the transactions would work. In order to facilitate these discussions, Jean-Pierre agreed to prepare and send to Sears in advance of meeting EJ drafts of some of the documents which would be used for the transactions, so that the two could review them in discussions with EJ in Miami. Jean-Pierre recently emailed Sears a set of the requested documents, in draft form, including a draft of the contemplated convertible notes and a draft of a Rule 144 attorney opinion letter. He has also emailed Sears the name of a Nashville, Tennessee attorney, in response to his earlier promise to

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 16 of 20

Sears to come up with another "Tod DiTomasso" for the transactions.

Sears' recorded conversations with Jean-Pierre also gave rise to discussion about having Jean-Pierre act as a money launderer for funds that he has been led to believe are some of the remaining proceeds of the Fusion Pharm stock sales that he helped facilitate for Sears. While discussing payment arrangements for his contemplated services on the reverse merger scheme involving Vertifresh and EJ, Jean-Pierre had mentioned that he wanted the cash component of his compensations wired to a bank account he maintained in the Dominican Republic. He indicated that he wanted to use this account so that he could avoid having the funds seized by the SEC as part of its efforts to collect on its default judgment against him. Sears related that, as part of their pre-proffer discussions, the two had also toyed with the idea of setting up offshore accounts to jointly hold and manage the money that they expected to earn together. Sears continued to raise the subject of possibly opening offshore accounts for this purpose during the recorded undercover conversations with Jean-Pierre.

Following this latest conversation about offshore accounts, agents supervising Sears directed him to approach Jean-Pierre about hiding money in the Dominican Republic for Sears as well. Sears, acting on their directions, told Jean-Pierre that both the IRS and the SEC were searching for funds that Sears had made from the Fusion Pharm stock sales and that, although a significant portion of these proceeds had been located and seized, Sears still had a sizable amount of the money (at one point represented to be approximately $250,000) that had not been found. Sears told Jean-Pierre that he had been parking these funds with a friend in Colorado but

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 17 of 20

that both he and the friend were getting nervous about the arrangement and that Sears decided that it would be better to move the funds out of the United States. Agents directed Sears to ask Jean-Pierre to park these stock proceeds in a Dominican bank account. Agents further directed Sears to ask Jean-Pierre to first deposit the money into his own bank account and then move the funds to a second account to be set up in the name of a nominee. Jean-Pierre has agreed to so in exchange for a fee of five percent of the funds placed with him. FBI agents have arranged for a cashier's check in the amount of $5,000 to be sent to Jean-Pierre by federal express as part of an initial, test transaction. Sears has been directed to get written confirmation from Jean-Pierre that these funds have been deposited to Jean-Pierre's Dominican bank account and then to have Jean-Pierre identify the nominee account in which the funds (minus Jean-Pierre's commission) will be parked and to provide Sears with internet access to the account. Sears, had these things accomplished prior to Jean-Pierre's contemplated travel to the United States.

**The Lure Back to the United States**

As a continuation to the undercover operation, the final part was to lure Jean-Pierre to Miami, Florida to meet with Sears and EJ, portrayed by an FBI undercover agent. An airline ticket was purchased for Jean-Pierre to travel to Miami, Florida, arriving early Thursday evening, April 28, 2016. When Jean-Pierre's arrived at MIA, agents working the case conducted twenty-four hour surveillance on Jean-Pierre until the time of his arrest. Jean-Pierre was picked up at the airport by an undercover agent acting as an Uber driver and William Sears. Sears was wired to record all conversations he had with Jean-Pierre in the ride from the airport to the hotel. Once they arrived at the arranged hotel, Jean-Pierre checked in and met back up with Sears a short

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 18 of 20

time later where both of them walked to a nearby restaurant to meet the FBI undercover agent for dinner. Surveillance agents were in place at the restaurant, and the dinner meeting was audio recorded. After dinner, Jean-Pierre arrived back at the hotel and remained under surveillance until the next morning's planned breakfast meeting between himself, Sears, and "EJ".

On April 29, 2016, a breakfast meeting was held in one of the hotel rooms between Jean-Pierre, Sears, and "EJ" to discuss the "Vertifresh" ploy in detail, including the paperwork. This meeting was audio and video recorded. During the meeting, Jean-Pierre discussed several aspects of the securities law required to have restricted shares become free and clear so they could be traded. Sears and Jean-Pierre "explained" the reverse merger plan to the FBI undercover agent, and Jean-Pierre provided an overview of the securities laws and how they would use the Rule 144 regulatory exemption from registration to secure free trading shares in the newly constituted company. During the conversations, Jean-Pierre tutored Sears and the undercover agent how to portray themselves as consultants to the new company, so that they could justify their involvement in the company without having to acknowledge their control and affiliate status. Jean-Pierre and Sears also reviewed in detail the documents that Jean-Pierre had prepared as part of the scheme, and at one point, Jean-Pierre recommended changing the amount of the bogus promissory note from its stated amount, $50,000, to a less round figure, in order to avoid drawing suspicion. He further assured the Sears and the undercover agent that he would be able to manage the Tennessee attorney and would be a filter for the information that the attorney would receive about the business and the people in control of it. Both Sears and the FBI undercover agent reiterated to Jean-Pierre that the undercover agent and Sears would be the real

persons in control of the company and that person who would be identified in the corporate records as the head of the company – whose name Jean-Pierre inserted in the draft documents that he emailed – "knew jack shit" about the company. In response to this, Jean-Pierre said, "Excellent," and indicated that the Tennessee attorney would not learn anything differently from him about the portrayed arrangement.

Once enough evidence was presented that Jean-Pierre knew that he would facilitate the required fraud to circumvent the securities' laws, defendant Jean-Pierre was placed under arrest for an outstanding warrant out of New York, NY.

Respectfully submitted this 13th day of February, 2019.

JASON R. DUNN
United States Attorney

*/s/ JEREMY SIBERT*
Jeremy Sibert
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
(303) 454-0100
FAX: (303) 454-0403
Email: jeremy.sibert@usdoj.gov
Attorney for the government

Case 1:17-cr-00008-WJM Document 216 Filed 02/13/19 Page 20 of 20

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of February 2019, I electronically filed the foregoing; Government's Post Trial Statement, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Clifford Barnard
Attorney for the Defendant

*s/Jeremy Sibert*
JEREMY SIBERT
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0406
Jeremy.Sibert@usdoj.gov

Case 1:17-cr-00008-WJM Document 286 Filed 02/03/20 USDC Colorado Page 1 of 8

# UNITED STATES DISTRICT COURT

District of Colorado

UNITED STATES OF AMERICA
v.
GUY M. JEAN-PIERRE
*a/k/a Marcelo Dominguez de Guerra*

**JUDGMENT IN A CRIMINAL CASE**

Case Number: 1:17-cr-00008-WJM-1

USM Number: 78606-054

Clifford J. Barnard and Thomas Edward Goodreid
Defendant's Attorneys

**THE DEFENDANT:**

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s) which was accepted by the court.

☒ was found guilty on count(s) 1-11, and 13-29 of the Second Superseding Indictment. after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 371 | Conspiracy to Commit Securities Fraud | 05/15/2014 | 1 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 08/14/2012 | 2 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 11/15/2012 | 3 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 03/06/2013 | 4 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 07/05/2013 | 5 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 08/20/2013 | 6 |

The defendant is sentenced as provided in pages 3 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☒ The defendant has been found not guilty on count(s) 12 of the Second Superseding Indictment.

☐ Count(s) ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

January 29, 2020
Date of Imposition of Judgment

Signature of Judge

William J. Martinez, United States District Judge
Name and Title of Judge

February 3, 2020
Date

Case 1:17-cr-00008-WJM Document 266 Filed 02/03/20 Page 2 of 8

DEFENDANT: GUY M. JEAN-PIERRE
CASE NUMBER: 1:17-cr-00008-WJM-1

## ADDITIONAL OFFENSES

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 08/20/2013 | 7 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 08/16/2012 | 8 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 03/11/2013 | 9 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 07/05/2013 | 10 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 08/23/2013 | 11 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 09/12/2013 | 13 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 03/31/2013 | 14 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 08/13/2013 | 15 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 08/26/2013 | 16 |
| 18 U.S.C. §§ 1341 and 2 | Mail Fraud and Aiding and Abetting | 07/25/2012 | 17 |
| 18 U.S.C. §§ 1341 and 2 | Mail Fraud and Aiding and Abetting | 08/01/2012 | 18 |
| 18 U.S.C. §§ 1341 and 2 | Mail Fraud and Aiding and Abetting | 01/18/2013 | 19 |
| 18 U.S.C. §§ 1341 and 2 | Mail Fraud and Aiding and Abetting | 08/15/2013 | 20 |
| 15 U.S.C. §§ 78(j)(b) and 78ff, C.F.R. § 240.10b-5, and 18 U.S.C. § 2 | Securities Fraud and Aiding and Abetting | 10/18/2012 | 21 |
| 15 U.S.C. §§ 78(j)(b) and 78ff, C.F.R. § 240.10b-5, and 18 U.S.C. § 2 | Securities Fraud and Aiding and Abetting | 02/04/2013 | 22 |
| 15 U.S.C. §§ 78(j)(b) and 78ff, C.F.R. § 240.10b-5, and 18 U.S.C. § 2 | Securities Fraud and Aiding and Abetting | 05/14/2013 | 23 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 03/30/2016 | 24 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 04/01/2016 | 25 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 04/23/2016 | 26 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 04/23/2016 | 27 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 04/24/2016 | 28 |
| 18 U.S.C. §§ 1956(a)(3)(B) and 2 | Money Laundering and Aiding and Abetting | 04/29/2016 | 29 |

Case 1:17-cr-00008-WJM Document 286 Filed 02/03/20 USDC Colorado Page 3 of 8

DEFENDANT: GUY M. JEAN-PIERRE
CASE NUMBER: 1:17-cr-00008-WJM-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: **eighty-four months;** sixty (60) months as to Count 1, and eighty-four (84) months as to each of Counts 2-11, and 13-29, all counts to run concurrent.

☒ The court makes the following recommendations to the Bureau of Prisons:
Court recommends that the defendant be designated to a facility in the state of Colorado, and that he be given full credit for time served in presentence confinement.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at ______________ ☐ a.m. ☐ p.m. on ______________ .

☐ as notified by the United States Marshal.

☒ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☒ before 12 p.m. on March 4, 2020 .

☐ as notified by the United States Marshal.

☒ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ______________ to ______________

at ______________ , with a certified copy of this judgment.

______________
UNITED STATES MARSHAL

By ______________
DEPUTY UNITED STATES MARSHAL

Case 1:17-cr-00008-WJM Document 266 Filed 02/03/20 Page 4 of 8

DEFENDANT: GUY M. JEAN-PIERRE
CASE NUMBER: 1:17-cr-00008-WJM-1

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: **three (3) years, as to all counts, to run concurrent.**

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☒ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

Case 1:17-cr-00008-WJM Document 266 Filed 02/03/20 USDC Colorado Page 5 of 8

DEFENDANT: GUY M. JEAN-PIERRE
CASE NUMBER: 1:17-cr-00008-WJM-1

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may, after obtaining Court approval, notify the person about the risk or require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ______________________ Date ____________

Case 1:17-cr-00008-WJM Document 266 Filed 02/03/20 Page 6 of 8

DEFENDANT: GUY M. JEAN-PIERRE
CASE NUMBER: 1:17-cr-00008-WJM-1

## SPECIAL CONDITIONS OF SUPERVISION

1. You must participate in a cognitive behavioral treatment (CBT) program as directed by the probation officer until such time as you are released from the program by the probation officer. You must pay the cost of treatment as directed by the probation officer.
2. You must provide the probation officer access to any requested financial information and authorize the release of any financial information.
3. You must document all income and compensation generated or received from any source and must provide that information to the probation officer as requested.
4. You must not engage in employment in which you would solicit funds for investment or employment that would permit you to have custody and/or control over investor funds, and you must not be the signatory on any accounts possessing investor funds.
5. All employment for the defendant must be approved in advance by the supervising probation officer. You must not engage in any business activity unless the activity is approved by the probation officer. Any approved business activity must operate under a formal, registered entity. For any approved business activity, you must provide the probation officer with the names of all business entities and their registered agents. You must not register any new business entity, foreign or domestic, without the approval of the probation officer. You must not cause or induce others to register business entities on his behalf. For any approved business activity, you must maintain business records. You must provide all requested documentation and records to the probation officer regarding any of his business activities as requested by the probation officer.

DEFENDANT: GUY M. JEAN-PIERRE
CASE NUMBER: 1:17-cr-00008-WJM-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on the following page.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **Counts 1-11** | $1,100.00 | | | |
| **Counts 13-29** | $1,700.00 | | | |
| **TOTALS** | **$2,800.00** | **$0.00** | **$0.00** | **$0.00** |

☐ The determination of restitution is deferred until ____________ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **TOTALS** | $ ______________ | $ ______________ | |

☐ Restitution amount ordered pursuant to plea agreement $ ______________

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on the following page may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Case 1:17-cr-00008-WJM Document 266 Filed 02/03/20 USDC Colorado Page 8 of 8

DEFENDANT: GUY M. JEAN-PIERRE
CASE NUMBER: 1:17-cr-00008-WJM-1

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☐ Lump sum payment of $ ______________ due immediately, balance due

☐ not later than ____________________ , or
☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal __________ *(e.g., weekly, monthly, quarterly)* installments of $ ______________ over a period of __________ *(e.g., months or years)*, to commence __________ *(e.g., 30 or 60 days)* after the date of this judgment; or

D ☐ Payment in equal __________ *(e.g., weekly, monthly, quarterly)* installments of $ ______________ over a period of __________ *(e.g., months or years)*, to commence __________ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within __________ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☒ The defendant shall forfeit the defendant's interest in the following property to the United States:
A personal money judgment in the amount of $5,000.00.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.17-cr-00008-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. GUY M. JEAN-PIERRE,**
***a/k/a* MARCELO DOMINGUEZ DE GUERRA**

Defendant.

---

**DEFENDANT JEAN-PIERRE'S NOTICE OF APPEAL**

---

Notice is hereby given that the Defendant, GUY M. JEAN-PIERRE, *a/k/a* MARCELO DOMINGUEZ DE GUERRA, in the above named case hereby appeals to the United States Court of Appeals for the Tenth Circuit from the final order of judgment and conviction of the Defendant in the District Court for the District of Colorado entered in this action on the 3rd day of February, 2020.

DATED this 11th day of February, 2020.

Respectfully submitted,

*s/Clifford J. Barnard*

Clifford J. Barnard
Clifford J. Barnard, Attorney at Law
4450 Arapahoe Avenue, Suite 100
Boulder, Colorado 80303
Telephone: (303) 449-2543
Facsimile: (303) 444-6349
Email: *cliffbarnard@earthlink.net*
Attorney for Defendant Jean-Pierre

Case 1:17-cr-00008-WJM Document 271 Filed 02/11/20 Page 2 of 2

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2020, I electronically filed the foregoing *Defendant Jean-Pierre's Notice of Appeal* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

A.U.S.A. Jeremy Sibert *jeremy.sibert@usdoj.gov*

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Guy Jean-Pierre
*a/k/a* Marcelo Dominguez de Guerra
Register # 78606-054
Independence House South
2765 S. Federal Blvd.
Denver, CO 80236

*Via email*

*s/Clifford J. Barnard*

Clifford J. Barnard
Attorney for Defendant Jean-Pierre